20

*__Ambulatory Surgery Center__*

## <u>LEASE AGREEMENT</u>

This Lease ("**Lease**") is made as of August 21, 2012 (the "**Effective Date**"), by and between ALTERA HIGHLAND LLC, a Texas limited liability company ("**Landlord**"), and SHERMAN/GRAYSON HEALTH SYSTEM, a Texas limited liability company ("**Tenant**").

## RECITALS:

Landlord, as tenant, has entered into that certain Ground Lease Agreement dated as of the Effective Date (the "**Ground Lease**") with Tenant, as landlord, for the land upon which the Building (as defined below) is located.  Contemporaneously with the Ground Lease, (i) Landlord purchased one (1) medical office building, from Tenant, and (ii) Tenant, as "**Declarant**", filed of record a Declaration of Covenants, Restrictions and Easements (the "**Declaration**") covering the one (1) medical office building, the Hospital commonly known as Texas Health Presbyterian Hospital - WNJ (the "**Hospital**") owned by Tenant located in proximity to the medical office building and the parking  and other common areas  dedicated for use by persons occupying, using or visiting the medical office building, the Hospital and other facilities related thereto.  The Ground Lease and this Lease are subject to the terms and provisions of the Declaration. Tenant, as "Declarant" under the Ground Lease and "Landlord" under the Ground Lease, is familiar with the terms and provisions of each of the Declaration and the Ground Lease.

As part of Tenant's purchase of the Building commonly called "300 N. Highland Drive, Sherman, Texas", Tenant agreed to enter into this Lease.

Simultaneously herewith, Landlord and Tenant are also entering into corresponding leases (each, a "**Related Lease**") for vacant, shell and existing space of the Building and for the common areas of the Building occupied by the Hospital.

## 1.    <u>DEFINITIONS AND BASIC PROVISIONS</u>.

1.1    <u>Parties and Addresses</u>. The parties hereto and their respective addresses are as follows:

    (1)    <u>Landlord's Address</u>:    5910 North Central Expressway
Suite 800
Dallas, TX 75206.

    (2)    <u>Tenant's Address</u>:    2400 North Dallas Parkway, Suite 450
Plano, Texas 75093
Attention: Executive Vice President – Administration

    (3)    <u>Ground Lessor Address</u>:    2400 North Dallas Parkway, Suite 450
Plano, Texas 75093
Attention: Executive Vice President –
Administration

1

|       |                       |                                                                                                          |
|-------|-----------------------|----------------------------------------------------------------------------------------------------------|
| (4)   | <u>Guarantor</u>:     | LHP Hospital Group, Inc.,<br>a Delaware corporation                                                       |
| (5)   | <u>Guarantor's Address</u>: | 2400 North Dallas Parkway, Suite 450<br>Plano, Texas 75093<br>Attention: Executive Vice President – Administration |

1.2    <u>Defined Terms</u>: In addition to the capitalized terms elsewhere defined in this Lease, the following terms shall be deemed to be defined terms of this Lease for all purposes. Each of the following definitions and basic provisions shall be construed in conjunction with and limited by the reference thereto in other provisions of this Lease:

(1)    <u>Additional Rent</u>: All rent and other sums payable hereunder from Tenant to Landlord, other than Base Rent.

(2)    <u>Base Rent</u>: An annual Base Rent of $22.55 per RSF in the Premises, subject to adjustment as provided in Section 3.1. As of the Commencement Date, the monthly Base Rent is $34,076.25.

(3)    <u>Broker(s)</u>: None.

(4)    <u>Building</u>: The building in which the Premises are situated, being generally known as 300 N. Highland Drive, Sherman, Texas.

(5)    <u>Commencement Date</u>: The Effective Date.

(6)    <u>Common Areas</u>: Those parts of the Building, Land and related facilities designated from time to time by Landlord for the common use of all doctors, physicians, tenants, visitors, patients and employees, including among other facilities, parking areas, sidewalks, landscaping, curbs, loading docks and areas, private streets and alleys, automobile entrances, exits and driveways, entranceways (open, enclosed or otherwise), lighting facilities, drinking fountains, public toilets, signs, service areas, common utility lines, pipes, and/or conduits, and the like.

(7)    <u>Declarant</u>: means the Declarant under the Declaration, Sherman/Grayson Hospital, LLC, a Texas limited liability company, and its successors under the Declaration.

(8)    <u>Declaration</u>: has the meaning set forth in the Recitals.

(9)    <u>Expiration Date</u>: The last day of the Term hereof, which date is contemplated as being one hundred eighty (180) full months after the Commencement Date. Notwithstanding any other provision of this Lease to the contrary, if the Expiration Date would otherwise occur on a date other than the last day of a calendar month, then the Term shall be automatically extended to include the last day of such calendar month.

(10)    <u>Floor Plan</u>: The outline of the Premises as depicted in <u>Exhibit B</u> attached hereto and made a part hereof for all purposes.

(11)    <u>Guarantor</u>: has the meaning set forth in Section 1.1.

(12)   <u>Highest Lawful Rate</u>:  The maximum nonusurious interest rate, if any, that at any time, or from time to time, legally may be contracted for, taken, reserved, charged, or received on the indebtedness owed to Landlord under this Lease under the laws which are presently in effect of the United States of America and the State of Texas applicable to Landlord and such indebtedness.

(13)   <u>Hospital</u>:  The Hospital defined in the Recitals of this Lease, and its successors and assigns.

(14)   <u>Interior of the Premises</u>: Standard office front and entrance (including without limitation, all plate glass and exterior doors), all of the interior wall framing, floors and floor covering, ceiling and interior staining and finishes, all interior doors and hardware, all interior electrical conduits and appurtenances, mechanical machinery and equipment, all interior electrical fixtures, interior plumbing and plumbing fixtures, Tenants' trade fixtures, and all other parts in the interior of the Premises.

(15)   <u>Land</u>: The lot, tract or parcel of land upon which the Building is situated, in Grayson County, Texas as more particularly described by metes and bounds on <u>Exhibit A</u> attached hereto and made a part hereof for all purposes, plus any contiguous parcels or strips of land leased or licensed to Landlord under the Ground Lease or by the Declaration, and are used in connection with or to service the Building or any part thereof.

(16)   <u>Late Charge</u>: Tenant shall pay $100.00 as a late fee to cover Landlord's administrative costs.  Additionally, all unpaid amounts Tenant fails to pay by the fifth (5th) day after the date due shall bear interest from the first day due until paid in full at the lesser of ten percent (10%) per annum or the Highest Lawful Rate.  In no event, however, shall the late fees and/or charges permitted under this Section or elsewhere in this Lease, to the extent the same are considered to be interest under applicable law, exceed the amount of interest that Landlord lawfully could have charged, received or collected on the indebtedness in question at the Highest Lawful Rate.

(17)   <u>Lease</u>: This Lease Agreement.

(18)   <u>Lease Year</u>: Each twelve (12) consecutive month period commencing on the Commencement Date or any anniversary thereof; provided that, if the Commencement Date is other than the first day of a calendar month, then the first Lease Year shall include such partial month together with the next succeeding twelve (12) consecutive months, and each succeeding Lease Year shall begin on the first day of the calendar month that corresponds to the first day of the calendar month following the Commencement Date.

(19)   <u>Operating Expenses</u>: All expenses, costs and disbursements of every kind and nature that Landlord or any of its Affiliates directly or indirectly pays or becomes obligated to pay, whether under the Ground Lease, the Declaration, any Related Lease or otherwise, in respect of the Ground Lease, the ownership, management, maintenance, repair, replacement and operation of the Building, the Common Areas and related facilities of the Building or arising in connection with any Related Lease.  Notwithstanding the foregoing, Operating Expenses shall exclude capital costs associated with the replacement of the roof, foundation, and exterior walls.

(20)   <u>Permitted Use</u>:  Ambulatory surgery center and any other use related thereto, including without limitation diagnostic and laboratory services and all current uses.

(21)　<u>Premises</u>: The premises known, as of the Effective Date, Suite 200 and the ambulatory surgery center in the Building (Suite 210), containing approximately 18,174 RSF (as defined herein).  The Premises are substantially depicted on the attached Floor Plan shown on <u>Exhibit B</u> and being located in the Building.

(22)　<u>Pro Rata Share or Tenant's Pro Rata Share</u>: 15.447%, provided that if the Building is expanded or contracted, Tenant's Pro Rata Share shall increase or decrease, as the case may be, such that Tenant's Pro Rata Share will equal a fraction, the numerator of which is the net rentable area of the Premises, and the denominator of which is the net rentable area of the Building, which is approximately 117,655 RSF as of the Effective Date.

(23)　<u>Rent</u>: All Base Rent and Additional Rent.

(24)　<u>RSF</u>: means the rentable square feet in the Premises, Building or other area in question, as determined by an architect using ANSI/BOMA Standards.

(25)　<u>Security Deposit</u>: None.

(26)　<u>Tenant Improvement Allowance</u>:  Means that amount, if any, set forth in <u>Section 2.3</u>.

(27)　<u>Tenant Improvements</u>:  Means those improvements and alterations Tenant may elect to construct or install in the Premises, subject to the provisions of this Lease.

(28)　<u>Term</u>: Fifteen (15) years (one hundred eighty (180) full months) from the Commencement Date, unless earlier terminated pursuant to the provisions of this Lease.

## 2.　**GRANTING CLAUSE; TENDER OF POSSESSION.**

2.1　<u>Granting Clause</u>.  In consideration of the Rent reserved and the covenants and agreements herein contained on the part of the Tenant to be observed and performed, and subject to the terms and provisions of the Declaration and Ground Lease, Landlord hereby demises, lets and leases unto Tenant, and Tenant hereby accepts, leases and rents from Landlord, the Premises.

2.2　<u>Tender and Acceptance of Possession</u>.  Landlord hereby tenders, and Tenant hereby accepts, possession of the Premises on the Effective Date.  Tenant hereby accepts the Premises in their "AS-IS" condition, and Landlord shall have no obligation to perform any work therein (including demolition of any improvements existing therein or construction of any tenant finish-work or other improvements therein), and shall not be obligated to reimburse Tenant or provide an allowance for any costs related to the demolition or construction of improvements therein.  Tenant has reviewed, and hereby accepts, the condition and capacity of the Building's existing electrical systems and HVAC.  Tenant acknowledges that Landlord does not have any obligation, express or implied, to modify or increase the capacity of such systems.  Before Tenant may occupy the Premises to conduct its business therein, Tenant shall, at its expense, obtain and deliver to Landlord a certificate of occupancy from the appropriate governmental authority for the Premises.

3.    **RENT.**

3.1    Base Rent.

(1)    This is a pure "net lease," and Base Rent, Additional Rent, Operating Expenses and all other sums payable hereunder by Tenant shall be paid without notice, demand, setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense.  It is intended that the Base Rent provided for in this Lease shall be absolutely net to Landlord throughout the Term, and, accordingly, Tenant covenants and agrees to pay, as they become due and payable and before they become delinquent, all operating and capital expenses in connection with the operation, maintenance, repair, restoration, use or occupation of the Premises including, without limitation, the costs, charges and assessments related to taxes, impositions, utilities and insurance.  Tenant shall pay all such taxes and impositions even though the taxing statue or ordinance may purport to impose such taxes or impositions on Landlord.

(2)    The Base Rent shall be paid by Tenant in monthly installments to Landlord on or before the first day of each calendar month during the Term hereof.  The monthly Base Rent for any fractional month at the beginning or the end of the Term shall be prorated based upon the actual number of days in such month.

(3)    The Base Rent will be adjusted and increased on each anniversary of a Lease Year (the "**Adjustment Date**") by an amount equal to the greater of (i) 103% of then-effective Base Rent (i.e., as it may have been adjusted pursuant to this Section 3.1(3)) and (ii) subject to the limitation set forth below in this Section 3.1(3), any increase in the Consumer Price Index for "All Urban Consumers, U.S. City Average, All Items," issued by the Bureau of Labor Statistics of the United States Department of Labor (the "**Index**").  The adjustments in the Base Rent will be determined by multiplying the then-effective Base Rent (i.e., as it may have been adjusted pursuant to this Section 3.1(3)) by a fraction, the numerator of which is the Index number for the date one month prior to the Adjustment Date and the denominator of which is the Index number for the first month of the first year of the Term.  When the adjusted rent for the Adjustment Date has been determined, Landlord shall give Tenant written notice of such adjusted rent; and, upon adjustment of the rent, any underpayment of rent from the Adjustment Date to the date Tenant is notified of the adjustment shall be immediately due and payable by Tenant.  Landlord's failure or delay to notify Tenant of said rent adjustment shall not constitute a waiver of the right to any adjustment provided for in this Lease.  In the event that the Index shall be discontinued, then Landlord shall use an index substantially similar to the Index to calculate future adjustments.  Notwithstanding any other provision of this Section 3.1(3) to the contrary, the Base Rent in any Lease Year shall not increase by more than five percent (5%) of the Base Rent in the immediately preceding Lease Year.

(4)    Landlord and Tenant are knowledgeable and experienced in commercial transactions and agree that the provisions of this Lease for determining charges, amounts, Operating Expenses and Additional Rent are commercially reasonable and valid even though such methods may not state a precise mathematical formula for determining such charges. ACCORDINGLY, TENANT VOLUNTARILY AND KNOWINGLY WAIVES ALL RIGHTS AND BENEFITS OF TENANT UNDER SECTION 93.012 OF THE TEXAS PROPERTY CODE, AS IT MAY BE AMENDED OR REPLACED.

3.2     Operating Expenses.

(1)     Tenant's Pro Rata Share of Operating Expenses for the remainder of the calendar year after the Commencement Date and for each subsequent calendar year shall be estimated by Landlord, and written notice thereof shall be given to Tenant. Upon receipt of said written notice from Landlord, the estimated Operating Expenses shall be due and payable as herein provided. For any such remainder of the calendar year after the Commencement Date, Tenant agrees to pay Landlord each month, at the same time the Base Rent Payment is due, an amount equal to the amount of such estimated monthly Pro Rata Share of Operating Expenses for the remainder of such calendar year; and during each calendar year thereafter Tenant agrees to pay Landlord each month, at the same time the Base Rent Payments are due, an amount equal to one-twelfth (1/12th) of the estimated annual Pro Rata Share of Operating Expenses due.

(2)     If any portion of Operating Expenses increase during a calendar year, Landlord may revise the estimated Operating Expenses during such year by giving Tenant written notice to that effect, and thereafter Tenant agrees to pay Landlord, in each of the remaining months of such calendar year, an additional amount equal to the amount of such annual increase in the estimated Pro Rata Share of Operating Expenses divided by the number of months remaining in such calendar year.

(3)     After the end of each calendar year, Landlord shall prepare and deliver to Tenant a statement showing Tenant's Pro Rata Share of the total amount of Operating Expenses. Within ten (10) days after receipt of the aforementioned statement, Tenant agrees to pay Landlord the remaining amount owed by Tenant. However, if Tenant has paid more than its Pro Rata Share of the actual Operating Expenses, Landlord shall either pay the amount of such excess to Tenant within ten (10) days after delivery of the aforementioned statement, or, at Landlord's option, apply such excess to any sums due or to become due from Tenant to Landlord.

(4)     Notwithstanding anything herein to the contrary, in no event will the Base Rent provided for in this Lease ever be reduced.

3.3     Payment For Other Services. Tenant agrees to pay Landlord as Additional Rent all charges for any services, goods, or materials furnished at Tenant's request which are not required to be furnished by Landlord under this Lease, immediately upon demand, plus an administrative fee not to exceed five percent (5%) of the cost of the requested services, good or materials.

3.4     Late Charge. If Landlord does not receive any payment due on or before the 5th day of the calendar month when such payment is due, the Late Charge shall be due and payable (in addition thereto). Said Late Charge is for the purpose of reimbursing Landlord for the extra administrative costs and expenses incurred in connection with the handling and processing of such delinquent payment.

3.5     No Offsets or Demands.   All Base Rent, Additional Rent and other amounts due from Tenant to Landlord under this Lease shall be paid without notice, demand, offset, abatement or deduction. This Lease and the rights of Landlord and obligations of Tenant hereunder shall not be affected by any event or for any reason or cause whatsoever foreseen or unforeseen.  The obligations of Tenant under this Lease shall be separate and independent covenants and agreements and all monetary obligations shall continue to be payable in all events.

4.     **SECURITY DEPOSIT.**  Tenant is not required to make any security deposit in connection with this Lease.

5.     **COMMON AREAS.**

5.1     Parking Facilities and Other Common Areas. During the Term, Tenant shall be entitled to the nonexclusive use (in common with others entitled thereto) of the Common Areas outside the Building designated from time to time by Landlord as the parking areas of the Building.  As of the Effective Date, the parking areas designated by Landlord for use by Tenant are depicted on Exhibit C.  In such parking areas, Tenant shall be entitled to use a number of parking spaces equal to 5 parking spaces for every 1,000 RSF of space in the Premises.  Tenant shall not conduct, solicit business or display or place any signs or advertising on or within the Common Areas, or distribute handbills therein, or take any action which would interfere with the rights of other persons to use the Common Areas.

5.2     Parking Regulations. Tenant understands and agrees that the Declarant shall have the right to maintain and operate lighting facilities on all of the parking areas and to police all of the parking and other Common Areas, including, without limitation, the right to discourage non-tenant parking, to designate and regulate parking areas, and to do and perform such other acts with respect to said Common Areas as in the judgment of the Declarant may be legally necessary to prevent a dedication thereof to the public.

6.     **MAINTENANCE AND REPAIRS.**

6.1     Landlord's Obligations.  As part of the Operating Expenses, Landlord shall maintain or cause to be maintained the elevators, public restrooms and other Common Areas within the Building, the structural elements building systems of the Building (including the HVAC system which serves the Building and the Premises).  Landlord shall, at its own cost and expense, maintain or cause to be maintained the foundation, the exterior walls (but excluding the interior glass or doors that are part of the Premises) and roof of the Building in good condition or repair.  However, if any repair is required by reason of the negligence or intentional misconduct of Tenant or any of its agents, employees, invitees or Affiliates, Landlord may add the cost thereof to the next installment of Rent thereafter coming due, but only to the extent that the cost thereof is not covered by insurance proceeds actually received by Landlord.  Except as herein provided, Landlord shall have no obligation to repair, maintain, alter, replace, or modify the Premises or any part thereof.  Any failure by Landlord to furnish, or delay in furnishing, any maintenance or services that are required of Landlord under this Section or otherwise under this Lease, when such failure is caused by acts of God or any other condition beyond Landlord's reasonable control, shall not constitute a default by Landlord under this Lease and shall not permit Tenant to abate any Rent or relieve Tenant from any of its obligations under this Lease.

6.2     Tenant's Obligations.  Tenant shall maintain the interior of the Premises, including all interior glass and doors that are a part of the Premises and any improvements done by or on behalf of Tenant, in good condition and clean and attractive appearance, performing all janitorial services and making all repairs at its own cost and expense, and using materials and labor of a kind and quality equal to the original work.  Tenant shall maintain the Premises in accordance with all requirements of law, including (without limitation) the Americans with Disabilities Act (as the same may be amended) and similar state or local laws, rules or regulations.  At the expiration or earlier termination of this Lease, Tenant shall surrender the Premises in a broom clean condition and otherwise in the same condition as received by Tenant on the Commencement Date upon initial completion of the interior improvements, reasonable wear and tear excepted.  If Tenant shall neglect and/or fail to observe, keep or perform any of its obligations to maintain and repair and Premises in the time and manner provided in this Article and if such neglect and/or failure shall continue for ten (10) days after notice thereof, Landlord shall have the right to perform said maintenance and repairs. In the event Landlord does so perform Tenant's responsibilities for said

maintenance and repairs, Landlord shall furnish Tenant a statement of the actual cost thereof, plus an administration fee not to exceed ten percent (10%) of the actual costs, which statement shall be immediately payable by Tenant.  All alterations and modifications of or to the Premises shall be in accordance with the terms and provisions of <u>Section 11.2</u> below.

## 7.    <u>TAXES ON TENANT'S PROPERTY.</u>

Tenant shall be responsible for and shall pay, before same becomes delinquent, all federal, state, county, and local taxes levied or assessed upon any and all personal property of any kind owned by or placed in, on or about the Premises by Tenant during the Term, and all taxes and assessments on trade fixtures, furniture, and all sales, excise and other taxes on Tenant's business shall be paid entirely by Tenant. If any such taxes for which Tenant is liable are levied or assessed against Landlord or Landlord's property, or if the assessed value of Landlord's property is increased by inclusion of personal property, furniture or fixtures placed by Tenant in the Premises, Tenant shall pay to Landlord upon demand that part of such taxes for which Tenant is primarily liable hereunder.

## 8.    <u>INSURANCE.</u>

8.1    <u>Hold Harmless</u>. Tenant covenants and agrees to indemnify and save each of Landlord, and Landlord's members, managers, partners, agents, employees and representatives, harmless from and against any and all costs, liability or expense arising out of any claims of any person or persons on account of any occurrence in, upon or at the Premises, resulting from the occupancy or use thereof by Tenant, or by any person or persons holding or using the Premises thereunder, occasioned in whole or in part by reason of the improper and/or lack of control and supervision throughout the Common Areas of property owned or controlled by Tenant, or by reason of the use or misuse of the parking area or any other Common Areas by Tenant or by any person or persons holding or using the Premises, or any part thereof, under Tenant, including without limitation, Tenant's clients, invites, agents, contractors, employees, servants, subtenants, assignees or licensees, and without limiting the generality of the foregoing, Tenant further covenants and agrees to indemnify and save each of Landlord and Landlord's partners, agents, employees and representatives harmless from and against any penalty, damage or charge incurred or imposed by reason of any violation of law or ordinance by Tenant or any person or persons holding under Tenant and from any cost, damage or expense arising out of the death of or injury to any person or persons holding under Tenant and from any cost, damage or expense arising out of the death of or injury to any person or persons holding under Tenant. In case any action or claim to which Landlord (or Landlord's partners, members, managers, agents, employees or representatives) are entitled to indemnification shall be brought or asserted in any way against Landlord (or Landlord's members, managers, partners, agents, employees or representatives) or Tenant, Tenant shall immediately notify Landlord of the same and shall furnish Landlord with all relative information. Landlord shall be entitled, at Tenant's expense, to participate in, and to the extent that it wishes, to assume the defense thereof.

8.2    <u>Tenant's Liability Insurance</u>. Tenant agrees to maintain in force during the Term a policy or policies of comprehensive public liability insurance, including property damage, written by one or more responsible insurance companies approved by Landlord and licensed to do business in Texas, which insurance companies shall be rated not less than X by Best Guide Rating, insuring Tenant and naming as additional named insureds, Landlord, Landlord's property management company as agent, each Mortgagee and such other persons, firms, or corporations as are designated by Landlord, against loss of life, bodily injury and property damages in which the limit of public liability shall be not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000.00) single limit bodily injury and in which the limit of property damage shall be not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000.00) and an umbrella coverage of not less than TWO MILLION AND NO/100 DOLLARS ($2,000,000.00). Additionally, Tenant shall maintain a comprehensive automobile liability insurance policy of ONE

HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00). Each such policy shall be non-cancellable for any cause without first giving Landlord thirty (30) days prior written notice. Subject to all of the foregoing, the insurance coverage required to be furnished by Tenant pursuant to this Section may be in the form of a blanket policy covering all of Tenant's operations.

8.3   Tenant's Fire Insurance. Tenant agrees to maintain in force during the Term a policy or policies of fire and extended coverage insurance in the case of fire sprinkler leakage, malicious mischief, vandalism and other extended coverage perils, for the full insurable replacement value of all additions and of all office furniture, office equipment, merchandise, and other items of Tenants' property within or on the Premises. Coverage in this paragraph shall be in an amount not less than one hundred percent (100%) of the replacement costs of Tenant's improvements to the Premises.

8.4   Tenant's Workers Compensation. If required by law, Tenant agrees to maintain in force during the Term workers compensation and employers liability insurance with a waiver or subrogation endorsement, in a form and amount satisfactory to Landlord.

8.5   Evidence of Insurance. A copy of each such policy or a certificate of such insurance required to be maintained by Tenant shall be delivered to Landlord upon the Commencement Date of this Lease and annually thereafter upon the first day of each Lease Year throughout the Term. If Tenant fails to procure said insurance or deliver to Landlord, such evidence thereof, Landlord may procure same and Tenant shall reimburse Landlord for the cost thereof plus an administrative fee not to exceed ten percent (10%) of the actual cost immediately upon demand.

8.6   Landlord's Liability Insurance. Landlord agrees to maintain in force during the Term a policy or policies of comprehensive public liability insurance, including property damage, written by one or more responsible insurance companies licensed to do business in Texas and insuring Landlord against loss of life, bodily injury and/or property damage with respect to the operation of the Building, the policy limits of which to be in amount satisfactory to Landlord. In addition, Landlord may maintain in force such umbrella policy or policies of public liability insurance as Landlord, in its sole discretion, may deem appropriate. Landlord's failure to procure any such insurance shall not invalidate this Lease or lessen Tenant's liability hereunder. Landlord's insurance hereunder shall include loss of rent coverage.

8.7   Landlord's Fire Insurance. Landlord agrees to procure and keep in effect during the Term a policy or policies of fire and extended coverage insurance covering the Building, including rent abatement, vandalism and malicious mischief coverage, written by an insurance company authorized to do business within the State of Texas, and in an amount at the full replacement cash of the Building. Such insurance shall provide protection against losses so insured against for the sole and exclusive benefit of Landlord. The full amount of any proceeds payable thereunder shall be payable to Landlord, and Tenant shall not be entitled to, and shall have no interest in, such proceeds or any part thereof. Tenant is advised to procure such insurance as Tenant deems appropriate to protect its interest.

8.8   Waiver of Subrogation. To the extent permitted by the laws and insurance regulations of the State of Texas, the respective parties hereto hereby waive and release any and all claims, demands and causes of action which each might have against the other party, either for damage to or loss of any part of the Premises or of any adjoining premises belonging to Landlord, arising from perils ordinarily insured against under a standard fire and extended coverage insurance policy issued in the State of Texas, regardless of whether such damage or loss is occasioned by the negligence of the respective parties, or either of them, their agents, servants or employees.

9.      **UTILITIES AND SERVICES.**

Provided Tenant is not in default of any term, condition or covenant of this Lease, Landlord agrees to furnish or cause to be furnished to the Premises gas, water (for drinking, cleaning and lavatory purposes only), and electricity during the Term. Landlord shall furnish tempered and refrigerated water at those points of supply designated by Landlord in the Common Areas of the Building, heated and refrigerated air conditioning in season (at temperatures, in amounts and at times considered by Landlord to be standard or in compliance with any governmental regulations; such service after hours, on Saturday afternoons, Sundays and holidays will be furnished only upon 24 hours' prior written request of Tenant who shall bear the entire cost thereof). Landlord shall furnish janitorial service, in the manner and to the extent deemed standard by Landlord during the periods and hours as such services are normally furnished to all tenants. Tenant shall not hinder the work of the Building janitor. Landlord shall furnish routine maintenance, painting and lighting service for all Common Areas within the Building in the manner and to the extent deemed by Landlord to be standard. Tenant will pay all telephone charges. Landlord shall not be liable in damages or otherwise for failure, stoppage or interruption of any such service nor shall the same be construed as an eviction of Tenant, work an abatement of Rent, or relieve Tenant from the operation of any covenant or agreement set forth herein; but in the event of any failure, stoppage or interruption thereof not caused by Tenant or Tenant's agents, employees, contractors, clients or invites, Landlord shall use reasonable diligence to resume service promptly.

Landlord reserves the right to separately meter usage of any utility service included in Operating Expenses and charge Tenant and other tenants of the Building based on such usage.  Further, Landlord reserves the right from time to time to charge to Tenant and other tenants of the Building applicable costs with respect to usage of Building services and utilities at times other than during standard business hours, on such basis as Landlord may reasonably determine for the purpose of properly allocating the costs of such services and utilities in accordance with the usage thereof.

Notwithstanding anything hereinabove to the contrary, Landlord reserves the right from time to time to make reasonable modifications to the above standards for services and utilities.

10.     **INTENTIONALLY DELETED**.

11.     **PROPERTY OBLIGATIONS.**

11.1    Tenant's Property. Landlord shall not be liable for any damage to or loss of personal property placed in or about the Premises by Tenant or Tenant's agents, employees, clients, guests, invites or others, resulting from fire, theft, explosion, flood, windstorm or other casualty caused by Acts of God or by the acts or omissions of other occupants of other space in the Building or caused by operations during construction of any public or quasi public work. All property kept or stored within the Premises shall be kept or stored at the risk of Tenant only, and Tenant shall hold Landlord harmless from any claims arising out of damage to the same, including subrogation claims by Tenant's insurer, if any, unless such damage shall be caused by the gross negligence of Landlord.

11.2    Tenant Fixtures, Alterations and Personal Property. Tenant shall not make or allow to be made any alterations, modifications or physical additions in or to the Premises without the prior written consent of Landlord which consent shall not be unreasonably withheld or delayed.  Tenant may proceed with the construction of the approved alterations, modifications or physical additions, but only so long as they are in strict compliance with the plans and specifications and with the provisions of this Section 11.2. All alterations shall be made at Tenant's expense, either by Tenant's contractors, which previously have been approved in writing by Landlord, or at Landlord's option, by Landlord's contractors on terms reasonably satisfactory to Tenant, including a fee of five percent (5%) of Landlord's actual cost of the work

to cover Landlord's overhead. None of Tenant's construction, alterations, modifications or physical additions shall (i) alter the exterior appearance of the Building or Premises in any manner, (ii) adversely affect the structure or safety of the Building or Premises or any portion thereof, (iii) fail to comply with all building, safety, fire and other codes and governmental and insurance requirements, or (iv) fail to be completed promptly and in a good and workmanlike manner. All trade fixtures installed by Tenant shall be new or completely reconditioned. At Landlord's option, any such approved additions, alterations, modifications, improvements and/or fixtures furnished or installed by Tenant which are sufficiently affixed or annexed to the Premises so as to become a part thereof, other than unaffixed movable trade fixtures, shall upon the expiration or earlier termination of this Lease, become the property of Landlord.  Any damage to the Premises caused by such installation and/or removal of Tenant's fixtures and equipment shall be repaired at Tenant's sole cost and expense. The provisions of this Section shall expressly survive the expiration or earlier termination of this Lease.

11.3    Liens. Tenant shall neither permit nor suffer an involuntary lien to be filed or affixed against the Building, the Premises, the fee simple title of the Land or Landlord's leasehold estate therein, or any part thereof, and shall not voluntarily grant any lien or security interest therein. In the event any such involuntary or voluntary lien, including without limitation, mechanic's lien or tax lien, is filed and/or affixed against the Building, the Premises the fee simple title of the Land or Landlord's leasehold estate therein, or any part thereof, or against any fixtures, equipment, furnishings therein or all types of work and improvements comprising the Interior of the Premises and Tenant has not caused the same to be released and discharged of record within ten (10) days after notice thereof, same shall constitute a default hereunder. Upon such default, in addition to any other remedies available to Landlord herein, Landlord may cause the release and discharge of such lien, Tenant shall repay to Landlord immediately upon demand as Additional Rent hereunder all such sums disbursed or deposited by Landlord plus an administrative fee not to exceed five percent (5%) of the sums disbursed or deposited. Nothing contained herein, however, shall imply any consent or agreement on the part of Landlord or anyone holding under Landlord to subject Landlord's interest to liability under any mechanic's or other lien law, regardless of whether the performance or the furnishing of such work, labor, services or materials to Tenant or anyone holding under Tenant shall have been consented to by Landlord.

## 12.    **SUBORDINATION/ATTORNMENT.**

12.1    Subordination. Tenant covenants and agrees promptly upon request of Landlord to execute and deliver, in a recordable form provided by Landlord, an acknowledgment of the subordination of this Lease to any mortgage, deed of trust, security agreement or other lien or encumbrance resulting from any method of financing or refinancing, presently or henceforth placed upon the Landlord's leasehold estate in the Land and/or fee interest in the Building and any future expansion thereof or additions thereto, and to all advances of money or other value heretofore or hereafter made upon the security thereof.  Notwithstanding anything to the contrary contained herein, Landlord agrees to obtain a subordination, non-disturbance and attornment agreement ("**SNDA**") from its current lender in a form reasonably acceptable to Tenant which shall provide, among other things, that this Lease shall be recognized and Tenant's rights and occupancy under this Lease shall not be disturbed in the event Tenant is not in default hereunder beyond any applicable notice and cure periods.  In addition, Tenant shall not be required to subordinate its rights under this Lease to the interest of any future lender unless Landlord has first delivered an SNDA to Tenant executed by such future lender in a form reasonable acceptable to Tenant and containing a similar non-disturbance right.

12.2    Collateral Assignment by Landlord. Subject to the foregoing provisions of this Article, Landlord reserves the right, without notice to or consent of Tenant, to assign this Lease and/or any and all Rent hereunder as security for the payment of any mortgage loan, deed of trust loan, or other method of financing or refinancing.

12.3    <u>Attornment</u>. In the event any such mortgage is foreclosed, or in the event of the exercise of the power of sale under any such deed of trust, Tenant shall consider the purchaser at the foreclosure trustee's sale to be the Landlord hereunder, and Tenant will attorn to the purchaser and will recognize the purchaser as the owner and Landlord under this Lease.

## 13.    <u>USE AND OPERATION.</u>

13.1    <u>Use of Premises</u>. The Premises shall be used and occupied by Tenant solely for the Permitted Use and Tenant expressly agrees that no use shall be made or permitted or acts done by Tenant and/or any agents, employees, subtenants, or assignees of Tenant, which shall increase the existing rate of insurance coverage or cause cancellation of such insurance coverage. Tenant shall not (i) permit any objectionable or unpleasant odors to emanate from the Premises; nor place or permit any radio, television, loudspeaker or amplifier on the roof or outside of the Premises or where the same can be seen or heard from outside the Premises; (ii) place any antenna, awning or other projection on the exterior of the Premises; (iii) take any other action which would constitute a nuisance or would disturb or endanger other tenants of the Building or unreasonably interfere with their use of their respective premises; or (iv) do anything which would tend to injure the reputation of the Building.  Tenant shall at all times comply with all terms and provisions of the Ground Lease and Declaration applicable to Tenant, or Tenant's use of the Premises and Common Areas.

13.2    <u>Suitability of Premises</u>. Tenant warrants to Landlord that it has, prior to the execution hereof, fully inspected the Building, the Common Areas, the property and all items related thereto, and that Tenant has made, performed, obtained and received all studies, inspections, reports, diagnoses and tests that Tenant desires relative to the Building, the Common Areas, the property and all items related thereto and Tenant's proposed business use of the Premises. Tenant further warrants to Landlord that Tenant has inspected, or will thoroughly inspect, the Plans and Specifications agreed and to be agreed with Landlord for Landlord's construction of the shell of the Premises and will be fully satisfied with such inspections and Plans and Specifications for the Premises. Tenant understands and agrees that Tenant is accepting the Building, the Common Areas, the property and all items related thereto, and will be accepting the Premises, in their "AS-IS", "WHERE-IS" condition, "WITH ALL FAULTS" and without any warranty or guarantee whatsoever.  Tenant warrants that it used or will use all due diligence in conducting all studies inspections, diagnoses and tests on the Premises the Building, the Common Areas, the property and all items related thereto that Tenant deemed necessary or appropriate. Tenant acknowledges that Landlord has not made and does not make, and Landlord hereby disclaims, any and all warranties, express or implied, which in any way relate to the Premises the Building, the Common Areas, the property and all items related thereto or the condition thereof, including without limitation any implied warranty of suitability or habitability. Tenant further understands that Landlord has relied and will rely upon Tenant's having made all inspections Tenant desired, and that but for such inspections by Tenant, Landlord would not have leased the Premises to Tenant. Additionally, the parties agree that the obligation of Tenant to pay all Rent and other sums hereunder provided to be paid by Tenant, and the obligation of Landlord to perform Landlord's other covenants and duties hereunder, constitutes independent, separate and unconditional obligations to be performed at all times provided for hereunder, save and except only when an abatement thereof or reduction therein is expressly provided for herein and not otherwise. It is agreed that in the event Landlord commences any proceedings against Tenant for nonpayment of Rent or any other sum due and payable by Tenant hereunder, Tenant shall not interpose any counterclaim or other claim against Landlord of whatever nature or description in any such proceedings; and in the event Tenant interposes any such counterclaim or other claim against Landlord in any such proceeding, Landlord and Tenant stipulate and agree that, in addition to any other lawful remedy of Landlord, upon motion of Landlord, such counterclaim or other claim asserted by Tenant shall be severed out of the proceedings instituted by Landlord and Landlord may proceed to final judgment separately and apart from and without consolidation with or reference to the status of such counterclaim or any other claim asserted by Tenant.

14.     **HAZARDOUS MATERIALS.**

14.1     Tenant, and all of Tenant's partners, officers, directors, employees, representatives, agents, contractors, subcontractors, successors, assigns, lessees, sublessees, concessionaires, invitees and any other occupants of the Premises (collectively, "**Tenant's Representatives**"), shall abide by all Federal, state and local statutes, ordinances, codes and regulations, now existing or hereinafter enacted (collectively, "**Hazardous Materials Laws**"), governing the use, handling, depositing or disposal of hazardous or toxic substances, and medical wastes (collectively, "**Hazardous Materials**").  Landlord has no obligation to provide or make provision for disposal facilities for Hazardous Materials or other medical wastes, and Tenant shall not deposit or dispose of any Hazardous Materials or other medical wastes into the general waste disposal facilities provided by Landlord.  Tenant shall, at Tenant's expense, employ or engage private waste management services to dispose of any and all waste of Tenant which must be handled in any manner other than general waste collection provided by Landlord through public or private waste collection service. Landlord may direct the manner of disposal and location of any containers, collection boxes or other storage facilities, which may be required by Hazardous Materials Laws.

14.2     The term "**Hazardous Materials**" shall not include (i) pharmaceuticals, cleaning agents of the types and in the quantities and concentrations normally stocked by health care providers located in medical office buildings similar to the Building, (b) oil in the minimal amounts typically associated with the use of certain portions of the Building for driving and parking motor vehicles or (c) medical wastes generated at the Building; however, Tenant shall use, store, transport and dispose of the foregoing in accordance with all laws including (without limitation) all Hazardous Materials Laws.

14.3     Tenant shall indemnify, defend and hold harmless Landlord, the "**Hospital**" and the holder ("**Mortgagee**") of any mortgage encumbering all or any portion of the Building or the real property upon which the Building is situated or Landlord's leasehold estate in the Land ("**Mortgage**"), and their respective members, managers, partners, shareholders, directors, officers, agents and employees (all collectively referred to as the "**Indemnified Parties**") from and against any and all costs, expenses and claims arising from or in connection with any act, omission or negligence of Tenant or any Tenant's Representatives relating to or arising out of the use, handling, depositing or disposal of Hazardous Materials with respect to the Premises or the Building, such indemnity to include all costs, expenses and liabilities associated with the remediation thereof or incurred in connection with each claim, action or proceeding with respect thereto, including, without limitation, all attorney's fees and expenses.

14.4     Tenant shall immediately notify Landlord in writing of:  (i) any enforcement, clean-up, removal or other governmental or regulatory action instituted, contemplated or threatened concerning the Premises pursuant to any Hazardous Materials Laws; (ii) any claim made or threatened by any person against Tenant or the Premises relating to damage contribution, cost recovery, compensation, loss or injury resulting from or claimed to result from any Hazardous Materials on or about the Premises; and (iii) any reports made to any environmental agency arising out of or in connection with any Hazardous Materials in or removed from the Premises, including any complaints, notices, warnings or asserted violations in connection therewith, all upon receipt by Tenant of actual knowledge of any of the foregoing matters. Tenant shall also supply to Landlord a promptly as possible and in any event within five (5) business days after Tenant first receives or sends the same, copies of all claims, reports, complaints, notices, warnings or asserted violations relating to Hazardous Materials associated with the Premises.

14.5     Without limiting any other provision of this Lease, Tenant shall not create or permit to exist in or about the Premises any "**Mold Condition**" unless caused by Landlord.  As used herein, the term Mold Condition shall include the presence or suspected presence of "**Mold**" or any condition(s) that reasonably can be expected to give rise to or indicate the presence of Mold, including observed or suspected instances of water damage or intrusion, the presence of wet or damp wood, cellular wallboard, floor

coverings or other materials, inappropriate climate control, discoloration of walls, ceilings or floors, complaints of respiratory ailment or eye irritation by Tenant's employees or any other occupants or invitees in the Premises, or any notice from a governmental agency of complaints regarding the indoor air quality at the Premises.  As used herein, the term Mold shall include mold, mildew, fungus or other potentially dangerous organisms.  In the event of suspected or actual Mold or Mold Conditions at the Premises, Tenant shall immediately notify Landlord in writing of the same and the precise location thereof.  Tenant acknowledges the control of moisture and Mold prevention are material obligations of Tenant under this Lease, and Tenant shall, at its sole costs and expense, regularly monitor the Premises for the presence of Mold and Mold Conditions.  If any Mold or Mold Conditions in or about the Premises are a result of the actions or omissions of Tenant or any Tenant's Representatives, Tenant shall promptly, at Tenant's sole cost and expense, hire a licensed and experienced Mold remediation contractor to completely clean-up and remove from the Premises all Mold or Mold Conditions.  All such clean-up, removal and remediation shall, in each instance, be conducted to the satisfaction of Landlord and any governmental authority with jurisdiction and otherwise in strict compliance with all applicable laws.  Such clean-up, removal and remediation shall also include removal and replacement of any infected host materials as well as any repairs and refinishing required as the result of such removal and replacement.  There shall be no abatement of Rent on account of any clean-up, removal or remediation of any such Mold or Mold Condition.  Tenant waives, releases and discharges Landlord and all Indemnified Parties for, from and against all claims, demands, causes of action, suits, judgments, liabilities, losses, damages and expenses (including attorneys' fees) for personal injury, bodily injury or property damages in any way arising from or relating to or associated with moisture or the growth of or the presence of Mold or Mold Conditions.

## 15.  **ASSIGNING, MORTGAGING, SUBLETTING.**

15.1    Prohibitions.  Except as otherwise permitted pursuant to Section 15.1 or 15.2, Tenant shall not (i) transfer, assign or hypothecate this Lease, (ii) sublet any portion of the Premises, (iii) enter into any license, concession or other right of occupancy of any portion of the Premises, (iv) permit any other entity to become Tenant hereunder by merger, consolidation, or other reorganization, (v) if Tenant is an entity other than a corporation whose stock is publicly traded, permit the transfer of an ownership interest in Tenant that results in a Material Change in Ownership (defined below) (each, a "**Transfer**"), without first procuring the written consent of the Landlord, which consent may not be unreasonably withheld or delayed.  Any Transfer, whether voluntary or involuntary, by operation of the law or otherwise, without the prior written consent of Landlord first had and obtained therefor, shall be null and void, at the option of Landlord, and Landlord may declare a default and exercise all remedies available to Landlord under this Lease or at law.  Notwithstanding the foregoing provisions of this Section 15.1 to the contrary, Tenant may sublet the Premises to Professionals and/or Physicians associated with the Hospital.

15.2    Material Change in Ownership.  If Tenant is an entity of any type, then the sale, transfer or other change of 49.9% or greater of the ownership interests of Tenant shall constitute a "**Material Change in Ownership**", in which event Landlord shall consent to the resulting Transfer provided that Tenant provides to Landlord (i) at least thirty (30) days' prior written notice of such anticipated Material Change in Ownership, (ii) all relevant details of the proposed Material Change in Ownership, including updated financial statements reflecting the financial condition of the proposed assignee post Material Change in Ownership ("**Post Material Change in Ownership Financial Statements**"), and (iii) the Post Material Change in Ownership Financial Statements reflecting a minimum Tangible Net Worth of $150,000,000.  As used herein, "**Tangible Net Worth**" means the excess of total assets over total liabilities, in each case as determined in accordance with generally accepted accounting principles consistently applied ("**GAAP**"), excluding, however, from the determination of total assets all assets that would be classified as intangible assets under GAAP including, goodwill, licenses, patents, trademarks, trade names, copyrights, and franchises.

15.3    Liability; Release.  Tenant shall not be released from any liability or obligation under this Lease as a result of any Transfer or Landlord's consent to any Transfer; provided, however, if (i) Landlord consents to a proposed Transfer that would occur as a result of (A) any other entity becoming Tenant hereunder by merger, consolidation, or other reorganization, (B) any transfer of an ownership interest in Tenant that results in a Material Change in Ownership or (C) any assignment of this Lease for the remainder of the Term, and (ii) the entity comprising Tenant after such Transfer has a Tangible Net Worth together with any new guarantor that is equal to or greater than (1) the aggregate Tangible Net Worth of Tenant and Guarantor at the time of this Lease and (2) a minimum Tangible Net Worth of $150,000,000, then Tenant shall be released from further liability under this Lease for the unexpired Term following such Transfer. Tenant shall provide to Landlord any information reasonably requested by Landlord to evaluate the satisfaction of any Tangible Net Worth requirements contemplated in this Section 15.

15.4    Conditions to Consent. Landlord may condition its consent to any assignment or subletting (i) upon Tenant's agreement to termination of this Lease and simultaneous creation of a new lease between Landlord and the proposed successor, or (ii) upon Tenant's agreement simultaneously with the execution of any sublease or assignment approved by Landlord, to name Landlord its agent for purposes of collection of rental from the subtenant approved by Landlord under any such sublease or assignment (in order to enable Landlord to maintain its collection and other relationships).

15.5    Transactions Consented To. Each Transfer to which there has been consent shall be by an instrument in writing in form satisfactory to Landlord and shall be executed by the transferor, assignor, sublandlord, licensor, concessionaire, hypothecator or mortgagor and the transferee, assignee, subtenant, licensee concessionaire or mortgagee in each instance, as the case may be, and each transferee, assignee, subtenant, licensee, concessionaire or mortgagee shall agree in writing for the benefit of the Landlord herein to assume, to be bound by, and to perform the terms, covenants and conditions of this Lease to be done, kept and performed by the Tenant. One (or more, if required by Landlord) executed copy of such written instrument shall be delivered to Landlord.  Failure to first obtain in writing Landlord's consent or failure to comply with the provisions of this Article shall operate to prevent any such transfer, assignment, subletting, license, concession agreement or hypothecation from becoming effective.

15.6    Excess Rental.  If the rental due and payable by any assignee or subtenant under any such permitted assignment or sublease (or a combination of the rental payable under such assignment or sublease plus any bonus or other consideration therefor or any payment incident thereto) for the Premises (or any portion thereof) exceeds the rent payable under this Lease for the Premises (or any portion thereof), Tenant shall be bound and obligated to pay to Landlord fifty percent (50%) of all such excess rental and other excess consideration within ten (10) days following receipt thereof by Tenant from such assignee or subtenant, as the case may be.

16.    **WASTE, NUISANCE, APPLICABLE LAWS.**

16.1    Waste and Nuisance. Tenant shall not commit or suffer to be committed any waste in or upon the Premises and shall not commit or suffer to be committed therein any nuisance or other act or thing which may disturb the quiet enjoyment of any other tenant in the Building, or which may disturb the quiet enjoyment of any person within the immediate vicinity of the Building.

16.2    Tenant's Compliance with Laws. Tenant shall, at Tenant's sole cost and expense, comply with all the requirements of all federal, state, county, municipal and other applicable authorities, now in force or which may hereafter be in force in connection with Tenant's use of the Premises.

17.   <u>**DESTRUCTION.**</u>

17.1   <u>Notice of Loss</u>. Tenant shall give immediate notice to Landlord in the event of fire or other accidents or casualties within the Premises or in or around the Building, and such other notice as prescribed by the fire and extended coverage insurance policy required herein to be carried thereon, and further, Tenant shall give immediate notice to Landlord of any defect in any of the fixtures or equipment located within the Premises or in or around the Building.

17.2   <u>Premises Useable</u>. In the event the Premises shall be damaged by fire or other casualty, but shall not be rendered wholly or partially unusable, regardless of the time remaining in the Term, Landlord shall cause such damage to be repaired, and the Base Rent shall not be reduced or abated unless the repairs are delayed beyond ninety (90) days after commencement of such repairs, and thereafter, only if Landlord is not diligently pursuing such repairs, and then only to the extent as may be equitable based upon the amount of damage.

17.3   <u>Premises Unusable</u>. If the Premises shall be rendered partially or wholly unusable, Landlord shall cause such damage to be repaired and the Base Rent shall be reduced in proportion to Tenant's loss of effective use of the Premises during such repair.

17.4   <u>Building Damaged</u>. In the event all or part of the Building, other than the Premises, shall be damaged or destroyed by fire or other casualty, and regardless of the time remaining in the Term, Landlord shall cause such damage to be repaired. Neither Base Rent nor any other sums due hereunder shall be abated or reduced.

17.5   <u>Scope of Repair</u>. In the event Landlord elects or shall be obligated to repair or restore any damage or destruction as aforesaid, the scope of the work shall be limited to the shell of the Building and Lease Premises. Landlord shall not be required to make repairs or replacements of any panels, decoration, trade fixtures, railings, floor covering, partitions or other parts of the Interior of the Premises or any other property installed or placed in the Premises by Tenant.

17.6   <u>Commencement of Repairs</u>.  Anything to the contrary herein notwithstanding, Landlord shall not be required to commence repairs and/or restoration prior to the expiration of sixty (60) days following the occurrence or the receipt by Landlord of the insurance proceeds covering said damage, whichever event shall first occur.

18.   <u>**CONDEMNATION.**</u>

18.1   <u>Total Taking</u>. If all of the Premises should be taken for any public or quasi public use under any governmental law, ordinance or regulation or by right of eminent domain or by private purchase in lieu thereof, then this Lease shall terminate and the Rent shall be abated during the unexpired portion of the Term, effective on the date physical possession is taken by the condemning authority.

18.2   <u>Partial Taking</u>. If any part (but not all) of the Building, Common Areas or the Premises should be so taken, Landlord may terminate this Lease if Landlord, in its sole discretion, so elects. Any election to terminate this Lease in accordance with this provision shall be evidenced by written notice of termination to Tenant within thirty (30) days after the date physical possession is taken by the condemning authority. If this Lease is not so terminated, the Base Rent payable hereunder during the unexpired portion of the term shall be reduced in proportion to the area of the Premises taken, effective on the date physical possession is taken by the condemning authority.

18.3    <u>Award</u>. All compensation awarded for any taking (or the proceeds of private sale in lieu thereof) of the Building, the Premises or the Common Areas shall be the property of Landlord and Tenant hereby assigns its interests in any such award to Landlord

## 19.    <u>QUIET ENJOYMENT.</u>

So long as Tenant shall pay all Rent and other payments due hereunder and shall observe and perform all of the covenants on Tenant's part to be observed and performed hereunder, and Tenant is not in default hereunder (beyond any applicable notice or cure periods), Tenant shall peaceably and quietly hold and enjoy the Premises (including easement rights) for the entire Term hereof without interruption by Landlord or person or persons lawfully or equitably claiming by, through or under Landlord, subject, nevertheless, to all of the terms and provisions of this Lease and to the reservations, encumbrances and limitations affecting the title to the premises upon which the Building is situated.

## 20.    <u>DEFAULT AND REMEDIES.</u>

20.1    <u>Default</u>. The following events shall be deemed to be the events of default by Tenant under this Lease:

(1)    Tenant shall fail to pay any installment of the Base Rent or any Additional Rent within five (5) business days after receipt of written notice of such failure from Landlord. Notwithstanding the foregoing, Landlord shall not be obligated to provide written notice more than twice in any twelve (12) month period.

(2)    Tenant shall fail to comply with any term, provision or covenant of this Lease, other than the payment of any sums due Landlord, including but not limited to, the Base Rent or any Additional Rent, and Tenant shall not cure such failure within thirty (30) days after written notice thereof of Tenant (or such shorter notice period as may be provided elsewhere in this Lease for specific events of default); provided, however, that if such failure cannot be reasonably cured within thirty (30) days, then Tenant shall have such additional time to cure as is reasonable under the circumstances provided that Tenant diligently continues to pursue such cure.

(3)    An event of default shall occur and remain uncured within the time stated for such cure under any Related Lease.

(4)    Tenant or any guarantor of Tenants' obligations hereunder shall become insolvent in any chapter of the United States Bankruptcy Code, or shall make a transfer in fraud of creditors, or shall make an assignment for the benefit of creditors.

(5)    Tenant or any guarantor shall file a petition under any section or chapter of the United States Bankruptcy Code, or under any similar law or statute of the United States or any state thereof; or Tenant shall be adjudged bankrupt or insolvent as defined in any chapter of the United States Bankruptcy Code in proceedings filed against Tenant or any guarantor of Tenant's obligations under this Lease.

(6)    A receiver or trustee shall be appointed for the Premises or for all or substantially all of the assets of Tenant or any guarantor and such receiver or trustee shall not be discharged within thirty (30) days following such appointment.

(7)    The discovery by Landlord that any financial statement given by Tenant or any of its assignees, subtenants or successors-in-interest, or any guarantor of Tenant's obligations hereunder to Landlord, was materially false.

20.2    <u>Remedies</u>.

(1)    Upon the occurrence of any event of default hereunder, and notwithstanding the fact that the termination or cancellation of this Lease by Landlord may substantially interfere with the ability of Tenant to conduct a non-liquidation proceeding under any chapter of the United States Bankruptcy Code, Landlord shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever.

(i)    Terminate this Lease, in which event Tenant shall immediately surrender the Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which Landlord may have for possession or arrearages in Rent, enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying said Premises or any part thereof, without being liable for prosecution or any claim for damages therefor and Tenant agrees to pay Landlord, on demand, the amount of all losses, expenses and damages, including attorneys' fees, which Landlord may suffer by reason of such termination; and/or

(ii)    Enter upon the Premises and correct such default or otherwise do whatever Tenant is obligated to do under the terms of this Lease; and Tenant agrees to pay Landlord, on demand, the amount of all  losses, expenses and damages, including attorneys' fees which Landlord may incur in connection with attempts to effect compliance with Tenant's obligations under this Lease, and Tenant further agrees that Landlord shall not be liable for prosecution or  any claim for damages resulting to Tenant from such action, and/or

(iii)    Enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying said Premises or any part thereof, without being liable for prosecution or any claim for damages therefor, and if Landlord so elects, relet the Premises on such terms as Landlord may deem advisable and receive rental therefor.

Pursuit of any of the foregoing remedies shall not preclude pursuit of any other remedies herein provided or provided by law, or at equity, nor shall pursuit of any other such remedy constitute a forfeiture or waiver of any Rent or other sums due to Landlord hereunder or of any damages accruing to the Landlord by reason of the violation of any of the terms, provisions and covenants herein contained. Forbearance by Landlord to enforce one or more of the remedies herein provided upon an event of default shall not be deemed or construed to constitute a waiver of such default. In determining the amount of loss or damage which Landlord may suffer by reason of termination of this Lease or the deficiency arising by reason of any reletting by Landlord as above provided, allowance shall be made for the expense of repossession and any repairs or remodeling undertaken by Landlord following repossession.

(2)    Exercise by Landlord of any one or more remedies herein granted or otherwise available shall not be deemed to be an acceptance of surrender of the Premises by Tenant, whether by agreement or by operation of law it being understood that such surrender can be effected only by the written agreement of Landlord and Tenant. No removal or other exercise of dominion by

Landlord over the property of Tenant or others at the Premises shall be deemed unauthorized or constitute a conversion. Tenant hereby consenting, after any event of default, to the aforesaid exercise of dominion over Tenant's property within the Building. All claims for damages by reason of such reentry and/or repossession and/or alteration of locks or other security devices are hereby waived, as are all claims for damages by reason of any distress warrant, forcible detainer proceedings, sequestration proceedings or other legal process. Tenant agrees that any reentry by Landlord may be pursuant to judgment obtained in forcible detainer proceedings or other legal proceedings, as Landlord may elect and Landlord shall not be liable in trespass or otherwise,(after deducting expenses incurred by Landlord as provided herein). In no event shall Tenant be entitled to any excess of any rental obtained by reletting over and above the Rent herein reserved. Actions to collect amounts due by Tenant as provided in this paragraph may be brought from time to time, on one or more occasions, without the necessity of Landlord's waiting until expiration of the Lease Term.

(3)     In the event Landlord elects to terminate this Lease by reason of event or default, then notwithstanding such termination, Tenant shall be liable for and shall pay to Landlord, at Landlords Address as defined in <u>Section 1</u> herein, the sum of all Rent, Additional Rent and other indebtedness accrued to the date of such termination, plus, as damages, an amount equal to the present value of the Rent and any and all other sums reserved hereunder for the remaining unexpired portion of the Lease Term (had the Lease not been so terminated by Landlord), less the then present value of the then fair rental value of the Premises.

(4)     In the event Landlord elects to repossess the Premises without terminating the Lease, then Tenant shall be liable for and shall pay to Landlord at Landlords Address as defined in <u>Section 1</u> hereinabove, all Rent and other indebtedness accrued to date of such repossession, plus all Rent and any and all other sums required to be paid by Tenant to Landlord during the remainder of the Lease Term until the date of expiration of the Term, diminished by any net sums thereafter received by Landlord through reletting the Premises during Period (after deducting expenses incurred by Landlord as provided herein). In no event shall Tenant be entitled to any excess of any rental obtained by reletting over and above the Rent herein reserved. Actions to collect amounts due by Tenant as provided in the paragraph may be brought from time to time, on one or more occasions, without necessity of Landlord's waiting until expiration of the Lease Term.

(5)     In the event of termination or repossession of the Premises for an event of default, Landlord shall have an obligation to attempt to relet the Premises, or any portion thereof. However, in the event of reletting Landlord may relet the whole or any portion of the Premises for any period, to any tenant, and for any use and purpose. Should Landlord choose to relet the Premises, or any portion thereof, for the remainder of the Term provided for herein, and if the rental received through reletting does not at least equal the Rent provided for herein, Tenant shall pay and satisfy the deficiency between the amount of the Rent so provided for and that received through reletting, including, but not limited to, the cost of renovating, altering, and decorating for a new occupant. Further, Tenant shall not in any event ever be entitled to any excess rental and other sums provided for herein, and the same shall belong solely to Landlord. Nothing herein shall be construed as in any way denying Landlord the right, in the event of abandonment of said Premises or other breach of this Lease by Tenant, to treat the same as an entire breach and at Landlord's option to terminate this Lease and/or immediately seek recovery for the entire breach of this Lease and any and all damages which Landlord suffers thereby.

(6)     If Tenant should fail to make any payment or cure any default hereunder within the time herein permitted, Landlord, without being under any obligation to do so and without thereby waiving such default, may make such payment and/or remedy such other default for the account of

Tenant (and enter the Premises for such purpose), and thereupon Tenant shall be obligated and hereby agrees, to pay Landlord, upon demand, all costs, expenses and disbursements (including reasonable attorneys' fees) incurred by Landlord in taking such remedial action.

(7)     In the event of the breach or the attempted or threatened breach of any covenant or provision contained in this Lease by Tenant, Landlord shall have, in addition to all other remedies provided it hereunder or by law or at equity, the right to obtain an injunction prohibiting such breach or attempted breach without the necessity for proof of inadequacy of legal remedy, irreparable harm or probable right of recovery.

20.3     Expenses/Attorneys' Fees. In the case of an event of default hereunder, Tenant shall also be liable for and shall pay to Landlord, at Landlords Address as defined in Section 1 herein, in addition to any sum provided to be paid above: broker's fees incurred by Landlord in connection with reletting the whole or any part of the Premises; the costs of removing and storing Tenant's or other occupant's property; the costs of repairing, altering, remodeling or otherwise putting the Premises into condition acceptable to a new tenant or tenants, and all reasonable expenses incurred by Landlord in enforcing Landlord's rights or remedies, including reasonable attorneys' fees and court costs until the expiration of the Term.  Tenant shall permit the Landlord to exhibit the Premises to prospective tenants and to place notices upon the Premises advertising "For Lease".  Landlord may at any time, exhibit the Premises to prospective purchasers. and place notices, upon the Building or the Premises advertising "For Sale."

20.4     Landlord's Breach.  In the event of any default by Landlord, Tenant's exclusive remedy shall be an action for damages (Tenant hereby waiving the benefit of any laws granting it a lien upon the property of Landlord and/or upon rental due Landlord), but prior to any such action Tenant will give Landlord written notice specifying such default with particularity, and Landlord shall thereupon have thirty (30) days in which to cure any such default. Unless and until Landlord fails to so cure any default after such notice, Tenant shall not have any remedy or cause of action by reason thereof. All obligations of Landlord hereunder will be construed as covenants, not conditions; and all such obligations will be binding upon Landlord only during the period of its possession of the Building and not thereafter.

20.5     Limitation on Landlord's Personal Liability. Tenant specifically agrees to look solely to Landlord's interest in the Building for the recovery for any judgment from Landlord, it being agreed that Landlord, its agents, employees, shareholders, officers, directors, and limited partners, shall never be personally liable hereunder for anything whatsoever.

## 21.   ACCESS.

Landlord or its agents shall have the right to enter the Premises at all reasonable times, and whenever necessary because of emergencies, to inspect the same, and to make such repairs, replacements, alterations, improvements or additions as Landlord may deem necessary or desirable, including alterations, repairs, improvements or additions to the space adjacent to Premises and/or to the Building, without the same constituting an eviction of Tenant in whole or in part, and the Rent reserved shall in no way abate while said repairs, replacements, alterations, improvements or additions are being made, by reason of loss or interruption of Tenant's business or otherwise. During the ninety (90) days prior to the expiration of the Term, Tenant shall permit the Landlord to exhibit the Premises to prospective tenants and to place notices upon the Premises advertising "For Lease".  Landlord may, at any time, exhibit the Premises to prospective purchasers, and place notices, upon the Building or the Premises advertising "For Sale."

22.    **SURRENDER AND REMOVAL OF PROPERTY.**

22.1    <u>Surrender of Premises</u>. Promptly upon the expiration or earlier termination of the Term, Tenant shall surrender the Premises in the same condition as received by Tenant on the Commencement Date reasonable wear and tear and damage by unavoidable casualty or Act of God only excepted. Further, Tenant shall surrender all keys to the Premises at the place then fixed for the payments of Base Rent due hereunder. All items of work and improvements comprising the Interior of the Premises, shall constitute a part of the fee estate remainder subject to this Lease, notwithstanding that Tenant may construct or cause to be constructed all or any part of said improvements or may contribute to the cost thereof, and notwithstanding that Tenant may or might be required to maintain, repair and/or replace same or some part thereof pursuant to some other provisions in this Lease. Subject to the provisions of this Section, Tenant shall remove all of Tenant's trade fixtures, operation equipment and other personal property before surrendering the Premises as aforesaid and shall repair at Tenant's expense any damage to the Premises caused thereby.

22.2    <u>Failure to Remove Property</u>. If Tenant shall neglect to remove Tenant's personally as herein provided, Landlord shall have the right (i) to remove said property and cause it to be stored in a public warehouse or elsewhere, at the cost of and for the account of Tenant, or (ii) in the alternative, if said property shall not be removed within thirty (30) days after said termination, to dispose of said property in a manner deemed suitable to Landlord, all without service of notice or resort to legal process and without becoming liable for any loss damage which may be occasioned thereby, and any proceeds of such disposition shall be retained by Landlord without liability to Tenant, Tenant hereby waiving any interest in such proceeds.

22.3    <u>Survival of Covenants</u>. Tenant's obligations to observe or perform the covenants contained in this Article shall expressly survive the expiration or earlier termination of the Term.

23.    **HOLDING OVER.**

Any holding over without the consent of Landlord after the expiration or earlier termination of the Term shall be construed to be and shall constitute a tenancy at the will of Landlord, and Tenant agrees to pay as rents and liquidated damages for such holding over a sum equivalent to the Rent herein specified and reserved plus fifty percent (50%) of the Base Rent (prorated on a monthly basis) and shall otherwise be on the same terms and conditions herein, as far as applicable.

24.    **ESTOPPEL/MEMORANDUM.**

24.1    <u>Estoppel Certificate</u>.  Within ten (10) days after request therefore by Landlord, Ground Lessor or any Mortgagee, Tenant shall deliver in recordable form (and signed by Tenant, if an individual, or a duly authorized representative of Tenant if Tenant is not an individual) a statement to Landlord, Ground Lessor any Mortgagee, or any proposed Mortgagee or transferee of the Project (as the case may be), certifying (if such be the case) that this Lease is in full force and effect, that Tenant is in possession of the Premises, that Tenant has commenced the payment of Rent, that there are no defenses or offsets to this Lease claimed by Tenant, as well as any other information reasonably requested.  If Tenant fails or refuses to give a certificate hereunder within the time period herein specified, then the information contained on such certificate as submitted by Landlord shall be deemed correct for all purposes, but Landlord shall have the right to treat such failure or refusal as a default by Tenant.

24.2    <u>Memorandum of Lease</u>. Promptly after the Commencement Date, Landlord and Tenant, if requested by Landlord, shall execute and acknowledge and deliver a memorandum or short form of this Lease, in recordable form, acknowledging Tenant's acceptance of the Premises for all purposes herein

provided and specifying the Commencement Date and the termination date of this Lease in accordance with the provisions hereof, and said memorandum may be recorded by Landlord only, but this Lease Agreement itself shall not be recorded. In the event Tenant records a memorandum of this Lease, or this Lease, Tenant shall be in default under this Lease and Landlord may terminate this Lease upon five (5) days written notice to Tenant at Tenant's address set forth in <u>Section 1.1</u> hereof.

25.  **NOTICES.**

All notices required or permitted to be given hereunder by either party hereto to the other party shall be deemed sufficiently given or made on the day of receipt thereof or three (3) business days after the date when mailed by United States Registered or Certified Mail, adequate postage paid, to their respective addresses as specified in <u>Section 1.1</u> hereof. Each party hereto may notify the other party of any change in its mailing address by notice in the manner herein above provided, which new address shall thereafter be deemed the proper address for notice hereunder.

26.  **TENANT'S PAYMENTS.**

26.1  <u>Payments</u>. Tender of Rent and/or any other payment due hereunder shall be considered to have been made on the date such payments received by Landlord and not on the date mailed by Tenant. For purposes hereof, the office of Landlord is the office presently or henceforth designated pursuant to the provisions of <u>Section 1.1</u> hereof. Checks or drafts tendered will constitute payment only when duly paid by the drawers bank promptly upon presentment, properly endorsed, for payment.

26.2  <u>Interest</u>. All sums due and owing by Tenant to Landlord under this Lease shall bear interest at the Prime Rate (as defined in the *Wall Street Journal*) plus four percent (4%) from the date due until paid.

27.  **LANDLORD'S LIEN.**

To secure the payment of all Base Rent, and Additional Rent reserved herein, and all other payments due Landlord hereunder, or to become due hereunder and the faithful performance of all covenants, agreements and stipulations herein contained to be performed by Tenant, Tenant hereby grants to Landlord an express first and prior contract lien and security interest on all property (including fixtures, equipment, inventory, goods, wares, furniture, office equipment, supplies and merchandise) which may be placed in the Premises, and also upon all proceeds of any insurance which may accrue to Tenant by reason of destruction of or damage to any such property. Tenant hereby waives all exemption laws in favor of said lien and security interest. This lien and security interest is given in addition to the Landlord's statutory lien and shall be cumulative thereof. Tenant shall not remove any property from the Premises until all of Tenant's obligations under this Lease are satisfied. This lien may be foreclosed with or without court proceedings by public or private sale, provided Landlord gives Tenant at least ten (10) days notice of the time, place and terms of said sale, and Landlord shall have the right to become the purchaser of such property, upon being the highest bidder therefor at said sale. The notice referred to in the preceding sentence may (but needs not) be given by Landlord to Tenant contemporaneously with any other notice from Landlord to Tenant which may be given in accordance herewith. At the time of the execution of this Lease, and if requested thereafter by Landlord, Tenant shall execute and deliver to Landlord financing statement instruments in form deemed sufficient by Landlord to reflect the security interest herein granted and any proper amendment of, assignment of, modification in or extension of the aforesaid contract lien and security interest hereby granted. Tenant hereby grants to Landlord a power of attorney to sign, in place and stead of Tenant, any and all such instruments. Said power of attorney is irrevocable and coupled with an interest.

28.     **RULES AND REGULATIONS.**

Such reasonable rules and regulations applying to all tenants in the Building as may be adopted by Landlord for the safety, care, cleanliness, preservation of good order or operation of the Premises, the Building, the Property and the Common Areas, are hereby made a part hereof and Tenant agrees to comply with all such rules and regulations, immediately upon receipt of a copy of same. Landlord shall have the right at all times to change any of the rules and regulations or to amend them in any manner deemed reasonable by Landlord. All changes and amendments will be sent by Landlord to Tenant in writing and shall be thereafter carried out and observed by Tenant.  As of the Effective Date, the rules and regulations are set forth on Exhibit D.

29.     **BROKERS.**

None.

30.     **AUTHORITY.**

Each of the persons executing this Lease on behalf of Tenant represents and warrants that Tenant has been and is qualified to do business in the state in which the Building is located, that the Tenant Entity has full right and authority to enter into this Lease, and that all persons signing on behalf of the Tenant Entity were authorized to do so by all appropriate actions required of such entity.  If Tenant signs as a partnership, trust or other legal entity, each of the persons executing this Lease on behalf of Tenant represents and warrants that Tenant has complied with all applicable laws, rules and governmental regulations relative to its right to do business in the state in which the Building is located, and that each of the persons or entities acting on behalf of the Tenant was authorized to do so by any and all appropriate partnership, trust or other actions.

31.     **LIABILITY OF LANDLORD.**

Tenant shall look solely to Landlord's interest in the Building, including revenue derived from the Project, and Landlord's personal property used in connection with the Project for the satisfaction of any judgment or decree requiring the payment of money by Landlord, based upon any default hereunder, and no other property or asset of Landlord shall be subject to levy, execution, or other enforcement procedure for the satisfaction of such judgment or decree.  **IN NO EVENT SHALL LANDLORD BE LIABLE OR RESPONSIBLE FOR ANY CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGES.**

32.     **SCOPE AND INTERPRETATION OF AGREEMENT; CONFIDENTIALITY.**

This Lease and all Exhibits set forth including all of the covenants, promises, agreements, conditions, and understandings between Landlord and Tenant concerning the Premises, and there are no covenants, promises, conditions, or understandings, either oral or written, other than as set forth herein.  No subsequent alteration, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by both parties.  This Lease shall not be more strictly enforced against either party regardless of who was more responsible for its preparation.  Except at Landlord's option, no part of this Lease or any memorandum thereof may be recorded in the public records of any municipality or county.  Tenant will maintain the confidentiality of this Lease and will not divulge the economic or other terms of this Lease, whether verbally or in writing, to any person, other than Tenant's officers, directors, partners or shareholders; Tenant's attorneys, accountants and other professional consultants; any governmental agencies; and pursuant to subpoena or other legal process.  If any provision of this Lease shall be determined to be void by any court of competent jurisdiction or by any law enacted subsequent to the

Effective Date, then such determination shall not affect any other provisions hereof, all of which other provisions shall remain in full force and effect.

### 33.   LANDLORD'S CONSENT.

Without limiting any other provision of this Lease, in the event that Landlord's consent is required by the terms hereof for any purpose whatsoever, it is understood and agreed that (a) Landlord's consent may be subject to the consent of the Ground Lessor, Declarant  and/or the holder of any Mortgage encumbering the Building to the extent that such consents are required under the terms of the Ground Lease, Declaration or the applicable financing documents (which consents Landlord shall seek to obtain) and (b) notwithstanding anything to the contrary set forth herein, it shall not be deemed unreasonable for Landlord to withhold its consent in any given circumstance based upon Landlord's inability to obtain any required consent from the Ground Lessor, Declarant or the holder of any Mortgage encumbering the Building.

### 34.   USE OF PREMISES.

Tenant shall use and occupy the Premises only for the Permitted Use, and for no other purpose, without the prior written consent of Landlord.

### 35.   GUARANTY.

As material consideration for Landlord to enter this Lease, Tenant shall cause Guarantor to execute the Guaranty attached as Exhibit E (the "**Guaranty**"), and Tenant shall deliver the Guaranty to Landlord contemporaneously with Tenant's execution hereof.

### 36.   WAIVER OF JURY TRIAL.

LANDLORD AND TENANT HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS LEASE OR THE OBLIGATIONS EVIDENCED HEREBY, OR ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY.  THIS PROVISION IS A MATERIAL INDUCEMENT TO EACH OF LANDLORD AND TENANT IN ENTERING INTO THIS LEASE.

### 37.   MISCELLANEOUS.

37.1   Successors and Assigns. All rights and liabilities herein granted to or imposed upon the respective parties hereto shall extend to and jointly and severally bind the several respective heirs, legal representatives, successors and assigns of the respective parties hereto, an if there shall be more than one Landlord or Tenant, all shall be bound jointly and severally the terms, conditions and agreements herein contained. No rights, however, shall inure to the benefit of any assignee of Tenant unless Landlord has approved the assignment to such assignee in writing as provided herein.

37.2   Waivers. One or more waivers of any breach or violation of any agreement, covenant or condition herein contained shall not be deemed to be a waiver of any subsequent violation or breach of the same or any other agreement, covenant, or condition herein contained, and the consent or approval by either party of any act by the other, which act requires the approval or consent of the other party, shall not be deemed to waive or render unnecessary the future requirements of consent or approval of the same or

similar act; and the subsequent acceptance of Rent or other payment due hereunder shall not be deemed to be a waiver of any preceding breach by Tenant, other than failure of Tenant to pay the particular Rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of the acceptance of said Rent. No express covenant, term or condition of this Lease shall be deemed to have been waived by either party, unless such waiver is in writing.

37.3    <u>Accord and Satisfaction</u>. No payment made by Tenant or received by Landlord in an amount less than the amount herein stipulated shall be deemed to be other than on account of the earliest received payment, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as Rent be deemed an accord and satisfaction, and Landlord may accept any such check or payment without prejudice to Landlord's right to recover the balance of such amount or to pursue any other remedy in this Lease or by law provided Landlord.

37.4    <u>Entire Agreement</u>. This Lease, together with the exhibit or exhibits aforesaid and the rider or riders, if any, attached hereto and forming a part hereof, contains and sets forth the entire agreement and understandings between the parties hereto concerning the Premises, and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between said parties other than as herein expressly set forth. Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon either party hereto, unless reduced to writing and signed by both parties.

37.5    <u>Partnership</u>. Landlord does not become a partner of Tenant in the conduct of its business or otherwise, or a joint venturer or a member of a joint enterprise with Tenant by virtue of this Lease.

37.6    <u>Force Majeure</u>.  In the event Landlord shall be delayed, hindered or prevented from the performance of any act required hereunder by reason of strikes, fire, explosions, lock-outs, failure of electrical power, governmental restrictions or regulations, unavailability of suitable financing, materials and/or labor, riots, insurrection, war or on account of any other condition or occurrence not the fault of Landlord, then the performance of any such act shall be extended for a period equivalent to the period of such delay.

37.7    <u>Captions and Numbers</u>.  The captions, section numbers and article numbers appearing in this Lease are inserted only as a matter of convenience and in no wise define, limit, construe or describe the scope or intent of such sections or articles, nor in any wise affect this Lease.

37.8    <u>Tenant, Defined Use of Pronouns</u>. The word "**Tenant**" shall be deemed and taken to mean each and every person or party mentioned as a Tenant herein, be the same one or more and if there shall be more than one Tenant. Any notice required or permitted by the terms of this of Lease may be given by or to any one thereof and shall have the same force and effect as if given by or to all thereof. The use of the neuter singular pronoun to refer to Landlord or Tenant shall be deemed a proper reference even though Landlord or Tenant may be an individual, a partnership, a corporation, and a group of two or more individuals or corporations. The necessary grammatical changes required to make the provisions of this Lease apply in the plural sense where there is more than one Landlord or one Tenant, and to either corporations, associations, partnerships or individuals, males or females, shall in all instances be assumed as though in each case fully expressed.

37.9    <u>Severability</u>. If any provisions covenant or condition of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, there reminder of this Lease, or the application of such provision, covenant or condition to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each provision,

covenant or condition of this Lease shall be valid and shall be enforced to the fullest extent permitted by Law.

37.10   <u>Survival</u>. Landlord and Tenant expressly agree that all provisions of this Lease which contemplate performance after the expiration or earlier termination hereof shall survive such expiration or earlier termination of this Lease.

37.11   <u>Governing law</u>. This Agreement shall be construed in accordance with and governed by the laws of the State of Texas.  Venue for any legal actions hereunder shall be in the Courts of Grayson County, Texas.

37.12   <u>Other documents</u>. The parties agree to execute all other documents or instruments necessary to effect the transfers of property set forth herein and otherwise to implement the provisions of this Agreement.

## 38.   **EXHIBITS**

The following exhibits are a part of this Lease and are incorporated herein by reference:

Exhibit A – Legal Description
Exhibit B – Floor Plan of the Premises
Exhibit C – Parking Areas
Exhibit D – Rules and Regulations
Exhibit E – Guaranty

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

EXECUTED as of the date first set forth above in multiple counterparts each of which shall be deemed to be an original.

**LANDLORD**:

ALTERA HIGHLAND LLC,
a Texas limited liability company

By:_____
Name:   Terry D. Quinn
Its:      President

**TENANT**:

SHERMAN/GRAYSON HEALTH SYSTEM, LLC,
a Texas limited liability company

By:_____
Name:_____
Its:_____

EXECUTED as of the date first set forth above in multiple counterparts each of which shall be deemed to be an original.

**LANDLORD**:

ALTERA HIGHLAND LLC,
a Texas limited liability company

By:_____

Name:  Terry D. Quinn

Its:      President

**TENANT**:

SHERMAN/GRAYSON HEALTH SYSTEM, LLC,
a Texas limited liability company

By:_____

Name:  Thomas J. Frazier, Jr.

Its:      Executive Vice President

EXHIBIT A

LEGAL DESCRIPTION

BEING a 3.0894 acre tract of land situated in the County of Grayson, State of Texas out of the J.B. McAnair Survey, Abstract No. 763 and being all of Block No. 7, and a portion of Lots 7-8, and all of Lots 9-12, Block 12 of Green Mount Addition to the City of Sherman, Grayson County, Texas, as shown by Plat of record in Volume 193, Page 21, Deed Record, Grayson County, Texas,  together with that  portion of vacated Pecan Street, and being more particularly described by meets and bounds as follow:

BEGINNING at a "X" cut in concrete found for corner at the intersection of the north line of Laurel Street (a 60 foot wide public right-of-way) and the east line of Bryant Avenue (a 60 foot wide public right-of-way);

THENCE North 15 degrees 40 minutes 01 seconds West (Reference for Basis of Bearings) along said east right-of-way line, a distance of 467.78 feet to a 5/8 inch iron rod set with cap stamped BGT for corner;

THENCE North 73 degrees 42 minutes 45 seconds East, a distance of 286.25 feet to a 5/8 inch iron rod set with cap stamped BGT for corner in the west right-of-way line of Highland Avenue;

THENCE South 16 degrees 01 minutes 19 seconds East along said west right-of-way line, a distance of 467.76 feet to a 1/2 inch iron rod with cap found for corner at the intersection of the west right-of-way line of said Highland Avenue and the north right-of-way line of said Laurel Street;

THENCE South 73 degrees 42 minutes 45 seconds West along said north right-of-way line, a distance of 289.15 feet to the POINT OF BEGINNING and containing 134,573 square feet or 3.0894 acres of land, more or less.

<u>EXHIBIT B</u>

FLOOR PLAN OF THE PREMISES

[ATTACHED]



Dan Burbine Associates
Architects & Project Managers
12532 Renoir Lane    Dallas, Texas 75230

Ambulatory Surgery Center
St 200 - 210

St 215 - Grace
Pharmacy

2nd FLOOR PLAN
scale: 1/8" = 1'-0"

north
plan orientation

19699 SF

PROJECT

WNJ  Wilson N. Jones

MEDICAL
OFFICE
BUILDING

REVISIONS

DATE
11 MAY 2003

SHEET
A-2
2 of 6

<u>EXHIBIT C</u>

<u>PARKING AREAS</u>

[ATTACHED]



TRACT FIFTEEN:

Being a part of Block No. Eight (8), of G. Y. Gray's Second Addition to the City of Sherman, Texas, and further described as follows:

BEGINNING at the intersection of the South line of Laurel Street with the West line of Highland Avenue as now opened;
THENCE West 140 feet with the South line of Laurel Street to a stake, for the Northwest corner;
THENCE South parallel with Highland Avenue 75 feet to a stake;
THENCE East parallel with Laurel Street 140 feet to a stake in the West line of Highland Avenue;
THENCE North with said line of Highland Avenue 75 feet to the place of beginning, containing a tract of 140 x 75 feet.

TRACT SIXTEEN of the County of Grayson, State of Texas, all that certain tract or parcel of land situated in the City of Sherman, Grayson County, Texas, being a part of the survey originally granted to John B. McAnair, and being a part of Block Eight (8) of Gray's Second Addition, as shown by the map or plat thereof, recorded in Volume 134, page 113, of the Deed Records of Grayson County, Texas, and being more particularly described as follows:

BEGINNING at a point on the West line of Highland Avenue, 125 feet South of the intersection of the West line of Highland Avenue, and the South line of Laurel Street;
THENCE Southward with the West line of Highland Avenue, 45 feet;
THENCE Westward and parallel with the South line of Laurel Street, 140 feet;
THENCE Northward and parallel with the West line of Highland Avenue, 45 feet;
THENCE Eastward, parallel with the South line of Laurel Street, 140 feet to the place of beginning; this being the South 45 by 140 feet of the tract 95 by 140 feet, in size conveyed by Frank Reece and wife, Mrs. Minnie Reece, to Bob Richardson by deed dated March 5, 1924, and recorded in Volume 303, Page 153 of the Deed Records of Grayson County, Texas.

TRACT SEVENTEEN:

SITUATED in the City of Sherman, County of Grayson, Texas and being part of Block No. 8 of G. Y. Gray's Second Addition to the City of Sherman, Texas, out of J. B. McAnair Survey, Grayson County, Texas on the waters of Post Oak Creek, and described as follows:
And being the North 62 feet of the following described piece of property;
BEGINNING at the intersection of West line of Highland Ave. and the North line of Houston Street.
THENCE in a westerly direction with the North line of Houston Street 87 feet a stake.
THENCE in a Northerly direction and parallel with the West line of Highland Avenue 150 feet to a stake.
THENCE in an Easterly direction parallel with the North line of Houston Street, 87 feet to the West line of Highland Ave.
THENCE in a Southerly direction with the West line of said Highland Ave. 150 feet to the place of beginning, containing 87 x 150 feet of land.  Being the same land described in a deed from J. W. Hollingsworth and wife, Florence Hollingsworth to W. W. Craig, dated January 9, 1915, and

recorded in Volume 239, page 272, Deed Records of Grayson County, Texas.

TRACT TWENTY-FOUR:

BEING that certain tract, lot or parcel of land situated in the City of Sherman, Grayson County, Texas, in the J. B. McAnair Survey, part of Block Eight (8) of the G. Y. Gray Second Addition to the said City of Sherman;

BEGINNING at the Southwest corner of the lot conveyed by J. P. Mills and wife, to M. H. Andrews by deed recorded in Volume 57, page 107 of the Deed Records of Grayson County, Texas, a stake on the North line of West Houston Street;

THENCE North at right angles to the North line of West Houston Street 150 feet to a stake for corner;

THENCE East parallel with the North line of West Houston Street 60 feet to a stake for corner;

THENCE South at right angles to the North line of West Houston Street 150 feet to the North line of West Houston Street;

THENCE West along said line 60 feet to the Place of Beginning.

TRACT TWENTY-FIVE:

All that certain tract or parcel of land situated in Grayson County, Texas, and being more particularly described as follows: SITUATED in the City of Sherman, Grayson County, Texas, on the waters of Post Oak Creek, being a part of a survey or patent to J. B. McAnair Survey, and described as follows, to-wit:

BEGINNING at the Southeast corner of the tract described in the deed from L. M. Tuck, Receiver, to Clyde Jackson and wife, of record in Book 367, Page 344, Grayson County Deed Records;

THENCE West with the North line of Houston Street, 80 feet to the Southeast corner of a lot sold to L. V. Butler;

THENCE North with the East line of the Butler lot, 150 feet to the South line of a lot sold to Cecil J. Rodgers;

THENCE East with the South line of said Rodgers tract, 80 feet to the southeast corner or same, a stake in the East line of the tract sold to Clyde Jackson above referred to;

THENCE South with the East line of the Clyde Jackson tract, 150 feet to the place of beginning, being a lot 80 feet by 150 feet out of the Southeast corner of a tract sold by L. M. Tuck, Receiver, to Clyde Jackson and wife referred to.

Also being described as 80' x 150' our of Block 8 of G.Y. Gray's Addition to the City of Sherman.

TRACT TWENTY-SIX:

BEING all that certain lot or parcel of land, situated in the City of Sherman, Grayson County, Texas, a part of Block No. EIGHT (8) of G. Y. GRAY'S ADDITION to the City of Sherman and

being more particularly described as follows:

BEGINNING at the point of intersection of the North line of West Houston Street and the East line of Bryant Street;
THENCE North with the East line of Bryant Street for a distance of 150 feet;
THENCE East parallel with the North line of Houston Street for a distance of 70 feet;
THENCE South, parallel with the East line of Bryant Street for a distance of 150 feet to the North line of Houston Street;
THENCE West with said line for a distance of 70 feet to the Place of Beginning and containing 70 x 150 feet of land, more or less and being the same property conveyed by Alton R. Hill and wife, Laura Hill to J. B. Revell and wife, Willie B. Revell by deed dated November 10, 1952 and of record in Volume 705, Page 457 of the Deed Records of Grayson County, Texas.

<u>TRACT TWENTY-SEVEN</u>:

SITUATED in Sherman, Grayson County, Texas, and being a part of the J. B. McAnair Survey, and being also a part of Block 8 of G. Y. Gray's Second Addition to Sherman, Texas, and being a part of a tract of 150 x 250 feet of land sold by L. M. Tuck, receiver, to Clyde Jackson, et ux., by deed recorded in Volume 367, page 344, Deed Records of Grayson County, Texas, and described as follows, to-wit:

BEGINNING at a stake on the east line of what is known as Bryant Street at a point 50 feet south of the NW corner of the above mentioned tract of 150 x 250 feet, said point being the SW corner of a tract sold by Clyde Jackson, et al., to Cecil J. Rodgers, et ux.;
THENCE South 50 feet to a stake, the NW corner of a tract now owned by L. V. Butler, et ux., as described in deed of record in Volume 506, Page 407, Deed Records of Grayson County, Texas;
THENCE East parallel with the north line of the 150 x 250 foot tract 150 feet to a stake;
THENCE North 50 feet to the SE corner of the Cecil J. Rodgers, et ux., tract;
THENCE West with the south line of the said Rodgers tract 150 feet to the place of beginning, containing 50 x 150 feet of land.

<u>TRACT TWENTY-EIGHT</u>:

All that certain tract or parcel of land situated in the City of Sherman, Grayson County, Texas, being a part of the Survey originally granted to J. B. McANAIR, and being a part of BLOCK NO. EIGHT (8) of GRAY'S SECOND ADDITION to said City of Sherman, as shown by the map or plat thereof, recorded in Volume 134, at Page 113, Deed Records of Grayson County, Texas, and as shown by the 1908 Plat Book of Grayson County, Texas, and being more particularly described as follows:

BEGINNING at the intersection of the West line of Highland Avenue and the North line of Houston Street;
THENCE West with the North line of Houston Street, a distance of 87 feet;
THENCE North on a line parallel with the West line of Highland Avenue, a distance of 88 feet to the Southwest corner of a tract of land deeded to Elmer L. Anderson;

THENCE East on a line parallel with the North line of Houston Street and with the South line of the Elmer L. Anderson tract, a distance of 87 feet to a point in the West line of Highland Avenue;

THENCE South with the West line of Highland Avenue, a distance of 88 feet to the Place of Beginning and Containing 87 ft. by 88 ft. of land and being the same property conveyed by Floydell Akridge, a widow, to George Melvin Hammock, et ux., by Deed dated January 12, 1972, recorded in Volume 1208, at Page 433, Deed Records of Grayson County, Texas.

TRACT TWENTY-NINE:

BEING all that certain tract or parcel of land, situated in the County of Grayson, State of Texas, being a part of survey originally granted to J. B. McAnair and described as follows, to-wit:

BEGINNING at a point on the West line of Highland Avenue, seventy-five (75) feet South of the intersection of the West line of Highland Avenue and the South line of Laurel Street in the City of Sherman;

THENCE Southward with the West line of Highland Avenue fifty (50) feet;

THENCE Westward and parallel with the South line of Laurel Street, one hundred forty (140) feet;

THENCE Northward and parallel with the West line of Highland Avenue, fifty (50) feet;

THENCE Eastward and parallel with the South line of Laurel Street, one hundred forty (140) feet to the Place of Beginning; this being the North fifty (50) feet by one hundred forty (140) feet of the tract ninety-five (95) feet by one hundred forty (140) feet in size conveyed by Frank Reese and wife, Mrs. Minnie Reese, to Bob Richardson, by deed dated March 5, 1924, and recorded in Volume 303, page 153 of the Deed Records, Grayson County, Texas; and being Lot Eight (8), Block Eight (8), of Gray's Second Addition to the City of Sherman, Grayson County, Texas.

BEING a 3.0894 acre tract of land situated in the County of Grayson, State of Texas out of the J.B. McAnair Survey, Abstract No. 763 and being all of Block No. 7, and a portion of Lots 7-8, and all of Lots 9-12, Block 12 of Green Mount Addition to the City of Sherman, Grayson County, Texas, as shown by Plat of record in Volume 193, Page 21, Deed Record, Grayson County, Texas,  together with that  portion of vacated Pecan Street, and being more particularly described by meets and bounds as follow:

BEGINNING at a "X" cut in concrete found for corner at the intersection of the north line of Laurel Street (a 60 foot wide public right-of-way) and the east line of Bryant Avenue (a 60 foot wide public right-of-way);

THENCE North 15 degrees 40 minutes 01 seconds West (Reference for Basis of Bearings) along said east right-of-way line, a distance of 467.78 feet to a 5/8 inch iron rod set with cap stamped BGT for corner;

THENCE North 73 degrees 42 minutes 45 seconds East, a distance of 286.25 feet to a 5/8 inch iron rod set with cap stamped BGT for corner in the west right-of-way line of Highland Avenue;

THENCE South 16 degrees 01 minutes 19 seconds East along said west right-of-way line, a distance of 467.76 feet to a 1/2 inch iron rod with cap found for corner at the intersection of the west right-of-way line of said Highland Avenue and the north right-of-way line of said Laurel Street;

THENCE South 73 degrees 42 minutes 45 seconds West along said north right-of-way line, a distance of 289.15 feet to the POINT OF BEGINNING and containing 134,573 square feet or 3.0894 acres of land, more or less.

<u>EXHIBIT D</u>

RULES AND REGULATIONS

1.      All tenants will refer all contractor's representatives and installation technicians who are to perform any work within the Building, grounds, and Parking Area to Landlord for Landlord's supervision, approval and control before the performance of any such work. This provision shall apply to all work performed in the Building, grounds and Parking Area including, but not limited to, installations of telephones, telegraph equipment, electrical devices and attachments, and any and all installations of every nature effecting floors, walls, woodwork, trim, window, ceilings, equipment and any other physical portion of the Building, grounds, and Parking Area. Tenant shall not mark, paint, drill into, or in any way deface any part of the Building or the Premises without Landlord's written consent. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of the Landlord, and as the Landlord may direct.

2.      The work of the janitorial or cleaning personnel shall not be hindered by Tenant after 5:30 pm and such work may be done at any time when the Premises are vacant. The windows doors and fixtures in the Premises and Building may be cleaned at any time. Tenant shall provide adequate waste and rubbish receptacles, cabinets, books cases, map cases, etc., necessary to prevent unreasonable hardship to Landlord in discharging its cleaning obligations.

3.      Movement in or out of the Building or through the Building entrances or lobbies of furniture or office equipment, or dispatch or receipt by Tenant of any heavy equipment, bulky material merchandise or other item which requires use of elevators or stairways, shall be restricted to such hours as Landlord shall designate. The method of such movement, routing of such movement, safety precautions associated with such movement and the prohibition of Tenant bringing any dangerous items into the Building shall be subject to the Landlord's discretion and control. Any hand trucks, carryalls, or similar appliances used for the delivery or receipt of merchandise or equipment shall be equipped with rubber tires, side guards and such other safeguards as the Landlord shall require. Although Landlord or its personnel may participate in or assist in the supervision of such movement, Tenant assumes final responsibility for all risks as to damage to property and injury to persons that may result from such participation or assistance and Tenant shall indemnify and hold harmless Landlord and Landlord's employees and agents, and reimburse Landlord and Landlord's employees and agents with respect to any and all claims, demands, causes of action and liability arising as a result of any assistance or supervision or exercise of control over Tenant's movement of items in and out of the Building.

4.      No sign, advertisement or notice shall be displayed, painted or affixed by Tenant or Tenant's employees, agents or contractors in or on any part of the outside or inside of the Building or Premises without prior written consent of Landlord, and then only of such color, size, character, style and material and in such places as shall be approved and designated by Landlord. Signs on doors and entrances to the Premises and outside of the Premises within the Building, grounds or Parking Area shall be placed thereon by a contractor approved by Landlord.

5.      Tenant shall not place, install or operate on the Premises or in any part of the Building any engine, refrigerating, heating or air conditioning apparatus, stove or machinery, or conduct mechanical operations or place or use in or about the Premises or the Building any explosives, gasoline, kerosene, oil, acids, caustics or any other inflammable, explosive, hazardous or odorous material without the prior written consent of Landlord. No portion of the Premises shall at any time be used for cooking, sleeping or lodging quarters.

6.      Tenant shall not make or permit any nuisance or improper noises in the Building or otherwise interfere in any way with other tenants or persons doing business in the Building or with Landlord's operation of the Building.

7.      Landlord will not be responsible for any fixtures, personal property, equipment, jewelry or money lost in or stolen from the Premises or public areas of the Building, grounds or Parking Area. Landlord shall not be responsible for damages to or theft of motor vehicles or other items from any Parking Areas used in connection with the Building.

8.      No maintenance or repair work shall be done on any vehicles in the Parking Area. No disabled vehicles shall be parked or stored in the Parking Area. All vehicles in the Parking Area shall be parked within the designated spaces and not in more than one (1) space or across spaces. At Landlord's option, all disabled vehicles, recreational vehicles, boats and vehicles improperly parked in spaces designated for handicapped persons and all other improperly parked vehicles may be towed or otherwise removed from the Parking Area at the owner's expense. In the event any vehicle or boat is towed, Landlord will not be liable or responsible for the loss, damage or theft of any property located in the vehicle or boat or for any damage to the vehicle or boat.

9.      Neither Tenant or Tenant's employees, agents, invitees or licensees shall at any time leave or discard any rubbish, paper, articles or objects of any kind whatsoever outside the doors of the Premises or in any other area within the Building or on the grounds or in the Parking Area. No birds, animals, bicycles or vehicles shall be brought into or kept in or about the Building.

10.      None of the entries passages, doors, hallways, or stairways in the Building shall be blocked or obstructed by Tenant Such areas shall not be used by Tenant at any time except for ingress or egress to the Premises by Tenant's, Tenant's employees, agents and invitees.

11.      Landlord shall have the right to determine and prescribe the weight and proper position of any usually heavy equipment, including but not limited to copying equipment, computer equipment, safes and large files that are to be placed in the Building. Only those items which in the exclusive judgment of the Landlord will not do damage to the floors, structure and elevators may be moved into the Building. Tenant shall pay for any damage resulting from moving or installing such articles in the Building or the existence of same in the Building.

12.      All Christmas and other decorations in the Building must be flame retardant.

13.      After hours air conditioning and heating on Monday through Saturday and all day Sunday and holidays determined by Landlord must be requested in writing by noon of a regular work day prior to the day for which additional air conditioning is requested. Tenant shall be charged at the prevailing hourly rate for the use of such air conditioning and heating.

14.      Any request by Tenant to place or remove names from the directory board in the lobby of the Building shall be furnished to Landlord in writing on Tenant's letterhead.

15.      Any services which Tenant requests Landlord to perform which Landlord is not required to perform under this Lease shall, if performed by Landlord, be billed to Tenant at Landlord's cost plus a 15% fee to cover Landlord's overhead costs. Landlord shall have the right to refuse to perform any such services.

16.      If Landlord's maintenance engineer or any of Landlord's other personnel do any work after normal business hours at the request of Tenant, Tenant shall pay for the cost of such work.

17.     All doors leading from public corridors to the Premises are to be kept closed when not in use.

18.     Canvassing, soliciting or peddling in the Building is prohibited and Tenant shall cooperate with Landlord to prevent such activities.

19.     Tenant shall give Landlord immediate notice in the event that any defects or dangerous conditions arise or exist in the Premises or in the Building or if any accidents or emergencies occur in the Premises or Building.

20.     Tenant shall not use the Premises or permit the Premises to be used for photographic, multilith or multigraph reproductions for sale to the general public. All photographic, multilith or multigraph reproductions in the Premises shall be produced for Tenant in the ordinary course of Tenant's business.

21.     All requests for services made by Tenant shall be made directly to Landlord or Landlord's designated agents. Employees of Landlord or Landlord's designated agents shall not perform any work or do anything outside of their regular duties unless directed to do so by Landlord or Landlord's designated agents. Tenant will make no requests directly to Landlord's employees.

<u>EXHIBIT E</u>

GUARANTY

       Landlord, Tenant and Guarantor (as herein defined) acknowledge that if it were not for this guaranty (the "**Guaranty**") as an inducement, Landlord would not execute the Lease.  Therefore, for $10.00 and other value received, and in consideration for, as a condition of, and an inducement to ALTERA HIGHLAND LLC, a Texas limited liability company ("**Landlord**") entering into that certain Lease Agreement dated as of August 21, 2012, with SHERMAN/GRAYSON HEALTH SYSTEM, LLC, a Texas limited liability company ("**Tenant**"), for certain premises being Suite 200 and the ambulatory surgery center in a medical office building located at 300 N. Highland Drive, Sherman, Texas, on real property owned by an affiliate of Tenant and ground leased to Landlord, as ground lessee (the "**Lease**"), the undersigned officer of LHP HOSPITAL GROUP, INC., a Delaware corporation (the "**Guarantor**"), on behalf of such entity, its legal representatives, heirs, successors, and assigns, hereby irrevocably guarantees to Landlord, Landlord's successors and assigns, absolutely and unconditionally, the full prompt and timely payment, performance and observance of all amounts to be paid and provisions of the Lease to be performed and observed by Tenant, including (without limitation) the rules and regulations incorporated into the Lease, as if Guarantor had executed the Lease as the tenant thereunder.  The Guarantor expressly agrees that the validity of this Guaranty and the obligations of the Guarantor hereunder shall not be terminated, affected or impaired by reason of the assertion by Landlord against Tenant of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease.  The Guarantor further agrees that this Guaranty shall remain and continue in full force and effect notwithstanding any assignment, renewal, modification, extension or waiver of the Lease or any provisions thereof.  The laws of Texas shall apply hereto.

       The Guarantor hereby waives, to the fullest extent permitted by law:

       (A)     Any right that the Guarantor may have to require Landlord to proceed against Tenant, proceed against or exhaust any security held from Tenant, or pursue any other remedy in Landlord's power to pursue, including, without limitation, re-letting the Premises following a default;

       (B)     Any defense based on any claim that the Guarantor's obligations exceed or are more burdensome than those of Tenant;

       (C)     Any defenses given to sureties other than actual payment or performance;

       (D)     Any defense based on: (i) any legal disability of Tenant; (ii) any release, discharge, modification, impairment or limitation of the liability of Tenant to Landlord  from any cause, whether consented to by Landlord or arising by operation of law or from any bankruptcy or other voluntary or involuntary proceeding, in or out of court, for the adjustment of debtor-creditor relationships (an "**Insolvency Proceeding**"), and/or (iii) any rejection or disaffirmance of the Lease, or any part of it, or any security held for it, in any such Insolvency Proceeding;

       (E)     Any defense based on any action taken or omitted by Landlord in any Insolvency Proceeding involving Tenant, including any election to have Landlord's claim allowed as being secured, partially secured or unsecured, any extension of credit by Landlord to Tenant in any Insolvency Proceeding, and the taking and holding by Landlord of any security for any such extension of credit; and

       (F)     The Guarantor agrees to jurisdiction and venue in Grayson and Dallas Counties, Texas, and waives any objection to such venue on the grounds of forum non conveniens. **The Guarantor knowingly, voluntarily and intentionally waives the right to a trial by jury in respect of any litigation based**

**hereon or arising out of, under, or in connection with this Guaranty.**  In the event Landlord incurs any fees and/or expenses in the enforcement of this Guaranty, whether or not involving litigation and/or appellate, administrative or bankruptcy proceedings, the Guarantor agrees to be liable for same (including reasonable attorney's fees and costs) and to pay same promptly on demand by Landlord.

The Guarantor acknowledges liability for every obligation of Tenant under the Lease.  Any capitalized term used herein and not otherwise defined shall have the same meaning as defined in the Lease.  Each provision of this Guaranty shall be considered severable, and if for any reason and provision is determined to be invalid under current or future law, such invalidity shall not impair the operation of or otherwise affect the valid portions of this Guaranty.

<u>**GUARANTOR**</u>:

LHP HOSPITAL GROUP, INC.,
a Delaware corporation


By:_____
Name:_____
Title:_____

Date:_____

21

## LEASE AGREEMENT

This Lease ("**Lease**") is made as of August 21, 2012 (the "**Effective Date**"), by and between ALTERA HIGHLAND LLC, a Texas limited liability company ("**Landlord**"), and SHERMAN/GRAYSON HEALTH SYSTEM, a Texas limited liability company ("**Tenant**").

## RECITALS:

Landlord, as tenant, has entered into that certain Ground Lease Agreement dated as of the Effective Date (the "**Ground Lease**") with Tenant, as landlord, for the land upon which the Building (as defined below) is located. Contemporaneously with the Ground Lease, (i) Landlord purchased one (1) medical office building, from Tenant, and (ii) Tenant, as "**Declarant**", filed of record a Declaration of Covenants, Restrictions and Easements (the "**Declaration**") covering the one (1) medical office building, the Hospital commonly known as Texas Health Presbyterian Hospital - WNJ (the "**Hospital**") owned by Tenant located in proximity to the medical office building and the parking  and other common areas dedicated for use by persons occupying, using or visiting the medical office building, the Hospital and other facilities related thereto. The Ground Lease and this Lease are subject to the terms and provisions of the Declaration. Tenant, as "Declarant" under the Ground Lease and "Landlord" under the Ground Lease, is familiar with the terms and provisions of each of the Declaration and the Ground Lease.

As part of Tenant's purchase of the Building commonly called "300 N. Highland Drive, Sherman, Texas", Tenant agreed to enter into this Lease.

Simultaneously herewith, Landlord and Tenant are also entering into corresponding leases (each, a "**Related Lease**") for vacant and shell space of the Building, for the common areas of the Building occupied by the Hospital, and for the Ambulatory Surgery Center in the Building.

1.    **DEFINITIONS AND BASIC PROVISIONS.**

    1.1    <u>Parties and Addresses</u>. The parties hereto and their respective addresses are as follows:

      (1)    <u>Landlord's Address</u>:    5910 North Central Expressway
                                          Suite 800
                                          Dallas, TX 75206.

      (2)    <u>Tenant's Address</u>:    2400 North Dallas Parkway, Suite 450
                                          Plano, Texas 75093
                                        Attention: Executive Vice President – Administration

      (3)    <u>Ground Lessor Address</u>: 2400 North Dallas Parkway, Suite 450
                                          Plano, Texas 75093
                                        Attention: Executive Vice President –
                                          Administration

(4)    <u>Guarantor</u>:                LHP Hospital Group, Inc.,
                                        a Delaware corporation

(5)    <u>Guarantor's Address</u>:     2400 North Dallas Parkway, Suite 450
                                        Plano, Texas 75093
                                        Attention: Executive Vice President – Administration

     1.2    <u>Defined Terms</u>: In addition to the capitalized terms elsewhere defined in this Lease, the following terms shall be deemed to be defined terms of this Lease for all purposes.  Each of the following definitions and basic provisions shall be construed in conjunction with and limited by the reference thereto in other provisions of this Lease:

     (1)    <u>Additional Rent</u>: All rent and other sums payable hereunder from Tenant to Landlord, other than Base Rent.

     (2)    <u>Base Rent</u>: An annual Base Rent of $12.05 per RSF in the Premises, subject to adjustment as provided in Section 3.1.  As of the Commencement Date, the monthly Base Rent is $24,446.44.

     (3)    <u>Broker(s)</u>: None.

     (4)    <u>Building</u>: The building in which the Premises are situated, being generally known as 300 N. Highland Drive, Sherman, Texas.

     (5)    <u>Commencement Date</u>:  The Effective Date.

     (6)    <u>Common Areas</u>: Those parts of the Building, Land and related facilities designated from time to time by Landlord for the common use of all doctors, physicians, tenants, visitors, patients and employees, including among other facilities, parking areas, sidewalks, landscaping, curbs, loading docks and areas, private streets and alleys, automobile entrances, exits and driveways, entranceways (open, enclosed or otherwise), lighting facilities, drinking fountains, public toilets, signs, service areas, common utility lines, pipes, and/or conduits, and the like.

     (7)    <u>Declarant</u>: means the Declarant under the Declaration, Sherman/Grayson Hospital, LLC, a Texas limited liability company, and its successors under the Declaration.

     (8)    <u>Declaration</u>: has the meaning set forth in the Recitals.

     (9)    <u>Expiration Date</u>: The last day of the Term hereof, which date is contemplated as being one hundred eighty (180) full months after the Commencement Date.  Notwithstanding any other provision of this Lease to the contrary, if the Expiration Date would otherwise occur on a date other than the last day of a calendar month, then the Term shall be automatically extended to include the last day of such calendar month.

     (10)   <u>Floor Plan</u>: The outline of the Premises as depicted in <u>Exhibit B</u> attached hereto and made a part hereof for all purposes.

     (11)   <u>Guarantor</u>:  has the meaning set forth in Section 1.1.

(12)   <u>Highest Lawful Rate</u>:  The maximum nonusurious interest rate, if any, that at any time, or from time to time, legally may be contracted for, taken, reserved, charged, or received on the indebtedness owed to Landlord under this Lease under the laws which are presently in effect of the United States of America and the State of Texas applicable to Landlord and such indebtedness.

(13)   <u>Hospital</u>:  The Hospital defined in the Recitals of this Lease, and its successors and assigns.

(14)   <u>Interior of the Premises</u>: Standard office front and entrance (including without limitation, all plate glass and exterior doors), all of the interior wall framing, floors and floor covering, ceiling and interior staining and finishes, all interior doors and hardware, all interior electrical conduits and appurtenances, mechanical machinery and equipment, all interior electrical fixtures, interior plumbing and plumbing fixtures, Tenants' trade fixtures, and all other parts in the interior of the Premises.

(15)   <u>Land</u>: The lot, tract or parcel of land upon which the Building is situated, in Grayson County, Texas as more particularly described by metes and bounds on <u>Exhibit A</u> attached hereto and made a part hereof for all purposes, plus any contiguous parcels or strips of land leased or licensed to Landlord under the Ground Lease or by the Declaration, and are used in connection with or to service the Building or any part thereof.

(16)   <u>Late Charge</u>: Tenant shall pay $100.00 as a late fee to cover Landlord's administrative costs.  Additionally, all unpaid amounts Tenant fails to pay by the fifth (5th) day after the date due shall bear interest from the first day due until paid in full at the lesser of ten percent (10%) per annum or the Highest Lawful Rate.  In no event, however, shall the late fees and/or charges permitted under this Section or elsewhere in this Lease, to the extent the same are considered to be interest under applicable law, exceed the amount of interest that Landlord lawfully could have charged, received or collected on the indebtedness in question at the Highest Lawful Rate.

(17)   <u>Lease</u>: This Lease Agreement.

(18)   <u>Lease Year</u>: Each twelve (12) consecutive month period commencing on the Commencement Date or any anniversary thereof; provided that, if the Commencement Date is other than the first day of a calendar month, then the first Lease Year shall include such partial month together with the next succeeding twelve (12) consecutive months, and each succeeding Lease Year shall begin on the first day of the calendar month that corresponds to the first day of the calendar month following the Commencement Date.

(19)   <u>Operating Expenses</u>: All expenses, costs and disbursements of every kind and nature that Landlord or any of its Affiliates directly or indirectly pays or becomes obligated to pay, whether under the Ground Lease, the Declaration, any Related Lease or otherwise, in respect of the Ground Lease, the ownership, management, maintenance, repair, replacement and operation of the Building, the Common Areas and related facilities of the Building or arising in connection with any Related Lease.  Notwithstanding the foregoing, Operating Expenses shall exclude capital costs associated with the replacement of the roof, foundation, and exterior walls.

(20)   <u>Permitted Use</u>:  General Medical Offices.

(21)  <u>Premises</u>: The premises known, as of the Effective Date, as Suites 130, 310, 315, 330, 340, and 415 of the Building, containing approximately 24,345 RSF (as defined herein). The Premises are substantially depicted on the attached Floor Plan shown on <u>Exhibit B</u> and being located in the Building.

(22)  <u>Pro Rata Share or Tenant's Pro Rata Share</u>: 20.69%, provided that if the Building is expanded or contracted, Tenant's Pro Rata Share shall increase or decrease, as the case may be, such that Tenant's Pro Rata Share will equal a fraction, the numerator of which is the net rentable area of the Premises, and the denominator of which is the net rentable area of the Building, which is approximately 117,655 RSF as of the Effective Date.

(23)  <u>Rent</u>: All Base Rent and Additional Rent.

(24)  <u>RSF</u>: means the rentable square feet in the Premises, Building or other area in question, as determined by an architect using ANSI/BOMA Standards.

(25)  <u>Security Deposit</u>: None.

(26)  <u>Tenant Improvement Allowance</u>:  Means that amount, if any, set forth in <u>Section 2.3</u>.

(27)  <u>Tenant Improvements</u>:  Means those improvements and alterations Tenant may elect to construct or install in the Premises, subject to the provisions of this Lease.

(28)  <u>Term</u>: Fifteen (15) years (one hundred eighty (180) full months) from the Commencement Date, unless earlier terminated pursuant to the provisions of this Lease.

## 2.  **GRANTING CLAUSE; TENDER OF POSSESSION.**

2.1  <u>Granting Clause</u>.  In consideration of the Rent reserved and the covenants and agreements herein contained on the part of the Tenant to be observed and performed, and subject to the terms and provisions of the Declaration and Ground Lease, Landlord hereby demises, lets and leases unto Tenant, and Tenant hereby accepts, leases and rents from Landlord, the Premises.

2.2  <u>Tender and Acceptance of Possession</u>.  Landlord hereby tenders, and Tenant hereby accepts, possession of the Premises on the Effective Date.  Tenant hereby accepts the Premises in their "AS-IS" condition, and Landlord shall have no obligation to perform any work therein (including demolition of any improvements existing therein or construction of any tenant finish-work or other improvements therein), and shall not be obligated to reimburse Tenant or provide an allowance for any costs related to the demolition or construction of improvements therein.  Tenant has reviewed, and hereby accepts, the condition and capacity of the Building's existing electrical systems and HVAC.  Tenant acknowledges that Landlord does not have any obligation, express or implied, to modify or increase the capacity of such systems.  Before Tenant may occupy the Premises to conduct its business therein, Tenant shall, at its expense, obtain and deliver to Landlord a certificate of occupancy from the appropriate governmental authority for the Premises.

3.    <u>**RENT.**</u>

3.1    <u>Base Rent</u>.

(1)    This is a pure "net lease," and Base Rent, Additional Rent, Operating Expenses and all other sums payable hereunder by Tenant shall be paid without notice, demand, setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense.  It is intended that the Base Rent provided for in this Lease shall be absolutely net to Landlord throughout the Term, and, accordingly, Tenant covenants and agrees to pay, as they become due and payable and before they become delinquent, all operating and capital expenses in connection with the operation, maintenance, repair, restoration, use or occupation of the Premises including, without limitation, the costs, charges and assessments related to taxes, impositions, utilities and insurance.  Tenant shall pay all such taxes and impositions even though the taxing statue or ordinance may purport to impose such taxes or impositions on Landlord.

(2)    The Base Rent shall be paid by Tenant in monthly installments to Landlord on or before the first day of each calendar month during the Term hereof.  The monthly Base Rent for any fractional month at the beginning or the end of the Term shall be prorated based upon the actual number of days in such month.

(3)    The Base Rent will be adjusted and increased on each anniversary of a Lease Year (the "**Adjustment Date**") by an amount equal to the greater of (i) 103% of then-effective Base Rent (i.e., as it may have been adjusted pursuant to this Section 3.1(3)) and (ii) subject to the limitation set forth below in this Section 3.1(3), any increase in the Consumer Price Index for "All Urban Consumers, U.S. City Average, All Items," issued by the Bureau of Labor Statistics of the United States Department of Labor (the "**Index**").  The adjustments in the Base Rent will be determined by multiplying the then-effective Base Rent (i.e., as it may have been adjusted pursuant to this Section 3.1(3)) by a fraction, the numerator of which is the Index number for the date one month prior to the Adjustment Date and the denominator of which is the Index number for the first month of the first year of the Term.  When the adjusted rent for the Adjustment Date has been determined, Landlord shall give Tenant written notice of such adjusted rent; and, upon adjustment of the rent, any underpayment of rent from the Adjustment Date to the date Tenant is notified of the adjustment shall be immediately due and payable by Tenant.  Landlord's failure or delay to notify Tenant of said rent adjustment shall not constitute a waiver of the right to any adjustment provided for in this Lease.  In the event that the Index shall be discontinued, then Landlord shall use an index substantially similar to the Index to calculate future adjustments.  Notwithstanding any other provision of this Section 3.1(3) to the contrary, the Base Rent in any Lease Year shall not increase by more than five percent (5%) of the Base Rent in the immediately preceding Lease Year.

(4)    Landlord and Tenant are knowledgeable and experienced in commercial transactions and agree that the provisions of this Lease for determining charges, amounts, Operating Expenses and Additional Rent are commercially reasonable and valid even though such methods may not state a precise mathematical formula for determining such charges.  ACCORDINGLY, TENANT VOLUNTARILY AND KNOWINGLY WAIVES ALL RIGHTS AND BENEFITS OF TENANT UNDER SECTION 93.012 OF THE TEXAS PROPERTY CODE, AS IT MAY BE AMENDED OR REPLACED.

3.2    Operating Expenses.

(1)    Tenant's Pro Rata Share of Operating Expenses for the remainder of the calendar year after the Commencement Date and for each subsequent calendar year shall be estimated by Landlord, and written notice thereof shall be given to Tenant. Upon receipt of said written notice from Landlord, the estimated Operating Expenses shall be due and payable as herein provided. For any such remainder of the calendar year after the Commencement Date, Tenant agrees to pay Landlord each month, at the same time the Base Rent Payment is due, an amount equal to the amount of such estimated monthly Pro Rata Share of Operating Expenses for the remainder of such calendar year; and during each calendar year thereafter Tenant agrees to pay Landlord each month, at the same time the Base Rent Payments are due, an amount equal to one-twelfth (1/12th) of the estimated annual Pro Rata Share of Operating Expenses due.

(2)    If any portion of Operating Expenses increase during a calendar year, Landlord may revise the estimated Operating Expenses during such year by giving Tenant written notice to that effect, and thereafter Tenant agrees to pay Landlord, in each of the remaining months of such calendar year, an additional amount equal to the amount of such annual increase in the estimated Pro Rata Share of Operating Expenses divided by the number of months remaining in such calendar year.

(3)    After the end of each calendar year, Landlord shall prepare and deliver to Tenant a statement showing Tenant's Pro Rata Share of the total amount of Operating Expenses. Within ten (10) days after receipt of the aforementioned statement, Tenant agrees to pay Landlord the remaining amount owed by Tenant. However, if Tenant has paid more than its Pro Rata Share of the actual Operating Expenses, Landlord shall either pay the amount of such excess to Tenant within ten (10) days after delivery of the aforementioned statement, or, at Landlord's option, apply such excess to any sums due or to become due from Tenant to Landlord.

(4)    Notwithstanding anything herein to the contrary, in no event will the Base Rent provided for in this Lease ever be reduced.

3.3    Payment For Other Services. Tenant agrees to pay Landlord as Additional Rent all charges for any services, goods, or materials furnished at Tenant's request which are not required to be furnished by Landlord under this Lease, immediately upon demand, plus an administrative fee not to exceed five percent (5%) of the cost of the requested services, good or materials.

3.4    Late Charge. If Landlord does not receive any payment due on or before the 5th day of the calendar month when such payment is due, the Late Charge shall be due and payable (in addition thereto). Said Late Charge is for the purpose of reimbursing Landlord for the extra administrative costs and expenses incurred in connection with the handling and processing of such delinquent payment.

3.5    No Offsets or Demands.  All Base Rent, Additional Rent and other amounts due from Tenant to Landlord under this Lease shall be paid without notice, demand, offset, abatement or deduction. This Lease and the rights of Landlord and obligations of Tenant hereunder shall not be affected by any event or for any reason or cause whatsoever foreseen or unforeseen.  The obligations of Tenant under this Lease shall be separate and independent covenants and agreements and all monetary obligations shall continue to be payable in all events.

4. <u>**SECURITY DEPOSIT.**</u>  Tenant is not required to make any security deposit in connection with this Lease.

5. <u>**COMMON AREAS.**</u>

    5.1    <u>Parking Facilities and Other Common Areas</u>. During the Term, Tenant shall be entitled to the nonexclusive use (in common with others entitled thereto) of the Common Areas outside the Building designated from time to time by Landlord as the parking areas of the Building.  As of the Effective Date, the parking areas designated by Landlord for use by Tenant are depicted on <u>Exhibit C</u>.  In such parking areas, Tenant shall be entitled to use a number of parking spaces equal to 5 parking spaces for every 1,000 RSF of space in the Premises.  Tenant shall not conduct, solicit business or display or place any signs or advertising on or within the Common Areas, or distribute handbills therein, or take any action which would interfere with the rights of other persons to use the Common Areas.

    5.2    <u>Parking Regulations</u>. Tenant understands and agrees that the Declarant shall have the right to maintain and operate lighting facilities on all of the parking areas and to police all of the parking and other Common Areas, including, without limitation, the right to discourage non-tenant parking, to designate and regulate parking areas, and to do and perform such other acts with respect to said Common Areas as in the judgment of the Declarant may be legally necessary to prevent a dedication thereof to the public.

6. <u>**MAINTENANCE AND REPAIRS.**</u>

    6.1    <u>Landlord's Obligations</u>.  As part of the Operating Expenses, Landlord shall maintain or cause to be maintained the elevators, public restrooms and other Common Areas within the Building, the structural elements building systems of the Building (including the HVAC system which serves the Building and the Premises).  Landlord shall, at its own cost and expense, maintain or cause to be maintained the foundation, the exterior walls (but excluding the interior glass or doors that are part of the Premises) and roof of the Building in good condition or repair.  However, if any repair is required by reason of the negligence or intentional misconduct of Tenant or any of its agents, employees, invitees or Affiliates, Landlord may add the cost thereof to the next installment of Rent thereafter coming due, but only to the extent that the cost thereof is not covered by insurance proceeds actually received by Landlord.  Except as herein provided, Landlord shall have no obligation to repair, maintain, alter, replace, or modify the Premises or any part thereof.  Any failure by Landlord to furnish, or delay in furnishing, any maintenance or services that are required of Landlord under this Section or otherwise under this Lease, when such failure is caused by acts of God or any other condition beyond Landlord's reasonable control, shall not constitute a default by Landlord under this Lease and shall not permit Tenant to abate any Rent or relieve Tenant from any of its obligations under this Lease.

    6.2    <u>Tenant's Obligations</u>.  Tenant shall maintain the interior of the Premises, including all interior glass and doors that are a part of the Premises and any improvements done by or on behalf of Tenant, in good condition and clean and attractive appearance, performing all janitorial services and making all repairs at its own cost and expense, and using materials and labor of a kind and quality equal to the original work.  Tenant shall maintain the Premises in accordance with all requirements of law, including (without limitation) the Americans with Disabilities Act (as the same may be amended) and similar state or local laws, rules or regulations.  At the expiration or earlier termination of this Lease, Tenant shall surrender the Premises in a broom clean condition and otherwise in the same condition as received by Tenant on the Commencement Date upon initial completion of the interior improvements, reasonable wear and tear excepted.  If Tenant shall neglect and/or fail to observe, keep or perform any of its obligations to maintain and repair and Premises in the time and manner provided in this Article and if such neglect and/or failure shall continue for ten (10) days after notice thereof, Landlord shall have the

right to perform said maintenance and repairs. In the event Landlord does so perform Tenant's responsibilities for said maintenance and repairs, Landlord shall furnish Tenant a statement of the actual cost thereof, plus an administration fee not to exceed ten percent (10%) of the actual costs, which statement shall be immediately payable by Tenant.  All alterations and modifications of or to the Premises shall be in accordance with the terms and provisions of <u>Section 11.2</u> below.

**7.      <u>TAXES ON TENANT'S PROPERTY.</u>**

Tenant shall be responsible for and shall pay, before same becomes delinquent, all federal, state, county, and local taxes levied or assessed upon any and all personal property of any kind owned by or placed in, on or about the Premises by Tenant during the Term, and all taxes and assessments on trade fixtures, furniture, and all sales, excise and other taxes on Tenant's business shall be paid entirely by Tenant. If any such taxes for which Tenant is liable are levied or assessed against Landlord or Landlord's property, or if the assessed value of Landlord's property is increased by inclusion of personal property, furniture or fixtures placed by Tenant in the Premises, Tenant shall pay to Landlord upon demand that part of such taxes for which Tenant is primarily liable hereunder.

**8.      <u>INSURANCE.</u>**

8.1      <u>Hold Harmless</u>. Tenant covenants and agrees to indemnify and save each of Landlord, and Landlord's members, managers, partners, agents, employees and representatives, harmless from and against any and all costs, liability or expense arising out of any claims of any person or persons on account of any occurrence in, upon or at the Premises, resulting from the occupancy or use thereof by Tenant, or by any person or persons holding or using the Premises thereunder, occasioned in whole or in part by reason of the improper and/or lack of control and supervision throughout the Common Areas of property owned or controlled by Tenant, or by reason of the use or misuse of the parking area or any other Common Areas by Tenant or by any person or persons holding or using the Premises, or any part thereof, under Tenant, including without limitation, Tenant's clients, invites, agents, contractors, employees, servants, subtenants, assignees or licensees, and without limiting the generality of the foregoing, Tenant further covenants and agrees to indemnify and save each of Landlord and Landlord's partners, agents, employees and representatives harmless from and against any penalty, damage or charge incurred or imposed by reason of any violation of law or ordinance by Tenant or any person or persons holding under Tenant and from any cost, damage or expense arising out of the death of or injury to any person or persons holding under Tenant and from any cost, damage or expense arising out of the death of or injury to any person or persons holding under Tenant. In case any action or claim to which Landlord (or Landlord's partners, members, managers, agents, employees or representatives) are entitled to indemnification shall be brought or asserted in any way against Landlord (or Landlord's members, managers, partners, agents, employees or representatives) or Tenant, Tenant shall immediately notify Landlord of the same and shall furnish Landlord with all relative information. Landlord shall be entitled, at Tenant's expense, to participate in, and to the extent that it wishes, to assume the defense thereof.

8.2      <u>Tenant's Liability Insurance</u>. Tenant agrees to maintain in force during the Term a policy or policies of comprehensive public liability insurance, including property damage, written by one or more responsible insurance companies approved by Landlord and licensed to do business in Texas, which insurance companies shall be rated not less than X by Best Guide Rating, insuring Tenant and naming as additional named insureds, Landlord, Landlord's property management company as agent, each Mortgagee and such other persons, firms, or corporations as are designated by Landlord, against loss of life, bodily injury and property damages in which the limit of public liability shall be not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000.00) single limit bodily injury and in which the limit of property damage liability shall be not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000.00) and an umbrella coverage of not less than TWO MILLION AND NO/100 DOLLARS

($2,000,000.00).   Additionally, Tenant shall maintain a comprehensive automobile liability insurance policy of ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00). Each such policy shall be non-cancellable for any cause without first giving Landlord thirty (30) days prior written notice. Subject to all of the foregoing, the insurance coverage required to be furnished by Tenant pursuant to this Section may be in the form of a blanket policy covering all of Tenant's operations.

       8.3    <u>Tenant's Fire Insurance</u>. Tenant agrees to maintain in force during the Term a policy or policies of fire and extended coverage insurance in the case of fire sprinkler leakage, malicious mischief, vandalism and other extended coverage perils, for the full insurable replacement value of all additions and of all office furniture, office equipment, merchandise, and other items of Tenants' property within or on the Premises.  Coverage in this paragraph shall be in an amount not less than one hundred percent (100%) of the replacement costs of Tenant's improvements to the Premises.

       8.4    <u>Tenant's Workers Compensation</u>. If required by law, Tenant agrees to maintain in force during the Term workers compensation and employers liability insurance with a waiver or subrogation endorsement, in a form and amount satisfactory to Landlord.

       8.5    <u>Evidence of Insurance</u>. A copy of each such policy or a certificate of such insurance required to be maintained by Tenant shall be delivered to Landlord upon the Commencement Date of this Lease and annually thereafter upon the first day of each Lease Year throughout the Term. If Tenant fails to procure said insurance or deliver to Landlord, such evidence thereof, Landlord may procure same and Tenant shall reimburse Landlord for the cost thereof plus an administrative fee not to exceed ten percent (10%) of the actual cost immediately upon demand.

       8.6    <u>Landlord's Liability Insurance</u>. Landlord agrees to maintain in force during the Term a policy or policies of comprehensive public liability insurance, including property damage, written by one or more responsible insurance companies licensed to do business in Texas and insuring Landlord against loss of life, bodily injury and/or property damage with respect to the operation of the Building, the policy limits of which to be in amount satisfactory to Landlord. In addition, Landlord may maintain in force such umbrella policy or policies of public liability insurance as Landlord, in its sole discretion, may deem appropriate. Landlord's failure to procure any such insurance shall not invalidate this Lease or lessen Tenant's liability hereunder.  Landlord's insurance hereunder shall include loss of rent coverage.

       8.7    <u>Landlord's Fire Insurance</u>. Landlord agrees to procure and keep in effect during the Term a policy or policies of fire and extended coverage insurance covering the Building, including rent abatement, vandalism and malicious mischief coverage, written by an insurance company authorized to do business within the State of Texas, and in an amount at the full replacement cash of the Building. Such insurance shall provide protection against losses so insured against for the sole and exclusive benefit of Landlord. The full amount of any proceeds payable thereunder shall be payable to Landlord, and Tenant shall not be entitled to, and shall have no interest in, such proceeds or any part thereof. Tenant is advised to procure such insurance as Tenant deems appropriate to protect its interest.

       8.8    <u>Waiver of Subrogation</u>. To the extent permitted by the laws and insurance regulations of the State of Texas, the respective parties hereto hereby waive and release any and all claims, demands and causes of action which each might have against the other party, either for damage to or loss of any part of the Premises or of any adjoining premises belonging to Landlord, arising from perils ordinarily insured against under a standard fire and extended coverage insurance policy issued in the State of Texas, regardless of whether such damage or loss is occasioned by the negligence of the respective parties, or either of them, their agents, servants or employees.

9.    <u>**UTILITIES AND SERVICES.**</u>

Provided Tenant is not in default of any term, condition or covenant of this Lease, Landlord agrees to furnish or cause to be furnished to the Premises gas, water (for drinking, cleaning and lavatory purposes only), and electricity during the Term. Landlord shall furnish tempered and refrigerated water at those points of supply designated by Landlord in the Common Areas of the Building, heated and refrigerated air conditioning in season (at temperatures, in amounts and at times considered by Landlord to be standard and in compliance with any governmental regulations; such service after hours, on Saturday afternoons, Sundays and holidays will be furnished only upon 24 hours' prior written request of Tenant who shall bear the entire cost thereof). Landlord shall furnish janitorial service, in the manner and to the extent deemed standard by Landlord during the periods and hours as such services are normally furnished to all tenants. Tenant shall not hinder the work of the Building janitor. Landlord shall furnish routine maintenance, painting and lighting service for all Common Areas within the Building in the manner and to the extent deemed by Landlord to be standard. Tenant will pay all telephone charges. Landlord shall not be liable in damages or otherwise for failure, stoppage or interruption of any such service nor shall the same be construed as an eviction of Tenant, work an abatement of Rent, or relieve Tenant from the operation of any covenant or agreement set forth herein; but in the event of any failure, stoppage or interruption thereof not caused by Tenant or Tenant's agents, employees, contractors, clients or invites, Landlord shall use reasonable diligence to resume service promptly.

Landlord reserves the right to separately meter usage of any utility service included in Operating Expenses and charge Tenant and other tenants of the Building based on such usage.  Further, Landlord reserves the right from time to time to charge to Tenant and other tenants of the Building applicable costs with respect to usage of Building services and utilities at times other than during standard business hours, on such basis as Landlord may reasonably determine for the purpose of properly allocating the costs of such services and utilities in accordance with the usage thereof.

Notwithstanding anything hereinabove to the contrary, Landlord reserves the right from time to time to make reasonable modifications to the above standards for services and utilities.

10.   <u>**INTENTIONALLY DELETED**</u>.

11.   <u>**PROPERTY OBLIGATIONS.**</u>

11.1    <u>Tenant's Property</u>. Landlord shall not be liable for any damage to or loss of personal property placed in or about the Premises by Tenant or Tenant's agents, employees, clients, guests, invites or others, resulting from fire, theft, explosion, flood, windstorm or other casualty caused by Acts of God or by the acts or omissions of other occupants of other space in the Building or caused by operations during construction of any public or quasi public work. All property kept or stored within the Premises shall be kept or stored at the risk of Tenant only, and Tenant shall hold Landlord harmless from any claims arising out of damage to the same, including subrogation claims by Tenant's insurer, if any, unless such damage shall be caused by the gross negligence of Landlord.

11.2    <u>Tenant Fixtures, Alterations and Personal Property</u>. Tenant shall not make or allow to be made any alterations, modifications or physical additions in or to the Premises without the prior written consent of Landlord which consent shall not be unreasonably withheld or delayed.  Tenant may proceed with the construction of the approved alterations, modifications or physical additions, but only so long as they are in strict compliance with the plans and specifications and with the provisions of this <u>Section 11.2</u>. All alterations shall be made at Tenant's expense, either by Tenant's contractors, which previously have been approved in writing by Landlord, or at Landlord's option, by Landlord's contractors on terms reasonably satisfactory to Tenant, including a fee of five percent (5%) of Landlord's actual cost of the

work to cover Landlord's overhead. None of Tenant's construction, alterations, modifications or physical additions shall (i) alter the exterior appearance of the Building or Premises in any manner, (ii) adversely affect the structure or safety of the Building or Premises or any portion thereof, (iii) fail to comply with all building, safety, fire and other codes and governmental and insurance requirements, or (iv) fail to be completed promptly and in a good and workmanlike manner. All trade fixtures installed by Tenant shall be new or completely reconditioned. At Landlord's option, any such approved additions, alterations, modifications, improvements and/or fixtures furnished or installed by Tenant which are sufficiently affixed or annexed to the Premises so as to become a part thereof, other than unaffixed movable trade fixtures, shall upon the expiration or earlier termination of this Lease, become the property of Landlord. Any damage to the Premises caused by such installation and/or removal of Tenant's fixtures and equipment shall be repaired at Tenant's sole cost and expense. The provisions of this Section shall expressly survive the expiration or earlier termination of this Lease.

11.3    Liens. Tenant shall neither permit nor suffer an involuntary lien to be filed or affixed against the Building, the Premises, the fee simple title of the Land or Landlord's leasehold estate therein, or any part thereof, and shall not voluntarily grant any lien or security interest therein. In the event any such involuntary or voluntary lien, including without limitation, mechanic's lien or tax lien, is filed and/or affixed against the Building, the Premises the fee simple title of the Land or Landlord's leasehold estate therein, or any part thereof, or against any fixtures, equipment, furnishings therein or all types of work and improvements comprising the Interior of the Premises and Tenant has not caused the same to be released and discharged of record within ten (10) days after notice thereof, same shall constitute a default hereunder. Upon such default, in addition to any other remedies available to Landlord herein, Landlord may cause the release and discharge of such lien, Tenant shall repay to Landlord immediately upon demand as Additional Rent hereunder all such sums disbursed or deposited by Landlord plus an administrative fee not to exceed five percent (5%) of the sums disbursed or deposited. Nothing contained herein, however, shall imply any consent or agreement on the part of Landlord or anyone holding under Landlord to subject Landlord's interest to liability under any mechanic's or other lien law, regardless of whether the performance or the furnishing of such work, labor, services or materials to Tenant or anyone holding under Tenant shall have been consented to by Landlord.

## 12.    **SUBORDINATION/ATTORNMENT.**

12.1    Subordination. Tenant covenants and agrees promptly upon request of Landlord to execute and deliver, in a recordable form provided by Landlord, an acknowledgment of the subordination of this Lease to any mortgage, deed of trust, security agreement or other lien or encumbrance resulting from any method of financing or refinancing, presently or henceforth placed upon the Landlord's leasehold estate in the Land and/or fee interest in the Building and any future expansion thereof or additions thereto, and to all advances of money or other value heretofore or hereafter made upon the security thereof.  Notwithstanding anything to the contrary contained herein, Landlord agrees to obtain a subordination, non-disturbance and attornment agreement ("**SNDA**") from its current lender in a form reasonably acceptable to Tenant which shall provide, among other things, that this Lease shall be recognized and Tenant's rights and occupancy under this Lease shall not be disturbed in the event Tenant is not in default hereunder beyond any applicable notice and cure periods.  In addition, Tenant shall not be required to subordinate its rights under this Lease to the interest of any future lender unless Landlord has first delivered an SNDA to Tenant executed by such future lender in a form reasonable acceptable to Tenant and containing a similar non-disturbance right.

12.2    Collateral Assignment by Landlord. Subject to the foregoing provisions of this Article, Landlord reserves the right, without notice to or consent of Tenant, to assign this Lease and/or any and all Rent hereunder as security for the payment of any mortgage loan, deed of trust loan, or other method of financing or refinancing.

12.3    Attornment. In the event any such mortgage is foreclosed, or in the event of the exercise of the power of sale under any such deed of trust, Tenant shall consider the purchaser at the foreclosure trustee's sale to be the Landlord hereunder, and Tenant will attorn to the purchaser and will recognize the purchaser as the owner and Landlord under this Lease.

## 13.    USE AND OPERATION.

13.1    Use of Premises. The Premises shall be used and occupied by Tenant solely for the Permitted Use and Tenant expressly agrees that no use shall be made or permitted or acts done by Tenant and/or any agents, employees, subtenants, or assignees of Tenant, which shall increase the existing rate of insurance coverage or cause cancellation of such insurance coverage. Tenant shall not (i) permit any objectionable or unpleasant odors to emanate from the Premises; nor place or permit any radio, television, loudspeaker or amplifier on the roof or outside of the Premises or where the same can be seen or heard from outside the Premises; (ii) place any antenna, awning or other projection on the exterior of the Premises; (iii) take any other action which would constitute a nuisance or would disturb or endanger other tenants of the Building or unreasonably interfere with their use of their respective premises; or (iv) do anything which would tend to injure the reputation of the Building.  Tenant shall at all times comply with all terms and provisions of the Ground Lease and Declaration applicable to Tenant, or Tenant's use of the Premises and Common Areas.

13.2    Suitability of Premises. Tenant warrants to Landlord that it has, prior to the execution hereof, fully inspected the Building, the Common Areas, the property and all items related thereto, and that Tenant has made, performed, obtained and received all studies, inspections, reports, diagnoses and tests that Tenant desires relative to the Building, the Common Areas, the property and all items related thereto and Tenant's proposed business use of the Premises. Tenant further warrants to Landlord that Tenant has inspected, or will thoroughly inspect, the Plans and Specifications agreed and to be agreed with Landlord for Landlord's construction of the shell of the Premises and will be fully satisfied with such inspections and Plans and Specifications for the Premises. Tenant understands and agrees that Tenant is accepting the Building, the Common Areas, the property and all items related thereto, and will be accepting the Premises, in their "AS-IS", "WHERE-IS" condition, "WITH ALL FAULTS" and without any warranty or guarantee whatsoever.  Tenant warrants that it used or will use all due diligence in conducting all studies inspections, diagnoses and tests on the Premises the Building, the Common Areas, the property and all items related thereto that Tenant deemed necessary or appropriate. Tenant acknowledges that Landlord has not made and does not make, and Landlord hereby disclaims, any and all warranties, express or implied, which in any way relate to the Premises the Building, the Common Areas, the property and all items related thereto or the condition thereof, including without limitation any implied warranty of suitability or habitability. Tenant further understands that Landlord has relied and will rely upon Tenant's having made all inspections Tenant desired, and that but for such inspections by Tenant, Landlord would not have leased the Premises to Tenant. Additionally, the parties agree that the obligation of Tenant to pay all Rent and other sums hereunder provided to be paid by Tenant, and the obligation of Landlord to perform Landlord's other covenants and duties hereunder, constitutes independent, separate and unconditional obligations to be performed at all times provided for hereunder, save and except only when an abatement thereof or reduction therein is expressly provided for herein and not otherwise. It is agreed that in the event Landlord commences any proceedings against Tenant for nonpayment of Rent or any other sum due and payable by Tenant hereunder, Tenant shall not interpose any counterclaim or other claim against Landlord of whatever nature or description in any such proceedings; and in the event Tenant interposes any such counterclaim or other claim against Landlord in any such proceeding, Landlord and Tenant stipulate and agree that, in addition to any other lawful remedy of Landlord, upon motion of Landlord, such counterclaim or other claim asserted by Tenant shall be severed out of the proceedings instituted by Landlord and Landlord may proceed to final judgment

separately and apart from and without consolidation with or reference to the status of such counterclaim or any other claim asserted by Tenant.

## 14.   HAZARDOUS MATERIALS.

14.1    Tenant, and all of Tenant's partners, officers, directors, employees, representatives, agents, contractors, subcontractors, successors, assigns, lessees, sublessees, concessionaires, invitees and any other occupants of the Premises (collectively, "**Tenant's Representatives**"), shall abide by all Federal, state and local statutes, ordinances, codes and regulations, now existing or hereinafter enacted (collectively, "**Hazardous Materials Laws**"), governing the use, handling, depositing or disposal of hazardous or toxic substances, and medical wastes (collectively, "**Hazardous Materials**").  Landlord has no obligation to provide or make provision for disposal facilities for Hazardous Materials or other medical wastes, and Tenant shall not deposit or dispose of any Hazardous Materials or other medical wastes into the general waste disposal facilities provided by Landlord.  Tenant shall, at Tenant's expense, employ or engage private waste management services to dispose of any and all waste of Tenant which must be handled in any manner other than general waste collection provided by Landlord through public or private waste collection service.  Landlord may direct the manner of disposal and location of any containers, collection boxes or other storage facilities, which may be required by Hazardous Materials Laws.

14.2    The term "**Hazardous Materials**" shall not include (i) pharmaceuticals, cleaning agents of the types and in the quantities and concentrations normally stocked by health care providers located in medical office buildings similar to the Building, (b) oil in the minimal amounts typically associated with the use of certain portions of the Building for driving and parking motor vehicles or (c) medical wastes generated at the Building; however, Tenant shall use, store, transport and dispose of the foregoing in accordance with all laws including (without limitation) all Hazardous Materials Laws.

14.3    Tenant shall indemnify, defend and hold harmless Landlord, the "**Hospital**" and the holder ("**Mortgagee**") of any mortgage encumbering all or any portion of the Building or the real property upon which the Building is situated or Landlord's leasehold estate in the Land ("**Mortgage**"), and their respective members, managers, partners, shareholders, directors, officers, agents and employees (all collectively referred to as the "**Indemnified Parties**") from and against any and all costs, expenses and claims arising from or in connection with any act, omission or negligence of Tenant or any Tenant's Representatives relating to or arising out of the use, handling, depositing or disposal of Hazardous Materials with respect to the Premises or the Building, such indemnity to include all costs, expenses and liabilities associated with the remediation thereof or incurred in connection with each claim, action or proceeding with respect thereto, including, without limitation, all attorney's fees and expenses.

14.4    Tenant shall immediately notify Landlord in writing of:  (i) any enforcement, clean-up, removal or other governmental or regulatory action instituted, contemplated or threatened concerning the Premises pursuant to any Hazardous Materials Laws; (ii) any claim made or threatened by any person against Tenant or the Premises relating to damage contribution, cost recovery, compensation, loss or injury resulting from or claimed to result from any Hazardous Materials on or about the Premises; and (iii) any reports made to any environmental agency arising out of or in connection with any Hazardous Materials in or removed from the Premises, including any complaints, notices, warnings or asserted violations in connection therewith, all upon receipt by Tenant of actual knowledge of any of the foregoing matters.  Tenant shall also supply to Landlord a promptly as possible and in any event within five (5) business days after Tenant first receives or sends the same, copies of all claims, reports, complaints, notices, warnings or asserted violations relating to Hazardous Materials associated with the Premises.

14.5    Without limiting any other provision of this Lease, Tenant shall not create or permit to exist in or about the Premises any "**Mold Condition**" unless caused by Landlord.  As used herein, the term Mold Condition shall include the presence or suspected presence of "**Mold**" or any condition(s) that reasonably can be expected to give rise to or indicate the presence of Mold, including observed or suspected instances of water damage or intrusion, the presence of wet or damp wood, cellular wallboard, floor coverings or other materials, inappropriate climate control, discoloration of walls, ceilings or floors, complaints of respiratory ailment or eye irritation by Tenant's employees or any other occupants or invitees in the Premises, or any notice from a governmental agency of complaints regarding the indoor air quality at the Premises.  As used herein, the term Mold shall include mold, mildew, fungus or other potentially dangerous organisms.  In the event of suspected or actual Mold or Mold Conditions at the Premises, Tenant shall immediately notify Landlord in writing of the same and the precise location thereof.  Tenant acknowledges the control of moisture and Mold prevention are material obligations of Tenant under this Lease, and Tenant shall, at its sole costs and expense, regularly monitor the Premises for the presence of Mold and Mold Conditions.  If any Mold or Mold Conditions in or about the Premises are a result of the actions or omissions of Tenant or any Tenant's Representatives, Tenant shall promptly, at Tenant's sole cost and expense, hire a licensed and experienced Mold remediation contractor to completely clean-up and remove from the Premises all Mold or Mold Conditions.  All such clean-up, removal and remediation shall, in each instance, be conducted to the satisfaction of Landlord and any governmental authority with jurisdiction and otherwise in strict compliance with all applicable laws.  Such clean-up, removal and remediation shall also include removal and replacement of any infected host materials as well as any repairs and refinishing required as the result of such removal and replacement.  There shall be no abatement of Rent on account of any clean-up, removal or remediation of any such Mold or Mold Condition.  Tenant waives, releases and discharges Landlord and all Indemnified Parties for, from and against all claims, demands, causes of action, suits, judgments, liabilities, losses, damages and expenses (including attorneys' fees) for personal injury, bodily injury or property damages in any way arising from or relating to or associated with moisture or the growth of or the presence of Mold or Mold Conditions.

## 15.    <u>ASSIGNING, MORTGAGING, SUBLETTING</u>.

15.1    <u>Prohibitions</u>. Except as otherwise permitted pursuant to Section 15.1 or 15.2, Tenant shall not (i) transfer, assign or hypothecate this Lease, (ii) sublet any portion of the Premises, (iii) enter into any license, concession or other right of occupancy of any portion of the Premises, (iv) permit any other entity to become Tenant hereunder by merger, consolidation, or other reorganization, (v) if Tenant is an entity other than a corporation whose stock is publicly traded, permit the transfer of an ownership interest in Tenant that results in a Material Change in Ownership (defined below) (each, a "**Transfer**"), without first procuring the written consent of the Landlord, which consent may not be unreasonably withheld or delayed.  Any Transfer, whether voluntary or involuntary, by operation of the law or otherwise, without the prior written consent of Landlord first had and obtained therefor, shall be null and void, at the option of Landlord, and Landlord may declare a default and exercise all remedies available to Landlord under this Lease or at law.  Notwithstanding the foregoing provisions of this Section 15.1 to the contrary, Tenant may sublet the Premises to Professionals and/or Physicians associated with the Hospital.

15.2    <u>Material Change in Ownership</u>. If Tenant is an entity of any type, then the sale, transfer or other change of 49.9% or greater of the ownership interests of Tenant shall constitute a "**Material Change in Ownership**", in which event Landlord shall consent to the resulting Transfer provided that Tenant provides to Landlord (i) at least thirty (30) days' prior written notice of such anticipated Material Change in Ownership, (ii) all relevant details of the proposed Material Change in Ownership, including updated financial statements reflecting the financial condition of the proposed assignee post Material Change in Ownership ("**Post Material Change in Ownership Financial Statements**"), and (iii) the Post Material Change in Ownership Financial Statements reflecting a minimum Tangible Net Worth of

$150,000,000. As used herein, "**Tangible Net Worth**" means the excess of total assets over total liabilities, in each case as determined in accordance with generally accepted accounting principles consistently applied ("**GAAP**"), excluding, however, from the determination of total assets all assets that would be classified as intangible assets under GAAP including, goodwill, licenses, patents, trademarks, trade names, copyrights, and franchises.

15.3     Liability; Release.  Tenant shall not be released from any liability or obligation under this Lease as a result of any Transfer or Landlord's consent to any Transfer; provided, however, if (i) Landlord consents to a proposed Transfer that would occur as a result of (A) any other entity becoming Tenant hereunder by merger, consolidation, or other reorganization, (B) any transfer of an ownership interest in Tenant that results in a Material Change in Ownership or (C) any assignment of this Lease for the remainder of the Term, and (ii) the entity comprising Tenant after such Transfer has a Tangible Net Worth together with any new guarantor that is equal to or greater than (1) the aggregate Tangible Net Worth of Tenant and Guarantor at the time of this Lease and (2) a minimum Tangible Net Worth of $150,000,000, then Tenant shall be released from further liability under this Lease for the unexpired Term following such Transfer.  Tenant shall provide to Landlord any information reasonably requested by Landlord to evaluate the satisfaction of any Tangible Net Worth requirements contemplated in this Section 15.

15.4     Conditions to Consent. Landlord may condition its consent to any assignment or subletting (i) upon Tenant's agreement to termination of this Lease and simultaneous creation of a new lease between Landlord and the proposed successor, or (ii) upon Tenant's agreement simultaneously with the execution of any sublease or assignment approved by Landlord, to name Landlord its agent for purposes of collection of rental from the subtenant approved by Landlord under any such sublease or assignment (in order to enable Landlord to maintain its collection and other relationships).

15.5     Transactions Consented To. Each Transfer to which there has been consent shall be by an instrument in writing in form satisfactory to Landlord and shall be executed by the transferor, assignor, sublandlord, licensor, concessionaire, hypothecator or mortgagor and the transferee, assignee, subtenant, licensee concessionaire or mortgagee in each instance, as the case may be, and each transferee, assignee, subtenant, licensee, concessionaire or mortgagee shall agree in writing for the benefit of the Landlord herein to assume, to be bound by, and to perform the terms, covenants and conditions of this Lease to be done, kept and performed by the Tenant. One (or more, if required by Landlord) executed copy of such written instrument shall be delivered to Landlord.  Failure to first obtain in writing Landlord's consent or failure to comply with the provisions of this Article shall operate to prevent any such transfer, assignment, subletting, license, concession agreement or hypothecation from becoming effective.

## 16.     WASTE, NUISANCE, APPLICABLE LAWS.

16.1     Waste and Nuisance. Tenant shall not commit or suffer to be committed any waste in or upon the Premises and shall not commit or suffer to be committed therein any nuisance or other act or thing which may disturb the quiet enjoyment of any other tenant in the Building, or which may disturb the quiet enjoyment of any person within the immediate vicinity of the Building.

16.2     Tenant's Compliance with Laws. Tenant shall, at Tenant's sole cost and expense, comply with all the requirements of all federal, state, county, municipal and other applicable authorities, now in force or which may hereafter be in force in connection with Tenant's use of the Premises.

## 17.   DESTRUCTION.

17.1   Notice of Loss. Tenant shall give immediate notice to Landlord in the event of fire or other accidents or casualties within the Premises or in or around the Building, and such other notice as prescribed by the fire and extended coverage insurance policy required herein to be carried thereon, and further, Tenant shall give immediate notice to Landlord of any defect in any of the fixtures or equipment located within the Premises or in or around the Building.

17.2   Premises Useable. In the event the Premises shall be damaged by fire or other casualty, but shall not be rendered wholly or partially unusable, regardless of the time remaining in the Term, Landlord shall cause such damage to be repaired, and the Base Rent shall not be reduced or abated unless the repairs are delayed beyond ninety (90) days after commencement of such repairs, and thereafter, only if Landlord is not diligently pursuing such repairs, and then only to the extent as may be equitable based upon the amount of damage.

17.3   Premises Unusable. If the Premises shall be rendered partially or wholly unusable, Landlord shall cause such damage to be repaired and the Base Rent shall be reduced in proportion to Tenant's loss of effective use of the Premises during such repair.

17.4   Building Damaged. In the event all or part of the Building, other than the Premises, shall be damaged or destroyed by fire or other casualty, and regardless of the time remaining in the Term, Landlord shall cause such damage to be repaired. Neither Base Rent nor any other sums due hereunder shall be abated or reduced.

17.5   Scope of Repair. In the event Landlord elects or shall be obligated to repair or restore any damage or destruction as aforesaid, the scope of the work shall be limited to the shell of the Building and Lease Premises. Landlord shall not be required to make repairs or replacements of any panels, decoration, trade fixtures, railings, floor covering, partitions or other parts of the Interior of the Premises or any other property installed or placed in the Premises by Tenant.

17.6   Commencement of Repairs.  Anything to the contrary herein notwithstanding, Landlord shall not be required to commence repairs and/or restoration prior to the expiration of sixty (60) days following the occurrence or the receipt by Landlord of the insurance proceeds covering said damage, whichever event shall first occur.

## 18.   CONDEMNATION.

18.1   Total Taking. If all of the Premises should be taken for any public or quasi public use under any governmental law, ordinance or regulation or by right of eminent domain or by private purchase in lieu thereof, then this Lease shall terminate and the Rent shall be abated during the unexpired portion of the Term, effective on the date physical possession is taken by the condemning authority.

18.2   Partial Taking. If any part (but not all) of the Building, Common Areas or the Premises should be so taken, Landlord may terminate this Lease if Landlord, in its sole discretion, so elects. Any election to terminate this Lease in accordance with this provision shall be evidenced by written notice of termination to Tenant within thirty (30) days after the date physical possession is taken by the condemning authority. If this Lease is not so terminated, the Base Rent payable hereunder during the unexpired portion of the term shall be reduced in proportion to the area of the Premises taken, effective on the date physical possession is taken by the condemning authority.

18.3     Award.  All compensation awarded for any taking (or the proceeds of private sale in lieu thereof) of the Building, the Premises or the Common Areas shall be the property of Landlord and Tenant hereby assigns its interests in any such award to Landlord

## 19.     **QUIET ENJOYMENT.**

So long as Tenant shall pay all Rent and other payments due hereunder and shall observe and perform all of the covenants on Tenant's part to be observed and performed hereunder, and Tenant is not in default hereunder (beyond any applicable notice or cure periods), Tenant shall peaceably and quietly hold and enjoy the Premises (including easement rights) for the entire Term hereof without interruption by Landlord or person or persons lawfully or equitably claiming by, through or under Landlord, subject, nevertheless, to all of the terms and provisions of this Lease and to the reservations, encumbrances and limitations affecting the title to the premises upon which the Building is situated.

## 20.     **DEFAULT AND REMEDIES.**

20.1     Default. The following events shall be deemed to be the events of default by Tenant under this Lease:

(1)     Tenant shall fail to pay any installment of the Base Rent or any Additional Rent within five (5) business days after receipt of written notice of such failure from Landlord. Notwithstanding the foregoing, Landlord shall not be obligated to provide written notice more than twice in any twelve (12) month period.

(2)     Tenant shall fail to comply with any term, provision or covenant of this Lease, other than the payment of any sums due Landlord, including but not limited to, the Base Rent or any Additional Rent, and Tenant shall not cure such failure within thirty (30) days after written notice thereof of Tenant (or such shorter notice period as may be provided elsewhere in this Lease for specific events of default); provided, however, that if such failure cannot be reasonably cured within thirty (30) days, then Tenant shall have such additional time to cure as is reasonable under the circumstances provided that Tenant diligently continues to pursue such cure.

(3)     An event of default shall occur and remain uncured within the time stated for such cure under any Related Lease.

(4)     Tenant or any guarantor of Tenants' obligations hereunder shall become insolvent in any chapter of the United States Bankruptcy Code, or shall make a transfer in fraud of creditors, or shall make an assignment for the benefit of creditors.

(5)     Tenant or any guarantor shall file a petition under any section or chapter of the United States Bankruptcy Code, or under any similar law or statute of the United States or any state thereof; or Tenant shall be adjudged bankrupt or insolvent as defined in any chapter of the United States Bankruptcy Code in proceedings filed against Tenant or any guarantor of Tenant's obligations under this Lease.

(6)     A receiver or trustee shall be appointed for the Premises or for all or substantially all of the assets of Tenant or any guarantor and such receiver or trustee shall not be discharged within thirty (30) days following such appointment.

(7)     The discovery by Landlord that any financial statement given by Tenant or any of its assignees, subtenants or successors-in-interest, or any guarantor of Tenant's obligations hereunder to Landlord, was materially false.

20.2    <u>Remedies</u>.

(1)     Upon the occurrence of any event of default hereunder, and notwithstanding the fact that the termination or cancellation of this Lease by Landlord may substantially interfere with the ability of Tenant to conduct a non-liquidation proceeding under any chapter of the United States Bankruptcy Code, Landlord shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever.

(i)     Terminate this Lease, in which event Tenant shall immediately surrender the Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which Landlord may have for possession or arrearages in Rent, enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying said Premises or any part thereof, without being liable for prosecution or any claim for damages therefor and Tenant agrees to pay Landlord, on demand, the amount of all losses, expenses and damages, including attorneys' fees, which Landlord may suffer by reason of such termination; and/or

(ii)     Enter upon the Premises and correct such default or otherwise do whatever Tenant is obligated to do under the terms of this Lease; and Tenant agrees to pay Landlord, on demand, the amount of all  losses, expenses and damages, including attorneys' fees which Landlord may incur in connection with attempts to effect compliance with Tenant's obligations under this Lease, and Tenant further agrees that Landlord shall not be liable for prosecution or  any claim for damages resulting to Tenant from such action, and/or

(iii)     Enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying said Premises or any part thereof, without being liable for prosecution or any claim for damages therefor, and if Landlord so elects, relet the Premises on such terms as Landlord may deem advisable and receive rental therefor.

Pursuit of any of the foregoing remedies shall not preclude pursuit of any other remedies herein provided or provided by law, or at equity, nor shall pursuit of any other such remedy constitute a forfeiture or waiver of any Rent or other sums due to Landlord hereunder or of any damages accruing to the Landlord by reason of the violation of any of the terms, provisions and covenants herein contained. Forbearance by Landlord to enforce one or more of the remedies herein provided upon an event of default shall not be deemed or construed to constitute a waiver of such default. In determining the amount of loss or damage which Landlord may suffer by reason of termination of this Lease or the deficiency arising by reason of any reletting by Landlord as above provided, allowance shall be made for the expense of repossession and any repairs or remodeling undertaken by Landlord following repossession.

(2)     Exercise by Landlord of any one or more remedies herein granted or otherwise available shall not be deemed to be an acceptance of surrender of the Premises by Tenant, whether by agreement or by operation of law it being understood that such surrender can be effected only by the written agreement of Landlord and Tenant. No removal or other exercise of

dominion by Landlord over the property of Tenant or others at the Premises shall be deemed unauthorized or constitute a conversion. Tenant hereby consenting, after any event of default, to the aforesaid exercise of dominion over Tenant's property within the Building. All claims for damages by reason of such reentry and/or repossession and/or alteration of locks or other security devices are hereby waived, as are all claims for damages by reason of any distress warrant, forcible detainer proceedings, sequestration proceedings or other legal process. Tenant agrees that any reentry by Landlord may be pursuant to judgment obtained in forcible detainer proceedings or other legal proceedings, as Landlord may elect and Landlord shall not be liable in trespass or otherwise,(after deducting expenses incurred by Landlord as provided herein). In no event shall Tenant be entitled to any excess of any rental obtained by reletting over and above the Rent herein reserved. Actions to collect amounts due by Tenant as provided in this paragraph may be brought from time to time, on one or more occasions, without the necessity of Landlord's waiting until expiration of the Lease Term.

(3)    In the event Landlord elects to terminate this Lease by reason of event or default, then notwithstanding such termination, Tenant shall be liable for and shall pay to Landlord, at Landlords Address as defined in <u>Section 1</u> herein, the sum of all Rent, Additional Rent and other indebtedness accrued to the date of such termination, plus, as damages, an amount equal to the present value of the Rent and any and all other sums reserved hereunder for the remaining unexpired portion of the Lease Term (had the Lease not been so terminated by Landlord), less the then present value of the then fair rental value of the Premises.

(4)    In the event Landlord elects to repossess the Premises without terminating the Lease, then Tenant shall be liable for and shall pay to Landlord at Landlords Address as defined in <u>Section 1</u> hereinabove, all Rent and other indebtedness accrued to date of such repossession, plus all Rent and any and all other sums required to be paid by Tenant to Landlord during the remainder of the Lease Term until the date of expiration of the Term, diminished by any net sums thereafter received by Landlord through reletting the Premises during Period (after deducting expenses incurred by Landlord as provided herein). In no event shall Tenant be entitled to any excess of any rental obtained by reletting over and above the Rent herein reserved. Actions to collect amounts due by Tenant as provided in the paragraph may be brought from time to time, on one or more occasions, without necessity of Landlord's waiting until expiration of the Lease Term.

(5)    In the event of termination or repossession of the Premises for an event of default, Landlord shall have an obligation to attempt to relet the Premises, or any portion thereof. However, in the event of reletting Landlord may relet the whole or any portion of the Premises for any period, to any tenant, and for any use and purpose. Should Landlord choose to relet the Premises, or any portion thereof, for the remainder of the Term provided for herein, and if the rental received through reletting does not at least equal the Rent provided for herein, Tenant shall pay and satisfy the deficiency between the amount of the Rent so provided for and that received through reletting, including, but not limited to, the cost of renovating, altering, and decorating for a new occupant. Further, Tenant shall not in any event ever be entitled to any excess rental and other sums provided for herein, and the same shall belong solely to Landlord. Nothing herein shall be construed as in any way denying Landlord the right, in the event of abandonment of said Premises or other breach of this Lease by Tenant, to treat the same as an entire breach and at Landlord's option to terminate this Lease and/or immediately seek recovery for the entire breach of this Lease and any and all damages which Landlord suffers thereby.

(6)    If Tenant should fail to make any payment or cure any default hereunder within the time herein permitted, Landlord, without being under any obligation to do so and without

thereby waiving such default, may make such payment and/or remedy such other default for the account of Tenant (and enter the Premises for such purpose), and thereupon Tenant shall be obligated and hereby agrees, to pay Landlord, upon demand, all costs, expenses and disbursements (including reasonable attorneys' fees) incurred by Landlord in taking such remedial action.

(7)     In the event of the breach or the attempted or threatened breach of any covenant or provision contained in this Lease by Tenant, Landlord shall have, in addition to all other remedies provided it hereunder or by law or at equity, the right to obtain an injunction prohibiting such breach or attempted breach without the necessity for proof of inadequacy of legal remedy, irreparable harm or probable right of recovery.

20.3     Expenses/Attorneys' Fees. In the case of an event of default hereunder, Tenant shall also be liable for and shall pay to Landlord, at Landlords Address as defined in Section 1 herein, in addition to any sum provided to be paid above: broker's fees incurred by Landlord in connection with reletting the whole or any part of the Premises; the costs of removing and storing Tenant's or other occupant's property; the costs of repairing, altering, remodeling or otherwise putting the Premises into condition acceptable to a new tenant or tenants, and all reasonable expenses incurred by Landlord in enforcing Landlord's rights or remedies, including reasonable attorneys' fees and court costs until the expiration of the Term.  Tenant shall permit the Landlord to exhibit the Premises to prospective tenants and to place notices upon the Premises advertising "For Lease".  Landlord may at any time, exhibit the Premises to prospective purchasers. and place notices, upon the Building or the Premises advertising "For Sale."

20.4     Landlord's Breach.  In the event of any default by Landlord, Tenant's exclusive remedy shall be an action for damages (Tenant hereby waiving the benefit of any laws granting it a lien upon the property of Landlord and/or upon rental due Landlord), but prior to any such action Tenant will give Landlord written notice specifying such default with particularity, and Landlord shall thereupon have thirty (30) days in which to cure any such default. Unless and until Landlord fails to so cure any default after such notice, Tenant shall not have any remedy or cause of action by reason thereof. All obligations of Landlord hereunder will be construed as covenants, not conditions; and all such obligations will be binding upon Landlord only during the period of its possession of the Building and not thereafter.

20.5     Limitation on Landlord's Personal Liability. Tenant specifically agrees to look solely to Landlord's interest in the Building for the recovery for any judgment from Landlord, it being agreed that Landlord, its agents, employees, shareholders, officers, directors, and limited partners, shall never be personally liable hereunder for anything whatsoever.

## 21.     **ACCESS.**

Landlord or its agents shall have the right to enter the Premises at all reasonable times, and whenever necessary because of emergencies, to inspect the same, and to make such repairs, replacements, alterations, improvements or additions as Landlord may deem necessary or desirable, including alterations, repairs, improvements or additions to the space adjacent to Premises and/or to the Building, without the same constituting an eviction of Tenant in whole or in part, and the Rent reserved shall in no way abate while said repairs, replacements, alterations, improvements or additions are being made, by reason of loss or interruption of Tenant's business or otherwise. During the ninety (90) days prior to the expiration of the Term, Tenant shall permit the Landlord to exhibit the Premises to prospective tenants and to place notices upon the Premises advertising "For Lease".  Landlord may, at any time, exhibit the Premises to prospective purchasers, and place notices, upon the Building or the Premises advertising "For Sale."

22.    **SURRENDER AND REMOVAL OF PROPERTY.**

    22.1    <u>Surrender of Premises</u>. Promptly upon the expiration or earlier termination of the Term, Tenant shall surrender the Premises in the same condition as received by Tenant on the Commencement Date reasonable wear and tear and damage by unavoidable casualty or Act of God only excepted. Further, Tenant shall surrender all keys to the Premises at the place then fixed for the payments of Base Rent due hereunder. All items of work and improvements comprising the Interior of the Premises, shall constitute a part of the fee estate remainder subject to this Lease, notwithstanding that Tenant may construct or cause to be constructed all or any part of said improvements or may contribute to the cost thereof, and notwithstanding that Tenant may or might be required to maintain, repair and/or replace same or some part thereof pursuant to some other provisions in this Lease. Subject to the provisions of this Section, Tenant shall remove all of Tenant's trade fixtures, operation equipment and other personal property before surrendering the Premises as aforesaid and shall repair at Tenant's expense any damage to the Premises caused thereby.

    22.2    <u>Failure to Remove Property</u>. If Tenant shall neglect to remove Tenant's personally as herein provided, Landlord shall have the right (i) to remove said property and cause it to be stored in a public warehouse or elsewhere, at the cost of and for the account of Tenant, or (ii) in the alternative, if said property shall not be removed within thirty (30) days after said termination, to dispose of said property in a manner deemed suitable to Landlord, all without service of notice or resort to legal process and without becoming liable for any loss damage which may be occasioned thereby, and any proceeds of such disposition shall be retained by Landlord without liability to Tenant, Tenant hereby waiving any interest in such proceeds.

    22.3    <u>Survival of Covenants</u>. Tenant's obligations to observe or perform the covenants contained in this Article shall expressly survive the expiration or earlier termination of the Term.

23.    **HOLDING OVER.**

    Any holding over without the consent of Landlord after the expiration or earlier termination of the Term shall be construed to be and shall constitute a tenancy at the will of Landlord, and Tenant agrees to pay as rents and liquidated damages for such holding over a sum equivalent to the Rent herein specified and reserved plus fifty percent (50%) of the Base Rent (prorated on a monthly basis) and shall otherwise be on the same terms and conditions herein, as far as applicable.

24.    **ESTOPPEL/MEMORANDUM.**

    24.1    <u>Estoppel Certificate</u>.  Within ten (10) days after request therefore by Landlord, Ground Lessor or any Mortgagee, Tenant shall deliver in recordable form (and signed by Tenant, if an individual, or a duly authorized representative of Tenant if Tenant is not an individual) a statement to Landlord, Ground Lessor any Mortgagee, or any proposed Mortgagee or transferee of the Project (as the case may be), certifying (if such be the case) that this Lease is in full force and effect, that Tenant is in possession of the Premises, that Tenant has commenced the payment of Rent, that there are no defenses or offsets to this Lease claimed by Tenant, as well as any other information reasonably requested.  If Tenant fails or refuses to give a certificate hereunder within the time period herein specified, then the information contained on such certificate as submitted by Landlord shall be deemed correct for all purposes, but Landlord shall have the right to treat such failure or refusal as a default by Tenant.

    24.2    <u>Memorandum of Lease</u>. Promptly after the Commencement Date, Landlord and Tenant, if requested by Landlord, shall execute and acknowledge and deliver a memorandum or short form of this Lease, in recordable form, acknowledging Tenant's acceptance of the Premises for all purposes herein

provided and specifying the Commencement Date and the termination date of this Lease in accordance with the provisions hereof, and said memorandum may be recorded by Landlord only, but this Lease Agreement itself shall not be recorded. In the event Tenant records a memorandum of this Lease, or this Lease, Tenant shall be in default under this Lease and Landlord may terminate this Lease upon five (5) days written notice to Tenant at Tenant's address set forth in Section 1.1 hereof.

## 25. NOTICES.

All notices required or permitted to be given hereunder by either party hereto to the other party shall be deemed sufficiently given or made on the day of receipt thereof or three (3) business days after the date when mailed by United States Registered or Certified Mail, adequate postage paid, to their respective addresses as specified in Section 1.1 hereof. Each party hereto may notify the other party of any change in its mailing address by notice in the manner herein above provided, which new address shall thereafter be deemed the proper address for notice hereunder.

## 26. TENANT'S PAYMENTS.

26.1    Payments. Tender of Rent and/or any other payment due hereunder shall be considered to have been made on the date such payments received by Landlord and not on the date mailed by Tenant. For purposes hereof, the office of Landlord is the office presently or henceforth designated pursuant to the provisions of Section 1.1 hereof. Checks or drafts tendered will constitute payment only when duly paid by the drawers bank promptly upon presentment, properly endorsed, for payment.

26.2    Interest. All sums due and owing by Tenant to Landlord under this Lease shall bear interest at the Prime Rate (as defined in the *Wall Street Journal*) plus four percent (4%) from the date due until paid.

## 27. LANDLORD'S LIEN.

To secure the payment of all Base Rent, and Additional Rent reserved herein, and all other payments due Landlord hereunder, or to become due hereunder and the faithful performance of all covenants, agreements and stipulations herein contained to be performed by Tenant, Tenant hereby grants to Landlord an express first and prior contract lien and security interest on all property (including fixtures, equipment, inventory, goods, wares, furniture, office equipment, supplies and merchandise) which may be placed in the Premises, and also upon all proceeds of any insurance which may accrue to Tenant by reason of destruction of or damage to any such property. Tenant hereby waives all exemption laws in favor of said lien and security interest. This lien and security interest is given in addition to the Landlord's statutory lien and shall be cumulative thereof. Tenant shall not remove any property from the Premises until all of Tenant's obligations under this Lease are satisfied. This lien may be foreclosed with or without court proceedings by public or private sale, provided Landlord gives Tenant at least ten (10) days notice of the time, place and terms of said sale, and Landlord shall have the right to become the purchaser of such property, upon being the highest bidder therefor at said sale. The notice referred to in the preceding sentence may (but needs not) be given by Landlord to Tenant contemporaneously with any other notice from Landlord to Tenant which may be given in accordance herewith. At the time of the execution of this Lease, and if requested thereafter by Landlord, Tenant shall execute and deliver to Landlord financing statement instruments in form deemed sufficient by Landlord to reflect the security interest herein granted and any proper amendment of, assignment of, modification in or extension of the aforesaid contract lien and security interest hereby granted. Tenant hereby grants to Landlord a power of attorney to sign, in place and stead of Tenant, any and all such instruments. Said power of attorney is irrevocable and coupled with an interest.

28.     **RULES AND REGULATIONS.**

Such reasonable rules and regulations applying to all tenants in the Building as may be adopted by Landlord for the safety, care, cleanliness, preservation of good order or operation of the Premises, the Building, the Property and the Common Areas, are hereby made a part hereof and Tenant agrees to comply with all such rules and regulations, immediately upon receipt of a copy of same. Landlord shall have the right at all times to change any of the rules and regulations or to amend them in any manner deemed reasonable by Landlord. All changes and amendments will be sent by Landlord to Tenant in writing and shall be thereafter carried out and observed by Tenant.  As of the Effective Date, the rules and regulations are set forth on Exhibit D.

29.     **BROKERS.**

None.

30.     **AUTHORITY.**

Each of the persons executing this Lease on behalf of Tenant represents and warrants that Tenant has been and is qualified to do business in the state in which the Building is located, that the Tenant Entity has full right and authority to enter into this Lease, and that all persons signing on behalf of the Tenant Entity were authorized to do so by all appropriate actions required of such entity.  If Tenant signs as a partnership, trust or other legal entity, each of the persons executing this Lease on behalf of Tenant represents and warrants that Tenant has complied with all applicable laws, rules and governmental regulations relative to its right to do business in the state in which the Building is located, and that each of the persons or entities acting on behalf of the Tenant was authorized to do so by any and all appropriate partnership, trust or other actions.

31.     **LIABILITY OF LANDLORD.**

Tenant shall look solely to Landlord's interest in the Building, including revenue derived from the Project, and Landlord's personal property used in connection with the Project for the satisfaction of any judgment or decree requiring the payment of money by Landlord, based upon any default hereunder, and no other property or asset of Landlord shall be subject to levy, execution, or other enforcement procedure for the satisfaction of such judgment or decree.  **IN NO EVENT SHALL LANDLORD BE LIABLE OR RESPONSIBLE FOR ANY CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGES.**

32.     **SCOPE AND INTERPRETATION OF AGREEMENT; CONFIDENTIALITY.**

This Lease and all Exhibits set forth including all of the covenants, promises, agreements, conditions, and understandings between Landlord and Tenant concerning the Premises, and there are no covenants, promises, conditions, or understandings, either oral or written, other than as set forth herein. No subsequent alteration, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by both parties.  This Lease shall not be more strictly enforced against either party regardless of who was more responsible for its preparation.  Except at Landlord's option, no part of this Lease or any memorandum thereof may be recorded in the public records of any municipality or county.  Tenant will maintain the confidentiality of this Lease and will not divulge the economic or other terms of this Lease, whether verbally or in writing, to any person, other than Tenant's officers, directors, partners or shareholders; Tenant's attorneys, accountants and other professional consultants; any governmental agencies; and pursuant to subpoena or other legal process.  If any provision of this Lease shall be determined to be void by any court of competent jurisdiction or by any

law enacted subsequent to the Effective Date, then such determination shall not affect any other provisions hereof, all of which other provisions shall remain in full force and effect.

33.    **LANDLORD'S CONSENT.**

Without limiting any other provision of this Lease, in the event that Landlord's consent is required by the terms hereof for any purpose whatsoever, it is understood and agreed that (a) Landlord's consent may be subject to the consent of the Ground Lessor, Declarant  and/or the holder of any Mortgage encumbering the Building to the extent that such consents are required under the terms of the Ground Lease, Declaration or the applicable financing documents (which consents Landlord shall seek to obtain) and (b) notwithstanding anything to the contrary set forth herein, it shall not be deemed unreasonable for Landlord to withhold its consent in any given circumstance based upon Landlord's inability to obtain any required consent from the Ground Lessor, Declarant or the holder of any Mortgage encumbering the Building.

34.    **USE OF PREMISES.**

Tenant shall use and occupy the Premises only for the Permitted Use, and for no other purpose, without the prior written consent of Landlord.

35.    **GUARANTY.**

As material consideration for Landlord to enter this Lease, Tenant shall cause Guarantor to execute the Guaranty attached as <u>Exhibit E</u> (the "**Guaranty**"), and Tenant shall deliver the Guaranty to Landlord contemporaneously with Tenant's execution hereof.

36.    **WAIVER OF JURY TRIAL.**

LANDLORD   AND   TENANT   HEREBY   KNOWINGLY,   VOLUNTARILY   AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS LEASE OR THE OBLIGATIONS EVIDENCED HEREBY, OR ANY OTHER   DOCUMENT   OR   INSTRUMENT   CONTEMPLATED   TO   BE   EXECUTED   IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY.  THIS PROVISION IS A MATERIAL INDUCEMENT TO EACH OF LANDLORD AND TENANT IN ENTERING INTO THIS LEASE.

37.    **MISCELLANEOUS.**

37.1    <u>Successors and Assigns</u>. All rights and liabilities herein granted to or imposed upon the respective parties hereto shall extend to and jointly and severally bind the several respective heirs, legal representatives, successors and assigns of the respective parties hereto, an if there shall be more than one Landlord or Tenant, all shall be bound jointly and severally the terms, conditions and agreements herein contained. No rights, however, shall inure to the benefit of any assignee of Tenant unless Landlord has approved the assignment to such assignee in writing as provided herein.

37.2    <u>Waivers</u>. One or more waivers of any breach or violation of any agreement, covenant or condition herein contained shall not be deemed to be a waiver of any subsequent violation or breach of the same or any other agreement, covenant, or condition herein contained, and the consent or approval by either party of any act by the other, which act requires the approval or consent of the other party, shall not

be deemed to waive or render unnecessary the future requirements of consent or approval of the same or similar act; and the subsequent acceptance of Rent or other payment due hereunder shall not be deemed to be a waiver of any preceding breach by Tenant, other than failure of Tenant to pay the particular Rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of the acceptance of said Rent. No express covenant, term or condition of this Lease shall be deemed to have been waived by either party, unless such waiver is in writing.

37.3    Accord and Satisfaction. No payment made by Tenant or received by Landlord in an amount less than the amount herein stipulated shall be deemed to be other than on account of the earliest received payment, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as Rent be deemed an accord and satisfaction, and Landlord may accept any such check or payment without prejudice to Landlord's right to recover the balance of such amount or to pursue any other remedy in this Lease or by law provided Landlord.

37.4    Entire Agreement. This Lease, together with the exhibit or exhibits aforesaid and the rider or riders, if any, attached hereto and forming a part hereof, contains and sets forth the entire agreement and understandings between the parties hereto concerning the Premises, and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between said parties other than as herein expressly set forth. Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon either party hereto, unless reduced to writing and signed by both parties.

37.5    Partnership. Landlord does not become a partner of Tenant in the conduct of its business or otherwise, or a joint venturer or a member of a joint enterprise with Tenant by virtue of this Lease.

37.6    Force Majeure.  In the event Landlord shall be delayed, hindered or prevented from the performance of any act required hereunder by reason of strikes, fire, explosions, lock-outs, failure of electrical power, governmental restrictions or regulations, unavailability of suitable financing, materials and/or labor, riots, insurrection, war or on account of any other condition or occurrence not the fault of Landlord, then the performance of any such act shall be extended for a period equivalent to the period of such delay.

37.7    Captions and Numbers.  The captions, section numbers and article numbers appearing in this Lease are inserted only as a matter of convenience and in no wise define, limit, construe or describe the scope or intent of such sections or articles, nor in any wise affect this Lease.

37.8    Tenant, Defined Use of Pronouns. The word "**Tenant**" shall be deemed and taken to mean each and every person or party mentioned as a Tenant herein, be the same one or more and if there shall be more than one Tenant. Any notice required or permitted by the terms of this of Lease may be given by or to any one thereof and shall have the same force and effect as if given by or to all thereof. The use of the neuter singular pronoun to refer to Landlord or Tenant shall be deemed a proper reference even though Landlord or Tenant may be an individual, a partnership, a corporation, and a group of two or more individuals or corporations. The necessary grammatical changes required to make the provisions of this Lease apply in the plural sense where there is more than one Landlord or one Tenant, and to either corporations, associations, partnerships or individuals, males or females, shall in all instances be assumed as though in each case fully expressed.

37.9    Severability. If any provisions covenant or condition of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, there reminder of this Lease, or the application of such provision, covenant or condition to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each provision,

covenant or condition of this Lease shall be valid and shall be enforced to the fullest extent permitted by Law.

       37.10   <u>Survival</u>. Landlord and Tenant expressly agree that all provisions of this Lease which contemplate performance after the expiration or earlier termination hereof shall survive such expiration or earlier termination of this Lease.

       37.11   <u>Governing law</u>. This Agreement shall be construed in accordance with and governed by the laws of the State of Texas.  Venue for any legal actions hereunder shall be in the Courts of Grayson County, Texas.

       37.12   <u>Other documents</u>. The parties agree to execute all other documents or instruments necessary to effect the transfers of property set forth herein and otherwise to implement the provisions of this Agreement.

## 38.   <u>EXHIBITS</u>

       The following exhibits are a part of this Lease and are incorporated herein by reference:

Exhibit A – Legal Description
Exhibit B – Floor Plan of the Premises
Exhibit C – Parking Areas
Exhibit D – Rules and Regulations
Exhibit E – Guaranty

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

EXECUTED as of the date first set forth above in multiple counterparts each of which shall be deemed to be an original.

**LANDLORD**:

ALTERA HIGHLAND LLC,
a Texas limited liability company

By:_____
Name:  Terry D. Quinn
Its:      President

**TENANT**:

SHERMAN/GRAYSON HEALTH SYSTEM, LLC,
a Texas limited liability company

By:_____
Name:_____
Its:_____

EXECUTED as of the date first set forth above in multiple counterparts each of which shall be deemed to be an original.

**LANDLORD**:

ALTERA HIGHLAND LLC,
a Texas limited liability company

By:_____
Name:   Terry D. Quinn
Its:       President

**TENANT**:

SHERMAN/GRAYSON HEALTH SYSTEM, LLC,
a Texas limited liability company

By:_____
Name:   Thomas J. Frazier, Jr.
Its:       Executive Vice President

EXHIBIT A

LEGAL DESCRIPTION

BEING a 3.0894 acre tract of land situated in the County of Grayson, State of Texas out of the J.B. McAnair Survey, Abstract No. 763 and being all of Block No. 7, and a portion of Lots 7-8, and all of Lots 9-12, Block 12 of Green Mount Addition to the City of Sherman, Grayson County, Texas, as shown by Plat of record in Volume 193, Page 21, Deed Record, Grayson County, Texas,  together with that  portion of vacated Pecan Street, and being more particularly described by meets and bounds as follow:

BEGINNING at a "X" cut in concrete found for corner at the intersection of the north line of Laurel Street (a 60 foot wide public right-of-way) and the east line of Bryant Avenue (a 60 foot wide public right-of-way);

THENCE North 15 degrees 40 minutes 01 seconds West (Reference for Basis of Bearings) along said east right-of-way line, a distance of 467.78 feet to a 5/8 inch iron rod set with cap stamped BGT for corner;

THENCE North 73 degrees 42 minutes 45 seconds East, a distance of 286.25 feet to a 5/8 inch iron rod set with cap stamped BGT for corner in the west right-of-way line of Highland Avenue;

THENCE South 16 degrees 01 minutes 19 seconds East along said west right-of-way line, a distance of 467.76 feet to a 1/2 inch iron rod with cap found for corner at the intersection of the west right-of-way line of said Highland Avenue and the north right-of-way line of said Laurel Street;

THENCE South 73 degrees 42 minutes 45 seconds West along said north right-of-way line, a distance of 289.15 feet to the POINT OF BEGINNING and containing 134,573 square feet or 3.0894 acres of land, more or less.

<u>EXHIBIT B</u>

FLOOR PLAN OF THE PREMISES

[ATTACHED]





St 365
Karim

St 350
Shell Space

St 315A
Sublease- EP Drs.

St 315
Drs Joshi - Torotjian - Engleman

St 315A

St 340
Gregory-Clarke

St 330
Anjum - Crawford

St 320
Cernero

St 310 - DaSilva

**3rd FLOOR PLAN**
scale: 1/8" = 1'- 0"

north

plan orientation

22 539

**Dan Burbine Associates**
Architects & Project Managers
12532 Renoir Lane   Dallas, Texas   75230

PROJECT

WNJ Wilson N. Jones

MEDICAL OFFICE BUILDING

REVISIONS

DATE
11 MAY 2005

SHEET
A-3

FOLDER
3 of 9



St 455
Zwingst-Kable

St 445
ENT Space
VACant

St 415
Buckingham-Schrank-Luechese

Dan Burbine Associates
Architects & Project Managers
12532 Renoir Lane   Dallas, Texas   75230

PROJECT

WNJ Wilson N. Jones

MEDICAL
OFFICE
BUILDING

REVISIONS

DATE
11 MAY 2005

SHEET
A-4

FOLDER
4 of 5

St 410
Shell Space

St 430
Urban24k

St 400
Shell Space

**4th FLOOR PLAN**
s c a l e : 1/8" = 1'-0"

5    20
0   10

north

plan
orientation

23404 SF

<u>EXHIBIT C</u>

<u>PARKING AREAS</u>

[ATTACHED]



TRACT FIFTEEN:

Being a part of Block No. Eight (8), of G. Y. Gray's Second Addition to the City of Sherman, Texas, and further described as follows:

BEGINNING at the intersection of the South line of Laurel Street with the West line of Highland Avenue as now opened;
THENCE West 140 feet with the South line of Laurel Street to a stake, for the Northwest corner;
THENCE South parallel with Highland Avenue 75 feet to a stake;
THENCE East parallel with Laurel Street 140 feet to a stake in the West line of Highland Avenue;
THENCE North with said line of Highland Avenue 75 feet to the place of beginning, containing a tract of 140 x 75 feet.

TRACT SIXTEEN of the County of Grayson, State of Texas, all that certain tract or parcel of land situated in the City of Sherman, Grayson County, Texas, being a part of the survey originally granted to John B. McAnair, and being a part of Block Eight (8) of Gray's Second Addition, as shown by the map or plat thereof, recorded in Volume 134, page 113, of the Deed Records of Grayson County, Texas, and being more particularly described as follows:

    BEGINNING at a point on the West line of Highland Avenue, 125 feet South of the intersection of the West line of Highland Avenue, and the South line of Laurel Street;
    THENCE Southward with the West line of Highland Avenue, 45 feet;
    THENCE Westward and parallel with the South line of Laurel Street, 140 feet;
    THENCE Northward and parallel with the West line of Highland Avenue, 45 feet;
    THENCE Eastward, parallel with the South line of Laurel Street, 140 feet to the place of beginning; this being the South 45 by 140 feet of the tract 95 by 140 feet, in size conveyed by Frank Reece and wife, Mrs. Minnie Reece, to Bob Richardson by deed dated March 5, 1924, and recorded in Volume 303, Page 153 of the Deed Records of Grayson County, Texas.

TRACT SEVENTEEN:

SITUATED in the City of Sherman, County of Grayson, Texas and being part of Block No. 8 of G. Y. Gray's Second Addition to the City of Sherman, Texas, out of J. B. McAnair Survey, Grayson County, Texas on the waters of Post Oak Creek, and described as follows:
And being the North 62 feet of the following described piece of property;
BEGINNING at the intersection of West line of Highland Ave. and the North line of Houston Street.
THENCE in a westerly direction with the North line of Houston Street 87 feet a stake.
THENCE in a Northerly direction and parallel with the West line of Highland Avenue 150 feet to a stake.
THENCE in an Easterly direction parallel with the North line of Houston Street, 87 feet to the West line of Highland Ave.
THENCE in a Southerly direction with the West line of said Highland Ave. 150 feet to the place of beginning, containing 87 x 150 feet of land.  Being the same land described in a deed from J. W. Hollingsworth and wife, Florence Hollingsworth to W. W. Craig, dated January 9, 1915, and

recorded in Volume 239, page 272, Deed Records of Grayson County, Texas.

TRACT TWENTY-FOUR:

BEING that certain tract, lot or parcel of land situated in the City of Sherman, Grayson County, Texas, in the J. B. McAnair Survey, part of Block Eight (8) of the G. Y. Gray Second Addition to the said City of Sherman;

BEGINNING at the Southwest corner of the lot conveyed by J. P. Mills and wife, to M. H. Andrews by deed recorded in Volume 57, page 107 of the Deed Records of Grayson County, Texas, a stake on the North line of West Houston Street;
THENCE North at right angles to the North line of West Houston Street 150 feet to a stake for corner;
THENCE East parallel with the North line of West Houston Street 60 feet to a stake for corner;
THENCE South at right angles to the North line of West Houston Street 150 feet to the North line of West Houston Street;
THENCE West along said line 60 feet to the Place of Beginning.

TRACT TWENTY-FIVE:

All that certain tract or parcel of land situated in Grayson County, Texas, and being more particularly described as follows: SITUATED in the City of Sherman, Grayson County, Texas, on the waters of Post Oak Creek, being a part of a survey or patent to J. B. McAnair Survey, and described as follows, to-wit:

BEGINNING at the Southeast corner of the tract described in the deed from L. M. Tuck, Receiver, to Clyde Jackson and wife, of record in Book 367, Page 344, Grayson County Deed Records;
THENCE West with the North line of Houston Street, 80 feet to the Southeast corner of a lot sold to L. V. Butler;
THENCE North with the East line of the Butler lot, 150 feet to the South line of a lot sold to Cecil J. Rodgers;
THENCE East with the South line of said Rodgers tract, 80 feet to the southeast corner or same, a stake in the East line of the tract sold to Clyde Jackson above referred to;
THENCE South with the East line of the Clyde Jackson tract, 150 feet to the place of beginning, being a lot 80 feet by 150 feet out of the Southeast corner of a tract sold by L. M. Tuck, Receiver, to Clyde Jackson and wife referred to.

Also being described as 80' x 150' our of Block 8 of G.Y. Gray's Addition to the City of Sherman.

TRACT TWENTY-SIX:

BEING all that certain lot or parcel of land, situated in the City of Sherman, Grayson County, Texas, a part of Block No. EIGHT (8) of G. Y. GRAY'S ADDITION to the City of Sherman and

being more particularly described as follows:

BEGINNING at the point of intersection of the North line of West Houston Street and the East line of Bryant Street;
THENCE North with the East line of Bryant Street for a distance of 150 feet;
THENCE East parallel with the North line of Houston Street for a distance of 70 feet;
THENCE South, parallel with the East line of Bryant Street for a distance of 150 feet to the North line of Houston Street;
THENCE West with said line for a distance of 70 feet to the Place of Beginning and containing 70 x 150 feet of land, more or less and being the same property conveyed by Alton R. Hill and wife, Laura Hill to J. B. Revell and wife, Willie B. Revell by deed dated November 10, 1952 and of record in Volume 705, Page 457 of the Deed Records of Grayson County, Texas.

TRACT TWENTY-SEVEN:

SITUATED in Sherman, Grayson County, Texas, and being a part of the J. B. McAnair Survey, and being also a part of Block 8 of G. Y. Gray's Second Addition to Sherman, Texas, and being a part of a tract of 150 x 250 feet of land sold by L. M. Tuck, receiver, to Clyde Jackson, et ux., by deed recorded in Volume 367, page 344, Deed Records of Grayson County, Texas, and described as follows, to-wit:

BEGINNING at a stake on the east line of what is known as Bryant Street at a point 50 feet south of the NW corner of the above mentioned tract of 150 x 250 feet, said point being the SW corner of a tract sold by Clyde Jackson, et al., to Cecil J. Rodgers, et ux.;
THENCE South 50 feet to a stake, the NW corner of a tract now owned by L. V. Butler, et ux., as described in deed of record in Volume 506, Page 407, Deed Records of Grayson County, Texas;
THENCE East parallel with the north line of the 150 x 250 foot tract 150 feet to a stake;
THENCE North 50 feet to the SE corner of the Cecil J. Rodgers, et ux., tract;
THENCE West with the south line of the said Rodgers tract 150 feet to the place of beginning, containing 50 x 150 feet of land.

TRACT TWENTY-EIGHT:

All that certain tract or parcel of land situated in the City of Sherman, Grayson County, Texas, being a part of the Survey originally granted to J. B. McANAIR, and being a part of BLOCK NO. EIGHT (8) of GRAY'S SECOND ADDITION to said City of Sherman, as shown by the map or plat thereof, recorded in Volume 134, at Page 113, Deed Records of Grayson County, Texas, and as shown by the 1908 Plat Book of Grayson County, Texas, and being more particularly described as follows:

BEGINNING at the intersection of the West line of Highland Avenue and the North line of Houston Street;
THENCE West with the North line of Houston Street, a distance of 87 feet;
THENCE North on a line parallel with the West line of Highland Avenue, a distance of 88 feet to the Southwest corner of a tract of land deeded to Elmer L. Anderson;

THENCE East on a line parallel with the North line of Houston Street and with the South line of the Elmer L. Anderson tract, a distance of 87 feet to a point in the West line of Highland Avenue;

THENCE South with the West line of Highland Avenue, a distance of 88 feet to the Place of Beginning and Containing 87 ft. by 88 ft. of land and being the same property conveyed by Floydell Akridge, a widow, to George Melvin Hammock, et ux., by Deed dated January 12, 1972, recorded in Volume 1208, at Page 433, Deed Records of Grayson County, Texas.

TRACT TWENTY-NINE:

BEING all that certain tract or parcel of land, situated in the County of Grayson, State of Texas, being a part of survey originally granted to J. B. McAnair and described as follows, to-wit:

BEGINNING at a point on the West line of Highland Avenue, seventy-five (75) feet South of the intersection of the West line of Highland Avenue and the South line of Laurel Street in the City of Sherman;

THENCE Southward with the West line of Highland Avenue fifty (50) feet;

THENCE Westward and parallel with the South line of Laurel Street, one hundred forty (140) feet;

THENCE Northward and parallel with the West line of Highland Avenue, fifty (50) feet;

THENCE Eastward and parallel with the South line of Laurel Street, one hundred forty (140) feet to the Place of Beginning; this being the North fifty (50) feet by one hundred forty (140) feet of the tract ninety-five (95) feet by one hundred forty (140) feet in size conveyed by Frank Reese and wife, Mrs. Minnie Reese, to Bob Richardson, by deed dated March 5, 1924, and recorded in Volume 303, page 153 of the Deed Records, Grayson County, Texas; and being Lot Eight (8), Block Eight (8), of Gray's Second Addition to the City of Sherman, Grayson County, Texas.

BEING a 3.0894 acre tract of land situated in the County of Grayson, State of Texas out of the J.B. McAnair Survey, Abstract No. 763 and being all of Block No. 7, and a portion of Lots 7-8, and all of Lots 9-12, Block 12 of Green Mount Addition to the City of Sherman, Grayson County, Texas, as shown by Plat of record in Volume 193, Page 21, Deed Record, Grayson County, Texas,  together with that  portion of vacated Pecan Street, and being more particularly described by meets and bounds as follow:

BEGINNING at a "X" cut in concrete found for corner at the intersection of the north line of Laurel Street (a 60 foot wide public right-of-way) and the east line of Bryant Avenue (a 60 foot wide public right-of-way);

THENCE North 15 degrees 40 minutes 01 seconds West (Reference for Basis of Bearings) along said east right-of-way line, a distance of 467.78 feet to a 5/8 inch iron rod set with cap stamped BGT for corner;

THENCE North 73 degrees 42 minutes 45 seconds East, a distance of 286.25 feet to a 5/8 inch iron rod set with cap stamped BGT for corner in the west right-of-way line of Highland Avenue;

THENCE South 16 degrees 01 minutes 19 seconds East along said west right-of-way line, a distance of 467.76 feet to a 1/2 inch iron rod with cap found for corner at the intersection of the west right-of-way line of said Highland Avenue and the north right-of-way line of said Laurel Street;

THENCE South 73 degrees 42 minutes 45 seconds West along said north right-of-way line, a distance of 289.15 feet to the POINT OF BEGINNING and containing 134,573 square feet or 3.0894 acres of land, more or less.

<u>EXHIBIT D</u>

RULES AND REGULATIONS

1.      All tenants will refer all contractor's representatives and installation technicians who are to perform any work within the Building, grounds, and Parking Area to Landlord for Landlord's supervision, approval and control before the performance of any such work. This provision shall apply to all work performed in the Building, grounds and Parking Area including, but not limited to, installations of telephones, telegraph equipment, electrical devices and attachments, and any and all installations of every nature effecting floors, walls, woodwork, trim, window, ceilings, equipment and any other physical portion of the Building, grounds, and Parking Area. Tenant shall not mark, paint, drill into, or in any way deface any part of the Building or the Premises without Landlord's written consent. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of the Landlord, and as the Landlord may direct.

2.      The work of the janitorial or cleaning personnel shall not be hindered by Tenant after 5:30 pm and such work may be done at any time when the Premises are vacant. The windows doors and fixtures in the Premises and Building may be cleaned at any time. Tenant shall provide adequate waste and rubbish receptacles, cabinets, books cases, map cases, etc., necessary to prevent unreasonable hardship to Landlord in discharging its cleaning obligations.

3.      Movement in or out of the Building or through the Building entrances or lobbies of furniture or office equipment, or dispatch or receipt by Tenant of any heavy equipment, bulky material merchandise or other item which requires use of elevators or stairways, shall be restricted to such hours as Landlord shall designate. The method of such movement, routing of such movement, safety precautions associated with such movement and the prohibition of Tenant bringing any dangerous items into the Building shall be subject to the Landlord's discretion and control. Any hand trucks, carryalls, or similar appliances used for the delivery or receipt of merchandise or equipment shall be equipped with rubber tires, side guards and such other safeguards as the Landlord shall require. Although Landlord or its personnel may participate in or assist in the supervision of such movement, Tenant assumes final responsibility for all risks as to damage to property and injury to persons that may result from such participation or assistance and Tenant shall indemnify and hold harmless Landlord and Landlord's employees and agents, and reimburse Landlord and Landlord's employees and agents with respect to any and all claims, demands, causes of action and liability arising as a result of any assistance or supervision or exercise of control over Tenant's movement of items in and out of the Building.

4.      No sign, advertisement or notice shall be displayed, painted or affixed by Tenant or Tenant's employees, agents or contractors in or on any part of the outside or inside of the Building or Premises without prior written consent of Landlord, and then only of such color, size, character, style and material and in such places as shall be approved and designated by Landlord. Signs on doors and entrances to the Premises and outside of the Premises within the Building, grounds or Parking Area shall be placed thereon by a contractor approved by Landlord.

5.      Tenant shall not place, install or operate on the Premises or in any part of the Building any engine, refrigerating, heating or air conditioning apparatus, stove or machinery, or conduct mechanical operations or place or use in or about the Premises or the Building any explosives, gasoline, kerosene, oil, acids, caustics or any other inflammable, explosive, hazardous or odorous material without the prior written consent of Landlord. No portion of the Premises shall at any time be used for cooking, sleeping or lodging quarters.

6. Tenant shall not make or permit any nuisance or improper noises in the Building or otherwise interfere in any way with other tenants or persons doing business in the Building or with Landlord's operation of the Building.

7. Landlord will not be responsible for any fixtures, personal property, equipment, jewelry or money lost in or stolen from the Premises or public areas of the Building, grounds or Parking Area. Landlord shall not be responsible for damages to or theft of motor vehicles or other items from any Parking Areas used in connection with the Building.

8. No maintenance or repair work shall be done on any vehicles in the Parking Area. No disabled vehicles shall be parked or stored in the Parking Area. All vehicles in the Parking Area shall be parked within the designated spaces and not in more than one (1) space or across spaces. At Landlord's option, all disabled vehicles, recreational vehicles, boats and vehicles improperly parked in spaces designated for handicapped persons and all other improperly parked vehicles may be towed or otherwise removed from the Parking Area at the owner's expense. In the event any vehicle or boat is towed, Landlord will not be liable or responsible for the loss, damage or theft of any property located in the vehicle or boat or for any damage to the vehicle or boat.

9. Neither Tenant or Tenant's employees, agents, invitees or licensees shall at any time leave or discard any rubbish, paper, articles or objects of any kind whatsoever outside the doors of the Premises or in any other area within the Building or on the grounds or in the Parking Area. No birds, animals, bicycles or vehicles shall be brought into or kept in or about the Building.

10. None of the entries passages, doors, hallways, or stairways in the Building shall be blocked or obstructed by Tenant Such areas shall not be used by Tenant at any time except for ingress or egress to the Premises by Tenant's, Tenant's employees, agents and invitees.

11. Landlord shall have the right to determine and prescribe the weight and proper position of any usually heavy equipment, including but not limited to copying equipment, computer equipment, safes and large files that are to be placed in the Building. Only those items which in the exclusive judgment of the Landlord will not do damage to the floors, structure and elevators may be moved into the Building. Tenant shall pay for any damage resulting from moving or installing such articles in the Building or the existence of same in the Building.

12. All Christmas and other decorations in the Building must be flame retardant.

13. After hours air conditioning and heating on Monday through Saturday and all day Sunday and holidays determined by Landlord must be requested in writing by noon of a regular work day prior to the day for which additional air conditioning is requested. Tenant shall be charged at the prevailing hourly rate for the use of such air conditioning and heating.

14. Any request by Tenant to place or remove names from the directory board in the lobby of the Building shall be furnished to Landlord in writing on Tenant's letterhead.

15. Any services which Tenant requests Landlord to perform which Landlord is not required to perform under this Lease shall, if performed by Landlord, be billed to Tenant at Landlord's cost plus a 15% fee to cover Landlord's overhead costs. Landlord shall have the right to refuse to perform any such services.

16. If Landlord's maintenance engineer or any of Landlord's other personnel do any work after normal business hours at the request of Tenant, Tenant shall pay for the cost of such work.

17.     All doors leading from public corridors to the Premises are to be kept closed when not in use.

18.     Canvassing, soliciting or peddling in the Building is prohibited and Tenant shall cooperate with Landlord to prevent such activities.

19.     Tenant shall give Landlord immediate notice in the event that any defects or dangerous conditions arise or exist in the Premises or in the Building or if any accidents or emergencies occur in the Premises or Building.

20.     Tenant shall not use the Premises or permit the Premises to be used for photographic, multilith or multigraph reproductions for sale to the general public. All photographic, multilith or multigraph reproductions in the Premises shall be produced for Tenant in the ordinary course of Tenant's business.

21.     All requests for services made by Tenant shall be made directly to Landlord or Landlord's designated agents. Employees of Landlord or Landlord's designated agents shall not perform any work or do anything outside of their regular duties unless directed to do so by Landlord or Landlord's designated agents. Tenant will make no requests directly to Landlord's employees.

<u>EXHIBIT E</u>

GUARANTY

Landlord, Tenant and Guarantor (as herein defined) acknowledge that if it were not for this guaranty (the "**Guaranty**") as an inducement, Landlord would not execute the Lease.  Therefore, for $10.00 and other value received, and in consideration for, as a condition of, and an inducement to ALTERA HIGHLAND LLC, a Texas limited liability company ("**Landlord**") entering into that certain Lease Agreement dated as of August 21, 2012, with SHERMAN/GRAYSON HEALTH SYSTEM, LLC, a Texas limited liability company ("**Tenant**"), for certain premises being Suites 315, 330, 415 and 550 of a medical office building located at 300 N. Highland Drive, Sherman, Texas, on real property owned by an affiliate of Tenant and ground leased to Landlord, as ground lessee (the "**Lease**"), the undersigned officer of LHP HOSPITAL GROUP, INC., a Delaware corporation (the "**Guarantor**"), on behalf of such entity, its legal representatives, heirs, successors, and assigns, hereby irrevocably guarantees to Landlord, Landlord's successors and assigns, absolutely and unconditionally, the full prompt and timely payment, performance and observance of all amounts to be paid and provisions of the Lease to be performed and observed by Tenant, including (without limitation) the rules and regulations incorporated into the Lease, as if Guarantor had executed the Lease as the tenant thereunder.  The Guarantor expressly agrees that the validity of this Guaranty and the obligations of the Guarantor hereunder shall not be terminated, affected or impaired by reason of the assertion by Landlord against Tenant of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease.  The Guarantor further agrees that this Guaranty shall remain and continue in full force and effect notwithstanding any assignment, renewal, modification, extension or waiver of the Lease or any provisions thereof.  The laws of Texas shall apply hereto.

The Guarantor hereby waives, to the fullest extent permitted by law:

(A)     Any right that the Guarantor may have to require Landlord to proceed against Tenant, proceed against or exhaust any security held from Tenant, or pursue any other remedy in Landlord's power to pursue, including, without limitation, re-letting the Premises following a default;

(B)     Any defense based on any claim that the Guarantor's obligations exceed or are more burdensome than those of Tenant;

(C)     Any defenses given to sureties other than actual payment or performance;

(D)     Any defense based on: (i) any legal disability of Tenant; (ii) any release, discharge, modification, impairment or limitation of the liability of Tenant to Landlord  from any cause, whether consented to by Landlord or arising by operation of law or from any bankruptcy or other voluntary or involuntary proceeding, in or out of court, for the adjustment of debtor-creditor relationships (an "**Insolvency Proceeding**"), and/or (iii) any rejection or disaffirmance of the Lease, or any part of it, or any security held for it, in any such Insolvency Proceeding;

(E)     Any defense based on any action taken or omitted by Landlord in any Insolvency Proceeding involving Tenant, including any election to have Landlord's claim allowed as being secured, partially secured or unsecured, any extension of credit by Landlord to Tenant in any Insolvency Proceeding, and the taking and holding by Landlord of any security for any such extension of credit; and

(F)     The Guarantor agrees to jurisdiction and venue in Grayson and Dallas Counties, Texas, and waives any objection to such venue on the grounds of forum non conveniens.  **The Guarantor knowingly, voluntarily and intentionally waives the right to a trial by jury in respect of any**

**litigation based hereon or arising out of, under, or in connection with this Guaranty.**  In the event Landlord incurs any fees and/or expenses in the enforcement of this Guaranty, whether or not involving litigation and/or appellate, administrative or bankruptcy proceedings, the Guarantor agrees to be liable for same (including reasonable attorney's fees and costs) and to pay same promptly on demand by Landlord.

The Guarantor acknowledges liability for every obligation of Tenant under the Lease.  Any capitalized term used herein and not otherwise defined shall have the same meaning as defined in the Lease.  Each provision of this Guaranty shall be considered severable, and if for any reason and provision is determined to be invalid under current or future law, such invalidity shall not impair the operation of or otherwise affect the valid portions of this Guaranty.

<u>**GUARANTOR**</u>:

LHP HOSPITAL GROUP, INC.,
a Delaware corporation


By:_____

Name:_____

Title:_____


Date:_____

22

## LEASE AGREEMENT

This Lease ("**Lease**") is made as of August 21, 2012 (the "**Effective Date**"), by and between ALTERA HIGHLAND LLC, a Texas limited liability company ("**Landlord**"), and SHERMAN/GRAYSON HEALTH SYSTEM, a Texas limited liability company ("**Tenant**").

### RECITALS:

Landlord, as tenant, has entered into that certain Ground Lease Agreement dated as of the Effective Date (the "**Ground Lease**") with Tenant, as landlord, for the land upon which the Building (as defined below) is located.  Contemporaneously with the Ground Lease, (i) Landlord purchased one (1) medical office building, from Tenant, and (ii) Tenant, as "**Declarant**", filed of record a Declaration of Covenants, Restrictions and Easements (the "**Declaration**") covering the one (1) medical office building, the Hospital commonly known as Texas Health Presbyterian Hospital - WNJ (the "**Hospital**") owned by Tenant located in proximity to the medical office building and the parking  and other common areas  dedicated for use by persons occupying, using or visiting the medical office building, the Hospital and other facilities related thereto.  The Ground Lease and this Lease are subject to the terms and provisions of the Declaration. Tenant, as "Declarant" under the Ground Lease and "Landlord" under the Ground Lease, is familiar with the terms and provisions of each of the Declaration and the Ground Lease.

As part of Tenant's purchase of the Building commonly called "300 N. Highland Drive, Sherman, Texas", Tenant agreed to enter into this Lease.

Simultaneously herewith, Landlord and Tenant are also entering into corresponding leases (each, a "**Related Lease**") for existing and shell space of the Building, for the common areas of the Building used by the Hospital, and for the Ambulatory Surgery Center in the Building.

## 1. DEFINITIONS AND BASIC PROVISIONS.

1.1     Parties and Addresses. The parties hereto and their respective addresses are as follows:

| | | |
|---|---|---|
| (1) | Landlord's Address: | 5910 North Central Expressway<br>Suite 800<br>Dallas, TX 75206. |
| (2) | Tenant's Address: | 2400 North Dallas Parkway, Suite 450<br>Plano, Texas 75093<br>Attention: Executive Vice President – Administration |
| (3) | Ground Lessor Address: | 2400 North Dallas Parkway, Suite 450<br>Plano, Texas 75093<br>Attention: Executive Vice President – Administration |

|       |                      |                                                     |
|-------|----------------------|-----------------------------------------------------|
| (4)   | Guarantor:           | LHP Hospital Group, Inc.,                           |
|       |                      | a Delaware corporation                              |
|       |                      |                                                     |
| (5)   | Guarantor's Address: | 2400 North Dallas Parkway, Suite 450               |
|       |                      | Plano, Texas 75093                                  |
|       |                      | Attention: Executive Vice President – Administration |

1.2     Defined Terms: In addition to the capitalized terms elsewhere defined in this Lease, the following terms shall be deemed to be defined terms of this Lease for all purposes.  Each of the following definitions and basic provisions shall be construed in conjunction with and limited by the reference thereto in other provisions of this Lease:

(1)     Additional Rent: All rent and other sums payable hereunder from Tenant to Landlord, other than Base Rent.

(2)     Base Rent: An annual Base Rent of $12.05 per RSF in the Premises, subject to adjustment as provided in Sections 3.1 and 15.6.  As of the Commencement Date, the monthly Base Rent is $14,721.08.

(3)     Broker(s): None.

(4)     Building: The building in which the Premises are situated, being generally known as 300 N. Highland Drive, Sherman, Texas.

(5)     Commencement Date:  The Effective Date.

(6)     Common Areas: Those parts of the Building, Land and related facilities designated from time to time by Landlord for the common use of all doctors, physicians, tenants, visitors, patients and employees, including among other facilities, parking areas, sidewalks, landscaping, curbs, loading docks and areas, private streets and alleys, automobile entrances, exits and driveways, entranceways (open, enclosed or otherwise), lighting facilities, drinking fountains, public toilets, signs, service areas, common utility lines, pipes, and/or conduits, and the like.

(7)     Declarant: means the Declarant under the Declaration, Sherman/Grayson Hospital, LLC, a Texas limited liability company, and its successors under the Declaration.

(8)     Declaration: has the meaning set forth in the Recitals.

(9)     Expiration Date: The last day of the Term hereof, which date is contemplated as being one hundred forty four (144) full months after the Commencement Date.  Notwithstanding any other provision of this Lease to the contrary, if the Expiration Date would otherwise occur on a date other than the last day of a calendar month, then the Term shall be automatically extended to include the last day of such calendar month.

(10)     Floor Plan: The outline of the Premises as depicted in Exhibit B attached hereto and made a part hereof for all purposes.

(11)     Guarantor:  has the meaning set forth in Section 1.1.

(12)     Highest Lawful Rate:  The maximum nonusurious interest rate, if any, that at any time, or from time to time, legally may be contracted for, taken, reserved, charged, or received on the indebtedness owed to Landlord under this Lease under the laws which are presently in effect of the United States of America and the State of Texas applicable to Landlord and such indebtedness.

(13)     Hospital:  The Hospital defined in the Recitals of this Lease, and its successors and assigns.

(14)     Interior of the Premises: Standard office front and entrance (including without limitation, all plate glass and exterior doors), all of the interior wall framing, floors and floor covering, ceiling and interior staining and finishes, all interior doors and hardware, all interior electrical conduits and appurtenances, mechanical machinery and equipment, all interior electrical fixtures, interior plumbing and plumbing fixtures, Tenants' trade fixtures, and all other parts in the interior of the Premises.

(15)     Land: The lot, tract or parcel of land upon which the Building is situated, in Grayson County, Texas as more particularly described by metes and bounds on Exhibit A attached hereto and made a part hereof for all purposes, plus any contiguous parcels or strips of land leased or licensed to Landlord under the Ground Lease or by the Declaration, and are used in connection with or to service the Building or any part thereof.

(16)     Late Charge:  Tenant shall pay $100.00 as a late fee to cover Landlord's administrative costs.  Additionally, all unpaid amounts Tenant fails to pay by the fifth (5th) day after the date due shall bear interest from the first day due until paid in full at the lesser of ten percent (10%) per annum or the Highest Lawful Rate.  In no event, however, shall the late fees and/or charges permitted under this Section or elsewhere in this Lease, to the extent the same are considered to be interest under applicable law, exceed the amount of interest that Landlord lawfully could have charged, received or collected on the indebtedness in question at the Highest Lawful Rate.

(17)     Lease: This Lease Agreement.

(18)     Lease Year: Each twelve (12) consecutive month period commencing on the Commencement Date or any anniversary thereof; provided that, if the Commencement Date is other than the first day of a calendar month, then the first Lease Year shall include such partial month together with the next succeeding twelve (12) consecutive months, and each succeeding Lease Year shall begin on the first day of the calendar month that corresponds to the first day of the calendar month following the Commencement Date.

(19)     Operating Expenses: All expenses, costs and disbursements of every kind and nature that Landlord or any of its Affiliates directly or indirectly pays or becomes obligated to pay, whether under the Ground Lease, the Declaration, any Related Lease or otherwise, in respect of the Ground Lease, the ownership, management, maintenance, repair, replacement and operation of the Building, the Common Areas and related facilities of the Building or arising in connection with any Related Lease.  Notwithstanding the foregoing, Operating Expenses shall exclude capital costs associated with the replacement of the roof, foundation, and exterior walls.

(20)     Permitted Use:  General Medical Offices.

(21)    <u>Premises</u>: Suites 430, 445, 500, 510, and 545 in the Building as of the Effective Date, containing approximately 14,660 RSF (as defined herein), subject to adjustment as provided in Section 2.4.  The Premises are substantially depicted on the attached Floor Plan shown on <u>Exhibit B</u> and being located in the Building.

(22)    <u>Pro Rata Share or Tenant's Pro Rata Share</u>: 12.460%, provided that if the Building is expanded or contracted, Tenant's Pro Rata Share shall increase or decrease, as the case may be, such that Tenant's Pro Rata Share will equal a fraction, the numerator of which is the net rentable area of the Premises, and the denominator of which is the net rentable area of the Building, which is approximately 117,655 RSF as of the Effective Date.

(23)    <u>Rent</u>: All Base Rent and Additional Rent.

(24)    <u>RSF</u>: means the rentable square feet in the Premises, Building or other area in question, as determined by an architect using ANSI/BOMA Standards.

(25)    <u>Security Deposit</u>: None.

(26)    <u>Tenant Improvement Allowance</u>:  Means that amount, if any, set forth in <u>Section 2.3</u>.

(27)    <u>Tenant Improvements</u>:  Means those improvements and alterations Tenant may elect to construct or install in the Premises, subject to the provisions of this Lease.

(28)    <u>Term</u>: Twelve (12) years (one hundred forty four (144) full months) from the Commencement Date, unless earlier terminated pursuant to the provisions of this Lease.

## 2.    **GRANTING CLAUSE; TENDER OF POSSESSION.**

2.1    <u>Granting Clause</u>.  In consideration of the Rent reserved and the covenants and agreements herein contained on the part of the Tenant to be observed and performed, and subject to the terms and provisions of the Declaration and Ground Lease, Landlord hereby demises, lets and leases unto Tenant, and Tenant hereby accepts, leases and rents from Landlord, the Premises.

2.2    <u>Tender and Acceptance of Possession</u>.  Landlord hereby tenders, and Tenant hereby accepts, possession of the Premises on the Effective Date.  Tenant hereby accepts the Premises in their "AS-IS" condition, and Landlord shall have no obligation to perform any work therein (including demolition of any improvements existing therein or construction of any tenant finish-work or other improvements therein), and, except as otherwise provided in Section 2.3, shall not be obligated to reimburse Tenant or provide an allowance for any costs related to the demolition or construction of improvements therein.  Tenant has reviewed, and hereby accepts, the condition and capacity of the Building's existing electrical systems and HVAC.  Tenant acknowledges that Landlord does not have any obligation, express or implied, to modify or increase the capacity of such systems.  Before Tenant may occupy the Premises to conduct its business therein, Tenant shall, at its expense, obtain and deliver to Landlord a certificate of occupancy from the appropriate governmental authority for the Premises.

2.3    <u>Tenant Improvement Allowance</u>.  Landlord shall provide Tenant an improvement allowance not to exceed $10.00 per RSF in the Premises (the "**Tenant Improvement Allowance**").  If Tenant performs any alterations, modifications or physical additions in or to the Premises that are permitted under this Lease and otherwise approved by Landlord, then Tenant may request advances of the Tenant

Improvement Allowance to reimburse Tenant for the hard costs of such work.  Landlord shall make disbursements of the Tenant Improvement Allowance to reimburse Tenant for such costs upon Landlord's receipt, review and approval of a draw request, with supporting documentation, that is reasonably acceptable to Landlord.

2.4     Adjustment to Premises.  If Tenant or any of its affiliates relocates any physicians or other tenants of the Building directly or indirectly employed by Tenant or any of its affiliates from a premises in the Building not contained in the Premises into any portion of the Premises, then the premises vacated by such physician or other tenant shall automatically, as of the date of such relocation, be added to the Premises upon the same terms as provided in this Lease, and the RSF, Base Rent, Tenant's Pro Rata Share and other terms of this Lease dependent upon the size of the Premises shall be adjusted.  The foregoing shall apply notwithstanding the fact that the lease to such relocated physician or other use may constitute a Qualified Lease.

3.     **RENT.**

3.1     Base Rent.

(1)     This is a pure "net lease," and Base Rent, Additional Rent, Operating Expenses and all other sums payable hereunder by Tenant shall be paid without notice, demand, setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense.  It is intended that the Base Rent provided for in this Lease shall be absolutely net to Landlord throughout the Term, and, accordingly, Tenant covenants and agrees to pay, as they become due and payable and before they become delinquent, all operating and capital expenses in connection with the operation, maintenance, repair, restoration, use or occupation of the Premises including, without limitation, the costs, charges and assessments related to taxes, impositions, utilities and insurance.  Tenant shall pay all such taxes and impositions even though the taxing statue or ordinance may purport to impose such taxes or impositions on Landlord.

(2)     The Base Rent shall be paid by Tenant in monthly installments to Landlord on or before the first day of each calendar month during the Term hereof.  The monthly Base Rent for any fractional month at the beginning or the end of the Term shall be prorated based upon the actual number of days in such month.

(3)     The Base Rent will be adjusted and increased on each anniversary of a Lease Year (the "**Adjustment Date**") by an amount equal to the greater of (i) 103% of then-effective Base Rent (i.e., as it may have been adjusted pursuant to this Section 3.1(3)) and (ii) subject to the limitation set forth below in this Section 3.1(3), any increase in the Consumer Price Index for "All Urban Consumers, U.S. City Average, All Items," issued by the Bureau of Labor Statistics of the United States Department of Labor (the "**Index**").  The adjustments in the Base Rent will be determined by multiplying the then-effective Base Rent (i.e., as it may have been adjusted pursuant to this Section 3.1(3)) by a fraction, the numerator of which is the Index number for the date one month prior to the Adjustment Date and the denominator of which is the Index number for the first month of the first year of the Term.  When the adjusted rent for the Adjustment Date has been determined, Landlord shall give Tenant written notice of such adjusted rent; and, upon adjustment of the rent, any underpayment of rent from the Adjustment Date to the date Tenant is notified of the adjustment shall be immediately due and payable by Tenant.  Landlord's failure or delay to notify Tenant of said rent adjustment shall not constitute a waiver of the right to any adjustment provided for in this Lease.  In the event that the Index shall be discontinued, then Landlord shall use an index substantially similar to the Index to calculate future adjustments.  Notwithstanding any other

provision of this Section 3.1(3) to the contrary, the Base Rent in any Lease Year shall not increase by more than five percent (5%) of the Base Rent in the immediately preceding Lease Year.

(4)     Landlord and Tenant are knowledgeable and experienced in commercial transactions and agree that the provisions of this Lease for determining charges, amounts, Operating Expenses and Additional Rent are commercially reasonable and valid even though such methods may not state a precise mathematical formula for determining such charges. ACCORDINGLY, TENANT VOLUNTARILY AND KNOWINGLY WAIVES ALL RIGHTS AND BENEFITS OF TENANT UNDER SECTION 93.012 OF THE TEXAS PROPERTY CODE, AS IT MAY BE AMENDED OR REPLACED.

3.2     <u>Operating Expenses</u>.

(1)     Tenant's Pro Rata Share of Operating Expenses for the remainder of the calendar year after the Commencement Date and for each subsequent calendar year shall be estimated by Landlord, and written notice thereof shall be given to Tenant. Upon receipt of said written notice from Landlord, the estimated Operating Expenses shall be due and payable as herein provided. For any such remainder of the calendar year after the Commencement Date, Tenant agrees to pay Landlord each month, at the same time the Base Rent Payment is due, an amount equal to the amount of such estimated monthly Pro Rata Share of Operating Expenses for the remainder of such calendar year; and during each calendar year thereafter Tenant agrees to pay Landlord each month, at the same time the Base Rent Payments are due, an amount equal to one-twelfth (1/12th) of the estimated annual Pro Rata Share of Operating Expenses due.

(2)     If any portion of Operating Expenses increase during a calendar year, Landlord may revise the estimated Operating Expenses during such year by giving Tenant written notice to that effect, and thereafter Tenant agrees to pay Landlord, in each of the remaining months of such calendar year, an additional amount equal to the amount of such annual increase in the estimated Pro Rata Share of Operating Expenses divided by the number of months remaining in such calendar year.

(3)     After the end of each calendar year, Landlord shall prepare and deliver to Tenant a statement showing Tenant's Pro Rata Share of the total amount of Operating Expenses. Within ten (10) days after receipt of the aforementioned statement, Tenant agrees to pay Landlord the remaining amount owed by Tenant. However, if Tenant has paid more than its Pro Rata Share of the actual Operating Expenses, Landlord shall either pay the amount of such excess to Tenant within ten (10) days after delivery of the aforementioned statement, or, at Landlord's option, apply such excess to any sums due or to become due from Tenant to Landlord.

(4)     Notwithstanding anything herein to the contrary, in no event will the Base Rent provided for in this Lease ever be reduced.

3.3     <u>Payment For Other Services</u>. Tenant agrees to pay Landlord as Additional Rent all charges for any services, goods, or materials furnished at Tenant's request which are not required to be furnished by Landlord under this Lease, immediately upon demand, plus an administrative fee not to exceed five percent (5%) of the cost of the requested services, good or materials.

3.4     <u>Late Charge</u>. If Landlord does not receive any payment due on or before the 5th day of the calendar month when such payment is due, the Late Charge shall be due and payable (in addition thereto). Said Late Charge is for the purpose of reimbursing Landlord for the extra administrative costs and expenses incurred in connection with the handling and processing of such delinquent payment.

3.5     No Offsets or Demands.  All Base Rent, Additional Rent and other amounts due from Tenant to Landlord under this Lease shall be paid without notice, demand, offset, abatement or deduction. This Lease and the rights of Landlord and obligations of Tenant hereunder shall not be affected by any event or for any reason or cause whatsoever foreseen or unforeseen.  The obligations of Tenant under this Lease shall be separate and independent covenants and agreements and all monetary obligations shall continue to be payable in all events.

**4.     SECURITY DEPOSIT.**  Tenant is not required to make any security deposit in connection with this Lease.

**5.     COMMON AREAS.**

5.1     Parking Facilities and Other Common Areas. During the Term, Tenant shall be entitled to the nonexclusive use (in common with others entitled thereto) of the Common Areas outside the Building designated from time to time by Landlord as the parking areas of the Building.  As of the Effective Date, the parking areas designated by Landlord for use by Tenant are depicted on Exhibit C.  In such parking areas, Tenant shall be entitled to use a number of parking spaces equal to 5 parking spaces for every 1,000 RSF of space in the Premises.  Tenant shall not conduct, solicit business or display or place any signs or advertising on or within the Common Areas, or distribute handbills therein, or take any action which would interfere with the rights of other persons to use the Common Areas.

5.2     Parking Regulations. Tenant understands and agrees that the Declarant shall have the right to maintain and operate lighting facilities on all of the parking areas and to police all of the parking and other Common Areas, including, without limitation, the right to discourage non-tenant parking, to designate and regulate parking areas, and to do and perform such other acts with respect to said Common Areas as in the judgment of the Declarant may be legally necessary to prevent a dedication thereof to the public.

**6.     MAINTENANCE AND REPAIRS.**

6.1     Landlord's Obligations.  As part of the Operating Expenses, Landlord shall maintain or cause to be maintained the elevators, public restrooms and other Common Areas within the Building, the structural elements building systems of the Building (including the HVAC system which serves the Building and the Premises).  Landlord shall, at its own cost and expense, maintain or cause to be maintained the foundation, the exterior walls (but excluding the interior glass or doors that are part of the Premises) and roof of the Building in good condition or repair.  However, if any repair is required by reason of the negligence or intentional misconduct of Tenant or any of its agents, employees, invitees or Affiliates, Landlord may add the cost thereof to the next installment of Rent thereafter coming due, but only to the extent that the cost thereof is not covered by insurance proceeds actually received by Landlord.  Except as herein provided, Landlord shall have no obligation to repair, maintain, alter, replace, or modify the Premises or any part thereof.  Any failure by Landlord to furnish, or delay in furnishing, any maintenance or services that are required of Landlord under this Section or otherwise under this Lease, when such failure is caused by acts of God or any other condition beyond Landlord's reasonable control, shall not constitute a default by Landlord under this Lease and shall not permit Tenant to abate any Rent or relieve Tenant from any of its obligations under this Lease.

6.2    Tenant's Obligations.  Tenant shall maintain the interior of the Premises, including all interior glass and doors that are a part of the Premises and any improvements done by or on behalf of Tenant, in good condition and clean and attractive appearance, performing all janitorial services and making all repairs at its own cost and expense, and using materials and labor of a kind and quality equal to the original work.  Tenant shall maintain the Premises in accordance with all requirements of law, including (without limitation) the Americans with Disabilities Act (as the same may be amended) and similar state or local laws, rules or regulations.  At the expiration or earlier termination of this Lease, Tenant shall surrender the Premises in a broom clean condition and otherwise in the same condition as received by Tenant on the Commencement Date upon initial completion of the interior improvements, reasonable wear and tear excepted.  If Tenant shall neglect and/or fail to observe, keep or perform any of its obligations to maintain and repair and Premises in the time and manner provided in this Article and if such neglect and/or failure shall continue for ten (10) days after notice thereof, Landlord shall have the right to perform said maintenance and repairs.  In the event Landlord does so perform Tenant's responsibilities for said maintenance and repairs, Landlord shall furnish Tenant a statement of the actual cost thereof, plus an administration fee not to exceed ten percent (10%) of the actual costs, which statement shall be immediately payable by Tenant.  All alterations and modifications of or to the Premises shall be in accordance with the terms and provisions of Section 11.2 below.

## 7.    TAXES ON TENANT'S PROPERTY.

Tenant shall be responsible for and shall pay, before same becomes delinquent, all federal, state, county, and local taxes levied or assessed upon any and all personal property of any kind owned by or placed in, on or about the Premises by Tenant during the Term, and all taxes and assessments on trade fixtures, furniture, and all sales, excise and other taxes on Tenant's business shall be paid entirely by Tenant.  If any such taxes for which Tenant is liable are levied or assessed against Landlord or Landlord's property, or if the assessed value of Landlord's property is increased by inclusion of personal property, furniture or fixtures placed by Tenant in the Premises, Tenant shall pay to Landlord upon demand that part of such taxes for which Tenant is primarily liable hereunder.

## 8.    INSURANCE.

8.1    Hold Harmless. Tenant covenants and agrees to indemnify and save each of Landlord, and Landlord's members, managers, partners, agents, employees and representatives, harmless from and against any and all costs, liability or expense arising out of any claims of any person or persons on account of any occurrence in, upon or at the Premises, resulting from the occupancy or use thereof by Tenant, or by any person or persons holding or using the Premises thereunder, occasioned in whole or in part by reason of the improper and/or lack of control and supervision throughout the Common Areas of property owned or controlled by Tenant, or by reason of the use or misuse of the parking area or any other Common Areas by Tenant or by any person or persons holding or using the Premises, or any part thereof, under Tenant, including without limitation, Tenant's clients, invites, agents, contractors, employees, servants, subtenants, assignees or licensees, and without limiting the generality of the foregoing, Tenant further covenants and agrees to indemnify and save each of Landlord and Landlord's partners, agents, employees and representatives harmless from and against any penalty, damage or charge incurred or imposed by reason of any violation of law or ordinance by Tenant or any person or persons holding under Tenant and from any cost, damage or expense arising out of the death of or injury to any person or persons holding under Tenant and from any cost, damage or expense arising out of the death of or injury to any person or persons holding under Tenant. In case any action or claim to which Landlord (or Landlord's partners, members, managers, agents, employees or representatives) are entitled to indemnification shall be brought or asserted in any way against Landlord (or Landlord's members, managers, partners, agents, employees or representatives) or Tenant, Tenant shall immediately notify Landlord of the same and shall furnish Landlord with all relative

information. Landlord shall be entitled, at Tenant's expense, to participate in, and to the extent that it wishes, to assume the defense thereof.

8.2     <u>Tenant's Liability Insurance</u>. Tenant agrees to maintain in force during the Term a policy or policies of comprehensive public liability insurance, including property damage, written by one or more responsible insurance companies approved by Landlord and licensed to do business in Texas, which insurance companies shall be rated not less than X by Best Guide Rating, insuring Tenant and naming as additional named insureds, Landlord, Landlord's property management company as agent, each Mortgagee and such other persons, firms, or corporations as are designated by Landlord, against loss of life, bodily injury and property damages in which the limit of public liability shall be not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000.00) single limit bodily injury and in which the limit of property damage liability shall be not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000.00) and an umbrella coverage of not less than TWO MILLION AND NO/100 DOLLARS ($2,000,000.00). Additionally, Tenant shall maintain a comprehensive automobile liability insurance policy of ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00). Each such policy shall be non-cancellable for any cause without first giving Landlord thirty (30) days prior written notice. Subject to all of the foregoing, the insurance coverage required to be furnished by Tenant pursuant to this Section may be in the form of a blanket policy covering all of Tenant's operations.

8.3     <u>Tenant's Fire Insurance</u>. Tenant agrees to maintain in force during the Term a policy or policies of fire and extended coverage insurance in the case of fire sprinkler leakage, malicious mischief, vandalism and other extended coverage perils, for the full insurable replacement value of all additions and of all office furniture, office equipment, merchandise, and other items of Tenants' property within or on the Premises.  Coverage in this paragraph shall be in an amount not less than one hundred percent (100%) of the replacement costs of Tenant's improvements to the Premises.

8.4     <u>Tenant's Workers Compensation</u>. If required by law, Tenant agrees to maintain in force during the Term workers compensation and employers liability insurance with a waiver or subrogation endorsement, in a form and amount satisfactory to Landlord.

8.5     <u>Evidence of Insurance</u>. A copy of each such policy or a certificate of such insurance required to be maintained by Tenant shall be delivered to Landlord upon the Commencement Date of this Lease and annually thereafter upon the first day of each Lease Year throughout the Term. If Tenant fails to procure said insurance or deliver to Landlord, such evidence thereof, Landlord may procure same and Tenant shall reimburse Landlord for the cost thereof plus an administrative fee not to exceed ten percent (10%) of the actual cost immediately upon demand.

8.6     <u>Landlord's Liability Insurance</u>. Landlord agrees to maintain in force during the Term a policy or policies of comprehensive public liability insurance, including property damage, written by one or more responsible insurance companies licensed to do business in Texas and insuring Landlord against loss of life, bodily injury and/or property damage with respect to the operation of the Building, the policy limits of which to be in amount satisfactory to Landlord. In addition, Landlord may maintain in force such umbrella policy or policies of public liability insurance as Landlord, in its sole discretion, may deem appropriate. Landlord's failure to procure any such insurance shall not invalidate this Lease or lessen Tenant's liability hereunder.  Landlord's insurance hereunder shall include loss of rent coverage.

8.7     <u>Landlord's Fire Insurance</u>. Landlord agrees to procure and keep in effect during the Term a policy or policies of fire and extended coverage insurance covering the Building, including rent abatement, vandalism and malicious mischief coverage, written by an insurance company authorized to do business within the State of Texas, and in an amount at the full replacement cash of the Building.  Such insurance shall provide protection against losses so insured against for the sole and exclusive benefit of Landlord. The

full amount of any proceeds payable thereunder shall be payable to Landlord, and Tenant shall not be entitled to, and shall have no interest in, such proceeds or any part thereof. Tenant is advised to procure such insurance as Tenant deems appropriate to protect its interest.

8.8     <u>Waiver of Subrogation</u>. To the extent permitted by the laws and insurance regulations of the State of Texas, the respective parties hereto hereby waive and release any and all claims, demands and causes of action which each might have against the other party, either for damage to or loss of any part of the Premises or of any adjoining premises belonging to Landlord, arising from perils ordinarily insured against under a standard fire and extended coverage insurance policy issued in the State of Texas, regardless of whether such damage or loss is occasioned by the negligence of the respective parties, or either of them, their agents, servants or employees.

## 9.     <u>UTILITIES AND SERVICES.</u>

Provided Tenant is not in default of any term, condition or covenant of this Lease, Landlord agrees to furnish or cause to be furnished to the Premises gas, water (for drinking, cleaning and lavatory purposes only), and electricity during the Term. Landlord shall furnish tempered and refrigerated water at those points of supply designated by Landlord in the Common Areas of the Building, heated and refrigerated air conditioning in season (at temperatures, in amounts and at times considered by Landlord to be standard or in compliance with any governmental regulations; such service after hours, on Saturday afternoons, Sundays and holidays will be furnished only upon 24 hours' prior written request of Tenant who shall bear the entire cost thereof). Landlord shall furnish janitorial service, in the manner and to the extent deemed standard by Landlord during the periods and hours as such services are normally furnished to all tenants. Tenant shall not hinder the work of the Building janitor. Landlord shall furnish routine maintenance, painting and lighting service for all Common Areas within the Building in the manner and to the extent deemed by Landlord to be standard. Tenant will pay all telephone charges. Landlord shall not be liable in damages or otherwise for failure, stoppage or interruption of any such service nor shall the same be construed as an eviction of Tenant, work an abatement of Rent, or relieve Tenant from the operation of any covenant or agreement set forth herein; but in the event of any failure, stoppage or interruption thereof not caused by Tenant or Tenant's agents, employees, contractors, clients or invites, Landlord shall use reasonable diligence to resume service promptly.

Landlord reserves the right to separately meter usage of any utility service included in Operating Expenses and charge Tenant and other tenants of the Building based on such usage.  Further, Landlord reserves the right from time to time to charge to Tenant and other tenants of the Building applicable costs with respect to usage of Building services and utilities at times other than during standard business hours, on such basis as Landlord may reasonably determine for the purpose of properly allocating the costs of such services and utilities in accordance with the usage thereof.

Notwithstanding anything hereinabove to the contrary, Landlord reserves the right from time to time to make reasonable modifications to the above standards for services and utilities.

## 10.     <u>INTENTIONALLY DELETED</u>.

## 11.     <u>PROPERTY OBLIGATIONS.</u>

11.1     <u>Tenant's Property</u>. Landlord shall not be liable for any damage to or loss of personal property placed in or about the Premises by Tenant or Tenant's agents, employees, clients, guests, invites or others, resulting from fire, theft, explosion, flood, windstorm or other casualty caused by Acts of God or by the acts or omissions of other occupants of other space in the Building or caused by operations during construction of any public or quasi public work. All property kept or stored within the Premises shall be

kept or stored at the risk of Tenant only, and Tenant shall hold Landlord harmless from any claims arising out of damage to the same, including subrogation claims by Tenant's insurer, if any, unless such damage shall be caused by the gross negligence of Landlord.

11.2    <u>Tenant Fixtures, Alterations and Personal Property</u>. Tenant shall not make or allow to be made any alterations, modifications or physical additions in or to the Premises without the prior written consent of Landlord which consent shall not be unreasonably withheld or delayed.  Tenant may proceed with the construction of the approved alterations, modifications or physical additions, but only so long as they are in strict compliance with the plans and specifications and with the provisions of this <u>Section 11.2</u>. All alterations shall be made at Tenant's expense, either by Tenant's contractors, which previously have been approved in writing by Landlord, or at Landlord's option, by Landlord's contractors on terms reasonably satisfactory to Tenant, including a fee of five percent (5%) of Landlord's actual cost of the work to cover Landlord's overhead. None of Tenant's construction, alterations, modifications or physical additions shall (i) alter the exterior appearance of the Building or Premises in any manner, (ii) adversely affect the structure or safety of the Building or Premises or any portion thereof, (iii) fail to comply with all building, safety, fire and other codes and governmental and insurance requirements, or (iv) fail to be completed promptly and in a good and workmanlike manner. All trade fixtures installed by Tenant shall be new or completely reconditioned. At Landlord's option, any such approved additions, alterations, modifications, improvements and/or fixtures furnished or installed by Tenant which are sufficiently affixed or annexed to the Premises so as to become a part thereof, other than unaffixed movable trade fixtures, shall upon the expiration or earlier termination of this Lease, become the property of Landlord.  Any damage to the Premises caused by such installation and/or removal of Tenant's fixtures and equipment shall be repaired at Tenant's sole cost and expense. The provisions of this Section shall expressly survive the expiration or earlier termination of this Lease.

11.3    <u>Liens</u>. Tenant shall neither permit nor suffer an involuntary lien to be filed or affixed against the Building, the Premises, the fee simple title of the Land or Landlord's leasehold estate therein, or any part thereof, and shall not voluntarily grant any lien or security interest therein. In the event any such involuntary or voluntary lien, including without limitation, mechanic's lien or tax lien, is filed and/or affixed against the Building, the Premises the fee simple title of the Land or Landlord's leasehold estate therein, or any part thereof, or against any fixtures, equipment, furnishings therein or all types of work and improvements comprising the Interior of the Premises and Tenant has not caused the same to be released and discharged of record within ten (10) days after notice thereof, same shall constitute a default hereunder. Upon such default, in addition to any other remedies available to Landlord herein, Landlord may cause the release and discharge of such lien, Tenant shall repay to Landlord immediately upon demand as Additional Rent hereunder all such sums disbursed or deposited by Landlord plus an administrative fee not to exceed five percent (5%) of the sums disbursed or deposited. Nothing contained herein, however, shall imply any consent or agreement on the part of Landlord or anyone holding under Landlord to subject Landlord's interest to liability under any mechanic's or other lien law, regardless of whether the performance or the furnishing of such work, labor, services or materials to Tenant or anyone holding under Tenant shall have been consented to by Landlord.

## 12.    <u>SUBORDINATION/ATTORNMENT</u>.

12.1    <u>Subordination</u>. Tenant covenants and agrees promptly upon request of Landlord to execute and deliver, in a recordable form provided by Landlord, an acknowledgment of the subordination of this Lease to any mortgage, deed of trust, security agreement or other lien or encumbrance resulting from any method of financing or refinancing, presently or henceforth placed upon the Landlord's leasehold estate in the Land and/or fee interest in the Building and any future expansion thereof or additions thereto, and to all advances of money or other value heretofore or hereafter made upon the security thereof.  Notwithstanding anything to the contrary contained herein, Landlord agrees to obtain a subordination, non-disturbance and

attornment agreement ("**SNDA**") from its current lender in a form reasonably acceptable to Tenant which shall provide, among other things, that this Lease shall be recognized and Tenant's rights and occupancy under this Lease shall not be disturbed in the event Tenant is not in default hereunder beyond any applicable notice and cure periods.  In addition, Tenant shall not be required to subordinate its rights under this Lease to the interest of any future lender unless Landlord has first delivered an SNDA to Tenant executed by such future lender in a form reasonable acceptable to Tenant and containing a similar non-disturbance right.

     12.2   <u>Collateral Assignment by Landlord</u>. Subject to the foregoing provisions of this Article, Landlord reserves the right, without notice to or consent of Tenant, to assign this Lease and/or any and all Rent hereunder as security for the payment of any mortgage loan, deed of trust loan, or other method of financing or refinancing.

     12.3   <u>Attornment</u>. In the event any such mortgage is foreclosed, or in the event of the exercise of the power of sale under any such deed of trust, Tenant shall consider the purchaser at the foreclosure trustee's sale to be the Landlord hereunder, and Tenant will attorn to the purchaser and will recognize the purchaser as the owner and Landlord under this Lease.

**13.**    <u>**USE AND OPERATION.**</u>

     13.1   <u>Use of Premises</u>. The Premises shall be used and occupied by Tenant solely for the Permitted Use and Tenant expressly agrees that no use shall be made or permitted or acts done by Tenant and/or any agents, employees, subtenants, or assignees of Tenant, which shall increase the existing rate of insurance coverage or cause cancellation of such insurance coverage. Tenant shall not (i) permit any objectionable or unpleasant odors to emanate from the Premises; nor place or permit any radio, television, loudspeaker or amplifier on the roof or outside of the Premises or where the same can be seen or heard from outside the Premises; (ii) place any antenna, awning or other projection on the exterior of the Premises; (iii) take any other action which would constitute a nuisance or would disturb or endanger other tenants of the Building or unreasonably interfere with their use of their respective premises; or (iv) do anything which would tend to injure the reputation of the Building.  Tenant shall at all times comply with all terms and provisions of the Ground Lease and Declaration applicable to Tenant, or Tenant's use of the Premises and Common Areas.

     13.2   <u>Suitability of Premises</u>. Tenant warrants to Landlord that it has, prior to the execution hereof, fully inspected the Building, the Common Areas, the property and all items related thereto, and that Tenant has made, performed, obtained and received all studies, inspections, reports, diagnoses and tests that Tenant desires relative to the Building, the Common Areas, the property and all items related thereto and Tenant's proposed business use of the Premises. Tenant further warrants to Landlord that Tenant has inspected, or will thoroughly inspect, the Plans and Specifications agreed and to be agreed with Landlord for Landlord's construction of the shell of the Premises and will be fully satisfied with such inspections and Plans and Specifications for the Premises. Tenant understands and agrees that Tenant is accepting the Building, the Common Areas, the property and all items related thereto, and will be accepting the Premises, in their "AS-IS", "WHERE-IS" condition, "WITH ALL FAULTS" and without any warranty or guarantee whatsoever.  Tenant warrants that it used or will use all due diligence in conducting all studies inspections, diagnoses and tests on the Premises the Building, the Common Areas, the property and all items related thereto that Tenant deemed necessary or appropriate. Tenant acknowledges that Landlord has not made and does not make, and Landlord hereby disclaims, any and all warranties, express or implied, which in any way relate to the Premises the Building, the Common Areas, the property and all items related thereto or the condition thereof, including without limitation any implied warranty of suitability or habitability. Tenant further understands that Landlord has relied and will rely upon Tenant's having made all inspections Tenant desired, and that but for such inspections by Tenant, Landlord would not have leased the Premises to Tenant. Additionally, the parties agree that the obligation of Tenant to pay all Rent and other sums

hereunder provided to be paid by Tenant, and the obligation of Landlord to perform Landlord's other covenants and duties hereunder, constitutes independent, separate and unconditional obligations to be performed at all times provided for hereunder, save and except only when an abatement thereof or reduction therein is expressly provided for herein and not otherwise. It is agreed that in the event Landlord commences any proceedings against Tenant for nonpayment of Rent or any other sum due and payable by Tenant hereunder, Tenant shall not interpose any counterclaim or other claim against Landlord of whatever nature or description in any such proceedings; and in the event Tenant interposes any such counterclaim or other claim against Landlord in any such proceeding, Landlord and Tenant stipulate and agree that, in addition to any other lawful remedy of Landlord, upon motion of Landlord, such counterclaim or other claim asserted by Tenant shall be severed out of the proceedings instituted by Landlord and Landlord may proceed to final judgment separately and apart from and without consolidation with or reference to the status of such counterclaim or any other claim asserted by Tenant.

## 14.   HAZARDOUS MATERIALS.

14.1    Tenant, and all of Tenant's partners, officers, directors, employees, representatives, agents, contractors, subcontractors, successors, assigns, lessees, sublessees, concessionaires, invitees and any other occupants of the Premises (collectively, "**Tenant's Representatives**"), shall abide by all Federal, state and local statutes, ordinances, codes and regulations, now existing or hereinafter enacted (collectively, "**Hazardous Materials Laws**"), governing the use, handling, depositing or disposal of hazardous or toxic substances, and medical wastes (collectively, "**Hazardous Materials**").  Landlord has no obligation to provide or make provision for disposal facilities for Hazardous Materials or other medical wastes, and Tenant shall not deposit or dispose of any Hazardous Materials or other medical wastes into the general waste disposal facilities provided by Landlord.  Tenant shall, at Tenant's expense, employ or engage private waste management services to dispose of any and all waste of Tenant which must be handled in any manner other than general waste collection provided by Landlord through public or private waste collection service. Landlord may direct the manner of disposal and location of any containers, collection boxes or other storage facilities, which may be required by Hazardous Materials Laws.

14.2    The term "**Hazardous Materials**" shall not include (i) pharmaceuticals, cleaning agents of the types and in the quantities and concentrations normally stocked by health care providers located in medical office buildings similar to the Building, (b) oil in the minimal amounts typically associated with the use of certain portions of the Building for driving and parking motor vehicles or (c) medical wastes generated at the Building; however, Tenant shall use, store, transport and dispose of the foregoing in accordance with all laws including (without limitation) all Hazardous Materials Laws.

14.3    Tenant shall indemnify, defend and hold harmless Landlord, the "**Hospital**" and the holder ("**Mortgagee**") of any mortgage encumbering all or any portion of the Building or the real property upon which the Building is situated or Landlord's leasehold estate in the Land ("**Mortgage**"), and their respective members, managers, partners, shareholders, directors, officers, agents and employees (all collectively referred to as the "**Indemnified Parties**") from and against any and all costs, expenses and claims arising from or in connection with any act, omission or negligence of Tenant or any Tenant's Representatives relating to or arising out of the use, handling, depositing or disposal of Hazardous Materials with respect to the Premises or the Building, such indemnity to include all costs, expenses and liabilities associated with the remediation thereof or incurred in connection with each claim, action or proceeding with respect thereto, including, without limitation, all attorney's fees and expenses.

14.4    Tenant shall immediately notify Landlord in writing of:  (i) any enforcement, clean-up, removal or other governmental or regulatory action instituted, contemplated or threatened concerning the Premises pursuant to any Hazardous Materials Laws; (ii) any claim made or threatened by any person against Tenant or the Premises relating to damage contribution, cost recovery, compensation, loss or injury

resulting from or claimed to result from any Hazardous Materials on or about the Premises; and (iii) any reports made to any environmental agency arising out of or in connection with any Hazardous Materials in or removed from the Premises, including any complaints, notices, warnings or asserted violations in connection therewith, all upon receipt by Tenant of actual knowledge of any of the foregoing matters. Tenant shall also supply to Landlord a promptly as possible and in any event within five (5) business days after Tenant first receives or sends the same, copies of all claims, reports, complaints, notices, warnings or asserted violations relating to Hazardous Materials associated with the Premises.

14.5     Without limiting any other provision of this Lease, Tenant shall not create or permit to exist in or about the Premises any "**Mold Condition**" unless caused by Landlord.  As used herein, the term Mold Condition shall include the presence or suspected presence of "**Mold**" or any condition(s) that reasonably can be expected to give rise to or indicate the presence of Mold, including observed or suspected instances of water damage or intrusion, the presence of wet or damp wood, cellular wallboard, floor coverings or other materials, inappropriate climate control, discoloration of walls, ceilings or floors, complaints of respiratory ailment or eye irritation by Tenant's employees or any other occupants or invitees in the Premises, or any notice from a governmental agency of complaints regarding the indoor air quality at the Premises.  As used herein, the term Mold shall include mold, mildew, fungus or other potentially dangerous organisms.  In the event of suspected or actual Mold or Mold Conditions at the Premises, Tenant shall immediately notify Landlord in writing of the same and the precise location thereof.   Tenant acknowledges the control of moisture and Mold prevention are material obligations of Tenant under this Lease, and Tenant shall, at its sole costs and expense, regularly monitor the Premises for the presence of Mold and Mold Conditions.  If any Mold or Mold Conditions in or about the Premises are a result of the actions or omissions of Tenant or any Tenant's Representatives, Tenant shall promptly, at Tenant's sole cost and expense, hire a licensed and experienced Mold remediation contractor to completely clean-up and remove from the Premises all Mold or Mold Conditions.  All such clean-up, removal and remediation shall, in each instance, be conducted to the satisfaction of Landlord and any governmental authority with jurisdiction and otherwise in strict compliance with all applicable laws.  Such clean-up, removal and remediation shall also include removal and replacement of any infected host materials as well as any repairs and refinishing required as the result of such removal and replacement.  There shall be no abatement of Rent on account of any clean-up, removal or remediation of any such Mold or Mold Condition.  Tenant waives, releases and discharges Landlord and all Indemnified Parties for, from and against all claims, demands, causes of action, suits, judgments, liabilities, losses, damages and expenses (including attorneys' fees) for personal injury, bodily injury or property damages in any way arising from or relating to or associated with moisture or the growth of or the presence of Mold or Mold Conditions.

## 15.     <u>ASSIGNING, MORTGAGING, SUBLETTING</u>.

15.1     <u>Prohibitions</u>.  Except as otherwise permitted pursuant to Section 15.1 or 15.2, Tenant shall not (i) transfer, assign or hypothecate this Lease, (ii) sublet any portion of the Premises, (iii) enter into any license, concession or other right of occupancy of any portion of the Premises, (iv) permit any other entity to become Tenant hereunder by merger, consolidation, or other reorganization, (v) if Tenant is an entity other than a corporation whose stock is publicly traded, permit the transfer of an ownership interest in Tenant that results in a Material Change in Ownership (defined below) (each, a "**Transfer**"), without first procuring the written consent of the Landlord, which consent may not be unreasonably withheld or delayed. Any Transfer, whether voluntary or involuntary, by operation of the law or otherwise, without the prior written consent of Landlord first had and obtained therefor, shall be null and void, at the option of Landlord, and Landlord may declare a default and exercise all remedies available to Landlord under this Lease or at law.  Notwithstanding the foregoing provisions of this Section 15.1 to the contrary, Tenant may sublet the Premises to Professionals and/or Physicians associated with the Hospital.

15.2 <u>Material Change in Ownership</u>. If Tenant is an entity of any type, then the sale, transfer or other change of 49.9% or greater of the ownership interests of Tenant shall constitute a "**Material Change in Ownership**", in which event Landlord shall consent to the resulting Transfer provided that Tenant provides to Landlord (i) at least thirty (30) days' prior written notice of such anticipated Material Change in Ownership, (ii) all relevant details of the proposed Material Change in Ownership, including updated financial statements reflecting the financial condition of the proposed assignee post Material Change in Ownership ("**Post Material Change in Ownership Financial Statements**"), and (iii) the Post Material Change in Ownership Financial Statements reflecting a minimum Tangible Net Worth of $150,000,000. As used herein, "**Tangible Net Worth**" means the excess of total assets over total liabilities, in each case as determined in accordance with generally accepted accounting principles consistently applied ("**GAAP**"), excluding, however, from the determination of total assets all assets that would be classified as intangible assets under GAAP including, goodwill, licenses, patents, trademarks, trade names, copyrights, and franchises.

15.3 <u>Liability; Release</u>. Tenant shall not be released from any liability or obligation under this Lease as a result of any Transfer or Landlord's consent to any Transfer; provided, however, if (i) Landlord consents to a proposed Transfer that would occur as a result of (A) any other entity becoming Tenant hereunder by merger, consolidation, or other reorganization, (B) any transfer of an ownership interest in Tenant that results in a Material Change in Ownership or (C) any assignment of this Lease for the remainder of the Term, and (ii) the entity comprising Tenant after such Transfer has a Tangible Net Worth together with any new guarantor that is equal to or greater than (1) the aggregate Tangible Net Worth of Tenant and Guarantor at the time of this Lease and (2) a minimum Tangible Net Worth of $150,000,000, then Tenant shall be released from further liability under this Lease for the unexpired Term following such Transfer. Tenant shall provide to Landlord any information reasonably requested by Landlord to evaluate the satisfaction of any Tangible Net Worth requirements contemplated in this Section 15.

15.4 <u>Conditions to Consent</u>. Landlord may condition its consent to any assignment or subletting (i) upon Tenant's agreement to termination of this Lease and simultaneous creation of a new lease between Landlord and the proposed successor, or (ii) upon Tenant's agreement simultaneously with the execution of any sublease or assignment approved by Landlord, to name Landlord its agent for purposes of collection of rental from the subtenant approved by Landlord under any such sublease or assignment (in order to enable Landlord to maintain its collection and other relationships).

15.5 <u>Transactions Consented To</u>. Each Transfer to which there has been consent shall be by an instrument in writing in form satisfactory to Landlord and shall be executed by the transferor, assignor, sublandlord, licensor, concessionaire, hypothecator or mortgagor and the transferee, assignee, subtenant, licensee concessionaire or mortgagee in each instance, as the case may be, and each transferee, assignee, subtenant, licensee, concessionaire or mortgagee shall agree in writing for the benefit of the Landlord herein to assume, to be bound by, and to perform the terms, covenants and conditions of this Lease to be done, kept and performed by the Tenant. One (or more, if required by Landlord) executed copy of such written instrument shall be delivered to Landlord. Failure to first obtain in writing Landlord's consent or failure to comply with the provisions of this Article shall operate to prevent any such transfer, assignment, subletting, license, concession agreement or hypothecation from becoming effective.

## 16.   <u>WASTE, NUISANCE, APPLICABLE LAWS.</u>

16.1 <u>Waste and Nuisance</u>. Tenant shall not commit or suffer to be committed any waste in or upon the Premises and shall not commit or suffer to be committed therein any nuisance or other act or thing which may disturb the quiet enjoyment of any other tenant in the Building, or which may disturb the quiet enjoyment of any person within the immediate vicinity of the Building.

16.2     Tenant's Compliance with Laws. Tenant shall, at Tenant's sole cost and expense, comply with all the requirements of all federal, state, county, municipal and other applicable authorities, now in force or which may hereafter be in force in connection with Tenant's use of the Premises.

## 17.     DESTRUCTION.

17.1     Notice of Loss. Tenant shall give immediate notice to Landlord in the event of fire or other accidents or casualties within the Premises or in or around the Building, and such other notice as prescribed by the fire and extended coverage insurance policy required herein to be carried thereon, and further, Tenant shall give immediate notice to Landlord of any defect in any of the fixtures or equipment located within the Premises or in or around the Building.

17.2     Premises Useable. In the event the Premises shall be damaged by fire or other casualty, but shall not be rendered wholly or partially unusable, regardless of the time remaining in the Term, Landlord shall cause such damage to be repaired, and the Base Rent shall not be reduced or abated unless the repairs are delayed beyond ninety (90) days after commencement of such repairs, and thereafter, only if Landlord is not diligently pursuing such repairs, and then only to the extent as may be equitable based upon the amount of damage.

17.3     Premises Unusable. If the Premises shall be rendered partially or wholly unusable, Landlord shall cause such damage to be repaired and the Base Rent shall be reduced in proportion to Tenant's loss of effective use of the Premises during such repair.

17.4     Building Damaged. In the event all or part of the Building, other than the Premises, shall be damaged or destroyed by fire or other casualty, and regardless of the time remaining in the Term, Landlord shall cause such damage to be repaired. Neither Base Rent nor any other sums due hereunder shall be abated or reduced.

17.5     Scope of Repair. In the event Landlord elects or shall be obligated to repair or restore any damage or destruction as aforesaid, the scope of the work shall be limited to the shell of the Building and Lease Premises. Landlord shall not be required to make repairs or replacements of any panels, decoration, trade fixtures, railings, floor covering, partitions or other parts of the Interior of the Premises or any other property installed or placed in the Premises by Tenant.

17.6     Commencement of Repairs.  Anything to the contrary herein notwithstanding, Landlord shall not be required to commence repairs and/or restoration prior to the expiration of sixty (60) days following the occurrence or the receipt by Landlord of the insurance proceeds covering said damage, whichever event shall first occur.

## 18.     CONDEMNATION.

18.1     Total Taking. If all of the Premises should be taken for any public or quasi public use under any governmental law, ordinance or regulation or by right of eminent domain or by private purchase in lieu thereof, then this Lease shall terminate and the Rent shall be abated during the unexpired portion of the Term, effective on the date physical possession is taken by the condemning authority.

18.2     Partial Taking. If any part (but not all) of the Building, Common Areas or the Premises should be so taken, Landlord may terminate this Lease if Landlord, in its sole discretion, so elects. Any election to terminate this Lease in accordance with this provision shall be evidenced by written notice of termination to Tenant within thirty (30) days after the date physical possession is taken by the condemning

authority. If this Lease is not so terminated, the Base Rent payable hereunder during the unexpired portion of the term shall be reduced in proportion to the area of the Premises taken, effective on the date physical possession is taken by the condemning authority.

18.3   <u>Award</u>.  All compensation awarded for any taking (or the proceeds of private sale in lieu thereof) of the Building, the Premises or the Common Areas shall be the property of Landlord and Tenant hereby assigns its interests in any such award to Landlord

## 19.   <u>QUIET ENJOYMENT.</u>

So long as Tenant shall pay all Rent and other payments due hereunder and shall observe and perform all of the covenants on Tenant's part to be observed and performed hereunder, and Tenant is not in default hereunder (beyond any applicable notice or cure periods), Tenant shall peaceably and quietly hold and enjoy the Premises (including easement rights) for the entire Term hereof without interruption by Landlord or person or persons lawfully or equitably claiming by, through or under Landlord, subject, nevertheless, to all of the terms and provisions of this Lease and to the reservations, encumbrances and limitations affecting the title to the premises upon which the Building is situated.

## 20.   <u>DEFAULT AND REMEDIES.</u>

20.1   <u>Default</u>. The following events shall be deemed to be the events of default by Tenant under this Lease:

(1)   Tenant shall fail to pay any installment of the Base Rent or any Additional Rent within five (5) business days after receipt of written notice of such failure from Landlord. Notwithstanding the foregoing, Landlord shall not be obligated to provide written notice more than twice in any twelve (12) month period.

(2)   Tenant shall fail to comply with any term, provision or covenant of this Lease, other than the payment of any sums due Landlord, including but not limited to, the Base Rent or any Additional Rent, and Tenant shall not cure such failure within thirty (30) days after written notice thereof of Tenant (or such shorter notice period as may be provided elsewhere in this Lease for specific events of default); provided, however, that if such failure cannot be reasonably cured within thirty (30) days, then Tenant shall have such additional time to cure as is reasonable under the circumstances provided that Tenant diligently continues to pursue such cure.

(3)   An event of default shall occur and remain uncured within the time stated for such cure under any Related Lease.

(4)   Tenant or any guarantor of Tenants' obligations hereunder shall become insolvent in any chapter of the United States Bankruptcy Code, or shall make a transfer in fraud of creditors, or shall make an assignment for the benefit of creditors.

(5)   Tenant or any guarantor shall file a petition under any section or chapter of the United States Bankruptcy Code, or under any similar law or statute of the United States or any state thereof; or Tenant shall be adjudged bankrupt or insolvent as defined in any chapter of the United States Bankruptcy Code in proceedings filed against Tenant or any guarantor of Tenant's obligations under this Lease.

(6)     A receiver or trustee shall be appointed for the Premises or for all or substantially all of the assets of Tenant or any guarantor and such receiver or trustee shall not be discharged within thirty (30) days following such appointment.

(7)     The discovery by Landlord that any financial statement given by Tenant or any of its assignees, subtenants or successors-in-interest, or any guarantor of Tenant's obligations hereunder to Landlord, was materially false.

20.2    Remedies.

(1)     Upon the occurrence of any event of default hereunder, and notwithstanding the fact that the termination or cancellation of this Lease by Landlord may substantially interfere with the ability of Tenant to conduct a non-liquidation proceeding under any chapter of the United States Bankruptcy Code, Landlord shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever.

(i)     Terminate this Lease, in which event Tenant shall immediately surrender the Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which Landlord may have for possession or arrearages in Rent, enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying said Premises or any part thereof, without being liable for prosecution or any claim for damages therefor and Tenant agrees to pay Landlord, on demand, the amount of all losses, expenses and damages, including attorneys' fees, which Landlord may suffer by reason of such termination; and/or

(ii)     Enter upon the Premises and correct such default or otherwise do whatever Tenant is obligated to do under the terms of this Lease; and Tenant agrees to pay Landlord, on demand, the amount of all  losses, expenses and damages, including attorneys' fees which Landlord may incur in connection with attempts to effect compliance with Tenant's obligations under this Lease, and Tenant further agrees that Landlord shall not be liable for prosecution or any claim for damages resulting to Tenant from such action, and/or

(iii)     Enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying said Premises or any part thereof, without being liable for prosecution or any claim for damages therefor, and if Landlord so elects, relet the Premises on such terms as Landlord may deem advisable and receive rental therefor.

Pursuit of any of the foregoing remedies shall not preclude pursuit of any other remedies herein provided or provided by law, or at equity, nor shall pursuit of any other such remedy constitute a forfeiture or waiver of any Rent or other sums due to Landlord hereunder or of any damages accruing to the Landlord by reason of the violation of any of the terms, provisions and covenants herein contained. Forbearance by Landlord to enforce one or more of the remedies herein provided upon an event of default shall not be deemed or construed to constitute a waiver of such default. In determining the amount of loss or damage which Landlord may suffer by reason of termination of this Lease or the deficiency arising by reason of any reletting by Landlord as above provided, allowance shall be made for the expense of repossession and any repairs or remodeling undertaken by Landlord following repossession.

(2)     Exercise by Landlord of any one or more remedies herein granted or otherwise available shall not be deemed to be an acceptance of surrender of the Premises by Tenant, whether by agreement or by operation of law it being understood that such surrender can be effected only by the written agreement of Landlord and Tenant. No removal or other exercise of dominion by Landlord over the property of Tenant or others at the Premises shall be deemed unauthorized or constitute a conversion. Tenant hereby consenting, after any event of default, to the aforesaid exercise of dominion over Tenant's property within the Building. All claims for damages by reason of such reentry and/or repossession and/or alteration of locks or other security devices are hereby waived, as are all claims for damages by reason of any distress warrant, forcible detainer proceedings, sequestration proceedings or other legal process. Tenant agrees that any reentry by Landlord may be pursuant to judgment obtained in forcible detainer proceedings or other legal proceedings, as Landlord may elect and Landlord shall not be liable in trespass or otherwise,(after deducting expenses incurred by Landlord as provided herein). In no event shall Tenant be entitled to any excess of any rental obtained by reletting over and above the Rent herein reserved. Actions to collect amounts due by Tenant as provided in this paragraph may be brought from time to time, on one or more occasions, without the necessity of Landlord's waiting until expiration of the Lease Term.

(3)     In the event Landlord elects to terminate this Lease by reason of event or default, then notwithstanding such termination, Tenant shall be liable for and shall pay to Landlord, at Landlords Address as defined in <u>Section 1</u> herein, the sum of all Rent, Additional Rent and other indebtedness accrued to the date of such termination, plus, as damages, an amount equal to the present value of the Rent and any and all other sums reserved hereunder for the remaining unexpired portion of the Lease Term (had the Lease not been so terminated by Landlord), less the then present value of the then fair rental value of the Premises.

(4)     In the event Landlord elects to repossess the Premises without terminating the Lease, then Tenant shall be liable for and shall pay to Landlord at Landlords Address as defined in <u>Section 1</u> hereinabove, all Rent and other indebtedness accrued to date of such repossession, plus all Rent and any and all other sums required to be paid by Tenant to Landlord during the remainder of the Lease Term until the date of expiration of the Term, diminished by any net sums thereafter received by Landlord through reletting the Premises during Period (after deducting expenses incurred by Landlord as provided herein). In no event shall Tenant be entitled to any excess of any rental obtained by reletting over and above the Rent herein reserved. Actions to collect amounts due by Tenant as provided in the paragraph may be brought from time to time, on one or more occasions, without necessity of Landlord's waiting until expiration of the Lease Term.

(5)     In the event of termination or repossession of the Premises for an event of default, Landlord shall have an obligation to attempt to relet the Premises, or any portion thereof. However, in the event of reletting Landlord may relet the whole or any portion of the Premises for any period, to any tenant, and for any use and purpose. Should Landlord choose to relet the Premises, or any portion thereof, for the remainder of the Term provided for herein, and if the rental received through reletting does not at least equal the Rent provided for herein, Tenant shall pay and satisfy the deficiency between the amount of the Rent so provided for and that received through reletting, including, but not limited to, the cost of renovating, altering, and decorating for a new occupant. Further, Tenant shall not in any event ever be entitled to any excess rental and other sums provided for herein, and the same shall belong solely to Landlord. Nothing herein shall be construed as in any way denying Landlord the right, in the event of abandonment of said Premises or other breach of this Lease by Tenant, to treat the same as an entire breach and at Landlord's option to terminate this Lease and/or immediately seek recovery for the entire breach of this Lease and any and all damages which Landlord suffers thereby.

19

(6)     If Tenant should fail to make any payment or cure any default hereunder within the time herein permitted, Landlord, without being under any obligation to do so and without thereby waiving such default, may make such payment and/or remedy such other default for the account of Tenant (and enter the Premises for such purpose), and thereupon Tenant shall be obligated and hereby agrees, to pay Landlord, upon demand, all costs, expenses and disbursements (including reasonable attorneys' fees) incurred by Landlord in taking such remedial action.

(7)     In the event of the breach or the attempted or threatened breach of any covenant or provision contained in this Lease by Tenant, Landlord shall have, in addition to all other remedies provided it hereunder or by law or at equity, the right to obtain an injunction prohibiting such breach or attempted breach without the necessity for proof of inadequacy of legal remedy, irreparable harm or probable right of recovery.

20.3     <u>Expenses/Attorneys' Fees</u>. In the case of an event of default hereunder, Tenant shall also be liable for and shall pay to Landlord, at Landlords Address as defined in <u>Section 1</u> herein, in addition to any sum provided to be paid above: broker's fees incurred by Landlord in connection with reletting the whole or any part of the Premises; the costs of removing and storing Tenant's or other occupant's property; the costs of repairing, altering, remodeling or otherwise putting the Premises into condition acceptable to a new tenant or tenants, and all reasonable expenses incurred by Landlord in enforcing Landlord's rights or remedies, including reasonable attorneys' fees and court costs until the expiration of the Term.  Tenant shall permit the Landlord to exhibit the Premises to prospective tenants and to place notices upon the Premises advertising "For Lease".  Landlord may at any time, exhibit the Premises to prospective purchasers. and place notices, upon the Building or the Premises advertising "For Sale."

20.4     <u>Landlord's Breach</u>.  In the event of any default by Landlord, Tenant's exclusive remedy shall be an action for damages (Tenant hereby waiving the benefit of any laws granting it a lien upon the property of Landlord and/or upon rental due Landlord), but prior to any such action Tenant will give Landlord written notice specifying such default with particularity, and Landlord shall thereupon have thirty (30) days in which to cure any such default. Unless and until Landlord fails to so cure any default after such notice, Tenant shall not have any remedy or cause of action by reason thereof. All obligations of Landlord hereunder will be construed as covenants, not conditions; and all such obligations will be binding upon Landlord only during the period of its possession of the Building and not thereafter.

20.5     <u>Limitation on Landlord's Personal Liability</u>. Tenant specifically agrees to look solely to Landlord's interest in the Building for the recovery for any judgment from Landlord, it being agreed that Landlord, its agents, employees, shareholders, officers, directors, and limited partners, shall never be personally liable hereunder for anything whatsoever.

## 21.  <u>ACCESS</u>.

Landlord or its agents shall have the right to enter the Premises at all reasonable times, and whenever necessary because of emergencies, to inspect the same, and to make such repairs, replacements, alterations, improvements or additions as Landlord may deem necessary or desirable, including alterations, repairs, improvements or additions to the space adjacent to Premises and/or to the Building, without the same constituting an eviction of Tenant in whole or in part, and the Rent reserved shall in no way abate while said repairs, replacements, alterations, improvements or additions are being made, by reason of loss or interruption of Tenant's business or otherwise. During the ninety (90) days prior to the expiration of the Term, Tenant shall permit the Landlord to exhibit the Premises to prospective tenants and to place notices upon the Premises advertising "For Lease".  Landlord may, at any time, exhibit the Premises to prospective purchasers, and place notices, upon the Building or the Premises advertising "For Sale."

22. **SURRENDER AND REMOVAL OF PROPERTY.**

22.1    Surrender of Premises. Promptly upon the expiration or earlier termination of the Term, Tenant shall surrender the Premises in the same condition as received by Tenant on the Commencement Date reasonable wear and tear and damage by unavoidable casualty or Act of God only excepted. Further, Tenant shall surrender all keys to the Premises at the place then fixed for the payments of Base Rent due hereunder. All items of work and improvements comprising the Interior of the Premises, shall constitute a part of the fee estate remainder subject to this Lease, notwithstanding that Tenant may construct or cause to be constructed all or any part of said improvements or may contribute to the cost thereof, and notwithstanding that Tenant may or might be required to maintain, repair and/or replace same or some part thereof pursuant to some other provisions in this Lease. Subject to the provisions of this Section, Tenant shall remove all of Tenant's trade fixtures, operation equipment and other personal property before surrendering the Premises as aforesaid and shall repair at Tenant's expense any damage to the Premises caused thereby.

22.2    Failure to Remove Property. If Tenant shall neglect to remove Tenant's personally as herein provided, Landlord shall have the right (i) to remove said property and cause it to be stored in a public warehouse or elsewhere, at the cost of and for the account of Tenant, or (ii) in the alternative, if said property shall not be removed within thirty (30) days after said termination, to dispose of said property in a manner deemed suitable to Landlord, all without service of notice or resort to legal process and without becoming liable for any loss damage which may be occasioned thereby, and any proceeds of such disposition shall be retained by Landlord without liability to Tenant, Tenant hereby waiving any interest in such proceeds.

22.3    Survival of Covenants. Tenant's obligations to observe or perform the covenants contained in this Article shall expressly survive the expiration or earlier termination of the Term.

23. **HOLDING OVER.**

Any holding over without the consent of Landlord after the expiration or earlier termination of the Term shall be construed to be and shall constitute a tenancy at the will of Landlord, and Tenant agrees to pay as rents and liquidated damages for such holding over a sum equivalent to the Rent herein specified and reserved plus fifty percent (50%) of the Base Rent (prorated on a monthly basis) and shall otherwise be on the same terms and conditions herein, as far as applicable.

24. **ESTOPPEL/MEMORANDUM.**

24.1    Estoppel Certificate.  Within ten (10) days after request therefore by Landlord, Ground Lessor or any Mortgagee, Tenant shall deliver in recordable form (and signed by Tenant, if an individual, or a duly authorized representative of Tenant if Tenant is not an individual) a statement to Landlord, Ground Lessor any Mortgagee, or any proposed Mortgagee or transferee of the Project (as the case may be), certifying (if such be the case) that this Lease is in full force and effect, that Tenant is in possession of the Premises, that Tenant has commenced the payment of Rent, that there are no defenses or offsets to this Lease claimed by Tenant, as well as any other information reasonably requested.  If Tenant fails or refuses to give a certificate hereunder within the time period herein specified, then the information contained on such certificate as submitted by Landlord shall be deemed correct for all purposes, but Landlord shall have the right to treat such failure or refusal as a default by Tenant.

24.2    Memorandum of Lease. Promptly after the Commencement Date, Landlord and Tenant, if requested by Landlord, shall execute and acknowledge and deliver a memorandum or short form of this Lease, in recordable form, acknowledging Tenant's acceptance of the Premises for all purposes herein

provided and specifying the Commencement Date and the termination date of this Lease in accordance with the provisions hereof, and said memorandum may be recorded by Landlord only, but this Lease Agreement itself shall not be recorded. In the event Tenant records a memorandum of this Lease, or this Lease, Tenant shall be in default under this Lease and Landlord may terminate this Lease upon five (5) days written notice to Tenant at Tenant's address set forth in <u>Section 1.1</u> hereof.

## 25.   <u>NOTICES.</u>

All notices required or permitted to be given hereunder by either party hereto to the other party shall be deemed sufficiently given or made on the day of receipt thereof or three (3) business days after the date when mailed by United States Registered or Certified Mail, adequate postage paid, to their respective addresses as specified in <u>Section 1.1</u> hereof. Each party hereto may notify the other party of any change in its mailing address by notice in the manner herein above provided, which new address shall thereafter be deemed the proper address for notice hereunder.

## 26.   <u>TENANT'S PAYMENTS.</u>

26.1    <u>Payments</u>. Tender of Rent and/or any other payment due hereunder shall be considered to have been made on the date such payments received by Landlord and not on the date mailed by Tenant. For purposes hereof, the office of Landlord is the office presently or henceforth designated pursuant to the provisions of <u>Section 1.1</u> hereof. Checks or drafts tendered will constitute payment only when duly paid by the drawers bank promptly upon presentment, properly endorsed, for payment.

26.2    <u>Interest</u>. All sums due and owing by Tenant to Landlord under this Lease shall bear interest at the Prime Rate (as defined in the *Wall Street Journal*) plus four percent (4%) from the date due until paid.

## 27.   <u>LANDLORD'S LIEN.</u>

To secure the payment of all Base Rent, and Additional Rent reserved herein, and all other payments due Landlord hereunder, or to become due hereunder and the faithful performance of all covenants, agreements and stipulations herein contained to be performed by Tenant, Tenant hereby grants to Landlord an express first and prior contract lien and security interest on all property (including fixtures, equipment, inventory, goods, wares, furniture, office equipment, supplies and merchandise) which may be placed in the Premises, and also upon all proceeds of any insurance which may accrue to Tenant by reason of destruction of or damage to any such property. Tenant hereby waives all exemption laws in favor of said lien and security interest. This lien and security interest is given in addition to the Landlord's statutory lien and shall be cumulative thereof. Tenant shall not remove any property from the Premises until all of Tenant's obligations under this Lease are satisfied. This lien may be foreclosed with or without court proceedings by public or private sale, provided Landlord gives Tenant at least ten (10) days notice of the time, place and terms of said sale, and Landlord shall have the right to become the purchaser of such property, upon being the highest bidder therefor at said sale. The notice referred to in the preceding sentence may (but needs not) be given by Landlord to Tenant contemporaneously with any other notice from Landlord to Tenant which may be given in accordance herewith. At the time of the execution of this Lease, and if requested thereafter by Landlord, Tenant shall execute and deliver to Landlord financing statement instruments in form deemed sufficient by Landlord to reflect the security interest herein granted and any proper amendment of, assignment of, modification in or extension of the aforesaid contract lien and security interest hereby granted. Tenant hereby grants to Landlord a power of attorney to sign, in place and stead of Tenant, any and all such instruments. Said power of attorney is irrevocable and coupled with an interest.

28.    **RULES AND REGULATIONS.**

Such reasonable rules and regulations applying to all tenants in the Building as may be adopted by Landlord for the safety, care, cleanliness, preservation of good order or operation of the Premises, the Building, the Property and the Common Areas, are hereby made a part hereof and Tenant agrees to comply with all such rules and regulations, immediately upon receipt of a copy of same. Landlord shall have the right at all times to change any of the rules and regulations or to amend them in any manner deemed reasonable by Landlord. All changes and amendments will be sent by Landlord to Tenant in writing and shall be thereafter carried out and observed by Tenant.  As of the Effective Date, the rules and regulations are set forth on <u>Exhibit D</u>.

29.    **BROKERS.**

None.

30.    **AUTHORITY.**

Each of the persons executing this Lease on behalf of Tenant represents and warrants that Tenant has been and is qualified to do business in the state in which the Building is located, that the Tenant Entity has full right and authority to enter into this Lease, and that all persons signing on behalf of the Tenant Entity were authorized to do so by all appropriate actions required of such entity.  If Tenant signs as a partnership, trust or other legal entity, each of the persons executing this Lease on behalf of Tenant represents and warrants that Tenant has complied with all applicable laws, rules and governmental regulations relative to its right to do business in the state in which the Building is located, and that each of the persons or entities acting on behalf of the Tenant was authorized to do so by any and all appropriate partnership, trust or other actions.

31.    **LIABILITY OF LANDLORD.**

Tenant shall look solely to Landlord's interest in the Building, including revenue derived from the Project, and Landlord's personal property used in connection with the Project for the satisfaction of any judgment or decree requiring the payment of money by Landlord, based upon any default hereunder, and no other property or asset of Landlord shall be subject to levy, execution, or other enforcement procedure for the satisfaction of such judgment or decree.  **IN NO EVENT SHALL LANDLORD BE LIABLE OR RESPONSIBLE FOR ANY CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGES.**

32.    **SCOPE AND INTERPRETATION OF AGREEMENT; CONFIDENTIALITY.**

This Lease and all Exhibits set forth including all of the covenants, promises, agreements, conditions, and understandings between Landlord and Tenant concerning the Premises, and there are no covenants, promises, conditions, or understandings, either oral or written, other than as set forth herein.  No subsequent alteration, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by both parties.  This Lease shall not be more strictly enforced against either party regardless of who was more responsible for its preparation.  Except at Landlord's option, no part of this Lease or any memorandum thereof may be recorded in the public records of any municipality or county.  Tenant will maintain the confidentiality of this Lease and will not divulge the economic or other terms of this Lease, whether verbally or in writing, to any person, other than Tenant's officers, directors, partners or shareholders; Tenant's attorneys, accountants and other professional consultants; any governmental agencies; and pursuant to subpoena or other legal process.  If any provision of this Lease shall be determined to be void by any court of competent jurisdiction or by any law enacted subsequent to the

Effective Date, then such determination shall not affect any other provisions hereof, all of which other provisions shall remain in full force and effect.

## 33.   LANDLORD'S CONSENT.

Without limiting any other provision of this Lease, in the event that Landlord's consent is required by the terms hereof for any purpose whatsoever, it is understood and agreed that (a) Landlord's consent may be subject to the consent of the Ground Lessor, Declarant and/or the holder of any Mortgage encumbering the Building to the extent that such consents are required under the terms of the Ground Lease, Declaration or the applicable financing documents (which consents Landlord shall seek to obtain) and (b) notwithstanding anything to the contrary set forth herein, it shall not be deemed unreasonable for Landlord to withhold its consent in any given circumstance based upon Landlord's inability to obtain any required consent from the Ground Lessor, Declarant or the holder of any Mortgage encumbering the Building.

## 34.   USE OF PREMISES.

Tenant shall use and occupy the Premises only for the Permitted Use, and for no other purpose, without the prior written consent of Landlord.

## 35.   GUARANTY.

As material consideration for Landlord to enter this Lease, Tenant shall cause Guarantor to execute the Guaranty attached as Exhibit E (the "**Guaranty**"), and Tenant shall deliver the Guaranty to Landlord contemporaneously with Tenant's execution hereof.

## 36.   WAIVER OF JURY TRIAL.

LANDLORD AND TENANT HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS LEASE OR THE OBLIGATIONS EVIDENCED HEREBY, OR ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY.  THIS PROVISION IS A MATERIAL INDUCEMENT TO EACH OF LANDLORD AND TENANT IN ENTERING INTO THIS LEASE.

## 37.   MISCELLANEOUS.

37.1   Successors and Assigns. All rights and liabilities herein granted to or imposed upon the respective parties hereto shall extend to and jointly and severally bind the several respective heirs, legal representatives, successors and assigns of the respective parties hereto, an if there shall be more than one Landlord or Tenant, all shall be bound jointly and severally the terms, conditions and agreements herein contained. No rights, however, shall inure to the benefit of any assignee of Tenant unless Landlord has approved the assignment to such assignee in writing as provided herein.

37.2   Waivers. One or more waivers of any breach or violation of any agreement, covenant or condition herein contained shall not be deemed to be a waiver of any subsequent violation or breach of the same or any other agreement, covenant, or condition herein contained, and the consent or approval by either party of any act by the other, which act requires the approval or consent of the other party, shall not be deemed to waive or render unnecessary the future requirements of consent or approval of the same or

similar act; and the subsequent acceptance of Rent or other payment due hereunder shall not be deemed to be a waiver of any preceding breach by Tenant, other than failure of Tenant to pay the particular Rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of the acceptance of said Rent. No express covenant, term or condition of this Lease shall be deemed to have been waived by either party, unless such waiver is in writing.

37.3     Accord and Satisfaction. No payment made by Tenant or received by Landlord in an amount less than the amount herein stipulated shall be deemed to be other than on account of the earliest received payment, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as Rent be deemed an accord and satisfaction, and Landlord may accept any such check or payment without prejudice to Landlord's right to recover the balance of such amount or to pursue any other remedy in this Lease or by law provided Landlord.

37.4     Entire Agreement. This Lease, together with the exhibit or exhibits aforesaid and the rider or riders, if any, attached hereto and forming a part hereof, contains and sets forth the entire agreement and understandings between the parties hereto concerning the Premises, and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between said parties other than as herein expressly set forth. Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon either party hereto, unless reduced to writing and signed by both parties.

37.5     Partnership. Landlord does not become a partner of Tenant in the conduct of its business or otherwise, or a joint venturer or a member of a joint enterprise with Tenant by virtue of this Lease.

37.6     Force Majeure.  In the event Landlord shall be delayed, hindered or prevented from the performance of any act required hereunder by reason of strikes, fire, explosions, lock-outs, failure of electrical power, governmental restrictions or regulations, unavailability of suitable financing, materials and/or labor, riots, insurrection, war or on account of any other condition or occurrence not the fault of Landlord, then the performance of any such act shall be extended for a period equivalent to the period of such delay.

37.7     Captions and Numbers.  The captions, section numbers and article numbers appearing in this Lease are inserted only as a matter of convenience and in no wise define, limit, construe or describe the scope or intent of such sections or articles, nor in any wise affect this Lease.

37.8     Tenant, Defined Use of Pronouns. The word "**Tenant**" shall be deemed and taken to mean each and every person or party mentioned as a Tenant herein, be the same one or more and if there shall be more than one Tenant. Any notice required or permitted by the terms of this of Lease may be given by or to any one thereof and shall have the same force and effect as if given by or to all thereof. The use of the neuter singular pronoun to refer to Landlord or Tenant shall be deemed a proper reference even though Landlord or Tenant may be an individual, a partnership, a corporation, and a group of two or more individuals or corporations. The necessary grammatical changes required to make the provisions of this Lease apply in the plural sense where there is more than one Landlord or one Tenant, and to either corporations, associations, partnerships or individuals, males or females, shall in all instances be assumed as though in each case fully expressed.

37.9     Severability. If any provisions covenant or condition of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, there reminder of this Lease, or the application of such provision, covenant or condition to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each provision,

covenant or condition of this Lease shall be valid and shall be enforced to the fullest extent permitted by Law.

      37.10   Survival. Landlord and Tenant expressly agree that all provisions of this Lease which contemplate performance after the expiration or earlier termination hereof shall survive such expiration or earlier termination of this Lease.

      37.11   Governing law. This Agreement shall be construed in accordance with and governed by the laws of the State of Texas.  Venue for any legal actions hereunder shall be in the Courts of Grayson County, Texas.

      37.12   Other documents. The parties agree to execute all other documents or instruments necessary to effect the transfers of property set forth herein and otherwise to implement the provisions of this Agreement.

## 38.   EXHIBITS

      The following exhibits are a part of this Lease and are incorporated herein by reference:

Exhibit A – Legal Description
Exhibit B – Floor Plan of the Premises
Exhibit C – Parking Areas
Exhibit D – Rules and Regulations
Exhibit E – Guaranty

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

EXECUTED as of the date first set forth above in multiple counterparts each of which shall be deemed to be an original.

**LANDLORD**:

ALTERA HIGHLAND LLC,
a Texas limited liability company

By:_____

Name:   Terry D. Quinn
Its:      President

**TENANT**:

SHERMAN/GRAYSON HEALTH SYSTEM, LLC,
a Texas limited liability company

By:_____
Name:_____
Its:_____

EXECUTED as of the date first set forth above in multiple counterparts each of which shall be deemed to be an original.

**LANDLORD**:

ALTERA HIGHLAND LLC,
a Texas limited liability company

By:_____

Name:   Terry D. Quinn
Its:      President

**TENANT**:

SHERMAN/GRAYSON HEALTH SYSTEM, LLC,
a Texas limited liability company

By:_____

Name:   Thomas J. Frazier, Jr.
Its:      Executive Vice President

EXHIBIT A

LEGAL DESCRIPTION

BEING a 3.0894 acre tract of land situated in the County of Grayson, State of Texas out of the J.B. McAnair Survey, Abstract No. 763 and being all of Block No. 7, and a portion of Lots 7-8, and all of Lots 9-12, Block 12 of Green Mount Addition to the City of Sherman, Grayson County, Texas, as shown by Plat of record in Volume 193, Page 21, Deed Record, Grayson County, Texas,  together with that  portion of vacated Pecan Street, and being more particularly described by meets and bounds as follow:

BEGINNING at a "X" cut in concrete found for corner at the intersection of the north line of Laurel Street (a 60 foot wide public right-of-way) and the east line of Bryant Avenue (a 60 foot wide public right-of-way);

THENCE North 15 degrees 40 minutes 01 seconds West (Reference for Basis of Bearings) along said east right-of-way line, a distance of 467.78 feet to a 5/8 inch iron rod set with cap stamped BGT for corner;

THENCE North 73 degrees 42 minutes 45 seconds East, a distance of 286.25 feet to a 5/8 inch iron rod set with cap stamped BGT for corner in the west right-of-way line of Highland Avenue;

THENCE South 16 degrees 01 minutes 19 seconds East along said west right-of-way line, a distance of 467.76 feet to a 1/2 inch iron rod with cap found for corner at the intersection of the west right-of-way line of said Highland Avenue and the north right-of-way line of said Laurel Street;

THENCE South 73 degrees 42 minutes 45 seconds West along said north right-of-way line, a distance of 289.15 feet to the POINT OF BEGINNING and containing 134,573 square feet or 3.0894 acres of land, more or less.

<u>EXHIBIT B</u>

FLOOR PLAN OF THE PREMISES

[ATTACHED]



St 455
Zwigat · Kable

St 445
ENT Space
VACANT

St 415
Buckingham · Schrank · Lucchese

St 410
Shell Space

St 430
Urbanczyk

St 400
Shell Space

**4th FLOOR PLAN**
s c a l e: 1/8" = 1'-0"

north
plan
orientation

5      20
0    10

23404 SF

Dan Burbine Associates
Architects & Project Managers
12532 Renoir Lane   Dallas, Texas   75230

PROJECT

WNJ Wilson N. Jones

MEDICAL
OFFICE
BUILDING

REVISIONS

DATE
11 MAY 2025

FOLDER

SHEET
A-4
4 of 8



<u>EXHIBIT C</u>

<u>PARKING AREAS</u>

[ATTACHED]



TRACT FIFTEEN:

Being a part of Block No. Eight (8), of G. Y. Gray's Second Addition to the City of Sherman, Texas, and further described as follows:

BEGINNING at the intersection of the South line of Laurel Street with the West line of Highland Avenue as now opened;
THENCE West 140 feet with the South line of Laurel Street to a stake, for the Northwest corner;
THENCE South parallel with Highland Avenue 75 feet to a stake;
THENCE East parallel with Laurel Street 140 feet to a stake in the West line of Highland Avenue;
THENCE North with said line of Highland Avenue 75 feet to the place of beginning, containing a tract of 140 x 75 feet.

TRACT SIXTEEN of the County of Grayson, State of Texas, all that certain tract or parcel of land situated in the City of Sherman, Grayson County, Texas, being a part of the survey originally granted to John B. McAnair, and being a part of Block Eight (8) of Gray's Second Addition, as shown by the map or plat thereof, recorded in Volume 134, page 113, of the Deed Records of Grayson County, Texas, and being more particularly described as follows:

BEGINNING at a point on the West line of Highland Avenue, 125 feet South of the intersection of the West line of Highland Avenue, and the South line of Laurel Street;
THENCE Southward with the West line of Highland Avenue, 45 feet;
THENCE Westward and parallel with the South line of Laurel Street, 140 feet;
THENCE Northward and parallel with the West line of Highland Avenue, 45 feet;
THENCE Eastward, parallel with the South line of Laurel Street, 140 feet to the place of beginning; this being the South 45 by 140 feet of the tract 95 by 140 feet, in size conveyed by Frank Reece and wife, Mrs. Minnie Reece, to Bob Richardson by deed dated March 5, 1924, and recorded in Volume 303, Page 153 of the Deed Records of Grayson County, Texas.

TRACT SEVENTEEN:

SITUATED in the City of Sherman, County of Grayson, Texas and being part of Block No. 8 of G. Y. Gray's Second Addition to the City of Sherman, Texas, out of J. B. McAnair Survey, Grayson County, Texas on the waters of Post Oak Creek, and described as follows:
And being the North 62 feet of the following described piece of property;
BEGINNING at the intersection of West line of Highland Ave. and the North line of Houston Street.
THENCE in a westerly direction with the North line of Houston Street 87 feet a stake.
THENCE in a Northerly direction and parallel with the West line of Highland Avenue 150 feet to a stake.
THENCE in an Easterly direction parallel with the North line of Houston Street, 87 feet to the West line of Highland Ave.
THENCE in a Southerly direction with the West line of said Highland Ave. 150 feet to the place of beginning, containing 87 x 150 feet of land.  Being the same land described in a deed from J. W. Hollingsworth and wife, Florence Hollingsworth to W. W. Craig, dated January 9, 1915, and

recorded in Volume 239, page 272, Deed Records of Grayson County, Texas.

TRACT TWENTY-FOUR:

BEING that certain tract, lot or parcel of land situated in the City of Sherman, Grayson County, Texas, in the J. B. McAnair Survey, part of Block Eight (8) of the G. Y. Gray Second Addition to the said City of Sherman;

BEGINNING at the Southwest corner of the lot conveyed by J. P. Mills and wife, to M. H. Andrews by deed recorded in Volume 57, page 107 of the Deed Records of Grayson County, Texas, a stake on the North line of West Houston Street;
THENCE North at right angles to the North line of West Houston Street 150 feet to a stake for corner;
THENCE East parallel with the North line of West Houston Street 60 feet to a stake for corner;
THENCE South at right angles to the North line of West Houston Street 150 feet to the North line of West Houston Street;
THENCE West along said line 60 feet to the Place of Beginning.

TRACT TWENTY-FIVE:

All that certain tract or parcel of land situated in Grayson County, Texas, and being more particularly described as follows: SITUATED in the City of Sherman, Grayson County, Texas, on the waters of Post Oak Creek, being a part of a survey or patent to J. B. McAnair Survey, and described as follows, to-wit:

BEGINNING at the Southeast corner of the tract described in the deed from L. M. Tuck, Receiver, to Clyde Jackson and wife, of record in Book 367, Page 344, Grayson County Deed Records;
THENCE West with the North line of Houston Street, 80 feet to the Southeast corner of a lot sold to L. V. Butler;
THENCE North with the East line of the Butler lot, 150 feet to the South line of a lot sold to Cecil J. Rodgers;
THENCE East with the South line of said Rodgers tract, 80 feet to the southeast corner or same, a stake in the East line of the tract sold to Clyde Jackson above referred to;
THENCE South with the East line of the Clyde Jackson tract, 150 feet to the place of beginning, being a lot 80 feet by 150 feet out of the Southeast corner of a tract sold by L. M. Tuck, Receiver, to Clyde Jackson and wife referred to.

Also being described as 80' x 150' our of Block 8 of G.Y. Gray's Addition to the City of Sherman.

TRACT TWENTY-SIX:

BEING all that certain lot or parcel of land, situated in the City of Sherman, Grayson County, Texas, a part of Block No. EIGHT (8) of G. Y. GRAY'S ADDITION to the City of Sherman and

being more particularly described as follows:

BEGINNING at the point of intersection of the North line of West Houston Street and the East line of Bryant Street;
THENCE North with the East line of Bryant Street for a distance of 150 feet;
THENCE East parallel with the North line of Houston Street for a distance of 70 feet;
THENCE South, parallel with the East line of Bryant Street for a distance of 150 feet to the North line of Houston Street;
THENCE West with said line for a distance of 70 feet to the Place of Beginning and containing 70 x 150 feet of land, more or less and being the same property conveyed by Alton R. Hill and wife, Laura Hill to J. B. Revell and wife, Willie B. Revell by deed dated November 10, 1952 and of record in Volume 705, Page 457 of the Deed Records of Grayson County, Texas.

TRACT TWENTY-SEVEN:

SITUATED in Sherman, Grayson County, Texas, and being a part of the J. B. McAnair Survey, and being also a part of Block 8 of G. Y. Gray's Second Addition to Sherman, Texas, and being a part of a tract of 150 x 250 feet of land sold by L. M. Tuck, receiver, to Clyde Jackson, et ux., by deed recorded in Volume 367, page 344, Deed Records of Grayson County, Texas, and described as follows, to-wit:

BEGINNING at a stake on the east line of what is known as Bryant Street at a point 50 feet south of the NW corner of the above mentioned tract of 150 x 250 feet, said point being the SW corner of a tract sold by Clyde Jackson, et al., to Cecil J. Rodgers, et ux.;
THENCE South 50 feet to a stake, the NW corner of a tract now owned by L. V. Butler, et ux., as described in deed of record in Volume 506, Page 407, Deed Records of Grayson County, Texas;
THENCE East parallel with the north line of the 150 x 250 foot tract 150 feet to a stake;
THENCE North 50 feet to the SE corner of the Cecil J. Rodgers, et ux., tract;
THENCE West with the south line of the said Rodgers tract 150 feet to the place of beginning, containing 50 x 150 feet of land.

TRACT TWENTY-EIGHT:

All that certain tract or parcel of land situated in the City of Sherman, Grayson County, Texas, being a part of the Survey originally granted to J. B. McANAIR, and being a part of BLOCK NO. EIGHT (8) of GRAY'S SECOND ADDITION to said City of Sherman, as shown by the map or plat thereof, recorded in Volume 134, at Page 113, Deed Records of Grayson County, Texas, and as shown by the 1908 Plat Book of Grayson County, Texas, and being more particularly described as follows:

BEGINNING at the intersection of the West line of Highland Avenue and the North line of Houston Street;
THENCE West with the North line of Houston Street, a distance of 87 feet;
THENCE North on a line parallel with the West line of Highland Avenue, a distance of 88 feet to the Southwest corner of a tract of land deeded to Elmer L. Anderson;

THENCE East on a line parallel with the North line of Houston Street and with the South line of the Elmer L. Anderson tract, a distance of 87 feet to a point in the West line of Highland Avenue;

THENCE South with the West line of Highland Avenue, a distance of 88 feet to the Place of Beginning and Containing 87 ft. by 88 ft. of land and being the same property conveyed by Floydell Akridge, a widow, to George Melvin Hammock, et ux., by Deed dated January 12, 1972, recorded in Volume 1208, at Page 433, Deed Records of Grayson County, Texas.

TRACT TWENTY-NINE:

BEING all that certain tract or parcel of land, situated in the County of Grayson, State of Texas, being a part of survey originally granted to J. B. McAnair and described as follows, to-wit:

BEGINNING at a point on the West line of Highland Avenue, seventy-five (75) feet South of the intersection of the West line of Highland Avenue and the South line of Laurel Street in the City of Sherman;

THENCE Southward with the West line of Highland Avenue fifty (50) feet;

THENCE Westward and parallel with the South line of Laurel Street, one hundred forty (140) feet;

THENCE Northward and parallel with the West line of Highland Avenue, fifty (50) feet;

THENCE Eastward and parallel with the South line of Laurel Street, one hundred forty (140) feet to the Place of Beginning; this being the North fifty (50) feet by one hundred forty (140) feet of the tract ninety-five (95) feet by one hundred forty (140) feet in size conveyed by Frank Reese and wife, Mrs. Minnie Reese, to Bob Richardson, by deed dated March 5, 1924, and recorded in Volume 303, page 153 of the Deed Records, Grayson County, Texas; and being Lot Eight (8), Block Eight (8), of Gray's Second Addition to the City of Sherman, Grayson County, Texas.

BEING a 3.0894 acre tract of land situated in the County of Grayson, State of Texas out of the J.B. McAnair Survey, Abstract No. 763 and being all of Block No. 7, and a portion of Lots 7-8, and all of Lots 9-12, Block 12 of Green Mount Addition to the City of Sherman, Grayson County, Texas, as shown by Plat of record in Volume 193, Page 21, Deed Record, Grayson County, Texas,  together with that  portion of vacated Pecan Street, and being more particularly described by meets and bounds as follow:

BEGINNING at a "X" cut in concrete found for corner at the intersection of the north line of Laurel Street (a 60 foot wide public right-of-way) and the east line of Bryant Avenue (a 60 foot wide public right-of-way);

THENCE North 15 degrees 40 minutes 01 seconds West (Reference for Basis of Bearings) along said east right-of-way line, a distance of 467.78 feet to a 5/8 inch iron rod set with cap stamped BGT for corner;

THENCE North 73 degrees 42 minutes 45 seconds East, a distance of 286.25 feet to a 5/8 inch iron rod set with cap stamped BGT for corner in the west right-of-way line of Highland Avenue;

THENCE South 16 degrees 01 minutes 19 seconds East along said west right-of-way line, a distance of 467.76 feet to a 1/2 inch iron rod with cap found for corner at the intersection of the west right-of-way line of said Highland Avenue and the north right-of-way line of said Laurel Street;

THENCE South 73 degrees 42 minutes 45 seconds West along said north right-of-way line, a distance of 289.15 feet to the POINT OF BEGINNING and containing 134,573 square feet or 3.0894 acres of land, more or less.

EXHIBIT D

RULES AND REGULATIONS

1.      All tenants will refer all contractor's representatives and installation technicians who are to perform any work within the Building, grounds, and Parking Area to Landlord for Landlord's supervision, approval and control before the performance of any such work. This provision shall apply to all work performed in the Building, grounds and Parking Area including, but not limited to, installations of telephones, telegraph equipment, electrical devices and attachments, and any and all installations of every nature effecting floors, walls, woodwork, trim, window, ceilings, equipment and any other physical portion of the Building, grounds, and Parking Area. Tenant shall not mark, paint, drill into, or in any way deface any part of the Building or the Premises without Landlord's written consent. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of the Landlord, and as the Landlord may direct.

2.      The work of the janitorial or cleaning personnel shall not be hindered by Tenant after 5:30 pm and such work may be done at any time when the Premises are vacant. The windows doors and fixtures in the Premises and Building may be cleaned at any time. Tenant shall provide adequate waste and rubbish receptacles, cabinets, books cases, map cases, etc., necessary to prevent unreasonable hardship to Landlord in discharging its cleaning obligations.

3.      Movement in or out of the Building or through the Building entrances or lobbies of furniture or office equipment, or dispatch or receipt by Tenant of any heavy equipment, bulky material merchandise or other item which requires use of elevators or stairways, shall be restricted to such hours as Landlord shall designate. The method of such movement, routing of such movement, safety precautions associated with such movement and the prohibition of Tenant bringing any dangerous items into the Building shall be subject to the Landlord's discretion and control. Any hand trucks, carryalls, or similar appliances used for the delivery or receipt of merchandise or equipment shall be equipped with rubber tires, side guards and such other safeguards as the Landlord shall require. Although Landlord or its personnel may participate in or assist in the supervision of such movement, Tenant assumes final responsibility for all risks as to damage to property and injury to persons that may result from such participation or assistance and Tenant shall indemnify and hold harmless Landlord and Landlord's employees and agents, and reimburse Landlord and Landlord's employees and agents with respect to any and all claims, demands, causes of action and liability arising as a result of any assistance or supervision or exercise of control over Tenant's movement of items in and out of the Building.

4.      No sign, advertisement or notice shall be displayed, painted or affixed by Tenant or Tenant's employees, agents or contractors in or on any part of the outside or inside of the Building or Premises without prior written consent of Landlord, and then only of such color, size, character, style and material and in such places as shall be approved and designated by Landlord. Signs on doors and entrances to the Premises and outside of the Premises within the Building, grounds or Parking Area shall be placed thereon by a contractor approved by Landlord.

5.      Tenant shall not place, install or operate on the Premises or in any part of the Building any engine, refrigerating, heating or air conditioning apparatus, stove or machinery, or conduct mechanical operations or place or use in or about the Premises or the Building any explosives, gasoline, kerosene, oil, acids, caustics or any other inflammable, explosive, hazardous or odorous material without the prior written consent of Landlord. No portion of the Premises shall at any time be used for cooking, sleeping or lodging quarters.

6.     Tenant shall not make or permit any nuisance or improper noises in the Building or otherwise interfere in any way with other tenants or persons doing business in the Building or with Landlord's operation of the Building.

7.     Landlord will not be responsible for any fixtures, personal property, equipment, jewelry or money lost in or stolen from the Premises or public areas of the Building, grounds or Parking Area. Landlord shall not be responsible for damages to or theft of motor vehicles or other items from any Parking Areas used in connection with the Building.

8.     No maintenance or repair work shall be done on any vehicles in the Parking Area. No disabled vehicles shall be parked or stored in the Parking Area. All vehicles in the Parking Area shall be parked within the designated spaces and not in more than one (1) space or across spaces. At Landlord's option, all disabled vehicles, recreational vehicles, boats and vehicles improperly parked in spaces designated for handicapped persons and all other improperly parked vehicles may be towed or otherwise removed from the Parking Area at the owner's expense. In the event any vehicle or boat is towed, Landlord will not be liable or responsible for the loss, damage or theft of any property located in the vehicle or boat or for any damage to the vehicle or boat.

9.     Neither Tenant or Tenant's employees, agents, invitees or licensees shall at any time leave or discard any rubbish, paper, articles or objects of any kind whatsoever outside the doors of the Premises or in any other area within the Building or on the grounds or in the Parking Area. No birds, animals, bicycles or vehicles shall be brought into or kept in or about the Building.

10.     None of the entries passages, doors, hallways, or stairways in the Building shall be blocked or obstructed by Tenant Such areas shall not be used by Tenant at any time except for ingress or egress to the Premises by Tenant's, Tenant's employees, agents and invitees.

11.     Landlord shall have the right to determine and prescribe the weight and proper position of any usually heavy equipment, including but not limited to copying equipment, computer equipment, safes and large files that are to be placed in the Building. Only those items which in the exclusive judgment of the Landlord will not do damage to the floors, structure and elevators may be moved into the Building. Tenant shall pay for any damage resulting from moving or installing such articles in the Building or the existence of same in the Building.

12.     All Christmas and other decorations in the Building must be flame retardant.

13.     After hours air conditioning and heating on Monday through Saturday and all day Sunday and holidays determined by Landlord must be requested in writing by noon of a regular work day prior to the day for which additional air conditioning is requested. Tenant shall be charged at the prevailing hourly rate for the use of such air conditioning and heating.

14.     Any request by Tenant to place or remove names from the directory board in the lobby of the Building shall be furnished to Landlord in writing on Tenant's letterhead.

15.     Any services which Tenant requests Landlord to perform which Landlord is not required to perform under this Lease shall, if performed by Landlord, be billed to Tenant at Landlord's cost plus a 15% fee to cover Landlord's overhead costs. Landlord shall have the right to refuse to perform any such services.

16.     If Landlord's maintenance engineer or any of Landlord's other personnel do any work after normal business hours at the request of Tenant, Tenant shall pay for the cost of such work.

17.     All doors leading from public corridors to the Premises are to be kept closed when not in use.

18.     Canvassing, soliciting or peddling in the Building is prohibited and Tenant shall cooperate with Landlord to prevent such activities.

19.     Tenant shall give Landlord immediate notice in the event that any defects or dangerous conditions arise or exist in the Premises or in the Building or if any accidents or emergencies occur in the Premises or Building.

20.     Tenant shall not use the Premises or permit the Premises to be used for photographic, multilith or multigraph reproductions for sale to the general public. All photographic, multilith or multigraph reproductions in the Premises shall be produced for Tenant in the ordinary course of Tenant's business.

21.     All requests for services made by Tenant shall be made directly to Landlord or Landlord's designated agents. Employees of Landlord or Landlord's designated agents shall not perform any work or do anything outside of their regular duties unless directed to do so by Landlord or Landlord's designated agents. Tenant will make no requests directly to Landlord's employees.

<u>EXHIBIT E</u>

GUARANTY

Landlord, Tenant and Guarantor (as herein defined) acknowledge that if it were not for this guaranty (the "**Guaranty**") as an inducement, Landlord would not execute the Lease.  Therefore, for $10.00 and other value received, and in consideration for, as a condition of, and an inducement to ALTERA HIGHLAND LLC, a Texas limited liability company ("**Landlord**") entering into that certain Lease Agreement dated as of August 21, 2012, with SHERMAN/GRAYSON HEALTH SYSTEM, LLC, a Texas limited liability company ("**Tenant**"), for certain premises being Suites 210, 310, 340, 430 and 545 of a medical office building located at 300 N. Highland Drive, Sherman, Texas, on real property owned by an affiliate of Tenant and ground leased to Landlord, as ground lessee (the "**Lease**"), the undersigned officer of LHP HOSPITAL GROUP, INC., a Delaware corporation (the "**Guarantor**"), on behalf of such entity, its legal representatives, heirs, successors, and assigns, hereby irrevocably guarantees to Landlord, Landlord's successors and assigns, absolutely and unconditionally, the full prompt and timely payment, performance and observance of all amounts to be paid and provisions of the Lease to be performed and observed by Tenant, including (without limitation) the rules and regulations incorporated into the Lease, as if Guarantor had executed the Lease as the tenant thereunder.  The Guarantor expressly agrees that the validity of this Guaranty and the obligations of the Guarantor hereunder shall not be terminated, affected or impaired by reason of the assertion by Landlord against Tenant of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease.  The Guarantor further agrees that this Guaranty shall remain and continue in full force and effect notwithstanding any assignment, renewal, modification, extension or waiver of the Lease or any provisions thereof.  The laws of Texas shall apply hereto.

The Guarantor hereby waives, to the fullest extent permitted by law:

(A)     Any right that the Guarantor may have to require Landlord to proceed against Tenant, proceed against or exhaust any security held from Tenant, or pursue any other remedy in Landlord's power to pursue, including, without limitation, re-letting the Premises following a default;

(B)     Any defense based on any claim that the Guarantor's obligations exceed or are more burdensome than those of Tenant;

(C)     Any defenses given to sureties other than actual payment or performance;

(D)     Any defense based on: (i) any legal disability of Tenant; (ii) any release, discharge, modification, impairment or limitation of the liability of Tenant to Landlord  from any cause, whether consented to by Landlord or arising by operation of law or from any bankruptcy or other voluntary or involuntary proceeding, in or out of court, for the adjustment of debtor-creditor relationships (an "**Insolvency Proceeding**"), and/or (iii) any rejection or disaffirmance of the Lease, or any part of it, or any security held for it, in any such Insolvency Proceeding;

(E)     Any defense based on any action taken or omitted by Landlord in any Insolvency Proceeding involving Tenant, including any election to have Landlord's claim allowed as being secured, partially secured or unsecured, any extension of credit by Landlord to Tenant in any Insolvency Proceeding, and the taking and holding by Landlord of any security for any such extension of credit; and

(F)     The Guarantor agrees to jurisdiction and venue in Grayson and Dallas Counties, Texas, and waives any objection to such venue on the grounds of forum non conveniens.  **The Guarantor knowingly, voluntarily and intentionally waives the right to a trial by jury in respect of any litigation based hereon or arising out of, under, or in connection with this Guaranty.**  In the event Landlord incurs any

fees and/or expenses in the enforcement of this Guaranty, whether or not involving litigation and/or appellate, administrative or bankruptcy proceedings, the Guarantor agrees to be liable for same (including reasonable attorney's fees and costs) and to pay same promptly on demand by Landlord.

The Guarantor acknowledges liability for every obligation of Tenant under the Lease.  Any capitalized term used herein and not otherwise defined shall have the same meaning as defined in the Lease.  Each provision of this Guaranty shall be considered severable, and if for any reason and provision is determined to be invalid under current or future law, such invalidity shall not impair the operation of or otherwise affect the valid portions of this Guaranty.

<u>**GUARANTOR**</u>:

LHP HOSPITAL GROUP, INC.,
a Delaware corporation


By:_____
Name:_____
Title:_____

Date:_____

23

## LEASE AGREEMENT

This Lease ("**Lease**") is made as of August 21, 2012 (the "**Effective Date**"), by and between ALTERA HIGHLAND LLC, a Texas limited liability company ("**Landlord**"), and SHERMAN/GRAYSON HEALTH SYSTEM, a Texas limited liability company ("**Tenant**").

### RECITALS:

Landlord, as tenant, has entered into that certain Ground Lease Agreement dated as of the Effective Date (the "**Ground Lease**") with Tenant, as landlord, for the land upon which the Building (as defined below) is located.  Contemporaneously with the Ground Lease, (i) Landlord purchased one (1) medical office building, from Tenant, and (ii) Tenant, as "**Declarant**", filed of record a Declaration of Covenants, Restrictions and Easements (the "**Declaration**") covering the one (1) medical office building, the Hospital commonly known as Texas Health Presbyterian Hospital - WNJ (the "**Hospital**") owned by Tenant located in proximity to the medical office building and the parking  and other common areas  dedicated for use by persons occupying, using or visiting the medical office building, the Hospital and other facilities related thereto.  The Ground Lease and this Lease are subject to the terms and provisions of the Declaration. Tenant, as "Declarant" under the Ground Lease and "Landlord" under the Ground Lease, is familiar with the terms and provisions of each of the Declaration and the Ground Lease.

As part of Tenant's purchase of the Building commonly called "300 N. Highland Drive, Sherman, Texas", Tenant agreed to enter into this Lease.

Simultaneously herewith, Landlord and Tenant are also entering into corresponding leases (each, a "**Related Lease**") for vacant, shell and existing space of the Building, and for the Ambulatory Surgery Center in the Building.

1.     **DEFINITIONS AND BASIC PROVISIONS.**

    1.1     <u>Parties and Addresses</u>. The parties hereto and their respective addresses are as follows:

        (1)     <u>Landlord's Address</u>:     5910 North Central Expressway
Suite 800
Dallas, TX 75206.

        (2)     <u>Tenant's Address</u>:     2400 North Dallas Parkway, Suite 450
Plano, Texas 75093
Attention: Executive Vice President – Administration

        (3)     <u>Ground Lessor Address</u>: 2400 North Dallas Parkway, Suite 450
Plano, Texas 75093
Attention: Executive Vice President –
Administration

1

(1)     <u>Guarantor</u>:                LHP Hospital Group, Inc.,
                                        a Delaware corporation

(2)     <u>Guarantor's Address</u>:     2400 North Dallas Parkway, Suite 450
                                        Plano, Texas 75093
                                        Attention: Executive Vice President – Administration

1.2     <u>Defined Terms</u>: In addition to the capitalized terms elsewhere defined in this Lease, the following terms shall be deemed to be defined terms of this Lease for all purposes.  Each of the following definitions and basic provisions shall be construed in conjunction with and limited by the reference thereto in other provisions of this Lease:

(1)     <u>Additional Rent</u>: All rent and other sums payable hereunder from Tenant to Landlord, other than Base Rent.

(2)     <u>Base Rent</u>: An annual Base Rent of $12.05 per RSF in the Premises, subject to adjustment as provided in Section 3.1.  As of the Commencement Date, the monthly Base Rent is $14,450.96.

(3)     <u>Broker(s)</u>: None.

(4)     <u>Building</u>: The building in which the Premises are situated, being generally known as 300 N. Highland Drive, Sherman, Texas.

(5)     <u>Commencement Date</u>:  The Effective Date.

(6)     <u>Common Areas</u>: Those parts of the Building, Land and related facilities designated from time to time by Landlord for the common use of all doctors, physicians, tenants, visitors, patients and employees, including among other facilities, parking areas, sidewalks, landscaping, curbs, loading docks and areas, private streets and alleys, automobile entrances, exits and driveways, entranceways (open, enclosed or otherwise), lighting facilities, drinking fountains, public toilets, signs, service areas, common utility lines, pipes, and/or conduits, and the like.

(7)     <u>Declarant</u>: means the Declarant under the Declaration, Sherman/Grayson Hospital, LLC, a Texas limited liability company, and its successors under the Declaration.

(8)     <u>Declaration</u>: has the meaning set forth in the Recitals.

(9)     <u>Expiration Date</u>: The last day of the Term hereof, which date is contemplated as being one hundred eighty (180) full months after the Commencement Date.  Notwithstanding any other provision of this Lease to the contrary, if the Expiration Date would otherwise occur on a date other than the last day of a calendar month, then the Term shall be automatically extended to include the last day of such calendar month.

(10)    <u>Floor Plan</u>: The outline of the Premises as depicted in <u>Exhibit B</u> attached hereto and made a part hereof for all purposes.

(11)    <u>Guarantor</u>:  has the meaning set forth in Section 1.1.

(12)   <u>Highest Lawful Rate</u>:  The maximum nonusurious interest rate, if any, that at any time, or from time to time, legally may be contracted for, taken, reserved, charged, or received on the indebtedness owed to Landlord under this Lease under the laws which are presently in effect of the United States of America and the State of Texas applicable to Landlord and such indebtedness.

(13)   <u>Hospital</u>:  The Hospital defined in the Recitals of this Lease, and its successors and assigns.

(14)   <u>Interior of the Premises</u>: Standard office front and entrance (including without limitation, all plate glass and exterior doors), all of the interior wall framing, floors and floor covering, ceiling and interior staining and finishes, all interior doors and hardware, all interior electrical conduits and appurtenances, mechanical machinery and equipment, all interior electrical fixtures, interior plumbing and plumbing fixtures, Tenants' trade fixtures, and all other parts in the interior of the Premises.

(15)   <u>Land</u>: The lot, tract or parcel of land upon which the Building is situated, in Grayson County, Texas as more particularly described by metes and bounds on <u>Exhibit A</u> attached hereto and made a part hereof for all purposes, plus any contiguous parcels or strips of land leased or licensed to Landlord under the Ground Lease or by the Declaration, and are used in connection with or to service the Building or any part thereof.

(16)   <u>Late Charge</u>: Tenant shall pay $100.00 as a late fee to cover Landlord's administrative costs.  Additionally, all unpaid amounts Tenant fails to pay by the fifth (5th) day after the date due shall bear interest from the first day due until paid in full at the lesser of ten percent (10%) per annum or the Highest Lawful Rate.  In no event, however, shall the late fees and/or charges permitted under this Section or elsewhere in this Lease, to the extent the same are considered to be interest under applicable law, exceed the amount of interest that Landlord lawfully could have charged, received or collected on the indebtedness in question at the Highest Lawful Rate.

(17)   <u>Lease</u>: This Lease Agreement.

(18)   <u>Lease Year</u>: Each twelve (12) consecutive month period commencing on the Commencement Date or any anniversary thereof; provided that, if the Commencement Date is other than the first day of a calendar month, then the first Lease Year shall include such partial month together with the next succeeding twelve (12) consecutive months, and each succeeding Lease Year shall begin on the first day of the calendar month that corresponds to the first day of the calendar month following the Commencement Date.

(19)   <u>Operating Expenses</u>: All expenses, costs and disbursements of every kind and nature that Landlord or any of its Affiliates directly or indirectly pays or becomes obligated to pay, whether under the Ground Lease, the Declaration, any Related Lease or otherwise, in respect of the Ground Lease, the ownership, management, maintenance, repair, replacement and operation of the Building, the Common Areas and related facilities of the Building or arising in connection with any Related Lease.  Notwithstanding the foregoing, Operating Expenses shall exclude capital costs associated with the replacement of the roof, foundation, and exterior walls.

(20)   <u>Permitted Use</u>:  General Medical Offices.

(21)  <u>Premises</u>: Suites A, B, C, D and E, comprised of radiology and common areas of the Building occupied or used by Tenant as of the Effective Date, containing approximately 14,391 RSF (as defined herein).  The Premises are substantially depicted on the attached Floor Plan shown on <u>Exhibit B</u> and being located in the Building.

(22)  <u>Pro Rata Share or Tenant's Pro Rata Share</u>: 12.232%, provided that if the Building is expanded or contracted, Tenant's Pro Rata Share shall increase or decrease, as the case may be, such that Tenant's Pro Rata Share will equal a fraction, the numerator of which is the net rentable area of the Premises, and the denominator of which is the net rentable area of the Building, which is approximately 117,655 RSF as of the Effective Date.

(23)  <u>Rent</u>: All Base Rent and Additional Rent.

(24)  <u>RSF</u>: means the rentable square feet in the Premises, Building or other area in question, as determined by an architect using ANSI/BOMA Standards.

(25)  <u>Security Deposit</u>: None.

(26)  <u>Tenant Improvement Allowance</u>:  Means that amount, if any, set forth in <u>Section 2.3</u>.

(27)  <u>Tenant Improvements</u>:  Means those improvements and alterations Tenant may elect to construct or install in the Premises, subject to the provisions of this Lease.

(28)  <u>Term</u>: Fifteen (15) years (one hundred eighty (180) full months) from the Commencement Date, unless earlier terminated pursuant to the provisions of this Lease.

## 2.   <u>GRANTING CLAUSE; TENDER OF POSSESSION.</u>

2.1   <u>Granting Clause</u>.  In consideration of the Rent reserved and the covenants and agreements herein contained on the part of the Tenant to be observed and performed, and subject to the terms and provisions of the Declaration and Ground Lease, Landlord hereby demises, lets and leases unto Tenant, and Tenant hereby accepts, leases and rents from Landlord, the Premises.

2.2   <u>Tender and Acceptance of Possession</u>.  Landlord hereby tenders, and Tenant hereby accepts, possession of the Premises on the Effective Date.  Tenant hereby accepts the Premises in their "AS-IS" condition, and Landlord shall have no obligation to perform any work therein (including demolition of any improvements existing therein or construction of any tenant finish-work or other improvements therein), and shall not be obligated to reimburse Tenant or provide an allowance for any costs related to the demolition or construction of improvements therein.  Tenant has reviewed, and hereby accepts, the condition and capacity of the Building's existing electrical systems and HVAC.  Tenant acknowledges that Landlord does not have any obligation, express or implied, to modify or increase the capacity of such systems.  Before Tenant may occupy the Premises to conduct its business therein, Tenant shall, at its expense, obtain and deliver to Landlord a certificate of occupancy from the appropriate governmental authority for the Premises.

3.      **RENT.**

3.1     Base Rent.

(1)      This is a pure "net lease," and Base Rent, Additional Rent, Operating Expenses and all other sums payable hereunder by Tenant shall be paid without notice, demand, setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense.  It is intended that the Base Rent provided for in this Lease shall be absolutely net to Landlord throughout the Term, and, accordingly, Tenant covenants and agrees to pay, as they become due and payable and before they become delinquent, all operating and capital expenses in connection with the operation, maintenance, repair, restoration, use or occupation of the Premises including, without limitation, the costs, charges and assessments related to taxes, impositions, utilities and insurance.  Tenant shall pay all such taxes and impositions even though the taxing statue or ordinance may purport to impose such taxes or impositions on Landlord.

(2)      The Base Rent shall be paid by Tenant in monthly installments to Landlord on or before the first day of each calendar month during the Term hereof.  The monthly Base Rent for any fractional month at the beginning or the end of the Term shall be prorated based upon the actual number of days in such month.

(3)      The Base Rent will be adjusted and increased on each anniversary of a Lease Year (the "**Adjustment Date**") by an amount equal to the greater of (i) 103% of then-effective Base Rent (i.e., as it may have been adjusted pursuant to this Section 3.1(3)) and (ii) subject to the limitation set forth below in this Section 3.1(3), any increase in the Consumer Price Index for "All Urban Consumers, U.S. City Average, All Items," issued by the Bureau of Labor Statistics of the United States Department of Labor (the "**Index**").  The adjustments in the Base Rent will be determined by multiplying the then-effective Base Rent (i.e., as it may have been adjusted pursuant to this Section 3.1(3)) by a fraction, the numerator of which is the Index number for the date one month prior to the Adjustment Date and the denominator of which is the Index number for the first month of the first year of the Term.  When the adjusted rent for the Adjustment Date has been determined, Landlord shall give Tenant written notice of such adjusted rent; and, upon adjustment of the rent, any underpayment of rent from the Adjustment Date to the date Tenant is notified of the adjustment shall be immediately due and payable by Tenant.  Landlord's failure or delay to notify Tenant of said rent adjustment shall not constitute a waiver of the right to any adjustment provided for in this Lease.  In the event that the Index shall be discontinued, then Landlord shall use an index substantially similar to the Index to calculate future adjustments.  Notwithstanding any other provision of this Section 3.1(3) to the contrary, the Base Rent in any Lease Year shall not increase by more than five percent (5%) of the Base Rent in the immediately preceding Lease Year.

(4)      Landlord and Tenant are knowledgeable and experienced in commercial transactions and agree that the provisions of this Lease for determining charges, amounts, Operating Expenses and Additional Rent are commercially reasonable and valid even though such methods may not state a precise mathematical formula for determining such charges.  ACCORDINGLY, TENANT VOLUNTARILY AND KNOWINGLY WAIVES ALL RIGHTS AND BENEFITS OF TENANT UNDER SECTION 93.012 OF THE TEXAS PROPERTY CODE, AS IT MAY BE AMENDED OR REPLACED.

3.2    Operating Expenses.

(1)    Tenant's Pro Rata Share of Operating Expenses for the remainder of the calendar year after the Commencement Date and for each subsequent calendar year shall be estimated by Landlord, and written notice thereof shall be given to Tenant. Upon receipt of said written notice from Landlord, the estimated Operating Expenses shall be due and payable as herein provided. For any such remainder of the calendar year after the Commencement Date, Tenant agrees to pay Landlord each month, at the same time the Base Rent Payment is due, an amount equal to the amount of such estimated monthly Pro Rata Share of Operating Expenses for the remainder of such calendar year; and during each calendar year thereafter Tenant agrees to pay Landlord each month, at the same time the Base Rent Payments are due, an amount equal to one-twelfth (1/12th) of the estimated annual Pro Rata Share of Operating Expenses due.

(2)    If any portion of Operating Expenses increase during a calendar year, Landlord may revise the estimated Operating Expenses during such year by giving Tenant written notice to that effect, and thereafter Tenant agrees to pay Landlord, in each of the remaining months of such calendar year, an additional amount equal to the amount of such annual increase in the estimated Pro Rata Share of Operating Expenses divided by the number of months remaining in such calendar year.

(3)    After the end of each calendar year, Landlord shall prepare and deliver to Tenant a statement showing Tenant's Pro Rata Share of the total amount of Operating Expenses. Within ten (10) days after receipt of the aforementioned statement, Tenant agrees to pay Landlord the remaining amount owed by Tenant. However, if Tenant has paid more than its Pro Rata Share of the actual Operating Expenses, Landlord shall either pay the amount of such excess to Tenant within ten (10) days after delivery of the aforementioned statement, or, at Landlord's option, apply such excess to any sums due or to become due from Tenant to Landlord.

(4)    Notwithstanding anything herein to the contrary, in no event will the Base Rent provided for in this Lease ever be reduced.

3.3    Payment For Other Services. Tenant agrees to pay Landlord as Additional Rent all charges for any services, goods, or materials furnished at Tenant's request which are not required to be furnished by Landlord under this Lease, immediately upon demand, plus an administrative fee not to exceed five percent (5%) of the cost of the requested services, good or materials.

3.4    Late Charge. If Landlord does not receive any payment due on or before the 5th day of the calendar month when such payment is due, the Late Charge shall be due and payable (in addition thereto). Said Late Charge is for the purpose of reimbursing Landlord for the extra administrative costs and expenses incurred in connection with the handling and processing of such delinquent payment.

3.5    No Offsets or Demands.  All Base Rent, Additional Rent and other amounts due from Tenant to Landlord under this Lease shall be paid without notice, demand, offset, abatement or deduction. This Lease and the rights of Landlord and obligations of Tenant hereunder shall not be affected by any event or for any reason or cause whatsoever foreseen or unforeseen.  The obligations of Tenant under this Lease shall be separate and independent covenants and agreements and all monetary obligations shall continue to be payable in all events.

4.      **SECURITY DEPOSIT.**  Tenant is not required to make any security deposit in connection with this Lease.

5.      **COMMON AREAS.**

5.1      Parking Facilities and Other Common Areas. During the Term, Tenant shall be entitled to the nonexclusive use (in common with others entitled thereto) of the Common Areas outside the Building designated from time to time by Landlord as the parking areas of the Building.  As of the Effective Date, the parking areas designated by Landlord for use by Tenant are depicted on Exhibit C.  In such parking areas, Tenant shall be entitled to use a number of parking spaces equal to 5 parking spaces for every 1,000 RSF of space in the Premises.  Tenant shall not conduct, solicit business or display or place any signs or advertising on or within the Common Areas, or distribute handbills therein, or take any action which would interfere with the rights of other persons to use the Common Areas.

5.2      Parking Regulations. Tenant understands and agrees that the Declarant shall have the right to maintain and operate lighting facilities on all of the parking areas and to police all of the parking and other Common Areas, including, without limitation, the right to discourage non-tenant parking, to designate and regulate parking areas, and to do and perform such other acts with respect to said Common Areas as in the judgment of the Declarant may be legally necessary to prevent a dedication thereof to the public.

6.      **MAINTENANCE AND REPAIRS.**

6.1      Landlord's Obligations.  As part of the Operating Expenses, Landlord shall maintain or cause to be maintained the elevators, public restrooms and other Common Areas within the Building, the structural elements building systems of the Building (including the HVAC system which serves the Building and the Premises).  Landlord shall, at its own cost and expense, maintain or cause to be maintained the foundation, the exterior walls (but excluding the interior glass or doors that are part of the Premises) and roof of the Building in good condition or repair.  However, if any repair is required by reason of the negligence or intentional misconduct of Tenant or any of its agents, employees, invitees or Affiliates, Landlord may add the cost thereof to the next installment of Rent thereafter coming due, but only to the extent that the cost thereof is not covered by insurance proceeds actually received by Landlord.  Except as herein provided, Landlord shall have no obligation to repair, maintain, alter, replace, or modify the Premises or any part thereof.  Any failure by Landlord to furnish, or delay in furnishing, any maintenance or services that are required of Landlord under this Section or otherwise under this Lease, when such failure is caused by acts of God or any other condition beyond Landlord's reasonable control, shall not constitute a default by Landlord under this Lease and shall not permit Tenant to abate any Rent or relieve Tenant from any of its obligations under this Lease.

6.2      Tenant's Obligations.  Tenant shall maintain the interior of the Premises, including all interior glass and doors that are a part of the Premises and any improvements done by or on behalf of Tenant, in good condition and clean and attractive appearance, performing all janitorial services and making all repairs at its own cost and expense, and using materials and labor of a kind and quality equal to the original work.  Tenant shall maintain the Premises in accordance with all requirements of law, including (without limitation) the Americans with Disabilities Act (as the same may be amended) and similar state or local laws, rules or regulations.  At the expiration or earlier termination of this Lease, Tenant shall surrender the Premises in a broom clean condition and otherwise in the same condition as received by Tenant on the Commencement Date upon initial completion of the interior improvements, reasonable wear and tear excepted.  If Tenant shall neglect and/or fail to observe, keep or perform any of its obligations to maintain and repair and Premises in the time and manner provided in this Article and if such neglect and/or failure shall continue for ten (10) days after notice thereof, Landlord shall have the right to perform said maintenance and repairs.  In the event Landlord does so perform Tenant's responsibilities for said

maintenance and repairs, Landlord shall furnish Tenant a statement of the actual cost thereof, plus an administration fee not to exceed ten percent (10%) of the actual costs, which statement shall be immediately payable by Tenant.  All alterations and modifications of or to the Premises shall be in accordance with the terms and provisions of <u>Section 11.2</u> below.

7.      <u>**TAXES ON TENANT'S PROPERTY.**</u>

Tenant shall be responsible for and shall pay, before same becomes delinquent, all federal, state, county, and local taxes levied or assessed upon any and all personal property of any kind owned by or placed in, on or about the Premises by Tenant during the Term, and all taxes and assessments on trade fixtures, furniture, and all sales, excise and other taxes on Tenant's business shall be paid entirely by Tenant. If any such taxes for which Tenant is liable are levied or assessed against Landlord or Landlord's property, or if the assessed value of Landlord's property is increased by inclusion of personal property, furniture or fixtures placed by Tenant in the Premises, Tenant shall pay to Landlord upon demand that part of such taxes for which Tenant is primarily liable hereunder.

8.      <u>**INSURANCE.**</u>

8.1      <u>Hold Harmless</u>. Tenant covenants and agrees to indemnify and save each of Landlord, and Landlord's members, managers, partners, agents, employees and representatives, harmless from and against any and all costs, liability or expense arising out of any claims of any person or persons on account of any occurrence in, upon or at the Premises, resulting from the occupancy or use thereof by Tenant, or by any person or persons holding or using the Premises thereunder, occasioned in whole or in part by reason of the improper and/or lack of control and supervision throughout the Common Areas of property owned or controlled by Tenant, or by reason of the use or misuse of the parking area or any other Common Areas by Tenant or by any person or persons holding or using the Premises, or any part thereof, under Tenant, including without limitation, Tenant's clients, invites, agents, contractors, employees, servants, subtenants, assignees or licensees, and without limiting the generality of the foregoing, Tenant further covenants and agrees to indemnify and save each of Landlord and Landlord's partners, agents, employees and representatives harmless from and against any penalty, damage or charge incurred or imposed by reason of any violation of law or ordinance by Tenant or any person or persons holding under Tenant and from any cost, damage or expense arising out of the death of or injury to any person or persons holding under Tenant and from any cost, damage or expense arising out of the death of or injury to any person or persons holding under Tenant. In case any action or claim to which Landlord (or Landlord's partners, members, managers, agents, employees or representatives) are entitled to indemnification shall be brought or asserted in any way against Landlord (or Landlord's members, managers, partners, agents, employees or representatives) or Tenant, Tenant shall immediately notify Landlord of the same and shall furnish Landlord with all relative information. Landlord shall be entitled, at Tenant's expense, to participate in, and to the extent that it wishes, to assume the defense thereof.

8.2      <u>Tenant's Liability Insurance</u>. Tenant agrees to maintain in force during the Term a policy or policies of comprehensive public liability insurance, including property damage, written by one or more responsible insurance companies approved by Landlord and licensed to do business in Texas, which insurance companies shall be rated not less than X by Best Guide Rating, insuring Tenant and naming as additional named insureds, Landlord, Landlord's property management company as agent, each Mortgagee and such other persons, firms, or corporations as are designated by Landlord, against loss of life, bodily injury and property damages in which the limit of public liability shall be not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000.00) single limit bodily injury and in which the limit of property damage liability shall be not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000.00) and an umbrella coverage of not less than TWO MILLION AND NO/100 DOLLARS ($2,000,000.00). Additionally, Tenant shall maintain a comprehensive automobile liability insurance policy of ONE

HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00). Each such policy shall be non-cancellable for any cause without first giving Landlord thirty (30) days prior written notice. Subject to all of the foregoing, the insurance coverage required to be furnished by Tenant pursuant to this Section may be in the form of a blanket policy covering all of Tenant's operations.

8.3     Tenant's Fire Insurance. Tenant agrees to maintain in force during the Term a policy or policies of fire and extended coverage insurance in the case of fire sprinkler leakage, malicious mischief, vandalism and other extended coverage perils, for the full insurable replacement value of all additions and of all office furniture, office equipment, merchandise, and other items of Tenants' property within or on the Premises.  Coverage in this paragraph shall be in an amount not less than one hundred percent (100%) of the replacement costs of Tenant's improvements to the Premises.

8.4     Tenant's Workers Compensation. If required by law, Tenant agrees to maintain in force during the Term workers compensation and employers liability insurance with a waiver or subrogation endorsement, in a form and amount satisfactory to Landlord.

8.5     Evidence of Insurance. A copy of each such policy or a certificate of such insurance required to be maintained by Tenant shall be delivered to Landlord upon the Commencement Date of this Lease and annually thereafter upon the first day of each Lease Year throughout the Term. If Tenant fails to procure said insurance or deliver to Landlord, such evidence thereof, Landlord may procure same and Tenant shall reimburse Landlord for the cost thereof plus an administrative fee not to exceed ten percent (10%) of the actual cost immediately upon demand.

8.6     Landlord's Liability Insurance. Landlord agrees to maintain in force during the Term a policy or policies of comprehensive public liability insurance, including property damage, written by one or more responsible insurance companies licensed to do business in Texas and insuring Landlord against loss of life, bodily injury and/or property damage with respect to the operation of the Building, the policy limits of which to be in amount satisfactory to Landlord. In addition, Landlord may maintain in force such umbrella policy or policies of public liability insurance as Landlord, in its sole discretion, may deem appropriate. Landlord's failure to procure any such insurance shall not invalidate this Lease or lessen Tenant's liability hereunder.  Landlord's insurance hereunder shall include loss of rent coverage.

8.7     Landlord's Fire Insurance. Landlord agrees to procure and keep in effect during the Term a policy or policies of fire and extended coverage insurance covering the Building, including rent abatement, vandalism and malicious mischief coverage, written by an insurance company authorized to do business within the State of Texas, and in an amount at the full replacement cash of the Building.  Such insurance shall provide protection against losses so insured against for the sole and exclusive benefit of Landlord. The full amount of any proceeds payable thereunder shall be payable to Landlord, and Tenant shall not be entitled to, and shall have no interest in, such proceeds or any part thereof. Tenant is advised to procure such insurance as Tenant deems appropriate to protect its interest.

8.8     Waiver of Subrogation. To the extent permitted by the laws and insurance regulations of the State of Texas, the respective parties hereto hereby waive and release any and all claims, demands and causes of action which each might have against the other party, either for damage to or loss of any part of the Premises or of any adjoining premises belonging to Landlord, arising from perils ordinarily insured against under a standard fire and extended coverage insurance policy issued in the State of Texas, regardless of whether such damage or loss is occasioned by the negligence of the respective parties, or either of them, their agents, servants or employees.

9

9.      <u>**UTILITIES AND SERVICES.**</u>

Provided Tenant is not in default of any term, condition or covenant of this Lease, Landlord agrees to furnish or cause to be furnished to the Premises gas, water (for drinking, cleaning and lavatory purposes only), and electricity during the Term. Landlord shall furnish tempered and refrigerated water at those points of supply designated by Landlord in the Common Areas of the Building, heated and refrigerated air conditioning in season (at temperatures, in amounts and at times considered by Landlord to be standard or in compliance with any governmental regulations; such service after hours, on Saturday afternoons, Sundays and holidays will be furnished only upon 24 hours' prior written request of Tenant who shall bear the entire cost thereof). Landlord shall furnish janitorial service, in the manner and to the extent deemed standard by Landlord during the periods and hours as such services are normally furnished to all tenants. Tenant shall not hinder the work of the Building janitor. Landlord shall furnish routine maintenance, painting and lighting service for all Common Areas within the Building in the manner and to the extent deemed by Landlord to be standard. Tenant will pay all telephone charges. Landlord shall not be liable in damages or otherwise for failure, stoppage or interruption of any such service nor shall the same be construed as an eviction of Tenant, work an abatement of Rent, or relieve Tenant from the operation of any covenant or agreement set forth herein; but in the event of any failure, stoppage or interruption thereof not caused by Tenant or Tenant's agents, employees, contractors, clients or invites, Landlord shall use reasonable diligence to resume service promptly.

Landlord reserves the right to separately meter usage of any utility service included in Operating Expenses and charge Tenant and other tenants of the Building based on such usage.  Further, Landlord reserves the right from time to time to charge to Tenant and other tenants of the Building applicable costs with respect to usage of Building services and utilities at times other than during standard business hours, on such basis as Landlord may reasonably determine for the purpose of properly allocating the costs of such services and utilities in accordance with the usage thereof.

Notwithstanding anything hereinabove to the contrary, Landlord reserves the right from time to time to make reasonable modifications to the above standards for services and utilities.

10.     <u>**INTENTIONALLY DELETED**</u>.

11.     <u>**PROPERTY OBLIGATIONS.**</u>

11.1     <u>Tenant's Property</u>. Landlord shall not be liable for any damage to or loss of personal property placed in or about the Premises by Tenant or Tenant's agents, employees, clients, guests, invites or others, resulting from fire, theft, explosion, flood, windstorm or other casualty caused by Acts of God or by the acts or omissions of other occupants of other space in the Building or caused by operations during construction of any public or quasi public work. All property kept or stored within the Premises shall be kept or stored at the risk of Tenant only, and Tenant shall hold Landlord harmless from any claims arising out of damage to the same, including subrogation claims by Tenant's insurer, if any, unless such damage shall be caused by the gross negligence of Landlord.

11.2     <u>Tenant Fixtures, Alterations and Personal Property</u>. Tenant shall not make or allow to be made any alterations, modifications or physical additions in or to the Premises without the prior written consent of Landlord which consent shall not be unreasonably withheld or delayed.  Tenant may proceed with the construction of the approved alterations, modifications or physical additions, but only so long as they are in strict compliance with the plans and specifications and with the provisions of this <u>Section 11.2</u>. All alterations shall be made at Tenant's expense, either by Tenant's contractors, which previously have been approved in writing by Landlord, or at Landlord's option, by Landlord's contractors on terms reasonably satisfactory to Tenant, including a fee of five percent (5%) of Landlord's actual cost of the work

10

to cover Landlord's overhead. None of Tenant's construction, alterations, modifications or physical additions shall (i) alter the exterior appearance of the Building or Premises in any manner, (ii) adversely affect the structure or safety of the Building or Premises or any portion thereof, (iii) fail to comply with all building, safety, fire and other codes and governmental and insurance requirements, or (iv) fail to be completed promptly and in a good and workmanlike manner. All trade fixtures installed by Tenant shall be new or completely reconditioned. At Landlord's option, any such approved additions, alterations, modifications, improvements and/or fixtures furnished or installed by Tenant which are sufficiently affixed or annexed to the Premises so as to become a part thereof, other than unaffixed movable trade fixtures, shall upon the expiration or earlier termination of this Lease, become the property of Landlord.  Any damage to the Premises caused by such installation and/or removal of Tenant's fixtures and equipment shall be repaired at Tenant's sole cost and expense. The provisions of this Section shall expressly survive the expiration or earlier termination of this Lease.

11.3    Liens. Tenant shall neither permit nor suffer an involuntary lien to be filed or affixed against the Building, the Premises, the fee simple title of the Land or Landlord's leasehold estate therein, or any part thereof, and shall not voluntarily grant any lien or security interest therein. In the event any such involuntary or voluntary lien, including without limitation, mechanic's lien or tax lien, is filed and/or affixed against the Building, the Premises the fee simple title of the Land or Landlord's leasehold estate therein, or any part thereof, or against any fixtures, equipment, furnishings therein or all types of work and improvements comprising the Interior of the Premises and Tenant has not caused the same to be released and discharged of record within ten (10) days after notice thereof, same shall constitute a default hereunder. Upon such default, in addition to any other remedies available to Landlord herein, Landlord may cause the release and discharge of such lien, Tenant shall repay to Landlord immediately upon demand as Additional Rent hereunder all such sums disbursed or deposited by Landlord plus an administrative fee not to exceed five percent (5%) of the sums disbursed or deposited. Nothing contained herein, however, shall imply any consent or agreement on the part of Landlord or anyone holding under Landlord to subject Landlord's interest to liability under any mechanic's or other lien law, regardless of whether the performance or the furnishing of such work, labor, services or materials to Tenant or anyone holding under Tenant shall have been consented to by Landlord.

## 12.    **SUBORDINATION/ATTORNMENT.**

12.1    Subordination. Tenant covenants and agrees promptly upon request of Landlord to execute and deliver, in a recordable form provided by Landlord, an acknowledgment of the subordination of this Lease to any mortgage, deed of trust, security agreement or other lien or encumbrance resulting from any method of financing or refinancing, presently or henceforth placed upon the Landlord's leasehold estate in the Land and/or fee interest in the Building and any future expansion thereof or additions thereto, and to all advances of money or other value heretofore or hereafter made upon the security thereof.  Notwithstanding anything to the contrary contained herein, Landlord agrees to obtain a subordination, non-disturbance and attornment agreement ("**SNDA**") from its current lender in a form reasonably acceptable to Tenant which shall provide, among other things, that this Lease shall be recognized and Tenant's rights and occupancy under this Lease shall not be disturbed in the event Tenant is not in default hereunder beyond any applicable notice and cure periods.  In addition, Tenant shall not be required to subordinate its rights under this Lease to the interest of any future lender unless Landlord has first delivered an SNDA to Tenant executed by such future lender in a form reasonable acceptable to Tenant and containing a similar non-disturbance right.

12.2    Collateral Assignment by Landlord. Subject to the foregoing provisions of this Article, Landlord reserves the right, without notice to or consent of Tenant, to assign this Lease and/or any and all Rent hereunder as security for the payment of any mortgage loan, deed of trust loan, or other method of financing or refinancing.

12.3    <u>Attornment</u>. In the event any such mortgage is foreclosed, or in the event of the exercise of the power of sale under any such deed of trust, Tenant shall consider the purchaser at the foreclosure trustee's sale to be the Landlord hereunder, and Tenant will attorn to the purchaser and will recognize the purchaser as the owner and Landlord under this Lease.

## 13.    <u>USE AND OPERATION.</u>

13.1    <u>Use of Premises</u>. The Premises shall be used and occupied by Tenant solely for the Permitted Use and Tenant expressly agrees that no use shall be made or permitted or acts done by Tenant and/or any agents, employees, subtenants, or assignees of Tenant, which shall increase the existing rate of insurance coverage or cause cancellation of such insurance coverage. Tenant shall not (i) permit any objectionable or unpleasant odors to emanate from the Premises; nor place or permit any radio, television, loudspeaker or amplifier on the roof or outside of the Premises or where the same can be seen or heard from outside the Premises; (ii) place any antenna, awning or other projection on the exterior of the Premises; (iii) take any other action which would constitute a nuisance or would disturb or endanger other tenants of the Building or unreasonably interfere with their use of their respective premises; or (iv) do anything which would tend to injure the reputation of the Building.  Tenant shall at all times comply with all terms and provisions of the Ground Lease and Declaration applicable to Tenant, or Tenant's use of the Premises and Common Areas.

13.2    <u>Suitability of Premises</u>. Tenant warrants to Landlord that it has, prior to the execution hereof, fully inspected the Building, the Common Areas, the property and all items related thereto, and that Tenant has made, performed, obtained and received all studies, inspections, reports, diagnoses and tests that Tenant desires relative to the Building, the Common Areas, the property and all items related thereto and Tenant's proposed business use of the Premises. Tenant further warrants to Landlord that Tenant has inspected, or will thoroughly inspect, the Plans and Specifications agreed and to be agreed with Landlord for Landlord's construction of the shell of the Premises and will be fully satisfied with such inspections and Plans and Specifications for the Premises. Tenant understands and agrees that Tenant is accepting the Building, the Common Areas, the property and all items related thereto, and will be accepting the Premises, in their "AS-IS", "WHERE-IS" condition, "WITH ALL FAULTS" and without any warranty or guarantee whatsoever.  Tenant warrants that it used or will use all due diligence in conducting all studies inspections, diagnoses and tests on the Premises the Building, the Common Areas, the property and all items related thereto that Tenant deemed necessary or appropriate. Tenant acknowledges that Landlord has not made and does not make, and Landlord hereby disclaims, any and all warranties, express or implied, which in any way relate to the Premises the Building, the Common Areas, the property and all items related thereto or the condition thereof, including without limitation any implied warranty of suitability or habitability. Tenant further understands that Landlord has relied and will rely upon Tenant's having made all inspections Tenant desired, and that but for such inspections by Tenant, Landlord would not have leased the Premises to Tenant. Additionally, the parties agree that the obligation of Tenant to pay all Rent and other sums hereunder provided to be paid by Tenant, and the obligation of Landlord to perform Landlord's other covenants and duties hereunder, constitutes independent, separate and unconditional obligations to be performed at all times provided for hereunder, save and except only when an abatement thereof or reduction therein is expressly provided for herein and not otherwise. It is agreed that in the event Landlord commences any proceedings against Tenant for nonpayment of Rent or any other sum due and payable by Tenant hereunder, Tenant shall not interpose any counterclaim or other claim against Landlord of whatever nature or description in any such proceedings; and in the event Tenant interposes any such counterclaim or other claim against Landlord in any such proceeding, Landlord and Tenant stipulate and agree that, in addition to any other lawful remedy of Landlord, upon motion of Landlord, such counterclaim or other claim asserted by Tenant shall be severed out of the proceedings instituted by Landlord and Landlord may proceed to final judgment separately and apart from and without consolidation with or reference to the status of such counterclaim or any other claim asserted by Tenant.

14. **HAZARDOUS MATERIALS.**

14.1     Tenant, and all of Tenant's partners, officers, directors, employees, representatives, agents, contractors, subcontractors, successors, assigns, lessees, sublessees, concessionaires, invitees and any other occupants of the Premises (collectively, "**Tenant's Representatives**"), shall abide by all Federal, state and local statutes, ordinances, codes and regulations, now existing or hereinafter enacted (collectively, "**Hazardous Materials Laws**"), governing the use, handling, depositing or disposal of hazardous or toxic substances, and medical wastes (collectively, "**Hazardous Materials**").  Landlord has no obligation to provide or make provision for disposal facilities for Hazardous Materials or other medical wastes, and Tenant shall not deposit or dispose of any Hazardous Materials or other medical wastes into the general waste disposal facilities provided by Landlord.  Tenant shall, at Tenant's expense, employ or engage private waste management services to dispose of any and all waste of Tenant which must be handled in any manner other than general waste collection provided by Landlord through public or private waste collection service.  Landlord may direct the manner of disposal and location of any containers, collection boxes or other storage facilities, which may be required by Hazardous Materials Laws.

14.2     The term "**Hazardous Materials**" shall not include (i) pharmaceuticals, cleaning agents of the types and in the quantities and concentrations normally stocked by health care providers located in medical office buildings similar to the Building, (b) oil in the minimal amounts typically associated with the use of certain portions of the Building for driving and parking motor vehicles or (c) medical wastes generated at the Building; however, Tenant shall use, store, transport and dispose of the foregoing in accordance with all laws including (without limitation) all Hazardous Materials Laws.

14.3     Tenant shall indemnify, defend and hold harmless Landlord, the "**Hospital**" and the holder ("**Mortgagee**") of any mortgage encumbering all or any portion of the Building or the real property upon which the Building is situated or Landlord's leasehold estate in the Land ("**Mortgage**"), and their respective members, managers, partners, shareholders, directors, officers, agents and employees (all collectively referred to as the "**Indemnified Parties**") from and against any and all costs, expenses and claims arising from or in connection with any act, omission or negligence of Tenant or any Tenant's Representatives relating to or arising out of the use, handling, depositing or disposal of Hazardous Materials with respect to the Premises or the Building, such indemnity to include all costs, expenses and liabilities associated with the remediation thereof or incurred in connection with each claim, action or proceeding with respect thereto, including, without limitation, all attorney's fees and expenses.

14.4     Tenant shall immediately notify Landlord in writing of:  (i) any enforcement, clean-up, removal or other governmental or regulatory action instituted, contemplated or threatened concerning the Premises pursuant to any Hazardous Materials Laws; (ii) any claim made or threatened by any person against Tenant or the Premises relating to damage contribution, cost recovery, compensation, loss or injury resulting from or claimed to result from any Hazardous Materials on or about the Premises; and (iii) any reports made to any environmental agency arising out of or in connection with any Hazardous Materials in or removed from the Premises, including any complaints, notices, warnings or asserted violations in connection therewith, all upon receipt by Tenant of actual knowledge of any of the foregoing matters.  Tenant shall also supply to Landlord a promptly as possible and in any event within five (5) business days after Tenant first receives or sends the same, copies of all claims, reports, complaints, notices, warnings or asserted violations relating to Hazardous Materials associated with the Premises.

14.5     Without limiting any other provision of this Lease, Tenant shall not create or permit to exist in or about the Premises any "**Mold Condition**" unless caused by Landlord.  As used herein, the term Mold Condition shall include the presence or suspected presence of "**Mold**" or any condition(s) that reasonably can be expected to give rise to or indicate the presence of Mold, including observed or suspected instances of water damage or intrusion, the presence of wet or damp wood, cellular wallboard, floor

coverings or other materials, inappropriate climate control, discoloration of walls, ceilings or floors, complaints of respiratory ailment or eye irritation by Tenant's employees or any other occupants or invitees in the Premises, or any notice from a governmental agency of complaints regarding the indoor air quality at the Premises.  As used herein, the term Mold shall include mold, mildew, fungus or other potentially dangerous organisms.  In the event of suspected or actual Mold or Mold Conditions at the Premises, Tenant shall immediately notify Landlord in writing of the same and the precise location thereof.  Tenant acknowledges the control of moisture and Mold prevention are material obligations of Tenant under this Lease, and Tenant shall, at its sole costs and expense, regularly monitor the Premises for the presence of Mold and Mold Conditions.  If any Mold or Mold Conditions in or about the Premises are a result of the actions or omissions of Tenant or any Tenant's Representatives, Tenant shall promptly, at Tenant's sole cost and expense, hire a licensed and experienced Mold remediation contractor to completely clean-up and remove from the Premises all Mold or Mold Conditions.  All such clean-up, removal and remediation shall, in each instance, be conducted to the satisfaction of Landlord and any governmental authority with jurisdiction and otherwise in strict compliance with all applicable laws.  Such clean-up, removal and remediation shall also include removal and replacement of any infected host materials as well as any repairs and refinishing required as the result of such removal and replacement.  There shall be no abatement of Rent on account of any clean-up, removal or remediation of any such Mold or Mold Condition.  Tenant waives, releases and discharges Landlord and all Indemnified Parties for, from and against all claims, demands, causes of action, suits, judgments, liabilities, losses, damages and expenses (including attorneys' fees) for personal injury, bodily injury or property damages in any way arising from or relating to or associated with moisture or the growth of or the presence of Mold or Mold Conditions.

## 15. ASSIGNING, MORTGAGING, SUBLETTING.

15.1    Prohibitions.  Except as otherwise permitted pursuant to Section 15.1 or 15.2, Tenant shall not (i) transfer, assign or hypothecate this Lease, (ii) sublet any portion of the Premises, (iii) enter into any license, concession or other right of occupancy of any portion of the Premises, (iv) permit any other entity to become Tenant hereunder by merger, consolidation, or other reorganization, (v) if Tenant is an entity other than a corporation whose stock is publicly traded, permit the transfer of an ownership interest in Tenant that results in a Material Change in Ownership (defined below) (each, a "**Transfer**"), without first procuring the written consent of the Landlord, which consent may not be unreasonably withheld or delayed.  Any Transfer, whether voluntary or involuntary, by operation of the law or otherwise, without the prior written consent of Landlord first had and obtained therefor, shall be null and void, at the option of Landlord, and Landlord may declare a default and exercise all remedies available to Landlord under this Lease or at law.  Notwithstanding the foregoing provisions of this Section 15.1 to the contrary, Tenant may sublet the Premises to Professionals and/or Physicians associated with the Hospital.

15.2    Material Change in Ownership.  If Tenant is an entity of any type, then the sale, transfer or other change of 49.9% or greater of the ownership interests of Tenant shall constitute a "**Material Change in Ownership**", in which event Landlord shall consent to the resulting Transfer provided that Tenant provides to Landlord (i) at least thirty (30) days' prior written notice of such anticipated Material Change in Ownership, (ii) all relevant details of the proposed Material Change in Ownership, including updated financial statements reflecting the financial condition of the proposed assignee post Material Change in Ownership ("**Post Material Change in Ownership Financial Statements**"), and (iii) the Post Material Change in Ownership Financial Statements reflecting a minimum Tangible Net Worth of $150,000,000.  As used herein, "**Tangible Net Worth**" means the excess of total assets over total liabilities, in each case as determined in accordance with generally accepted accounting principles consistently applied ("**GAAP**"), excluding, however, from the determination of total assets all assets that would be classified as intangible assets under GAAP including, goodwill, licenses, patents, trademarks, trade names, copyrights, and franchises.

14

15.3    <u>Liability; Release</u>.  Tenant shall not be released from any liability or obligation under this Lease as a result of any Transfer or Landlord's consent to any Transfer; provided, however, if (i) Landlord consents to a proposed Transfer that would occur as a result of (A) any other entity becoming Tenant hereunder by merger, consolidation, or other reorganization, (B) any transfer of an ownership interest in Tenant that results in a Material Change in Ownership or (C) any assignment of this Lease for the remainder of the Term, and (ii) the entity comprising Tenant after such Transfer has a Tangible Net Worth together with any new guarantor that is equal to or greater than (1) the aggregate Tangible Net Worth of Tenant and Guarantor at the time of this Lease and (2) a minimum Tangible Net Worth of $150,000,000, then Tenant shall be released from further liability under this Lease for the unexpired Term following such Transfer. Tenant shall provide to Landlord any information reasonably requested by Landlord to evaluate the satisfaction of any Tangible Net Worth requirements contemplated in this Section 15.

15.4    <u>Conditions to Consent</u>. Landlord may condition its consent to any assignment or subletting (i) upon Tenant's agreement to termination of this Lease and simultaneous creation of a new lease between Landlord and the proposed successor, or (ii) upon Tenant's agreement simultaneously with the execution of any sublease or assignment approved by Landlord, to name Landlord its agent for purposes of collection of rental from the subtenant approved by Landlord under any such sublease or assignment (in order to enable Landlord to maintain its collection and other relationships).

15.5    <u>Transactions Consented To</u>. Each Transfer to which there has been consent shall be by an instrument in writing in form satisfactory to Landlord and shall be executed by the transferor, assignor, sublandlord, licensor, concessionaire, hypothecator or mortgagor and the transferee, assignee, subtenant, licensee concessionaire or mortgagee in each instance, as the case may be, and each transferee, assignee, subtenant, licensee, concessionaire or mortgagee shall agree in writing for the benefit of the Landlord herein to assume, to be bound by, and to perform the terms, covenants and conditions of this Lease to be done, kept and performed by the Tenant. One (or more, if required by Landlord) executed copy of such written instrument shall be delivered to Landlord.  Failure to first obtain in writing Landlord's consent or failure to comply with the provisions of this Article shall operate to prevent any such transfer, assignment, subletting, license, concession agreement or hypothecation from becoming effective.

16.    **<u>WASTE, NUISANCE, APPLICABLE LAWS.</u>**

16.1    <u>Waste and Nuisance</u>. Tenant shall not commit or suffer to be committed any waste in or upon the Premises and shall not commit or suffer to be committed therein any nuisance or other act or thing which may disturb the quiet enjoyment of any other tenant in the Building, or which may disturb the quiet enjoyment of any person within the immediate vicinity of the Building.

16.2    <u>Tenant's Compliance with Laws</u>. Tenant shall, at Tenant's sole cost and expense, comply with all the requirements of all federal, state, county, municipal and other applicable authorities, now in force or which may hereafter be in force in connection with Tenant's use of the Premises.

17.    **<u>DESTRUCTION.</u>**

17.1    <u>Notice of Loss</u>. Tenant shall give immediate notice to Landlord in the event of fire or other accidents or casualties within the Premises or in or around the Building, and such other notice as prescribed by the fire and extended coverage insurance policy required herein to be carried thereon, and further, Tenant shall give immediate notice to Landlord of any defect in any of the fixtures or equipment located within the Premises or in or around the Building.

17.2    <u>Premises Useable</u>. In the event the Premises shall be damaged by fire or other casualty, but shall not be rendered wholly or partially unusable, regardless of the time remaining in the Term, Landlord

shall cause such damage to be repaired, and the Base Rent shall not be reduced or abated unless the repairs are delayed beyond ninety (90) days after commencement of such repairs, and thereafter, only if Landlord is not diligently pursuing such repairs, and then only to the extent as may be equitable based upon the amount of damage.

17.3    Premises Unusable. If the Premises shall be rendered partially or wholly unusable, Landlord shall cause such damage to be repaired and the Base Rent shall be reduced in proportion to Tenant's loss of effective use of the Premises during such repair.

17.4    Building Damaged. In the event all or part of the Building, other than the Premises, shall be damaged or destroyed by fire or other casualty, and regardless of the time remaining in the Term, Landlord shall cause such damage to be repaired. Neither Base Rent nor any other sums due hereunder shall be abated or reduced.

17.5    Scope of Repair. In the event Landlord elects or shall be obligated to repair or restore any damage or destruction as aforesaid, the scope of the work shall be limited to the shell of the Building and Lease Premises. Landlord shall not be required to make repairs or replacements of any panels, decoration, trade fixtures, railings, floor covering, partitions or other parts of the Interior of the Premises or any other property installed or placed in the Premises by Tenant.

17.6    Commencement of Repairs.  Anything to the contrary herein notwithstanding, Landlord shall not be required to commence repairs and/or restoration prior to the expiration of sixty (60) days following the occurrence or the receipt by Landlord of the insurance proceeds covering said damage, whichever event shall first occur.

## 18.    CONDEMNATION.

18.1    Total Taking. If all of the Premises should be taken for any public or quasi public use under any governmental law, ordinance or regulation or by right of eminent domain or by private purchase in lieu thereof, then this Lease shall terminate and the Rent shall be abated during the unexpired portion of the Term, effective on the date physical possession is taken by the condemning authority.

18.2    Partial Taking. If any part (but not all) of the Building, Common Areas or the Premises should be so taken, Landlord may terminate this Lease if Landlord, in its sole discretion, so elects. Any election to terminate this Lease in accordance with this provision shall be evidenced by written notice of termination to Tenant within thirty (30) days after the date physical possession is taken by the condemning authority. If this Lease is not so terminated, the Base Rent payable hereunder during the unexpired portion of the term shall be reduced in proportion to the area of the Premises taken, effective on the date physical possession is taken by the condemning authority.

18.3    Award.  All compensation awarded for any taking (or the proceeds of private sale in lieu thereof) of the Building, the Premises or the Common Areas shall be the property of Landlord and Tenant hereby assigns its interests in any such award to Landlord

## 19.    QUIET ENJOYMENT.

So long as Tenant shall pay all Rent and other payments due hereunder and shall observe and perform all of the covenants on Tenant's part to be observed and performed hereunder, and Tenant is not in default hereunder (beyond any applicable notice or cure periods), Tenant shall peaceably and quietly hold and enjoy the Premises (including easement rights) for the entire Term hereof without interruption by Landlord or person or persons lawfully or equitably claiming by, through or under Landlord, subject,

nevertheless, to all of the terms and provisions of this Lease and to the reservations, encumbrances and limitations affecting the title to the premises upon which the Building is situated.

**20.    DEFAULT AND REMEDIES.**

20.1    Default. The following events shall be deemed to be the events of default by Tenant under this Lease:

(1)    Tenant shall fail to pay any installment of the Base Rent or any Additional Rent within five (5) business days after receipt of written notice of such failure from Landlord. Notwithstanding the foregoing, Landlord shall not be obligated to provide written notice more than twice in any twelve (12) month period.

(2)    Tenant shall fail to comply with any term, provision or covenant of this Lease, other than the payment of any sums due Landlord, including but not limited to, the Base Rent or any Additional Rent, and Tenant shall not cure such failure within thirty (30) days after written notice thereof of Tenant (or such shorter notice period as may be provided elsewhere in this Lease for specific events of default); provided, however, that if such failure cannot be reasonably cured within thirty (30) days, then Tenant shall have such additional time to cure as is reasonable under the circumstances provided that Tenant diligently continues to pursue such cure.

(3)    An event of default shall occur and remain uncured within the time stated for such cure under any Related Lease.

(4)    Tenant or any guarantor of Tenants' obligations hereunder shall become insolvent in any chapter of the United States Bankruptcy Code, or shall make a transfer in fraud of creditors, or shall make an assignment for the benefit of creditors.

(5)    Tenant or any guarantor shall file a petition under any section or chapter of the United States Bankruptcy Code, or under any similar law or statute of the United States or any state thereof; or Tenant shall be adjudged bankrupt or insolvent as defined in any chapter of the United States Bankruptcy Code in proceedings filed against Tenant or any guarantor of Tenant's obligations under this Lease.

(6)    A receiver or trustee shall be appointed for the Premises or for all or substantially all of the assets of Tenant or any guarantor and such receiver or trustee shall not be discharged within thirty (30) days following such appointment.

(7)    The discovery by Landlord that any financial statement given by Tenant or any of its assignees, subtenants or successors-in-interest, or any guarantor of Tenant's obligations hereunder to Landlord, was materially false.

20.2    Remedies.

(1)    Upon the occurrence of any event of default hereunder, and notwithstanding the fact that the termination or cancellation of this Lease by Landlord may substantially interfere with the ability of Tenant to conduct a non-liquidation proceeding under any chapter of the United States Bankruptcy Code, Landlord shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever.

17

(i)      Terminate this Lease, in which event Tenant shall immediately surrender the Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which Landlord may have for possession or arrearages in Rent, enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying said Premises or any part thereof, without being liable for prosecution or any claim for damages therefor and Tenant agrees to pay Landlord, on demand, the amount of all losses, expenses and damages, including attorneys' fees, which Landlord may suffer by reason of such termination; and/or

(ii)      Enter upon the Premises and correct such default or otherwise do whatever Tenant is obligated to do under the terms of this Lease; and Tenant agrees to pay Landlord, on demand, the amount of all  losses, expenses and damages, including attorneys' fees which Landlord may incur in connection with attempts to effect compliance with Tenant's obligations under this Lease, and Tenant further agrees that Landlord shall not be liable for prosecution or  any claim for damages resulting to Tenant from such action, and/or

(iii)      Enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying said Premises or any part thereof, without being liable for prosecution or any claim for damages therefor, and if Landlord so elects, relet the Premises on such terms as Landlord may deem advisable and receive rental therefor.

Pursuit of any of the foregoing remedies shall not preclude pursuit of any other remedies herein provided or provided by law, or at equity, nor shall pursuit of any other such remedy constitute a forfeiture or waiver of any Rent or other sums due to Landlord hereunder or of any damages accruing to the Landlord by reason of the violation of any of the terms, provisions and covenants herein contained. Forbearance by Landlord to enforce one or more of the remedies herein provided upon an event of default shall not be deemed or construed to constitute a waiver of such default. In determining the amount of loss or damage which Landlord may suffer by reason of termination of this Lease or the deficiency arising by reason of any reletting by Landlord as above provided, allowance shall be made for the expense of repossession and any repairs or remodeling undertaken by Landlord following repossession.

(2)      Exercise by Landlord of any one or more remedies herein granted or otherwise available shall not be deemed to be an acceptance of surrender of the Premises by Tenant, whether by agreement or by operation of law it being understood that such surrender can be effected only by the written agreement of Landlord and Tenant. No removal or other exercise of dominion by Landlord over the property of Tenant or others at the Premises shall be deemed unauthorized or constitute a conversion. Tenant hereby consenting, after any event of default, to the aforesaid exercise of dominion over Tenant's property within the Building. All claims for damages by reason of such reentry and/or repossession and/or alteration of locks or other security devices are hereby waived, as are all claims for damages by reason of any distress warrant, forcible detainer proceedings, sequestration proceedings or other legal process. Tenant agrees that any reentry by Landlord may be pursuant to judgment obtained in forcible detainer proceedings or other legal proceedings, as Landlord may elect and Landlord shall not be liable in trespass or otherwise,(after deducting expenses incurred by Landlord as provided herein). In no event shall Tenant be entitled to any excess of any rental obtained by reletting over and above the Rent herein reserved. Actions to collect amounts due by Tenant as provided in this paragraph may be brought from time to time,

on one or more occasions, without the necessity of Landlord's waiting until expiration of the Lease Term.

(3)     In the event Landlord elects to terminate this Lease by reason of event or default, then notwithstanding such termination, Tenant shall be liable for and shall pay to Landlord, at Landlords Address as defined in <u>Section 1</u> herein, the sum of all Rent, Additional Rent and other indebtedness accrued to the date of such termination, plus, as damages, an amount equal to the present value of the Rent and any and all other sums reserved hereunder for the remaining unexpired portion of the Lease Term (had the Lease not been so terminated by Landlord), less the then present value of the then fair rental value of the Premises.

(4)     In the event Landlord elects to repossess the Premises without terminating the Lease, then Tenant shall be liable for and shall pay to Landlord at Landlords Address as defined in <u>Section 1</u> hereinabove, all Rent and other indebtedness accrued to date of such repossession, plus all Rent and any and all other sums required to be paid by Tenant to Landlord during the remainder of the Lease Term until the date of expiration of the Term, diminished by any net sums thereafter received by Landlord through reletting the Premises during Period (after deducting expenses incurred by Landlord as provided herein). In no event shall Tenant be entitled to any excess of any rental obtained by reletting over and above the Rent herein reserved. Actions to collect amounts due by Tenant as provided in the paragraph may be brought from time to time, on one or more occasions, without necessity of Landlord's waiting until expiration of the Lease Term.

(5)     In the event of termination or repossession of the Premises for an event of default, Landlord shall have an obligation to attempt to relet the Premises, or any portion thereof. However, in the event of reletting Landlord may relet the whole or any portion of the Premises for any period, to any tenant, and for any use and purpose. Should Landlord choose to relet the Premises, or any portion thereof, for the remainder of the Term provided for herein, and if the rental received through reletting does not at least equal the Rent provided for herein, Tenant shall pay and satisfy the deficiency between the amount of the Rent so provided for and that received through reletting, including, but not limited to, the cost of renovating, altering, and decorating for a new occupant. Further, Tenant shall not in any event ever be entitled to any excess rental and other sums provided for herein, and the same shall belong solely to Landlord. Nothing herein shall be construed as in any way denying Landlord the right, in the event of abandonment of said Premises or other breach of this Lease by Tenant, to treat the same as an entire breach and at Landlord's option to terminate this Lease and/or immediately seek recovery for the entire breach of this Lease and any and all damages which Landlord suffers thereby.

(6)     If Tenant should fail to make any payment or cure any default hereunder within the time herein permitted, Landlord, without being under any obligation to do so and without thereby waiving such default, may make such payment and/or remedy such other default for the account of Tenant (and enter the Premises for such purpose), and thereupon Tenant shall be obligated and hereby agrees, to pay Landlord, upon demand, all costs, expenses and disbursements (including reasonable attorneys' fees) incurred by Landlord in taking such remedial action.

(7)     In the event of the breach or the attempted or threatened breach of any covenant or provision contained in this Lease by Tenant, Landlord shall have, in addition to all other remedies provided it hereunder or by law or at equity, the right to obtain an injunction prohibiting such breach or attempted breach without the necessity for proof of inadequacy of legal remedy, irreparable harm or probable right of recovery.

20.3    Expenses/Attorneys' Fees. In the case of an event of default hereunder, Tenant shall also be liable for and shall pay to Landlord, at Landlords Address as defined in <u>Section 1</u> herein, in addition to any sum provided to be paid above: broker's fees incurred by Landlord in connection with reletting the whole or any part of the Premises; the costs of removing and storing Tenant's or other occupant's property; the costs of repairing, altering, remodeling or otherwise putting the Premises into condition acceptable to a new tenant or tenants, and all reasonable expenses incurred by Landlord in enforcing Landlord's rights or remedies, including reasonable attorneys' fees and court costs until the expiration of the Term.  Tenant shall permit the Landlord to exhibit the Premises to prospective tenants and to place notices upon the Premises advertising "For Lease".  Landlord may at any time, exhibit the Premises to prospective purchasers. and place notices, upon the Building or the Premises advertising "For Sale."

20.4    <u>Landlord's Breach</u>.  In the event of any default by Landlord, Tenant's exclusive remedy shall be an action for damages (Tenant hereby waiving the benefit of any laws granting it a lien upon the property of Landlord and/or upon rental due Landlord), but prior to any such action Tenant will give Landlord written notice specifying such default with particularity, and Landlord shall thereupon have thirty (30) days in which to cure any such default. Unless and until Landlord fails to so cure any default after such notice, Tenant shall not have any remedy or cause of action by reason thereof. All obligations of Landlord hereunder will be construed as covenants, not conditions; and all such obligations will be binding upon Landlord only during the period of its possession of the Building and not thereafter.

20.5    <u>Limitation on Landlord's Personal Liability</u>. Tenant specifically agrees to look solely to Landlord's interest in the Building for the recovery for any judgment from Landlord, it being agreed that Landlord, its agents, employees, shareholders, officers, directors, and limited partners, shall never be personally liable hereunder for anything whatsoever.

## 21.    ACCESS.

Landlord or its agents shall have the right to enter the Premises at all reasonable times, and whenever necessary because of emergencies, to inspect the same, and to make such repairs, replacements, alterations, improvements or additions as Landlord may deem necessary or desirable, including alterations, repairs, improvements or additions to the space adjacent to Premises and/or to the Building, without the same constituting an eviction of Tenant in whole or in part, and the Rent reserved shall in no way abate while said repairs, replacements, alterations, improvements or additions are being made, by reason of loss or interruption of Tenant's business or otherwise. During the ninety (90) days prior to the expiration of the Term, Tenant shall permit the Landlord to exhibit the Premises to prospective tenants and to place notices upon the Premises advertising "For Lease".  Landlord may, at any time, exhibit the Premises to prospective purchasers, and place notices, upon the Building or the Premises advertising "For Sale."

## 22.    SURRENDER AND REMOVAL OF PROPERTY.

22.1    <u>Surrender of Premises</u>. Promptly upon the expiration or earlier termination of the Term, Tenant shall surrender the Premises in the same condition as received by Tenant on the Commencement Date reasonable wear and tear and damage by unavoidable casualty or Act of God only excepted. Further, Tenant shall surrender all keys to the Premises at the place then fixed for the payments of Base Rent due hereunder. All items of work and improvements comprising the Interior of the Premises, shall constitute a part of the fee estate remainder subject to this Lease, notwithstanding that Tenant may construct or cause to be constructed all or any part of said improvements or may contribute to the cost thereof, and notwithstanding that Tenant may or might be required to maintain, repair and/or replace same or some part thereof pursuant to some other provisions in this Lease. Subject to the provisions of this Section, Tenant shall remove all of Tenant's trade fixtures, operation equipment and other personal property before

surrendering the Premises as aforesaid and shall repair at Tenant's expense any damage to the Premises caused thereby.

22.2    <u>Failure to Remove Property</u>. If Tenant shall neglect to remove Tenant's personally as herein provided, Landlord shall have the right (i) to remove said property and cause it to be stored in a public warehouse or elsewhere, at the cost of and for the account of Tenant, or (ii) in the alternative, if said property shall not be removed within thirty (30) days after said termination, to dispose of said property in a manner deemed suitable to Landlord, all without service of notice or resort to legal process and without becoming liable for any loss damage which may be occasioned thereby, and any proceeds of such disposition shall be retained by Landlord without liability to Tenant, Tenant hereby waiving any interest in such proceeds.

22.3    <u>Survival of Covenants</u>. Tenant's obligations to observe or perform the covenants contained in this Article shall expressly survive the expiration or earlier termination of the Term.

## 23.    <u>HOLDING OVER.</u>

Any holding over without the consent of Landlord after the expiration or earlier termination of the Term shall be construed to be and shall constitute a tenancy at the will of Landlord, and Tenant agrees to pay as rents and liquidated damages for such holding over a sum equivalent to the Rent herein specified and reserved plus fifty percent (50%) of the Base Rent (prorated on a monthly basis) and shall otherwise be on the same terms and conditions herein, as far as applicable.

## 24.    <u>ESTOPPEL/MEMORANDUM.</u>

24.1    <u>Estoppel Certificate</u>.  Within ten (10) days after request therefore by Landlord, Ground Lessor or any Mortgagee, Tenant shall deliver in recordable form (and signed by Tenant, if an individual, or a duly authorized representative of Tenant if Tenant is not an individual) a statement to Landlord, Ground Lessor any Mortgagee, or any proposed Mortgagee or transferee of the Project (as the case may be), certifying (if such be the case) that this Lease is in full force and effect, that Tenant is in possession of the Premises, that Tenant has commenced the payment of Rent, that there are no defenses or offsets to this Lease claimed by Tenant, as well as any other information reasonably requested.  If Tenant fails or refuses to give a certificate hereunder within the time period herein specified, then the information contained on such certificate as submitted by Landlord shall be deemed correct for all purposes, but Landlord shall have the right to treat such failure or refusal as a default by Tenant.

24.2    <u>Memorandum of Lease</u>. Promptly after the Commencement Date, Landlord and Tenant, if requested by Landlord, shall execute and acknowledge and deliver a memorandum or short form of this Lease, in recordable form, acknowledging Tenant's acceptance of the Premises for all purposes herein provided and specifying the Commencement Date and the termination date of this Lease in accordance with the provisions hereof, and said memorandum may be recorded by Landlord only, but this Lease Agreement itself shall not be recorded. In the event Tenant records a memorandum of this Lease, or this Lease, Tenant shall be in default under this Lease and Landlord may terminate this Lease upon five (5) days written notice to Tenant at Tenant's address set forth in <u>Section 1.1</u> hereof.

## 25.    <u>NOTICES.</u>

All notices required or permitted to be given hereunder by either party hereto to the other party shall be deemed sufficiently given or made on the day of receipt thereof or three (3) business days after the date when mailed by United States Registered or Certified Mail, adequate postage paid, to their respective addresses as specified in <u>Section 1.1</u> hereof. Each party hereto may notify the other party of any change in

its mailing address by notice in the manner herein above provided, which new address shall thereafter be deemed the proper address for notice hereunder.

## 26.   TENANT'S PAYMENTS.

26.1   <u>Payments</u>. Tender of Rent and/or any other payment due hereunder shall be considered to have been made on the date such payments received by Landlord and not on the date mailed by Tenant. For purposes hereof, the office of Landlord is the office presently or henceforth designated pursuant to the provisions of <u>Section 1.1</u> hereof. Checks or drafts tendered will constitute payment only when duly paid by the drawers bank promptly upon presentment, properly endorsed, for payment.

26.2   <u>Interest</u>. All sums due and owing by Tenant to Landlord under this Lease shall bear interest at the Prime Rate (as defined in the *Wall Street Journal*) plus four percent (4%) from the date due until paid.

## 27.   LANDLORD'S LIEN.

To secure the payment of all Base Rent, and Additional Rent reserved herein, and all other payments due Landlord hereunder, or to become due hereunder and the faithful performance of all covenants, agreements and stipulations herein contained to be performed by Tenant, Tenant hereby grants to Landlord an express first and prior contract lien and security interest on all property (including fixtures, equipment, inventory, goods, wares, furniture, office equipment, supplies and merchandise) which may be placed in the Premises, and also upon all proceeds of any insurance which may accrue to Tenant by reason of destruction of or damage to any such property. Tenant hereby waives all exemption laws in favor of said lien and security interest. This lien and security interest is given in addition to the Landlord's statutory lien and shall be cumulative thereof. Tenant shall not remove any property from the Premises until all of Tenant's obligations under this Lease are satisfied. This lien may be foreclosed with or without court proceedings by public or private sale, provided Landlord gives Tenant at least ten (10) days notice of the time, place and terms of said sale, and Landlord shall have the right to become the purchaser of such property, upon being the highest bidder therefor at said sale. The notice referred to in the preceding sentence may (but needs not) be given by Landlord to Tenant contemporaneously with any other notice from Landlord to Tenant which may be given in accordance herewith. At the time of the execution of this Lease, and if requested thereafter by Landlord, Tenant shall execute and deliver to Landlord financing statement instruments in form deemed sufficient by Landlord to reflect the security interest herein granted and any proper amendment of, assignment of, modification in or extension of the aforesaid contract lien and security interest hereby granted. Tenant hereby grants to Landlord a power of attorney to sign, in place and stead of Tenant, any and all such instruments. Said power of attorney is irrevocable and coupled with an interest.

## 28.   RULES AND REGULATIONS.

Such reasonable rules and regulations applying to all tenants in the Building as may be adopted by Landlord for the safety, care, cleanliness, preservation of good order or operation of the Premises, the Building, the Property and the Common Areas, are hereby made a part hereof and Tenant agrees to comply with all such rules and regulations, immediately upon receipt of a copy of same. Landlord shall have the right at all times to change any of the rules and regulations or to amend them in any manner deemed reasonable by Landlord. All changes and amendments will be sent by Landlord to Tenant in writing and shall be thereafter carried out and observed by Tenant.  As of the Effective Date, the rules and regulations are set forth on <u>Exhibit D</u>.

29.     **BROKERS**.

None.

30.     **AUTHORITY**.

Each of the persons executing this Lease on behalf of Tenant represents and warrants that Tenant has been and is qualified to do business in the state in which the Building is located, that the Tenant Entity has full right and authority to enter into this Lease, and that all persons signing on behalf of the Tenant Entity were authorized to do so by all appropriate actions required of such entity.  If Tenant signs as a partnership, trust or other legal entity, each of the persons executing this Lease on behalf of Tenant represents and warrants that Tenant has complied with all applicable laws, rules and governmental regulations relative to its right to do business in the state in which the Building is located, and that each of the persons or entities acting on behalf of the Tenant was authorized to do so by any and all appropriate partnership, trust or other actions.

31.     **LIABILITY OF LANDLORD**.

Tenant shall look solely to Landlord's interest in the Building, including revenue derived from the Project, and Landlord's personal property used in connection with the Project for the satisfaction of any judgment or decree requiring the payment of money by Landlord, based upon any default hereunder, and no other property or asset of Landlord shall be subject to levy, execution, or other enforcement procedure for the satisfaction of such judgment or decree.  **IN NO EVENT SHALL LANDLORD BE LIABLE OR RESPONSIBLE FOR ANY CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGES.**

32.     **SCOPE AND INTERPRETATION OF AGREEMENT; CONFIDENTIALITY**.

This Lease and all Exhibits set forth including all of the covenants, promises, agreements, conditions, and understandings between Landlord and Tenant concerning the Premises, and there are no covenants, promises, conditions, or understandings, either oral or written, other than as set forth herein.  No subsequent alteration, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by both parties.  This Lease shall not be more strictly enforced against either party regardless of who was more responsible for its preparation.  Except at Landlord's option, no part of this Lease or any memorandum thereof may be recorded in the public records of any municipality or county.  Tenant will maintain the confidentiality of this Lease and will not divulge the economic or other terms of this Lease, whether verbally or in writing, to any person, other than Tenant's officers, directors, partners or shareholders; Tenant's attorneys, accountants and other professional consultants; any governmental agencies; and pursuant to subpoena or other legal process.  If any provision of this Lease shall be determined to be void by any court of competent jurisdiction or by any law enacted subsequent to the Effective Date, then such determination shall not affect any other provisions hereof, all of which other provisions shall remain in full force and effect.

33.     **LANDLORD'S CONSENT**.

Without limiting any other provision of this Lease, in the event that Landlord's consent is required by the terms hereof for any purpose whatsoever, it is understood and agreed that (a) Landlord's consent may be subject to the consent of the Ground Lessor, Declarant  and/or the holder of any Mortgage encumbering the Building to the extent that such consents are required under the terms of the Ground Lease, Declaration or the applicable financing documents (which consents Landlord shall seek to obtain) and (b) notwithstanding anything to the contrary set forth herein, it shall not be deemed unreasonable for Landlord

to withhold its consent in any given circumstance based upon Landlord's inability to obtain any required consent from the Ground Lessor, Declarant or the holder of any Mortgage encumbering the Building.

**34.**   **USE OF PREMISES.**

Tenant shall use and occupy the Premises only for the Permitted Use, and for no other purpose, without the prior written consent of Landlord.

**35.**   **GUARANTY.**

As material consideration for Landlord to enter this Lease, Tenant shall cause Guarantor to execute the Guaranty attached as <u>Exhibit E</u> (the "**Guaranty**"), and Tenant shall deliver the Guaranty to Landlord contemporaneously with Tenant's execution hereof.

**36.**   **WAIVER OF JURY TRIAL.**

LANDLORD AND TENANT HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS LEASE OR THE OBLIGATIONS EVIDENCED HEREBY, OR ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY.  THIS PROVISION IS A MATERIAL INDUCEMENT TO EACH OF LANDLORD AND TENANT IN ENTERING INTO THIS LEASE.

**37.**   **MISCELLANEOUS.**

37.1   <u>Successors and Assigns</u>. All rights and liabilities herein granted to or imposed upon the respective parties hereto shall extend to and jointly and severally bind the several respective heirs, legal representatives, successors and assigns of the respective parties hereto, an if there shall be more than one Landlord or Tenant, all shall be bound jointly and severally the terms, conditions and agreements herein contained. No rights, however, shall inure to the benefit of any assignee of Tenant unless Landlord has approved the assignment to such assignee in writing as provided herein.

37.2   <u>Waivers</u>. One or more waivers of any breach or violation of any agreement, covenant or condition herein contained shall not be deemed to be a waiver of any subsequent violation or breach of the same or any other agreement, covenant, or condition herein contained, and the consent or approval by either party of any act by the other, which act requires the approval or consent of the other party, shall not be deemed to waive or render unnecessary the future requirements of consent or approval of the same or similar act; and the subsequent acceptance of Rent or other payment due hereunder shall not be deemed to be a waiver of any preceding breach by Tenant, other than failure of Tenant to pay the particular Rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of the acceptance of said Rent. No express covenant, term or condition of this Lease shall be deemed to have been waived by either party, unless such waiver is in writing.

37.3   <u>Accord and Satisfaction</u>. No payment made by Tenant or received by Landlord in an amount less than the amount herein stipulated shall be deemed to be other than on account of the earliest received payment, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as Rent be deemed an accord and satisfaction, and Landlord may accept any such check

or payment without prejudice to Landlord's right to recover the balance of such amount or to pursue any other remedy in this Lease or by law provided Landlord.

      37.4   Entire Agreement. This Lease, together with the exhibit or exhibits aforesaid and the rider or riders, if any, attached hereto and forming a part hereof, contains and sets forth the entire agreement and understandings between the parties hereto concerning the Premises, and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between said parties other than as herein expressly set forth. Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon either party hereto, unless reduced to writing and signed by both parties.

      37.5   Partnership. Landlord does not become a partner of Tenant in the conduct of its business or otherwise, or a joint venturer or a member of a joint enterprise with Tenant by virtue of this Lease.

      37.6   Force Majeure.  In the event Landlord shall be delayed, hindered or prevented from the performance of any act required hereunder by reason of strikes, fire, explosions, lock-outs, failure of electrical power, governmental restrictions or regulations, unavailability of suitable financing, materials and/or labor, riots, insurrection, war or on account of any other condition or occurrence not the fault of Landlord, then the performance of any such act shall be extended for a period equivalent to the period of such delay.

      37.7   Captions and Numbers.  The captions, section numbers and article numbers appearing in this Lease are inserted only as a matter of convenience and in no wise define, limit, construe or describe the scope or intent of such sections or articles, nor in any wise affect this Lease.

      37.8   Tenant, Defined Use of Pronouns. The word "**Tenant**" shall be deemed and taken to mean each and every person or party mentioned as a Tenant herein, be the same one or more and if there shall be more than one Tenant. Any notice required or permitted by the terms of this of Lease may be given by or to any one thereof and shall have the same force and effect as if given by or to all thereof. The use of the neuter singular pronoun to refer to Landlord or Tenant shall be deemed a proper reference even though Landlord or Tenant may be an individual, a partnership, a corporation, and a group of two or more individuals or corporations. The necessary grammatical changes required to make the provisions of this Lease apply in the plural sense where there is more than one Landlord or one Tenant, and to either corporations, associations, partnerships or individuals, males or females, shall in all instances be assumed as though in each case fully expressed.

      37.9   Severability. If any provisions covenant or condition of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, there reminder of this Lease, or the application of such provision, covenant or condition to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each provision, covenant or condition of this Lease shall be valid and shall be enforced to the fullest extent permitted by Law.

      37.10   Survival. Landlord and Tenant expressly agree that all provisions of this Lease which contemplate performance after the expiration or earlier termination hereof shall survive such expiration or earlier termination of this Lease.

      37.11   Governing law. This Agreement shall be construed in accordance with and governed by the laws of the State of Texas.  Venue for any legal actions hereunder shall be in the Courts of Grayson County, Texas.

37.12   <u>Other documents</u>. The parties agree to execute all other documents or instruments necessary to effect the transfers of property set forth herein and otherwise to implement the provisions of this Agreement.

**38.**   **<u>EXHIBITS</u>**

The following exhibits are a part of this Lease and are incorporated herein by reference:

Exhibit A – Legal Description
Exhibit B – Floor Plan of the Premises
Exhibit C – Parking Areas
Exhibit D – Rules and Regulations
Exhibit E – Guaranty

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

26

EXECUTED as of the date first set forth above in multiple counterparts each of which shall be deemed to be an original.

**LANDLORD**:

ALTERA HIGHLAND LLC,
a Texas limited liability company

By:_____

Name:   Terry D. Quinn
Its:       President

**TENANT**:

SHERMAN/GRAYSON HEALTH SYSTEM, LLC,
a Texas limited liability company

By:_____
Name:_____
Its:_____

EXECUTED as of the date first set forth above in multiple counterparts each of which shall be deemed to be an original.

**LANDLORD**:

ALTERA HIGHLAND LLC,
a Texas limited liability company

By:_____
Name:   Terry D. Quinn
Its:      President

**TENANT**:

SHERMAN/GRAYSON HEALTH SYSTEM, LLC,
a Texas limited liability company

By:_____
Name:   Thomas J. Frazier, Jr.
Its:      Executive Vice President

EXHIBIT A

LEGAL DESCRIPTION

BEING a 3.0894 acre tract of land situated in the County of Grayson, State of Texas out of the J.B. McAnair Survey, Abstract No. 763 and being all of Block No. 7, and a portion of Lots 7-8, and all of Lots 9-12, Block 12 of Green Mount Addition to the City of Sherman, Grayson County, Texas, as shown by Plat of record in Volume 193, Page 21, Deed Record, Grayson County, Texas,  together with that  portion of vacated Pecan Street, and being more particularly described by meets and bounds as follow:

BEGINNING at a "X" cut in concrete found for corner at the intersection of the north line of Laurel Street (a 60 foot wide public right-of-way) and the east line of Bryant Avenue (a 60 foot wide public right-of-way);

THENCE North 15 degrees 40 minutes 01 seconds West (Reference for Basis of Bearings) along said east right-of-way line, a distance of 467.78 feet to a 5/8 inch iron rod set with cap stamped BGT for corner;

THENCE North 73 degrees 42 minutes 45 seconds East, a distance of 286.25 feet to a 5/8 inch iron rod set with cap stamped BGT for corner in the west right-of-way line of Highland Avenue;

THENCE South 16 degrees 01 minutes 19 seconds East along said west right-of-way line, a distance of 467.76 feet to a 1/2 inch iron rod with cap found for corner at the intersection of the west right-of-way line of said Highland Avenue and the north right-of-way line of said Laurel Street;

THENCE South 73 degrees 42 minutes 45 seconds West along said north right-of-way line, a distance of 289.15 feet to the POINT OF BEGINNING and containing 134,573 square feet or 3.0894 acres of land, more or less.

EXHIBIT B

FLOOR PLAN OF THE PREMISES

[ATTACHED]



**Dan Burbine Associates**
Architects & Project Managers
12532 Renoir Lane   Dallas, Texas  75230

165    155    145    135    125    115    105
7,842 SF                                    2,239 SF
RADIOLOGY                                   FOOD COURT

St 130
Chaudhry

St 105 - Cutler

## 1st FLOOR PLAN
scale: 1/8" = 1'-0"

5    20
0   10

north
plan orientation

DRAW STATION
566 SF

20265 SF

**PROJECT**
WNJ  Wilson N. Jones

MEDICAL
OFFICE
BUILDING

**REVISIONS**

DATE
11 MAY 2005

SHEET
A-1



Dan Burbine Associates
Architects & Project Managers
12532 Renoir Lane   Dallas, Texas   75230

265   255   245   235   225   215   205

Ambulatory Surgery Center
St 200 - 210

St 215 - Grace Pharmacy

north

**2nd FLOOR PLAN**
s c a l e :  1/8" = 1' - 0"

5    20
0    10

plan orientation

19699 SF

PROJECT

WNJ Wilson N. Jones

MEDICAL
OFFICE
BUILDING

REVISIONS

DATE
11 MAY 2003

FOLDER

SHEET
A-2
2 of 6

EXHIBIT C

PARKING AREAS

[ATTACHED]



TRACT FIFTEEN:

Being a part of Block No. Eight (8), of G. Y. Gray's Second Addition to the City of Sherman, Texas, and further described as follows:

BEGINNING at the intersection of the South line of Laurel Street with the West line of Highland Avenue as now opened;
THENCE West 140 feet with the South line of Laurel Street to a stake, for the Northwest corner;
THENCE South parallel with Highland Avenue 75 feet to a stake;
THENCE East parallel with Laurel Street 140 feet to a stake in the West line of Highland Avenue;
THENCE North with said line of Highland Avenue 75 feet to the place of beginning, containing a tract of 140 x 75 feet.

TRACT SIXTEEN of the County of Grayson, State of Texas, all that certain tract or parcel of land situated in the City of Sherman, Grayson County, Texas, being a part of the survey originally granted to John B. McAnair, and being a part of Block Eight (8) of Gray's Second Addition, as shown by the map or plat thereof, recorded in Volume 134, page 113, of the Deed Records of Grayson County, Texas, and being more particularly described as follows:

BEGINNING at a point on the West line of Highland Avenue, 125 feet South of the intersection of the West line of Highland Avenue, and the South line of Laurel Street;
THENCE Southward with the West line of Highland Avenue, 45 feet;
THENCE Westward and parallel with the South line of Laurel Street, 140 feet;
THENCE Northward and parallel with the West line of Highland Avenue, 45 feet;
THENCE Eastward, parallel with the South line of Laurel Street, 140 feet to the place of beginning; this being the South 45 by 140 feet of the tract 95 by 140 feet, in size conveyed by Frank Reece and wife, Mrs. Minnie Reece, to Bob Richardson by deed dated March 5, 1924, and recorded in Volume 303, Page 153 of the Deed Records of Grayson County, Texas.

TRACT SEVENTEEN:

SITUATED in the City of Sherman, County of Grayson, Texas and being part of Block No. 8 of G. Y. Gray's Second Addition to the City of Sherman, Texas, out of J. B. McAnair Survey, Grayson County, Texas on the waters of Post Oak Creek, and described as follows:
And being the North 62 feet of the following described piece of property;
BEGINNING at the intersection of West line of Highland Ave. and the North line of Houston Street.
THENCE in a westerly direction with the North line of Houston Street 87 feet a stake.
THENCE in a Northerly direction and parallel with the West line of Highland Avenue 150 feet to a stake.
THENCE in an Easterly direction parallel with the North line of Houston Street, 87 feet to the West line of Highland Ave.
THENCE in a Southerly direction with the West line of said Highland Ave. 150 feet to the place of beginning, containing 87 x 150 feet of land.  Being the same land described in a deed from J. W. Hollingsworth and wife, Florence Hollingsworth to W. W. Craig, dated January 9, 1915, and

recorded in Volume 239, page 272, Deed Records of Grayson County, Texas.

TRACT TWENTY-FOUR:

BEING that certain tract, lot or parcel of land situated in the City of Sherman, Grayson County, Texas, in the J. B. McAnair Survey, part of Block Eight (8) of the G. Y. Gray Second Addition to the said City of Sherman;

BEGINNING at the Southwest corner of the lot conveyed by J. P. Mills and wife, to M. H. Andrews by deed recorded in Volume 57, page 107 of the Deed Records of Grayson County, Texas, a stake on the North line of West Houston Street;
THENCE North at right angles to the North line of West Houston Street 150 feet to a stake for corner;
THENCE East parallel with the North line of West Houston Street 60 feet to a stake for corner;
THENCE South at right angles to the North line of West Houston Street 150 feet to the North line of West Houston Street;
THENCE West along said line 60 feet to the Place of Beginning.

TRACT TWENTY-FIVE:

All that certain tract or parcel of land situated in Grayson County, Texas, and being more particularly described as follows: SITUATED in the City of Sherman, Grayson County, Texas, on the waters of Post Oak Creek, being a part of a survey or patent to J. B. McAnair Survey, and described as follows, to-wit:

BEGINNING at the Southeast corner of the tract described in the deed from L. M. Tuck, Receiver, to Clyde Jackson and wife, of record in Book 367, Page 344, Grayson County Deed Records;
THENCE West with the North line of Houston Street, 80 feet to the Southeast corner of a lot sold to L. V. Butler;
THENCE North with the East line of the Butler lot, 150 feet to the South line of a lot sold to Cecil J. Rodgers;
THENCE East with the South line of said Rodgers tract, 80 feet to the southeast corner or same, a stake in the East line of the tract sold to Clyde Jackson above referred to;
THENCE South with the East line of the Clyde Jackson tract, 150 feet to the place of beginning, being a lot 80 feet by 150 feet out of the Southeast corner of a tract sold by L. M. Tuck, Receiver, to Clyde Jackson and wife referred to.

Also being described as 80' x 150' our of Block 8 of G.Y. Gray's Addition to the City of Sherman.

TRACT TWENTY-SIX:

BEING all that certain lot or parcel of land, situated in the City of Sherman, Grayson County, Texas, a part of Block No. EIGHT (8) of G. Y. GRAY'S ADDITION to the City of Sherman and

being more particularly described as follows:

BEGINNING at the point of intersection of the North line of West Houston Street and the East line of Bryant Street;
THENCE North with the East line of Bryant Street for a distance of 150 feet;
THENCE East parallel with the North line of Houston Street for a distance of 70 feet;
THENCE South, parallel with the East line of Bryant Street for a distance of 150 feet to the North line of Houston Street;
THENCE West with said line for a distance of 70 feet to the Place of Beginning and containing 70 x 150 feet of land, more or less and being the same property conveyed by Alton R. Hill and wife, Laura Hill to J. B. Revell and wife, Willie B. Revell by deed dated November 10, 1952 and of record in Volume 705, Page 457 of the Deed Records of Grayson County, Texas.

TRACT TWENTY-SEVEN:

SITUATED in Sherman, Grayson County, Texas, and being a part of the J. B. McAnair Survey, and being also a part of Block 8 of G. Y. Gray's Second Addition to Sherman, Texas, and being a part of a tract of 150 x 250 feet of land sold by L. M. Tuck, receiver, to Clyde Jackson, et ux., by deed recorded in Volume 367, page 344, Deed Records of Grayson County, Texas, and described as follows, to-wit:

BEGINNING at a stake on the east line of what is known as Bryant Street at a point 50 feet south of the NW corner of the above mentioned tract of 150 x 250 feet, said point being the SW corner of a tract sold by Clyde Jackson, et al., to Cecil J. Rodgers, et ux.;
THENCE South 50 feet to a stake, the NW corner of a tract now owned by L. V. Butler, et ux., as described in deed of record in Volume 506, Page 407, Deed Records of Grayson County, Texas;
THENCE East parallel with the north line of the 150 x 250 foot tract 150 feet to a stake;
THENCE North 50 feet to the SE corner of the Cecil J. Rodgers, et ux., tract;
THENCE West with the south line of the said Rodgers tract 150 feet to the place of beginning, containing 50 x 150 feet of land.

TRACT TWENTY-EIGHT:

All that certain tract or parcel of land situated in the City of Sherman, Grayson County, Texas, being a part of the Survey originally granted to J. B. McANAIR, and being a part of BLOCK NO. EIGHT (8) of GRAY'S SECOND ADDITION to said City of Sherman, as shown by the map or plat thereof, recorded in Volume 134, at Page 113, Deed Records of Grayson County, Texas, and as shown by the 1908 Plat Book of Grayson County, Texas, and being more particularly described as follows:

BEGINNING at the intersection of the West line of Highland Avenue and the North line of Houston Street;
THENCE West with the North line of Houston Street, a distance of 87 feet;
THENCE North on a line parallel with the West line of Highland Avenue, a distance of 88 feet to the Southwest corner of a tract of land deeded to Elmer L. Anderson;

THENCE East on a line parallel with the North line of Houston Street and with the South line of the Elmer L. Anderson tract, a distance of 87 feet to a point in the West line of Highland Avenue;

THENCE South with the West line of Highland Avenue, a distance of 88 feet to the Place of Beginning and Containing 87 ft. by 88 ft. of land and being the same property conveyed by Floydell Akridge, a widow, to George Melvin Hammock, et ux., by Deed dated January 12, 1972, recorded in Volume 1208, at Page 433, Deed Records of Grayson County, Texas.

TRACT TWENTY-NINE:

BEING all that certain tract or parcel of land, situated in the County of Grayson, State of Texas, being a part of survey originally granted to J. B. McAnair and described as follows, to-wit:

BEGINNING at a point on the West line of Highland Avenue, seventy-five (75) feet South of the intersection of the West line of Highland Avenue and the South line of Laurel Street in the City of Sherman;

THENCE Southward with the West line of Highland Avenue fifty (50) feet;

THENCE Westward and parallel with the South line of Laurel Street, one hundred forty (140) feet;

THENCE Northward and parallel with the West line of Highland Avenue, fifty (50) feet;

THENCE Eastward and parallel with the South line of Laurel Street, one hundred forty (140) feet to the Place of Beginning; this being the North fifty (50) feet by one hundred forty (140) feet of the tract ninety-five (95) feet by one hundred forty (140) feet in size conveyed by Frank Reese and wife, Mrs. Minnie Reese, to Bob Richardson, by deed dated March 5, 1924, and recorded in Volume 303, page 153 of the Deed Records, Grayson County, Texas; and being Lot Eight (8), Block Eight (8), of Gray's Second Addition to the City of Sherman, Grayson County, Texas.

BEING a 3.0894 acre tract of land situated in the County of Grayson, State of Texas out of the J.B. McAnair Survey, Abstract No. 763 and being all of Block No. 7, and a portion of Lots 7-8, and all of Lots 9-12, Block 12 of Green Mount Addition to the City of Sherman, Grayson County, Texas, as shown by Plat of record in Volume 193, Page 21, Deed Record, Grayson County, Texas, together with that portion of vacated Pecan Street, and being more particularly described by meets and bounds as follow:

BEGINNING at a "X" cut in concrete found for corner at the intersection of the north line of Laurel Street (a 60 foot wide public right-of-way) and the east line of Bryant Avenue (a 60 foot wide public right-of-way);

THENCE North 15 degrees 40 minutes 01 seconds West (Reference for Basis of Bearings) along said east right-of-way line, a distance of 467.78 feet to a 5/8 inch iron rod set with cap stamped BGT for corner;

THENCE North 73 degrees 42 minutes 45 seconds East, a distance of 286.25 feet to a 5/8 inch iron rod set with cap stamped BGT for corner in the west right-of-way line of Highland Avenue;

THENCE South 16 degrees 01 minutes 19 seconds East along said west right-of-way line, a distance of 467.76 feet to a 1/2 inch iron rod with cap found for corner at the intersection of the west right-of-way line of said Highland Avenue and the north right-of-way line of said Laurel Street;

THENCE South 73 degrees 42 minutes 45 seconds West along said north right-of-way line, a distance of 289.15 feet to the POINT OF BEGINNING and containing 134,573 square feet or 3.0894 acres of land, more or less.

<u>EXHIBIT D</u>

RULES AND REGULATIONS

1.      All tenants will refer all contractor's representatives and installation technicians who are to perform any work within the Building, grounds, and Parking Area to Landlord for Landlord's supervision, approval and control before the performance of any such work. This provision shall apply to all work performed in the Building, grounds and Parking Area including, but not limited to, installations of telephones, telegraph equipment, electrical devices and attachments, and any and all installations of every nature effecting floors, walls, woodwork, trim, window, ceilings, equipment and any other physical portion of the Building, grounds, and Parking Area. Tenant shall not mark, paint, drill into, or in any way deface any part of the Building or the Premises without Landlord's written consent. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of the Landlord, and as the Landlord may direct.

2.      The work of the janitorial or cleaning personnel shall not be hindered by Tenant after 5:30 pm and such work may be done at any time when the Premises are vacant. The windows doors and fixtures in the Premises and Building may be cleaned at any time. Tenant shall provide adequate waste and rubbish receptacles, cabinets, books cases, map cases, etc., necessary to prevent unreasonable hardship to Landlord in discharging its cleaning obligations.

3.      Movement in or out of the Building or through the Building entrances or lobbies of furniture or office equipment, or dispatch or receipt by Tenant of any heavy equipment, bulky material merchandise or other item which requires use of elevators or stairways, shall be restricted to such hours as Landlord shall designate. The method of such movement, routing of such movement, safety precautions associated with such movement and the prohibition of Tenant bringing any dangerous items into the Building shall be subject to the Landlord's discretion and control. Any hand trucks, carryalls, or similar appliances used for the delivery or receipt of merchandise or equipment shall be equipped with rubber tires, side guards and such other safeguards as the Landlord shall require. Although Landlord or its personnel may participate in or assist in the supervision of such movement, Tenant assumes final responsibility for all risks as to damage to property and injury to persons that may result from such participation or assistance and Tenant shall indemnify and hold harmless Landlord and Landlord's employees and agents, and reimburse Landlord and Landlord's employees and agents with respect to any and all claims, demands, causes of action and liability arising as a result of any assistance or supervision or exercise of control over Tenant's movement of items in and out of the Building.

4.      No sign, advertisement or notice shall be displayed, painted or affixed by Tenant or Tenant's employees, agents or contractors in or on any part of the outside or inside of the Building or Premises without prior written consent of Landlord, and then only of such color, size, character, style and material and in such places as shall be approved and designated by Landlord. Signs on doors and entrances to the Premises and outside of the Premises within the Building, grounds or Parking Area shall be placed thereon by a contractor approved by Landlord.

5.      Tenant shall not place, install or operate on the Premises or in any part of the Building any engine, refrigerating, heating or air conditioning apparatus, stove or machinery, or conduct mechanical operations or place or use in or about the Premises or the Building any explosives, gasoline, kerosene, oil, acids, caustics or any other inflammable, explosive, hazardous or odorous material without the prior written consent of Landlord. No portion of the Premises shall at any time be used for cooking, sleeping or lodging quarters.

6.      Tenant shall not make or permit any nuisance or improper noises in the Building or otherwise interfere in any way with other tenants or persons doing business in the Building or with Landlord's operation of the Building.

7.      Landlord will not be responsible for any fixtures, personal property, equipment, jewelry or money lost in or stolen from the Premises or public areas of the Building, grounds or Parking Area. Landlord shall not be responsible for damages to or theft of motor vehicles or other items from any Parking Areas used in connection with the Building.

8.      No maintenance or repair work shall be done on any vehicles in the Parking Area. No disabled vehicles shall be parked or stored in the Parking Area. All vehicles in the Parking Area shall be parked within the designated spaces and not in more than one (1) space or across spaces. At Landlord's option, all disabled vehicles, recreational vehicles, boats and vehicles improperly parked in spaces designated for handicapped persons and all other improperly parked vehicles may be towed or otherwise removed from the Parking Area at the owner's expense. In the event any vehicle or boat is towed, Landlord will not be liable or responsible for the loss, damage or theft of any property located in the vehicle or boat or for any damage to the vehicle or boat.

9.      Neither Tenant or Tenant's employees, agents, invitees or licensees shall at any time leave or discard any rubbish, paper, articles or objects of any kind whatsoever outside the doors of the Premises or in any other area within the Building or on the grounds or in the Parking Area. No birds, animals, bicycles or vehicles shall be brought into or kept in or about the Building.

10.      None of the entries passages, doors, hallways, or stairways in the Building shall be blocked or obstructed by Tenant Such areas shall not be used by Tenant at any time except for ingress or egress to the Premises by Tenant's, Tenant's employees, agents and invitees.

11.      Landlord shall have the right to determine and prescribe the weight and proper position of any usually heavy equipment, including but not limited to copying equipment, computer equipment, safes and large files that are to be placed in the Building. Only those items which in the exclusive judgment of the Landlord will not do damage to the floors, structure and elevators may be moved into the Building. Tenant shall pay for any damage resulting from moving or installing such articles in the Building or the existence of same in the Building.

12.      All Christmas and other decorations in the Building must be flame retardant.

13.      After hours air conditioning and heating on Monday through Saturday and all day Sunday and holidays determined by Landlord must be requested in writing by noon of a regular work day prior to the day for which additional air conditioning is requested. Tenant shall be charged at the prevailing hourly rate for the use of such air conditioning and heating.

14.      Any request by Tenant to place or remove names from the directory board in the lobby of the Building shall be furnished to Landlord in writing on Tenant's letterhead.

15.      Any services which Tenant requests Landlord to perform which Landlord is not required to perform under this Lease shall, if performed by Landlord, be billed to Tenant at Landlord's cost plus a 15% fee to cover Landlord's overhead costs. Landlord shall have the right to refuse to perform any such services.

16.      If Landlord's maintenance engineer or any of Landlord's other personnel do any work after normal business hours at the request of Tenant, Tenant shall pay for the cost of such work.

17.     All doors leading from public corridors to the Premises are to be kept closed when not in use.

18.     Canvassing, soliciting or peddling in the Building is prohibited and Tenant shall cooperate with Landlord to prevent such activities.

19.     Tenant shall give Landlord immediate notice in the event that any defects or dangerous conditions arise or exist in the Premises or in the Building or if any accidents or emergencies occur in the Premises or Building.

20.     Tenant shall not use the Premises or permit the Premises to be used for photographic, multilith or multigraph reproductions for sale to the general public. All photographic, multilith or multigraph reproductions in the Premises shall be produced for Tenant in the ordinary course of Tenant's business.

21.     All requests for services made by Tenant shall be made directly to Landlord or Landlord's designated agents. Employees of Landlord or Landlord's designated agents shall not perform any work or do anything outside of their regular duties unless directed to do so by Landlord or Landlord's designated agents. Tenant will make no requests directly to Landlord's employees.

<u>EXHIBIT E</u>

GUARANTY

Landlord, Tenant and Guarantor (as herein defined) acknowledge that if it were not for this guaranty (the "**Guaranty**") as an inducement, Landlord would not execute the Lease.  Therefore, for $10.00 and other value received, and in consideration for, as a condition of, and an inducement to ALTERA HIGHLAND LLC, a Texas limited liability company ("**Landlord**") entering into that certain Lease Agreement dated as of August 21, 2012, with SHERMAN/GRAYSON HEALTH SYSTEM, LLC, a Texas limited liability company ("**Tenant**"), for certain premises being Suites A, B, C, D and E, comprised of radiology and common areas, of a medical office building located at 300 N. Highland Drive, Sherman, Texas, on real property owned by an affiliate of Tenant and ground leased to Landlord, as ground lessee (the "**Lease**"), the undersigned officer of LHP HOSPITAL GROUP, INC., a Delaware corporation (the "**Guarantor**"), on behalf of such entity, its legal representatives, heirs, successors, and assigns, hereby irrevocably guarantees to Landlord, Landlord's successors and assigns, absolutely and unconditionally, the full prompt and timely payment, performance and observance of all amounts to be paid and provisions of the Lease to be performed and observed by Tenant, including (without limitation) the rules and regulations incorporated into the Lease, as if Guarantor had executed the Lease as the tenant thereunder.  The Guarantor expressly agrees that the validity of this Guaranty and the obligations of the Guarantor hereunder shall not be terminated, affected or impaired by reason of the assertion by Landlord against Tenant of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease.  The Guarantor further agrees that this Guaranty shall remain and continue in full force and effect notwithstanding any assignment, renewal, modification, extension or waiver of the Lease or any provisions thereof.  The laws of Texas shall apply hereto.

The Guarantor hereby waives, to the fullest extent permitted by law:

(A)     Any right that the Guarantor may have to require Landlord to proceed against Tenant, proceed against or exhaust any security held from Tenant, or pursue any other remedy in Landlord's power to pursue, including, without limitation, re-letting the Premises following a default;

(B)     Any defense based on any claim that the Guarantor's obligations exceed or are more burdensome than those of Tenant;

(C)     Any defenses given to sureties other than actual payment or performance;

(D)     Any defense based on: (i) any legal disability of Tenant; (ii) any release, discharge, modification, impairment or limitation of the liability of Tenant to Landlord  from any cause, whether consented to by Landlord or arising by operation of law or from any bankruptcy or other voluntary or involuntary proceeding, in or out of court, for the adjustment of debtor-creditor relationships (an "**Insolvency Proceeding**"), and/or (iii) any rejection or disaffirmance of the Lease, or any part of it, or any security held for it, in any such Insolvency Proceeding;

(E)     Any defense based on any action taken or omitted by Landlord in any Insolvency Proceeding involving Tenant, including any election to have Landlord's claim allowed as being secured, partially secured or unsecured, any extension of credit by Landlord to Tenant in any Insolvency Proceeding, and the taking and holding by Landlord of any security for any such extension of credit; and

(F)     The Guarantor agrees to jurisdiction and venue in Grayson and Dallas Counties, Texas, and waives any objection to such venue on the grounds of forum non conveniens.  **The Guarantor knowingly, voluntarily and intentionally waives the right to a trial by jury in respect of any litigation based**

**hereon or arising out of, under, or in connection with this Guaranty.**  In the event Landlord incurs any fees and/or expenses in the enforcement of this Guaranty, whether or not involving litigation and/or appellate, administrative or bankruptcy proceedings, the Guarantor agrees to be liable for same (including reasonable attorney's fees and costs) and to pay same promptly on demand by Landlord.

The Guarantor acknowledges liability for every obligation of Tenant under the Lease.  Any capitalized term used herein and not otherwise defined shall have the same meaning as defined in the Lease. Each provision of this Guaranty shall be considered severable, and if for any reason and provision is determined to be invalid under current or future law, such invalidity shall not impair the operation of or otherwise affect the valid portions of this Guaranty.

<u>**GUARANTOR**</u>:

LHP HOSPITAL GROUP, INC.,
a Delaware corporation


By:_____
Name:_____
Title:_____

Date:_____

24

## LEASE AGREEMENT

This Lease ("**Lease**") is made as of August 21, 2012 (the "**Effective Date**"), by and between ALTERA HIGHLAND LLC, a Texas limited liability company ("**Landlord**"), and SHERMAN/GRAYSON HEALTH SYSTEM, a Texas limited liability company ("**Tenant**").

## RECITALS:

Landlord, as tenant, has entered into that certain Ground Lease Agreement dated as of the Effective Date (the "**Ground Lease**") with Tenant, as landlord, for the land upon which the Building (as defined below) is located.  Contemporaneously with the Ground Lease, (i) Landlord purchased one (1) medical office building, from Tenant, and (ii) Tenant, as "**Declarant**", filed of record a Declaration of Covenants, Restrictions and Easements (the "**Declaration**") covering the one (1) medical office building, the Hospital commonly known as Texas Health Presbyterian Hospital - WNJ (the "**Hospital**") owned by Tenant located in proximity to the medical office building and the parking  and other common areas  dedicated for use by persons occupying, using or visiting the medical office building, the Hospital and other facilities related thereto.  The Ground Lease and this Lease are subject to the terms and provisions of the Declaration. Tenant, as "Declarant" under the Ground Lease and "Landlord" under the Ground Lease, is familiar with the terms and provisions of each of the Declaration and the Ground Lease.

As part of Tenant's purchase of the Building commonly called "300 N. Highland Drive, Sherman, Texas", Tenant agreed to enter into this Lease.

Simultaneously herewith, Landlord and Tenant are also entering into corresponding leases (each, a "**Related Lease**") for vacant, existing space of the Building, for the common areas of the Building used by the Hospital, and for the Ambulatory Surgery Center in the Building.

## 1.    DEFINITIONS AND BASIC PROVISIONS.

1.1    Parties and Addresses. The parties hereto and their respective addresses are as follows:

(1)    Landlord's Address:    5910 North Central Expressway
Suite 800
Dallas, TX 75206.

(2)    Tenant's Address:    2400 North Dallas Parkway, Suite 450
Plano, Texas 75093
Attention: Executive Vice President – Administration

(3)    Ground Lessor Address: 2400 North Dallas Parkway, Suite 450
Plano, Texas 75093
Attention: Executive Vice President – Administration

1

| | | |
|---|---|---|
| (4) | <u>Guarantor</u>: | LHP Hospital Group, Inc., a Delaware corporation |
| (5) | <u>Guarantor's Address</u>: | 2400 North Dallas Parkway, Suite 450 Plano, Texas 75093 Attention: Executive Vice President – Administration |

     1.2    <u>Defined Terms</u>: In addition to the capitalized terms elsewhere defined in this Lease, the following terms shall be deemed to be defined terms of this Lease for all purposes. Each of the following definitions and basic provisions shall be construed in conjunction with and limited by the reference thereto in other provisions of this Lease:

    (1)    <u>Additional Rent</u>: All rent and other sums payable hereunder from Tenant to Landlord, other than Base Rent.

    (2)    <u>Base Rent</u>: An annual Base Rent of $12.05 per RSF in the Premises, subject to adjustment as provided in Sections 3.1 and 15.6. As of the Commencement Date, the monthly Base Rent is $19,870.45.

    (3)    <u>Broker(s)</u>: None.

    (4)    <u>Building</u>: The building in which the Premises are situated, being generally known as 300 N. Highland Drive, Sherman, Texas.

    (5)    <u>Commencement Date</u>:  The Effective Date.

    (6)    <u>Common Areas</u>: Those parts of the Building, Land and related facilities designated from time to time by Landlord for the common use of all doctors, physicians, tenants, visitors, patients and employees, including among other facilities, parking areas, sidewalks, landscaping, curbs, loading docks and areas, private streets and alleys, automobile entrances, exits and driveways, entranceways (open, enclosed or otherwise), lighting facilities, drinking fountains, public toilets, signs, service areas, common utility lines, pipes, and/or conduits, and the like.

    (7)    <u>Declarant</u>: means the Declarant under the Declaration, Sherman/Grayson Hospital, LLC, a Texas limited liability company, and its successors under the Declaration.

    (8)    <u>Declaration</u>: has the meaning set forth in the Recitals.

    (9)    <u>Expiration Date</u>: The last day of the Term hereof, which date is contemplated as being one hundred forty four (144) full months after the Commencement Date. Notwithstanding any other provision of this Lease to the contrary, if the Expiration Date would otherwise occur on a date other than the last day of a calendar month, then the Term shall be automatically extended to include the last day of such calendar month.

    (10)    <u>Floor Plan</u>: The outline of the Premises as depicted in <u>Exhibit B</u> attached hereto and made a part hereof for all purposes.

    (11)    <u>Guarantor</u>:  has the meaning set forth in Section 1.1.

(12)     Highest Lawful Rate:  The maximum nonusurious interest rate, if any, that at any time, or from time to time, legally may be contracted for, taken, reserved, charged, or received on the indebtedness owed to Landlord under this Lease under the laws which are presently in effect of the United States of America and the State of Texas applicable to Landlord and such indebtedness.

(13)     Hospital:  The Hospital defined in the Recitals of this Lease, and its successors and assigns.

(14)     Interior of the Premises: Standard office front and entrance (including without limitation, all plate glass and exterior doors), all of the interior wall framing, floors and floor covering, ceiling and interior staining and finishes, all interior doors and hardware, all interior electrical conduits and appurtenances, mechanical machinery and equipment, all interior electrical fixtures, interior plumbing and plumbing fixtures, Tenants' trade fixtures, and all other parts in the interior of the Premises.

(15)     Land: The lot, tract or parcel of land upon which the Building is situated, in Grayson County, Texas as more particularly described by metes and bounds on Exhibit A attached hereto and made a part hereof for all purposes, plus any contiguous parcels or strips of land leased or licensed to Landlord under the Ground Lease or by the Declaration, and are used in connection with or to service the Building or any part thereof.

(16)     Late Charge: Tenant shall pay $100.00 as a late fee to cover Landlord's administrative costs.  Additionally, all unpaid amounts Tenant fails to pay by the fifth (5th) day after the date due shall bear interest from the first day due until paid in full at the lesser of ten percent (10%) per annum or the Highest Lawful Rate.  In no event, however, shall the late fees and/or charges permitted under this Section or elsewhere in this Lease, to the extent the same are considered to be interest under applicable law, exceed the amount of interest that Landlord lawfully could have charged, received or collected on the indebtedness in question at the Highest Lawful Rate.

(17)     Lease: This Lease Agreement.

(18)     Lease Year: Each twelve (12) consecutive month period commencing on the Commencement Date or any anniversary thereof; provided that, if the Commencement Date is other than the first day of a calendar month, then the first Lease Year shall include such partial month together with the next succeeding twelve (12) consecutive months, and each succeeding Lease Year shall begin on the first day of the calendar month that corresponds to the first day of the calendar month following the Commencement Date.

(19)     Operating Expenses: All expenses, costs and disbursements of every kind and nature that Landlord or any of its Affiliates directly or indirectly pays or becomes obligated to pay, whether under the Ground Lease, the Declaration, any Related Lease or otherwise, in respect of the Ground Lease, the ownership, management, maintenance, repair, replacement and operation of the Building, the Common Areas and related facilities of the Building or arising in connection with any Related Lease.  Notwithstanding the foregoing, Operating Expenses shall exclude capital costs associated with the replacement of the roof, foundation, and exterior walls.

(20)     Permitted Use:  General Medical Offices.

(21)    <u>Premises</u>: Suites 350, 400, 410 and 5th Floor Conference Center in the Building, which are comprised of shell space in the Building as of the Effective Date, containing approximately 19,788 RSF (as defined herein), subject to adjustment as provided in Section 2.4. The Premises are substantially depicted on the attached Floor Plan shown on <u>Exhibit B</u> and being located in the Building.

(22)    <u>Pro Rata Share or Tenant's Pro Rata Share</u>: 16.819%, provided that if the Building is expanded or contracted, Tenant's Pro Rata Share shall increase or decrease, as the case may be, such that Tenant's Pro Rata Share will equal a fraction, the numerator of which is the net rentable area of the Premises, and the denominator of which is the net rentable area of the Building, which is approximately 117,655 RSF as of the Effective Date.

(23)    <u>Rent</u>: All Base Rent and Additional Rent.

(24)    <u>RSF</u>: means the rentable square feet in the Premises, Building or other area in question, as determined by an architect using ANSI/BOMA Standards.

(25)    <u>Security Deposit</u>: None.

(26)    <u>Tenant Improvement Allowance</u>:  Means that amount, if any, set forth in <u>Section 2.3</u>.

(27)    <u>Tenant Improvements</u>:  Means those improvements and alterations Tenant may elect to construct or install in the Premises, subject to the provisions of this Lease.

(28)    <u>Term</u>: Twelve (12) years (one hundred forty four (144) full months) from the Commencement Date, unless earlier terminated pursuant to the provisions of this Lease.

## 2.    <u>GRANTING CLAUSE; TENDER OF POSSESSION.</u>

2.1    <u>Granting Clause</u>.  In consideration of the Rent reserved and the covenants and agreements herein contained on the part of the Tenant to be observed and performed, and subject to the terms and provisions of the Declaration and Ground Lease, Landlord hereby demises, lets and leases unto Tenant, and Tenant hereby accepts, leases and rents from Landlord, the Premises.

2.2    <u>Tender and Acceptance of Possession</u>.  Landlord hereby tenders, and Tenant hereby accepts, possession of the Premises on the Effective Date.  Tenant hereby accepts the Premises in their "AS-IS" condition, and Landlord shall have no obligation to perform any work therein (including demolition of any improvements existing therein or construction of any tenant finish-work or other improvements therein), and, except as otherwise provided in Section 2.3, shall not be obligated to reimburse Tenant or provide an allowance for any costs related to the demolition or construction of improvements therein.  Tenant has reviewed, and hereby accepts, the condition and capacity of the Building's existing electrical systems and HVAC.  Tenant acknowledges that Landlord does not have any obligation, express or implied, to modify or increase the capacity of such systems.  Before Tenant may occupy the Premises to conduct its business therein, Tenant shall, at its expense, obtain and deliver to Landlord a certificate of occupancy from the appropriate governmental authority for the Premises.

2.3    <u>Tenant Improvement Allowance</u>.  Landlord shall provide Tenant an improvement allowance not to exceed $50.00 per RSF in the Premises (the "**Tenant Improvement Allowance**").  If Tenant performs any alterations, modifications or physical additions in or to the Premises that are permitted

under this Lease and otherwise approved by Landlord, then Tenant may request advances of the Tenant Improvement Allowance to reimburse Tenant for the hard costs of such work.  Landlord shall make disbursements of the Tenant Improvement Allowance to reimburse Tenant for such costs upon Landlord's receipt, review and approval of a draw request, with supporting documentation, that is reasonably acceptable to Landlord.

      2.4    <u>Adjustment to Premises</u>.  If Tenant or any of its affiliates relocates any physicians or other tenants of the Building directly or indirectly employed by Tenant or any of its affiliates from a premises in the Building not contained in the Premises into any portion of the Premises, then the premises vacated by such physician or other tenant shall automatically, as of the date of such relocation, be added to the Premises upon the same terms as provided in this Lease, and the RSF, Base Rent, Tenant's Pro Rata Share and other terms of this Lease dependent upon the size of the Premises shall be adjusted.  The foregoing shall apply notwithstanding the fact that the lease to such relocated physician or other use may constitute a Qualified Lease.

**3.**      <u>**RENT.**</u>

      3.1    <u>Base Rent</u>.

      (1)    This is a pure "net lease," and Base Rent, Additional Rent, Operating Expenses and all other sums payable hereunder by Tenant shall be paid without notice, demand, setoff, counterclaim, recoupment, abatement, suspension, deferment, diminution, deduction, reduction or defense.  It is intended that the Base Rent provided for in this Lease shall be absolutely net to Landlord throughout the Term, and, accordingly, Tenant covenants and agrees to pay, as they become due and payable and before they become delinquent, all operating and capital expenses in connection with the operation, maintenance, repair, restoration, use or occupation of the Premises including, without limitation, the costs, charges and assessments related to taxes, impositions, utilities and insurance.  Tenant shall pay all such taxes and impositions even though the taxing statue or ordinance may purport to impose such taxes or impositions on Landlord.

      (2)    The Base Rent shall be paid by Tenant in monthly installments to Landlord on or before the first day of each calendar month during the Term hereof.  The monthly Base Rent for any fractional month at the beginning or the end of the Term shall be prorated based upon the actual number of days in such month.

      (3)    The Base Rent will be adjusted and increased on each anniversary of a Lease Year (the "**Adjustment Date**") by an amount equal to the greater of (i) 103% of then-effective Base Rent (i.e., as it may have been adjusted pursuant to this Section 3.1(3)) and (ii) subject to the limitation set forth below in this Section 3.1(3), any increase in the Consumer Price Index for "All Urban Consumers, U.S. City Average, All Items," issued by the Bureau of Labor Statistics of the United States Department of Labor (the "**Index**").  The adjustments in the Base Rent will be determined by multiplying the then-effective Base Rent (i.e., as it may have been adjusted pursuant to this Section 3.1(3)) by a fraction, the numerator of which is the Index number for the date one month prior to the Adjustment Date and the denominator of which is the Index number for the first month of the first year of the Term.  When the adjusted rent for the Adjustment Date has been determined, Landlord shall give Tenant written notice of such adjusted rent; and, upon adjustment of the rent, any underpayment of rent from the Adjustment Date to the date Tenant is notified of the adjustment shall be immediately due and payable by Tenant.  Landlord's failure or delay to notify Tenant of said rent adjustment shall not constitute a waiver of the right to any adjustment provided for in this Lease.  In the event that the Index shall be discontinued, then Landlord shall use an index substantially similar to the Index to calculate future adjustments.  Notwithstanding any other

provision of this Section 3.1(3) to the contrary, the Base Rent in any Lease Year shall not increase by more than five percent (5%) of the Base Rent in the immediately preceding Lease Year.

(4)     Landlord and Tenant are knowledgeable and experienced in commercial transactions and agree that the provisions of this Lease for determining charges, amounts, Operating Expenses and Additional Rent are commercially reasonable and valid even though such methods may not state a precise mathematical formula for determining such charges. ACCORDINGLY, TENANT VOLUNTARILY AND KNOWINGLY WAIVES ALL RIGHTS AND BENEFITS OF TENANT UNDER SECTION 93.012 OF THE TEXAS PROPERTY CODE, AS IT MAY BE AMENDED OR REPLACED.

3.2     Operating Expenses.

(1)     Tenant's Pro Rata Share of Operating Expenses for the remainder of the calendar year after the Commencement Date and for each subsequent calendar year shall be estimated by Landlord, and written notice thereof shall be given to Tenant. Upon receipt of said written notice from Landlord, the estimated Operating Expenses shall be due and payable as herein provided. For any such remainder of the calendar year after the Commencement Date, Tenant agrees to pay Landlord each month, at the same time the Base Rent Payment is due, an amount equal to the amount of such estimated monthly Pro Rata Share of Operating Expenses for the remainder of such calendar year; and during each calendar year thereafter Tenant agrees to pay Landlord each month, at the same time the Base Rent Payments are due, an amount equal to one-twelfth (1/12th) of the estimated annual Pro Rata Share of Operating Expenses due.

(2)     If any portion of Operating Expenses increase during a calendar year, Landlord may revise the estimated Operating Expenses during such year by giving Tenant written notice to that effect, and thereafter Tenant agrees to pay Landlord, in each of the remaining months of such calendar year, an additional amount equal to the amount of such annual increase in the estimated Pro Rata Share of Operating Expenses divided by the number of months remaining in such calendar year.

(3)     After the end of each calendar year, Landlord shall prepare and deliver to Tenant a statement showing Tenant's Pro Rata Share of the total amount of Operating Expenses. Within ten (10) days after receipt of the aforementioned statement, Tenant agrees to pay Landlord the remaining amount owed by Tenant. However, if Tenant has paid more than its Pro Rata Share of the actual Operating Expenses, Landlord shall either pay the amount of such excess to Tenant within ten (10) days after delivery of the aforementioned statement, or, at Landlord's option, apply such excess to any sums due or to become due from Tenant to Landlord.

(4)     Notwithstanding anything herein to the contrary, in no event will the Base Rent provided for in this Lease ever be reduced.

3.3     Payment For Other Services. Tenant agrees to pay Landlord as Additional Rent all charges for any services, goods, or materials furnished at Tenant's request which are not required to be furnished by Landlord under this Lease, immediately upon demand, plus an administrative fee not to exceed five percent (5%) of the cost of the requested services, good or materials.

3.4     Late Charge. If Landlord does not receive any payment due on or before the 5th day of the calendar month when such payment is due, the Late Charge shall be due and payable (in addition thereto). Said Late Charge is for the purpose of reimbursing Landlord for the extra administrative costs and expenses incurred in connection with the handling and processing of such delinquent payment.

6

3.5      No Offsets or Demands.  All Base Rent, Additional Rent and other amounts due from Tenant to Landlord under this Lease shall be paid without notice, demand, offset, abatement or deduction.  This Lease and the rights of Landlord and obligations of Tenant hereunder shall not be affected by any event or for any reason or cause whatsoever foreseen or unforeseen.  The obligations of Tenant under this Lease shall be separate and independent covenants and agreements and all monetary obligations shall continue to be payable in all events.

**4.      SECURITY DEPOSIT.**  Tenant is not required to make any security deposit in connection with this Lease.

**5.      COMMON AREAS.**

5.1      Parking Facilities and Other Common Areas. During the Term, Tenant shall be entitled to the nonexclusive use (in common with others entitled thereto) of the Common Areas outside the Building designated from time to time by Landlord as the parking areas of the Building.  As of the Effective Date, the parking areas designated by Landlord for use by Tenant are depicted on Exhibit C.  In such parking areas, Tenant shall be entitled to use a number of parking spaces equal to 5 parking spaces for every 1,000 RSF of space in the Premises.  Tenant shall not conduct, solicit business or display or place any signs or advertising on or within the Common Areas, or distribute handbills therein, or take any action which would interfere with the rights of other persons to use the Common Areas.

5.2      Parking Regulations. Tenant understands and agrees that the Declarant shall have the right to maintain and operate lighting facilities on all of the parking areas and to police all of the parking and other Common Areas, including, without limitation, the right to discourage non-tenant parking, to designate and regulate parking areas, and to do and perform such other acts with respect to said Common Areas as in the judgment of the Declarant may be legally necessary to prevent a dedication thereof to the public.

**6.      MAINTENANCE AND REPAIRS.**

6.1      Landlord's Obligations.  As part of the Operating Expenses, Landlord shall maintain or cause to be maintained the elevators, public restrooms and other Common Areas within the Building, the structural elements building systems of the Building (including the HVAC system which serves the Building and the Premises).  Landlord shall, at its own cost and expense, maintain or cause to be maintained the foundation, the exterior walls (but excluding the interior glass or doors that are part of the Premises) and roof of the Building in good condition or repair.  However, if any repair is required by reason of the negligence or intentional misconduct of Tenant or any of its agents, employees, invitees or Affiliates, Landlord may add the cost thereof to the next installment of Rent thereafter coming due, but only to the extent that the cost thereof is not covered by insurance proceeds actually received by Landlord.  Except as herein provided, Landlord shall have no obligation to repair, maintain, alter, replace, or modify the Premises or any part thereof.  Any failure by Landlord to furnish, or delay in furnishing, any maintenance or services that are required of Landlord under this Section or otherwise under this Lease, when such failure is caused by acts of God or any other condition beyond Landlord's reasonable control, shall not constitute a default by Landlord under this Lease and shall not permit Tenant to abate any Rent or relieve Tenant from any of its obligations under this Lease.

6.2    Tenant's Obligations.   Tenant shall maintain the interior of the Premises, including all interior glass and doors that are a part of the Premises and any improvements done by or on behalf of Tenant, in good condition and clean and attractive appearance, performing all janitorial services and making all repairs at its own cost and expense, and using materials and labor of a kind and quality equal to the original work.  Tenant shall maintain the Premises in accordance with all requirements of law, including (without limitation) the Americans with Disabilities Act (as the same may be amended) and similar state or local laws, rules or regulations.  At the expiration or earlier termination of this Lease, Tenant shall surrender the Premises in a broom clean condition and otherwise in the same condition as received by Tenant on the Commencement Date upon initial completion of the interior improvements, reasonable wear and tear excepted.  If Tenant shall neglect and/or fail to observe, keep or perform any of its obligations to maintain and repair and Premises in the time and manner provided in this Article and if such neglect and/or failure shall continue for ten (10) days after notice thereof, Landlord shall have the right to perform said maintenance and repairs.  In the event Landlord does so perform Tenant's responsibilities for said maintenance and repairs, Landlord shall furnish Tenant a statement of the actual cost thereof, plus an administration fee not to exceed ten percent (10%) of the actual costs, which statement shall be immediately payable by Tenant.  All alterations and modifications of or to the Premises shall be in accordance with the terms and provisions of Section 11.2 below.

## 7.    TAXES ON TENANT'S PROPERTY.

Tenant shall be responsible for and shall pay, before same becomes delinquent, all federal, state, county, and local taxes levied or assessed upon any and all personal property of any kind owned by or placed in, on or about the Premises by Tenant during the Term, and all taxes and assessments on trade fixtures, furniture, and all sales, excise and other taxes on Tenant's business shall be paid entirely by Tenant. If any such taxes for which Tenant is liable are levied or assessed against Landlord or Landlord's property, or if the assessed value of Landlord's property is increased by inclusion of personal property, furniture or fixtures placed by Tenant in the Premises, Tenant shall pay to Landlord upon demand that part of such taxes for which Tenant is primarily liable hereunder.

## 8.    INSURANCE.

8.1    Hold Harmless. Tenant covenants and agrees to indemnify and save each of Landlord, and Landlord's members, managers, partners, agents, employees and representatives, harmless from and against any and all costs, liability or expense arising out of any claims of any person or persons on account of any occurrence in, upon or at the Premises, resulting from the occupancy or use thereof by Tenant, or by any person or persons holding or using the Premises thereunder, occasioned in whole or in part by reason of the improper and/or lack of control and supervision throughout the Common Areas of property owned or controlled by Tenant, or by reason of the use or misuse of the parking area or any other Common Areas by Tenant or by any person or persons holding or using the Premises, or any part thereof, under Tenant, including without limitation, Tenant's clients, invites, agents, contractors, employees, servants, subtenants, assignees or licensees, and without limiting the generality of the foregoing, Tenant further covenants and agrees to indemnify and save each of Landlord and Landlord's partners, agents, employees and representatives harmless from and against any penalty, damage or charge incurred or imposed by reason of any violation of law or ordinance by Tenant or any person or persons holding under Tenant and from any cost, damage or expense arising out of the death of or injury to any person or persons holding under Tenant and from any cost, damage or expense arising out of the death of or injury to any person or persons holding under Tenant. In case any action or claim to which Landlord (or Landlord's partners, members, managers, agents, employees or representatives) are entitled to indemnification shall be brought or asserted in any way against Landlord (or Landlord's members, managers, partners, agents, employees or representatives) or Tenant, Tenant shall immediately notify Landlord of the same and shall furnish Landlord with all relative

8

information. Landlord shall be entitled, at Tenant's expense, to participate in, and to the extent that it wishes, to assume the defense thereof.

8.2 <u>Tenant's Liability Insurance</u>. Tenant agrees to maintain in force during the Term a policy or policies of comprehensive public liability insurance, including property damage, written by one or more responsible insurance companies approved by Landlord and licensed to do business in Texas, which insurance companies shall be rated not less than X by Best Guide Rating, insuring Tenant and naming as additional named insureds, Landlord, Landlord's property management company as agent, each Mortgagee and such other persons, firms, or corporations as are designated by Landlord, against loss of life, bodily injury and property damages in which the limit of public liability shall be not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000.00) single limit bodily injury and in which the limit of property damage liability shall be not less than ONE MILLION AND NO/100 DOLLARS ($1,000,000.00) and an umbrella coverage of not less than TWO MILLION AND NO/100 DOLLARS ($2,000,000.00). Additionally, Tenant shall maintain a comprehensive automobile liability insurance policy of ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00). Each such policy shall be non-cancellable for any cause without first giving Landlord thirty (30) days prior written notice. Subject to all of the foregoing, the insurance coverage required to be furnished by Tenant pursuant to this Section may be in the form of a blanket policy covering all of Tenant's operations.

8.3 <u>Tenant's Fire Insurance</u>. Tenant agrees to maintain in force during the Term a policy or policies of fire and extended coverage insurance in the case of fire sprinkler leakage, malicious mischief, vandalism and other extended coverage perils, for the full insurable replacement value of all additions and of all office furniture, office equipment, merchandise, and other items of Tenants' property within or on the Premises.  Coverage in this paragraph shall be in an amount not less than one hundred percent (100%) of the replacement costs of Tenant's improvements to the Premises.

8.4 <u>Tenant's Workers Compensation</u>. If required by law, Tenant agrees to maintain in force during the Term workers compensation and employers liability insurance with a waiver or subrogation endorsement, in a form and amount satisfactory to Landlord.

8.5 <u>Evidence of Insurance</u>. A copy of each such policy or a certificate of such insurance required to be maintained by Tenant shall be delivered to Landlord upon the Commencement Date of this Lease and annually thereafter upon the first day of each Lease Year throughout the Term. If Tenant fails to procure said insurance or deliver to Landlord, such evidence thereof, Landlord may procure same and Tenant shall reimburse Landlord for the cost thereof plus an administrative fee not to exceed ten percent (10%) of the actual cost immediately upon demand.

8.6 <u>Landlord's Liability Insurance</u>. Landlord agrees to maintain in force during the Term a policy or policies of comprehensive public liability insurance, including property damage, written by one or more responsible insurance companies licensed to do business in Texas and insuring Landlord against loss of life, bodily injury and/or property damage with respect to the operation of the Building, the policy limits of which to be in amount satisfactory to Landlord. In addition, Landlord may maintain in force such umbrella policy or policies of public liability insurance as Landlord, in its sole discretion, may deem appropriate. Landlord's failure to procure any such insurance shall not invalidate this Lease or lessen Tenant's liability hereunder.  Landlord's insurance hereunder shall include loss of rent coverage.

8.7 <u>Landlord's Fire Insurance</u>. Landlord agrees to procure and keep in effect during the Term a policy or policies of fire and extended coverage insurance covering the Building, including rent abatement, vandalism and malicious mischief coverage, written by an insurance company authorized to do business within the State of Texas, and in an amount at the full replacement cash of the Building.  Such insurance shall provide protection against losses so insured against for the sole and exclusive benefit of Landlord. The

9

full amount of any proceeds payable thereunder shall be payable to Landlord, and Tenant shall not be entitled to, and shall have no interest in, such proceeds or any part thereof. Tenant is advised to procure such insurance as Tenant deems appropriate to protect its interest.

8.8    Waiver of Subrogation. To the extent permitted by the laws and insurance regulations of the State of Texas, the respective parties hereto hereby waive and release any and all claims, demands and causes of action which each might have against the other party, either for damage to or loss of any part of the Premises or of any adjoining premises belonging to Landlord, arising from perils ordinarily insured against under a standard fire and extended coverage insurance policy issued in the State of Texas, regardless of whether such damage or loss is occasioned by the negligence of the respective parties, or either of them, their agents, servants or employees.

## 9.    UTILITIES AND SERVICES.

Provided Tenant is not in default of any term, condition or covenant of this Lease, Landlord agrees to furnish or cause to be furnished to the Premises gas, water (for drinking, cleaning and lavatory purposes only), and electricity during the Term. Landlord shall furnish tempered and refrigerated water at those points of supply designated by Landlord in the Common Areas of the Building, heated and refrigerated air conditioning in season (at temperatures, in amounts and at times considered by Landlord to be standard or in compliance with any governmental regulations; such service after hours, on Saturday afternoons, Sundays and holidays will be furnished only upon 24 hours' prior written request of Tenant who shall bear the entire cost thereof). Landlord shall furnish janitorial service, in the manner and to the extent deemed standard by Landlord during the periods and hours as such services are normally furnished to all tenants. Tenant shall not hinder the work of the Building janitor. Landlord shall furnish routine maintenance, painting and lighting service for all Common Areas within the Building in the manner and to the extent deemed by Landlord to be standard. Tenant will pay all telephone charges. Landlord shall not be liable in damages or otherwise for failure, stoppage or interruption of any such service nor shall the same be construed as an eviction of Tenant, work an abatement of Rent, or relieve Tenant from the operation of any covenant or agreement set forth herein; but in the event of any failure, stoppage or interruption thereof not caused by Tenant or Tenant's agents, employees, contractors, clients or invites, Landlord shall use reasonable diligence to resume service promptly.

Landlord reserves the right to separately meter usage of any utility service included in Operating Expenses and charge Tenant and other tenants of the Building based on such usage.  Further, Landlord reserves the right from time to time to charge to Tenant and other tenants of the Building applicable costs with respect to usage of Building services and utilities at times other than during standard business hours, on such basis as Landlord may reasonably determine for the purpose of properly allocating the costs of such services and utilities in accordance with the usage thereof.

Notwithstanding anything hereinabove to the contrary, Landlord reserves the right from time to time to make reasonable modifications to the above standards for services and utilities.

## 10.    INTENTIONALLY DELETED.

## 11.    PROPERTY OBLIGATIONS.

11.1    Tenant's Property. Landlord shall not be liable for any damage to or loss of personal property placed in or about the Premises by Tenant or Tenant's agents, employees, clients, guests, invites or others, resulting from fire, theft, explosion, flood, windstorm or other casualty caused by Acts of God or by the acts or omissions of other occupants of other space in the Building or caused by operations during construction of any public or quasi public work. All property kept or stored within the Premises shall be

kept or stored at the risk of Tenant only, and Tenant shall hold Landlord harmless from any claims arising out of damage to the same, including subrogation claims by Tenant's insurer, if any, unless such damage shall be caused by the gross negligence of Landlord.

11.2    <u>Tenant Fixtures, Alterations and Personal Property</u>. Tenant shall not make or allow to be made any alterations, modifications or physical additions in or to the Premises without the prior written consent of Landlord which consent shall not be unreasonably withheld or delayed.  Tenant may proceed with the construction of the approved alterations, modifications or physical additions, but only so long as they are in strict compliance with the plans and specifications and with the provisions of this <u>Section 11.2</u>. All alterations shall be made at Tenant's expense, either by Tenant's contractors, which previously have been approved in writing by Landlord, or at Landlord's option, by Landlord's contractors on terms reasonably satisfactory to Tenant, including a fee of five percent (5%) of Landlord's actual cost of the work to cover Landlord's overhead. None of Tenant's construction, alterations, modifications or physical additions shall (i) alter the exterior appearance of the Building or Premises in any manner, (ii) adversely affect the structure or safety of the Building or Premises or any portion thereof, (iii) fail to comply with all building, safety, fire and other codes and governmental and insurance requirements, or (iv) fail to be completed promptly and in a good and workmanlike manner. All trade fixtures installed by Tenant shall be new or completely reconditioned. At Landlord's option, any such approved additions, alterations, modifications, improvements and/or fixtures furnished or installed by Tenant which are sufficiently affixed or annexed to the Premises so as to become a part thereof, other than unaffixed movable trade fixtures, shall upon the expiration or earlier termination of this Lease, become the property of Landlord.  Any damage to the Premises caused by such installation and/or removal of Tenant's fixtures and equipment shall be repaired at Tenant's sole cost and expense. The provisions of this Section shall expressly survive the expiration or earlier termination of this Lease.

11.3    <u>Liens</u>. Tenant shall neither permit nor suffer an involuntary lien to be filed or affixed against the Building, the Premises, the fee simple title of the Land or Landlord's leasehold estate therein, or any part thereof, and shall not voluntarily grant any lien or security interest therein. In the event any such involuntary or voluntary lien, including without limitation, mechanic's lien or tax lien, is filed and/or affixed against the Building, the Premises the fee simple title of the Land or Landlord's leasehold estate therein, or any part thereof, or against any fixtures, equipment, furnishings therein or all types of work and improvements comprising the Interior of the Premises and Tenant has not caused the same to be released and discharged of record within ten (10) days after notice thereof, same shall constitute a default hereunder. Upon such default, in addition to any other remedies available to Landlord herein, Landlord may cause the release and discharge of such lien, Tenant shall repay to Landlord immediately upon demand as Additional Rent hereunder all such sums disbursed or deposited by Landlord plus an administrative fee not to exceed five percent (5%) of the sums disbursed or deposited. Nothing contained herein, however, shall imply any consent or agreement on the part of Landlord or anyone holding under Landlord to subject Landlord's interest to liability under any mechanic's or other lien law, regardless of whether the performance or the furnishing of such work, labor, services or materials to Tenant or anyone holding under Tenant shall have been consented to by Landlord.

## 12.    **SUBORDINATION/ATTORNMENT.**

12.1    <u>Subordination</u>. Tenant covenants and agrees promptly upon request of Landlord to execute and deliver, in a recordable form provided by Landlord, an acknowledgment of the subordination of this Lease to any mortgage, deed of trust, security agreement or other lien or encumbrance resulting from any method of financing or refinancing, presently or henceforth placed upon the Landlord's leasehold estate in the Land and/or fee interest in the Building and any future expansion thereof or additions thereto, and to all advances of money or other value heretofore or hereafter made upon the security thereof.  Notwithstanding anything to the contrary contained herein, Landlord agrees to obtain a subordination, non-disturbance and

attornment agreement ("**SNDA**") from its current lender in a form reasonably acceptable to Tenant which shall provide, among other things, that this Lease shall be recognized and Tenant's rights and occupancy under this Lease shall not be disturbed in the event Tenant is not in default hereunder beyond any applicable notice and cure periods. In addition, Tenant shall not be required to subordinate its rights under this Lease to the interest of any future lender unless Landlord has first delivered an SNDA to Tenant executed by such future lender in a form reasonable acceptable to Tenant and containing a similar non-disturbance right.

12.2    <u>Collateral Assignment by Landlord</u>. Subject to the foregoing provisions of this Article, Landlord reserves the right, without notice to or consent of Tenant, to assign this Lease and/or any and all Rent hereunder as security for the payment of any mortgage loan, deed of trust loan, or other method of financing or refinancing.

12.3    <u>Attornment</u>. In the event any such mortgage is foreclosed, or in the event of the exercise of the power of sale under any such deed of trust, Tenant shall consider the purchaser at the foreclosure trustee's sale to be the Landlord hereunder, and Tenant will attorn to the purchaser and will recognize the purchaser as the owner and Landlord under this Lease.

## 13.    <u>USE AND OPERATION.</u>

13.1    <u>Use of Premises</u>. The Premises shall be used and occupied by Tenant solely for the Permitted Use and Tenant expressly agrees that no use shall be made or permitted or acts done by Tenant and/or any agents, employees, subtenants, or assignees of Tenant, which shall increase the existing rate of insurance coverage or cause cancellation of such insurance coverage. Tenant shall not (i) permit any objectionable or unpleasant odors to emanate from the Premises; nor place or permit any radio, television, loudspeaker or amplifier on the roof or outside of the Premises or where the same can be seen or heard from outside the Premises; (ii) place any antenna, awning or other projection on the exterior of the Premises; (iii) take any other action which would constitute a nuisance or would disturb or endanger other tenants of the Building or unreasonably interfere with their use of their respective premises; or (iv) do anything which would tend to injure the reputation of the Building. Tenant shall at all times comply with all terms and provisions of the Ground Lease and Declaration applicable to Tenant, or Tenant's use of the Premises and Common Areas.

13.2    <u>Suitability of Premises</u>. Tenant warrants to Landlord that it has, prior to the execution hereof, fully inspected the Building, the Common Areas, the property and all items related thereto, and that Tenant has made, performed, obtained and received all studies, inspections, reports, diagnoses and tests that Tenant desires relative to the Building, the Common Areas, the property and all items related thereto and Tenant's proposed business use of the Premises. Tenant further warrants to Landlord that Tenant has inspected, or will thoroughly inspect, the Plans and Specifications agreed and to be agreed with Landlord for Landlord's construction of the shell of the Premises and will be fully satisfied with such inspections and Plans and Specifications for the Premises. Tenant understands and agrees that Tenant is accepting the Building, the Common Areas, the property and all items related thereto, and will be accepting the Premises, in their "AS-IS", "WHERE-IS" condition, "WITH ALL FAULTS" and without any warranty or guarantee whatsoever. Tenant warrants that it used or will use all due diligence in conducting all studies inspections, diagnoses and tests on the Premises the Building, the Common Areas, the property and all items related thereto that Tenant deemed necessary or appropriate. Tenant acknowledges that Landlord has not made and does not make, and Landlord hereby disclaims, any and all warranties, express or implied, which in any way relate to the Premises the Building, the Common Areas, the property and all items related thereto or the condition thereof, including without limitation any implied warranty of suitability or habitability. Tenant further understands that Landlord has relied and will rely upon Tenant's having made all inspections Tenant desired, and that but for such inspections by Tenant, Landlord would not have leased the Premises to Tenant. Additionally, the parties agree that the obligation of Tenant to pay all Rent and other sums

hereunder provided to be paid by Tenant, and the obligation of Landlord to perform Landlord's other covenants and duties hereunder, constitutes independent, separate and unconditional obligations to be performed at all times provided for hereunder, save and except only when an abatement thereof or reduction therein is expressly provided for herein and not otherwise. It is agreed that in the event Landlord commences any proceedings against Tenant for nonpayment of Rent or any other sum due and payable by Tenant hereunder, Tenant shall not interpose any counterclaim or other claim against Landlord of whatever nature or description in any such proceedings; and in the event Tenant interposes any such counterclaim or other claim against Landlord in any such proceeding, Landlord and Tenant stipulate and agree that, in addition to any other lawful remedy of Landlord, upon motion of Landlord, such counterclaim or other claim asserted by Tenant shall be severed out of the proceedings instituted by Landlord and Landlord may proceed to final judgment separately and apart from and without consolidation with or reference to the status of such counterclaim or any other claim asserted by Tenant.

## 14.   HAZARDOUS MATERIALS.

14.1    Tenant, and all of Tenant's partners, officers, directors, employees, representatives, agents, contractors, subcontractors, successors, assigns, lessees, sublessees, concessionaires, invitees and any other occupants of the Premises (collectively, "**Tenant's Representatives**"), shall abide by all Federal, state and local statutes, ordinances, codes and regulations, now existing or hereinafter enacted (collectively, "**Hazardous Materials Laws**"), governing the use, handling, depositing or disposal of hazardous or toxic substances, and medical wastes (collectively, "**Hazardous Materials**").  Landlord has no obligation to provide or make provision for disposal facilities for Hazardous Materials or other medical wastes, and Tenant shall not deposit or dispose of any Hazardous Materials or other medical wastes into the general waste disposal facilities provided by Landlord.  Tenant shall, at Tenant's expense, employ or engage private waste management services to dispose of any and all waste of Tenant which must be handled in any manner other than general waste collection provided by Landlord through public or private waste collection service. Landlord may direct the manner of disposal and location of any containers, collection boxes or other storage facilities, which may be required by Hazardous Materials Laws.

14.2    The term "**Hazardous Materials**" shall not include (i) pharmaceuticals, cleaning agents of the types and in the quantities and concentrations normally stocked by health care providers located in medical office buildings similar to the Building, (b) oil in the minimal amounts typically associated with the use of certain portions of the Building for driving and parking motor vehicles or (c) medical wastes generated at the Building; however, Tenant shall use, store, transport and dispose of the foregoing in accordance with all laws including (without limitation) all Hazardous Materials Laws.

14.3    Tenant shall indemnify, defend and hold harmless Landlord, the "**Hospital**" and the holder ("**Mortgagee**") of any mortgage encumbering all or any portion of the Building or the real property upon which the Building is situated or Landlord's leasehold estate in the Land ("**Mortgage**"), and their respective members, managers, partners, shareholders, directors, officers, agents and employees (all collectively referred to as the "**Indemnified Parties**") from and against any and all costs, expenses and claims arising from or in connection with any act, omission or negligence of Tenant or any Tenant's Representatives relating to or arising out of the use, handling, depositing or disposal of Hazardous Materials with respect to the Premises or the Building, such indemnity to include all costs, expenses and liabilities associated with the remediation thereof or incurred in connection with each claim, action or proceeding with respect thereto, including, without limitation, all attorney's fees and expenses.

14.4    Tenant shall immediately notify Landlord in writing of:  (i) any enforcement, clean-up, removal or other governmental or regulatory action instituted, contemplated or threatened concerning the Premises pursuant to any Hazardous Materials Laws; (ii) any claim made or threatened by any person against Tenant or the Premises relating to damage contribution, cost recovery, compensation, loss or injury

resulting from or claimed to result from any Hazardous Materials on or about the Premises; and (iii) any reports made to any environmental agency arising out of or in connection with any Hazardous Materials in or removed from the Premises, including any complaints, notices, warnings or asserted violations in connection therewith, all upon receipt by Tenant of actual knowledge of any of the foregoing matters. Tenant shall also supply to Landlord a promptly as possible and in any event within five (5) business days after Tenant first receives or sends the same, copies of all claims, reports, complaints, notices, warnings or asserted violations relating to Hazardous Materials associated with the Premises.

14.5    Without limiting any other provision of this Lease, Tenant shall not create or permit to exist in or about the Premises any "**Mold Condition**" unless caused by Landlord.  As used herein, the term Mold Condition shall include the presence or suspected presence of "**Mold**" or any condition(s) that reasonably can be expected to give rise to or indicate the presence of Mold, including observed or suspected instances of water damage or intrusion, the presence of wet or damp wood, cellular wallboard, floor coverings or other materials, inappropriate climate control, discoloration of walls, ceilings or floors, complaints of respiratory ailment or eye irritation by Tenant's employees or any other occupants or invitees in the Premises, or any notice from a governmental agency of complaints regarding the indoor air quality at the Premises.  As used herein, the term Mold shall include mold, mildew, fungus or other potentially dangerous organisms.  In the event of suspected or actual Mold or Mold Conditions at the Premises, Tenant shall immediately notify Landlord in writing of the same and the precise location thereof.  Tenant acknowledges the control of moisture and Mold prevention are material obligations of Tenant under this Lease, and Tenant shall, at its sole costs and expense, regularly monitor the Premises for the presence of Mold and Mold Conditions.  If any Mold or Mold Conditions in or about the Premises are a result of the actions or omissions of Tenant or any Tenant's Representatives, Tenant shall promptly, at Tenant's sole cost and expense, hire a licensed and experienced Mold remediation contractor to completely clean-up and remove from the Premises all Mold or Mold Conditions.  All such clean-up, removal and remediation shall, in each instance, be conducted to the satisfaction of Landlord and any governmental authority with jurisdiction and otherwise in strict compliance with all applicable laws.  Such clean-up, removal and remediation shall also include removal and replacement of any infected host materials as well as any repairs and refinishing required as the result of such removal and replacement.  There shall be no abatement of Rent on account of any clean-up, removal or remediation of any such Mold or Mold Condition.  Tenant waives, releases and discharges Landlord and all Indemnified Parties for, from and against all claims, demands, causes of action, suits, judgments, liabilities, losses, damages and expenses (including attorneys' fees) for personal injury, bodily injury or property damages in any way arising from or relating to or associated with moisture or the growth of or the presence of Mold or Mold Conditions.

## 15.    ASSIGNING, MORTGAGING, SUBLETTING.

15.1    <u>Prohibitions</u>.  Except as otherwise permitted pursuant to Section 15.1 or 15.2, Tenant shall not (i) transfer, assign or hypothecate this Lease, (ii) sublet any portion of the Premises, (iii) enter into any license, concession or other right of occupancy of any portion of the Premises, (iv) permit any other entity to become Tenant hereunder by merger, consolidation, or other reorganization, (v) if Tenant is an entity other than a corporation whose stock is publicly traded, permit the transfer of an ownership interest in Tenant that results in a Material Change in Ownership (defined below) (each, a "**Transfer**"), without first procuring the written consent of the Landlord, which consent may not be unreasonably withheld or delayed.  Any Transfer, whether voluntary or involuntary, by operation of the law or otherwise, without the prior written consent of Landlord first had and obtained therefor, shall be null and void, at the option of Landlord, and Landlord may declare a default and exercise all remedies available to Landlord under this Lease or at law.  Notwithstanding the foregoing provisions of this Section 15.1 to the contrary, Tenant may sublet the Premises to Professionals and/or Physicians associated with the Hospital.

15.2   <u>Material Change in Ownership</u>.  If Tenant is an entity of any type, then the sale, transfer or other change of 49.9% or greater of the ownership interests of Tenant shall constitute a "**Material Change in Ownership**", in which event Landlord shall consent to the resulting Transfer provided that Tenant provides to Landlord (i) at least thirty (30) days' prior written notice of such anticipated Material Change in Ownership, (ii) all relevant details of the proposed Material Change in Ownership, including updated financial statements reflecting the financial condition of the proposed assignee post Material Change in Ownership ("**Post Material Change in Ownership Financial Statements**"), and (iii) the Post Material Change in Ownership Financial Statements reflecting a minimum Tangible Net Worth of $150,000,000. As used herein, "**Tangible Net Worth**" means the excess of total assets over total liabilities, in each case as determined in accordance with generally accepted accounting principles consistently applied ("**GAAP**"), excluding, however, from the determination of total assets all assets that would be classified as intangible assets under GAAP including, goodwill, licenses, patents, trademarks, trade names, copyrights, and franchises.

15.3   <u>Liability; Release</u>.  Tenant shall not be released from any liability or obligation under this Lease as a result of any Transfer or Landlord's consent to any Transfer; provided, however, if (i) Landlord consents to a proposed Transfer that would occur as a result of (A) any other entity becoming Tenant hereunder by merger, consolidation, or other reorganization, (B) any transfer of an ownership interest in Tenant that results in a Material Change in Ownership or (C) any assignment of this Lease for the remainder of the Term, and (ii) the entity comprising Tenant after such Transfer has a Tangible Net Worth together with any new guarantor that is equal to or greater than (1) the aggregate Tangible Net Worth of Tenant and Guarantor at the time of this Lease and (2) a minimum Tangible Net Worth of $150,000,000, then Tenant shall be released from further liability under this Lease for the unexpired Term following such Transfer. Tenant shall provide to Landlord any information reasonably requested by Landlord to evaluate the satisfaction of any Tangible Net Worth requirements contemplated in this Section 15.

15.4   <u>Conditions to Consent</u>. Landlord may condition its consent to any assignment or subletting (i) upon Tenant's agreement to termination of this Lease and simultaneous creation of a new lease between Landlord and the proposed successor, or (ii) upon Tenant's agreement simultaneously with the execution of any sublease or assignment approved by Landlord, to name Landlord its agent for purposes of collection of rental from the subtenant approved by Landlord under any such sublease or assignment (in order to enable Landlord to maintain its collection and other relationships).

15.5   <u>Transactions Consented To</u>. Each Transfer to which there has been consent shall be by an instrument in writing in form satisfactory to Landlord and shall be executed by the transferor, assignor, sublandlord, licensor, concessionaire, hypothecator or mortgagor and the transferee, assignee, subtenant, licensee concessionaire or mortgagee in each instance, as the case may be, and each transferee, assignee, subtenant, licensee, concessionaire or mortgagee shall agree in writing for the benefit of the Landlord herein to assume, to be bound by, and to perform the terms, covenants and conditions of this Lease to be done, kept and performed by the Tenant. One (or more, if required by Landlord) executed copy of such written instrument shall be delivered to Landlord.  Failure to first obtain in writing Landlord's consent or failure to comply with the provisions of this Article shall operate to prevent any such transfer, assignment, subletting, license, concession agreement or hypothecation from becoming effective.

## 16.   <u>WASTE, NUISANCE, APPLICABLE LAWS.</u>

16.1   <u>Waste and Nuisance</u>. Tenant shall not commit or suffer to be committed any waste in or upon the Premises and shall not commit or suffer to be committed therein any nuisance or other act or thing which may disturb the quiet enjoyment of any other tenant in the Building, or which may disturb the quiet enjoyment of any person within the immediate vicinity of the Building.

16.2    <u>Tenant's Compliance with Laws</u>. Tenant shall, at Tenant's sole cost and expense, comply with all the requirements of all federal, state, county, municipal and other applicable authorities, now in force or which may hereafter be in force in connection with Tenant's use of the Premises.

## 17.    <u>DESTRUCTION</u>.

17.1    <u>Notice of Loss</u>. Tenant shall give immediate notice to Landlord in the event of fire or other accidents or casualties within the Premises or in or around the Building, and such other notice as prescribed by the fire and extended coverage insurance policy required herein to be carried thereon, and further, Tenant shall give immediate notice to Landlord of any defect in any of the fixtures or equipment located within the Premises or in or around the Building.

17.2    <u>Premises Useable</u>. In the event the Premises shall be damaged by fire or other casualty, but shall not be rendered wholly or partially unusable, regardless of the time remaining in the Term, Landlord shall cause such damage to be repaired, and the Base Rent shall not be reduced or abated unless the repairs are delayed beyond ninety (90) days after commencement of such repairs, and thereafter, only if Landlord is not diligently pursuing such repairs, and then only to the extent as may be equitable based upon the amount of damage.

17.3    <u>Premises Unusable</u>. If the Premises shall be rendered partially or wholly unusable, Landlord shall cause such damage to be repaired and the Base Rent shall be reduced in proportion to Tenant's loss of effective use of the Premises during such repair.

17.4    <u>Building Damaged</u>. In the event all or part of the Building, other than the Premises, shall be damaged or destroyed by fire or other casualty, and regardless of the time remaining in the Term, Landlord shall cause such damage to be repaired. Neither Base Rent nor any other sums due hereunder shall be abated or reduced.

17.5    <u>Scope of Repair</u>. In the event Landlord elects or shall be obligated to repair or restore any damage or destruction as aforesaid, the scope of the work shall be limited to the shell of the Building and Lease Premises. Landlord shall not be required to make repairs or replacements of any panels, decoration, trade fixtures, railings, floor covering, partitions or other parts of the Interior of the Premises or any other property installed or placed in the Premises by Tenant.

17.6    <u>Commencement of Repairs</u>.  Anything to the contrary herein notwithstanding, Landlord shall not be required to commence repairs and/or restoration prior to the expiration of sixty (60) days following the occurrence or the receipt by Landlord of the insurance proceeds covering said damage, whichever event shall first occur.

## 18.    <u>CONDEMNATION</u>.

18.1    <u>Total Taking</u>. If all of the Premises should be taken for any public or quasi public use under any governmental law, ordinance or regulation or by right of eminent domain or by private purchase in lieu thereof, then this Lease shall terminate and the Rent shall be abated during the unexpired portion of the Term, effective on the date physical possession is taken by the condemning authority.

18.2    <u>Partial Taking</u>. If any part (but not all) of the Building, Common Areas or the Premises should be so taken, Landlord may terminate this Lease if Landlord, in its sole discretion, so elects. Any election to terminate this Lease in accordance with this provision shall be evidenced by written notice of termination to Tenant within thirty (30) days after the date physical possession is taken by the condemning

authority. If this Lease is not so terminated, the Base Rent payable hereunder during the unexpired portion of the term shall be reduced in proportion to the area of the Premises taken, effective on the date physical possession is taken by the condemning authority.

18.3    Award.  All compensation awarded for any taking (or the proceeds of private sale in lieu thereof) of the Building, the Premises or the Common Areas shall be the property of Landlord and Tenant hereby assigns its interests in any such award to Landlord

## 19.    QUIET ENJOYMENT.

So long as Tenant shall pay all Rent and other payments due hereunder and shall observe and perform all of the covenants on Tenant's part to be observed and performed hereunder, and Tenant is not in default hereunder (beyond any applicable notice or cure periods), Tenant shall peaceably and quietly hold and enjoy the Premises (including easement rights) for the entire Term hereof without interruption by Landlord or person or persons lawfully or equitably claiming by, through or under Landlord, subject, nevertheless, to all of the terms and provisions of this Lease and to the reservations, encumbrances and limitations affecting the title to the premises upon which the Building is situated.

## 20.    DEFAULT AND REMEDIES.

20.1    Default. The following events shall be deemed to be the events of default by Tenant under this Lease:

(1)    Tenant shall fail to pay any installment of the Base Rent or any Additional Rent within five (5) business days after receipt of written notice of such failure from Landlord. Notwithstanding the foregoing, Landlord shall not be obligated to provide written notice more than twice in any twelve (12) month period.

(2)    Tenant shall fail to comply with any term, provision or covenant of this Lease, other than the payment of any sums due Landlord, including but not limited to, the Base Rent or any Additional Rent, and Tenant shall not cure such failure within thirty (30) days after written notice thereof of Tenant (or such shorter notice period as may be provided elsewhere in this Lease for specific events of default); provided, however, that if such failure cannot be reasonably cured within thirty (30) days, then Tenant shall have such additional time to cure as is reasonable under the circumstances provided that Tenant diligently continues to pursue such cure.

(3)    An event of default shall occur and remain uncured within the time stated for such cure under any Related Lease.

(4)    Tenant or any guarantor of Tenants' obligations hereunder shall become insolvent in any chapter of the United States Bankruptcy Code, or shall make a transfer in fraud of creditors, or shall make an assignment for the benefit of creditors.

(5)    Tenant or any guarantor shall file a petition under any section or chapter of the United States Bankruptcy Code, or under any similar law or statute of the United States or any state thereof; or Tenant shall be adjudged bankrupt or insolvent as defined in any chapter of the United States Bankruptcy Code in proceedings filed against Tenant or any guarantor of Tenant's obligations under this Lease.

(6)     A receiver or trustee shall be appointed for the Premises or for all or substantially all of the assets of Tenant or any guarantor and such receiver or trustee shall not be discharged within thirty (30) days following such appointment.

(7)     The discovery by Landlord that any financial statement given by Tenant or any of its assignees, subtenants or successors-in-interest, or any guarantor of Tenant's obligations hereunder to Landlord, was materially false.

20.2    Remedies.

(1)     Upon the occurrence of any event of default hereunder, and notwithstanding the fact that the termination or cancellation of this Lease by Landlord may substantially interfere with the ability of Tenant to conduct a non-liquidation proceeding under any chapter of the United States Bankruptcy Code, Landlord shall have the option to pursue any one or more of the following remedies without any notice or demand whatsoever.

(i)      Terminate this Lease, in which event Tenant shall immediately surrender the Premises to Landlord, and if Tenant fails to do so, Landlord may, without prejudice to any other remedy which Landlord may have for possession or arrearages in Rent, enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying said Premises or any part thereof, without being liable for prosecution or any claim for damages therefor and Tenant agrees to pay Landlord, on demand, the amount of all losses, expenses and damages, including attorneys' fees, which Landlord may suffer by reason of such termination; and/or

(ii)     Enter upon the Premises and correct such default or otherwise do whatever Tenant is obligated to do under the terms of this Lease; and Tenant agrees to pay Landlord, on demand, the amount of all  losses, expenses and damages, including attorneys' fees which Landlord may incur in connection with attempts to effect compliance with Tenant's obligations under this Lease, and Tenant further agrees that Landlord shall not be liable for prosecution or  any claim for damages resulting to Tenant from such action, and/or

(iii)    Enter upon and take possession of the Premises and expel or remove Tenant and any other person who may be occupying said Premises or any part thereof, without being liable for prosecution or any claim for damages therefor, and if Landlord so elects, relet the Premises on such terms as Landlord may deem advisable and receive rental therefor.

Pursuit of any of the foregoing remedies shall not preclude pursuit of any other remedies herein provided or provided by law, or at equity, nor shall pursuit of any other such remedy constitute a forfeiture or waiver of any Rent or other sums due to Landlord hereunder or of any damages accruing to the Landlord by reason of the violation of any of the terms, provisions and covenants herein contained. Forbearance by Landlord to enforce one or more of the remedies herein provided upon an event of default shall not be deemed or construed to constitute a waiver of such default. In determining the amount of loss or damage which Landlord may suffer by reason of termination of this Lease or the deficiency arising by reason of any reletting by Landlord as above provided, allowance shall be made for the expense of repossession and any repairs or remodeling undertaken by Landlord following repossession.

(2)     Exercise by Landlord of any one or more remedies herein granted or otherwise available shall not be deemed to be an acceptance of surrender of the Premises by Tenant, whether by agreement or by operation of law it being understood that such surrender can be effected only by the written agreement of Landlord and Tenant. No removal or other exercise of dominion by Landlord over the property of Tenant or others at the Premises shall be deemed unauthorized or constitute a conversion. Tenant hereby consenting, after any event of default, to the aforesaid exercise of dominion over Tenant's property within the Building. All claims for damages by reason of such reentry and/or repossession and/or alteration of locks or other security devices are hereby waived, as are all claims for damages by reason of any distress warrant, forcible detainer proceedings, sequestration proceedings or other legal process. Tenant agrees that any reentry by Landlord may be pursuant to judgment obtained in forcible detainer proceedings or other legal proceedings, as Landlord may elect and Landlord shall not be liable in trespass or otherwise,(after deducting expenses incurred by Landlord as provided herein). In no event shall Tenant be entitled to any excess of any rental obtained by reletting over and above the Rent herein reserved. Actions to collect amounts due by Tenant as provided in this paragraph may be brought from time to time, on one or more occasions, without the necessity of Landlord's waiting until expiration of the Lease Term.

(3)     In the event Landlord elects to terminate this Lease by reason of event or default, then notwithstanding such termination, Tenant shall be liable for and shall pay to Landlord, at Landlords Address as defined in <u>Section 1</u> herein, the sum of all Rent, Additional Rent and other indebtedness accrued to the date of such termination, plus, as damages, an amount equal to the present value of the Rent and any and all other sums reserved hereunder for the remaining unexpired portion of the Lease Term (had the Lease not been so terminated by Landlord), less the then present value of the then fair rental value of the Premises.

(4)     In the event Landlord elects to repossess the Premises without terminating the Lease, then Tenant shall be liable for and shall pay to Landlord at Landlords Address as defined in <u>Section 1</u> hereinabove, all Rent and other indebtedness accrued to date of such repossession, plus all Rent and any and all other sums required to be paid by Tenant to Landlord during the remainder of the Lease Term until the date of expiration of the Term, diminished by any net sums thereafter received by Landlord through reletting the Premises during Period (after deducting expenses incurred by Landlord as provided herein). In no event shall Tenant be entitled to any excess of any rental obtained by reletting over and above the Rent herein reserved. Actions to collect amounts due by Tenant as provided in the paragraph may be brought from time to time, on one or more occasions, without necessity of Landlord's waiting until expiration of the Lease Term.

(5)     In the event of termination or repossession of the Premises for an event of default, Landlord shall have an obligation to attempt to relet the Premises, or any portion thereof. However, in the event of reletting Landlord may relet the whole or any portion of the Premises for any period, to any tenant, and for any use and purpose. Should Landlord choose to relet the Premises, or any portion thereof, for the remainder of the Term provided for herein, and if the rental received through reletting does not at least equal the Rent provided for herein, Tenant shall pay and satisfy the deficiency between the amount of the Rent so provided for and that received through reletting, including, but not limited to, the cost of renovating, altering, and decorating for a new occupant. Further, Tenant shall not in any event ever be entitled to any excess rental and other sums provided for herein, and the same shall belong solely to Landlord. Nothing herein shall be construed as in any way denying Landlord the right, in the event of abandonment of said Premises or other breach of this Lease by Tenant, to treat the same as an entire breach and at Landlord's option to terminate this Lease and/or immediately seek recovery for the entire breach of this Lease and any and all damages which Landlord suffers thereby.

(6)     If Tenant should fail to make any payment or cure any default hereunder within the time herein permitted, Landlord, without being under any obligation to do so and without thereby waiving such default, may make such payment and/or remedy such other default for the account of Tenant (and enter the Premises for such purpose), and thereupon Tenant shall be obligated and hereby agrees, to pay Landlord, upon demand, all costs, expenses and disbursements (including reasonable attorneys' fees) incurred by Landlord in taking such remedial action.

(7)     In the event of the breach or the attempted or threatened breach of any covenant or provision contained in this Lease by Tenant, Landlord shall have, in addition to all other remedies provided it hereunder or by law or at equity, the right to obtain an injunction prohibiting such breach or attempted breach without the necessity for proof of inadequacy of legal remedy, irreparable harm or probable right of recovery.

20.3    <u>Expenses/Attorneys' Fees</u>. In the case of an event of default hereunder, Tenant shall also be liable for and shall pay to Landlord, at Landlords Address as defined in <u>Section 1</u> herein, in addition to any sum provided to be paid above: broker's fees incurred by Landlord in connection with reletting the whole or any part of the Premises; the costs of removing and storing Tenant's or other occupant's property; the costs of repairing, altering, remodeling or otherwise putting the Premises into condition acceptable to a new tenant or tenants, and all reasonable expenses incurred by Landlord in enforcing Landlord's rights or remedies, including reasonable attorneys' fees and court costs until the expiration of the Term.  Tenant shall permit the Landlord to exhibit the Premises to prospective tenants and to place notices upon the Premises advertising "For Lease".  Landlord may at any time, exhibit the Premises to prospective purchasers. and place notices, upon the Building or the Premises advertising "For Sale."

20.4    <u>Landlord's Breach</u>.  In the event of any default by Landlord, Tenant's exclusive remedy shall be an action for damages (Tenant hereby waiving the benefit of any laws granting it a lien upon the property of Landlord and/or upon rental due Landlord), but prior to any such action Tenant will give Landlord written notice specifying such default with particularity, and Landlord shall thereupon have thirty (30) days in which to cure any such default. Unless and until Landlord fails to so cure any default after such notice, Tenant shall not have any remedy or cause of action by reason thereof. All obligations of Landlord hereunder will be construed as covenants, not conditions; and all such obligations will be binding upon Landlord only during the period of its possession of the Building and not thereafter.

20.5    <u>Limitation on Landlord's Personal Liability</u>. Tenant specifically agrees to look solely to Landlord's interest in the Building for the recovery for any judgment from Landlord, it being agreed that Landlord, its agents, employees, shareholders, officers, directors, and limited partners, shall never be personally liable hereunder for anything whatsoever.

## 21.    <u>ACCESS</u>.

Landlord or its agents shall have the right to enter the Premises at all reasonable times, and whenever necessary because of emergencies, to inspect the same, and to make such repairs, replacements, alterations, improvements or additions as Landlord may deem necessary or desirable, including alterations, repairs, improvements or additions to the space adjacent to Premises and/or to the Building, without the same constituting an eviction of Tenant in whole or in part, and the Rent reserved shall in no way abate while said repairs, replacements, alterations, improvements or additions are being made, by reason of loss or interruption of Tenant's business or otherwise. During the ninety (90) days prior to the expiration of the Term, Tenant shall permit the Landlord to exhibit the Premises to prospective tenants and to place notices upon the Premises advertising "For Lease".  Landlord may, at any time, exhibit the Premises to prospective purchasers, and place notices, upon the Building or the Premises advertising "For Sale."

22.     **SURRENDER AND REMOVAL OF PROPERTY.**

22.1     Surrender of Premises. Promptly upon the expiration or earlier termination of the Term, Tenant shall surrender the Premises in the same condition as received by Tenant on the Commencement Date reasonable wear and tear and damage by unavoidable casualty or Act of God only excepted. Further, Tenant shall surrender all keys to the Premises at the place then fixed for the payments of Base Rent due hereunder. All items of work and improvements comprising the Interior of the Premises, shall constitute a part of the fee estate remainder subject to this Lease, notwithstanding that Tenant may construct or cause to be constructed all or any part of said improvements or may contribute to the cost thereof, and notwithstanding that Tenant may or might be required to maintain, repair and/or replace same or some part thereof pursuant to some other provisions in this Lease. Subject to the provisions of this Section, Tenant shall remove all of Tenant's trade fixtures, operation equipment and other personal property before surrendering the Premises as aforesaid and shall repair at Tenant's expense any damage to the Premises caused thereby.

22.2     Failure to Remove Property. If Tenant shall neglect to remove Tenant's personally as herein provided, Landlord shall have the right (i) to remove said property and cause it to be stored in a public warehouse or elsewhere, at the cost of and for the account of Tenant, or (ii) in the alternative, if said property shall not be removed within thirty (30) days after said termination, to dispose of said property in a manner deemed suitable to Landlord, all without service of notice or resort to legal process and without becoming liable for any loss damage which may be occasioned thereby, and any proceeds of such disposition shall be retained by Landlord without liability to Tenant, Tenant hereby waiving any interest in such proceeds.

22.3     Survival of Covenants. Tenant's obligations to observe or perform the covenants contained in this Article shall expressly survive the expiration or earlier termination of the Term.

23.     **HOLDING OVER.**

Any holding over without the consent of Landlord after the expiration or earlier termination of the Term shall be construed to be and shall constitute a tenancy at the will of Landlord, and Tenant agrees to pay as rents and liquidated damages for such holding over a sum equivalent to the Rent herein specified and reserved plus fifty percent (50%) of the Base Rent (prorated on a monthly basis) and shall otherwise be on the same terms and conditions herein, as far as applicable.

24.     **ESTOPPEL/MEMORANDUM.**

24.1     Estoppel Certificate.  Within ten (10) days after request therefore by Landlord, Ground Lessor or any Mortgagee, Tenant shall deliver in recordable form (and signed by Tenant, if an individual, or a duly authorized representative of Tenant if Tenant is not an individual) a statement to Landlord, Ground Lessor any Mortgagee, or any proposed Mortgagee or transferee of the Project (as the case may be), certifying (if such be the case) that this Lease is in full force and effect, that Tenant is in possession of the Premises, that Tenant has commenced the payment of Rent, that there are no defenses or offsets to this Lease claimed by Tenant, as well as any other information reasonably requested.  If Tenant fails or refuses to give a certificate hereunder within the time period herein specified, then the information contained on such certificate as submitted by Landlord shall be deemed correct for all purposes, but Landlord shall have the right to treat such failure or refusal as a default by Tenant.

24.2     Memorandum of Lease. Promptly after the Commencement Date, Landlord and Tenant, if requested by Landlord, shall execute and acknowledge and deliver a memorandum or short form of this Lease, in recordable form, acknowledging Tenant's acceptance of the Premises for all purposes herein

provided and specifying the Commencement Date and the termination date of this Lease in accordance with the provisions hereof, and said memorandum may be recorded by Landlord only, but this Lease Agreement itself shall not be recorded. In the event Tenant records a memorandum of this Lease, or this Lease, Tenant shall be in default under this Lease and Landlord may terminate this Lease upon five (5) days written notice to Tenant at Tenant's address set forth in <u>Section 1.1</u> hereof.

## 25. <u>NOTICES.</u>

All notices required or permitted to be given hereunder by either party hereto to the other party shall be deemed sufficiently given or made on the day of receipt thereof or three (3) business days after the date when mailed by United States Registered or Certified Mail, adequate postage paid, to their respective addresses as specified in <u>Section 1.1</u> hereof. Each party hereto may notify the other party of any change in its mailing address by notice in the manner herein above provided, which new address shall thereafter be deemed the proper address for notice hereunder.

## 26. <u>TENANT'S PAYMENTS.</u>

26.1     <u>Payments</u>. Tender of Rent and/or any other payment due hereunder shall be considered to have been made on the date such payments received by Landlord and not on the date mailed by Tenant. For purposes hereof, the office of Landlord is the office presently or henceforth designated pursuant to the provisions of <u>Section 1.1</u> hereof. Checks or drafts tendered will constitute payment only when duly paid by the drawers bank promptly upon presentment, properly endorsed, for payment.

26.2     <u>Interest</u>. All sums due and owing by Tenant to Landlord under this Lease shall bear interest at the Prime Rate (as defined in the *Wall Street Journal*) plus four percent (4%) from the date due until paid.

## 27. <u>LANDLORD'S LIEN.</u>

To secure the payment of all Base Rent, and Additional Rent reserved herein, and all other payments due Landlord hereunder, or to become due hereunder and the faithful performance of all covenants, agreements and stipulations herein contained to be performed by Tenant, Tenant hereby grants to Landlord an express first and prior contract lien and security interest on all property (including fixtures, equipment, inventory, goods, wares, furniture, office equipment, supplies and merchandise) which may be placed in the Premises, and also upon all proceeds of any insurance which may accrue to Tenant by reason of destruction of or damage to any such property. Tenant hereby waives all exemption laws in favor of said lien and security interest. This lien and security interest is given in addition to the Landlord's statutory lien and shall be cumulative thereof. Tenant shall not remove any property from the Premises until all of Tenant's obligations under this Lease are satisfied. This lien may be foreclosed with or without court proceedings by public or private sale, provided Landlord gives Tenant at least ten (10) days notice of the time, place and terms of said sale, and Landlord shall have the right to become the purchaser of such property, upon being the highest bidder therefor at said sale. The notice referred to in the preceding sentence may (but needs not) be given by Landlord to Tenant contemporaneously with any other notice from Landlord to Tenant which may be given in accordance herewith. At the time of the execution of this Lease, and if requested thereafter by Landlord, Tenant shall execute and deliver to Landlord financing statement instruments in form deemed sufficient by Landlord to reflect the security interest herein granted and any proper amendment of, assignment of, modification in or extension of the aforesaid contract lien and security interest hereby granted. Tenant hereby grants to Landlord a power of attorney to sign, in place and stead of Tenant, any and all such instruments. Said power of attorney is irrevocable and coupled with an interest.

28.    **RULES AND REGULATIONS.**

   Such reasonable rules and regulations applying to all tenants in the Building as may be adopted by Landlord for the safety, care, cleanliness, preservation of good order or operation of the Premises, the Building, the Property and the Common Areas, are hereby made a part hereof and Tenant agrees to comply with all such rules and regulations, immediately upon receipt of a copy of same. Landlord shall have the right at all times to change any of the rules and regulations or to amend them in any manner deemed reasonable by Landlord. All changes and amendments will be sent by Landlord to Tenant in writing and shall be thereafter carried out and observed by Tenant.  As of the Effective Date, the rules and regulations are set forth on Exhibit D.

29.    **BROKERS.**

   None.

30.    **AUTHORITY.**

   Each of the persons executing this Lease on behalf of Tenant represents and warrants that Tenant has been and is qualified to do business in the state in which the Building is located, that the Tenant Entity has full right and authority to enter into this Lease, and that all persons signing on behalf of the Tenant Entity were authorized to do so by all appropriate actions required of such entity.  If Tenant signs as a partnership, trust or other legal entity, each of the persons executing this Lease on behalf of Tenant represents and warrants that Tenant has complied with all applicable laws, rules and governmental regulations relative to its right to do business in the state in which the Building is located, and that each of the persons or entities acting on behalf of the Tenant was authorized to do so by any and all appropriate partnership, trust or other actions.

31.    **LIABILITY OF LANDLORD.**

   Tenant shall look solely to Landlord's interest in the Building, including revenue derived from the Project, and Landlord's personal property used in connection with the Project for the satisfaction of any judgment or decree requiring the payment of money by Landlord, based upon any default hereunder, and no other property or asset of Landlord shall be subject to levy, execution, or other enforcement procedure for the satisfaction of such judgment or decree.  **IN NO EVENT SHALL LANDLORD BE LIABLE OR RESPONSIBLE FOR ANY CONSEQUENTIAL, INCIDENTAL OR SPECIAL DAMAGES.**

32.    **SCOPE AND INTERPRETATION OF AGREEMENT; CONFIDENTIALITY.**

   This Lease and all Exhibits set forth including all of the covenants, promises, agreements, conditions, and understandings between Landlord and Tenant concerning the Premises, and there are no covenants, promises, conditions, or understandings, either oral or written, other than as set forth herein.  No subsequent alteration, change or addition to this Lease shall be binding upon Landlord or Tenant unless reduced to writing and signed by both parties.  This Lease shall not be more strictly enforced against either party regardless of who was more responsible for its preparation.  Except at Landlord's option, no part of this Lease or any memorandum thereof may be recorded in the public records of any municipality or county.  Tenant will maintain the confidentiality of this Lease and will not divulge the economic or other terms of this Lease, whether verbally or in writing, to any person, other than Tenant's officers, directors, partners or shareholders; Tenant's attorneys, accountants and other professional consultants; any governmental agencies; and pursuant to subpoena or other legal process.  If any provision of this Lease shall be determined to be void by any court of competent jurisdiction or by any law enacted subsequent to the

23

Effective Date, then such determination shall not affect any other provisions hereof, all of which other provisions shall remain in full force and effect.

33.   **LANDLORD'S CONSENT.**

Without limiting any other provision of this Lease, in the event that Landlord's consent is required by the terms hereof for any purpose whatsoever, it is understood and agreed that (a) Landlord's consent may be subject to the consent of the Ground Lessor, Declarant  and/or the holder of any Mortgage encumbering the Building to the extent that such consents are required under the terms of the Ground Lease, Declaration or the applicable financing documents (which consents Landlord shall seek to obtain) and (b) notwithstanding anything to the contrary set forth herein, it shall not be deemed unreasonable for Landlord to withhold its consent in any given circumstance based upon Landlord's inability to obtain any required consent from the Ground Lessor, Declarant or the holder of any Mortgage encumbering the Building.

34.   **USE OF PREMISES.**

Tenant shall use and occupy the Premises only for the Permitted Use, and for no other purpose, without the prior written consent of Landlord.

35.   **GUARANTY.**

As material consideration for Landlord to enter this Lease, Tenant shall cause Guarantor to execute the Guaranty attached as Exhibit E (the "**Guaranty**"), and Tenant shall deliver the Guaranty to Landlord contemporaneously with Tenant's execution hereof.

36.   **WAIVER OF JURY TRIAL.**

LANDLORD AND TENANT HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO A TRIAL BY JURY WITH RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS LEASE OR THE OBLIGATIONS EVIDENCED HEREBY, OR ANY OTHER DOCUMENT OR INSTRUMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF ANY PARTY.  THIS PROVISION IS A MATERIAL INDUCEMENT TO EACH OF LANDLORD AND TENANT IN ENTERING INTO THIS LEASE.

37.   **MISCELLANEOUS.**

37.1   Successors and Assigns. All rights and liabilities herein granted to or imposed upon the respective parties hereto shall extend to and jointly and severally bind the several respective heirs, legal representatives, successors and assigns of the respective parties hereto, an if there shall be more than one Landlord or Tenant, all shall be bound jointly and severally the terms, conditions and agreements herein contained. No rights, however, shall inure to the benefit of any assignee of Tenant unless Landlord has approved the assignment to such assignee in writing as provided herein.

37.2   Waivers. One or more waivers of any breach or violation of any agreement, covenant or condition herein contained shall not be deemed to be a waiver of any subsequent violation or breach of the same or any other agreement, covenant, or condition herein contained, and the consent or approval by either party of any act by the other, which act requires the approval or consent of the other party, shall not be deemed to waive or render unnecessary the future requirements of consent or approval of the same or

similar act; and the subsequent acceptance of Rent or other payment due hereunder shall not be deemed to be a waiver of any preceding breach by Tenant, other than failure of Tenant to pay the particular Rent so accepted, regardless of Landlord's knowledge of such preceding breach at the time of the acceptance of said Rent. No express covenant, term or condition of this Lease shall be deemed to have been waived by either party, unless such waiver is in writing.

37.3    Accord and Satisfaction. No payment made by Tenant or received by Landlord in an amount less than the amount herein stipulated shall be deemed to be other than on account of the earliest received payment, nor shall any endorsement or statement on any check or any letter accompanying any check or payment as Rent be deemed an accord and satisfaction, and Landlord may accept any such check or payment without prejudice to Landlord's right to recover the balance of such amount or to pursue any other remedy in this Lease or by law provided Landlord.

37.4    Entire Agreement. This Lease, together with the exhibit or exhibits aforesaid and the rider or riders, if any, attached hereto and forming a part hereof, contains and sets forth the entire agreement and understandings between the parties hereto concerning the Premises, and there are no covenants, promises, agreements, conditions or understandings, either oral or written, between said parties other than as herein expressly set forth. Except as herein otherwise provided, no subsequent alteration, amendment, change or addition to this Lease shall be binding upon either party hereto, unless reduced to writing and signed by both parties.

37.5    Partnership. Landlord does not become a partner of Tenant in the conduct of its business or otherwise, or a joint venturer or a member of a joint enterprise with Tenant by virtue of this Lease.

37.6    Force Majeure.  In the event Landlord shall be delayed, hindered or prevented from the performance of any act required hereunder by reason of strikes, fire, explosions, lock-outs, failure of electrical power, governmental restrictions or regulations, unavailability of suitable financing, materials and/or labor, riots, insurrection, war or on account of any other condition or occurrence not the fault of Landlord, then the performance of any such act shall be extended for a period equivalent to the period of such delay.

37.7    Captions and Numbers.  The captions, section numbers and article numbers appearing in this Lease are inserted only as a matter of convenience and in no wise define, limit, construe or describe the scope or intent of such sections or articles, nor in any wise affect this Lease.

37.8    Tenant, Defined Use of Pronouns. The word "**Tenant**" shall be deemed and taken to mean each and every person or party mentioned as a Tenant herein, be the same one or more and if there shall be more than one Tenant. Any notice required or permitted by the terms of this of Lease may be given by or to any one thereof and shall have the same force and effect as if given by or to all thereof. The use of the neuter singular pronoun to refer to Landlord or Tenant shall be deemed a proper reference even though Landlord or Tenant may be an individual, a partnership, a corporation, and a group of two or more individuals or corporations. The necessary grammatical changes required to make the provisions of this Lease apply in the plural sense where there is more than one Landlord or one Tenant, and to either corporations, associations, partnerships or individuals, males or females, shall in all instances be assumed as though in each case fully expressed.

37.9    Severability. If any provisions covenant or condition of this Lease or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, there reminder of this Lease, or the application of such provision, covenant or condition to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby and each provision,

covenant or condition of this Lease shall be valid and shall be enforced to the fullest extent permitted by Law.

37.10   Survival. Landlord and Tenant expressly agree that all provisions of this Lease which contemplate performance after the expiration or earlier termination hereof shall survive such expiration or earlier termination of this Lease.

37.11   Governing law. This Agreement shall be construed in accordance with and governed by the laws of the State of Texas.  Venue for any legal actions hereunder shall be in the Courts of Grayson County, Texas.

37.12   Other documents. The parties agree to execute all other documents or instruments necessary to effect the transfers of property set forth herein and otherwise to implement the provisions of this Agreement.

## 38.   **EXHIBITS**

The following exhibits are a part of this Lease and are incorporated herein by reference:

Exhibit A – Legal Description
Exhibit B – Floor Plan of the Premises
Exhibit C – Parking Areas
Exhibit D – Rules and Regulations
Exhibit E – Guaranty

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

EXECUTED as of the date first set forth above in multiple counterparts each of which shall be deemed to be an original.

**LANDLORD**:

ALTERA HIGHLAND LLC,
a Texas limited liability company

By:_____
Name:  Terry D. Quinn
Its:       President

**TENANT**:

SHERMAN/GRAYSON HEALTH SYSTEM, LLC,
a Texas limited liability company

By:_____
Name:_____
Its:_____

EXECUTED as of the date first set forth above in multiple counterparts each of which shall be deemed to be an original.

**LANDLORD**:

ALTERA HIGHLAND LLC,
a Texas limited liability company

By:_____
Name:  Terry D. Quinn
Its:      President

**TENANT**:

SHERMAN/GRAYSON HEALTH SYSTEM, LLC,
a Texas limited liability company

By:_____
Name:  Thomas J. Frazier, Jr.
Its:      Executive Vice President

EXHIBIT A

LEGAL DESCRIPTION

BEING a 3.0894 acre tract of land situated in the County of Grayson, State of Texas out of the J.B. McAnair Survey, Abstract No. 763 and being all of Block No. 7, and a portion of Lots 7-8, and all of Lots 9-12, Block 12 of Green Mount Addition to the City of Sherman, Grayson County, Texas, as shown by Plat of record in Volume 193, Page 21, Deed Record, Grayson County, Texas,  together with that  portion of vacated Pecan Street, and being more particularly described by meets and bounds as follow:

BEGINNING at a "X" cut in concrete found for corner at the intersection of the north line of Laurel Street (a 60 foot wide public right-of-way) and the east line of Bryant Avenue (a 60 foot wide public right-of-way);

THENCE North 15 degrees 40 minutes 01 seconds West (Reference for Basis of Bearings) along said east right-of-way line, a distance of 467.78 feet to a 5/8 inch iron rod set with cap stamped BGT for corner;

THENCE North 73 degrees 42 minutes 45 seconds East, a distance of 286.25 feet to a 5/8 inch iron rod set with cap stamped BGT for corner in the west right-of-way line of Highland Avenue;

THENCE South 16 degrees 01 minutes 19 seconds East along said west right-of-way line, a distance of 467.76 feet to a 1/2 inch iron rod with cap found for corner at the intersection of the west right-of-way line of said Highland Avenue and the north right-of-way line of said Laurel Street;

THENCE South 73 degrees 42 minutes 45 seconds West along said north right-of-way line, a distance of 289.15 feet to the POINT OF BEGINNING and containing 134,573 square feet or 3.0894 acres of land, more or less.

<u>EXHIBIT B</u>

FLOOR PLAN OF THE PREMISES

[ATTACHED]



St 365
Karim

St 350
Shell Space

St 315A
Sublease - EP Drs.

St 315
Drs Joshi - Tocatjian - Engleman

St 315A

Dan Burbine Associates
Architects & Project Managers
12532 Renoir Lane   Dallas, Texas  75230

St 340
Gregory - Clarke

St 330
Anjum - Crawford

St 320
Cernero

St 310 - DaSilva

north

plan
orientation

**3rd FLOOR PLAN**
s c a l e : 1/8" = 1' - 0"

5        20
0     10

22 539

PROJECT
WNJ  Wilson N. Jones

MEDICAL
OFFICE
BUILDING

REVISIONS

DATE
11 MAY 2005

SHEET
A-3

FOLDER
3 of 9



St 455
Zurigat-Kable

St 445
ENT Space
VACANT

St 415
Buckingham-Schrank-Lucchese

St 410
Shell Space

St 430
Urban24K

St 400
Shell Space

**4th FLOOR PLAN**
s c a l e : 1/8" = 1'-0"

north
plan orientation

23404 SF

Dan Burbine Associates
Architects & Project Managers
12532 Renoir Lane   Dallas, Texas  75230

PROJECT
WNJ Wilson N. Jones
MEDICAL OFFICE BUILDING

REVISIONS

DATE
11 MAY 2025

SHEET
A-4



St 545
VACANT

St 550
Shaw-Breeze

St 500
VACANT

St 542
Gajda

St 540
Davies

St 530
Rue

St 510
Sr Passport

Shell
Space

north
plan
orientation

**5th FLOOR PLAN**
s c a l e : 1/8" = 1' - 0"

5       20
0   10

22726

**Dan Burbine Associates**
Architects & Project Managers
12532 Renoir Lane   Dallas, Texas   75230

PROJECT

WNJ  Wilson N. Jones

MEDICAL
OFFICE
BUILDING

REVISIONS

DATE
11 MAY 2000
FOLIO/H

SHEET
A-5
5 of 8

<u>EXHIBIT C</u>

<u>PARKING AREAS</u>

[ATTACHED]



TRACT FIFTEEN:

Being a part of Block No. Eight (8), of G. Y. Gray's Second Addition to the City of Sherman, Texas, and further described as follows:

BEGINNING at the intersection of the South line of Laurel Street with the West line of Highland Avenue as now opened;
THENCE West 140 feet with the South line of Laurel Street to a stake, for the Northwest corner;
THENCE South parallel with Highland Avenue 75 feet to a stake;
THENCE East parallel with Laurel Street 140 feet to a stake in the West line of Highland Avenue;
THENCE North with said line of Highland Avenue 75 feet to the place of beginning, containing a tract of 140 x 75 feet.

TRACT SIXTEEN of the County of Grayson, State of Texas, all that certain tract or parcel of land situated in the City of Sherman, Grayson County, Texas, being a part of the survey originally granted to John B. McAnair, and being a part of Block Eight (8) of Gray's Second Addition, as shown by the map or plat thereof, recorded in Volume 134, page 113, of the Deed Records of Grayson County, Texas, and being more particularly described as follows:

BEGINNING at a point on the West line of Highland Avenue, 125 feet South of the intersection of the West line of Highland Avenue, and the South line of Laurel Street;
THENCE Southward with the West line of Highland Avenue, 45 feet;
THENCE Westward and parallel with the South line of Laurel Street, 140 feet;
THENCE Northward and parallel with the West line of Highland Avenue, 45 feet;
THENCE Eastward, parallel with the South line of Laurel Street, 140 feet to the place of beginning; this being the South 45 by 140 feet of the tract 95 by 140 feet, in size conveyed by Frank Reece and wife, Mrs. Minnie Reece, to Bob Richardson by deed dated March 5, 1924, and recorded in Volume 303, Page 153 of the Deed Records of Grayson County, Texas.

TRACT SEVENTEEN:

SITUATED in the City of Sherman, County of Grayson, Texas and being part of Block No. 8 of G. Y. Gray's Second Addition to the City of Sherman, Texas, out of J. B. McAnair Survey, Grayson County, Texas on the waters of Post Oak Creek, and described as follows:
And being the North 62 feet of the following described piece of property;
BEGINNING at the intersection of West line of Highland Ave. and the North line of Houston Street.
THENCE in a westerly direction with the North line of Houston Street 87 feet a stake.
THENCE in a Northerly direction and parallel with the West line of Highland Avenue 150 feet to a stake.
THENCE in an Easterly direction parallel with the North line of Houston Street, 87 feet to the West line of Highland Ave.
THENCE in a Southerly direction with the West line of said Highland Ave. 150 feet to the place of beginning, containing 87 x 150 feet of land.  Being the same land described in a deed from J. W. Hollingsworth and wife, Florence Hollingsworth to W. W. Craig, dated January 9, 1915, and

recorded in Volume 239, page 272, Deed Records of Grayson County, Texas.

TRACT TWENTY-FOUR:

BEING that certain tract, lot or parcel of land situated in the City of Sherman, Grayson County, Texas, in the J. B. McAnair Survey, part of Block Eight (8) of the G. Y. Gray Second Addition to the said City of Sherman;

BEGINNING at the Southwest corner of the lot conveyed by J. P. Mills and wife, to M. H. Andrews by deed recorded in Volume 57, page 107 of the Deed Records of Grayson County, Texas, a stake on the North line of West Houston Street;

THENCE North at right angles to the North line of West Houston Street 150 feet to a stake for corner;

THENCE East parallel with the North line of West Houston Street 60 feet to a stake for corner;

THENCE South at right angles to the North line of West Houston Street 150 feet to the North line of West Houston Street;

THENCE West along said line 60 feet to the Place of Beginning.

TRACT TWENTY-FIVE:

All that certain tract or parcel of land situated in Grayson County, Texas, and being more particularly described as follows: SITUATED in the City of Sherman, Grayson County, Texas, on the waters of Post Oak Creek, being a part of a survey or patent to J. B. McAnair Survey, and described as follows, to-wit:

BEGINNING at the Southeast corner of the tract described in the deed from L. M. Tuck, Receiver, to Clyde Jackson and wife, of record in Book 367, Page 344, Grayson County Deed Records;

THENCE West with the North line of Houston Street, 80 feet to the Southeast corner of a lot sold to L. V. Butler;

THENCE North with the East line of the Butler lot, 150 feet to the South line of a lot sold to Cecil J. Rodgers;

THENCE East with the South line of said Rodgers tract, 80 feet to the southeast corner or same, a stake in the East line of the tract sold to Clyde Jackson above referred to;

THENCE South with the East line of the Clyde Jackson tract, 150 feet to the place of beginning, being a lot 80 feet by 150 feet out of the Southeast corner of a tract sold by L. M. Tuck, Receiver, to Clyde Jackson and wife referred to.

Also being described as 80' x 150' our of Block 8 of G.Y. Gray's Addition to the City of Sherman.

TRACT TWENTY-SIX:

BEING all that certain lot or parcel of land, situated in the City of Sherman, Grayson County, Texas, a part of Block No. EIGHT (8) of G. Y. GRAY'S ADDITION to the City of Sherman and

being more particularly described as follows:

BEGINNING at the point of intersection of the North line of West Houston Street and the East line of Bryant Street;
THENCE North with the East line of Bryant Street for a distance of 150 feet;
THENCE East parallel with the North line of Houston Street for a distance of 70 feet;
THENCE South, parallel with the East line of Bryant Street for a distance of 150 feet to the North line of Houston Street;
THENCE West with said line for a distance of 70 feet to the Place of Beginning and containing 70 x 150 feet of land, more or less and being the same property conveyed by Alton R. Hill and wife, Laura Hill to J. B. Revell and wife, Willie B. Revell by deed dated November 10, 1952 and of record in Volume 705, Page 457 of the Deed Records of Grayson County, Texas.

TRACT TWENTY-SEVEN:

SITUATED in Sherman, Grayson County, Texas, and being a part of the J. B. McAnair Survey, and being also a part of Block 8 of G. Y. Gray's Second Addition to Sherman, Texas, and being a part of a tract of 150 x 250 feet of land sold by L. M. Tuck, receiver, to Clyde Jackson, et ux., by deed recorded in Volume 367, page 344, Deed Records of Grayson County, Texas, and described as follows, to-wit:

BEGINNING at a stake on the east line of what is known as Bryant Street at a point 50 feet south of the NW corner of the above mentioned tract of 150 x 250 feet, said point being the SW corner of a tract sold by Clyde Jackson, et al., to Cecil J. Rodgers, et ux.;
THENCE South 50 feet to a stake, the NW corner of a tract now owned by L. V. Butler, et ux., as described in deed of record in Volume 506, Page 407, Deed Records of Grayson County, Texas;
THENCE East parallel with the north line of the 150 x 250 foot tract 150 feet to a stake;
THENCE North 50 feet to the SE corner of the Cecil J. Rodgers, et ux., tract;
THENCE West with the south line of the said Rodgers tract 150 feet to the place of beginning, containing 50 x 150 feet of land.

TRACT TWENTY-EIGHT:

All that certain tract or parcel of land situated in the City of Sherman, Grayson County, Texas, being a part of the Survey originally granted to J. B. McANAIR, and being a part of BLOCK NO. EIGHT (8) of GRAY'S SECOND ADDITION to said City of Sherman, as shown by the map or plat thereof, recorded in Volume 134, at Page 113, Deed Records of Grayson County, Texas, and as shown by the 1908 Plat Book of Grayson County, Texas, and being more particularly described as follows:

BEGINNING at the intersection of the West line of Highland Avenue and the North line of Houston Street;
THENCE West with the North line of Houston Street, a distance of 87 feet;
THENCE North on a line parallel with the West line of Highland Avenue, a distance of 88 feet to the Southwest corner of a tract of land deeded to Elmer L. Anderson;

THENCE East on a line parallel with the North line of Houston Street and with the South line of the Elmer L. Anderson tract, a distance of 87 feet to a point in the West line of Highland Avenue;

THENCE South with the West line of Highland Avenue, a distance of 88 feet to the Place of Beginning and Containing 87 ft. by 88 ft. of land and being the same property conveyed by Floydell Akridge, a widow, to George Melvin Hammock, et ux., by Deed dated January 12, 1972, recorded in Volume 1208, at Page 433, Deed Records of Grayson County, Texas.

TRACT TWENTY-NINE:

BEING all that certain tract or parcel of land, situated in the County of Grayson, State of Texas, being a part of survey originally granted to J. B. McAnair and described as follows, to-wit:

BEGINNING at a point on the West line of Highland Avenue, seventy-five (75) feet South of the intersection of the West line of Highland Avenue and the South line of Laurel Street in the City of Sherman;

THENCE Southward with the West line of Highland Avenue fifty (50) feet;

THENCE Westward and parallel with the South line of Laurel Street, one hundred forty (140) feet;

THENCE Northward and parallel with the West line of Highland Avenue, fifty (50) feet;

THENCE Eastward and parallel with the South line of Laurel Street, one hundred forty (140) feet to the Place of Beginning; this being the North fifty (50) feet by one hundred forty (140) feet of the tract ninety-five (95) feet by one hundred forty (140) feet in size conveyed by Frank Reese and wife, Mrs. Minnie Reese, to Bob Richardson, by deed dated March 5, 1924, and recorded in Volume 303, page 153 of the Deed Records, Grayson County, Texas; and being Lot Eight (8), Block Eight (8), of Gray's Second Addition to the City of Sherman, Grayson County, Texas.

BEING a 3.0894 acre tract of land situated in the County of Grayson, State of Texas out of the J.B. McAnair Survey, Abstract No. 763 and being all of Block No. 7, and a portion of Lots 7-8, and all of Lots 9-12, Block 12 of Green Mount Addition to the City of Sherman, Grayson County, Texas, as shown by Plat of record in Volume 193, Page 21, Deed Record, Grayson County, Texas,  together with that  portion of vacated Pecan Street, and being more particularly described by meets and bounds as follow:

BEGINNING at a "X" cut in concrete found for corner at the intersection of the north line of Laurel Street (a 60 foot wide public right-of-way) and the east line of Bryant Avenue (a 60 foot wide public right-of-way);

THENCE North 15 degrees 40 minutes 01 seconds West (Reference for Basis of Bearings) along said east right-of-way line, a distance of 467.78 feet to a 5/8 inch iron rod set with cap stamped BGT for corner;

THENCE North 73 degrees 42 minutes 45 seconds East, a distance of 286.25 feet to a 5/8 inch iron rod set with cap stamped BGT for corner in the west right-of-way line of Highland Avenue;

THENCE South 16 degrees 01 minutes 19 seconds East along said west right-of-way line, a distance of 467.76 feet to a 1/2 inch iron rod with cap found for corner at the intersection of the west right-of-way line of said Highland Avenue and the north right-of-way line of said Laurel Street;

THENCE South 73 degrees 42 minutes 45 seconds West along said north right-of-way line, a distance of 289.15 feet to the POINT OF BEGINNING and containing 134,573 square feet or 3.0894 acres of land, more or less.

EXHIBIT D

RULES AND REGULATIONS

1.	All tenants will refer all contractor's representatives and installation technicians who are to perform any work within the Building, grounds, and Parking Area to Landlord for Landlord's supervision, approval and control before the performance of any such work. This provision shall apply to all work performed in the Building, grounds and Parking Area including, but not limited to, installations of telephones, telegraph equipment, electrical devices and attachments, and any and all installations of every nature effecting floors, walls, woodwork, trim, window, ceilings, equipment and any other physical portion of the Building, grounds, and Parking Area. Tenant shall not mark, paint, drill into, or in any way deface any part of the Building or the Premises without Landlord's written consent. No boring, cutting or stringing of wires shall be permitted, except with the prior written consent of the Landlord, and as the Landlord may direct.

2.	The work of the janitorial or cleaning personnel shall not be hindered by Tenant after 5:30 pm and such work may be done at any time when the Premises are vacant. The windows doors and fixtures in the Premises and Building may be cleaned at any time. Tenant shall provide adequate waste and rubbish receptacles, cabinets, books cases, map cases, etc., necessary to prevent unreasonable hardship to Landlord in discharging its cleaning obligations.

3.	Movement in or out of the Building or through the Building entrances or lobbies of furniture or office equipment, or dispatch or receipt by Tenant of any heavy equipment, bulky material merchandise or other item which requires use of elevators or stairways, shall be restricted to such hours as Landlord shall designate. The method of such movement, routing of such movement, safety precautions associated with such movement and the prohibition of Tenant bringing any dangerous items into the Building shall be subject to the Landlord's discretion and control. Any hand trucks, carryalls, or similar appliances used for the delivery or receipt of merchandise or equipment shall be equipped with rubber tires, side guards and such other safeguards as the Landlord shall require. Although Landlord or its personnel may participate in or assist in the supervision of such movement, Tenant assumes final responsibility for all risks as to damage to property and injury to persons that may result from such participation or assistance and Tenant shall indemnify and hold harmless Landlord and Landlord's employees and agents, and reimburse Landlord and Landlord's employees and agents with respect to any and all claims, demands, causes of action and liability arising as a result of any assistance or supervision or exercise of control over Tenant's movement of items in and out of the Building.

4.	No sign, advertisement or notice shall be displayed, painted or affixed by Tenant or Tenant's employees, agents or contractors in or on any part of the outside or inside of the Building or Premises without prior written consent of Landlord, and then only of such color, size, character, style and material and in such places as shall be approved and designated by Landlord. Signs on doors and entrances to the Premises and outside of the Premises within the Building, grounds or Parking Area shall be placed thereon by a contractor approved by Landlord.

5.	Tenant shall not place, install or operate on the Premises or in any part of the Building any engine, refrigerating, heating or air conditioning apparatus, stove or machinery, or conduct mechanical operations or place or use in or about the Premises or the Building any explosives, gasoline, kerosene, oil, acids, caustics or any other inflammable, explosive, hazardous or odorous material without the prior written consent of Landlord. No portion of the Premises shall at any time be used for cooking, sleeping or lodging quarters.

6.      Tenant shall not make or permit any nuisance or improper noises in the Building or otherwise interfere in any way with other tenants or persons doing business in the Building or with Landlord's operation of the Building.

7.      Landlord will not be responsible for any fixtures, personal property, equipment, jewelry or money lost in or stolen from the Premises or public areas of the Building, grounds or Parking Area. Landlord shall not be responsible for damages to or theft of motor vehicles or other items from any Parking Areas used in connection with the Building.

8.      No maintenance or repair work shall be done on any vehicles in the Parking Area. No disabled vehicles shall be parked or stored in the Parking Area. All vehicles in the Parking Area shall be parked within the designated spaces and not in more than one (1) space or across spaces. At Landlord's option, all disabled vehicles, recreational vehicles, boats and vehicles improperly parked in spaces designated for handicapped persons and all other improperly parked vehicles may be towed or otherwise removed from the Parking Area at the owner's expense. In the event any vehicle or boat is towed, Landlord will not be liable or responsible for the loss, damage or theft of any property located in the vehicle or boat or for any damage to the vehicle or boat.

9.      Neither Tenant or Tenant's employees, agents, invitees or licensees shall at any time leave or discard any rubbish, paper, articles or objects of any kind whatsoever outside the doors of the Premises or in any other area within the Building or on the grounds or in the Parking Area. No birds, animals, bicycles or vehicles shall be brought into or kept in or about the Building.

10.     None of the entries passages, doors, hallways, or stairways in the Building shall be blocked or obstructed by Tenant Such areas shall not be used by Tenant at any time except for ingress or egress to the Premises by Tenant's, Tenant's employees, agents and invitees.

11.     Landlord shall have the right to determine and prescribe the weight and proper position of any usually heavy equipment, including but not limited to copying equipment, computer equipment, safes and large files that are to be placed in the Building. Only those items which in the exclusive judgment of the Landlord will not do damage to the floors, structure and elevators may be moved into the Building. Tenant shall pay for any damage resulting from moving or installing such articles in the Building or the existence of same in the Building.

12.     All Christmas and other decorations in the Building must be flame retardant.

13.     After hours air conditioning and heating on Monday through Saturday and all day Sunday and holidays determined by Landlord must be requested in writing by noon of a regular work day prior to the day for which additional air conditioning is requested. Tenant shall be charged at the prevailing hourly rate for the use of such air conditioning and heating.

14.     Any request by Tenant to place or remove names from the directory board in the lobby of the Building shall be furnished to Landlord in writing on Tenant's letterhead.

15.     Any services which Tenant requests Landlord to perform which Landlord is not required to perform under this Lease shall, if performed by Landlord, be billed to Tenant at Landlord's cost plus a 15% fee to cover Landlord's overhead costs. Landlord shall have the right to refuse to perform any such services.

16.     If Landlord's maintenance engineer or any of Landlord's other personnel do any work after normal business hours at the request of Tenant, Tenant shall pay for the cost of such work.

17.     All doors leading from public corridors to the Premises are to be kept closed when not in use.

18.     Canvassing, soliciting or peddling in the Building is prohibited and Tenant shall cooperate with Landlord to prevent such activities.

19.     Tenant shall give Landlord immediate notice in the event that any defects or dangerous conditions arise or exist in the Premises or in the Building or if any accidents or emergencies occur in the Premises or Building.

20.     Tenant shall not use the Premises or permit the Premises to be used for photographic, multilith or multigraph reproductions for sale to the general public. All photographic, multilith or multigraph reproductions in the Premises shall be produced for Tenant in the ordinary course of Tenant's business.

21.     All requests for services made by Tenant shall be made directly to Landlord or Landlord's designated agents. Employees of Landlord or Landlord's designated agents shall not perform any work or do anything outside of their regular duties unless directed to do so by Landlord or Landlord's designated agents. Tenant will make no requests directly to Landlord's employees.

EXHIBIT E

GUARANTY

Landlord, Tenant and Guarantor (as herein defined) acknowledge that if it were not for this guaranty (the "**Guaranty**") as an inducement, Landlord would not execute the Lease.  Therefore, for $10.00 and other value received, and in consideration for, as a condition of, and an inducement to ALTERA HIGHLAND LLC, a Texas limited liability company ("**Landlord**") entering into that certain Lease Agreement dated as of August 21, 2012, with SHERMAN/GRAYSON HEALTH SYSTEM, LLC, a Texas limited liability company ("**Tenant**"), for certain premises being Suites 100, 375, 475 and 480 of a medical office building located at 300 N. Highland Drive, Sherman, Texas, on real property owned by an affiliate of Tenant and ground leased to Landlord, as ground lessee (the "**Lease**"), the undersigned officer of LHP HOSPITAL GROUP, INC., a Delaware corporation (the "**Guarantor**"), on behalf of such entity, its legal representatives, heirs, successors, and assigns, hereby irrevocably guarantees to Landlord, Landlord's successors and assigns, absolutely and unconditionally, the full prompt and timely payment, performance and observance of all amounts to be paid and provisions of the Lease to be performed and observed by Tenant, including (without limitation) the rules and regulations incorporated into the Lease, as if Guarantor had executed the Lease as the tenant thereunder.  The Guarantor expressly agrees that the validity of this Guaranty and the obligations of the Guarantor hereunder shall not be terminated, affected or impaired by reason of the assertion by Landlord against Tenant of any of the rights or remedies reserved to Landlord pursuant to the provisions of the Lease.  The Guarantor further agrees that this Guaranty shall remain and continue in full force and effect notwithstanding any assignment, renewal, modification, extension or waiver of the Lease or any provisions thereof.  The laws of Texas shall apply hereto.

The Guarantor hereby waives, to the fullest extent permitted by law:

(A)     Any right that the Guarantor may have to require Landlord to proceed against Tenant, proceed against or exhaust any security held from Tenant, or pursue any other remedy in Landlord's power to pursue, including, without limitation, re-letting the Premises following a default;

(B)     Any defense based on any claim that the Guarantor's obligations exceed or are more burdensome than those of Tenant;

(C)     Any defenses given to sureties other than actual payment or performance;

(D)     Any defense based on: (i) any legal disability of Tenant; (ii) any release, discharge, modification, impairment or limitation of the liability of Tenant to Landlord  from any cause, whether consented to by Landlord or arising by operation of law or from any bankruptcy or other voluntary or involuntary proceeding, in or out of court, for the adjustment of debtor-creditor relationships (an "**Insolvency Proceeding**"), and/or (iii) any rejection or disaffirmance of the Lease, or any part of it, or any security held for it, in any such Insolvency Proceeding;

(E)     Any defense based on any action taken or omitted by Landlord in any Insolvency Proceeding involving Tenant, including any election to have Landlord's claim allowed as being secured, partially secured or unsecured, any extension of credit by Landlord to Tenant in any Insolvency Proceeding, and the taking and holding by Landlord of any security for any such extension of credit; and

(F)     The Guarantor agrees to jurisdiction and venue in Grayson and Dallas Counties, Texas, and waives any objection to such venue on the grounds of forum non conveniens.  **The Guarantor knowingly, voluntarily and intentionally waives the right to a trial by jury in respect of any litigation based hereon or arising out of, under, or in connection with this Guaranty.**  In the event Landlord incurs any

fees and/or expenses in the enforcement of this Guaranty, whether or not involving litigation and/or appellate, administrative or bankruptcy proceedings, the Guarantor agrees to be liable for same (including reasonable attorney's fees and costs) and to pay same promptly on demand by Landlord.

The Guarantor acknowledges liability for every obligation of Tenant under the Lease.  Any capitalized term used herein and not otherwise defined shall have the same meaning as defined in the Lease. Each provision of this Guaranty shall be considered severable, and if for any reason and provision is determined to be invalid under current or future law, such invalidity shall not impair the operation of or otherwise affect the valid portions of this Guaranty.

<u>**GUARANTOR**</u>:

LHP HOSPITAL GROUP, INC.,
a Delaware corporation


By:_____
Name:_____
Title:_____

Date:_____

*25*

CAUSE NO. JC1-20-0538

| | | |
|---|---|---|
| ALTERA HIGHLAND, LLC, | § | IN THE JUSTICE COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | PRECINCT NO. 1 |
| | § | |
| SHERMAN/GRAYSON HOSPITAL, LLC | § | |
| | § | |
| | § | |
| *Defendant.* | § | GRAYSON COUNTY, TEXAS |

## AGREED JUDGMENT FOR POSSESSION

On this day, came on to be heard the above-styled and -numbered action by and between Altera Highland, LLC. ("Plaintiff") and Sherman/Grayson Hospital, LLC. ("Defendant") which was brought solely to determine the issue of possession. Plaintiff alleges that Defendant has breached various Lease Agreements between the parties by failing to pay rent and other amounts due under those Lease Agreements. Plaintiff therefore seeks possession of the "Leased Premises," which include: (1) existing, vacant, and shell space of the building commonly called 300 N. Highland Drive, Sherman, Texas (the "Building"); (2) the common areas of the Building occupied by or used by the Wilson N. Jones Regional Medical Center f/k/a Texas Health Presbyterian Hospital—WNJ (the "Hospital"); and (3) the ambulatory surgery center located in the Building. The Leased Premises also specifically include Suites 100A, 100B, 100C, 100D, 100E, 130, 200, 210, 310, 315, 330, 340, 350, 400, 410, 415, 430, 445, 500, 510, and 545 in the Building. The physical address of the Leased Premises is 300 N. Highland Drive, Sherman, Texas.

In order to resolve issues relating to the possession of the Leased Premises, Defendant has agreed to pay Plaintiff $100,000.00 on or before 5:00 p.m. CDT on September 23, 2020, in exchange for the right to surrender possession of the Leased Premises as of 5:00 p.m. CDT on October 15, 2020, and has further agreed to surrender the Leased Premises as of September 24, 2020, in the event

that such payment is not made. The parties mutually consent to the entry of this judgment for possession of the Leased Premises consistent with the terms of their agreement, as evidenced by the signatures of counsel below, without prejudice to Plaintiff's right to seek economic damages or other sums to which it may be entitled under the Lease Agreements or Texas law in a separate proceeding, and Defendant's right to assert any and all defenses thereto.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiff is hereby awarded possession of the Leased Premises located at 300 N. Highland Drive, Sherman, Texas as of 5:00 p.m. CDT on October 15, 2020. However, in the event that Defendant does not make the agreed payment referenced in the preceding paragraph on or before 5:00 p.m. CDT on September 23, 2020, then Plaintiff shall be awarded possession of the Leased Premises located at 300 N. Highland Drive, Sherman, Texas as of September 24, 2020.

IT IS, FURTHER, ORDERED, ADJUDGED, AND DECREED that Plaintiff shall be issued a writ of possession no earlier than September 24, 2020, and no later than 5:00 p.m. CDT on October 15, 2020, according to the date on which possession is awarded in accordance with the preceding paragraph, which writ shall order the officer executing the writ to deliver possession of the Leased Premises to Plaintiff and containing the language set forth in Section 24.0061 of the Texas Property Code.

IT IS, FURTHER, ORDERED, ADJUDGED, AND DECREED that the officer shall serve and execute said writ of possession immediately upon issuance without the necessity of bond or other requirement of Section 24.0061(b) of the Texas Property Code.

IT IS, FURTHER, ORDERED, ADJUDGED, AND DECREED that Plaintiff is allowed all writs and processes as may be necessary in the enforcement of this judgment for possession.

This Agreed Judgment for Possession is without prejudice to Plaintiff's right to seek economic damages or other sums to which it may be entitled under the Lease Agreements or Texas law in a separate proceeding and Defendant's right to assert any and all defenses thereto.

Defendant agrees that it has waived its right to appeal this Agreed Judgment for Possession or otherwise contest Plaintiff's right to possession of the Leased Premises in accordance with the terms of this Agreed Judgment for Possession.

SIGNED this _____16_____ day of September, 2020.

JUDGE PRESIDING

**Judge Larry Atherton**

**Justice of the Peace, Pct. # 1**

**AGREED IN FORM AND SUBSTANCE:**

ALTERA HIGHLAND, LLC

By: _____

C. Jeffrey Novel
Counsel for Plaintiff

SHERMAN/GRAYSON HOSPITAL, LLC

By: _____

Michael S. Alfred
Counsel for Defendant

*27*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| SHERMAN/GRAYSON HOSPITAL LLC, <br> a Delaware limited liability company, [1] | Case No. 23-10810 (JKS) |
| Debtor. | |

## SCHEDULES OF ASSETS AND LIABILITIES FOR
## <u>SHERMAN/GRAYSON HOSPITAL LLC (CASE NO. 23-10810-JKS)</u>

---

[1] The last four digits of the Debtor's federal tax identification number are 5690. The Debtor's address is 500 N. Highland Avenue, Sherman, Texas 75092.

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| SHERMAN/GRAYSON HOSPITAL LLC, a Delaware limited liability company, | Case No. 23-10810-JKS |
| Debtor. | |

## GLOBAL NOTES, METHODOLOGY, AND SPECIFIC DISCLOSURES REGARDING THE DEBTOR'S SCHEDULES OF ASSETS AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS

### Introduction

These *Global Notes, Methodology, and Specific Disclosures Regarding the Debtor's Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "Global Notes") qualify, are incorporated by reference in, and comprise an integral part of, the Schedules of Assets and Liabilities (collectively, the "Schedules") and the Statements of Financial Affairs (collectively, the "Statements" and, together with the Schedules, the "Schedules and Statements") filed by Sherman/Grayson Hospital LLC ("Debtor" or the "Company") in the above-captioned case filed under Chapter 11 of the United States Code (the "Case") pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The Schedules and Statements were prepared pursuant to § 521 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 1007 of the Federal Rules of Bankruptcy Procedure by management of the Debtor, with the assistance of the Debtor's advisors, and are unaudited.

In preparing the Schedules and Statements, the Debtor relied on financial data derived from its books and records that was available at the time of such preparation. The Debtor's Schedules and Statements do not purport to represent financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("GAAP"), nor are they intended to be fully reconciled to the financial statements of the Debtor. The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment. The Schedules and Statements reflect the Debtor's reasonable best efforts to report the assets and liabilities of the Debtor. While the Debtor's management has made reasonable efforts to ensure that the Schedules and Statements are as accurate and complete as possible under the circumstances, based on information available at the time of preparation, subsequent information or discovery may result in material changes to these Schedules and Statements. As a result, inadvertent errors or omissions may exist, and there can be no assurance that these Schedules and Statements are complete.

The Debtor reserves all rights to amend or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including, without limitation, the right to (a) amend the Schedules and Statements with respect to a claim (as defined in § 101(5) of the Bankruptcy Code) description, designation, or Debtor against which the claim is asserted,

(b) dispute or otherwise assert offsets or defenses to any claim reflected in the Schedules and Statements as to amount, liability, priority, status, or classification, (c) subsequently designate any claim as "disputed," "contingent," or "unliquidated," or (d) object to the extent, validity, enforceability, priority, or avoidability of any claim.  Any failure to designate a claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtor that such claim or amount is not "disputed," "contingent," or "unliquidated."  Listing a claim does not constitute an admission of liability by the Debtor against which the claim is listed or against the Debtor.  Nothing contained in the Schedules and Statements shall constitute a waiver of any right of the Debtor or an admission with respect to its Chapter 11 Case (including, but not limited to, issues involving claims, substantive consolidation, defenses, equitable subordination, characterization or re-characterization of contracts and leases, assumption or rejection of contracts and leases under the provisions of chapter 3 of the Bankruptcy Code, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers).  Any specific reservation of rights contained elsewhere in these Global Notes does not limit in any respect the foregoing reservation of rights.

The Debtor and its agents, attorneys, and financial advisors do not guarantee or warrant the accuracy or completeness of the data that is provided herein, and will not be liable for any loss or injury arising out of or caused in whole or in part by the acts, errors, or omissions, whether negligent or otherwise, in procuring, compiling, collecting, interpreting, reporting, communicating, or delivering the information contained herein.  While commercially reasonable efforts have been made to provide accurate and complete information herein, inadvertent errors or omissions may exist.  The Debtor and its agents, attorneys and financial advisors expressly do not undertake any obligation to update, modify, revise, or re-categorize the information provided herein, or to notify any third party should the information be updated, modified, revised, or recategorized.  In no event will the Debtor or its agents, attorneys, and financial advisors be liable to any third party for any direct, indirect, incidental, consequential, or special damages (including, but not limited to, damages arising from the disallowance of a potential claim against the Debtor or damages to business reputation, lost business, or lost profits), whether foreseeable or not and however caused, even if the Debtor or its agents, attorneys, and financial advisors are advised of the possibility of such damages.

The Schedules and Statements have been signed by Laxman Reddy, President and Chief Executive Officer of the Debtor.  Accordingly, in reviewing and signing the Schedules and Statements, Mr. Reddy necessarily relied upon the efforts, statements, and representations of the Debtor and its staff and other personnel and professionals.  Mr. Reddy has not (and could not have) personally verified the accuracy of each such statement and representation, including, but not limited to, statements and representations concerning amounts owed to creditors, classification of such amounts, and their addresses.

These Global Notes should be referred to and considered in connection with any review of the Schedules and Statements.[1] Disclosure of information in one or more Schedules, one or more Statements, or one or more exhibits or attachments to the Schedules or Statements, even if incorrectly placed, shall be deemed to be disclosed in the correct Schedules, Statements, exhibits,

or attachments.  In the event that the Schedules and Statements differ from the Global Notes, the Global Notes shall control.

*Neither the Schedules and Statements, nor the Global Notes, should be relied upon by any persons for information relating to current or future financial conditions, events, or performance of the Debtor.*

## Global Notes and Overview of Methodology

**Description of Case and Information Date**

On June 23, 2023 (the "Petition Date"), the Debtor filed a voluntary petition with this Bankruptcy Court for relief under Chapter 11 of the United States Bankruptcy Code.  The Debtor continues to operate its business and manage its property as debtor-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  The Chapter 11 Case is being administered pursuant to Bankruptcy Rule 1015(b).  No creditors' committee has been appointed in this case.  No trustee or examiner has been appointed.   Except as otherwise noted, the information set forth herein is provided as of the close of business on the Petition Date.

**Basis of Presentation**

These Schedules and Statements reflect the assets and liabilities of the Debtor, except where otherwise indicated.  Information contained in the Schedules and Statements has been derived from the Debtor's books and records and historical financial statements.  As indicated in prior filings in this case, the Debtor underwent a system conversion/upgrade to a new electronic medical records system, which includes the finance and accounting module used by Debtor, effective May 1, 2023.  As a result of this conversion, there have been issues identified with mapping of data from the old system to the new system and these issues have delayed the issuance of financial statements for the months ending May 31, 2023 and June 30, 2023.  As a result, unless otherwise noted, the values indicated on the schedules are as of April 30, 2023.  The Debtor is diligently working to close its books for the month of May 31, 2023 and June 30, 2023 and will provide updated schedules.

These Schedules and Statements represent the Debtor's good faith attempt to comply with the requirements of the Bankruptcy Code and Bankruptcy Rules using commercially reasonable efforts and resources available and are subject to further review and potential adjustment.

**Amendment of Schedules and Statements**

While reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements, inadvertent errors or omissions may exist.  The Debtor reserves all rights to amend and/or supplement the Schedules and Statements from time to time as is necessary or appropriate.

## General Notes Applicable to Schedules and Statements

1.      **Recharacterization**.   The Debtor has made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired

leases, and other items reported in the Schedules and Statements. The Debtor reserves all rights to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

2.  **Claim Designations**.  Any failure to designate a claim in the Schedules and Statements as "contingent," "unliquidated," or "disputed" does not constitute an admission by the Debtor that such claim or amount is not "contingent," "unliquidated," or "disputed."  The Debtor reserves all rights to dispute, or to assert offsets or defenses to, any claim reflected on its Schedules or Statements on any grounds, including, but not limited to, amount, liability, priority, status, or classification, or to otherwise subsequently designate any claim as "contingent," "unliquidated," or "disputed."  Moreover, the Debtor reserves all rights to amend its Schedules and Statements as necessary and appropriate.  Listing a claim does not constitute an admission of liability by the Debtor.

3.  **Unliquidated Claim Amounts**.  Claim amounts that could not be readily quantified by the Debtor are scheduled as "unliquidated."

4.  **Unknown Amounts**.  The description of an amount as "unknown" is not intended to reflect upon the materiality of such amount.

5.  **Court Orders**.  Pursuant to certain orders of the Bankruptcy Court entered in the Debtor's Chapter 11 Case entered on or about June 20, 2023 (the "First Day Orders"), the Debtor was authorized (but not directed) to pay, among other things, certain prepetition claims of employees, insurers, and taxing authorities.  Accordingly, these liabilities may have been or may be satisfied in accordance with such orders and therefore may not be listed in the Schedules and Statements.  Regardless of whether such claims are listed in the Schedules and Statements, to the extent such claims are paid pursuant to an order of the Bankruptcy Court (including the First Day Orders), the Debtor reserves all rights to amend or supplement its Schedules and Statements.

6.  **Other Paid Claims**.  To the extent the Debtor has reached any postpetition settlement with a vendor or other creditor, the terms of such settlement will prevail, supersede amounts listed in the Debtor's Schedules and Statements, and shall be enforceable by all parties, subject to any necessary Bankruptcy Court approval.  To the extent the Debtor pays any of the claims listed in the Schedules and Statements pursuant to any orders entered by the Bankruptcy Court, the Debtor reserves all rights to amend and supplement the Schedules and Statements and take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payment for such liabilities.

7.  **Liabilities**.  The Debtor has sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements.  As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change.  The Debtor reserves the right to modify, amend, or supplement the Schedules and Statements as it deems appropriate in this regard.

8.      **Excluded Assets and Liabilities**.  The Debtor may have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including without limitation, accrued salaries and employee benefit accruals.  In addition, and as set forth above, the Debtor may have excluded amounts for which the Debtor has been granted authority to pay pursuant to a First Day Order or other order that may be entered by the Bankruptcy Court.  The Debtor may also have excluded rejection damage claims of counterparties to executory contracts and unexpired leases that may be rejected (if any), to the extent such damage claims exist.  Also, certain immaterial assets and liabilities may have been excluded.

9.      **Confidential or Sensitive Information**.  There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to the nature of an agreement between a Debtor and a third party, concerns about the confidential or commercially sensitive nature of certain information, or concerns for the privacy of an individual based on the Health Insurance Portability and Accountability Act of 1996 or otherwise.  The alterations will be limited to only what is necessary to protect the Debtor or third party.  In some instances, the redacted information may be available upon request.

10.     **Leases**.  The Debtor may not have included in the Schedules and Statements the future obligations of any capital or operating leases.  To the extent that there was an amount outstanding as of the Petition Date, the creditor has been included on Schedule F of the Schedules.  Nothing in the Schedules or Statements (including, without limitation the failure to list leased property or equipment as owned property or equipment) is, or shall be construed as, an admission as to the determination of legal status of any lease (including whether any lease is a true lease or financing arrangement), and the Debtor reserves all rights with respect to such issues.

11.     **Guarantees and Other Secondary Liability Claims**.  The Debtor has used reasonable efforts to locate and identify guarantees and other secondary liability claims (collectively, "Guarantees") in each of its executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements.  However, certain Guarantees embedded in the Debtor's executory contracts, unexpired leases, secured financings, debt instruments, and other such agreements may have been inadvertently omitted.  Thus, the Debtor reserves all rights to amend the Schedules to the extent that additional Guarantees are identified.

12.     **Executory Contracts**.  Although the Debtor has made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtor may have inadvertently failed to do so.  Accordingly, the Debtor reserves all rights with respect to the named parties of any and all executory contracts, including the right to amend Schedule G.

13.     **Estimates**.  To prepare and file the Schedules as close to the Petition Date as possible, management was required to make certain estimates and assumptions that affected the reported amounts of these assets and liabilities.  The Debtor reserves all rights to amend the reported amounts of assets and liability to reflect changes in those estimates or assumptions.

14.     **Fiscal Year**.  The Debtor's fiscal year ends on December 31.

15.     **Property and Equipment**.  Unless otherwise indicated, owned property and equipment are stated at net book value.  The Debtor may lease furniture, fixtures, and equipment

from certain third-party lessors. Nothing in the Schedules and Statements is or shall be construed as an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtor reserves all of its rights with respect to same.

16. **Credits and Adjustments**. The claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtor's books and records and may not reflect credits, allowances, or other adjustments due from such creditors to the Debtor. The Debtor reserves all rights with regard to such credits, allowances, and other adjustments, including the right to assert claims objections and/or setoffs with respect to the same.

17. **Insiders**. In the circumstance where the Schedules and Statements require information regarding "insiders" the Debtor has included information with respect to the individuals the Debtor believes are included in the definition of "insider" set forth in § 101(31) of the Bankruptcy Code during the relevant time periods. Such individuals may no longer serve in such capacities. The listing of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed an admission of any fact, right, claim, or defense and all such rights, claims, and defenses are hereby expressly reserved. Information regarding the individuals listed as insiders in the Schedules and Statements has been included for informational purposes only and such information may not be used for: (1) the purposes of determining (a) control of the Debtor; (b) the extent to which any individual exercised management responsibilities or functions; (c) corporate decision-making authority over the Debtor; or (d) whether such individual could successfully argue that he or she is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability, or (2) any other purpose.

18. **Totals**. All totals that are included in the Schedules and Statements represent totals of all known and estimated amounts that are included in the Schedules and Statements. To the extent there are unknown, disputed, contingent, unliquidated, or otherwise undetermined amounts, the actual total may be materially different than the listed total. The description of an amount as "unknown", "disputed", "contingent", "unliquidated", or "undetermined" is not intended to reflect upon the materiality of such amount.

19. **Exclusions.** The Debtor may have excluded certain categories of assets and liabilities from the Schedules and Statements, including accrued liabilities such as accrued salaries and employee benefits (including accrued personal time off) and accrued accounts payable, as well as assets with a net book value of zero. Other non-material assets and liabilities may have also been excluded.

<u>**Specific Notes Regarding the Schedules and Statements**</u>

**Specific Notes Regarding the Statements**

1. **Gross Revenue**. Amounts listed for gross revenue in the Part 1 of the Statements from the beginning of the fiscal year to just before the Petition Date reflect gross revenue from the Debtor's business for the period of January 1, 2022 through and including April 30, 2023.

2.     **90 Day Payments.**  The dates set forth in the "Dates of Payment" column relate to one of the following: (a) the date of a wire transfer; (b) the date of an "ACH" payment; or (c) the date that a check was issued.  Item 3 includes any disbursement or other transfer made by the Debtor within 90 days before the Petition Date except for those made to insiders (which payments appear in response to Item 4).

3.     **Insider Payments**.  The Debtor made reasonable, good faith efforts to list all material payments made to or for the benefit of insiders with one year before the filing of the case. However, it would be unduly burdensome to determine the amount of certain employee benefits provided to insiders by the Debtor, which include, among other things, the employer portion of health insurance premiums.  Moreover, the payment of such amounts was authorized by the Employee Wage Order (as defined herein).  The Debtor believes that the expenses underlying any employee reimbursements were incurred for the benefit of the Debtor, and not insiders.

4.     **Property held for another.**  The Debtor has made reasonable efforts to account for property held for another by relying on the Debtor's books and records.

### Specific Notes Regarding Schedule A/B

1.     **Bank Account Balances**.  In the event of any conflict between the Debtor's *Motion for Interim and Final Orders Authorizing (I) Maintenance of Existing Bank Accounts, (II) Continued Use of Existing Cash Management System, and (III) Continued Use of Business Forms Pursuant to 11 U.S.C. §§ 105, 345, 363, 364, 503, 1107 and 1108 of the Bankruptcy Code* [Docket No. 6] and the Statements and Schedules, the information contained in the Statements and Schedules shall control.

2.     **Prepayments**.  Certain prepayments reflected on the Debtor's balance sheet may not be included because the vendor to which they relate has fully performed the related services and the Debtor has no claims against these vendors.  The Prepayments include a prepayment to MPT of Sherman-Alecto, LLC as of April 30, 2023 which was reduced to $0.00 as of the Petition Date as a portion of the prepayment balance has ben applied to current rent due and the remaining balance was returned to Debtor.

3.     **Real Property.**  The real property identified in Schedule A/B is owned by MPT Of Sherman-Alecto, LLC and leased to Debtor pursuant to that certain Lease Agreement, dated as of October 31, 2014 (as amended from time to time, the "MPT Lease").  Although the real property and improvements are owned by MPT of Sherman-Alecto, LLC, the Debtor's financial statements include the real property and improvements as an asset with a corresponding liability in accordance with GAAP and instructions from Debtor's accountants when audited financial statements were produced by the Debtor.

### Specific Notes Regarding Schedule E/F

1.     **Creditors Holding Priority Unsecured Claims**.  The listing of any claim on Schedule E/F does not constitute an admission by the Debtor that such claim is entitled to priority treatment under § 507 of the Bankruptcy Code.  The Debtor reserves all rights to dispute the amount and/or the priority status of any claim on any basis at any time.

The Bankruptcy Court entered the *Interim Order (I) Authorizing Payment of Certain Prepetition Employee Claims, Including Wages and Salaries, (II) Authorizing Payment of Certain Employee Benefits and Confirming right to Continue Employee Benefits on Postpetition Basis, (III) Authorizing Payment of Reimbursement to Employees for Prepetition Expenses, (IV) Authorizing Payment of Withholding and Payroll-Related Taxes, (V) Authorizing Payment of Prepetition Claims Owing to Administrators and Third Party Providers and (VI) Allowing Banks to Honor Prepetition Checks and Fund Transfers for Authorized Payments* [Docket No.26], granting authority to the Debtor to pay certain prepetition employee wage and other obligations in the ordinary course (the "Wage Order"). Pursuant to the Wage Order, the Bankruptcy Court granted the Debtor authority to pay or honor certain prepetition obligations for employee wages, payroll deductions, employee benefits, and other benefits and fees. The Debtor has not listed on Schedule E/F any wage or employment-related obligations owed to non-insiders for which the Debtor has been granted authority to pay pursuant to the Employee Wage Order or other order that may be entered by the Bankruptcy Court. The Debtor believes that all such claims have been, or will be, satisfied in the ordinary course during this case pursuant to the authority granted in the Employee Wage Order or other order that may be entered by the Bankruptcy Court. Likewise, the Debtor has not listed on Statement, Question 3, any transfers to non-insider employees on account of wages or employment-related obligations for which the Debtor has been granted authority to pay pursuant to the Employee Wage Order or other order that may be entered by the Bankruptcy Court.

**Specific Notes Regarding Schedule G**

The Debtor's books and records may not be complete with respect to all unexpired leases and/or executory contracts to which they are a party and that were pending as of the Petition Date. In particular, the Debtor may be party to agreements and understanding that are "oral" or "verbal" in nature; while the Debtor has made reasonable efforts to identify these agreements and disclose them in the Schedules, there may be some that are not yet known or identified. Certain of the executory contracts and unexpired leases listed on Schedule G may contain renewal options, guarantees of payment, options to purchase, rights of first refusal, rights to lease additional space and other miscellaneous rights. Such rights, powers, duties, and obligations are not separately set forth on Schedule G or Schedule B. Omission of a contract, lease or other agreement from Schedule G does not constitute an admission that such omitted contract, lease or agreement is not an executory contract or unexpired lease. The Debtor hereby reserves all of its rights to (i) dispute the validity, status, or enforceability of any contract, agreement or lease set forth in Schedule G and (ii) amend or supplement such Schedule as necessary.

* * * * * * *

**Fill in this information to identify the case and this filing:**

Debtor Name: SHERMAN/GRAYSON HOSPITAL LLC
a Delaware limited liability company

United States Bankruptcy Court for the: _____ District of **Delaware**
(State)

Case number (*If known*): 23-10810-JKS

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

| | Declaration and signature |
|---|---|

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☑ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☑ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☑ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☑ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☑ *Schedule H: Codebtors* (Official Form 206H)

☑ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule _____*

☐ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☐ *Other document that requires a declaration_____*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    7/21/2023
                MM / DD / YYYY

✖ /s/ Laxman Reddy
Signature of individual signing on behalf of debtor

Laxman Reddy
Printed name

Chief Executive Officer, Alecto Healthcare Services Sherman LLC, a
Delaware limited liability company, Debtor's Sole Member/Manager
Position or relationship to debtor

Official Form 202          Declaration Under Penalty of Perjury for Non-Individual Debtors

**Fill in this information to identify the case:**

Debtor name ___SHERMAN/GRAYSON HOSPITAL LLC___

United States Bankruptcy Court for the: _____ District of __Delaware__
(State)

Case number (If known): ___23-10810-JKS___

☐ Check if this is an amended filing

Official Form 206Sum
## Summary of Assets and Liabilities for Non-Individuals

12/15

| Part 1: | Summary of Assets |
| --- | --- |

1. **Schedule A/B: Assets–Real and Personal Property** (Official Form 206A/B)

   1a. **Real property:**
   Copy line 88 from *Schedule A/B*.................................................... $ _____0.00__

   1b. **Total personal property:**
   Copy line 91A from *Schedule A/B*.................................................. $ __7,459,282.32__

   1c. **Total of all property:**
   Copy line 92 from *Schedule A/B*.................................................. $ __7,459,282.32__

| Part 2: | Summary of Liabilities |
| --- | --- |

2. **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
   Copy the total dollar amount listed in Column A, *Amount of claim*, from line 3 of *Schedule D*.............................. $ __3,923,338.27__

3. **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

   3a. **Total claim amounts of priority unsecured claims:**
   Copy the total claims from Part 1 from line 5a of *Schedule E/F* ...................................... $ _____0.00__

   3b. **Total amount of claims of nonpriority amount of unsecured claims:**
   Copy the total of the amount of claims from Part 2 from line 5b of *Schedule E/F* .......................... + $ __83,071,669.23__

4. **Total liabilities**...................................................................................
   Lines 2 + 3a + 3b $ __86,995,007.50__

**Fill in this information to identify the case:**

Debtor name  SHERMAN/GRAYSON HOSPITAL LLC

United States Bankruptcy Court for the: _____ District of  Delaware
(State)

Case number (If known):  23-10810-JKS

☐ Check if this is an amended filing

Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property    12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

## Part 1:    Cash and cash equivalents

1. **Does the debtor have any cash or cash equivalents?**

☐ No. Go to Part 2.
☑ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
|---|---|

2. **Cash on hand**    $_____

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | |
|---|---|---|---|
| 3.1. See Attachment No. 3 | | ___ ___ ___ ___ | $                38,080.68 |
| 3.2. | | | $_____ |

4. **Other cash equivalents** *(Identify all)*

4.1. _____    $_____
4.2. _____    $_____

5. **Total of Part 1**    $                38,080.68

Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

## Part 2:    Deposits and prepayments

6. **Does the debtor have any deposits or prepayments?**

☐ No. Go to Part 3.
☑ Yes. Fill in the information below.

| | Current value of debtor's interest |
|---|---|

7. **Deposits, including security deposits and utility deposits**

Description, including name of holder of deposit
7.1. Luminant Energy - Utility _____    $                25,000.00
7.2. _____    $_____

| Debtor | SHERMAN/GRAYSON HOSPITAL LLC | Case number (if known) | 23-10810-JKS |
|---|---|---|---|
| | Name | | |

**8. Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

8.1. See Attachment No. 8 _____ $ 808,411.84

8.2. _____ $ _____

**9. Total of Part 2.** $ 833,411.84

Add lines 7 through 8. Copy the total to line 81.

| **Part 3:** | **Accounts receivable** |
|---|---|

**10. Does the debtor have any accounts receivable?**

☐ No. Go to Part 4.

☑ Yes. Fill in the information below.

Current value of debtor's interest

**11. Accounts receivable**

11a. 90 days old or less:  20,093,506 – 16,595,250 = ⟶  $ 3,498,256.00
face amount   doubtful or uncollectible accounts

11b. Over 90 days old:  46,321,336 – 45,165,327 = ⟶  $ 1,156,009.00
face amount   doubtful or uncollectible accounts

**12. Total of Part 3** $ 4,654,265.00

Current value on lines 11a + 11b = line 12. Copy the total to line 82.

| **Part 4:** | **Investments** |
|---|---|

**13. Does the debtor own any investments?**

☑ No. Go to Part 5.

☐ Yes. Fill in the information below.

| | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|

**14. Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

14.1. _____  _____  $ _____

14.2. _____  _____  $ _____

**15. Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:       % of ownership:

15.1. _____  _____%  _____  $ _____

15.2. _____  _____%  _____  $ _____

**16. Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

16.1. _____  _____  $ _____

16.2. _____  _____  $ _____

**17. Total of Part 4** $ 0.00

Add lines 14 through 16. Copy the total to line 83.

Debtor  SHERMAN/GRAYSON HOSPITAL LLC
　　　　Name

Case number (if known)　23-10810-JKS

---

| Part 5: | Inventory, excluding agriculture assets |
|---|---|

**18. Does the debtor own any inventory (excluding agriculture assets)?**

☐ No. Go to Part 6.

☑ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **19. Raw materials** | ___ MM / DD / YYYY | $ _____ | _____ | $ _____ |
| **20. Work in progress** | ___ MM / DD / YYYY | $ _____ | _____ | $ _____ |
| **21. Finished goods, including goods held for resale** | ___ MM / DD / YYYY | $ _____ | _____ | $ _____ |
| **22. Other inventory or supplies** Medical Supplies & Other Supplies | 06/01/2019 MM / DD / YYYY | $ 1,212,179.00 | Cost Basis | $ 1,212,179.00 |

**23. Total of Part 5**

Add lines 19 through 22. Copy the total to line 84.

$ 1,212,179.00

**24. Is any of the property listed in Part 5 perishable?**

☐ No

☑ Yes

**25. Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☑ Yes. Book value  65,588　　Valuation method Cost Basis　　Current value 65,588

**26. Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☐ No

☐ Yes

---

| Part 6: | Farming and fishing-related assets (other than titled motor vehicles and land) |
|---|---|

**27. Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **28. Crops—either planted or harvested** | $ _____ | _____ | $ _____ |
| **29. Farm animals** Examples: Livestock, poultry, farm-raised fish | $ _____ | _____ | $ _____ |
| **30. Farm machinery and equipment** (Other than titled motor vehicles) | $ _____ | _____ | $ _____ |
| **31. Farm and fishing supplies, chemicals, and feed** | $ _____ | _____ | $ _____ |
| **32. Other farming and fishing-related property not already listed in Part 6** | $ _____ | | $ _____ |

---

| Debtor | SHERMAN/GRAYSON HOSPITAL LLC | Case number (if known) | 23-10810-JKS |
|---|---|---|---|
| | Name | | |

**33. Total of Part 6.**

Add lines 28 through 32. Copy the total to line 85.

$_____0.00

**34. Is the debtor a member of an agricultural cooperative?**

☑ No

☐ Yes. Is any of the debtor's property stored at the cooperative?

   ☐ No

   ☐ Yes

**35. Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☐ No

☐ Yes. Book value $_____ Valuation method _____ Current value $_____

**36. Is a depreciation schedule available for any of the property listed in Part 6?**

☐ No

☐ Yes

**37. Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☐ No

☐ Yes

---

**Part 7:    Office furniture, fixtures, and equipment; and collectibles**

**38. Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.

☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **39. Office furniture** <br> See Attachment No. 38 | $_____ | _____ | $      657,345.80 |
| **40. Office fixtures** <br> _____ | $_____ | _____ | $_____ |
| **41. Office equipment, including all computer equipment and communication systems equipment and software** <br> _____ | $_____ | _____ | $_____ |
| **42. Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1_____ | $_____ | _____ | $_____ |
| 42.2_____ | $_____ | _____ | $_____ |
| 42.3_____ | $_____ | _____ | $_____ |

**43. Total of Part 7.**

Add lines 39 through 42. Copy the total to line 86.

$      657,345.80

**44. Is a depreciation schedule available for any of the property listed in Part 7?**

☐ No

☑ Yes

**45. Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☑ No

☐ Yes

| Debtor | SHERMAN/GRAYSON HOSPITAL LLC | Case number (if known) | 23-10810-JKS |
| | Name | | |

---

**Part 8:  Machinery, equipment, and vehicles**

46. Does the debtor own or lease any machinery, equipment, or vehicles?

☐ No. Go to Part 9.

☑ Yes. Fill in the information below.

| General description<br><br>Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest<br><br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|

47. **Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles**

| 47.1 See Attachment No. 47 | $ | | $ 64,000.00 |
| 47.2 | $ | | $ |
| 47.3 | $ | | $ |
| 47.4 | $ | | $ |

48. **Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

| 48.1 | $ | | $ |
| 48.2 | $ | | $ |

49. **Aircraft and accessories**

| 49.1 | $ | | $ |
| 49.2 | $ | | $ |

50. **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

| | $ | | $ |

51. **Total of Part 8.**
   Add lines 47 through 50. Copy the total to line 87.

| $ 64,000.00 |

52. **Is a depreciation schedule available for any of the property listed in Part 8?**

☐ No

☑ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

☑ No

☐ Yes

---

| Debtor | SHERMAN/GRAYSON HOSPITAL LLC | | Case number (if known) | 23-10810-JKS |
|---|---|---|---|---|
| | Name | | | |

| Part 9: | Real property |
|---|---|

**54. Does the debtor own or lease any real property?**

☐ No. Go to Part 10.

☑ Yes. Fill in the information below.

**55. Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1 See Attachment No. 55 | _____ | $_____ | _____ | $_____ |
| 55.2_____ | _____ | $_____ | _____ | $_____ |
| 55.3_____ | _____ | $_____ | _____ | $_____ |
| 55.4_____ | _____ | $_____ | _____ | $_____ |
| 55.5_____ | _____ | $_____ | _____ | $_____ |
| 55.6_____ | _____ | $_____ | _____ | $_____ |

**56. Total of Part 9.**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

$ 0.00

**57. Is a depreciation schedule available for any of the property listed in Part 9?**

☐ No

☑ Yes

**58. Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☑ No

☐ Yes

| Part 10: | Intangibles and intellectual property |
|---|---|

**59. Does the debtor have any interests in intangibles or intellectual property?**

☐ No. Go to Part 11.

☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **60. Patents, copyrights, trademarks, and trade secrets** | | | |
| _____ | $_____ | _____ | $_____ |
| **61. Internet domain names and websites** | | | |
| www.wnj.org | $ 0.00 | Debtor's Opinion | $ 0.00 |
| **62. Licenses, franchises, and royalties** | | | |
| _____ | $_____ | | $_____ |
| **63. Customer lists, mailing lists, or other compilations** | | | |
| _____ | $_____ | | $_____ |
| **64. Other intangibles, or intellectual property** | | | |
| _____ | $_____ | | $_____ |
| **65. Goodwill** | | | |
| _____ | $_____ | | $_____ |

**66. Total of Part 10.**

Add lines 60 through 65. Copy the total to line 89.

$ 0.00

| Debtor | SHERMAN/GRAYSON HOSPITAL LLC | Case number (if known) | 23-10810-JKS |
|--------|------------------------------|------------------------|--------------|
|        | Name                         |                        |              |

67. **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)**?**

☐ No
☑ Yes

68. **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

☑ No
☐ Yes

69. **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

☑ No
☐ Yes

---

### Part 11: All other assets

70. **Does the debtor own any other assets that have not yet been reported on this form?**

Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No. Go to Part 12.
☐ Yes. Fill in the information below.

|   |   | Current value of debtor's interest |
|---|---|---|

71. **Notes receivable**
Description (include name of obligor)

_____     _____  −  _____  = → $_____
                            Total face amount    doubtful or uncollectible amount

72. **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

_____   Tax year _____   $_____
_____   Tax year _____   $_____
_____   Tax year _____   $_____

73. **Interests in insurance policies or annuities**

_____   $_____

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

_____   $_____

Nature of claim     _____
Amount requested   $_____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

_____   $_____

Nature of claim     _____
Amount requested   $_____

76. **Trusts, equitable or future interests in property**

_____   $_____

77. **Other property of any kind not already listed** Examples: Season tickets, country club membership

_____   $_____
_____   $_____

78. **Total of Part 11.**
Add lines 71 through 77. Copy the total to line 90.

$_____ 0.00

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

☐ No
☐ Yes

| Debtor | SHERMAN/GRAYSON HOSPITAL LLC | Case number (if known) | 23-10810-JKS |
|---|---|---|---|
| | Name | | |

## Part 12: Summary

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $ 38,080.68 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $ 833,411.84 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $ 4,654,265.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $ 0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $ 1,212,179.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $ 0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $ 657,345.80 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $ 64,000.00 | |
| 88. **Real property.** *Copy line 56, Part 9.* . ............................................➔ | | $ 0.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $ 0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $ 0.00 | |
| 91. **Total.** Add lines 80 through 90 for each column. ...........................91a. | $ 7,459,282.32 | + 91b. $ 0.00 |

92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. ........................................  $ 7,459,282.32

In re Sherman/Grayson Hospital LLC
Schedule AB Attachment No. 3 [Part 1, Item 3]

**Sherman/Grayson Hospital LLC**
**Bank Accounts**

| Bank Name | Bank Account Name | Last 4 Digits | Balance as of 6/23/23 |
|---|---|---|---|
| Bank of America | Sherman/Grayson Hospital, LLC - Payroll | 1646 | $8,123.85 |
| Bank of America | Sherman/Grayson Hospital, LLC - Govt Rcvble | 4404 | $0.00 |
| Bank of America | Sherman/Grayson Hospital, LLC - Non-Government Payables | 4799 | $0.00 |
| Bank of America | Sherman/Grayson Hospital, LLC - Depository Account | 5572 | $16,556.59 |
| Bank of America | Sherman/Grayson Hospital, LLC - Account Payable | 9152 | $13,398.82 |
| CapitalOne | Sherman/Grayson Hospital, LLC - Government Receivables Account | 8191 | $0.00 |
| CapitalOne | Sherman/Grayson Hospital, LLC - Non-Government Receivables Account | 8205 | $1.42 |
| | | | $38,080.68 |

In re Sherman/Grayson Hospital LLC
Schedule AB Attachment No. 8 [Part 2, Item 8]

**Sherman/Grayson Hospital LLC**
**Prepaids by Vendor**
**04/30/23**

| Vendor | Invoice # | Start | End | Balance |
|---|---|---|---|---|
| 3M Health Information Systems | SC00096971 | 04/01/23 | 06/30/23 | 15,933.80 |
| Affiliated Com-Net, Inc | 114364 | 01/27/23 | 01/26/24 | 14,850.00 |
| Altera Digital Health, Inc | 4600002246 | 03/24/23 | 03/23/24 | 2,579.50 |
| Altera Digital Health, Inc | 4600000044 | 09/30/22 | 09/29/23 | 3,336.00 |
| American Proficiency Institute | Refund Received | | | (1,558.00) |
| American Proficiency Institute | 35472 | 11/01/22 | 10/31/23 | 7,534.84 |
| Applied Statistics & Management | 139913-3 | | | 1,375.00 |
| Appsmart | 141859915 | 02/08/23 | 02/07/24 | 4,725.00 |
| Appsmart | 141842990 | 12/30/22 | 12/29/23 | 14,500.00 |
| Aztec Leasing, Inc | IN54363 | 04/01/23 | 06/30/23 | 4,199.87 |
| Bayer Healthcare | 6009557003 | 10/29/21 | 10/28/24 | 2,044.60 |
| Bayer Healthcare | 6010200718 | 10/29/21 | 10/28/24 | 4,089.17 |
| Beckman Coulter | 4476244 | 12/19/22 | 12/18/23 | 14,710.68 |
| Beckman Coulter | 4476228 | 12/19/22 | 12/18/23 | 14,710.68 |
| Biomerieux, Inc | 1217275431 | 03/13/23 | 06/12/23 | 361.50 |
| Biomerieux, Inc | 1217275430 | 03/13/23 | 06/12/23 | 511.66 |
| Biomerieux, Inc | 121727543 | 03/13/23 | 06/12/23 | 2,640.00 |
| Boardbookit | INV00006445 | 12/04/22 | 12/03/23 | 4,291.85 |
| CLIA | 45D0051484-070522 | 01/03/23 | 01/02/25 | 2,181.68 |
| College of Am Pathologists | 2623326 | 07/01/22 | 06/30/23 | 1,303.00 |
| Corepoint Health, LLC | INV61902 | 03/16/23 | 03/15/24 | 19,277.70 |
| Elsevier | R062578 | 09/15/22 | 09/14/23 | 4,642.46 |
| Eso Solutions | ESO-92209 | 11/01/22 | 10/31/23 | 750.00 |
| Hyland Software | LE01-277539 | 01/01/23 | 12/31/23 | 36,645.95 |
| Infinitt North America | 2022-2958 | 01/01/23 | 06/30/23 | 3,753.31 |
| Johnson Controls | 23225971 | 11/01/22 | 10/31/23 | 868.50 |
| Johnson Controls | 23199496 | 11/01/22 | 10/31/23 | 2,351.48 |
| Johnson Controls | 23201290 | 11/01/22 | 10/31/23 | 12,900.16 |
| Joint Commission | 10058364 | 01/01/23 | 12/31/23 | 2,286.68 |
| Joint Commission | 10058365 | 01/01/23 | 12/31/23 | 3,500.00 |
| Kudelski Security | 5020180380 | 05/31/22 | 05/30/23 | 2,064.51 |
| MCG Health LLC | 51497 | 06/01/22 | 05/31/23 | 1,958.81 |
| MCG Health LLC | 000055654 | 06/01/23 | 05/31/24 | 24,445.62 |
| MPT | | 01/01/22 | 09/30/23 | 482,832.30 |
| NCTTRAC | 6365 | 09/01/22 | 08/31/23 | 1,871.34 |
| NRC/National Research Corp | 92936 | 04/01/23 | 06/30/23 | 5,907.60 |
| Park Place Technologies | PUSA10090074699 | 09/05/22 | 09/04/23 | 1,200.00 |
| Persivia | 55515 | 02/02/23 | 02/01/24 | 15,000.01 |
| Plenum Medical Testing | 049381SC | 08/01/22 | 07/31/23 | 1,200.00 |
| Racktop | 23-000718 | 03/01/23 | 02/28/24 | 2,124.40 |
| SHI International Corp | B15643665 | 08/26/22 | 08/25/25 | 9,108.53 |
| Siemens Healthcare Diagnostics | 952785303 | 07/27/22 | 07/26/23 | (3,300.00) |
| Siemens Healthcare Diagnostics | 952785303 | 07/27/22 | 07/26/23 | 825.00 |
| Siemens Healthcare Diagnostics | 952785303 | 07/27/22 | 07/26/23 | 1,317.40 |
| Square One Business Machines | 19403 | 11/09/22 | 11/08/23 | 332.48 |
| Steris Corp | 503635585 | 08/01/22 | 07/31/23 | 1,457.86 |

In re Sherman/Grayson Hospital LLC
Schedule AB Attachment No. 8 [Part 2, Item 8]

**Sherman/Grayson Hospital LLC**
**Prepaids by Vendor**
**04/30/23**

| Vendor | Invoice # | Start | End | Balance |
|---|---|---|---|---|
| Sympler | INV1648334 | 09/01/22 | 08/31/23 | 4,000.00 |
| Telcor | 0000055914 | 11/01/22 | 10/31/23 | 2,179.85 |
| TK Elevator | 3007006969 | 01/01/23 | 03/31/23 | 10,663.72 |
| TK Elevator | 3007172161 | 04/01/23 | 06/30/23 | 12,932.32 |
| TX Dept of State Health Svcs | R34666 | 11/01/22 | 10/31/24 | 1,478.98 |
| TX Dept of State Health Svcs | L06354 | 12/01/22 | 11/30/24 | 2,881.65 |
| TX Health & Human Services | CHIRP-2023 | 02/01/23 | 01/31/24 | 6,374.71 |
| Virtusa Corporation | 11123110024101 | 01/01/23 | 12/31/23 | 10,666.68 |
| **General Prepaids - Total** | | | | **800,820.84** |
| | | | | |
| United Fire Group | 3000191985-110722 | 11/15/22 | 11/15/23 | 7,591.00 |
| **Prepaid Insurance - Total** | | | | **7,591.00** |
| | | | | |
| **Total Prepaids** | | | | **808,411.84** |

In re Sherman/Grayson Hospital LLC
Schedule AB Attachment No. 38 [Part 7, Item 38]

**Fixtures, Furniture & Equipment**

| | Net Book Value of Debtor's Interest | Valuation Method Used for Current Value | Current Value of Debtor's Interest |
|---|---|---|---|
| Medical Equipment | $377,591.61 | Original Cost less Straight Line Depreciation | $377,591.61 |
| Hospital Furniture & Equipment | $92,434.25 | Original Cost less Straight Line Depreciation | $92,434.25 |
| Communications Equipment | $101,883.10 | Original Cost less Straight Line Depreciation | $101,883.10 |
| Office Equipment | $14,367.75 | Original Cost less Straight Line Depreciation | $14,367.75 |
| Radiology Equipment | $21,694.22 | Original Cost less Straight Line Depreciation | $21,694.22 |
| Support Equipment | $35,574.03 | Original Cost less Straight Line Depreciation | $35,574.03 |
| Kitchen & Related Equipment | $14,698.19 | Original Cost less Straight Line Depreciation | $14,698.19 |
| Computers | -$897.35 | Original Cost less Straight Line Depreciation | -$897.35 |
| **Total** | **$657,345.80** | | **$657,345.80** |

In re Sherman/Grayson Hospital LLC

Schedule AB Attachment No. 47 [Part 8, Item 47]

**Automobile Schedule**
**Sherman/Grayson Hospital**

| Description of Vehicle | VIN | Net Book Value | Valuation Method | Current Value of Debtor's Interest |
|---|---|---|---|---|
| 1999 Chev Pickup | 1GCEC14T8XZ180034 | $8,000 | FMV | $8,000 |
| 2003 Chev. Cargo Van | 1GBJG31UX31168198 | $8,000 | FMV | $8,000 |
| 2017 Ford Escape | 1FMCU0G9XHUB88886 | $17,000 | FMV | $17,000 |
| 2015 Toyota Highlander | 5TDBKRFH6FS133257 | $31,000 | FMV | $31,000 |
| | | | Total | $64,000 |

In re Sherman/Grayson Hospital LLC
Schedule AB Attachment No. 55 [Part 9, Item 55]

| Real Property Address | Current Use | Property Details | Nature and Extent of Debtor's Interest |
|---|---|---|---|
| 1000 FM 1417 SHERMAN, TX 75092 AKA 1000 S. HERITAGE PARKWAY, SHERMAN, TX 75092 | Outpatient Physician Clinic | Land - 35,340 SF; Building - 2,788 SF | Leasehold Interest - Lessee |
| N BRYANT SHERMAN, TX 75092 | Parking Garage | Land - 114,998.40 SF; Building - 207,420 SF - 760 Spaces | Leasehold Interest - Lessee |
| 123 N HIGHLAND SHERMAN, TX 75092 | Vacant Land | Land - 7,275 SF | Leasehold Interest - Lessee |
| 1107 W LAMAR SHERMAN, TX 75092 | Vacant Land | Land - 13,852 SF | Leasehold Interest - Lessee |
| 118 N HIGHLAND SHERMAN, TX 75092 | Surface Parking Lot - Not Used | Land - 7,000 SF; Parking Lot - 5,400 SF | Leasehold Interest - Lessee |
| 111 N BRYANT SHERMAN, TX 75092 | Surface Parking Lot - Not Used | Land - 68,846 SF; Parking Lot - 55,000 SF | Leasehold Interest - Lessee |
| 121 N MCKOWN AVE SHERMAN, TX 75092 | Surface Parking Lot - Not Used | Land - 29,603 SF; Parking Lot - 24,100 SF | Leasehold Interest - Lessee |
| 202 & 206 N BRYANT SHERMAN, TX 75092 | Surface Parking Lot - Not Used | Land - 29,400 SF; Parking Lot - 23,000 SF | Leasehold Interest - Lessee |
| 500 N HIGHLAND SHERMAN, TX 75092 | Main Hospital Building | Land - 226,500 SF; Building - 303,000 SF - 4 Stories + Basement | Leasehold Interest - Lessee |
| 425 N HIGHLAND STE 110 (UNIT 2) SHERMAN, TX 75092 | Office Condo - Physician Offices | Condo Unit - 1,443 SF | Leasehold Interest - Lessee |
| 425 N HIGHLAND STE 120 (UNIT 3) SHERMAN, TX 75092 | Office Condo - Physician Offices | Condo Unit - 2,912 SF | Leasehold Interest - Lessee |
| 425 N HIGHLAND STE 200 (UNIT 5) SHERMAN, TX 75092 | Office Condo - Physician Offices | Condo Unit - 2,117 SF | Leasehold Interest - Lessee |
| 425 N HIGHLAND STE 230 (UNIT 8) SHERMAN, TX 75092 | Office Condo - Physician Offices | Condo Unit - 1,537 SF | Leasehold Interest - Lessee |
| 425 N HIGHLAND STE 240 (UNIT 9) SHERMAN, TX 75092 | Office Condo - Physician Offices | Condo Unit - 1,953 SF | Leasehold Interest - Lessee |
| 425 N HIGHLAND STE 250 (UNIT 10) SHERMAN, TX 75092 | Office Condo - Physician Offices | Condo Unit - 1,750 SF | Leasehold Interest - Lessee |
| 307 N BINKLEY ST SHERMAN, TX 75092 | Surface Parking Lot | Land - 41,338 SF; Parking Lot - 18,200 SF | Leasehold Interest - Lessee |
| 319 N BINKLEY SHERMAN, TX 75092 | Vacant Land | Land - 35,401 SF | Leasehold Interest - Lessee |
| 300 N HIGHLAND AVE SHERMAN, TX 75092 | Professional Office Building (Ground Only) (See Note 1) | Land - 134,574 SF | Leasehold Interest - Sublessor under Ground Lease |
| 600 N HIGHLAND SHERMAN, TX 75092 | Essin Clinic Building - Vacant - To be Demolished | Land - 67,836 SF; Building - 16,784 SF | Leasehold Interest - Lessee |
| 501 N HIGHLAND MEDIC ARTS SHERMAN, TX 75092 | Medical Office Building | Land - 53,043 SF; Building - 14,789 SF | Leasehold Interest - Lessee |

**a  Fill in this information to identify the case:**

Debtor name  **SHERMAN/GRAYSON HOSPITAL LLC,**
              **a Delaware limited liability company**

United States Bankruptcy Court for the: District of **Delaware**

Case number (*If known*): **23-10810-JKS**

☐ Check if this is an amended filing

## Official Form 206D

# Schedule D: Creditors Who Have Claims Secured by Property          12/15

Be as complete and accurate as possible.

1.  **Do any creditors have claims secured by debtor's property?**
    ☐ No.  Check this box and submit page 1 of this form to the court with the debtor's other schedules.  Debtor has nothing else to report on this form
    ☒ Yes.  Fill in all of the information below.

**Part 1:      List Creditors Who Have Secured Claims**

2.  **List in alphabetical order all creditors who have secured claims.**
    **If a creditor has more than one secured claim, list the creditor separately for each claim.**

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral | Column B<br>Value of collateral that supports this claim |
|---|---|---|---|
| **2.1   Creditor's name**<br><br>**CARDINAL HEALTH 200 INC**<br><br>**Creditor's mailing address**<br><br>**ATTN PRESIDENT/MANAGER AGENT**<br>**7000 CARDINAL PLACE**<br>**WEST CAMPUS**<br>**DUBLIN, OH 43017** | Describe debtor's property that is subject to a lien and describe the lien<br><br>**CAPITAL LEASE AGREEMENT x3601**<br>**EQUIPMENT: BM27314 VITEK 2 w/AES & PC OBSERVA**<br>**UCC FILED 5/25/16 FILING #20163120852, CONTINUATION FILED 4/27/21, FILING NO. 20213250090** | $0.00 | $0.00 |
| **Creditor's email address, if known**<br><br>**Date debt was incurred**<br><br>**Last four digits of account number**<br><br>**Do multiple creditors have an interest in the same property?**<br>☒ No.<br>☐ Yes.  Specify each creditor, including this creditor, and its relative priority | Is the creditor an insider or related party?<br>☒ No.<br>☐ Yes.<br><br>Is anyone else liable on this claim?<br>☒ No.<br>☐ Yes. *Fill out Schedule H: Codebtors (Official Form 206H)*<br><br>*As of the petition filing date, the claim is:*<br>Check all that apply<br>☐ Contingent.<br>☐ Unliquidated<br>☐ Disputed | | |

Debtor SHERMAN/GRAYSON HOSPITAL LLC                                    Case number *(if known)* **23-10810-JKS**

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral | Column B<br>Value of collateral that supports this claim |
|---|---|---|---|
| **2.2 Creditor's name**<br><br>**DELL FINANCIAL SERVICES, LLC**<br><br>**Creditor's mailing address**<br><br>**ATTN PRESIDENT/MANAGER AGENT**<br>**MAIL STOP PS2DF-23 ONE DELL WAY**<br>**ROUND ROCK, TX 78682** | Describe debtor's property that is subject to a lien and describe the lien<br>**LEASE - COMPUTER EQUIPMENT/LEASE NO. x9-004**<br>**UCC FILED 7/8/22, FILING #20225712294** | $11,110.96 | $52,407.00 |
| **Creditor's email address, if known**<br><br>**Date debt was incurred**<br><br>**Last four digits of account number**<br><br>**Do multiple creditors have an interest in the same property?**<br>☒No.<br>☐Yes. Specify each creditor, including this creditor, and its relative priority | **Is the creditor an insider or related party?**<br>☒No.<br>☐Yes.<br>**Is anyone else liable on this claim?**<br>☒No.<br>☐Yes. *Fill out Schedule H: Codebtors (Official Form 206H)*<br><br>*As of the petition filing date, the claim is:*<br>Check all that apply<br>☐ Contingent.<br>☐ Unliquidated<br>☐ Disputed | | |
| **2.3 Creditor's name**<br><br>**DEPARTMENT OF THE TREASURY - INTERNAL REVENUE SERVICE**<br><br>**Creditor's mailing address**<br><br>**PO BOX 7346**<br>**PHILADELPHIA, PA 19101-7346** | Describe debtor's property that is subject to a lien and describe the lien<br>**PENALTIES AND INTEREST ON PAST DUE PAYROLL TAXES - TAX LIENS FILED**<br>**Notice of Federal Tax Lien – Filing No. 19-0045253968 – 11/27/19; Notice of Federal Tax Lien – Filing No. 20-0002017810 – 1/14/20; Notice of Federal Tax Lien – Filing No. 20-0006638282 – 2** | $1,051,038.05 | $8,209,240.00 |
| **Creditor's email address, if known**<br><br>**Date debt was incurred**<br><br>**Last four digits of account number**<br><br>**Do multiple creditors have an interest in the same property?**<br>☒No.<br>☐Yes. Specify each creditor, including this creditor, and its relative priority | **Is the creditor an insider or related party?**<br>☒No.<br>☐Yes.<br>**Is anyone else liable on this claim?**<br>☒No.<br>☐Yes. *Fill out Schedule H: Codebtors (Official Form 206H)*<br><br>*As of the petition filing date, the claim is:*<br>Check all that apply<br>☐ Contingent.<br>☐ Unliquidated<br>☒ Disputed | | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC          Case number *(if known)* **23-10810-JKS**

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral | Column B<br>*Value of collateral that supports this claim* |
|---|---|---|---|
| **2.4   Creditor's name**<br><br>**MIDLAND STATES BANK**<br><br>**Creditor's mailing address**<br><br>**ATTN PRESIDENT/MANAGER AGENT**<br>**1801 PARK 270 DRIVE SUITE 200**<br>**ST LOUIS, MO 63146**<br><br>**Creditor's email address, if known**<br><br>**Date debt was incurred**<br><br>**Last four digits of account number**<br><br>**Do multiple creditors have an interest in the same property?**<br>☒No.<br>☐Yes.  Specify each creditor, including this creditor, and its relative priority | Describe debtor's property that is subject to a lien and describe the lien<br><br>**COMBIDIAGNOST R90 MACHINE**<br>**UCC FILED 12/23/22, FILING #20220648244**<br><br><br>**Is the creditor an insider or related party?**<br>☒No.<br>☐Yes.<br>**Is anyone else liable on this claim?**<br>☒No.<br>☐Yes. *Fill out Schedule H: Codebtors (Official Form 206H)*<br><br>*As of the petition filing date, the claim is:*<br>Check all that apply<br>☐ Contingent.<br>☐ Unliquidated<br>☐ Disputed | $351,812.50 | $351,812.50 |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC                    Case number *(if known)* **23-10810-JKS**

| | | Column A<br>**Amount of claim**<br>Do not deduct the value of<br>collateral | Column B<br>Value of collateral that<br>supports this claim |
|---|---|---|---|
| **2.5   Creditor's name**<br><br>**MPT OF OLYMPIA LLC**<br>**MPT OF FAIRMONT-ALECTO**<br>**HOSPITAL LLC**<br>**MPT OF SHERMAN-ALECTO**<br>**HOSPITAL LLC**<br>**MPT OF LOS ANGELES LP**<br>**MPT OF WHEELING-ALECTO**<br>**HOSPITAL LLC**<br>**MPT OF MARTINS FERRY-**<br>**ALECTO HOSPITAL LLC**<br>**MPT OF SHERMAN-ALECTO**<br>**LLC**<br><br>**Creditor's mailing address**<br><br>**ATTN EDWARD ALDAG**<br>**1000 URBAN CENTER DRIVE SUITE**<br>**501**<br>**BIRMINGHAM, AL 35242**<br><br>**Creditor's email address, if known**<br><br>**Date debt was incurred**<br><br>**Last four digits of account**<br>**number**<br><br>**Do multiple creditors have an interest**<br>**in the same property?**<br>☒No.<br>☐Yes.  Specify each creditor, including<br>this creditor, and its relative priority | Describe creditor's property that is subject to a lien<br>and describe the lien<br><br>**LEASE OBLIGATIONS - SECURED CREDITOR**<br>**UCC FILED 2/16/15, FILING #20150659317,**<br>**CONTINUATION FILED 9/4/19, FILING**<br>**#20196144906**<br>**LEASE AGREEMENT DATED 10/31/2014**<br>**PURSUANT TO WHICH SHERMAN/GRAYSON**<br>**HOSPITAL LLC LEASES FROM MPT OF**<br>**SHERMAN-ALECTO LLC CERTAIN REAL**<br>**PROPERTY LOCATED IN SHERMAN, TEXAS AND**<br>**THAT CERTAIN SENIOR SECURED PREPETITION**<br>**AND SUPERPRIORITY DEBTOR-IN-POSSESSION**<br>**NOTE DATED 6/21/23; OBLIGATIONS OF**<br>**OLYMPIA HEALTH CARE, LLC, ALECTO**<br>**HEALTHCARE SERVICES FAIRMONT LLC,**<br>**ALECTO HEALTHCARE SERVICES OHIO VALLEY**<br>**LLC, ALECTO HEALTHCARE SERVICES**<br>**WHEELING LLC, AND ALECTO HEALTHCARE**<br>**SERVICES MARTIN'S FERRY LLC UNDER**<br>**AGREEMENTS WITH SECURED CREDITORS**<br><br>**Is the creditor an insider or related party?**<br>☒No.<br>☐Yes.<br><br>**Is anyone else liable on this claim?**<br>☐No.<br>☒Yes. *Fill out Schedule H: Codebtors (Official Form 206H)*<br>**ALECTO HEALTHCARE SERVICES SHERMAN LLC**<br>**SHERMAN/GRAYSON HEALTH SERVICES LLC**<br><br>***As of the petition filing date, the claim is:***<br>Check all that apply<br>☐ Contingent.<br>☐ Unliquidated<br>☐ Disputed | **$1,460,250.00**<br>**[Other Amounts**<br>**Unknown]** | $8,209,240.00 |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC                     Case number *(if known)* **23-10810-JKS**

|  | Column A<br>**Amount of claim**<br>Do not deduct the value of collateral | Column B<br>Value of collateral that supports this claim |
|---|---|---|
| **2.6   Creditor's name**<br><br>**US FOODS, INC**<br><br>**Creditor's mailing address**<br><br>**ATTN PRESIDENT/MANAGER AGENT**<br>**BOX 843202**<br>**DALLAS, TX 75284-3202**<br><br><br>**ATTN PRESIDENT/MANAGER AGENT**<br>**9399 WEST HIGGINS ROAD**<br>**ROSEMONT, IL 00006-0018**<br><br>Creditor's email address, if known<br><br>Date debt was incurred<br><br>Last four digits of account number<br><br>Do multiple creditors have an interest in the same property?<br>☒No.<br>☐Yes.  Specify each creditor, including this creditor, and its relative priority | Describe debtor's property that is subject to a lien and describe the lien<br>**SUPPLIES**<br>**UCC FILED 3/16/18, FILING #20181838123, CONTINUATION FILED 2/9/23, FILING #20231053809**<br>**COLLATERAL: PERSONAL PROPERTY**<br><br><br>*Is the creditor an insider or related party?*<br>☒No.<br>☐Yes.<br>**Is anyone else liable on this claim?**<br>☒No.<br>☐Yes. *Fill out Schedule H: Codebtors (Official Form 206H)*<br><br>*As of the petition filing date, the claim is:*<br>Check all that apply<br>☐ Contingent.<br>☐ Unliquidated<br>☒ Disputed | **$93,717.03** | $25,000.00 |
| **2.7   Creditor's name**<br><br>**GRAYSON COUNTY TAX ASSESSOR-COLLECTOR**<br><br>**Creditor's mailing address**<br><br>**OFFICE OF BRUCE STIDHAM, ASSESSOR-COLLECTOR**<br>**100 W. HOUSTON SUITE 11**<br>**SHERMAN, TX 75091-2107**<br><br>Creditor's email address, if known<br>BSTIDHAM@CO.GRAYSON.TX.US<br><br>Date debt was incurred<br><br>Last four digits of account number<br><br>Do multiple creditors have an interest in the same property?<br>☒No.<br>☐Yes.  Specify each creditor, including this creditor, and its relative priority | Describe debtor's property that is subject to a lien and describe the lien<br>**PERSONAL PROPERTY TAX LIEN**<br>**2018, 2019, 2020 - PAYMENT PLAN OF $50,000 PER MONTH**<br><br><br>**Is the creditor an insider or related party?**<br>☒No.<br>☐Yes.<br>**Is anyone else liable on this claim?**<br>☒No.<br>☐Yes. *Fill out Schedule H: Codebtors (Official Form 206H)*<br><br>*As of the petition filing date, the claim is:*<br>Check all that apply<br>☐ Contingent.<br>☐ Unliquidated<br>☐ Disputed | **$955,409.73** | $657,346.00 |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC          Case number *(if known)* **23-10810-JKS**

| Part 2: | List Others to Be Notified for a Debt Already Listed in Part 1 |
|---|---|

List in alphabetical order any others who must be notified for a debt already listed in Part 1. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for secured creditors.

If no others need to be notified for the debts listed in Part 1, do not fill out or submit this page. If additional pages are needed, copy this page.

| Name and address | On which line in Part 1 did you enter the related creditor? | Last 4 digits of account number for this entity |
|---|---|---|
| US FOODS, INC<br>ATTN PRESIDENT/MANAGER AGENT<br>9399 WEST HIGGINS ROAD<br>ROSEMONT, IL 00006-0018 | Line 2.6<br>Creditor Name<br> US FOODS, INC. | |
| LINEBARGER GOGGAN BLAIR  SAMPSON LLP<br>2777 N SLEMMONS FREEWAY SUITE 1000<br>DALLAS, TX 75207 | Line 2.7<br>Creditor Name<br>GRAYSON COUNTY TAX ASSESSOR-COLLECTOR. | |

Official Form 206D          **Schedule D: Creditors Who Have Claims Secured by Property**

**Fill in this information to identify the case:**

Debtor name **Sherman/Grayson Hospital LLC, a Delaware limited liability company**

United States Bankruptcy Court for the: District of **Delaware**

Case number (*If known*): **23-10810-JKS**

☐ Check if this is an amended filing

## Official Form 206E/F

# Schedule E/F: Creditors Who Have Unsecured Claims          **12/15**

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim. Also list executory contracts on Schedule A/B: Assets - Real and Personal Property (Official Form 206A/B) and on Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left. If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

| **Part 1:** | List Creditors With PRIORITY Unsecured Claims |

1. **Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).**
   ☐ No. Go to Part 2.
   ☒ Yes. Go to line 2.

2. **List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or in part. If the debtor has more than 3 creditors with priority unsecured claims, fill out and attach the Additional Page of Part 1.**

|  | | Total claim | Priority amount |
|---|---|---|---|

| **2.1 Priority creditor's name and mailing address** | **As of the petition filing date, the claim is:** | **Notice Purposes** | $ |
|---|---|---|---|
| **TEXAS COMPTROLLER OF PUBLIC ACCOUNTS** **ATTN REVENUE ACCOUNTING DIVISION** **111 E 17TH STREET** **AUSTIN, TX 78711** | Check all that apply ☐ Contingent. ☐ Unliquidated ☐ Disputed | | |
| Date or dates debt was incurred | **Basis for the claim NOTICE PURPOSES** | | |
| Last four digits of account number | **Is the claim subject to setoff?** ☐ No. ☐ Yes. | | |
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a) (8) | | | |

| **2.2 Priority creditor's name and mailing address** | **As of the petition filing date, the claim is:** | | $ |
|---|---|---|---|
| | Check all that apply ☐ Contingent. ☐ Unliquidated ☐ Disputed | | |
| Date or dates debt was incurred | | | |
| Last four digits of account number | **Basis for the claim** | | |
| Specify Code subsection of PRIORITY unsecured claim: 11 U.S.C. § 507(a)(8) | **Is the claim subject to setoff?** ☐ No. ☐ Yes. | | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| Part 2: | List Creditors With NONPRIORITY Unsecured Claims |
|---|---|

3.  List in alphabetical order all creditors with nonpriority unsecured claims. If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

---

**3.1  Nonpriority creditor's name and mailing address**

**3M HEALTH INFORMATION SYSTEMS**
**ATTN PRESIDENT/MANAGER AGENT**
**DEPT 088, P O BOX 120881**
**DALLAS, TX 75312-0881**

Date or dates debt was incurred  Various

Last four digits of account number

*As of the petition filing date, the claim is:*     $71,702.10

Check all that apply
☒ Contingent
☒ Unliquidated
☐ Disputed

Basis for the claim   **SERVICES - SOFTWARE**

Is the claim subject to setoff?
☒ No.
☐ Yes

---

**3.2  Nonpriority creditor's name and mailing address**

**ABBOTT LAB INC  ST JUDE VASCULAR**
**ATTN HUBERT ALLEN EVP AND GENERAL**
**COUNSEL**
**22400 NETWORK PLACE**
**CHICAGO, IL 60673-1224**

Date or dates debt was incurred  Various

Last four digits of account number

*As of the petition filing date, the claim is:*     $309,072.04

Check all that apply
☐ Contingent
☐ Unliquidated
☒ Disputed

Basis for the claim   **SUPPLIES**

Is the claim subject to setoff?
☒ No.
☐ Yes

---

**3.3  Nonpriority creditor's name and mailing address**

**ABBOTT LABORATORIES**
**ATTN PRESIDENT/MANAGER AGENT**
**P.O. BOX 92679**
**CHICAGO, IL 60675-2679**

Date or dates debt was incurred  Various

Last four digits of account number

*As of the petition filing date, the claim is:*     $1,281.92

Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim   **SUPPLIES**

Is the claim subject to setoff?
☒ No.
☐ Yes

---

**3.4  Nonpriority creditor's name and mailing address**

**ABILITY NETWORK, INC.**
**ATTN PRESIDENT/MANAGER AGENT**
**PO BOX 856015**
**MINNEAPOLIS, MN 55485-6015**

Date or dates debt was incurred  Various

Last four digits of account number

*As of the petition filing date, the claim is:*     $5,897.28

Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim   **SOFTWARE - BILLING**

Is the claim subject to setoff?
☒ No.
☐ Yes

---

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.5   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,802.92 |
|---|---|---|
| **ACCRUENT COMPANY**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 679881**<br>**DALLAS, TX 75267-9881** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   PURCHASED SERVICES -**<br>**BIOMEDICAL** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.6   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $9,507.14 |
| **ACIS INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 3274**<br>**MCKINNEY, TX 75070** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   REPAIRS - HVAC** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.7   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,900.25 |
| **ACIST MEDICAL SYSTEMS**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 978975**<br>**DALLAS, TX 75397-8975** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SUPPLIES - MEDICAL** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.8   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $125,000.00 |
| **ADELANTO HEALTHCARE VENTURES LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**401 W 15 STREET SUITE 840**<br>**AUSTIN, TX 78701** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SERVICES** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.9   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $8,802.89 |
| **ADVANCED STERILIZATION PRODUCT**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 74007359**<br>**CHICAGO, IL 60674-7359** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SUPPLIES - INFECTION**<br>**PREVENTION** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

Debtor   SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.10   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,166.76 |
|---|---|---|
| **AFFILIATED COM-NET, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**800 JUPITER RD SUITE 200**<br>**PLANO, TX 75074-3770**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **VOICE AND DATA COMMUNICATION**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.11   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $12,175.08 |
| **AGFA CORPORATION**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**MAIL CODE 5583 P O BOX 105046**<br>**ATLANTA, GA 30348-5046**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **SUPPLIES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.12   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 146.14 |
| **ALAMO SCIENTIFIC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**7431 REINDEER TRAIL #2**<br>**SAN ANTONIO, TX 78238**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **SUPPLIES - MEDICAL**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.13   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $60,186,975.93 |
| **ALECTO HEALTHCARE SERVICES LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**101 N. BRAND BOULEVARD SUITE 1920**<br>**GLENDALE, CA 91203**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **INTERCOMPANY ADVANCES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.14   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,461.45 |
| **ALLEGIANCE MOBILE HEALTH**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 4320**<br>**HOUSTON, TX 77210**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **MEDICAL TRANSPORTATION**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.15 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $639,264.60 |
|---|---|---|
| **ALLSCRIPTS**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**24630 NETWORK PLACE**<br>**CHICAGO, IL 60673-1246** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  **SERVICES - SOFTWARE** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.16 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $36,796.68 |
| **ALSCO INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 2317**<br>**SALT LAKE CITY, UT 84110** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  **PURCHASED SERVICES - LINEN** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.17 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $142,019.44 |
| **ALTERA DIGITAL HEALTH, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**2429 MILITARY RD STE 300**<br>**NIAGARA FALLS, NY 14304** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  **SERVICES - SOFTWARE** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.18 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $   .00 |
| **ALTERA HIGHLAND LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**5910 N. CENTRAL EXPRESSWAY SUITE 1360**<br>**DALLAS, TX 75206** | Check all that apply<br>☒ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  **LEASE OBLIGATIONS** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.19 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,272.34 |
| **AMERICAN HEART ASSOCIATION**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**AHA ECC DISTRIBUTION P.O. BOX 841390**<br>**DALLAS, TX 75284** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  **SERVICES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.20   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $9,483.08 |
|---|---|---|
| ANESTHESIA RESOURCES LLC<br>ATTN PRESIDENT/MANAGER AGENT<br>PO BOX 669247<br>MARIETTA, GA 30066 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.21   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 385.90 |
| ANGIODYNAMICS<br>ATTN PRESIDENT/MANAGER AGENT<br>P.O. BOX 1549<br>ALBANY, NY 12201-1549 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES -<br>VASCULAR/ONCOLOGY | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.22   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 550.00 |
| APEX SURGICAL, LLC<br>ATTN PRESIDENT/MANAGER AGENT<br>1201 N FEDERAL HWY 4606<br>FORT LAUDERDALE, FL 33304 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.23   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $4,125.00 |
| APPLIED STATISTICS & MANAGEMENT, INC.<br>ATTN PRESIDENT/MANAGER AGENT<br>32848 WOLF STORE RD<br>TEMECULA, CA 92592 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SOFTWARE - MEDICAL<br>STAFF CREDENTIALING | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.24   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $28,050.00 |
| APPSMART<br>ATTN PRESIDENT/MANAGER AGENT<br>PO BOX 671328<br>DALLAS, TX 75267-1328 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES - SOFTWARE | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.25   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,030.97 |
|---|---|---|
| **ARGON MEDICAL DEVICES, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 120527**<br>**DALLAS, TX 75312** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| **Date or dates debt was incurred  Various** | **Basis for the claim   SUPPLIES** | |
| **Last four digits of account number** | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

| 3.26   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $9,026.87 |
|---|---|---|
| **ARTHREX INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 403511**<br>**ATLANTA, GA 30384-3511** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| **Date or dates debt was incurred  Various** | **Basis for the claim   SUPPLIES** | |
| **Last four digits of account number** | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

| 3.27   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,461.38 |
|---|---|---|
| **ASAHI INTECC USA INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**22 EXECUTIVE PARK SUITE 110**<br>**IRVINE, CA 92614-2705** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| **Date or dates debt was incurred  Various** | **Basis for the claim   SUPPLIES - MEDICAL** | |
| **Last four digits of account number** | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

| 3.28   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,712.87 |
|---|---|---|
| **ASCENTIUM CAPITAL, LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 11407**<br>**BIRMINGHAM, AL 35246** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| **Date or dates debt was incurred  Various** | **Basis for the claim   PREVENTIVE MAINTENANCE - SATELLITE TV SYSTEM** | |
| **Last four digits of account number** | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

| 3.29   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $130,418.04 |
|---|---|---|
| **ASD HEALTHCARE, LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 978526**<br>**DALLAS, TX 75397-8526** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| **Date or dates debt was incurred  Various** | **Basis for the claim   PHARMACEUTICALS** | |
| **Last four digits of account number** | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.30  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 200.00 |
|---|---|---|
| **ASSET SURPLUS REALLOCATION, LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**8910 N DALE MABRY HWY STE 30**<br>**TAMPA, FL 33614**<br><br>**Date or dates debt was incurred  Various**<br><br>**Last four digits of account number** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SUPPLIES - MEDICAL<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.31  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,747.47 |
| **AT&T MOBILITY**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 6463**<br>**CAROL STREAM, IL 60197-6463**<br><br>**Date or dates debt was incurred  Various**<br><br>**Last four digits of account number** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   UTILTIES - CELL PHONES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.32  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 706.62 |
| **ATMOS ENERGY**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 740353**<br>**CINCINNATI, OH 45274-0353**<br><br>**Date or dates debt was incurred  Various**<br><br>**Last four digits of account number** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   UTILITIES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.33  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $18,913.17 |
| **ATMOS ENERGY CORPORATION**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 841425**<br>**DALLAS, TX 75284-1425**<br><br>**Date or dates debt was incurred  Various**<br><br>**Last four digits of account number** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   UTILITIES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.34  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $6,375.00 |
| **AVANTE HEALTH SOLUTION   PACIFIC MEDICA**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**212 AVENIDA FABRICANTE**<br>**SAN CLEMENTE, CA 92672**<br><br>**Date or dates debt was incurred  Various**<br><br>**Last four digits of account number** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   MATRIX ARRAY<br>**TRANSDUCER**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.35   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $19,707.95 |
|---|---|---|
| **AZTEC LEASING, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**DEPT 321 PO BOX 509015**<br>**SAN DIEGO, CA 92150-9015** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   LEASE - COPIERS | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.36   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,788.75 |
| **B BRAUN MEDICAL INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 780433**<br>**PITTSBURGH, PA 19178-0433** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.37   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | |
| **BABETTE BOOE.**<br>**C/O BRANDON S. SHELBY, ESQ**<br>**SHELBY LAW, PLLC**<br>**515 N. TRAVIS STREET**<br>**SHERMAN, TX 75090** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various<br><br>Last four digits of account number | Basis for the claim   CLAIMS ASSERTED BY<br>FORMER EMPLOYEE<br>**Booe v. Alecto Healthcare Services, United**<br>**States District Court for Eastern District of**<br>**Texas Case No. 4:22-cv-00110-ALM.**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.38   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,252.45 |
| **BACKFLOW SOLUTIONS**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 1253**<br>**DENISON, TX 00007-5021** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.39   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $8,192.98 |
| **BAKER DISTRIBUTING COMPANY**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**3800 FRISCO ROAD**<br>**SHERMAN, TX 75090** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.40   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $17,392.70 |
|---|---|---|
| BARRIER, JOYCE<br>2202 S BLUEBONNET AVE<br>DENISON, TX 75020<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SUPPLIES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.41   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 462.78 |
| BATTERIES PLUS - 148<br>ATTN PRESIDENT/MANAGER AGENT<br>4054 N. US HWY 75<br>SHERMAN, TX 75090<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SUPPLIES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.42   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,746.05 |
| BAXTER HEALTHCARE CORP.<br>ATTN PRESIDENT/MANAGER AGENT<br>P.O. BOX 730531<br>DALLAS, TX 75373-0531<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SUPPLIES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.43   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $15,689.13 |
| BAYER HEALTHCARE LLC<br>ATTN PRESIDENT/MANAGER AGENT<br>P O BOX 360172<br>PITTSBURGH, PA 15251-6172<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SUPPLIES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.44   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $121,211.34 |
| BECKMAN COULTER, INC<br>ATTN PRESIDENT/MANAGER AGENT<br>DEPT CH 10164<br>PALATINE, IL 60055-0164<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed<br><br>Basis for the claim   SUPPLIES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.45   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $10,295.39 |
|---|---|---|
| **BEHAVIORAL SAFETY PRODUCTS LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**29A N MAIN STREET STE 3**<br>**WATKINSVILLE, GA 30677** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.46   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 874.50 |
| **BINSWANGER GLASS CO**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 679331**<br>**DALLAS, TX 75267-9331** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.47   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 407.10 |
| **BIO-MEDICAL DEVICES INT'L, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**17171 DAIMLER AVE.**<br>**IRVINE, CA 92614** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.48   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $46,907.11 |
| **BIOMERIEUX, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 500308**<br>**ST LOUIS, MO 63150-6308** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   REAGENTS -<br>LABORATORY SUPPLIES | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.49   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $22,303.47 |
| **BIO-RAD LABORATORIES, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**CLINICAL DIAGNOSTICS DIVISION PO BOX 849740**<br>**LOS ANGELES, CA 90084-9740** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

Debtor   SHERMAN/GRAYSON HOSPITAL LLC.                              Case Number 23-10810-JKS

| 3.50   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $59,332.30 |
|---|---|---|
| **BIOTRONIK, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**6024 JEAN ROAD**<br>**LAKE OSWEGO, OR 97035** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.51   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $34,100.00 |
|---|---|---|
| **BLAKE HEALTH GROUP, LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**3139 HOLCOMBE BLVD SUITE 361**<br>**HOUSTON, TX 77025** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SERVICES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.52   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,800.00 |
|---|---|---|
| **BLAST MASTERS, LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 2684**<br>**BIG SPRING, TX 79721** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **PREVENTIVE MAINTENANCE - KITCHEN HOOD** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.53   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $846,372.77 |
|---|---|---|
| **BLUE CROSS BLUE SHIELD OF TEXAS**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 650615**<br>**DALLAS, TX 75265** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **EMPLOYEE BENEFITS** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.54   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $7,357.50 |
|---|---|---|
| **BOARDBOOKIT**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**900 PARISH STREET SUITE 102**<br>**PITTSBURGH, PA 15220** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SERVICES - SOFTWARE** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.55 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $29,122.55 |
|---|---|---|
| **BOSTON SCIENTIFIC CORPORATION** **ATTN PRESIDENT/MANAGER AGENT** **P.O. BOX 951653** **DALLAS, TX 75395-1653** | Check all that apply ☐ Contingent ☐ Unliquidated ☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff? ☒No. ☐Yes | |

| 3.56 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 56.50 |
|---|---|---|
| **BRASSELER USA MEDICAL** **ATTN PRESIDENT/MANAGER AGENT** **1 BRASSELER BLVD** **SAVANNAH, GA 31419** | Check all that apply ☐ Contingent ☐ Unliquidated ☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff? ☒No. ☐Yes | |

| 3.57 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 908.46 |
|---|---|---|
| **BRINKS INC** **ATTN PRESIDENT/MANAGER AGENT** **7373 SOLUTIONS CENTER** **CHICAGO, IL 60677-7003** | Check all that apply ☐ Contingent ☐ Unliquidated ☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES | |
| Last four digits of account number | Is the claim subject to setoff? ☒No. ☐Yes | |

| 3.58 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 580.00 |
|---|---|---|
| **BURDEN, LARRY DONN** **1399 WHITING RD** **BELLS, TX 75414** | Check all that apply ☐ Contingent ☐ Unliquidated ☐ Disputed | |
| Date or dates debt was incurred  Various | | |
| Last four digits of account number | Basis for the claim   WASTE TRAP CLEANING Is the claim subject to setoff? ☒No. ☐Yes | |

| 3.59 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 78.45 |
|---|---|---|
| **BURLINGTON MEDICAL SUPPLY** **ATTN PRESIDENT/MANAGER AGENT** **PO BOX 675310** **DETROIT, MI 48267-5310** | Check all that apply ☐ Contingent ☐ Unliquidated ☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff? ☒No. ☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.60   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $68,313.82 |
|---|---|---|
| **C. R. BARD, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 75767**<br>**CHARLOTTE, NC 28275** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.61   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 26.68 |
| **CABLES AND SENSORS, LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**5874 S. SEMORAN BLVD.**<br>**ORLANDO, FL 32822** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.62   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $53,766.32 |
| **CANON MEDICAL SYSTEMS USA, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 7476**<br>**CAROL STREAM, IL 60197-7476** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.63   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $6,481.91 |
| **CARDINAL HEALTH 411,INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 847384**<br>**DALLAS, TX 75284-7384** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES -<br>PHARMACUETICALS | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.64   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 829.27 |
| **CARDINAL HEALTH MEDICAL PRODUCTS**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 730112**<br>**DALLAS, TX 75373-0112** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.65   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $32,009.94 |
|---|---|---|
| **CARDIOVASCULAR  SYSTEMS, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**DEPT CH 19348**<br>**PALATINE, IL 60055** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   MEDICAL DEVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.66   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $166,186.56 |
| **CAREFUSION SOLUTIONS, LLC**<br>**ATTN AMADA SATERNUS, CONTRACT**<br>**CONSULTANT**<br>**25565 NETWORK PLACE**<br>**CHICAGO, IL 60673-1255** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.67   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $110,000.00 |
| **CARRUS CARE PHYSICIANS GROUP, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**1810 W US HIGHWAY 82**<br>**SHERMAN, TX 75092** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES -<br>PROFESSIONAL MEDICAL SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.68   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $4,789.09 |
| **CARRUS SPECIALTY HOSPITAL**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**1810 US HIGHWAY 82 WEST**<br>**SHERMAN, TX 75092** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.69   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,873.01 |
| **CARSTENS HEALTH IND INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**LBX 95195 141 W JACKSON BLVD/SUITE 1000**<br>**CHICAGO, IL 60694** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - MEDICAL<br>OFFICE SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.70   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 444.50 |
|---|---|---|
| **CARTER, JENNIFER**<br>**502 S BROADWAY**<br>**BELLS, TX 00007-5414**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   CONTRACT EMPLOYEE**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.71   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 61.67 |
| **CASSELL, DANA**<br>**500 N HIGHLAND**<br>**SHERMAN, TX 00007-5092**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   EMPLOYEE**<br>**REIMBURSEMENT**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.72   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,969,473.70 |
| **CENTER FOR MEDICARE AND MEDICAID SERVICES;**<br>**C/O NOVITAS SOLUTIONS**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**2020 TECHNOLOGY PARKWAY SUITE 100**<br>**MECHANISBURG, PA 17050**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   MEDICARE ADVANCE**<br>**PAYMENT**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.73   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $   .00 |
| **CENTER FOR MEDICARE AND MEDICAID SERVICES;**<br>**C/O UNITED STATES DEPARTMENT OF JUSTICE;**<br>**CIVIL DIVISION - COMMERCIAL LITIGATION**<br>**BRANCH.**<br>**ATTN: JOHN KRESSE, ESQ**<br>**UNITED STATES DEPARTMENT OF JUSTICE**<br>**CIVIL DIVISION, COMMERCIAL LITIGATION BRANCH**<br>**1100 L STREET NW 7TH FLOOR**<br>**BOX 875 BEN FRANKLIN STATION**<br>**WASHINGTON, DC 20044-0875**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☒ Contingent<br>☒ Unliquidated<br>☒ Disputed<br><br>**Basis for the claim   DEBTOR IS A**<br>**DEFENDANT IN ACTION BROUGHT TO**<br>**RECOVER ALLEGED OVERPAYMENT TO**<br>**OLYMPIA HEALTH CARE, LLC**<br>**United States of America v. Olympia Health**<br>**Care, LLC, et. al., United States District Court**<br>**for the Central District of California Case No.**<br>**2:23-cv-01783.**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                   Case Number 23-10810-JKS

| 3.74   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,615.55 |
|---|---|---|
| **CENTRE TECHNOLOGIES, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**C/O TEXAS CAPITAL BANK P.O. BOX 679069**<br>**DALLAS, TX 75267-9069** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES - IT EQUIPMENT** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.75   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $5,112.55 |
| **CENTURION MEDICAL PRODUCTS**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 842816**<br>**BOSTON, MA 02281-2816** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.76   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $10,925.26 |
| **CENTURY BUILDERS HARDWARE**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**5827 W 34TH ST**<br>**HOUSTON, TX 77092** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.77   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 200.00 |
| **CITY OF SHERMAN CITY CLERKS OFFICE**<br>**PO BOX 1106**<br>**SHERMAN, TX 75091-1106** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SERVICES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.78   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $85,061.50 |
| **CITY OF SHERMAN WATER UTILITY**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 1106**<br>**SHERMAN, TX 75091** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **UTILITIES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| | | |
|---|---|---|
| **3.79 Nonpriority creditor's name and mailing address**<br><br>**CLARKE, DR JERMAINE**<br>**204 MEDICAL DRIVE SUITE 240**<br>**SHERMAN, TX 75092**<br><br>Date or dates debt was incurred Various<br><br>Last four digits of account number | *As of the petition filing date, the claim is:*<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim SERVICES - **PROFESSIONAL MEDICAL SERVICES**<br><br>**Is the claim subject to setoff?**<br>☒ No.<br>☐ Yes | $5,250.00 |
| **3.80 Nonpriority creditor's name and mailing address**<br><br>**CODEMAP**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**150 NORTH WACKER DRIVE SUITE 1870**<br>**CHICAGO, IL 60606**<br><br>Date or dates debt was incurred Various<br><br>Last four digits of account number | *As of the petition filing date, the claim is:*<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim **SOFTWARE - CODING**<br><br>**Is the claim subject to setoff?**<br>☒ No.<br>☐ Yes | $ 519.95 |
| **3.81 Nonpriority creditor's name and mailing address**<br><br>**COFFMAN, AMY**<br>**1825 PEBBLEBROOK LANE**<br>**SHERMAN, TX 75092**<br><br>Date or dates debt was incurred Various<br><br>Last four digits of account number | *As of the petition filing date, the claim is:*<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim **EMPLOYEE EXPENSE REIMBURSEMENT**<br><br>**Is the claim subject to setoff?**<br>☒ No.<br>☐ Yes | $ 100.00 |
| **3.82 Nonpriority creditor's name and mailing address**<br><br>**COMPREHENSIVE HOSPITAL INCREASE**<br>**REIMBURSEMENT PROGRAM; C/O AMERIGROUP**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**2505 N. HIGHWAY 360 SUITE 360**<br>**GRAND PRAIRIE, TX 75050**<br><br>Date or dates debt was incurred Various<br><br>Last four digits of account number | *As of the petition filing date, the claim is:*<br>Check all that apply<br>☒ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim **CHIRP OVERPAYMENT**<br><br>**Is the claim subject to setoff?**<br>☒ No.<br>☐ Yes | $5,304,239.00 |
| **3.83 Nonpriority creditor's name and mailing address**<br><br>**COMPSPEC, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**801 N. BRAND BLVD. SUITE 650**<br>**GLENDALE, CA 91203**<br><br>Date or dates debt was incurred Various<br><br>Last four digits of account number | *As of the petition filing date, the claim is:*<br>Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim **SERVICES**<br><br>**Is the claim subject to setoff?**<br>☒ No.<br>☐ Yes | $30,421.82 |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.84   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 306.02 |
|---|---|---|
| **CONE INSTRUMENTS**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 844360**<br>**BOSTON, MA 02284-4360** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.85   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $10,276.51 |
|---|---|---|
| **CONMED CORPORATION**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**CHURCH STREET STATION PO BOX 6814**<br>**NEW YORK, NY 10249-6814** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.86   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $171,266.72 |
|---|---|---|
| **CONSTELLATION NEWENERGY, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 4640**<br>**CAROL STREAM, IL 60197-4640** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   UTILITIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.87   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $18,750.00 |
|---|---|---|
| **CONSULTANTS IN RADIOLOGY, PA**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**C/O RADIOLOGY PARTNERS 2330 UTAH AVENUE**<br>**SUITE 200**<br>**EL SEGUNDO, CA 90245** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES - PROFESSIONAL MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.88   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $17,918.06 |
|---|---|---|
| **COOCH AND TAYLOR, P.A.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**1007 N. ORANGE ST SUITE 1120**<br>**WILMINGTON, DE 19801** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   LEGAL SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.89   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $18,771.71 |
|---|---|---|
| **COOK INCORPORATED**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**22988 NETWORK PLACE**<br>**CHICAGO, IL 60673-1299** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.90   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $12,964.35 |
| **CORDIS US CORP**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**14201 NW 60TH AVE**<br>**HIALEAH, FL 33014** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES - MEDICAL** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.91   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 103.40 |
| **CORE PRODUCTS INTERNATIONAL**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**808 PROSPECT AVENUE**<br>**OSCEOLA, WI 54020** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.92   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 9.48 |
| **COVIDIEN**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**4642 COLLECTION CENTER DRIVE**<br>**CHICAGO, IL 60693-0046** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES - MEDICAL** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.93   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 149.82 |
| **COVIDIEN SALES LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 848086**<br>**DALLAS, TX 75284-8088** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.94   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,371.53 |
|---|---|---|
| **COWTOWN MATERIALS, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**1210 W. CROSBY ROAD**<br>**CARROLLTON, TX 75006**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SUPPLIES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.95   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,975.79 |
| **CPI/CRISIS PREVENTION INSTITUTE, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**10850 W. PARK PLACE STE. 250**<br>**MILWAUKEE, WI 53224**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   TRAINING - CRISIS PREVENTION<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.96   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $9,784.52 |
| **CTX PLUMBING COMPANY LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 1494**<br>**CELINA, TX 75009**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SERVICES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.97   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 387.07 |
| **CYRACOM, LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 74008083**<br>**CHICAGO, IL 60674-8083**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SERVICES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.98   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $8,750.28 |
| **D.H. PACE COMPANY, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**1901 E. 119TH STREET**<br>**OLATHE, KS 66061**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   REPAIRS - NON MEDICAL<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor   SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| | | |
|---|---|---|
| **3.99   Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $202,308.04 |
| **DATASEARCH INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 461289**<br>**SAN ANTONIO, TX 78246-1289** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various<br><br>Last four digits of account number | **Basis for the claim   SERVICES**<br>**Datasearch, Inc. v. Sherman/Grayson**<br>**Hospital, LLC dba Wilson N. Jones Regional**<br>**Medical Center, JAMS Arbitration**<br>**Proceeding.**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| **3.100   Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $12,250.51 |
| **DATIX USA INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 95396**<br>**CHICAGO, IL 60694-5396** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various<br><br>Last four digits of account number | **Basis for the claim   SOFTWARE - POLICIES**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| **3.101   Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $ 925.00 |
| **DIESEL FUEL MAINTENANCE, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 759**<br>**LA PORTE, TX 77571** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various<br><br>Last four digits of account number | **Basis for the claim   SUPPLIES**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| **3.102   Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $2,622.62 |
| **DIRECTV ENTERTAINMENT HOLDINGS LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 5006**<br>**CAROL STREAM, IL 60197-5006** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various<br><br>Last four digits of account number | **Basis for the claim   UTILITIES - CABLE TV**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| **3.103   Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $ 623.52 |
| **DIVERSATEK HEALTHCARE, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**27270 NETWORK PLACE**<br>**CHICAGO, IL 60673-1272** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various<br><br>Last four digits of account number | **Basis for the claim   SUPPLIES - MEDICAL**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.104   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,828.53 |
|---|---|---|
| DOOR CONTROL SERVICES INC.<br>ATTN PRESIDENT/MANAGER AGENT<br>P O BOX 675067<br>DALLAS, TX 75267-5067 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.105   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 181.59 |
| DSBWORLDWIDE MARKETING & ADV.<br>ATTN PRESIDENT/MANAGER AGENT<br>1800 TEAGUE DR., SUITE 301, SHERMAN, TX,75090 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   WEBSITE DESIGN | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.106   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,551.54 |
| EDWARDS LIFESCIENCES<br>ATTN PRESIDENT/MANAGER AGENT<br>23146 NETWORK PLACE<br>CHICAGO, IL 60673-1231 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.107   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,236.00 |
| ELECTRONICS FOR LIFE SUPPORT, INC<br>ATTN PRESIDENT/MANAGER AGENT<br>192 HARLINGEN RD<br>BELLE MEAD, NJ 08502 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   REPAIRS - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.108   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 170.10 |
| ELLIOTT ELECTRIC SUPPLY INC<br>ATTN PRESIDENT/MANAGER AGENT<br>4509 TEXOMA PARKWAY<br>SHERMAN, TX 75090 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                Case Number 23-10810-JKS

| 3.109   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $13,927.50 |
|---|---|---|
| **ELSEVIER, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 9533**<br>**NEW YORK, NY 10087-9533**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim  **SERVICES - SOFTWARE**<br><br>Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.110   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 652.00 |
| **EMERGENCY NURSES ASSOC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**930 WOODFIELD ROAD**<br>**SCHAUMBURG, IL 60173**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim  **SERVICES - STAFFING**<br><br>Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.111   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $5,364.40 |
| **ESUTURES.COM**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**9645 W WILLOW LANE**<br>**MOKENA, IL 60448**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim  **SUPPLIES**<br><br>Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.112   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $6,558.01 |
| **EVOQUA WATER TECHNOLOGIES, LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**28563 NETWORK PLACE**<br>**CHICAGO, IL 60673-1285**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim  **WATER TREATMENT**<br><br>Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.113   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 356.19 |
| **EXALT PRINTING SOLUTIONS, LLC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**1628 W. CROSBY RD SUITE 104**<br>**CARROLLTON, TX 75006**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim  **SERVICES**<br><br>Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.114    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $26,625.00 |
|---|---|---|
| **EXPERIAN HEALTH, INC / PASSPORT**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 886133**<br>**LOS ANGELES, CA 90088-6133**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **SERVICES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.115    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $7,210.30 |
| **FARMER BROTHERS CO**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 846224**<br>**LOS ANGELES, CA 90084-6224**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **SUPPLIES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.116    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 251.58 |
| **FEDEX**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 660481**<br>**DALLAS, TX 75266-0481**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **SERVICES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.117    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 337.96 |
| **FEDEX FREIGHT**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**DEPT CH PO BOX 10306**<br>**PALATINE, IL 60055-0306**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **FREIGHT**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.118    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $4,073.60 |
| **FFF ENTERPRISES**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 840150**<br>**LOS ANGELES, CA 90084-0150**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **FLU VACCINES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.119    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 550.00 |
|---|---|---|
| **FILTRATION SPECIALISTS, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 1401**<br>**MANSFIELD, TX 76063**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim  **ANNUAL LINE AND LEAK DETECTOR TEST**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.120    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $10,760.05 |
| **FIRETROL PROTECTION SYSTEMS, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**10320 MARKISON RD**<br>**DALLAS, TX 75238**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim  **SERVICES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.121    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $7,978.50 |
| **FIRST MEDICAL RESPOND**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**4617 ARLINGTON ST**<br>**HOUSTON, TX 77022**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim  **AMBULANCE SERVICES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.122    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $8,071.57 |
| **FISHER & PAYKEL HEALTHCARE INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**DEPT CH 16926**<br>**PALATINE, IL 60055-6926**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim  **SUPPLIES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.123    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,450.00 |
| **FLETCHER, MD JOHN THOMAS**<br>**5100 WILDER TRAIL**<br>**SHERMAN, TX 75092**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim  **SERVICES - PROFESSIONAL MEDICAL SERVICES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.124 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $7,565.00 |
|---|---|---|
| **FORVIS, LLP**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**910 E ST LOUIS ST STE 400**<br>**SPRINGFIELD, MO 65806**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SERVICES -**<br>**PROFESSIONAL SERVICES - MEDICARE**<br>**COST REPORTS**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.125 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $6,711.85 |
| **FREEDOM MEDICAL, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 822704**<br>**PHILADELPHIA, PA 19182-2704**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   RENTALS - MEDICAL**<br>**DEVICES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.126 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $17,373.53 |
| **FRONTIER COMMUNICATIONS OF TEXAS**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 740407**<br>**CINCINNATI, OH 45274-0407**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SERVICES -**<br>**COMMUNICATIONS**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.127 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $18,400.00 |
| **GAJDA, DR. MALGORZATA T. MD, FAAP, PA**<br>**3305 N CALAIS ST STE 300**<br>**SHERMAN, TX 75090**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SERVICES -**<br>**PROFESSIONAL MEDICAL SERVICES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.128 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $27,165.38 |
| **GARRATT-CALLAHAN COMPANY**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**50 INGOLD ROAD**<br>**BURLINGAME, CA 94010**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SERVICES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.129  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $12,573.93 |
|---|---|---|
| GE HEALTHCARE FIN. SERV.<br>ATTN PRESIDENT/MANAGER AGENT<br>P.O. BOX 641419<br>PITTSBURGH, PA 15264-1419<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim  PREVENTIVE MAINTENANCE - CT SCANNER<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.130  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $148,280.49 |
| GE HEALTHCARE IITS USA CORP<br>ATTN PRESIDENT/MANAGER AGENT<br>15724 COLLECTIONS CENTER DR.<br>CHICAGO, IL 60693<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SERVICES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.131  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $13,108.11 |
| GE PRECISION  HEALTHCARE LLC<br>ATTN PRESIDENT/MANAGER AGENT<br>P.O. BOX 96483<br>CHICAGO, IL 60693<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   PREVENTIVE MAINTENANCE - MEDICAL EQUIPMENT<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.132  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $121,240.00 |
| GENESA REIMBURSEMENT GROUP LLC<br>ATTN PRESIDENT/MANAGER AGENT<br>8101 BOAT CLUB RD SUITE 240<br>FORT WORTH, TX 76179<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SERVICES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.133  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 255.39 |
| GETINGE USA SALES LLC<br>ATTN PRESIDENT/MANAGER AGENT<br>PO BOX 775436<br>CHICAGO, IL 60677-5436<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SUPPLIES - DECONTAMINATION<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                Case Number 23-10810-JKS

| 3.134   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 124.14 |
|---|---|---|
| **GLOBAL INDUSTRIAL**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**2505 MILL CENTER PARKWAY SUITE 100 DEPT HL3**<br>**BUFORD, GA 30518-3700** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| **Date or dates debt was incurred  Various** | Basis for the claim   **SUPPLIES - OFFICE** | |
| **Last four digits of account number** | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.135   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $23,651.82 |
|---|---|---|
| **GRAINGER, W.W. ,INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**DEPT. 819405242**<br>**PALATINE, IL 60038-0001** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| **Date or dates debt was incurred  Various** | Basis for the claim   **SUPPLIES** | |
| **Last four digits of account number** | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.136   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $7,721.69 |
|---|---|---|
| **GRAYSON COLLIN COMMUNICATIONS**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 2119**<br>**VAN ALSTYNE, TX 75495** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| **Date or dates debt was incurred  Various** | Basis for the claim   **UTILITIES - CABLE** | |
| **Last four digits of account number** | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.137   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $127,491.65 |
|---|---|---|
| **GRAYSON COUNTY LOCAL PROVIDER**<br>**PARTICIPATION FUND; C/O GRAYSON COUNTY**<br>**HEALTH DEPARTMENT**<br>**515 N. WALNUT ATTN: AMANDA ORTEZ RS MBA**<br>**DIRECTOR**<br>**SHERMAN, TX 75090** | Check all that apply<br>☒ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **LPPF PAYMENT** | |
| **Date or dates debt was incurred  Various** | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| **Last four digits of account number** | | |

| 3.138   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $23,993.67 |
|---|---|---|
| **GROUP ONE SERVICES, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**300 DECKER DRIVE SUITE 300**<br>**IRVING, TX 75062** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| **Date or dates debt was incurred  Various** | Basis for the claim   **MEDICAL STAFF**<br>**BACKGROUND SCREENING** | |
| **Last four digits of account number** | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.139 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,573.23 |
|---|---|---|
| **HAGAR RESTAURANT SERVICE, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**6200 NW 2ND ST**<br>**OKLAHOMA CITY, OK 73127-6520** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **PARTS - DISHWASHER MOTOR** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.140 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $18,080.21 |
| **HALLETT & PERRIN**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**1445 ROSS AVENUE SUITE 2400**<br>**DALLAS, TX 75202** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **LEGAL SERVICES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.141 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $24,159.31 |
| **HEALTHCARE REVENUE MANAGEMENT GROUP**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**3075 EAST IMPERIAL HWY SUITE 200**<br>**BREA, CA 92821** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SERVICES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.142 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 38.92 |
| **HEALTHLINE MEDICAL EQUIPMENT, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 748850**<br>**LOS ANGELES, CA 90074** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.143 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $50,391.61 |
| **HEALTHSTREAM**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 1171130**<br>**ATLANTA, GA 30368-7113** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SERVICES - SOFTWARE** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.          Case Number 23-10810-JKS

| 3.144    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 996.00 |
|---|---|---|
| HERAEUS INC<br>ATTN PRESIDENT/MANAGER AGENT<br>P O BOX 21486<br>NEW YORK, NY 10087-1486 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.145    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $370,885.31 |
|---|---|---|
| HHS1, LLC<br>ATTN PRESIDENT/MANAGER AGENT<br>13101 PRESTON RD STE 200<br>DALLAS, TX 75240 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various<br><br>Last four digits of account number | Basis for the claim   SERVICES<br>HHS1, LLC v. Sherman/Grayson Hospital,<br>LLC dba Wilson N. Jones Regional Medical<br>Center, 101st Judicial District of Dallas<br>County Case No. DC-23-07437.<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.146    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,570.68 |
|---|---|---|
| HILL-ROM CO., INC.<br>ATTN PRESIDENT/MANAGER AGENT<br>P.O. BOX 643592<br>PITTSBURGH, PA 15264-3592 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SOFTWARE | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.147    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $28,192.84 |
|---|---|---|
| HIREQUEST<br>ATTN PRESIDENT/MANAGER AGENT<br>DBA SNELLING PO BOX 890714<br>CHARLOTTE, NC 28289-0714 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.148    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $18,809.76 |
|---|---|---|
| HODGES-MACE, LLC<br>ATTN PRESIDENT/MANAGER AGENT<br>P.O. BOX 95381<br>CHICAGO, IL 60694-5381 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES -SOFTWARE | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                Case Number 23-10810-JKS

| | | |
|---|---|---|
| **3.149   Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $14,500.00 |
| **HOLBROOK MD PA, CURTIS R**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**500 N HIGHLAND AVE**<br>**SHERMAN, TX 75092** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SERVICES - PHYSICIAN** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| **3.150   Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $36,494.07 |
| **HOLOGIC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**24506 NETWORK PLACE**<br>**CHICAGO, IL 60673-1245** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SERVICES - EQUIPMENT MAINTENANCE** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| **3.151   Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $71,659.10 |
| **HOLT CAT**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 650345**<br>**DALLAS, TX 75265-0345** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SERVICES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| **3.152   Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $30,220.00 |
| **HOSPITAL INTEGRATION INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**2814 FRENCH KINGSTON CT**<br>**GRANBURY, TX 76049** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **PURCHASED SERVICES - HAVEN** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| **3.153   Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $59,503.83 |
| **HYLAND SOFTWARE INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 846261**<br>**DALLAS, TX 75284-6261** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SERVICES - SOFTWARE** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.154 Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $9,000.00 |
|---|---|---|
| **HYPERBARIC SERVICES PLUS**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**5944 WOODFIELD ESTATES DRIVE**<br>**ALEXANDRIA, VA 22310**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim  PREVENTIVE MAINTENANCE - HYPERBARIC**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.155 Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 135.00 |
| **I3SCREEN**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**9501 NORTHFIELD BLVD**<br>**DENVER, CO 80238**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim  OCCUPATIONAL HEALTH SCREENING**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.156 Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 915.20 |
| **IMAGINATION CORPORATE BRANDING**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**623 OLD HICKORY BLVD**<br>**OL HICKORY, TN 37138**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim  SERVICES**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.157 Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $26,798.96 |
| **IMMUCOR, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 102118**<br>**ATLANTA, GA 30368-2118**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim  SUPPLIES - LABORATORY**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.158 Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $6,481.47 |
| **INDEED, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**MAIL CODE 5160 P.O. BOX 660367**<br>**DALLAS, TX 75266**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim  SERVICES**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                Case Number 23-10810-JKS

| 3.159   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $12,188.94 |
|---|---|---|
| **INFINITT NORTH AMERICA**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**755 MEMORIAL PARKWAY SUITE 304**<br>**PHILLIPSBURG, NJ 08865** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES - SOFTWARE | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.160   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 364.02 |
| **INNOVACYN, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**3546 NORTH RIVERSIDE AVE**<br>**RIALTO, CA 92377** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.161   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $11,395.45 |
| **INTEGRA LIFESCIENCES SALES LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 404129**<br>**ATLANTA, GA 30384-4129** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.162   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $9,975.00 |
| **INTEGRIS EQUIPMENT**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**662 PERSONS ST**<br>**EAST AURORA, NY 14052** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   MEDICAL EQUIPMENT | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.163   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $4,200.00 |
| **INVENTORY CONTROL SPECIALISTS SRVC, LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**12650 N BEACH SUITE #114-#29**<br>**FORT WORTH, TX 76244** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.164   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $3,507.22 |
|---|---|---|
| **IRON MOUNTAIN**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 915004**<br>**DALLAS, TX 75391-5004** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.165   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $92,894.44 |
| **J&J HEALTH CARE SYSTEMS, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**5972 COLLECTIONS CENTER DR.**<br>**CHICAGO, IL 60693** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.166   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $14,427.00 |
| **JB DEVELOPERS, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**280 W. PRAIRIE AVE. SUITE 3**<br>**COEUR D' ALENE, ID 83815** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES - SOFTWARE | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.167   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 408.77 |
| **JOHNSON CONTROLS FIRE PROTECTION LP**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**DEPT CH 10320**<br>**PALANTINE, IL 60055-0320** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.168   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $10,558.00 |
| **JOSHI, MD NIKHIL, PA**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**817 DEWBERRY LANE**<br>**FAIRWAY, TX 75069** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES - PROFESSIONAL MEDICAL SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.169 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $26,212.16 |
|---|---|---|
| **JUBILANT RADIOPHARMA**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 415921**<br>**BOSTON, MA 02241-5921**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim  **SUPPLIES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.170 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $4,900.00 |
| **KAHL RYAN RICHARD**<br>**3804 DEER POINT DR**<br>**DENISON, TX 75020**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim  **SERVICES -**<br>**PROFESSIONAL MEDICAL SERVICES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.171 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $11,670.27 |
| **KCI USA**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 301557**<br>**DALLAS, TX 75303-1557**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim  **SUPPLIES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.172 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $4,550.00 |
| **KIM, MD JOSEPH**<br>**1509 ROXBORO LANE**<br>**MCKINNEY, TX 75071**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim  **SERVICES -**<br>**PROFESSIONAL MEDICAL SERVICES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.173 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $44,128.13 |
| **KRUCIAL STAFFING, LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**7240 W 98TH TERRACE**<br>**OVERLAND PARK, KS 66212**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim  **SERVICES - STAFFING**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.174   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $10,800.00 |
|---|---|---|
| **KURESHI, IKRAM MD**<br>**401 BRAKEBILL HILL DRIVE**<br>**MCKINNEY, TX 75071**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SERVICES -**<br>**PROFESSIONAL MEDICAL SERVICES**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.175   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $27,416.98 |
| **LABORATORY CORPORATION OF AMERICA**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 12140**<br>**BURLINGTON, NC 27216-2140**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SERVICES**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.176   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,599.50 |
| **LABORIE MEDICAL TECHNOLOGIES CORP**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**400 AVENUE D SUITE 10**<br>**WILLISTON, VT 05495**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SUPPLIES - OB / GI**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.177   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $4,272.00 |
| **LAMAR COMPANIES**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 96030**<br>**BATON ROUGE, LA 70896**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SERVICES - ADVERTISING**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.178   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 508.84 |
| **LANTHEUS MEDICAL IMAGING, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 101236**<br>**ATLANTA, GA 30392-1236**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SUPPLIES**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                                   Case Number 23-10810-JKS

| 3.179  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | |
|---|---|---|
| **LARRY FISHER**<br>**C/O ERIC MARYE, ESQ.**<br>**MARYE LAW**<br>**2619 HIBERNIA STREET**<br>**DALLAS, TX 75204**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed<br><br>Basis for the claim   **CLAIM BY FORMER EMPLOYEE**<br>**Fisher v. Sherman/Grayson Hospital, LLC dba Wilson N. Jones Regional Medical Center, 397th Judicial District of Grayson County Cause No. CV-20-1265.**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.180  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $5,128.89 |
| **LGC CLINICAL DIAGNOSTICS, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**DEPT CH 16362**<br>**PALATINE, IL 60055-6362**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **SUPPLIES - LABORATORY**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.181  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 231.12 |
| **LHASA OMS, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**230 LIBBEY PARKWAY**<br>**EAST WEYMOUTH, MA 02189**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **SUPPLIES - MEDICAL**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.182  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $   .00 |
| **LHP HOSPITAL GROUP, INC., C/O ARDENT HEALTH SERVICES**<br>**ATTN: GENERAL COUNSEL; AND RICHARDS RODRIGUEZ & SKEITH LLP**<br>**ATTN: BENJAMIN HATHAWAY, ESQ.**<br>**1 BURTON BOULEVARD SUITE 250**<br>**NASHVILLE, TN 37215**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☒ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **INDEMNIFICATION OBLIGATIONS**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.183   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ .00 |
|---|---|---|
| LHP HOSPITAL GROUP, INC., C/O ARDENT HEALTH SERVICES<br>ATTN: GENERAL COUNSEL; AND<br>RICHARDS RODRIGUEZ & SKEITH LLP<br>ATTN: BENJAMIN HATHAWAY, ESQ.<br>816 CONGRESS AVENUE SUITE 1200<br>AUSTIN, TX 78701 | Check all that apply<br>☒ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   INDEMNIFICATION OBLIGATIONS | |
| Date or dates debt was incurred  Various | Is the claim subject to setoff? | |
| Last four digits of account number | ☒No.<br>☐Yes | |

| 3.184   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,663.00 |
|---|---|---|
| LIFENET<br>ATTN PRESIDENT/MANAGER AGENT<br>P.O. BOX 79636<br>BALTIMORE, MD 21279-0636 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed<br><br>Basis for the claim   SUPPLIES - IMPLANTS | |
| Date or dates debt was incurred  Various | | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.185   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $9,039.86 |
|---|---|---|
| LIVANOVA/SORIN<br>ATTN PRESIDENT/MANAGER AGENT<br>PO BOX 419261<br>BOSTON, MA 02241-9261 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   MEDICAL DEVICES | |
| Date or dates debt was incurred  Various | | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.186   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $436,908.12 |
|---|---|---|
| LOCUMTENENS HOLDINGS, LLC<br>ATTN ADWOA AWOTWI<br>PO BOX 405547<br>ATLANTA, GA 30384 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed<br><br>Basis for the claim   SERVICES - PHYSICIAN | |
| Date or dates debt was incurred  Various | | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.187   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,701.85 |
|---|---|---|
| LOWE'S, INC.<br>ATTN PRESIDENT/MANAGER AGENT<br>P.O. BOX 530954<br>ATLANTA, GA 30353-0954 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SUPPLIES | |
| Date or dates debt was incurred  Various | | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| | | |
|---|---|---|
| **3.188     Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $ 967.00 |
| **LTL MEDICAL LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 940808**<br>**SIMI VALLEY, CA 93094** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   INSTRUMENTS -**<br>**SURGICAL** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| **3.189     Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $22,899.71 |
| **LUMINANT ENERGY CO. LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**DEPT 1036 P O BOX 121036**<br>**DALLAS, TX 75312-1036** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   UTILITIES** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| **3.190     Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $6,495.51 |
| **LUMINEX CORPORATION**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**12212 TECHNOLOGY BLVD**<br>**AUSTIN, TX 78727** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   REAGENTS -**<br>**LABORATORY SUPPLIES** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| **3.191     Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $2,017.17 |
| **LYNN MEDICAL INSTRUMENT COMPANY**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**50120 PONTIAC TRAIL**<br>**WIXOM, MI 48393** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SUPPLIES - OFFICE** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| **3.192     Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $4,527.06 |
| **MASSEY SERVICES, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 547668**<br>**ORLANDO, FL 32854-7668** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   PEST CONTROL** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.193 Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $74,572.94 |
|---|---|---|
| **MATHESON TRI-GAS**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**DEPT 3028 P.O. BOX 123028**<br>**DALLAS, TX 75312** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES - MEDICAL GAS** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.194 Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $404,579.56 |
|---|---|---|
| **MAXIM STAFFING SOLUTIONS**<br>**ATTN CARRIE V O'BRIEN, GENERAL COUNSEL**<br>**12558 COLLECTIONS CENTER DRIVE**<br>**CHICAGO, IL 60693** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SERVICES - STAFFING** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.195 Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $4,841.25 |
|---|---|---|
| **MAY MEDIA LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**500 W WOODARD ST**<br>**DENISON, TX 75020** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **MARKETING** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.196 Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $26,059.03 |
|---|---|---|
| **MCG HEALTH LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 742350**<br>**ATLANTA, GA 30374-2350** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SOFTWARE - MEDICAL NECESSITY** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.197 Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $13,500.00 |
|---|---|---|
| **MD SAVE, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 197596**<br>**NASHVILLE, TN 37219-7596** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SERVICES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                Case Number 23-10810-JKS

| 3.198    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $189,755.00 |
|---|---|---|
| **MEDALLIANCE PARTNERS, LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**57556 29 PALMS HWY #343**<br>**YUCCA VALLEY, CA 92284**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SERVICES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.199    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 957.00 |
| **MEDCOMP**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**1499 DELP DRIVE**<br>**HARLEYSVILLE, PA 19438**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SUPPLIES -<br>HEMODIALYSIS<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.200    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,723,177.48 |
| **MEDELY, INC.**<br>**C/O JAMES MCCOWN, ESQ**<br>**VASSAR, MCCOWN, DEAR & SICOTTE LLP**<br>**15851 DALLAS PARKWAY SUITE 525ATTN: JAMES MCCOWN**<br>**ADDISON, TX 75001**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SERVICES - STAFFING**<br>**Medely, Inc. v. Sherman/Grayson Hospital, LLC, 15th Judicial District of Grayson County Cause No. CV-22-1421**<br>**Plaintiff secured a judgment in the amount of $1,729,388.71 against Sherman/Grayson Hospital, LLC which has been reduced by $100,000 as part of a forbearance agreement.**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.201    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $360,238.54 |
| **MEDLINE INDUSTRIES, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**ATTN SHANE REED**<br>**DEPT 1080 P O BOX 121080**<br>**DALLAS, TX 75312-1080**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SUPPLIES - MEDICAL SUPPLIES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.202 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $235,302.36 |
|---|---|---|
| **MEDPRO HEALTHCARE STAFFING**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**D/B/A MEDPRO HEALTHCARE STAFFING 1580**<br>**SAWGRASS CORPORATE PKWY ST200**<br>**SUNRISE, FL 33323**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SERVICES - STAFFING<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.203 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 602.53 |
| **MEDSERVICE REPAIR, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**300 CENTER DRIVE STE 104**<br>**VERNON HILLS, IL 60061**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   REPAIRS - MEDICAL<br>EQUIPMENT<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.204 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $10,700.50 |
| **MEDTOX DIAGNOSTICS, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 8009**<br>**BURLINGTON, NC 27216-8009**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SERVICES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.205 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,582.10 |
| **MEDTRONIC SD USA, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 848086**<br>**DALLAS, TX 75284-8086**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SUPPLIES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.206 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $6,028.34 |
| **MEDTRONIC USA**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 848086**<br>**DALLAS, TX 75284-8086**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SUPPLIES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.207 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $24,000.00 |
|---|---|---|
| MENJIVAR'S LAWN & LANDSCAPE CO<br>ATTN PRESIDENT/MANAGER AGENT<br>PO BOX 272<br>SHERMAN, TX 75091 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.208 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 949.10 |
| MERIT MEDICAL SYSTEMS, INC<br>ATTN PRESIDENT/MANAGER AGENT<br>P O BOX 204842<br>DALLAS, TX 75320-4842 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.209 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,513.57 |
| MERMAID MEDICAL, INC.<br>ATTN PRESIDENT/MANAGER AGENT<br>7340 S. ALTON WAY SUITE  11-H<br>CENTENNIAL, CO 80112 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.210 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $49,388.79 |
| METLIFE<br>ATTN PRESIDENT/MANAGER AGENT<br>DEPT CH 10579<br>PALATINE, IL 60055-0579 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   EMPLOYEE BENEFITS | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.211 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $85,432.36 |
| METRO LINEN CO., INC<br>ATTN PRESIDENT/MANAGER AGENT<br>P.O.BOX 978<br>MCKINNEY, TX 75070 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES - LAUNDRY | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.212    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 818.59 |
|---|---|---|
| METTLER-TOLEDO RAININ, LLC<br>ATTN PRESIDENT/MANAGER AGENT<br>27006 NETWORK PLACE<br>CHICAGO, IL 60673-1270 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   PURCHASED SERVICES - LABORATORY | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.213    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $5,684.80 |
|---|---|---|
| MICRO-TECH ENDOSCOPY USA INC<br>ATTN PRESIDENT/MANAGER AGENT<br>P.O. BOX 7410475<br>CHICAGO, IL 60674 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.214    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,078.15 |
|---|---|---|
| MICROTEK MEDICAL, INC.<br>ATTN PRESIDENT/MANAGER AGENT<br>FILE # 4033P PO BOX 911633<br>DALLAS, TX 75391-1633 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.215    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $16,024.00 |
|---|---|---|
| MIMEDX GROUP INC<br>ATTN PRESIDENT/MANAGER AGENT<br>PO BOX 744853<br>ATLANTA, GA 30374 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   IMPLANTS | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.216    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,179.17 |
|---|---|---|
| MIRION TECHNOLOGIES (GDS) INC.<br>ATTN PRESIDENT/MANAGER AGENT<br>P.O. BOX 101301<br>PASADENA, CA 91189-0005 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   NUCLEAR MEDICINE MEASUREMENT AND DETECTION | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.217 Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 107.40 |
|---|---|---|
| MOTHERS' MILK BANK OF NORTH TEXAS<br>ATTN PRESIDENT/MANAGER AGENT<br>7617 BENBROOK PARKWAY<br>FORT WORTH, TX 76126 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.218 Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 144.70 |
| MRI EQUIP<br>ATTN PRESIDENT/MANAGER AGENT<br>6248 BITTERSWEET LANE<br>NISSWA, MN 56468 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - IMAGING | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.219 Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,038.56 |
| MUELLER WATER CONDITIONING, INC.<br>ATTN PRESIDENT/MANAGER AGENT<br>HOU1004 PO BOX 650998<br>HOUSTON, TX 75265-0998 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.220 Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $10,806.10 |
| MULTIMEDICAL SYSTEMS, LLC<br>ATTN PRESIDENT/MANAGER AGENT<br>5591 N GOLDEN STATE BLVD<br>FRESNO, CA 93722 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   REPAIRS - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.221 Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $20,504.63 |
| MUTUAL OF OMAHA<br>ATTN PRESIDENT/MANAGER AGENT<br>POLICYHOLDER SERVICES P.O. BOX 2147<br>OMAHA, NE 68103-2147 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   EMPLOYEE BENEFITS | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.222 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $50,989.39 |
|---|---|---|
| MXR CORP (WAS CONSENSYS)<br>ATTN PRESIDENT/MANAGER AGENT<br>PO BOX 776062<br>CHICAGO, IL 60677-8002 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  MEDICAL EQUIPMENT REPAIRS AND PM | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.223 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $51,011.21 |
| MXR IMAGING, INC<br>ATTN PRESIDENT/MANAGER AGENT<br>PO BOX 776062<br>CHICAGO, IL 60677 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  PREVENTIVE MAINTENANCE - MRI | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.224 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $5,155.78 |
| NATUS MEDICAL, INC.<br>ATTN PRESIDENT/MANAGER AGENT<br>P.O. BOX 3604<br>CAROL STREAM, IL 60132-3604 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  SUPPLIES - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.225 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 460.00 |
| NEOGENOMICS LABORATORIES, INC.<br>ATTN PRESIDENT/MANAGER AGENT<br>PO BOX 947403<br>ATLANTA, GA 30394-7403 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.226 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $208,198.35 |
| NES SOUTHWEST MEDICAL SERVICES, INC.<br>ATTN PRESIDENT/MANAGER AGENT<br>39 MAIN STREET<br>TIBURON, CA 94920 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  SERVICES - PROFESSIONAL MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.227    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $36,074.96 |
|---|---|---|
| **NORTH TX COMPREHENSIVE CARDIOLOGY PLLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**425 N HIGHLAND AVE STE 120**<br>**SHERMAN, TX 75092** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SERVICES -**<br>**PROFESSIONAL MEDICAL SERVICES** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.228    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 259.80 |
| **NOVA BIOMEDICAL**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 983115**<br>**BOSTON, MA 02298-3115** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SUPPLIES -**<br>**LABORATORY** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.229    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $18,892.52 |
| **NRC/NATIONAL RESEARCH CORPORATION**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 30094**<br>**OMAHA, NE 68103-1194** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SERVICES** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.230    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $21,654.01 |
| **NUANCE COMMUNICATIONS INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 2561**<br>**CAROL STREAM, IL 60132-2561** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SERVICES - SOFTWARE** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.231    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $8,924.87 |
| **OAK FARMS-DALLAS**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P. O. BOX 676010**<br>**DALLAS, TX 75267-6010** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SUPPLIES - FOOD/DAIRY** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.232    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 687.87 |
|---|---|---|
| **OHIO MEDICAL CORPORATION**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**6690 EAGLE WAY**<br>**CHICAGO, IL 60678-1066** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SUPPLIES -**<br>**RESPIRATORY** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

| 3.233    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 420.07 |
|---|---|---|
| **OLYMPUS AMERICA INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**DEPT 0600 P O BOX 120600**<br>**DALLAS, TX 75312-0600** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SUPPLIES** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

| 3.234    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $2,273.68 |
|---|---|---|
| **OPTUM360 LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 88050**<br>**CHICAGO, IL 60680-1050** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SERVICES** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

| 3.235    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 91.82 |
|---|---|---|
| **OSI BATTERIES**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**1157 VALLEY PARK DRIVE SUITE 150**<br>**SHAKOPEE, MN 55379** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SUPPLIES** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

| 3.236    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $81,531.19 |
|---|---|---|
| **OTIS ELEVATOR COMPANY**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 730400**<br>**DALLAS, TX 75373-0400** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SERVICES** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.237 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $7,323.00 |
|---|---|---|
| **PALM HARBOR MEDICAL, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**3015 RIDGELINE BLVD BLDG A**<br>**TARPON SPRINGS, FL 34688** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES - SURGICAL** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.238 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $13,671.18 |
|---|---|---|
| **PARTSSOURCE, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 645186**<br>**CINCINNATI, OH 45253-5186** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.239 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $4,550.00 |
|---|---|---|
| **PATEL, KRUTI**<br>**3804 DEER POINT DR**<br>**DENISON, TX 75020** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | | |
| Last four digits of account number | Basis for the claim   **SERVICES -**<br>**PROFESSIONAL MEDICAL SERVICES** | |
| | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.240 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $  .00 |
|---|---|---|
| ████████<br>c/o Law Offices of Matthew D. Sawyer PLLC<br>12222 Merit Drive Suite 1200<br>DALLAS, TX 75251 | Check all that apply<br>☐ Contingent<br>☒ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **PATIENT**<br>**Potential claim malpractice claim** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.241 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $  .00 |
|---|---|---|
| ████████<br>**C/O BILL KENNEDY LAW PLLC**<br>**WILLIAM P. KENNEDY, ESQ.**<br>**JOAN E. BALLARD, ESQ.**<br><br>**121 S. AUSTIN AVENUE**<br>**DENISON, TX 75020** | Check all that apply<br>☐ Contingent<br>☒ Unliquidated<br>☒ Disputed | |
| | Basis for the claim   **PATIENT AND PREMISES**<br>**LIABILITY CLAIM – pending lawsuit** | |
| Date or dates debt was incurred  Various | | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.242    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $    .00 |
|---|---|---|
| ▮▮▮▮▮▮▮▮<br>C/O SMITH & SMITH LAW FIRM<br>PHIL SMITH, ESQ.<br>NATE SMITH, ESQ.<br>300 OAK AVENUE<br>SULPHUR SPRING, TX 75482<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☒ Unliquidated<br>☒ Disputed<br><br>Basis for the claim   PENDING LAWSUIT<br><br>Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.243    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $6,869.70 |
| PATIENT POINT HOSPITAL SOLUTIONS<br>ATTN PRESIDENT/MANAGER AGENT<br>11408 OTTER CREEK SOUTH ROAD<br>MABELVALE, AR 72103<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   PATIENT<br>COMMUNICATION/ENGAGEMENT<br><br>Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.244    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $35,619.86 |
| PELITAS<br>ATTN PRESIDENT/MANAGER AGENT<br>PO BOX 734311<br>DALLAS, TX 75373-4311<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SERVICES - SOFTWARE<br><br>Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.245    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $5,568.18 |
| PEPSI-COLA<br>ATTN PRESIDENT/MANAGER AGENT<br>P O BOX 841828<br>DALLAS, TX 75284-1828<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SUPPLIES<br><br>Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.246    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 640.81 |
| PERFORMANCE HEALTH SUPPLY INC<br>ATTN PRESIDENT/MANAGER AGENT<br>P.O. BOX 93040<br>CHICAGO, IL 60673<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SUPPLIES<br><br>Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.247 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,311.85 |
|---|---|---|---|

**PERRY BAROMEDICAL CORPORATION**
**ATTN PRESIDENT/MANAGER AGENT**
**3750 PROSPECT AVE**
**RIVIERA BEACH, FL 33404**

Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred  Various

Basis for the claim   **REPAIRS - MEDICAL EQUIPMENT**

Last four digits of account number

Is the claim subject to setoff?
☒ No.
☐ Yes

| 3.248 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $20,000.00 |
|---|---|---|---|

**PERSIVIA INC**
**ATTN PRESIDENT/MANAGER AGENT**
**4 MOUNT ROYAL AVE 4TH FLOOR**
**MARLBOROUGH, MA 01752**

Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred  Various

Basis for the claim   **SERVICES - SOFTWARE**

Last four digits of account number

Is the claim subject to setoff?
☒ No.
☐ Yes

| 3.249 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $6,918.48 |
|---|---|---|---|

**PHARMEDIUM SERVICES, LLC**
**ATTN PRESIDENT/MANAGER AGENT**
**29104 NETWORK PLACE**
**CHICAGO, IL 60673-1291**

Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred  Various

Basis for the claim   **SERVICES**

Last four digits of account number

Is the claim subject to setoff?
☒ No.
☐ Yes

| 3.250 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $79,485.65 |
|---|---|---|---|

**PHILIPS HEALTHCARE**
**ATTN PRESIDENT/MANAGER AGENT**
**P O BOX 100355**
**ATLANTA, GA 30384-0355**

Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred  Various

Basis for the claim   **PREVENTIVE MAINTENANCE - MEDICAL EQUIPMENT**

Last four digits of account number

Is the claim subject to setoff?
☒ No.
☐ Yes

| 3.251 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $53,419.61 |
|---|---|---|---|

**PRECISION DOCUMENT SOLUTIONS, INC.**
**ATTN PRESIDENT/MANAGER AGENT**
**P.O. BOX 814850**
**DALLAS, TX 75381**

Check all that apply
☐ Contingent
☐ Unliquidated
☐ Disputed

Date or dates debt was incurred  Various

Basis for the claim   **SOFTWARE - PATIENT DISCHARGE COORDINATION**

Last four digits of account number

Is the claim subject to setoff?
☒ No.
☐ Yes

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.252   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,080.90 |
|---|---|---|
| **PRECISION DYNAMICS CORP**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 71549**<br>**CHICAGO, IL 60694-1995** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |

| 3.253   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $40,000.00 |
|---|---|---|
| **PREMIER PSYCHIATRIC & SLEEP MEDICINE**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**121 W LAMBERTH RD STE A**<br>**SHERMAN, TX 75092** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES -<br>PROFESSIONAL MEDICAL SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |

| 3.254   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $3,085.13 |
|---|---|---|
| **PROBO MEDICAL, LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**75 REMITTANCE DRIVE DEPT 6169**<br>**CHICAGO, IL 60675-6169** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - RADIOLOGY | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |

| 3.255   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $3,947.18 |
|---|---|---|
| **PROGRESSIVE MEDICAL INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**997 HORAN DR**<br>**FENTON, MO 63026-2401** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   PHARMACEUTICALS | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |

| 3.256   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $57,803.50 |
|---|---|---|
| **PROPATH SERVICES LLP**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**DEPT 41070 PO BOX 660811**<br>**DALLAS, TX 75266-0811** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES - PHYSICIAN | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.257   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $11,193.00 |
|---|---|---|
| **PROVATION SOFTWARE, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**533 SOUTH 3RD ST STE 300**<br>**MINNEAPOLIS, MN 55415** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES - SOFTWARE | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.258   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,214.39 |
|---|---|---|
| **QUADIENT LEASING USA INC (MAILFINANCE)**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**DEPT 3682, PO BOX 123682, DALLAS, TX,753123682** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   LEASE - POSTAGE MACHINE | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.259   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,691.83 |
|---|---|---|
| **QUADIENT NEOFUNDS BY NEOPOST**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 6813**<br>**CAROL STREAM, IL 60197-6813** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   POSTAGE | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.260   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $27,572.38 |
|---|---|---|
| **QUIDEL CORPORATION**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**FILE 50177**<br>**LOS ANGELES, CA 90074-0177** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   REAGENTS - LABORATORY SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.261   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,550.00 |
|---|---|---|
| **RACKTOP SYTEMS INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**8170 MAPLE LAWN BLVD STE 180**<br>**FULTON, MD 20759** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   CYBER STORAGE | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.262    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $7,861.49 |
|---|---|---|
| **RADCOM ASSOCIATES, LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 1055**<br>**FRANKLIN, TN 37065**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **MEDICAL PHYSICS -**<br>**NUCLEAR MEDICINE**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.263    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 324.76 |
| **RAPID REFILL INK**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 1206**<br>**VAN ALSTYNE, TX 75495**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **OFFICE SUPPLIES**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.264    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $12,752.53 |
| **RAPIDSCALE, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**6205-B PEACHTREE DUNWOODY RD CP-14**<br>**ATLANTA, GA 30328**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **IT - CLOUD STORAGE**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.265    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,650.00 |
| **RATHOD, MD MINAXI**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**321 N HIGHLAND**<br>**SHERMAN, TX 00007-5092**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **SERVICES -**<br>**PROFESSIONAL MEDICAL**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.266    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $7,202.71 |
| **REINERT PAPER & CHEMICAL**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**VACCUUM CENTER 1431 COMMERCE BLVD**<br>**DENISON, TX 75020**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **SUPPLIES**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| | | |
|---|---|---|
| **3.267    Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $ 622.50 |
| **RESPIRATORY MAINTENANCE IN**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**12312 BIRCH ST**<br>**LEAWOOD, KS 00006-6209** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| **3.268    Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $111,686.85 |
| **RESTORIX HEALTH, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 71849**<br>**CHICAGO, IL 60694-1849** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SERVICES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| **3.269    Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $1,080.52 |
| **RLS (USA) INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**ONE CORPORATE DRIVE STE 125**<br>**LAKE ZURICH, IL 60047** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES - NUCLEAR**<br>**MEDICINE** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| **3.270    Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $2,575.40 |
| **ROCKET MEDICAL LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**50 CORPORATE PARK DRIVE UNIT 890**<br>**PEMBROOKE, MA 02359** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES - MEDICAL** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| **3.271    Nonpriority creditor's name and mailing address** | *As of the petition filing date, the claim is:* | $10,000.00 |
| **RUE, M.D., REBECCA**<br>**300 N HIGHLAND AVE STE 530**<br>**SHERMAN, TX 75092** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SERVICES - PHYSICIAN** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.272   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $13,395.00 |
|---|---|---|
| SAGE SERVICES GROUP LLC<br>ATTN PRESIDENT/MANAGER AGENT<br>506 DEANNA LANE<br>CHARLESTON, SC 29492 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   PATIENT MONITORING DEVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.273   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $11,446.34 |
|---|---|---|
| SCOTTCARE CORPORATION<br>ATTN PRESIDENT/MANAGER AGENT<br>NATIONAL CITY BANK P O BOX 73790-N<br>CLEVELAND, OH 44193-0363 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - CARDIAC REHAB | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.274   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $5,150.34 |
|---|---|---|
| SCRIPTRX, INC<br>ATTN PRESIDENT/MANAGER AGENT<br>312 CLEMATIS STREET SUITE 301<br>WEST PALM BEACH, FL 33401 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   E-PRESCRIBING | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.275   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,168.00 |
|---|---|---|
| SECURE SHREDDING AND RECYCLING<br>ATTN PRESIDENT/MANAGER AGENT<br>10338 MAMMOTH AVE<br>BATON ROUGE, LA 70814 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   PURCHASED SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.276   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $12,013.77 |
|---|---|---|
| SHARP ELECTRONICS CORPORATION<br>ATTN PRESIDENT/MANAGER AGENT<br>DBA SHARP BUSINESS SYSTEMS PO BOX 41602<br>PHILADELPHIA, PA 19101-1602 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   PREVENTIVE MAINTENANCE - IT | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.277    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 129.03 |
|---|---|---|
| **SHELL SMALL BUSINESS**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 6293**<br>**CAROL STREAM, IL 60197-6293**<br><br>**Date or dates debt was incurred  Various**<br><br>**Last four digits of account number** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   REPAIRS**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.278    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $2,225.80 |
| **SHERMAN ANESTHESIA, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 49112**<br>**HOUSTON, TX 77210-9112**<br><br>**Date or dates debt was incurred  Various**<br><br>**Last four digits of account number** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SERVICES -**<br>**PROFESSIONAL ANESTHESIA**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.279    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 514.17 |
| **SHERMAN LOCK AND KEY**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**1602 TEXOMA PARKWAY**<br>**SHERMAN, TX 75090**<br><br>**Date or dates debt was incurred  Various**<br><br>**Last four digits of account number** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SERVICES**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.280    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,689.97 |
| **SHERMAN MD PROVIDERS, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**4206 RETAMA CIRCLE**<br>**VICTORIA, TX 77901-2765**<br><br>**Date or dates debt was incurred  Various**<br><br>**Last four digits of account number** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SERVICES**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.281    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 907.43 |
| **SHERWIN-WILLIAMS COMPANY**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**711 E TAYLOR ST**<br>**SHERMAN, TX 75090-2859**<br><br>**Date or dates debt was incurred  Various**<br><br>**Last four digits of account number** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SUPPLIES**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

| 3.282  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $12,677.17 |
|---|---|---|
| **SHI INTERNATIONAL**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 952121**<br>**DALLAS, TX 75395-2121** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   COMPUTERS - HARDWARE AND SOFTWARE RESELLER | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.283  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $94,718.82 |
| **SHIMADZU MEDICAL SYSTEMS INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**440 WRANGLER DRIVE,SUITE 300**<br>**COPPELL, TX 75019** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   PREVENTIVE MAINTENANCE - CATH LAB | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.284  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $32,908.01 |
| **SHOCKWAVE MEDICAL, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**5403 BETSY ROSS DR**<br>**SANTA CLARA, CA 95054** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.285  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,270.00 |
| **SIELLA MEDICAL**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**16 GOODYEAR ST. SUITE 105**<br>**IRVINE, CA 92618** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   REPAIRS - BIOMEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.286  Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,317.40 |
| **SIEMENS HEALTHCARE DIAGNOSTICS\*\***<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 121102**<br>**DALLAS, TX 75312-1102** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.287   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $326,645.74 |
|---|---|---|
| **SIESTA SOLUTIONS, PLLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**C/O SIMON HUGHES, ESQ., 13280 NORTH WEST**<br>**FREEWAY NO. F-400**<br>**HOUSTON, TX 77040**<br><br>Date or dates debt was incurred Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed<br><br>Basis for the claim   SERVICES -<br>**PROFESSIONAL ANESTHESIA**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.288   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $3,175.72 |
| **SINGLETON ASSOCIATES, P.A.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 4346 DEPT 808-1**<br>**HOUSTON, TX 77210-4346**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **BOARD CERTIFIED**<br>**RADIOLOGISTS**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.289   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 277.50 |
| **SIRCHIE FINGER PRINT LAB.,INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 11407**<br>**BIRMINGHAM, AL 35246**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **SERVICES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.290   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $6,078.47 |
| **SMITH & NEPHEW, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 842935**<br>**DALLAS, TX 75284-2935**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **SUPPLIES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.291   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,101.88 |
| **SPARKLIGHT/CABLE ONE, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 78000**<br>**PHOENIX, AZ 85062**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **UTILITIES - CABLE TV**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.292    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $18,294.89 |
|---|---|---|
| **SPBS, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**4431 LONG PRAIRIE ROAD #100**<br>**FLOWER MOUND, TX 75028**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim    PURCHASED SERVICES -<br>BIOMEDICAL<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.293    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $5,412.93 |
| **SPECTRIO LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 890271**<br>**CHARLOTTE, NC 28289-0271**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim    MARKETING<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.294    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,973.78 |
| **SPOK, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 660324**<br>**DALLAS, TX 75266-0324**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim    SOFTWARE - SECURE<br>MESSAGING<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.295    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $4,432.17 |
| **SSD ALARM**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**1740 N LEMON ST**<br>**ANAHEIM, CA 92801-1007**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim    SERVICES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.296    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $10,399.84 |
| **STAPLES BUSINESS ADVANTAGE**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 660409**<br>**DALLAS, TX 75266**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim    SUPPLIES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                                    Case Number 23-10810-JKS

| | | |
|---|---|---|
| **3.297    Nonpriority creditor's name and mailing address** | ***As of the petition filing date, the claim is:*** | $2,556.04 |
| **STAR DELIVERY SERVICE, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 3613**<br>**HOUSTON, TX 77253** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SERVICES** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| **3.298    Nonpriority creditor's name and mailing address** | ***As of the petition filing date, the claim is:*** | $32,370.00 |
| **STARNES SURGICAL ASSOCIATES, PLLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**2627 MASTERS ST**<br>**SHERMAN, TX 75090** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SERVICES -**<br>**PROFESSIONAL MEDICAL** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| **3.299    Nonpriority creditor's name and mailing address** | ***As of the petition filing date, the claim is:*** | $11,684.09 |
| **STEED DUNNILL REYNOLDS BAILEY STEPHENSON**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**1717 MAIN STREET SUITE 2950**<br>**DALLAS, TX 75201** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   LEGAL SERVICES** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| **3.300    Nonpriority creditor's name and mailing address** | ***As of the petition filing date, the claim is:*** | $10,894.84 |
| **STERICYCLE COMMUNICATION SOLUTIONS, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**26604 NETWORK PLACE**<br>**CHICAGO, IL 60673-1266** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SERVICES** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| **3.301    Nonpriority creditor's name and mailing address** | ***As of the petition filing date, the claim is:*** | $96,525.86 |
| **STERICYCLE, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 6578**<br>**CAROL STREAM, IL 60197-6126** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | **Basis for the claim   SERVICES** | |
| Last four digits of account number | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.302 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $11,485.00 |
|---|---|---|
| **STERILE MATE, LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**10223 KENTINGTON OAK DR**<br>**HUMBLE, TX 77396** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES - MEDICAL** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.303 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 111.30 |
| **STERIMED**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**10 RIVER COURT**<br>**CARTERSVILLE, GA 30120** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES - MEDICAL** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.304 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $16,088.93 |
| **STERIS CORPORATION**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 676548**<br>**DALLAS, TX 75267-6548** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **PREVENTIVE MAINTENANCE - MEDICAL EQUIPMENT** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.305 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $74,174.29 |
| **STRYKER INSTRUMENTS/SALES**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**21343 NETWORK PLACE**<br>**CHICAGO, IL 60673-1213** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.306 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $12,337.45 |
| **STRYKER MEDICAL**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 93308**<br>**CHICAGO, IL 60673-3308** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.307 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $125,359.97 |
|---|---|---|
| **STRYKER ORTHOPAEDICS/HOWMEDICA**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 93213**<br>**CHICAGO, IL 60673-3213** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  **SUPPLIES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.308 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $10,990.00 |
| **STRYKER SPINE**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**21912 NETWORK PLACE**<br>**CHICAGO, IL 60673-1912** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  **SUPPLIES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.309 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 198.00 |
| **STUMBERG, JULIE**<br>**500 N HIGHLAND**<br>**SHERMAN, TX 75092** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | | |
| Last four digits of account number | Basis for the claim  **EMPLOYEE REIMBURSEMENT** | |
| | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.310 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $694,071.33 |
| **SUPERIOR HEALTH PLAN**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**7990 INTERSTATE 10 WEST SUITE 300**<br>**SAN ANTONIO, TX 78230** | Check all that apply<br>☒ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  **CLAIMS ADVANCE** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.311 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $8,100.00 |
| **SURGICAL INNOVATIONS OF TEXOMA, PLLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**3305 NORTH CALAIS DRIVE SUITE 100**<br>**SHERMAN, TX 75090** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  **SERVICES - PROFESSIONAL MEDICAL SERVICES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.312   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $10,910.00 |
|---|---|---|
| SURGICAL PRODUCT SOLUTIONS<br>ATTN PRESIDENT/MANAGER AGENT<br>PO BOX 645922<br>PITTSBURGH, PA 15264 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.313   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,750.00 |
|---|---|---|
| SURGICAL RESOURCES GROUP, LLC<br>ATTN PRESIDENT/MANAGER AGENT<br>4585 140TH AVE N SUITE 1001<br>CLEARWATER, FL 33762 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.314   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 600.00 |
|---|---|---|
| SURGISHOP<br>ATTN PRESIDENT/MANAGER AGENT<br>8910 N DALE MABRY HWY STE 30<br>TAMPA, FL 33614 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES - MEDICAL | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.315   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 184.38 |
|---|---|---|
| SWISSLOG HEALTHCARE<br>ATTN PRESIDENT/MANAGER AGENT<br>PO BOX 200434<br>DALLAS, TX 75320 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   REAGENTS - LABORATORY SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.316   Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $5,776.22 |
|---|---|---|
| TACY MEDICAL INC.<br>ATTN PRESIDENT/MANAGER AGENT<br>2386 SHANNON ROAD<br>FERNANDINA BEACH, FL 32034 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   PHARMACEUTICALS | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.317 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,120.12 |
|---|---|---|
| **TAYLOR COMM INC/STANDARD REGISTER, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 840655**<br>**DALLAS, TX 75284-0655** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  **OFFICE SUPPLIES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.318 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $5,308.58 |
| **TELCOR, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 82653**<br>**LINCOLN, NE 68501** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  **SERVICES - SOFTWARE** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.319 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $5,259.25 |
| **TELEFLEX MEDICAL**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 936729**<br>**ATLANTA, GA 31193-6729** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  **MEDICAL DEVICES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.320 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $10,361.65 |
| **TERUMO MEDICAL CORPORATION**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 208343**<br>**DALLAS, TX 75320-8343** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  **MEDICAL DEVICES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.321 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $3,640.00 |
| **TEXAS DEPARTMENT OF STATE HEALTH SERVICE**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**1301 S. BOWEN RD. SUITE 200**<br>**ARLINGTON, TX 76013** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  **LICENSING APPLICATION FEES** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.322    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 635.50 |
|---|---|---|
| **TEXAS DEPT OF STATE HEALTH SERV.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**DSHS CENTRAL LAB MC 2004 P.O. BOX 149347**<br>**AUSTIN, TX 78714-9347**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **LABORATORY - PREPAID KITS**<br><br>Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.323    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $456,873.55 |
| **TEXAS HEALTH & HUMAN SERVICES**<br>**C/O ANGIE PENRY, CONTACT MGR AND**<br>**KAREN RAY, CHIEF COUNSEL**<br>**P O BOX 532089**<br>**GRAND PRAIRIE, TX 75053-2089**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed<br><br>Basis for the claim   **DSH REPAYMENT - FY22**<br><br>Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.324    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $456,873.53 |
| **TEXAS HEALTH & HUMAN SERVICES COMMISSION**<br>**4601 W. GUADALUPE STREET**<br>**AUSTIN, TX 78751**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☒ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **DSH OVERPAYMENT**<br><br>Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.325    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $185,993.26 |
| **TEXAS RADIOLOGY ASSOC., LLP**<br>**ATTN TED WEN, MD, FACR**<br>**1820 PRESTON PARK BLVD SUITE 2400**<br>**PLANO, TX 75093**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed<br><br>Basis for the claim   **SERVICES - PHYSICIAN**<br><br>Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |
| 3.326    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $20,004.97 |
| **TEXAS VITAL CARE**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 132**<br>**BELLS, TX 75414-0132**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **SERVICES - AMBULANCE**<br><br>Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.327    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $8,125.90 |
|---|---|---|
| **TEXOMA MEDICAL CENTER**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 844768**<br>**DALLAS, TX 75284-4768**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SERVICES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.328    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $44,310.00 |
| **TEXOMA REGIONAL BLOOD CENTER**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**3911 N. TEXOMA PKWY.**<br>**SHERMAN, TX 75090**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SUPPLIES - BLOOD<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.329    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $6,519.90 |
| **THE BRANDT COMPANIES, LLC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 227351**<br>**DALLAS, TX 75222**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SERVICES<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.330    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 405.84 |
| **THE RUHOF CORPORATION**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**393 SAGAMORE AVE**<br>**MINEOLA, NY 11501-1919**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   SUPPLIES - CLEANING<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.331    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 33.32 |
| **THE STAYWELL, LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 90477**<br>**CHICAGO, IL 60696-0477**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed<br><br>Basis for the claim   PATIENT EDUCATION MATERIALS<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.332    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $39,725.16 |
|---|---|---|
| **TK ELEVATOR CORPORATION**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 3796**<br>**CAROL STREAM, IL 60132-3796**<br><br>**Date or dates debt was incurred  Various**<br><br>**Last four digits of account number** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SERVICES**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.333    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 520.80 |
| **TOCATJIAN MD PA, ALAIN Z**<br>**3201 COUNTRY CLUB DRIVE**<br>**MCKINNEY, TX 75070**<br><br>**Date or dates debt was incurred  Various**<br><br>**Last four digits of account number** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SERVICES -**<br>**PROFESSIONAL MEDICAL SERVICES**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.334    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,790.00 |
| **TRI W-G, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**215 12TH AVE NE PO BOX 905**<br>**VALLEY CITY, ND 58072**<br><br>**Date or dates debt was incurred  Various**<br><br>**Last four digits of account number** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   MEDICAL EQUIPMENT**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.335    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $3,594.00 |
| **TRI-PHARMA, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**975 COBB PLACE BLVD STE 118**<br>**KENNESAW, GA 30144**<br><br>**Date or dates debt was incurred  Various**<br><br>**Last four digits of account number** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   PHARMACEUTICALS**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.336    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 940.00 |
| **TZ MEDICAL INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**17750 SW UPPER BOONES FERRY ROAD STE 150**<br>**PORTLAND, OR 97224**<br><br>**Date or dates debt was incurred  Various**<br><br>**Last four digits of account number** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>**Basis for the claim   SUPPLIES**<br><br>**Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.337 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $92,583.70 |
|---|---|---|
| **UMR**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 88822**<br>**MILWAUKEE, WI 53288-0822**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed<br><br>Basis for the claim   **EMPLOYEE BENEFITS - CLAIMS**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.338 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 108.57 |
| **UNITED WAY**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O.BOX 1112**<br>**SHERMAN, TX 75091**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **CONTRIBUTIONS**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.339 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $2,671.00 |
| **URBANCZYK ORTHO, PLLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**204 MEDICAL DRIVE STE 220**<br>**SHERMAN, TX 75092**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **SERVICES - PROFESSIONAL MEDICAL SERVICES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.340 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $30,750.00 |
| **URBANCZYK, DO JEREMY**<br>**412 PRESTON ROAD**<br>**DENISON, TX 75020**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **SERVICES - PROFESSIONAL MEDICAL SERVICES**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.341 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $5,052.06 |
| **US MED-EQUIP LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 4339**<br>**HOUSTON, TX 77210-4339**<br><br>Date or dates debt was incurred  Various<br><br>Last four digits of account number | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed<br><br>Basis for the claim   **EQUIPMENT LEASE - HYPERBARIC CHAMBER**<br><br>Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                     Case Number 23-10810-JKS

| 3.342    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $11,679.64 |
|---|---|---|
| **VANTAGE POINT LOGISTICS, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 70391**<br>**NEWARK, NJ 07101-0096** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES - SOFTWARE | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |

| 3.343    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,437.55 |
|---|---|---|
| **VERATHON, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 935117**<br>**ATLANTA, GA 31193-5117** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   MEDICAL DEVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |

| 3.344    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 581.00 |
|---|---|---|
| **VERN A NORRIS**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**500 N HIGHLAND**<br>**SHERMAN, TX 00007-5092** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   EMPLOYEE REIMBURSEMENT | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |

| 3.345    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $17,725.18 |
|---|---|---|
| **VETERAN CLAIMS PAID, LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**210 NORTHTOWNE CT STE H**<br>**NEWARK, OH 43055** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SERVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |

| 3.346    Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $12,868.75 |
|---|---|---|
| **VIRAL MD LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**2270 SPRINGLAKE RD STE 800**<br>**FARMERS BRANCH, TX 75234** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   WEBSITE, SEM, & CONTENT | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒ No.<br>☐ Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.347 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 381.40 |
|---|---|---|
| VITALITY MEDICAL INC<br>ATTN PRESIDENT/MANAGER AGENT<br>7910 SOUTH 3500 EAST SUITE C<br>SALT LAKE CITY, UT 84121 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.348 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 80.69 |
| VPNA  BAUSCH & LOMB SURGICAL LLC<br>ATTN PRESIDENT/MANAGER AGENT<br>4395 COLLECTIONS CENTER SR.<br>CHICAGO, IL 60693 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.349 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $ 586.75 |
| VWR INTERNATIONAL, LLC<br>ATTN PRESIDENT/MANAGER AGENT<br>PO BOX 640169<br>PITTSBURGH, PA 15264-0169 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  REAGENTS -<br>LABORATORY SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.350 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $4,001.00 |
| W.L. GORE AND ASSOCIATES INC<br>ATTN PRESIDENT/MANAGER AGENT<br>P.O. BOX 751331<br>CHARLOTTE, NC 28275 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☒ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  SUPPLIES - MEDICAL<br>SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.351 Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | $1,625.00 |
| WASTENET  WASTEFLO INC<br>ATTN PRESIDENT/MANAGER AGENT<br>PO BOX 821906<br>N RICHLAND HILLS, TX 76182 | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim  WASTE MONITORING | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.352   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $14,381.54 |
|---|---|---|
| **WERFEN USA LLC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 347934**<br>**PITTSBURGH, PA 15251-4934** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **BLOOD TESTING PRODUCTS** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.353   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $3,496.48 |
|---|---|---|
| **WES ENTERPRISES, LP**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**200 MEADOWLANDS BLVD**<br>**KELLER, TX 76248** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **EQUIPMENT - ENDOSCOPY** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.354   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,426.42 |
|---|---|---|
| **WEST COAST MEDICAL RESOURCES**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 839**<br>**CLEARWATER, FL 33757** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **SUPPLIES - MEDICAL** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.355   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 831.00 |
|---|---|---|
| **WEX HEALTH, INC.**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 9528**<br>**FARGO, ND 58106-9528** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **EMPLOYEE BENEFITS - FLEXIBLE SPENDING ACCOUNTS** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

| 3.356   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,327.56 |
|---|---|---|
| **WILLIAMS MEDICAL COMPANY**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 1122**<br>**YORBA LINDA, CA 92886** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   **PHARMACEUTICALS** | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.357    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,742.00 |
|---|---|---|
| **WISCONSIN STATE LABORATORY OF HYGIENE**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 78770**<br>**MILWAUKEE, WI 53278-0770** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   LICENSES & PERMITS | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.358    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 150.00 |
| **WORKFORCE SOLUTIONS TEXOMA**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**2415 SOUTH AUSTIN AVENUE #107**<br>**DENISON, TX 75020** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   JOB FAIR | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.359    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $1,649.54 |
| **WRIGHT MEDICAL TECHNOLOGY INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P O BOX 503482**<br>**ST. LOUIS, MO 63150-3482** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   SUPPLIES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.360    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $5,346.61 |
| **WRIGHT-CLARK, KIMBERLY**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**500 N HIGHLAND AVE**<br>**SHERMAN, TX 75092** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   EMPLOYEE REIMBURSEMENT | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |
| 3.361    Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $3,100.00 |
| **ZOLL LIFECOR CORPORATION**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**P.O. BOX 644321**<br>**PITTSBURGH, PA 15264** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| Date or dates debt was incurred  Various | Basis for the claim   MEDICAL DEVICES | |
| Last four digits of account number | Is the claim subject to setoff?<br>☒No.<br>☐Yes | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| 3.362   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $2,640.01 |
|---|---|---|
| **ZOLL MEDICAL CORPORATION**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 27028**<br>**NEW YORK, NY 10087-7028** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| **Date or dates debt was incurred  Various** | **Basis for the claim   SUPPLIES - CARDIAC** | |
| **Last four digits of account number** | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| 3.363   Nonpriority creditor's name and mailing address | *As of the petition filing date, the claim is:* | $ 111.93 |
| **ZORO TOOLS, INC**<br>**ATTN PRESIDENT/MANAGER AGENT**<br>**PO BOX 5233**<br>**JANESVILLE, WI 53547-5233** | Check all that apply<br>☐ Contingent<br>☐ Unliquidated<br>☐ Disputed | |
| **Date or dates debt was incurred  Various** | **Basis for the claim   SUPPLIES - NON MEDICAL** | |
| **Last four digits of account number** | **Is the claim subject to setoff?**<br>☒No.<br>☐Yes | |
| | **TOTAL   $83,071,669.23** | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| Part 3: | List Others to Be Notified About Unsecured Claims |
|---------|---------------------------------------------------|

**4.    List in alphabetical order any others who must be notified for claims listed in Parts 1 and 2. Examples of entities that may be listed are collection agencies, assignees of claims listed above, and attorneys for unsecured creditors.**

**If no others need to be notified for the debts listed in Parts 1 an 2, do not fill out or submit this page. If additional pages are needed, copy this page.**

| Name and mailing address | On which line in Part 1 or 2 is the related creditor (if any) listed? | Last 4 digits of account number, if any |
|--------------------------|----------------------------------------------------------------------|------------------------------------------|
| 4.1<br>**A LEE RIGBY, ESQ**<br>**CAIDI DAVIS, ESQ**<br>**RIGBY CLACK, PLLC**<br>**3500 JEFFERSON STREET, SUITE 330**<br>**AUSTIN, TX 78731** | Line  3.99<br>**re DATASEARCH INC**<br>☐ Not listed.  Explain | |
| 4.2<br>**KAREN L HART, ESQ**<br>**DANIELLE C. VORBRODT, ESQ**<br>**BELL NUNNALY**<br>**2323 ROSS AVENUE, SUITE 1900**<br>**DALLAS, TX 75201** | Line  3.171<br>**re HHS1, LLC**<br>☐ Not listed.  Explain | |

Debtor  SHERMAN/GRAYSON HOSPITAL LLC.                    Case Number 23-10810-JKS

| Part 4: | Total Amounts of the Priority and Nonpriority Unsecured Claims |
|---------|--------------------------------------------------------------|

| | | Total of claim amounts |
|---|---|---|
| 5. | Add the amounts of priority and nonpriority unsecured claims. | |
| **5a.  Total claims from Part 1** | *5a.* | **$0.00** |
| **5b.  Total claims from Part 2** | *5b.* **+** | **$83,071,669.23** |
| **5c.  Total of Parts 1 and 2**<br>Lines 5a + 5b = 5c. | *5c.* | **$83,071,669.23** |

**Fill in this information to identify the case:**

Debtor name: SHERMAN/GRAYON HOSPITAL LLC
a Delaware limited liability company

United States Bankruptcy Court for the: _____ District of Delaware
(State)

Case number (If known): 23-10810-JKS          Chapter 11

☐ Check if this is an amended filing

Official Form 206G

## Schedule G: Executory Contracts and Unexpired Leases                12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

**1. Does the debtor have any executory contracts or unexpired leases?**

☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.

☑ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

| 2. List all contracts and unexpired leases | State the name and mailing address for all other parties with |
|---|---|
| **2.1** State what the contract or lease is for and the nature of the debtor's interest | See Schedule G Attachment |
| State the term remaining | |
| List the contract number of any government contract | |
| **2.2** State what the contract or lease is for and the nature of the debtor's interest | |
| State the term remaining | |
| List the contract number of any government contract | |
| **2.3** State what the contract or lease is for and the nature of the debtor's interest | |
| State the term remaining | |
| List the contract number of any government contract | |
| **2.4** State what the contract or lease is for and the nature of the debtor's interest | |
| State the term remaining | |
| List the contract number of any government contract | |
| **2.5** State what the contract or lease is for and the nature of the debtor's interest | |
| State the term remaining | |
| List the contract number of any government contract | |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.1 | Letter Agreement for ED Call Coverage – General Surgery | Chad Friedle, D.O.<br>3305 North Calais Drive, Suite 100<br>Sherman, TX 75090 |
|-----|---------|---------|
| 2.2 | Coverage Agreement (General Surgery) | Ikram Kureshi, M.D.<br>5012 US Hwy 75, Suite 270<br>Denison, TX 75020 |
| 2.3 | Emergency Department On-Call Agreement (Orthopedic Surgery) | Christian Edward Isaac, M.D.<br>5928 Forefront Avenue<br>Frisco, TX 75036 |
| 2.4 | On-Call Coverage Agreement (OB/GYN) | Todd D. Cutler, M.D.<br>3401 N. Calais Street<br>Sherman, TX 75092 |
| 2.5 | Coverage Agreement (Gastroenterology) | John Fletcher, M.D.<br>5100 Wilder Trail<br>Sherman, TX 75092 |
| 2.6 | Coverage Agreement (Gastroenterology) | Jermaine Clark, D.O.<br>204 Medical Drive, Suite 240<br>Sherman, TX 75092 |
| 2.7 | Emergency Department On-Call Agreement (Gastroenterology) | Joseph Kim, M.D.<br>204 Medical Drive, Suite 240<br>Sherman, TX 75092 |
| 2.8 | Coverage Agreement (Interventional Cardiology) | M. Asad Karim, M.D.<br>1871 Harroun Avenue, Suite 200<br>McKinney, TX 75069 |
| 2.9 | Coverage Agreement (Gastroenterology) | Kruti Patel, D.O.<br>3804 Deer Point Drive<br>Denison, TX 75020 |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.10 | Emergency Department On-Call Agreement (Orthopedics) | Om V. Patel, M.D.<br>725 Laverton Drive<br>Frisco, TX 75036 |
|------|------|------|
| 2.11 | On-Call Coverage Agreement (OB/GYN) | Teresa Rockhill, M.D.<br>1111 Deer Creek Drive<br>Denison, TX 75020 |
| 2.12 | Coverage Agreement (Gastroenterology) | Ryan Khal, M.D.<br>3804 Deer Point Drive<br>Denison, TX 75020 |
| 2.13 | Coverage and Medical Director Agreement | Jawad Riaz, M.D.<br>935 W. Exchange Parkway, Suite 110<br>Allen, TX 75013 |
| 2.14 | Coverage Agreement (Interventional Cardiology) | DFW Physicians Medical Associates, PLLC<br>425 N. Highland, Suite 200<br>Sherman, TX 75092 |
| 2.15 | Coverage Agreement (Interventional Cardiology) | North Texas Comprehensive Cardiology, PLLC<br>2800 N. Hwy 75<br>Sherman, TX 75090 |
| 2.16 | Emergency Department On-Call Agreement (General Surgery) | Cody Starnes, M.D.<br>2627 Masters Street<br>Sherman, TX 75090 |
| 2.17 | Emergency Department On-Call Agreement (Orthopedic Surgery) | Jeremy Urbanczyk, D.O.<br>204 Medical Drive, Suite 220<br>Sherman, TX 75092 |
| 2.18 | Chief Medical Officer Agreement | Curtis Holbrook, M.D., MBA, RPh<br>500 N. Highland Avenue, Suite 107<br>Sherman, TX 75092 |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.19 | Cardiology Services Agreement (EKG Reads) | David Davis, M.D.<br>2800 N. Hwy 75<br>Sherman, TX 75090 |
|------|-------------------------------------------|-----------------------------------------------------------|
| 2.20 | Cardiology Services Agreement (EKG Reads) | Nikhil Joshi, M.D.<br>2800 N. Hwy 75<br>Sherman, TX 75090 |
| 2.21 | Cardiology Services Agreement (EKG Reads) | M. Asad Karim<br>1871 Harroun Avenue, Suite 200<br>McKinney, TX 75069 |
| 2.22 | Cardiology Services Agreement (EKG Reads) | Alain Tocatjian, M.D.<br>425 N. Highland, Suite 200<br>Sherman, TX 75092 |
| 2.23 | Hospitalist Services Agreement | Carrus Care Physicians Group, Inc.<br>1810 US Hwy 82 W<br>Sherman, TX 75092 |
| 2.24 | Sublease Agreement – Clinic Space (Debtor Sublessor) | Sherman MD Provider, Inc.<br>500 N. Highland Avenue<br>Sherman, Texas 75092 |
| 2.25 | Medical Director Agreement | Curtis Holbrook, M.D., MBA, RPh<br>500 N. Highland Avenue, Suite 107<br>Sherman, TX 75092 |
| 2.26 | Medical Director Agreement | North Texas Comprehensive Cardiology, PLLC<br>2800 N. Hwy 75<br>Sherman, TX 75090 |
| 2.27 | Co-Medical Director Agreement | Ikram Kureshi, M.D.<br>5012 US Hwy 75, Suite 270<br>Denison, TX 75020 |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.28 | Medical Director Agreement | Jennifer Laing, M.D.<br>1000 S. Heritage Parkway<br>Sherman, TX 75092 |
|------|----------------------------|----------------------|
| 2.29 | Medical Director Agreement | Andres Morales, M.D.<br>321 N. Highland Avenue, Suite 200<br>Sherman, TX 75092 |
| 2.30 | Medical Director Agreement | Minaxi K. Rathrod, M.D.<br>321 N. Highland Avenue, Suite 100<br>Sherman, TX 75092 |
| 2.31 | Medical Director Agreement | Cody Starnes, M.D.<br>2627 Masters Street<br>Sherman, TX 75090 |
| 2.32 | Patholgy Services and Medical Direction Agreement | ProPath Associates PLLC<br>ProPatth Associates LLC<br>1355 River Bend Drive<br>Dallas, TX 75247<br>Attn: Executive Director |
| 2.33 | Professional Radiology Services Agreement | Consultants in Pathology, P.A.<br>C/O Radiology Partners<br>2330 Utah Avenue, Suite 200<br>El Segundo, CA 90245 |
| 2.34 | Telemedicine Physician Credentialling Agreement | Consultants in Pathology, P.A.<br>C/O Radiology Partners<br>2330 Utah Avenue, Suite 200<br>El Segundo, CA 90245 |
| 2.35 | Independent Contractor Agreement | Shari Darnall, RDMS, AB<br>PO Box 452<br>Collinsville, TX 76237 |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.36 | Independent Contractor Agreement – Nursing Services | Kristen Drake, RN<br>7366 Texas Rangers Drive, #3105<br>Frisco, Texas 75034 |
|---|---|---|
| 2.37 | Independent Contractor Agreement - Nursing Services | Ayrione Fassitt, RN<br>10200 Independence Parkway, #611<br>Plano, TX 75025 |
| 2.38 | Independent Contractor Agreement- Nursing Services | Etta Lewis, RN<br>1106 Myers Avenue<br>Frisco, TX 75034 |
| 2.39 | Independent Contractor Agreement - Nursing Services | April Martin, RN<br>369 Crosstimber<br>Denison, TX 75034 |
| 2.40 | Independent Contractor Agreement – Respiratory Services | Benjamin Mcgaughey, RRT<br>1311 Fairhaven Street<br>Longview, Texas 75605 |
| 2.41 | Independent Contractor Agreement | Kalin Mieras<br>13970 W. 148th Street<br>Olathe, KS 66062 |
| 2.42 | Independent Contractor Agreement | Cassie Montgomery<br>301 W. Duke Street<br>Howe, Texas 75459 |
| 2.43 | Independent Contractor Agreement - Nursing Services | Vickie Ramsay, RN<br>205 N. Willow Street<br>Leonard, TX 75452 |
| 2.44 | Independent Contractor Agreement - Nursing Services | Mary Roberts, RN<br>310 Blackmon Trail<br>Bells, TX 75414 |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.45 | Independent Contractor Agreement - | Gina Vaughn, RCS<br>19397 SR 22<br>Caddo, OK 74729 |
|------|-----------------------------------|--------------------------------------------------|
| 2.46 | Independent Contractor Agreement- Nursing Services | Colette Young, RN<br>2175 N. State Hwy 360, # 571<br>Grand Prairie, TX 75050 |
| 2.47 | Master Software and Services Agreement | 3M Health Information Systems<br>575 West Murray Boulevard<br>Murray, UT 84123-4611<br>Attn: Pricing & Contract Director & Legal |
| 2.48 | Service Agreement | Ability<br>4321 Collington Road<br>Bowie, Maryland 20716 |
| 2.49 | Preventative Maintenance Agreement | ACIS<br>1028 N. McDonald<br>McKinney, TX 75069 |
| 2.50 | Engagement Letter (LPPF Program) | Adelanto Healthcare Ventures, LLC<br>401 W. 15th Street, Suite 840<br>Austin, TX 78701 |
| 2.51 | Master Client Agreement | Altera Digital Health<br>2429 Military Road, Suite 300<br>Niagara Falls, NY 14304 |
| 2.52 | Client Order for Sunrise Community Care | Altera Digital Health<br>2429 Military Road, Suite 300<br>Niagara Falls, NY 14304 |
| 2.53 | Laundry Processing and Rental Services | Alsco, Inc.<br>2816 Central Expressway East<br>Wichita, TX 76301 |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.54 | Lease Agreement – 300 N. Highland – Suites 200 and 210 | Altera Highland, LLC<br>5910 N. Central Expressway, Suite 1360<br>Dallas, TX 75206 |
|------|---------|---------|
| 2.55 | Lease Agreement – 300 N. Highland – Suites 130, 310, 315, 330, 340, and 415 | Altera Highland, LLC<br>5910 N. Central Expressway, Suite 1360<br>Dallas, TX 75206 |
| 2.56 | Lease Agreement – 300 N. Highland – Suites 430, 445, 500, 510, 545 | Altera Highland, LLC<br>5910 N. Central Expressway, Suite 1360<br>Dallas, TX 75206 |
| 2.57 | Lease Agreement – 300 N. Highland – Suites 350, 400, 410, and 5th Floor Conference Center | Altera Highland, LLC<br>5910 N. Central Expressway, Suite 1360<br>Dallas, TX 75206 |
| 2.58 | Lease Agreement – 300 N. Highland – Suites A, B, C, D & E – Occupied Common Areas | Altera Highland, LLC<br>5910 N. Central Expressway, Suite 1360<br>Dallas, TX 75206 |
| 2.59 | Confidential Settlement Agreement | LHP Hospital Group, Inc.<br>C/O Ardent Health Services, Attn: General Counsel<br>1 Burton Boulevard, Suite 250<br>Nashville, TN 37215<br><br>Richards Rodriguez & Skeith LLP<br>816 Congress Avenue, Suite 1200<br>Austin, TX 78701<br>Attn: Benjamin Hathaway, Esq. |
| 2.60 | Service Agreement | Bayer Healthcare<br>1 Bayer Drive<br>Indianola, PA 15051 |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.61 | Acute Care Letter of Commitment – Supplies | B. Braun Medical, Inc.<br>861 Macron Blvd<br>Allentown, PA 18109<br>Attn: Contracts Administrator |
|------|---------------------------------------------|----------------------------------------------------|
| 2.62 | Product and Services Agreement | Beckman Coultier<br>250 S. Kraemer Boulvard<br>Brea, CA 92821-8000 |
| 2.63 | Service Agreement (4705321) | Biomerieux<br>PO Box 500308<br>St. Louis, MO 63150-6308 |
| 2.64 | Service Agreement (4705366) | Biomerieux<br>PO Box 500308<br>St. Louis, MO 63150-6308 |
| 2.65 | Master Purchase Agreement – Supplies | Biotronik<br>6024 Jean Road<br>Lake Oswego, OR 97035 |
| 2.66 | Vascular Intervention Products Consignment Agreement | Biotronik<br>6024 Jean Road<br>Lake Oswego, OR 97035 |
| 2.67 | Maintenance Agreement | Brandt<br>1728 Briercroft Court<br>Carrollton, TX 75006 |
| 2.68 | SAAS Service Agreement | Breezy HR, Inc.<br>1534 Oak Street, Suite 301<br>Jacksonville, FL 32204 |
| 2.69 | Service Agreement (Equipment) | Canon Medical Systems USA, Inc.<br>2441 Michelle Drive<br>Tustin, CA 92780<br>Attn: Service Contracts Administration |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.70 | Service and Products Agreements | CareFusion Solutions, LLC<br>25565 Network Place<br>Chicago, IL 60673-1255<br>Attn: Amanda Saternus, Contract Consultant |
|------|----------------------------------|---------------------------------------------------------------------------------------------------------------------|
| 2.71 | CAPS IV Services Agreement | Central Admixture Pharmacy<br>6430 Oak Canyon Drive, Suite 200<br>Irvine, CA 92618<br>Attn: Contracts Department |
| 2.72 | Collection Services Agreement | CMRE Financial Services, Inc.<br>3075 E. Imperial Highway, Suite 200<br>Brea, CA 92821 |
| 2.73 | Self-Pay AR Management Services Agreement | Healthcare Revenue Management Group<br>3075 East Imperial Highway, Suite 200<br>Brea, CA 92821 |
| 2.74 | Billing and Collection Services Agreement | DataSearch, Inc.<br>P.O. Box 461289<br>San Antonio, TX 78246-1289 |
| 2.75 | Equipment Lease – Lease No. 001-9055449-004 | Dell Financial Services, L.L.C.<br>Mail Stop PS2DF-23 One Dell Way<br>Round Rock, TX 78682 |
| 2.76 | Services Agreement | Genesa Reimbursement Group<br>8101 Boat Club Road, Suite 240<br>Fort Worth, TX 76179 |
| 2.77 | Benefit Services Agreement | Hodges-Mace, LLC<br>5775-D Glenridge Drive NE, Suite 350<br>Atlanta, Georgia 30328 |
| 2.78 | Service Level Agreement (PACS Imaging) | Infinitt North America<br>755 Memorial Parkway, Suite 304<br>Phillipsburg, NJ 08865 |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.79 | Support Agreement (Time Clocks) | JB Developers, Inc.<br>280 W. Praire Avenue, Suite 3<br>Coeur D'Alene, ID 83815 |
|---|---|---|
| 2.80 | Radiopharma Provider Agreement | Jubilant DRaxImage, Inc.<br>PO Box 415921<br>Boston, MA 02241-5921 |
| 2.81 | Product Renewal (Patient Eligibility) | Experian Health<br>720 Cool Springs Boulevard, Suite 200<br>Franklin, TN 37067 |
| 2.82 | Laboratory Interface System Agreement | Laboratory Corporation of America<br>7777 Forest Lane, Suite C-350<br>Dallas, TX 75230<br>Attn: Contract Administrator |
| 2.83 | Independent Contractor Agreement – Media Services | May Media<br>500 W. Woodard Street<br>Denison, TX 76227 |
| 2.84 | Master Client Agreement (Care Guidelines) | MCG Health<br>701 Fifth Avenue, Suite 4900<br>Seattle, WA 98104 |
| 2.85 | Agreement for Emergency Department Coverage | NES Southwest Medical Services, Inc.<br>39 Main Street<br>Tiburon, CA 94920<br>Attn: CEO |
| 2.86 | Facility Subscription Agreement | MDSave, Inc.<br>100 Winners Circle North, Sute 202<br>Brentwood, TN 37027 |
| 2.87 | Contract Coding Services | MedAlliance<br>57556 29 Palms Highway, #343<br>Yucca Valley, CA 92284 |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.88 | Service Agreement (Customer No. 450014043) | Medivators<br>14605 28th Avenue N<br>Minneapolis, MN 55447 |
|------|---------------------------------------------|----------------------------------------------------------|
| 2.89 | Supply Agreement | Medline Industries, Inc.<br>One Medline Drive<br>Mundelein, IL 60060<br>Attn: General Counsel |
| 2.90 | Landscape Services Agreement | Menjivar Lawn & Landscape<br>PO Box 272<br>Sherman, TX 75091 |
| 2.91 | Maintenance Agreement (Water Treatment Equip) | Mueller Water Conditioning, Inc.<br>1500 Sherwood Forest Street<br>Houston, TX 77043 |
| 2.92 | Equipment Maintenance Agreement (MRI) | MXR Imaging<br>4909 Murphy Canyon Road, Suite 120<br>San Diego, CA 92123 |
| 2.93 | Lease Agreement (Postage Equipment) | Neopost/Quadient<br>PO Box 6813<br>Carol Stream, IL 60197 |
| 2.94 | Master Agreement – Services (Software) | Pelitas, LLC<br>2745 Dallas Parkway, Suite 605<br>Plano, TX 75093 |
| 2.95 | Master Service Agreement (Software) | Persivia<br>4 Mount Royal<br>Marlborough, MA 01752 |
| 2.96 | Maintenance Agreement (Copiers) | Sharp Business Systems<br>5700 Stoneridge Drive, Suite 300<br>Pleasanton, CA 94588 |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.97 | Lease Agreement (Copiers) | Aztec Leasing<br>2215 Vista Rodeo Drive<br>San Diego, CA 92019 |
|---|---|---|
| 2.98 | Provider Services Agreement | Siesta Solutions, PLLC<br>c/o Simon Hughes, Esq.<br>The Hughes Law Firm<br>13820 North West Freeway, # F-400<br>Houston, TX 77040 |
| 2.99 | Master Services Agreement (Equipment Maintenance) | SPBS Clinical Equipment Service<br>4431 Long Prairie Road, Suite 100<br>Flower Mound, TX 75028 |
| 2.100 | Alarm Contract | SSD Alarm<br>1740 N. Lemon Street<br>Anaheim, CA 92801 |
| 2.101 | Master Service Agreement (Medical Waste) | Stericycle<br>4010 Commercial Avenue<br>Northbrook, IL 60062 |
| 2.102 | Master Service Agreement (Pharmaceutical Waste) | Stericycle<br>4010 Commercial Avenue<br>Northbrook, IL 60062 |
| 2.103 | Master Service Agreement (Controlled Substance Waste) | Stericycle<br>4010 Commercial Avenue<br>Northbrook, IL 60062 |
| 2.104 | Master Service Agreement (Sharps) | Stericycle<br>4010 Commercial Avenue<br>Northbrook, IL 60062 |
| 2.105 | Services Agreement (Equipment Maintenance – Agreement # 1-568921544811) | Steris<br>5960 Heisley Road<br>Mentor, OH 44060 |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.106 | Independent Contractor Agreement (RT Services) | Julie Taylor<br>1047 Hickory Lane<br>Howe, TX 75459 |
|---|---|---|
| 2.107 | Master Agreement (Software) | Telcor<br>7101 A Street<br>Lincoln, NE 68510 |
| 2.108 | Software Support Agreement | Telcor<br>7101 A Street<br>Lincoln, NE 68510 |
| 2.109 | Professional Services Agreement (Psychiatric Services) | Texoma Community Care<br>902 E. Cottonwood Road<br>Sherman, TX 75090<br>Attn: CEO |
| 2.110 | Service Agreement | Texoma Regional Blood Center<br>3911 Texoma Parkway<br>Sherman, TX 75090 |
| 2.111 | Elevator Modernization Proposal/Contract | TK Elevator Company<br>4355 Excel Parkway, Suite 800<br>Addison, TX 75001 |
| 2.112 | Service Agreement (Elevators) | TK Elevator Company<br>4355 Excel Parkway, Suite 800<br>Addison, TX 75001 |
| 2.113 | Subscription Agreement | UpToDate<br>230 Third Avenue<br>Waltham, MA 02451 |
| 2.114 | Contract for Donor Services | UT Southwestern Medical Center<br>5323 Harry Hines Boulevard<br>Dallas, TX 75390 |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.115 | Master Services Agreement (Software) | Verity Stream<br>361 Centennial Parkway, Suite 150<br>Louisville, CO 80027 |
|---|---|---|
| 2.116 | Reagent Rental Agreement (Laboratory) | Werfen USA LLC<br>180 Hartwell Road<br>Bedford, MA 01730 |
| 2.117 | Product Purchase Agreement | Zimmer USA, Inc.<br>345 E. Main Street<br>Warsaw, IN 46580 |
| 2.118 | Sales Order (Encryption Software) | CSP dba AppSmart<br>447 Sutter Street, Suite 814<br>San Francisco, CA 94108 |
| 2.119 | Freight Management Service Agreement | Vantage Point Logistics<br>8917 South Old State Road, Suite 126<br>Lewis Center, OH 43035 |
| 2.120 | Hospital Services Agreement | Aetna Health, Inc.<br>2777 N. Stemmons Freeway, Suite 1450<br>Dallas, TX 75207<br>Attn: Provider Contract Management |
| 2.121 | Participating Provider Agreement | Amerigroup Texas, Inc.<br>2505 N. Hwy 360, Suite 300<br>Grand Prairie, TX 75050 |
| 2.122 | Hospital Agreement for HMO Network Participation | Blue Cross Blue Shield of Texas<br>1000 E. Lookout Drive<br>Richardson, TX 75082 |
| 2.123 | Hospital Agreement for PPO Network Participation | Blue Cross Blue Shield of Texas<br>1000 E. Lookout Drive<br>Richardson, TX 75082 |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.124 | Facility Services Agreement | Care N' Care Insurance Company<br>1701 River Run, Suite 402<br>Fort Worth , TX 76107<br>Attn: Legal Department |
|---|---|---|
| 2.125 | Hospital Provider Agreement | Superior Health Plan<br>5900 E. Ben White Boulevard<br>Austin, TX 78741 |
| 2.126 | Facility Participation Agreement | United Healthcare Insurance Company<br>1250 Capitol of Teas Highway South, Building 1, Suite 400<br>Austin, TX 78746 |
| 2.127 | Hospital Services Agreement | Cigna HealthCare of Texas, Inc.<br>1640 Dallas Parkway<br>Plano, TX 75093-4515 |
| 2.128 | Hospital Services Agreement | Magellan Providers of Texas, Inc.<br>6303 Cowboys Way<br>Frisco, TX 75034 |
| 2.129 | Hospital Services Agreement | Molina Healthcare of Texas, Inc.<br>5605 MacArthur Boulevard, Suite 400<br>Irving, TX 75038<br>Attn: Provider Contracting |
| 2.130 | Participating Facility Agreement | Multi-Plan<br>1100 Winter Street<br>Waltham, MA 02451 |
| 2.131 | Participating Facility Provider Agreement | Baylor Scott & White Health Plan<br>1206 W. Campus Drive<br>Temple, TX 76502 |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| | | |
|---|---|---|
| 2.132 | Lease Obligations - Secured Creditor UCC Filed 2/16/15, Filing #20150659317, Continuation Filed 9/4/19, Filing #20196144906 Lease Agreement Dated 10/31/2014 Pursuant To Which Sherman/Grayson Hospital LLC Leases From MPT of Sherman-Alecto LLC Certain Real Property located in Sherman, Texas and that certain Senior Secured Prepetition and Super Priority Debtor in Possession Note dated 6/21/23; Obligations of Olympia Health Care, LLC, Alecto Healthcare Services Fairmont LLC, Alecto Healthcare Services Ohio Valley LLC, Alecto Healthcare Services Wheeling LLC, And Alecto Healthcare Services Martin's Ferry LLC Under Agreements With Secured Creditors | MPT Of Olympia LLC MPT Of Fairmont-Alecto Hospital LLC MPT Of Sherman-Alecto Hospital LLC MPT Of Los Angeles LP MPT Of Wheeling-Alecto Hospital LLC MPT Of Martins Ferry-Alecto Hospital LLC MPT Of Sherman-Alecto LLC 1000 Urban Center Drive Suite 501 Birmingham. AL 35242 |
| 2.133 | Equipment Lease - Hyperbaric Chamber | US Med-Equip LLC P O Box 4339 Houston. TX 77210-4339 |
| 2.134 | Lease - Postage Machine | Quadient Leasing Usa Inc (Mailfinance) Dept 3682, PO Box 123682 Dallas, TX,753123682 |
| 2.135 | Insurance Directors & Officers Employment Practices Fiduciary & Crime - Primary Layer Term: 1/31/2023 - 1/31/2024 Policy No.: x55-16 | National Union Fire Insurance Co 28 Liberty Street New York. NY 10005 |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.136 | Insurance<br>Excess Directors & Officers<br>Employment Practices<br>Term: 1/31/2023 - 1/31/2024<br>Policy No. x3822 | RSUI Indemnity Company<br>945 East Paces Ferry Road Suite 1800<br>Atlanta. GA 30376 |
|---|---|---|
| 2.137 | Insurance<br>Excess Directors & Officers<br>Employment Practices<br>Term: 1/31/2023 - 1/31/2024<br>Policy No. x55-24 | National Union Fire Insurance Co<br>28 Liberty Street<br>New York. NY 10005 |
| 2.138 | Insurance<br>Comprehensive Employer Indemnity<br>Term: 3/1/2023 - 3/31/2024<br>Policy No. x39-01 | Old Republic Union Insurance Co<br>307 N. Michigan Avenue<br>Chicago. IL 60601 |
| 2.139 | Insurance<br>Environmental Pollution<br>Storage Tank Liability - WNJ<br>Term: 8/1/2022 - 8/1/2023<br>Policy No. x6002 | Ironshore Specialty Insurance Co<br>175 Berkeley Street<br>Boston. MA 02116 |
| 2.140 | Insurance<br>Cyber Liability<br>Term: 8/14/2022 - 8/14/2023<br>Policy No. x2002<br>   Arch Soecialty - 45%<br>   Fireman's Fund - 25%<br>   Ascot Specialty - 25%<br>   North Amercian Capacity - 5% | Coalition Insurance Solutions<br>1160 Battery Street Suite 350<br>San Francisco. CA 94111 |

**In re Sherman/Grayson Hospital LLC**
**Attachment to Schedule G – Executory Contracts and Unexpired Leases**

| 2.141 | Insurance<br>Automobile<br>Term: 6/1/2023 - 6/1/2024<br>Policy No. x49-02 | Vantapro Specialty Insurance Co<br>199 Water Street<br>New York. NY 10038 |
|---|---|---|
| 2.142 | Insurance<br>"All Risks" Property incl Boiler & Machinery &<br>Flood, excluding CA EM<br>Term: 7/1/2022 - 9/1/2023<br>Policy No. x8117 | American Home Asssurance Co<br>175 Water Street<br>New York. NY 10038 |
| 2.143 | Insurance<br>Excess Medical Professional<br>General Liability for TX (WNJ) Exposure Only<br>Term: 8//1/2022 - 8/1/2023<br>Policy No. x4235 | Magmutual Professional Security Ins Co<br>P.O. Box 52979<br>Atlanta. GA 30355 |
| 2.144 | Interim Management Agreement whereby AHS<br>Sherman, LLC assumed management of Debtor's<br>hospital operations known as the Wilson N. Jones<br>Regional Medical Center | AHS Sherman, LLC<br>505 N. Brand Boulevard, Suite 1110<br>Glendale, California 91203 |

**Fill in this information to identify the case:**

Debtor name    SHERMAN/GRAYSON HOSPITAL LLC
               a Delaware limited liability company

United States Bankruptcy Court for the: _____ District of   Delaware
                                                 (State)

Case number (If known):   23-10810-JKS

☐ Check if this is an amended filing

## Official Form 206H

## Schedule H: Codebtors                  12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries consecutively. Attach the Additional Page to this page.

| | |
|---|---|
| **1. Does the debtor have any codebtors?** | |
| ☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form. | |
| ☑ Yes | |

**2. In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the schedules of creditors, *Schedules D-G*.** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor separately in Column 2.

| Column 1: Codebtor | | Column 2: Creditor | |
|---|---|---|---|
| **Name** | **Mailing address** | **Name** | *Check all schedules that apply:* |
| See Schedule H Attachment | | | |
| 2.1 _____ | Street _____ <br> _____ <br> City   State   ZIP Code | _____ | ☐ D <br> ☐ E/F <br> ☐ G |
| 2.2 _____ | Street _____ <br> _____ <br> City   State   ZIP Code | _____ | ☐ D <br> ☐ E/F <br> ☐ G |
| 2.3 _____ | Street _____ <br> _____ <br> City   State   ZIP Code | _____ | ☐ D <br> ☐ E/F <br> ☐ G |
| 2.4 _____ | Street _____ <br> _____ <br> City   State   ZIP Code | _____ | ☐ D <br> ☐ E/F <br> ☐ G |
| 2.5 _____ | Street _____ <br> _____ <br> City   State   ZIP Code | _____ | ☐ D <br> ☐ E/F <br> ☐ G |
| 2.6 _____ | Street _____ <br> _____ <br> City   State   ZIP Code | _____ | ☐ D <br> ☐ E/F <br> ☐ G |

**In re Sherman/Grayson Hospital, LLC**
**Attachment to Schedule H - Co-Debtors**

| Co-Debtor Name and Address | Creditor |
|---|---|
| Olympia Health Care, LLC, Attn President or Manager Agent, 101 N. Brand Boulevard Suite 1920, Glendale, CA 91203 | CENTER FOR MEDICARE AND MEDICAID SERVICES; C/O UNITED STATES DEPARTMENT OF JUSTICE; CIVIL DIVISION - COMMERCIAL LITIGATION BRANCH. Schedules that apply:<br>   Schedule E/F |
| MPT of Los Angeles, LP, c/o Medical Properties Trust, Inc., Attn Edward K Aldag Jr, President, Attn Legal Department, 1000 Urban Center Drive, Suite 501, Birmingham, AL 35242 | |
| MPT of Olympia, LLC, c/o Medical Properties Trust, Inc., Attn Edward K Aldag Jr, President, Attn Legal Department, 1000 Urban Center Drive, Suite 501, Birmingham, AL 35242 | |
| MPT Operating Partnership, L.P., c/o Medical Properties Trust, Inc., Attn Edward K Aldag Jr, President, Attn Legal Department, 1000 Urban Center Drive, Suite 501, Birmingham, AL 35242 | |
| Medical Properties Trust, Inc., c/o Medical Properties Trust, Inc., Attn Edward K Aldag Jr, President, Attn Legal Department, 1000 Urban Center Drive, Suite 501, Birmingham, AL 35242 | |
| Alecto Healthcare Services Sherman, LLC, 500 N Highland Ave, Sherman, TX 75092 | |
| Alecto Healthcare Services LLC, 101 N. Brand Boulevard Suite 1920, Glendale, CA 91203 | |
| Laxman Reddy, c/o 101 N. Brand Boulevard Suite 1920, Glendale, CA 91203 | |
| Matthew Williams, c/o 101 N. Brand Boulevard Suite 1920, Glendale, CA 91203 | |
| Jeremy Redin, 28372 Steel Lane, Valencia, CA 91354 | |

**In re Sherman/Grayson Hospital, LLC**
**Attachment to Schedule H - Co-Debtors**

| Co-Debtor Name and Address | Creditor |
|---|---|
| Alecto Healthcare Services Sherman LLC<br>c/o 101 N Brand Boulevard Suite 1920<br>Glendale, CA 91203<br><br>Alecto Healthcare Services LLC<br>101 N Brand Boulevard Suite 1920<br>Glendale, CA 91203 | LHP HOSPITAL GROUP, INC., C/O ARDENT HEALTH SERVICES<br>Schedules that apply:<br>Schedule F<br>   Schedule E/F |
| Alecto Healthcare Services Sherman LLC<br>c/o 101 N Brand Boulevard Suite 1920<br>Glendale, CA 91203<br><br>Alecto Healthcare Services LLC<br>101 N Brand Boulevard Suite 1920<br>Glendale, CA 91203 | LHP HOSPITAL GROUP, INC., C/O ARDENT HEALTH SERVICES<br>Schedules that apply:<br>Schedule F<br>   Schedule E/F |

**In re Sherman/Grayson Hospital, LLC**
**Attachment to Schedule  H - Co-Debtors**

| Co-Debtor Name and Address | Creditor |
|---|---|
| ALECTO HEALTHCARE SERVICES SHERMAN LLC<br>500 N HIGHLAND AVE<br>SHERMAN, TX 75092<br><br>OLYMPIA HEALTH CARE, LLC<br>ATTN PRESIDENT OR MANAGER AGENT<br>101 N. BRAND BOULEVARD SUITE 1920<br>GLENDALE, CA 91203<br><br>ALECTO HEALTHCARE SERVICES FAIRMONT LLC<br>101 N BRAND BOULEVARD SUITE 1920<br>GLENDALE, CA 91203<br><br>ALECTO HEALTHCARE SERVICES OHIO VALLEY LLC<br>101 N BRAND BOULEVARD SUITE 1920<br>GLENDALE, CA 91203<br><br>ALECTO HEALTHCARE SERVICES WHEELING LLC<br>101 N BRAND BOULEVARD SUITE 1920<br>GLENDALE, CA 91203<br><br>ALECTO HEALTHCARE SERVICES MARTIN'S FERRY LLC<br>101 N BRAND BOULEVARD SUITE 1920<br>GLENDALE, CA 91203 | MPT OF OLYMPIA LLC<br>MPT OF FAIRMONT-ALECTO HOSPITAL LLC<br>MPT OF SHERMAN-ALECTO HOSPITAL LLC<br>MPT OF LOS ANGELES LP<br>MPT OF WHEELING-ALECTO HOSPITAL LLC<br>MPT OF MARTINS FERRY-ALECTO HOSPITAL LLC<br>MPT OF SHERMAN-ALECTO LLC<br>Schedules that apply:<br>   Schedule D |
| Alecto Healthcare Services LLC<br>101 N Brand Boulevard Suite 1920<br>Glendale, CA 91203 | BABETTE BOOE.<br>Schedules that apply:<br>   Schedule E/F |

**In re Sherman/Grayson Hospital, LLC**
**Attachment to Schedule H - Co-Debtors**

| Co-Debtor Name and Address | Creditor |
|---|---|
| North Texas Comprehensive Cardiology PLLC<br>2800 North Highway 75<br>Sherman, Texas 75090 | ██████████<br>C/O BILL KENNEDY LAW PLLC<br>Schedules that apply:<br>    Schedule E/F |
| Michael Spagnuolo DO PLLC<br>300 N Highland Ave Suite 415<br>Sherman, TX 750992-7390<br><br>Alecto Healthcare Services Sherman LLC<br>101 N Brand Boulevard Suite 1920<br>Glendale, CA 91203 | ██████████<br>C/O SMITH & SMITH LAW FIRM<br>Schedules that apply:<br>    Schedule E/F |

28

**Fill in this information to identify the case:**

Debtor 1    Alecto Healthcare Services LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court    **District of Delaware**

Case number:   **23–10787**

FILED

**U.S. Bankruptcy Court**
**District of Delaware**

8/15/2023

**Una O'Boyle, Clerk**

Official Form 410
## Proof of Claim

04/22

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

Alecto Health Care Services Ohio Valley LLC, HP

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| Alecto Health Care Services Ohio Valley LLC, HP | Alecto Health Services Ohio Valley LLC Health Plan |
| Name | Name |
| Kamaljit Bains, EBSA Investigator<br>1835 Market Street<br>21st Floor–Mailstop EBSA/21<br>Philadelphia, PA 19103 | Please Contact EBSA for Payment Instructions<br><br>, |
| Contact phone    215 861–5350 | Contact phone    215 861–5350 |
| Contact email    bains.kamaljit@dol.gov | Contact email    bains.kamaljit@dol.gov |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

**4. Does this claim amend one already filed?**

☒ No
☐ Yes. Claim number on court claims registry (if known)      Filed on      MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing?

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | | |
|---|---|---|
| 7. **How much is the claim?** | $ 245307.00 | **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Unpaid Health Claims on an ERISA Covered Plan |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $ _____<br><br>**Amount of the claim that is secured:** $ _____<br><br>**Amount of the claim that is unsecured:** $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $ _____<br><br>**Annual Interest Rate** (when case was filed) ____ %<br><br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410        Proof of Claim        page 2

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | |
| | | ☐ Yes. *Check all that apply:* | Amount entitled to priority |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies $ _____

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
**18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date _____8/15/2023_____
                    MM / DD / YYYY

/s/  Siamack Gharanfoli
_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Siamack Gharanfoli |
| | First name    Middle name    Last name |
| Title | Acting Deputy Regional Director |
| Company | U.S. Department of Labor–EBSA |
| | Identify the corporate servicer as the company if the authorized agent is a servicer |
| Address | 1835 Market St. 21st Fl, MailStop EBSA/21 |
| | Number   Street |
| | Philadelphia, PA 19103 |
| | City   State   ZIP Code |
| Contact phone | 202 693–8719 | Email | gharanfoli.siamack@dol.gov |

Official Form 410                     Proof of Claim                          page 3

29

Internal CM/ECF Live Database

# District of Delaware
# Claims Register

### 23-10787-JKS Alecto Healthcare Services LLC

| | |
|---|---|
| **Bankruptcy Judge:** J Kate Stickles | **Chapter:** 11 |
| **Office:** Delaware | **Last Date to file claims:** 08/15/2023 |
| **Trustee:** Jami B Nimeroff | **Last Date to file (Govt):** 12/13/2023 |

*Creditor:*  (18292821)
Uline
12575 Uline Dive
Pleasant Prairie, WI 53158

Amount claimed: $6115.93
Priority  claimed: $5605.05

**Claim No: 1**
*Original Filed Date:* 07/07/2023
*Original Entered Date:* 07/07/2023

*Status:* Withdraw <u>187</u>
*Filed by:* CR
*Entered by:* BJM
*Modified:*

*History:*

| Details | | | |
|---|---|---|---|
| <u>Details</u> | <u>1-1</u> | 07/07/2023 | Claim #1 filed by Uline, Amount claimed: $6115.93 (BJM) |
| | <u>187</u> | 10/20/2023 | Withdrawal of Claim Nos. 1 (Uline) (webclaimusr) Status: Withdraw |

*Description:* (1-1) Goods Sold
*Remarks:* (1-1) 3060

---

*Creditor:*  (18294303)
Ironshore Specialty Insurance Company
175 Berkeley Street
Boston, MA 02116

Amount claimed: $0.00

**Claim No: 2**
*Original Filed Date:* 07/19/2023
*Original Entered Date:* 07/19/2023

*Status:*
*Filed by:* CR
*Entered by:* EPOC Filer
*Modified:*

*History:*

| Details | | | |
|---|---|---|---|
| <u>Details</u> | <u>2-1</u> | 07/19/2023 | Claim #2 filed by Ironshore Specialty Insurance Company, Amount claimed: $0.00 (EPOC Filer) |

*Description:*
*Remarks:* (2-1) Account Number (last 4 digits):3301 Filer Comment: Contingent and unliquidated

---

*Creditor:*  (18471617)
Department of the Treasury
Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Amount claimed: $160551.00
Priority  claimed: $160551.00

**Claim No: 3**
*Original Filed Date:* 07/21/2023
*Original Entered Date:* 07/21/2023

*Status:*
*Filed by:* CR
*Entered by:* BJM
*Modified:*

*History:*

| Details | | | |
|---|---|---|---|
| <u>Details</u> | <u>3-1</u> | 07/21/2023 | Claim #3 filed by Department of the Treasury, Amount claimed: $160551.00 (BJM) |

*Description:*
*Remarks:*

---

*Creditor:*  (18472447)
Cardinal Health 110, LLC

**Claim No: 4**
*Original Filed Date:* 07/27/2023

*Status:*
*Filed by:* CR

*History:*

| Details | | | |
|---|---|---|---|
| <u>Details</u> | <u>4-1</u> | 07/27/2023 | Claim #4 filed by Cardinal Health 110, LLC, Amount claimed: $419842.62 (EPOC Filer) |

*Description:*
*Remarks:*

11/22/23, 1:46 PM                                    Internal CM/ECF Live Database

7000 Cardinal Place                    *Original Entered Date*: 07/27/2023          *Entered by*: EPOC Filer
Dublin, OH 43017                                                                    *Modified*:

  Amount claimed: $419842.62

*History:*

  Details       4-1   07/27/2023 Claim #4 filed by Cardinal Health 110, LLC, Amount claimed: $419842.62 (EPOC Filer)

*Description:*
*Remarks:*


*Creditor:*     (18472448)              **Claim No: 5**                            *Status:*
Cardinal Health 200, LLC               *Original Filed Date*: 07/27/2023           *Filed by*: CR
7000 Cardinal Place                    *Original Entered Date*: 07/27/2023          *Entered by*: EPOC Filer
Dublin, OH 43017                                                                    *Modified*:

  Amount claimed: $119695.80

*History:*

  Details       5-1   07/27/2023 Claim #5 filed by Cardinal Health 200, LLC, Amount claimed: $119695.80 (EPOC Filer)

*Description:*
*Remarks:*


*Creditor:*     (18473050)              **Claim No: 6**                            *Status:*
U.S. Department of Labor               *Original Filed Date*: 08/01/2023           *Filed by*: CR
Julie A. Su, U.S. Secretary of Labor   *Original Entered Date*: 08/01/2023          *Entered by*: BJM
EBSA - Attn: Padilla                                                               *Modified*:
35 N. Lake Ave., Suite 300
Pasadena, CA 91101
*No amounts claimed*

*History:*

  Details       6-1   08/01/2023 Claim #6 filed by U.S. Department of Labor, Amount claimed: (BJM)

*Description:* (6-1) No Claim Amount Listed
*Remarks:* (6-1) Possible Violations of ERISA/8324


*Creditor:*     (18473050)              **Claim No: 7**                            *Status:*
U.S. Department of Labor               *Original Filed Date*: 08/01/2023           *Filed by*: CR
Julie A. Su, U.S. Secretary of Labor   *Original Entered Date*: 08/01/2023          *Entered by*: BJM
EBSA - Attn: Padilla                                                               *Modified*:
35 N. Lake Ave., Suite 300
Pasadena, CA 91101
*No amounts claimed*

*History:*

  Details       7-1   08/01/2023 Claim #7 filed by U.S. Department of Labor, Amount claimed: (BJM)

*Description:* (7-1) No Claim Amount Listed
*Remarks:* (7-1) Possible Violations of ERISA/8325


*Creditor:*     (18245453)              **Claim No: 8**                            *Status:*
California Franchise Tax Board          *Original Filed Date*: 08/01/2023           *Filed by*: CR
Bankruptcy Section MS A-340             *Original Entered Date*: 08/01/2023          *Entered by*: EPOC Filer
PO Box 2952                                                                        *Modified*:
Sacramento, CA 95812-2952

  Amount claimed: $700.00
  Priority  claimed: $700.00

*History:*

  Details       8-1   08/01/2023 Claim #8 filed by California Franchise Tax Board, Amount claimed: $700.00 (EPOC Filer)

*Description:*
*Remarks:* (8-1) Account Number (last 4 digits):0349

*History:*

Details    8-1    08/01/2023 Claim #8 filed by California Franchise Tax Board, Amount claimed: $700.00 (EPOC Filer)

*Description:*

*Remarks:* (8-1) Account Number (last 4 digits):0349

---

| | | |
|---|---|---|
| *Creditor:*   (18513012) | **Claim No: 9** | *Status:* |
| MPT of Sherman-Alecto, LLC and affiliates | *Original Filed Date:* 08/12/2023 | *Filed by:* CR |
| Medical Properties Trust, Inc. | *Original Entered Date:* 08/12/2023 | *Entered by:* EPOC Filer |
| 425 Park Avenue, 36th Floor | | *Modified:* |
| New York, NY 10022 | | |

No amounts claimed

*History:*

Details    9-1    08/12/2023 Claim #9 filed by MPT of Sherman-Alecto, LLC and affiliates, Amount claimed: (EPOC Filer)

*Description:*

*Remarks:* (9-1) Filer Comment: Unliquidated (see attachment)

---

| | | |
|---|---|---|
| *Creditor:*   (18513020) | **Claim No: 10** | *Status:* |
| De Lage Landen Financial Services | *Original Filed Date:* 08/14/2023 | *Filed by:* CR |
| 1111 Old eagle School Road | *Original Entered Date:* 08/14/2023 | *Entered by:* EPOC Filer |
| Wayne, PA 19087 | | *Modified:* |

Amount claimed: $7313.70

*History:*

Details    10-1    08/14/2023 Claim #10 filed by De Lage Landen Financial Services, Amount claimed: $7313.70 (EPOC Filer)

*Description:*

*Remarks:* (10-1) Account Number (last 4 digits):8050

---

| | | |
|---|---|---|
| *Creditor:*   (18513049) | **Claim No: 11** | *Status:* |
| Pension Benefit Guaranty | *Original Filed Date:* 08/14/2023 | *Filed by:* CR |
| Corporation | *Original Entered Date:* 08/14/2023 | *Entered by:* Stephanie Thomas |
| | | *Modified:* |

Amount claimed: $1065047.00

*History:*

Details    11-1    08/14/2023 Claim #11 filed by Pension Benefit Guaranty Corporation, Amount claimed: $1065047.00 (Thomas, Stephanie)

*Description:* (11-1) Statutory Liability to the Alecto Healthcare Services Ohio Valley LLC Pension Pension Plan for unpaid minimum funding contributions under 26 U.S.C. §§ 412 and 430, 29 U.S.C. §§ 1082, 1342 and 1362(c). See attached statement.

*Remarks:*

---

| | | |
|---|---|---|
| *Creditor:*   (18513049) | **Claim No: 12** | *Status:* |
| Pension Benefit Guaranty | *Original Filed Date:* 08/14/2023 | *Filed by:* CR |
| Corporation | *Original Entered Date:* 08/14/2023 | *Entered by:* Stephanie Thomas |
| | | *Modified:* |

Amount claimed: $1845012.00

*History:*

Details    12-1    08/14/2023 Claim #12 filed by Pension Benefit Guaranty Corporation, Amount claimed: $1845012.00 (Thomas, Stephanie)

*Description:* (12-1) Statutory Liability under 29 U.S.C. § 1362 and 1368 for unfunded benefit liabilities of the Alecto Healthcare Services Ohio Valley LLC Pension Pension Plan. See attached statement.

*Remarks:*

11/22/23, 1:46 PM                                   Internal CM/ECF Live Database

| Creditor:         (18513049)<br>Pension Benefit Guaranty<br>Corporation | **Claim No: 13**<br>*Original Filed Date*: 08/14/2023<br>*Original Entered Date*: 08/14/2023 | *Status*:<br>*Filed by*: CR<br>*Entered by*: Stephanie Thomas<br>*Modified*: |
|---|---|---|

Amount claimed: $0.00

Priority  claimed: $0.00

*History*:

| Details | 13-1 | 08/14/2023 Claim #13 filed by Pension Benefit Guaranty Corporation, Amount claimed: $0.00 (Thomas, Stephanie) |

*Description:* (13-1) Statutory Liability under 29 U.S.C. § 1307 on account of the Alecto Healthcare Services Ohio Valley LLC Pension Plan. See attached statement.

*Remarks:* (13-1) Unliquidated priority and total amounts claimed

| Creditor:         (18513119)<br>Snyder Brothers, Inc.<br>c/o Ronald W. Crouch<br>Counsel of Record<br>Whiteford Taylor & Preston, LLP<br>11 Stanwix St., Suite 1400<br>Pittsburgh, PA 15222 | **Claim No: 14**<br>*Original Filed Date*: 08/14/2023<br>*Original Entered Date*: 08/14/2023 | *Status*:<br>*Filed by*: CR<br>*Entered by*: Richard W. Riley<br>*Modified*: |
|---|---|---|

Amount claimed: $173848.49

*History*:

| Details | 14-1 | 08/14/2023 Claim #14 filed by Snyder Brothers, Inc., Amount claimed: $173848.49 (Riley, Richard) |

*Description:* (14-1) Judgment entered against subsidiary for goods sold (Nautural Gas)

*Remarks:* (14-1) Fraudulent Transfer/Alter Ego - See Attached Consent Judgment and Statement

| Creditor:         (18513125)<br>LHP Hospital Group, Inc.<br>c/o Saul Ewing, LLP<br>Attn: Mark Minuti<br>1201 N. Market St., Suite 2300<br>Wilmington, DE 19801 | **Claim No: 15**<br>*Original Filed Date*: 08/14/2023<br>*Original Entered Date*: 08/14/2023 | *Status*:<br>*Filed by*: CR<br>*Entered by*: Eric J Taube<br>*Modified*: |
|---|---|---|

Amount claimed: $3739635.77

*History*:

| Details | 15-1 | 08/14/2023 Claim #15 filed by LHP Hospital Group, Inc., Amount claimed: $3739635.77 (Taube, Eric) |

*Description:*

*Remarks:*

| Creditor:         (18513146)<br>AIG Property Casualty, Inc.<br>Kevin J. Larner, Esq.<br>Authorized Representative<br>28 Liberty Street, Floor 22<br>New York, NY 10005 | **Claim No: 16**<br>*Original Filed Date*: 08/15/2023<br>*Original Entered Date*: 08/15/2023 | *Status*:<br>*Filed by*: CR<br>*Entered by*: Dana Burgagni<br>*Modified*: |
|---|---|---|

Amount claimed: $0.00

*History*:

| Details | 16-1 | 08/15/2023 Claim #16 filed by AIG Property Casualty, Inc., Amount claimed: $0.00 (Burgagni, Dana) |

*Description:* (16-1) Unliquidated

*Remarks:*

*Creditor:*        (18513192)                    **Claim No: 17**                        *Status:*
Health Carousel Travel Network, LLC              *Original Filed Date:* 08/15/2023        *Filed by:* CR
455 Delta Avenue                                 *Original Entered Date:* 08/15/2023      *Entered by:* EPOC Filer
Suite 108                                                                                 *Modified:*
Cincinnati, OH 45226

  Amount claimed: $93110.57

*History:*

Details    17-1    08/15/2023 Claim #17 filed by Health Carousel Travel Network, LLC, Amount claimed: $93110.57
                   (EPOC Filer)

*Description:*
*Remarks:*

---

*Creditor:*        (18513199)                    **Claim No: 18**                        *Status:*
Alecto Health Care Services Ohio Valley          *Original Filed Date:* 08/15/2023        *Filed by:* CR
LLC, HP                                           *Original Entered Date:* 08/15/2023      *Entered by:* EPOC Filer
Kamaljit Bains, EBSA Investigator                *Last Amendment Filed:* 08/23/2023       *Modified:* 08/23/2023
1835 Market Street                               *Last Amendment Entered:* 08/23/2023
21st Floor-Mailstop EBSA/21
Philadelphia, PA 19103

  Amount claimed: $245307.00

*History:*

Details    18-1    08/15/2023 Claim #18 filed by Alecto Health Care Services Ohio Valley LLC, HP, Amount claimed:
                   $245307.00 (EPOC Filer)

Details    18-2    08/23/2023 Amended Claim #18 filed by Alecto Health Care Services Ohio Valley LLC, HP, Amount
                   claimed: $245307.00 (EPOC Filer)

*Description:*
*Remarks:*

---

*Creditor:*        (18513225)                    **Claim No: 19**                        *Status:*
Reed Action Judgment Creditors                   *Original Filed Date:* 08/15/2023        *Filed by:* CR
Bren J. Pomponio                                 *Original Entered Date:* 08/15/2023      *Entered by:* EPOC Filer
1217 Quarrier Street                                                                      *Modified:*
Charleston, WV 25301

  Amount claimed: $3275382.64

*History:*

Details    19-1    08/15/2023 Claim #19 filed by Reed Action Judgment Creditors, Amount claimed: $3275382.64 (EPOC
                   Filer)

*Description:*
*Remarks:* (19-1) Filer Comment: See addendum

---

*Creditor:*        (18513245)                    **Claim No: 20**                        *Status:*
Michael Best & Friedrich LLP                     *Original Filed Date:* 08/15/2023        *Filed by:* CR
c/o Justin M. Mertz                              *Original Entered Date:* 08/15/2023      *Entered by:* EPOC Filer
790 N. Water St., Ste. 2500                                                               *Modified:*
Milwaukee, WI 53202

  Amount claimed: $53157.76

*History:*

Details    20-1    08/15/2023 Claim #20 filed by Michael Best & Friedrich LLP, Amount claimed: $53157.76 (EPOC Filer)

*Description:*
*Remarks:* (20-1) Account Number (last 4 digits):0995

## Claims Register Summary

Internal CM/ECF Live Database

**Case Name:** Alecto Healthcare Services LLC
**Case Number:** 23-10787-JKS
**Chapter:** 11
**Date Filed:** 06/16/2023
**Total Number Of Claims:** 20

| | |
|---|---|
| **Total Amount Claimed\*** | $11204720.28 |
| **Total Amount Allowed\*** | |

*\*Includes general unsecured claims*

**The values are reflective of the data entered. Always refer to claim documents for actual amounts.**

| | Claimed | Allowed |
|---|---|---|
| **Secured** | | |
| **Priority** | $166856.05 | |
| **Administrative** | | |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 11/22/2023 13:46:42 | | | |
| **PACER Login:** | MorrisJames1873 | **Client Code:** | 142859.0002 |
| **Description:** | Claims Register | **Search Criteria:** | 23-10787-JKS Filed or Entered From: 11/2/2022 Filed or Entered To: 1/2/2024 |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

30

**Payment Details Report**

**BANK OF AMERICA**

**Company:** Sherman Grayson Hospital LLC
**Requester:** Penland, Jennifer
**n Date:** 24-Feb-2022 9:14:42 AM CST

## Domestic High Value (Wire)
**Payment Category:** Urgent/Wire

**Status:** Processing By Bank
**Transaction Number:** 222O8182226O3812

### Debit Account Information

**Debit Bank:** 061000052
**Debit Account:** 003359811646
**Debit Account Name:** SHERMAN GRAYSON HOSPITAL LLC
PAYROLL
**Debit Currency:** USD

### Beneficiary Details

**Beneficiary Name:** LHP Hospital Group, Inc
**Beneficiary Address:** 2800 North Dallas Parkway, Ste 200
**Beneficiary City:** Plano, TX
**Beneficiary Postal Code:** 75093
**Beneficiary Country:** US - United States of America

**Beneficiary Account:** 488005768820
**Beneficiary Bank ID:** 111000025
BANK OF AMERICA, NA
6344 TELEPHONE RD
HOUSTON
US - United States of America
**Beneficiary Email:**
**Beneficiary Mobile Number:**

### Payment Details

**Credit Currency:** USD
**Credit Amount:** 625,000.00

**Value Date:** 24-Feb-2022

### Optional Information

**Sender's Reference Number:** LHP022422

**Beneficiary Information:**

### Additional Routing

**Intermediary Bank ID:**

**Receiver Information:**

### Control Information

**Input:** johnshillin
**Approved:** jennypenlan
**Initial Confirmation:** WTX:2022022400320401

**Input Time:** 24-Feb-2022 8:18:41 AM CST
**Time:** 24-Feb-2022 9:14:27 AM CST

31

Bank of America

# NON REPETITIVE WIRE FORM

DATE       05/03/2021

Account
Number    ██████████

State

Amount     311,996.91

Description    Altera Highland - Lease Payment

Wiring Instructions:

Bank Name    Wells Fargo

ABA #      121000248

Account #    ██████████

Description    Altera Highland - Lease Payment

Beneficiary    Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

LHP_0000001

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:** 04/21/2021
**Total Due** 311,996.91

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 05/01/2021 | Rent Ste 100A | 18,306.05 | | 18,306.05 |
| 05/01/2021 | Estimated CAM Ste 100A | 13,296.50 | | 31,602.55 |
| 05/01/2021 | Rent Ste 200 | 43,166.77 | | 74,769.32 |
| 05/01/2021 | Estimated CAM Ste 200 | 16,548.79 | | 91,318.11 |
| 05/01/2021 | Rent Ste 350 | 25,171.29 | | 116,489.40 |
| 05/01/2021 | Estimated CAM Ste 350 | 18,043.79 | | 134,533.19 |
| 05/01/2021 | Rent Ste 415 | 30,968.01 | | 165,501.20 |
| 05/01/2021 | Estimated CAM Ste 415 | 22,196.89 | | 187,698.09 |
| 05/01/2021 | Rent Ste 500 | 18,648.21 | | 206,346.30 |
| 05/01/2021 | Estimated CAM Ste 500 | 13,367.36 | | 219,713.66 |
| 05/01/2021 | 2020 CAM Reconciliation | 92,283.25 | | 311,996.91 |

ACH Payment Instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.



**AURUM**
PROPERTY PARTNERS

April 22, 2021

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**RE:  2020 Annual Operating Expense Reconciliation**
**Altera Highland, LLC**

Dear Physician and Fellow Tenant:

We have completed the 2020 annual operating expenses reconciliation. We have enclosed a reconciliation
invoice that pertains to your suite and lease agreement. The invoice provides a breakdown of the actual
operating expenses paid in 2020. The amount due for your suite is based upon your proportionate share of the
2020 operating expenses.

Your proportionate share of operating expenses for 2020 is as follows:

| | | |
|---|---|---|
| Your share | $ | 955,298.41 |
| Less charged | $ | 863,015.16 |
| Total due | $ | 92,283.25 |

Your new monthly estimate of operating costs, based upon budget, will begin on May 1, 2021 and will be as
follows:

2021 CAM Monthly Estimate      $      83,453.33

Please make checks payable to Altera Highland, LLC, Attn: Lockbox, P.O. Box 206147, Dallas TX, 75320

If you should have any questions, please contact us.

Sincerely,

*Property Management Team*

Altera Highland, LLC Property Management Team
Aurum Property Partners

LHP_0000003

**Altera Highland, LLC**
**2020 Operating Expense Recoveries**

| | |
|---|---|
| **Tenant Name:** | Sherman/Grayson Health System |
| **Suite #:** | 100A, 200, 350, 415, 500 |
| **Suite Sqft:** | 91,358 |
| **Lease From:** | 8/21/2012 |
| **Lease Expire:** | 8/31/2027 |
| **Tenant's Share %:** | 77.648% |
| **Occupancy:** | 100% |
| **Total Building Footage:** | 117,655 |

| **Operating Expenses** | **2020 Actuals** |
|---|---|
| Administrative | 103,486.84 |
| Utilities | 222,059.93 |
| Insurance | 34,031.93 |
| Janitorial | 44,295.96 |
| Management Fees | 140,788.96 |
| Property Taxes | 394,334.66 |
| Maintenance | 204,515.89 |
| Personnel | 16,248.99 |
| Security | 32,850.00 |
| Ground Lease | 37,680.48 |
| **Total** | **1,230,293.64** |
| **Total Per Square Foot** | **10.46** |
| Total 2020 CAM Expenses | **1,230,293.64** |
| Tenant Pro Rata share | 77.648% |
| Tenant's CAM Share | 955,298.41 |
| Tenant's CAM Billed | 863,015.16 |
| 2020 CAM Due / (Credit) | **92,283.25** |

## Frank Murphy

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Thursday, April 22, 2021 11:50 AM |
| **To:** | Frank Murphy |
| **Subject:** | FW: Tenant Statement – Sherman Grayson – Wilson Jones 300 N Highland Avenue |

Approval from Steve Hinkle.

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Thursday, April 22, 2021 11:28 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** RE: Tenant Statement - Sherman Grayson - Wilson Jones 300 N Highland Avenue

Approved.

Steve Hinkle
VP and Chief Compliance Officer
p 615.296.3378 c 615.268.3822
www.ardenthealth.com



**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Thursday, April 22, 2021 11:20 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: Tenant Statement - Sherman Grayson - Wilson Jones 300 N Highland Avenue

Here is an updated invoice for Altera (adding the CAM estimates). Please approve the payment of $311,996.91.

Thanks,
Glynda

**From:** David McDonald <dwm@aurumpropertypartners.com>
**Sent:** Thursday, April 22, 2021 10:01 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; Jennifer Penland <jenny.penland@wnj.org>
**Cc:** Ashley Lail <ashley@prestonbendre.com>
**Subject:** Tenant Statement - Sherman Grayson - Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

1

Dear Physician and Fellow Tenant:

We have completed the 2020 annual operating expenses reconciliation. Please see attached letter and support.

I have also attached a revised invoice for May, which includes the updated estimated CAM for your suites. Please review and submit payment via check or ACH transfer.

Feel free to contact me directly should you have any questions or need anything further.

Thanks,

*"We've expanded, please note our new suite number"*



**David McDonald**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.397.1038

aurumpropertypartners.com          dwm@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

2

LHP_0000006

32

Bank of America

# NON REPETITIVE WIRE FORM

DATE              1/4/2021

Account
Number            ██████████████

State

Amount            58,178.26

Description       Altera Highland - Lease Payment


Wiring Instructions:
Bank Name         Wells Fargo

ABA #             121000248

Account #         ████████████

Description       Altera Highland - Lease Payment

Beneficiary       Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

LHP_0000007

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 1008
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

| **Prepared For:** | | **Date:** | 12/17/2020 |
| | | **Total Due** | 58,178.26 |

Sherman/Grayson
300 N Highland Avenue
Sherman, TX 75092

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 01/01/2021 | Estimated CAM (01/2021) Ste 100A | 11,029.38 | 0.00 | 11,029.38 |
| 01/01/2021 | Rent (01/2021) Ste 100 A | 18,306.05 | 0.00 | 29,335.43 |
| 01/01/2021 | Rent (01/2021) Ste 200 | 43,166.77 | 0.00 | 72,502.20 |
| 01/01/2021 | Estimated CAM (01/2021) Ste 200 | 14,413.29 | 0.00 | 86,915.49 |
| 01/01/2021 | Estimated CAM (01/2021) Ste 350 | 15,643.19 | 0.00 | 102,558.68 |
| 01/01/2021 | Rent (01/2021) Ste 350 | 25,171.29 | 0.00 | 127,729.97 |
| 01/01/2021 | Estimated CAM (01/2021) Ste 415 | 19,243.15 | 0.00 | 146,973.12 |
| 01/01/2021 | Rent (01/2021) Ste 415 | 30,968.01 | 0.00 | 177,941.13 |
| 01/01/2021 | Estimated CAM (01/2021) Ste 500 | 11,588.92 | 0.00 | 189,530.05 |
| 01/01/2021 | Rent (01/2021) Ste 500 | 18,648.21 | 0.00 | 208,178.26 |
| | Prepaid Rent | (150,000.00) | 0.00 | 58,178.26 |

ACH Payment instructions

| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320. For billing questions, please call (561) 293-3070.

## Frank Murphy

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Friday, December 18, 2020 10:04 AM |
| **To:** | Frank Murphy |
| **Cc:** | Petra Pedine |
| **Subject:** | FW: Sherman / Grayson [IWOV-iManage.FID1882797] |
| **Attachments:** | Sherman_Grayson Wilson - Tenant Statements 01.2021 Consolidated.pdf |

Please put in the folder. This needs to be wired on Jan 4th, 2021.

Thanks,
Glynda

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Friday, December 18, 2020 9:56 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Fwd: Sherman / Grayson [IWOV-iManage.FID1882797]

Get Outlook for iOS

**From:** Ben Hathaway <bhathaway@rrsfirm.com>
**Sent:** Friday, December 18, 2020 9:53:16 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Cc:** Natalie Abbitt <nabbitt@rrsfirm.com>
**Subject:** FW: Sherman / Grayson [IWOV-iManage.FID1882797]

**SECURITY WARNING - External message.**

Fyi

**From:** Jeff Novel <jnovel@krcl.com>
**Sent:** Friday, December 18, 2020 9:44 AM
**To:** Ben Hathaway <bhathaway@rrsfirm.com>
**Cc:** Natalie Abbitt <nabbitt@rrsfirm.com>
**Subject:** RE: Sherman / Grayson [IWOV-iManage.FID1882797]

Ben,

Attached is the invoice for January rent. You will note that there is a $150,000 credit on the invoice. This relates to a couple payments that we were able to get from the tenant during the eviction process.

**JEFF NOVEL**
Managing Director of Administration

1



**Kane Russell Coleman Logan PC**
901 Main Street | Suite 5200 | Dallas, Texas 75202
**Tel** 214.777.4223 **Cell** 214.498.5086
**krcl.com | krclblogs.com**

This email and any attachments are confidential. If you received this email in error, please inform the sender and delete it. Thank you.

**From:** Jeff Novel
**Sent:** Thursday, December 10, 2020 9:11 AM
**To:** Ben Hathaway <bhathaway@rrsfirm.com>
**Cc:** Natalie Abbitt <nabbitt@rrsfirm.com>
**Subject:** RE: Sherman / Grayson [IWOV-iManage.FID1882797]

Ben,

Attached is the inventory of the equipment. Please let me know how you would like to proceed.

**JEFF NOVEL**
Managing Director of Administration



**Kane Russell Coleman Logan PC**
901 Main Street | Suite 5200 | Dallas, Texas 75202
**Tel** 214.777.4223 **Cell** 214.498.5086
**krcl.com | krclblogs.com**

This email and any attachments are confidential. If you received this email in error, please inform the sender and delete it. Thank you.

**From:** Ben Hathaway <bhathaway@rrsfirm.com>
**Sent:** Friday, December 4, 2020 10:31 AM
**To:** Jeff Novel <jnovel@krcl.com>
**Cc:** Natalie Abbitt <nabbitt@rrsfirm.com>
**Subject:** RE: Sherman / Grayson

Jeff—as we just discussed, the guarantor agrees that it makes sense for you to get an inventory of the equipment at issue. When you get that, please forward it to me.
Thanks. Ben

**From:** Jeff Novel <jnovel@krcl.com>
**Sent:** Thursday, December 3, 2020 4:28 PM
**To:** Ben Hathaway <bhathaway@rrsfirm.com>
**Subject:** Sherman / Grayson

Ben,

I wanted to follow-up on my voicemails regarding the imaging equipment at the hospital. Please give me a call to discuss the equipment when you are available.

**JEFF NOVEL**
Managing Director of Administration

2

**Kane Russell Coleman Logan PC**
901 Main Street | Suite 5200 | Dallas, Texas 75202
**Tel** 214.777.4223 **Cell** 214.498.5086
**krcl.com | krclblogs.com**

This email and any attachments are confidential. If you received this email in error, please inform the sender and delete it. Thank you.

3

LHP_0000011

33

Bank of America

# NON REPETITIVE WIRE FORM

DATE            3/1/2021

Account
Number          ████████████████

State

Amount          208,178.26

Description     Altera Highland - Lease Payment



Wiring Instructions:
Bank Name       Wells Fargo

ABA #           121000248

Account #       ███████████

Description     Altera Highland - Lease Payment

Beneficiary     Altera Highland LLC

Bene Address    

Bene City/ST    

Bene Zip        

Sequence Number 

Approved By:    

2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070


**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson
300 N Highland Avenue
Sherman, TX 75092

**Date:**        02/18/2021
**Total Due**    208,178.26

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 03/01/2021 | Estimated CAM Ste 100A | 11,029.38 | 0.00 | 11,029.38 |
| 03/01/2021 | Rent Ste 100 A | 18,306.05 | 0.00 | 29,335.43 |
| 03/01/2021 | Rent Ste 200 | 43,166.77 | 0.00 | 72,502.20 |
| 03/01/2021 | Estimated CAM Ste 200 | 14,413.29 | 0.00 | 86,915.49 |
| 03/01/2021 | Estimated CAM Ste 350 | 15,643.19 | 0.00 | 102,558.68 |
| 03/01/2021 | Rent Ste 350 | 25,171.29 | 0.00 | 127,729.97 |
| 03/01/2021 | Estimated CAM Ste 415 | 19,243.15 | 0.00 | 146,973.12 |
| 03/01/2021 | Rent Ste 415 | 30,968.01 | 0.00 | 177,941.13 |
| 03/01/2021 | Estimated CAM Ste 500 | 11,588.92 | 0.00 | 189,530.05 |
| 03/01/2021 | Rent Ste 500 | 18,648.21 | 0.00 | 208,178.26 |

ACH Payment instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320. For billing questions, please call (561) 293-3070.

LHP_0000013

## Frank Murphy

**From:** Glynda Mcdaniel
**Sent:** Friday, February 19, 2021 6:53 AM
**To:** Frank Murphy; Petra Pedine
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Approval below.

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Friday, February 19, 2021 6:51 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Approved

Get Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Friday, February 19, 2021 6:49:30 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Steve,
Please approve Altera rent payment ($208,178.26 due March 1, 2021).

Thanks,
Glynda

**From:** Marlynn Straghn <mls@aurumpropertypartners.com>
**Sent:** Friday, February 19, 2021 6:01 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

Please find your monthly statement attached.

Please review and submit payment via check or ACH transfer.

Feel free to contact me directly should you have any questions or need anything further.

1

Have a great day!

Sincerely,
Marlynn Straghn
Aurum Property Partners
319 Clematis Street, Suite 608 *please note our new Suite number*
West Palm Beach, Florida 33401
o: 561.293.3070  f: 561.855.3484
aurumpropertypartners.com
mls@aurumpropertypartners.com

2

34

Bank of America

# NON REPETITIVE WIRE FORM

DATE        04/01/2021

Account
Number     ████████████

State

Amount     208,178.26

Description    Altera Highland - Lease Payment

Wiring Instructions:

Bank Name    Wells Fargo

ABA #        121000248

Account #     ██████████

Description    Altera Highland - Lease Payment

Beneficiary    Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

LHP_0000016

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson
300 N Highland Avenue
Sherman, TX 75092

**Date:** 03/15/2021
**Total Due** 208,178.26

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 04/01/2021 | Estimated CAM Ste 100A | 11,029.38 | 0.00 | 11,029.38 |
| 04/01/2021 | Rent Ste 100 A | 18,306.05 | 0.00 | 29,335.43 |
| 04/01/2021 | Rent Ste 200 | 43,166.77 | 0.00 | 72,502.20 |
| 04/01/2021 | Estimated CAM Ste 200 | 14,413.29 | 0.00 | 86,915.49 |
| 04/01/2021 | Estimated CAM Ste 350 | 15,643.19 | 0.00 | 102,558.68 |
| 04/01/2021 | Rent Ste 350 | 25,171.29 | 0.00 | 127,729.97 |
| 04/01/2021 | Estimated CAM Ste 415 | 19,243.15 | 0.00 | 146,973.12 |
| 04/01/2021 | Rent Ste 415 | 30,968.01 | 0.00 | 177,941.13 |
| 04/01/2021 | Estimated CAM Ste 500 | 11,588.92 | 0.00 | 189,530.05 |
| 04/01/2021 | Rent Ste 500 | 18,648.21 | 0.00 | 208,178.26 |

ACH Payment Instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

## Frank Murphy

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Thursday, April 1, 2021 10:02 AM |
| **To:** | Frank Murphy |
| **Cc:** | Petra Pedine |
| **Subject:** | FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Thursday, April 1, 2021 10:01 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Approved.

Get Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Thursday, April 1, 2021 9:57:31 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Please approve Altera rent due today for $208,178.26.

Thanks,
Glynda

**From:** David McDonald <dwm@aurumpropertypartners.com>
**Sent:** Thursday, April 1, 2021 9:43 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Cc:** Marlynn Straghn <mls@aurumpropertypartners.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Hi Glynda,

Here's a copy of your rent statement due today 4/01/21.

Thanks,

*"We've expanded, please note our new suite number"*

1

LHP_0000018



**David McDonald**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.397.1038

aurumpropertypartners.com      dwm@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

---

**From:** David McDonald
**Sent:** Tuesday, March 16, 2021 9:47 AM
**To:** glynda.mcdaniel@ardenthealth.com
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Dear Physician and Fellow Tenant:

Please find your monthly statement attached. Please review and submit payment via check or ACH transfer.

Feel free to contact me directly should you have any questions or need anything further.

Thanks,

*"We've expanded, please note our new suite number"*



**David McDonald**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.397.1038

aurumpropertypartners.com      dwm@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

2

LHP_0000019

35

Bank of America

# NON REPETITIVE WIRE FORM

DATE                2/1/2021

Account
Number              ███████████████

State

Amount              208,178.26

Description         Altera Highland - Lease Payment


Wiring Instructions:
Bank Name           Wells Fargo

ABA #               121000248

Account #           ████████████

Description         Altera Highland - Lease Payment

Beneficiary         Altera Highland LLC

Bene Address        _____

Bene City/ST        _____

Bene Zip            _____

Sequence Number     _____

Approved By:        _____

2nd Approval:       _____

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 1008
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

| **Prepared For:** | | **Date:** | 01/19/2021 |
|---|---|---|---|
| Sherman/Grayson | | **Total Due** | 208,178.26 |
| 300 N Highland Avenue | | | |
| Sherman, TX 75092 | | | |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 02/01/2021 | Estimated CAM (02/2021) Ste 100A | 11,029.38 | 0.00 | 11,029.38 |
| 02/01/2021 | Rent (02/2021) Ste 100 A | 18,306.05 | 0.00 | 29,335.43 |
| 02/01/2021 | Rent (02/2021) Ste 200 | 43,166.77 | 0.00 | 72,502.20 |
| 02/01/2021 | Estimated CAM (02/2021) Ste 200 | 14,413.29 | 0.00 | 86,915.49 |
| 02/01/2021 | Estimated CAM (02/2021) Ste 350 | 15,643.19 | 0.00 | 102,558.68 |
| 02/01/2021 | Rent (02/2021) Ste 350 | 25,171.29 | 0.00 | 127,729.97 |
| 02/01/2021 | Estimated CAM (02/2021) Ste 415 | 19,243.15 | 0.00 | 146,973.12 |
| 02/01/2021 | Rent (02/2021) Ste 415 | 30,968.01 | 0.00 | 177,941.13 |
| 02/01/2021 | Estimated CAM (02/2021) Ste 500 | 11,588.92 | 0.00 | 189,530.05 |
| 02/01/2021 | Rent (02/2021) Ste 500 | 18,648.21 | 0.00 | 208,178.26 |

ACH Payment Instructions

| Bank Name: | WELLS FARGO |
|---|---|
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | ▓▓▓▓▓▓ |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320. For billing
questions, please call (561) 293-3070.

## Frank Murphy

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Friday, January 22, 2021 8:53 AM |
| **To:** | Treasury Ops |
| **Cc:** | Petra Pedine; Frank Murphy |
| **Subject:** | FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |
| **Attachments:** | Sherman_Grayson Wilson - Tenant Statements 02.2021 Consolidated.pdf |

Here is the Altera invoice that is due on 2/1/21.

Here is Hinkle's approval.

 Steve Hinkle

Re: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

To   Glynda Mcdaniel

Phish Alert V2

Approved

Get Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Friday, January 22, 2021 8:07:51 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Good morning,
Please approve the invoice to Altera for $208,178.26 due 2/1/21.

Thanks,
Glynda

**From:** Marlynn Straghn <mls@aurumpropertypartners.com>
**Sent:** Thursday, January 21, 2021 8:38 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Cc:** Vinny Hermanns <vgh@aurumpropertypartners.com>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**SECURITY WARNING - External message.**

Dear Physician and Fellow Tenant:

LHP_0000022

Please find your monthly statement attached.

Please review and submit payment via check or ACH transfer.

Feel free to contact me directly should you have any questions or need anything further.

Have a great day!

Sincerely,
Marlynn Straghn
Aurum Property Partners
319 Clematis Street, Suite 608 *please note our new Suite number*
West Palm Beach, Florida 33401
o: 561.293.3070  f: 561.855.3484
aurumpropertypartners.com
mls@aurumpropertypartners.com

2

LHP_0000023

36

Bank of America

# NON REPETITIVE WIRE FORM

DATE         06/01/2021

Account
Number     ███████████

State

Amount      219,713.66

Description    Altera Highland - Lease Payment

Wiring Instructions:
Bank Name     Wells Fargo

ABA #          121000248

Account #      ███████

Description    Altera Highland - Lease Payment

Beneficiary    Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:** 05/14/2021
**Total Due:** 219,713.66

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 06/01/2021 | Rent Ste 100A | 18,306.05 | | 18,306.05 |
| 06/01/2021 | Estimated CAM Ste 100A | 13,296.50 | | 31,602.55 |
| 06/01/2021 | Rent Ste 200 | 43,166.77 | | 74,769.32 |
| 06/01/2021 | Estimated CAM Ste 200 | 16,548.79 | | 91,318.11 |
| 06/01/2021 | Rent Ste 350 | 25,171.29 | | 116,489.40 |
| 06/01/2021 | Estimated CAM Ste 350 | 18,043.79 | | 134,533.19 |
| 06/01/2021 | Rent Ste 415 | 30,968.01 | | 165,501.20 |
| 06/01/2021 | Estimated CAM Ste 415 | 22,196.89 | | 187,698.09 |
| 06/01/2021 | Rent Ste 500 | 18,648.21 | | 206,346.30 |
| 06/01/2021 | Estimated CAM Ste 500 | 13,367.36 | | 219,713.66 |

ACH Payment instructions.

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

LHP_0000025

## Frank Murphy

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Tuesday, June 1, 2021 9:39 AM |
| **To:** | Frank Murphy |
| **Subject:** | FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Friday, May 14, 2021 3:08 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Cc:** Frank Murphy <Frank.Murphy@ardenthealth.com>
**Subject:** RE: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Approved.

Steve Hinkle
VP and Chief Compliance Officer
p 615.296.3378 c 615.268.3822
www.ardenthealth.com



**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Friday, May 14, 2021 3:07 PM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Cc:** Frank Murphy <Frank.Murphy@ardenthealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Hi Steve,
Please approve the attached Altera invoice due 6/1/21 for $219,713.66. Please note the CAM charges.

Thanks,
Glynda

**From:** David McDonald <dwm@aurumpropertypartners.com>
**Sent:** Friday, May 14, 2021 3:00 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; Jennifer Penland <jenny.penland@wnj.org>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

1

LHP_0000026

Dear Physician and Fellow Tenant:

Please find your monthly statement attached. Please review and submit payment via check or ACH transfer.

Feel free to contact me should you have any questions or need anything further.

Thanks,

*"We've expanded, please note our new suite number"*



**David McDonald**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.397.1038

aurumpropertypartners.com       dwm@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

2

LHP_0000027

37

Bank of America

# NON REPETITIVE WIRE FORM

DATE       07/01/2021

Account
Number      ███████████

State

Amount      219,713.66

Description      Altera Highland - Lease Payment


Wiring Instructions:

Bank Name      Wells Fargo

ABA #      121000248

Account #      ██████████

Description      Altera Highland - Lease Payment

Beneficiary      Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

LHP_0000028

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

| | | |
|---|---|---|
| **Prepared For:** | **Date:** | 06/14/2021 |
| Sherman/Grayson Health System | **Total Due:** | 219,713.66 |
| 300 N Highland Avenue | | |
| Sherman, TX 75092 | | |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 07/01/2021 | Rent Ste 100A | 18,306.05 | | 18,306.05 |
| 07/01/2021 | Estimated CAM Ste 100A | 13,296.50 | | 31,602.55 |
| 07/01/2021 | Rent Ste 200 | 43,166.77 | | 74,769.32 |
| 07/01/2021 | Estimated CAM Ste 200 | 16,548.79 | | 91,318.11 |
| 07/01/2021 | Rent Ste 350 | 25,171.29 | | 116,489.40 |
| 07/01/2021 | Estimated CAM Ste 350 | 18,043.79 | | 134,533.19 |
| 07/01/2021 | Rent Ste 415 | 30,968.01 | | 165,501.20 |
| 07/01/2021 | Estimated CAM Ste 415 | 22,196.89 | | 187,698.09 |
| 07/01/2021 | Rent Ste 500 | 18,648.21 | | 206,346.30 |
| 07/01/2021 | Estimated CAM Ste 500 | 13,367.36 | | 219,713.66 |

ACH Payment instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

## Frank Murphy

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Monday, June 14, 2021 10:33 AM |
| **To:** | Frank Murphy |
| **Subject:** | FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |

Steve's approval for the rent payment.

Thanks,
Glynda

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Monday, June 14, 2021 10:25 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Approved

Get Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Monday, June 14, 2021 10:23:03 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Hi Steve,
Please approve the attached Altera rent invoice for $219,713.66 due on July 1, 2021.

Thanks,
Glynda

**From:** David McDonald <dwm@aurumpropertypartners.com>
**Sent:** Monday, June 14, 2021 9:40 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; Jennifer Penland <jenny.penland@wnj.org>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

If you have any questions please let me know

1

Thanks,

*"We've expanded, please note our new suite number"*



**David McDonald**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070   c: 732.397.1038

aurumpropertypartners.com     dwm@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

2

LHP_0000031

38

Bank of America

# NON REPETITIVE WIRE FORM

DATE                08/02/2021

Account
Number           ███████████

State

Amount           219,713.66

Description      Altera Highland - Lease Payment


Wiring Instructions:

Bank Name     Wells Fargo

ABA #             121000248

Account #        ████████

Description      Altera Highland - Lease Payment

Beneficiary      Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070


AURUM
PROPERTY PARTNERS

**Prepared For:**

    Sherman/Grayson Health System
    300 N Highland Avenue
    Sherman, TX 75092

**Date:** 07/15/2021
**Total Due:** 219,713.66

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 08/01/2021 | Rent Ste 100A | 18,306.05 | | 18,306.05 |
| 08/01/2021 | Estimated CAM Ste 100A | 13,296.50 | | 31,602.55 |
| 08/01/2021 | Rent Ste 200 | 43,166.77 | | 74,769.32 |
| 08/01/2021 | Estimated CAM Ste 200 | 16,548.79 | | 91,318.11 |
| 08/01/2021 | Rent Ste 350 | 25,171.29 | | 116,489.40 |
| 08/01/2021 | Estimated CAM Ste 350 | 18,043.79 | | 134,533.19 |
| 08/01/2021 | Rent Ste 415 | 30,968.01 | | 165,501.20 |
| 08/01/2021 | Estimated CAM Ste 415 | 22,196.89 | | 187,698.09 |
| 08/01/2021 | Rent Ste 500 | 18,648.21 | | 206,346.30 |
| 08/01/2021 | Estimated CAM Ste 500 | 13,367.36 | | 219,713.66 |

ACH Payment Instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

## Frank Murphy

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Thursday, July 15, 2021 7:48 AM |
| **To:** | Frank Murphy |
| **Cc:** | Petra Pedine |
| **Subject:** | FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |
| **Attachments:** | 08.2021 Tenant Statement - Wilson - Sherman Grayson Consolidated.pdf |



Thu 7/15/2021 7:46 AM

Steve Hinkle

Re: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

to    Glynda Mcdaniel

ⓘ If there are problems with how this message is displayed, click here to view it in a web browser.

Phish Alert V2

Approved

Get Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
Sant, Thursday, July 15, 2021 7:30:54 AM

**From:** David McDonald <dwm@aurumpropertypartners.com>
**Sent:** Thursday, July 15, 2021 6:59 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; Jennifer Penland <jenny.penland@wnj.org>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

If you have any questions please let me know

Thanks,

*"We've expanded, please note our new suite number"*

1

LHP_0000034



**David McDonald**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.397.1038
aurumpropertypartners.com      dwm@aurumpropertypartners.com
West Palm Beach, FL | Middletown, NJ

2

LHP_0000035

39

Bank of America

# NON REPETITIVE WIRE FORM

DATE                09/01/2021

Account
Number          ███████████

State

Amount          226,526.68

Description     Altera Highland - Lease Payment


Wiring Instructions:
Bank Name       Wells Fargo

ABA #            121000248

Account #       ██████████

Description     Altera Highland - Lease Payment

Beneficiary     Altera Highland LLC

Bene Address    

Bene City/ST    

Bene Zip        

Sequence Number 

Approved By:    

2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070


**AURUM**
PROPERTY PARTNERS

**Prepared For:**
    Sherman/Grayson Health System
    300 N Highland Avenue
    Sherman, TX 75092

**Date:** 08/17/2021
**Total Due:** 226,526.68

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 09/01/2021 | Rent Ste 100A | 19,221.35 | | 19,221.35 |
| 09/01/2021 | Estimated CAM Ste 100A | 13,296.50 | | 32,517.85 |
| 09/01/2021 | Rent Ste 200 | 45,325.11 | | 77,842.96 |
| 09/01/2021 | Estimated CAM Ste 200 | 16,548.79 | | 94,391.75 |
| 09/01/2021 | Rent Ste 350 | 26,429.86 | | 120,821.61 |
| 09/01/2021 | Estimated CAM Ste 350 | 18,043.79 | | 138,865.40 |
| 09/01/2021 | Rent Ste 415 | 32,516.41 | | 171,381.81 |
| 09/01/2021 | Estimated CAM Ste 415 | 22,196.89 | | 193,578.70 |
| 09/01/2021 | Rent Ste 500 | 19,580.62 | | 213,159.32 |
| 09/01/2021 | Estimated CAM Ste 500 | 13,367.36 | | 226,526.68 |

ACH Payment Instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.



**AURUM**
PROPERTY PARTNERS

August 17, 2021

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

Re:     CPI Increase 09-2021
        300 N Highland Avenue
        Sherman, TX 75092

Dear Physician and Fellow Tenant:,

Your lease for the above captioned Premises calls for an Annual Rent Adjustment based on the Consumer Price Index for All Urban Consumers, U.S. City Average, All Items, as issued by the Bureau of Labor Statistics.

**Effective September 1, 2021, your new monthly rent amount will increase as indicated below.**
Please contact us should you have any questions or need anything further.

| | |
|---|---|
| CPI August 2012 | 230.379 |
| CPI July 2021 | 273.003 |
| Change | 42.624 |
| % Increase | 18.50% |
| % Increase - Actual with 3% minimum, Capped at 5% | 5% |

| Unit | Tenant | Current Base Rent | New Base Rent |
|---|---|---|---|
| 100A | Sherman/Grayson - Hosp Occupied Common Areas | 18,306.05 | 19,221.35 |
| 200 | Sherman/Grayson- ASC Kitty Richardson | 43,166.77 | 45,325.11 |
| 350 | Sherman/Grayson- Shell Kitty Richardson | 25,171.29 | 26,429.86 |
| 415 | Sherman/Grayson- Phys Suites Kitty Richardson | 30,968.01 | 32,516.41 |
| 500 | Sherman/Grayson- ASC Existing 4 & 5 | 18,648.21 | 19,580.62 |
| | Total | 136,260.34 | 143,073.35 |

With best regards,

*Property Management Team*

Aurum Property Partners
As agent for Altera Highland, LLC

## Frank Murphy

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Wednesday, August 18, 2021 9:51 AM |
| **To:** | Frank Murphy; Petra Pedine |
| **Subject:** | FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |
| **Attachments:** | 09.2021 Tenant Statement – Wilson - Sherman Grayson Consolidated.pdf; 09.2021 Sherman Grayson Hospital CPI Increase.pdf |

Due 9/1/21- here is the approval.

| Delete | Respond | Quick Steps | | Move |
|---|---|---|---|---|

Wed 8/18/2021 9:38 AM

Steve Hinkle

Fwd: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

To   Glynda Mcdaniel

Phish Alert V2

Approved.
Get Outlook for iOS

---

**From:** Ben Hathaway <bhathaway@rrsfirm.com>
**Sent:** Wednesday, August 18, 2021 9:34 AM
**To:** Steve Hinkle
**Cc:** Natalie Abbitt
**Subject:** RE: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

---

**From:** David McDonald <dwm@aurumpropertypartners.com>
**Sent:** Tuesday, August 17, 2021 4:34 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; Jennifer Penland <jenny.penland@wnj.org>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

Also, please note that this month includes the annual CPI increase.

If you have any questions please let me know

1

Thanks,

*"We've expanded, please note our new suite number"*



**David McDonald**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.397.1038

aurumpropertypartners.com          dwm@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

2

LHP_0000040

40

Bank of America

# NON REPETITIVE WIRE FORM

DATE                10/01/2021

Account
Number              ███████████████

State

Amount              226,526.68

Description         Altera Highland - Lease Payment


Wiring Instructions:
Bank Name           Wells Fargo

ABA #               121000248

Account #           █████████

Description         Sherman/Grayson Health System - Lease Payment

Beneficiary         Altera Highland LLC


Bene Address        _____

Bene City/ST        _____

Bene Zip            _____


Sequence Number     _____

Approved By:        _____


2nd Approval:       _____

LHP_0000041

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070


AURUM
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:** 09/14/2021
**Total Due:** 226,526.68

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 10/01/2021 | Rent Ste 100A | 19,221.35 | | 19,221.35 |
| 10/01/2021 | Estimated CAM Ste 100A | 13,296.50 | | 32,517.85 |
| 10/01/2021 | Rent Ste 200 | 45,325.11 | | 77,842.96 |
| 10/01/2021 | Estimated CAM Ste 200 | 16,548.79 | | 94,391.75 |
| 10/01/2021 | Rent Ste 350 | 26,429.86 | | 120,821.61 |
| 10/01/2021 | Estimated CAM Ste 350 | 18,043.79 | | 138,865.40 |
| 10/01/2021 | Rent Ste 415 | 32,516.41 | | 171,381.81 |
| 10/01/2021 | Estimated CAM Ste 415 | 22,196.89 | | 193,578.70 |
| 10/01/2021 | Rent Ste 500 | 19,580.62 | | 213,159.32 |
| 10/01/2021 | Estimated CAM Ste 500 | 13,367.36 | | 226,526.68 |

ACH Payment Instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

## Frank Murphy

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Tuesday, September 14, 2021 9:01 AM |
| **To:** | Frank Murphy |
| **Cc:** | Petra Pedine |
| **Subject:** | FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |

For support for the Altera rent.

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Tuesday, September 14, 2021 8:58 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Approved

Get Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Tuesday, September 14, 2021 8:49:44 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Steve,
Attached is the invoice for the Altera Rent due 10/1/21. Please approve payment of $226,526.68 via wire.

Thanks,
Glynda

**From:** David McDonald <dwm@aurumpropertypartners.com>
**Sent:** Tuesday, September 14, 2021 8:36 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; Jennifer Penland <jenny.penland@wnj.org>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

If you have any questions please let me know

Thanks,

LHP_0000043

*"We've expanded, please note our new suite number"*



**David McDonald**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070   c: 732.397.1038

aurumpropertypartners.com        dwm@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

2

LHP_0000044

41

Bank of America

# NON REPETITIVE WIRE FORM

DATE            10/16/2020

Account
Number        ████████████

State

Amount           801,415.09

Description      Altera Highland - Lease Payment


Wiring Instructions:
Bank Name     Wells Fargo

ABA #           121000248

Account #      ████████

Description      Altera Highland - Lease Payment

Beneficiary      Altera Highland LLC

Bene Address

Bene City/ST     Dallas, TX

Bene Zip

Sequence Number

Approved By:

2nd Approval:



Creating Value. *Building Experience.*

## WIRE/ACH Payment Information
### Altera Highland, LLC
### 5910 North Central Expressway, Suite 1360
### Dallas, TX 75206

Incoming Wire/ACH transfer routing instructions

Bank Name:                        WELLS FARGO

Bank Address:                     PO BOX 63020

                                  SAN FRANCISCO, CA 94163

Bank ABA/Routing#:                121000248

Beneficiary Account #:

Beneficiary Account Name:         Altera Highland LLC

LHP_0000046

## SECOND PARTIAL SETTLEMENT & RELEASE AGREEMENT
## AND PARTIAL ASSIGNMENT OF CLAIMS

This Second Partial Settlement & Release Agreement and Partial Assignment of Claims ("Agreement") is entered into as of the 15th day of October 2020 ("Effective Date") by and between **Altera Highland, LLC ("Altera")** and **LHP Hospital Group, Inc. ("LHP")**.

## I.  DEFINITIONS

1.      **"Lease Agreements"** means the series of five (5) corresponding lease agreements dated August 21, 2012 entered into by and between Altera, as Landlord, and **Sherman/Grayson Health System, LLC ("System")**, as Tenant, for real property and improvements located at 300 N. Highland Drive, Sherman, Texas; being the same Lease Agreements that were subsequently assigned by System to **Sherman/Grayson Hospital, LLC ("Hospital")** on October 31, 2014 and more fully described in *Plaintiff's Original Petition and Rule 194 Request for Disclosures* filed in *Altera Highland, LLC v Sherman/Grayson Hospital, LLC and LHP Hospital Group, Inc.*, Cause No. CV-20-1381 in the 59th District Court of Grayson County, Texas (**"the Suit"**).

2.      **"Guaranties"** as used herein means a series of five (5) guaranty agreements (one for each of the five (5) Lease Agreements) executed by LHP, specifically: (a) a certain Guaranty dated August 21, 2012 (**the "ASC Lease Guaranty"**), (b) a certain Guaranty dated August 21, 2012 (**the "Existing Physician Suite Lease Guaranty"**), (c) a certain Guaranty dated August 21, 2012 (**the "Existing Space Lease Guaranty"**), (d) a certain Guaranty dated August 21, 2012 (**the "Shell Lease Guaranty"**), and (e) a certain Guaranty dated August 21, 2012 (**the "OCC Lease Guaranty"**).

## II.   CONTRACTUAL RECITALS AND STATEMENT OF PURPOSE

3.      WHEREAS, Altera has filed the  Suit, alleging that Hospital has failed to pay rent under the Lease Agreements for the months of August 2020, September 2020, and October 2020 and further alleging that LHP has breached the Guaranties by failing to make required payments under the Guaranties; and

LHP_0000047

4.      WHEREAS, Altera asserts that Base Rent, Operating Expenses, and Operating Expense Reconciliations (all as defined in the Lease Agreements), as well as late charges and attorneys' fees are due and owing under the Lease Agreements for the months of August 2020, September 2020, and October 2020 in the total amount $801,415.09; and

5.      WHEREAS, this Agreement, and the execution hereof, does not constitute and is not intended to constitute an admission of any fault, contractual liability, or wrongdoing by or on behalf of LHP or Altera, all such claims having been expressly denied heretofore, and the parties continue to deny the same; and

6.      WHEREAS, all provisions of this Agreement are contractual in nature, and not mere recitals only; and

7.      WHEREAS, the purpose of this Agreement is to set forth and embody a negotiated compromise, partial settlement, and partial release, as set forth herein, relating to amounts due under the Lease Agreements and Guaranties for August, September, and October of 2020.

8.      NOW THEREFORE, in consideration of the mutual covenants and conditions herein contained, and the incorporation of the above Recitals, the parties hereto agree as follows:

## III. **CONSIDERATION**

9.      In consideration of the total sum of **$801,415.09 (Eight Hundred One Thousand Four Hundred Fifteen and 09/100 Dollars) ("the Settlement Sum")** from LHP, the receipt and sufficiency of which is hereby acknowledged by Altera, and in consideration of the mutual agreements, conditions, representations, warranties, recitals, covenants and statements of intention contained herein, Altera, for itself and on behalf of its affiliates, employees, directors, shareholders, members, officers, assigns, predecessors, successors, attorneys, representatives, and agents of such persons and/or entities (**"Altera Entities"**), hereby accepts the above-referenced payment as full payment for a partial settlement and full payment for a release of certain claims and assignment of other claims as further described below.

10.     LHP shall tender the Settlement Sum in the following manner: within two calendar days of the Effective Date of this Agreement, LHP shall wire transfer the total amount of the Settlement Sum to Altera in accordance with wiring instructions previously provided by Altera.

LHP_0000048

## IV.  RELEASE OF CERTAIN CLAIMS

Altera and LHP hereby covenant, agree, and consent to the following:

11.      Altera, for itself and on behalf of the Altera Entities, hereby fully and finally **RELEASES, ACQUITS, AND FOREVER DISCHARGES** LHP, as well as all of LHP's affiliates, employees, directors, shareholders, officers, assigns, predecessors, successors, attorneys, representatives, and agents of such persons and/or entities (**"LHP Entities"**) from any and all actual or potential claims held by Altera and/or the Altera Entities against LHP and/or the LHP Entities arising out of the alleged violations of the Lease Agreements by Hospital for the months of **August 2020, September 2020,** and **October 2020,** and any late fees, penalties and attorneys' fees associated therewith for those three months, including but not limited to the claim for $801,415.09 in damages (**the "Released Claims"**). Altera does not release any claims for alleged violations of the Lease Agreements or Guaranties which are not related to the months of August 2020, September 2020, or October 2020, and Altera expressly reserves and retains all other claims it has or may have under the Lease Agreements and Guaranties.

## V.  ASSIGNMENT OF CERTAIN CLAIMS

Altera and LHP hereby covenant, agree, and consent to the following:

12.      Altera hereby fully and finally **ASSIGNS, GRANTS, AND CONVEYS to** LHP any and all actual or potential claims for damages or other relief held by Altera and/or the Altera Entities against Hospital under the terms of the Lease Agreements, **but ONLY INSOFAR as** the claims arise out of the alleged violations of the Lease Agreements by Hospital for the months of **August 2020, September 2020,** and **October 2020,** and any late fees, penalties and attorneys' fees associated therewith for those three months, including but not limited to the claim for $801,415.09 in damages (**the "Assigned Claims"**). Altera expressly reserves and retains all other claims it has or may have against Hospital.

13.      Altera agrees to accommodate any reasonable request to execute any additional assignment or supplemental document that may be required to effectuate the assignment of the Assigned Claims described in this Agreement. LHP reserves the right to further assign the right to collect or pursue the Assigned Claims. LHP hereby retains and reserves any and all claims it has or may have against Hospital at law or in equity, by indemnification or otherwise.

## VI.   COSTS & ATTORNEYS' FEES

14.    Other than amounts included in the Settlement Sum, each party agrees to be solely responsible for the payment of its respective attorneys' fees, court costs, and all other expenses incurred on said party's behalf as a result of or in connection with the Released Claims, the Assigned Claims, and/or this Agreement.

## VII.   NO THIRD-PARTY BENEFICIARY

15.    No other person or entity is intended to benefit by or be deemed a third-party beneficiary of this Agreement.

## VIII.   EXPRESS DENIAL OF LIABILITIES

16.    Altera and LHP and/or their representatives understand and agree that no payment made or released pursuant to the terms of this Agreement, or other consideration given shall be intended to be, nor shall be construed to be, an admission of liability, and any and all such liability is expressly denied.

## IX.   SEVERABILITY

17.    If any one or more of the provisions of this Agreement, or the application of any such provision to any person, entity, or set of circumstances, shall be determined to be invalid, unlawful, or unenforceable to any extent at any time, the remainder of this Agreement, and the application of such provision to persons, entities, or circumstances other than those as to which it is determined to be invalid, unlawful, or unenforceable, shall not be affected, and shall continue to be enforceable to the fullest extent permitted by law. Any invalid, unlawful, or unenforceable provision hereof shall be reformed to the extent necessary to render it valid, lawful, and enforceable in a manner consistent with the intentions of the parties hereto regarding such provision.

## X.   EXECUTION AND EFFECTIVE DATE

18.    This Agreement may be signed in counterparts, and each counterpart shall constitute an original. The parties hereto have executed this Agreement on the dates set forth opposite their names, to be effective as of October 15, 2020.

LHP_0000050

**ALTERA HIGHLAND, LLC**

DocuSigned by:

*Terry Quinn*

30D02BDD9B334BF

By: Terry Quinn, its Manager

Date: 10/15/2020

**LHP HOSPITAL GROUP, INC.**

DocuSigned by:

A004D20D4D5845E

By: Stephen Petrovich , its EVP & General Counsel

Date: 10/15/2020

42

Bank of America

# NON REPETITIVE WIRE FORM

DATE                11/01/2021

Account
Number              ███████████████

State

Amount              226,526.68

Description         Altera Highland - Lease Payment


Wiring Instructions:
Bank Name           Wells Fargo

ABA #               121000248

Account #           ██████████

Description         Sherman/Grayson Health System - Lease Payment

Beneficiary         Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070


**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

| | |
|---|---|
| **Date:** | 10/14/2021 |
| **Total Due:** | 226,526.68 |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 11/01/2021 | Rent Ste 100A | 19,221.35 | | 19,221.35 |
| 11/01/2021 | Estimated CAM Ste 100A | 13,296.50 | | 32,517.85 |
| 11/01/2021 | Rent Ste 200 | 45,325.11 | | 77,842.96 |
| 11/01/2021 | Estimated CAM Ste 200 | 16,548.79 | | 94,391.75 |
| 11/01/2021 | Rent Ste 350 | 26,429.86 | | 120,821.61 |
| 11/01/2021 | Estimated CAM Ste 350 | 18,043.79 | | 138,865.40 |
| 11/01/2021 | Rent Ste 415 | 32,516.41 | | 171,381.81 |
| 11/01/2021 | Estimated CAM Ste 415 | 22,196.89 | | 193,578.70 |
| 11/01/2021 | Rent Ste 500 | 19,580.62 | | 213,159.32 |
| 11/01/2021 | Estimated CAM Ste 500 | 13,367.36 | | 226,526.68 |

ACH Payment instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

LHP_0000053

**Frank Murphy**

**From:** Glynda Mcdaniel
**Sent:** Thursday, October 14, 2021 8:35 AM
**To:** Frank Murphy; Petra Pedine
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Steve's approval.

Thanks,
Glynda

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Thursday, October 14, 2021 8:33 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Thursday, October 14, 2021 8:30:25 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Steve,
Please approve the Altera Lease invoice due on November 1, 2021 for $226,526.68.

Thanks,
Glynda

**From:** David McDonald <dwm@aurumpropertypartners.com>
**Sent:** Thursday, October 14, 2021 8:28 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; Jennifer Penland <jenny.penland@wnj.org>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

1

LHP_0000054

If you have any questions please let me know

Thanks,

*"We've expanded, please note our new suite number"*



**David McDonald**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.397.1038

aurumpropertypartners.com    dwm@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

2

43

Bank of America

# NON REPETITIVE WIRE FORM

DATE      11/2/2020

Account
Number      ███████████

State

Amount      208,178.26

Description      Altera Highland - Lease Payment


Wiring Instructions:
Bank Name      Wells Fargo

ABA #      121000248

Account #      █████████

Description      Altera Highland - Lease Payment

Beneficiary      Altera Highland LLC


Bene Address

Bene City/ST

Bene Zip


Sequence Number

Approved By:


2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 1008
West Palm Beach, FL 33401
(561) 293-3070


**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson
300 N Highland Avenue
Sherman, TX 75092

**Date:** 11/01/2020
**Total Due** 208,178.26

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 11/01/2020 | Estimated CAM (11/2020) Ste 100 A | 11,029.38 | 0.00 | 11,029.38 |
| 11/01/2020 | Rent (11/2020) Ste 100 A | 18,306.05 | 0.00 | 29,335.43 |
| 11/01/2020 | Rent (11/2020) Ste 200 | 43,166.77 | 0.00 | 72,502.20 |
| 11/01/2020 | Estimated CAM (11/2020) Ste 200 | 14,413.29 | 0.00 | 86,915.49 |
| 11/01/2020 | Estimated CAM (11/2020) Ste 350 | 15,643.19 | 0.00 | 102,558.68 |
| 11/01/2020 | Rent (11/2020) Ste 350 | 25,171.29 | 0.00 | 127,729.97 |
| 11/01/2020 | Estimated CAM (11/2020) Ste 415 | 19,243.15 | 0.00 | 146,973.12 |
| 11/01/2020 | Rent (11/2020) Ste 415 | 30,968.01 | 0.00 | 177,941.13 |
| 11/01/2020 | Estimated CAM (11/2020) Ste 500 | 11,588.92 | 0.00 | 189,530.05 |
| 11/01/2020 | Rent (11/2020) Ste 500 | 18,648.21 | 0.00 | 208,178.26 |

ACH Payment instructions:

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | ▮ |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320. For billing questions, please call (561) 293-3070.

**Petra Pedine**

| | |
|---|---|
| **From:** | Petra Pedine |
| **Sent:** | Wednesday, October 28, 2020 3:31 PM |
| **To:** | Doris Doney; Lory Waldron |
| **Cc:** | Glynda Mcdaniel; Frank Murphy |
| **Subject:** | FW: Altera v LHP v Sherman/Grayson/Aletco--Altera November invoice |
| **Attachments:** | Sherman_Grayson Wilson - Tenant Statements 11_2020 Consolidated.pdf |

Hey –

Would either of you know where we should code the Altera lease too?

Thanks,
Petra

*Petra Pedine*
Treasury Manager
Ardent Health Services
One Burton Hills Boulevard
Nashville, TN 37215
(615) 296-3222
petra.pedine2@ardenthealth.com
http://www.ardenthealth.com

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Thursday, October 22, 2020 3:47 PM
**To:** Petra Pedine <Petra.Pedine2@ardenthealth.com>; Frank Murphy <Frank.Murphy@ardenthealth.com>
**Subject:** FW: Altera v LHP v Sherman/Grayson/Aletco--Altera November invoice

Please schedule this for November 1st from LHP. We will be paying this monthly going forward.

Thanks,
Glynda

1

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Thursday, October 22, 2020 3:33 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Cc:** Ashley Crabtree <Ashley.Crabtree@ardenthealth.com>
**Subject:** FW: Altera v LHP v Sherman/Grayson/Aletco--Altera November invoice

Here is the invoice for November.

Steve Hinkle
VP and Chief Compliance Officer
p 615.296.3378 c 615.268.3822
www.ardenthealth.com



**From:** Ben Hathaway <bhathaway@rrsfirm.com>
**Sent:** Thursday, October 22, 2020 3:19 PM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Cc:** Natalie Abbitt <nabbitt@rrsfirm.com>
**Subject:** Altera v LHP v Sherman/Grayson/Aletco--Altera November invoice

**SECURITY WARNING - External message.**

Steve—per your request, here is the Altera invoice for November.

LHP_0000059

44

Bank of America

# NON REPETITIVE WIRE FORM

DATE       12/1/2020

Account
Number      ██████████

State

Amount      208,178.26

Description      Altera Highland - Lease Payment

Wiring Instructions:

Bank Name      Wells Fargo

ABA #      121000248

Account #      ████████

Description      Altera Highland - Lease Payment

Beneficiary      Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 1008
West Palm Beach, FL 33401
(561) 293-3070


AURUM
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson
300 N Highland Avenue
Sherman, TX 75092

| | |
|---|---|
| **Date:** | 12/01/2020 |
| **Total Due** | 208,178.26 |

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| | **Balance Forward** | | | 0.00 |
| 12/01/2020 | Estimated CAM (12/2020) Ste 100 A | 11,029.38 | 0.00 | 11,029.38 |
| 12/01/2020 | Rent (12/2020) Ste 100 A | 18,306.05 | 0.00 | 29,335.43 |
| 12/01/2020 | Rent (12/2020) Ste 200 | 43,166.77 | 0.00 | 72,502.20 |
| 12/01/2020 | Estimated CAM (122020) Ste 200 | 14,413.29 | 0.00 | 86,915.49 |
| 12/01/2020 | Estimated CAM (12/2020) Ste 350 | 15,643.19 | 0.00 | 102,558.68 |
| 12/01/2020 | Rent (12/2020) Ste 350 | 25,171.29 | 0.00 | 127,729.97 |
| 12/01/2020 | Estimated CAM  (12/2020) Ste 415 | 19,243.15 | 0.00 | 146,973.12 |
| 12/01/2020 | Rent (12/2020) Ste 415 | 30,968.01 | 0.00 | 177,941.13 |
| 12/01/2020 | Estimated CAM  (12/2020) Ste 500 | 11,588.92 | 0.00 | 189,530.05 |
| 12/01/2020 | Rent (12/2020) Ste 500 | 18,648.21 | 0.00 | 208,178.26 |

ACH Payment instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320. For billing questions, please call (561) 293-3070.

45

Bank of America

# NON REPETITIVE WIRE FORM

DATE              12/01/2021

Account
Number            ██████████████

State

Amount            226,526.68

Description       Altera Highland - Lease Payment


Wiring Instructions:
Bank Name         Wells Fargo

ABA #             121000248

Account #         ███████████

Description       Sherman/Grayson Health System - Lease Payment

Beneficiary       Altera Highland LLC


Bene Address      _____

Bene City/ST      _____

Bene Zip          _____


Sequence Number   _____

Approved By:      _____


2nd Approval:     _____

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070


**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:** 11/15/2021
**Total Due:** 226,526.68

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 12/01/2021 | Rent Ste 100A | 19,221.35 | | 19,221.35 |
| 12/01/2021 | Estimated CAM Ste 100A | 13,296.50 | | 32,517.85 |
| 12/01/2021 | Rent Ste 200 | 45,325.11 | | 77,842.96 |
| 12/01/2021 | Estimated CAM Ste 200 | 16,548.79 | | 94,391.75 |
| 12/01/2021 | Rent Ste 350 | 26,429.86 | | 120,821.61 |
| 12/01/2021 | Estimated CAM Ste 350 | 18,043.79 | | 138,865.40 |
| 12/01/2021 | Rent Ste 415 | 32,516.41 | | 171,381.81 |
| 12/01/2021 | Estimated CAM Ste 415 | 22,196.89 | | 193,578.70 |
| 12/01/2021 | Rent Ste 500 | 19,580.62 | | 213,159.32 |
| 12/01/2021 | Estimated CAM Ste 500 | 13,367.36 | | 226,526.68 |

ACH Payment Instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Monday, November 15, 2021 9:29 AM |
| **To:** | Frank Murphy |
| **Cc:** | Petra Pedine |
| **Subject:** | FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |
| **Attachments:** | 12.2021 Tenant Statement – Wilson - Sherman Grayson Consolidated.pdf |

Invoice due 12/1/21.

1



Mon 11/15/2021 9:26 AM

Steve Hinkle

**RE: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue**

To ☐ Glynda Mcdaniel

Phish Alert V2

Approved.

Steve Hinkle
VP and Chief Compliance Officer
p 615.296.3378 c 615.268.3822
www.ardenthealth.com



**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Monday, November 15, 2021 8:48 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Good morning Steve,
Please approve the payment for the Altera lease $226,526.68 due 12/1/21.

**From:** David McDonald <dwm@aurumpropertypartners.com>
**Sent:** Monday, November 15, 2021 8:21 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; Jennifer Penland <jenny.penland@wnj.org>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

LHP_0000065

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

If you have any questions please let me know

Thanks,

*"We've expanded, please note our new suite number"*



**David McDonald**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.397.1038

aurumpropertypartners.com     dwm@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

3

LHP_0000066

46

Bank of America

# NON REPETITIVE WIRE FORM

DATE            7/6/2020

Account
Number          ██████████████

State

Amount          633,881.96

Description     Altera Highland - Past Due Rent

_____

Wiring Instructions:
Bank Name       Wells Fargo

ABA #           121000248

Account #       ████████████

Description     Altera Highland - Past Due Rent

Beneficiary     Altera Highland LLC

Bene Address    _____

Bene City/ST    Dallas, TX

Bene Zip        _____

Sequence Number _____

Approved By:    _____

2nd Approval:   _____



Creating Value. *Building Experience.*

# WIRE/ACH Payment Information
## Altera Highland, LLC
### 5910 North Central Expressway, Suite 1360
### Dallas, TX 75206

Incoming Wire/ACH transfer routing instructions

Bank Name:                        WELLS FARGO

Bank Address:                     PO BOX 63020

                                  SAN FRANCISCO, CA 94163

Bank ABA/Routing#:                121000248

Beneficiary Account #:            ███████████

Beneficiary Account Name:         Altera Highland LLC

LHP_0000068

Outstanding as of 07.05.20

| Base Rent | Date | | |
|---|---|---|---|
| Suite 100A | 5/1/2020 | $17,772.86 |
| Suite 100A | 6/1/2020 | $17,772.86 |
| Suite 100A | 7/1/2020 | $17,773.86 |
| Suite 200 | 5/1/2020 | $41,909.49 |
| Suite 200 | 6/1/2020 | $41,909.49 |
| Suite 200 | 7/1/2020 | $41,909.49 |
| Suite 350 | 5/1/2020 | $24,438.15 |
| Suite 350 | 6/1/2020 | $24,438.15 |
| Suite 350 | 7/1/2020 | $24,438.15 |
| Suite 415 | 5/1/2020 | $30,066.03 |
| Suite 415 | 6/1/2020 | $30,066.03 |
| Suite 415 | 7/1/2020 | $30,066.03 |
| Suite 500 | 5/1/2020 | $18,105.06 |
| Suite 500 | 6/1/2020 | $18,105.06 |
| Suite 500 | 7/1/2020 | $18,105.06 |
| | | $396,875.77 |

| Operating expenses | | | |
|---|---|---|---|
| Suite 100A | 5/1/2020 | $11,029.38 |
| Suite 100A | 6/1/2020 | $11,029.38 |
| Suite 100A | 7/1/2020 | $11,029.38 |
| Suite 200 | 5/1/2020 | $14,413.29 |
| Suite 200 | 6/1/2020 | $14,413.29 |
| Suite 200 | 7/1/2020 | $14,413.29 |
| Suite 350 | 5/1/2020 | $15,643.19 |
| Suite 350 | 6/1/2020 | $15,643.19 |
| Suite 350 | 7/1/2020 | $15,643.19 |
| Suite 415 | 5/1/2020 | $19,243.15 |
| Suite 415 | 6/1/2020 | $19,243.15 |
| Suite 415 | 7/1/2020 | $19,243.15 |
| Suite 500 | 5/1/2020 | $11,588.92 |
| Suite 500 | 6/1/2020 | $11,588.92 |
| Suite 500 | 7/1/2020 | $11,588.92 |
| | | $215,753.79 |

| Late charges | | | |
|---|---|---|---|
| Suite 100A | 5/1/2020 | $430.75 |
| Suite 100A | 6/1/2020 | $430.75 |
| Suite 100A | 7/1/2020 | $430.75 |
| Suite 200 | 5/1/2020 | $747.91 |
| Suite 200 | 6/1/2020 | $747.91 |
| Suite 200 | 7/1/2020 | $747.91 |
| Suite 350 | 5/1/2020 | $560.74 |

| | | | |
|---|---|---|---|
| Suite 350 | 6/1/2020 | $560.74 | |
| Suite 350 | 7/1/2020 | $560.74 | |
| Suite 415 | 5/1/2020 | $667.09 | |
| Suite 415 | 6/1/2020 | $667.09 | |
| Suite 415 | 7/1/2020 | $667.09 | |
| Suite 500 | 4/1/2020 | $250.00 | Short payment of $250.00 |
| Suite 500 | 5/1/2020 | $441.04 | |
| Suite 500 | 6/1/2020 | $441.04 | |
| Suite 500 | 7/1/2020 | $441.04 | |
| | | $8,792.59 | |

| | |
|---|---|
| Courtesy discount on late charges | $4,396.29 |
| Late Charge Balance | $4,396.30 |
| Attorneys' Fees and Costs | $16,856.10 |
| **Outstanding Balance** | **$633,881.96** |

**Petra Pedine**

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Monday, July 06, 2020 2:57 PM |
| **To:** | Petra Pedine |
| **Cc:** | Steve Hinkle; Ashley Crabtree; Dave Courtney; David Byers |
| **Subject:** | FW: rent arrearage. |
| **Attachments:** | Revised Copy of Copy of WNJ Past Due 07.05.20 (002) (002).xlsx |

**Importance:** High

Petra,

Steve Hinkle has approved the wire for $633,881.96 to Altera Highland (I sent the wiring instructions earlier). Please prepare a wire for today.

Thanks,
Glynda

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Monday, July 6, 2020 1:58 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** rent arrearage.

Altera Highland LLC.  This can be a check. Note the changed amount.

Steve Hinkle
VP and Chief Compliance Officer
p 615.296.3378 c 615.268.3822
www.ardenthealth.com



1

LHP_0000071

47

Bank of America

# NON REPETITIVE WIRE FORM

DATE                 01/03/2022

Account
Number               ████████████

State

Amount               226,526.68

Description          Altera Highland - Lease Payment


Wiring Instructions:
Bank Name            Wells Fargo

ABA #                121000248

Account #            ████████

Description          Sherman/Grayson Health System - Lease Payment

Beneficiary          Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

| **Prepared For:** | | | | **Date:** | 12/14/2021 |
| | Sherman/Grayson Health System | | | **Total Due:** | 226,526.68 |
| | 300 N Highland Avenue | | | | |
| | Sherman, TX 75092 | | | | |

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 1/01/2022 | Rent Ste 100A | 19,221.35 | | 19,221.35 |
| 1/01/2022 | Estimated CAM Ste 100A | 13,296.50 | | 32,517.85 |
| 1/01/2022 | Rent Ste 200 | 45,325.11 | | 77,842.96 |
| 1/01/2022 | Estimated CAM Ste 200 | 16,548.79 | | 94,391.75 |
| 1/01/2022 | Rent Ste 350 | 26,429.86 | | 120,821.61 |
| 1/01/2022 | Estimated CAM Ste 350 | 18,043.79 | | 138,865.40 |
| 1/01/2022 | Rent Ste 415 | 32,516.41 | | 171,381.81 |
| 1/01/2022 | Estimated CAM Ste 415 | 22,196.89 | | 193,578.70 |
| 1/01/2022 | Rent Ste 500 | 19,580.62 | | 213,159.32 |
| 1/01/2022 | Estimated CAM Ste 500 | 13,367.36 | | 226,526.68 |

ACH Payment instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Tuesday, December 14, 2021 9:30 AM |
| **To:** | Frank Murphy |
| **Cc:** | Petra Pedine |
| **Subject:** | FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |

Forwarding invoice separately.

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Tuesday, December 14, 2021 8:51 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** RE: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

approved

Steve Hinkle
VP and Chief Compliance Officer
p 615.296.3378 c 615.268.3822
www.ardenthealth.com



**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Tuesday, December 14, 2021 8:48 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Steve,
Please see attached and approve the Jan rent invoice for Altera $226,526.68.

Thanks,
Glynda

**From:** David McDonald <dwm@aurumpropertypartners.com>
**Sent:** Tuesday, December 14, 2021 8:26 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; Jennifer Penland <jenny.penland@wnj.org>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

LHP_0000074

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

If you have any questions please let me know

Thanks,

*"We've expanded, please note our new suite number"*



**David McDonald**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.397.1038

aurumpropertypartners.com       dwm@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

2

LHP_0000075

48

Bank of America

# NON REPETITIVE WIRE FORM

DATE                02/01/2022

Account
Number              ███████████

State

Amount              226,526.68

Description         Altera Highland - Lease Payment


Wiring Instructions:
Bank Name           Wells Fargo

ABA #               121000248

Account #           ████████

Description         Sherman/Grayson Health System - Lease Payment

Beneficiary         Altera Highland LLC


Bene Address

Bene City/ST

Bene Zip


Sequence Number

Approved By:


2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:** 01/25/2022
**Total Due:** 226,526.68

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 2/01/2022 | Rent Ste 100A | 19,221.35 | | 19,221.35 |
| 2/01/2022 | Estimated CAM Ste 100A | 13,296.50 | | 32,517.85 |
| 2/01/2022 | Rent Ste 200 | 45,325.11 | | 77,842.96 |
| 2/01/2022 | Estimated CAM Ste 200 | 16,548.79 | | 94,391.75 |
| 2/01/2022 | Rent Ste 350 | 26,429.86 | | 120,821.61 |
| 2/01/2022 | Estimated CAM Ste 350 | 18,043.79 | | 138,865.40 |
| 2/01/2022 | Rent Ste 415 | 32,516.41 | | 171,381.81 |
| 2/01/2022 | Estimated CAM Ste 415 | 22,196.89 | | 193,578.70 |
| 2/01/2022 | Rent Ste 500 | 19,580.62 | | 213,159.32 |
| 2/01/2022 | Estimated CAM Ste 500 | 13,367.36 | | 226,526.68 |

ACH Payment Instructions:

| | |
|---|---|
| Bank Name | WELLS FARGO |
| Bank Address | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Tuesday, January 25, 2022 9:42 AM |
| **To:** | Frank Murphy |
| **Cc:** | Petra Pedine |
| **Subject:** | FW: 02.2022 Wilson Jones Statement |

Altera Rent approval.

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Tuesday, January 25, 2022 9:41 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: 02.2022 Wilson Jones Statement

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Tuesday, January 25, 2022 9:40:16 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: 02.2022 Wilson Jones Statement

Good morning Steve,
Please approve the Altera rent due 2/1/22 for $226,526.68.

Thanks,
Glynda

**From:** Andria Santos <avs@aurumpropertypartners.com>
**Sent:** Tuesday, January 25, 2022 9:23 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; jenny.penland@wnj.org
**Subject:** 02.2022 Wilson Jones Statement

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Hello,

Please see the attached Tenant statement for February 2022.

Thank you,

1



**Andria Santos**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.831.0833
aurumpropertypartners.com    **avs**@aurumpropertypartners.com
West Palm Beach, FL | Middletown, NJ

2

LHP_0000079

49

Bank of America

# NON REPETITIVE WIRE FORM

DATE    03/01/2022

Account
Number   ██████████

State

Amount    226,526.68

Description   Altera Highland - Lease Payment


Wiring Instructions:
Bank Name  Wells Fargo

ABA #    121000248

Account #   ████████

Description   Sherman/Grayson Health System - Lease Payment

Beneficiary   Altera Highland LLC


Bene Address  

Bene City/ST  

Bene Zip   


Sequence Number 

Approved By:  


2nd Approval:  

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:** 03/01/2022
**Total Due:** 226,526.68

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 3/01/2022 | Rent Ste 100A | 19,221.35 | | 19,221.35 |
| 3/01/2022 | Estimated CAM Ste 100A | 13,296.50 | | 32,517.85 |
| 3/01/2022 | Rent Ste 200 | 45,325.11 | | 77,842.96 |
| 3/01/2022 | Estimated CAM Ste 200 | 16,548.79 | | 94,391.75 |
| 3/01/2022 | Rent Ste 350 | 26,429.86 | | 120,821.61 |
| 3/01/2022 | Estimated CAM Ste 350 | 18,043.79 | | 138,865.40 |
| 3/01/2022 | Rent Ste 415 | 32,516.41 | | 171,381.81 |
| 3/01/2022 | Estimated CAM Ste 415 | 22,196.89 | | 193,578.70 |
| 3/01/2022 | Rent Ste 500 | 19,580.62 | | 213,159.32 |
| 3/01/2022 | Estimated CAM Ste 500 | 13,367.36 | | 226,526.68 |

ACH Payment Instructions:

| | |
|---|---|
| Bank Name | WELLS FARGO |
| Bank Address | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Tuesday, March 1, 2022 9:28 AM |
| **To:** | Frank Murphy |
| **Cc:** | Petra Pedine |
| **Subject:** | FW: 02.2022 Wilson Jones Statement |

Approval.

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Tuesday, March 1, 2022 9:27 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: 02.2022 Wilson Jones Statement

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Tuesday, March 1, 2022 9:26:34 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: 02.2022 Wilson Jones Statement

Please approve the March 1st rent ($226,526.68) for Altera.

Thanks,
Glynda

**From:** Andria Santos <avs@aurumpropertypartners.com>
**Sent:** Tuesday, March 1, 2022 9:25 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: 02.2022 Wilson Jones Statement

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Hello,

Please see the attached.

1

**Andria Santos**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.831.0833
aurumpropertypartners.com   **avs**@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

---

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Tuesday, March 1, 2022 9:52 AM
**To:** Andria Santos <avs@aurumpropertypartners.com>
**Subject:** FW: 02.2022 Wilson Jones Statement

Good morning,
We have not received the invoice due on March 1st. Could you please forward ASAP?

Thanks,
Glynda

---

**From:** Glynda Mcdaniel
**Sent:** Tuesday, January 25, 2022 9:40 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: 02.2022 Wilson Jones Statement

Good morning Steve,
Please approve the Altera rent due 2/1/22 for $226,526.68.

Thanks,
Glynda

---

**From:** Andria Santos <avs@aurumpropertypartners.com>
**Sent:** Tuesday, January 25, 2022 9:23 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; jenny.penland@wnj.org
**Subject:** 02.2022 Wilson Jones Statement

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Hello,

Please see the attached Tenant statement for February 2022.

Thank you,

**Andria Santos**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608

2

West Palm Beach, Florida 33401
o: 561.293.3070   c: 732.831.0833

aurumpropertypartners.com      avs@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

DISCLAIMER: This communication, along with any documents, files or attachments, is intended only for the use of the addressee and may contain legally privileged and confidential information. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of any information contained in or attached to this communication is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy the original communication and its attachments without reading, printing or saving in any manner. Please consider the environment before printing this e-mail.

3

50

Bank of America

# NON REPETITIVE WIRE FORM

DATE                04/01/2022

Account
Number        ████████████████

State

Amount        226,526.68

Description   Altera Highland - Lease Payment


Wiring Instructions:
Bank Name    Wells Fargo

ABA #          121000248

Account #     ████████████

Description   Sherman/Grayson Health System - Lease Payment

Beneficiary   Altera Highland LLC


Bene Address

Bene City/ST

Bene Zip


Sequence Number

Approved By:


2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**
    Sherman/Grayson Health System
    300 N Highland Avenue
    Sherman, TX 75092

**Date:** 03/28/2021
**Total Due:** 226,526.68

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 4/01/2022 | Rent Ste 100A | 19,221.35 | | 19,221.35 |
| 4/01/2022 | Estimated CAM Ste 100A | 13,296.50 | | 32,517.85 |
| 4/01/2022 | Rent Ste 200 | 45,325.11 | | 77,842.96 |
| 4/01/2022 | Estimated CAM Ste 200 | 16,548.79 | | 94,391.75 |
| 4/01/2022 | Rent Ste 350 | 26,429.86 | | 120,821.61 |
| 4/01/2022 | Estimated CAM Ste 350 | 18,043.79 | | 138,865.40 |
| 4/01/2022 | Rent Ste 415 | 32,516.41 | | 171,381.81 |
| 4/01/2022 | Estimated CAM Ste 415 | 22,196.89 | | 193,578.70 |
| 4/01/2022 | Rent Ste 500 | 19,580.62 | | 213,159.32 |
| 4/01/2022 | Estimated CAM Ste 500 | 13,367.36 | | 226,526.68 |

ACH Payment Instructions:

| | |
|---|---|
| Bank Name | WELLS FARGO |
| Bank Address | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Monday, March 28, 2022 12:58 PM |
| **To:** | Frank Murphy |
| **Cc:** | Petra Pedine |
| **Subject:** | FW: 04.2022 Tenant Statement |

Here is the approval for the rent payment.

Thanks,
Glynda

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Monday, March 28, 2022 12:56 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: 04.2022 Tenant Statement

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
 Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Monday, March 28, 2022 12:51:28 PM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: 04.2022 Tenant Statement

Steve,
Please approve the attached invoice for the Altera lease rent due on April 1st ($226,526.68).

Thanks,
Glynda

**From:** Andria Santos <avs@aurumpropertypartners.com>
**Sent:** Monday, March 28, 2022 12:47 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; jenny.penland@wnj.org
**Subject:** 04.2022 Tenant Statement

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Hello,

Please see the attached April 2022 Tenant statement.

Thank you,

1



**Andria Santos**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.831.0833

aurumpropertypartners.com    **avs**@aurumpropertypartners.com
West Palm Beach, FL | Middletown, NJ

2

LHP_0000088

51

Bank of America

# NON REPETITIVE WIRE FORM

DATE             05/02/2022

Account
Number          ████████████

State

Amount          226,526.68

Description     Altera Highland - Lease Payment


Wiring Instructions:
Bank Name       Wells Fargo

ABA #           121000248

Account #       ████████

Description     Sherman/Grayson Health System - Lease Payment

Beneficiary     Altera Highland LLC


Bene Address    _____

Bene City/ST    _____

Bene Zip        _____


Sequence Number  _____

Approved By:    _____


2nd Approval:   _____

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:** 04/29/2022
**Total Due:** 226,526.68

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 5/01/2022 | Rent Ste 100A | 19,221.35 | | 19,221.35 |
| 5/01/2022 | Estimated CAM Ste 100A | 13,296.50 | | 32,517.85 |
| 5/01/2022 | Rent Ste 200 | 45,325.11 | | 77,842.96 |
| 5/01/2022 | Estimated CAM Ste 200 | 16,548.79 | | 94,391.75 |
| 5/01/2022 | Rent Ste 350 | 26,429.86 | | 120,821.61 |
| 5/01/2022 | Estimated CAM Ste 350 | 18,043.79 | | 138,865.40 |
| 5/01/2022 | Rent Ste 415 | 32,516.41 | | 171,381.81 |
| 5/01/2022 | Estimated CAM Ste 415 | 22,196.89 | | 193,578.70 |
| 5/01/2022 | Rent Ste 500 | 19,580.62 | | 213,159.32 |
| 5/01/2022 | Estimated CAM Ste 500 | 13,367.36 | | 226,526.68 |

ACH Payment Instructions:

| | |
|---|---|
| Bank Name | WELLS FARGO |
| Bank Address | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

| | |
|---|---|
| **From:** | Steve Hinkle |
| **Sent:** | Monday, May 2, 2022 9:14 AM |
| **To:** | Glynda Mcdaniel |
| **Cc:** | Frank Murphy; Petra Pedine |
| **Subject:** | Re: 05.22 Wilson Jones Tenant Statement |

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Monday, May 2, 2022 9:11:45 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Cc:** Frank Murphy <Frank.Murphy@ardenthealth.com>; Petra Pedine <Petra.Pedine2@ardenthealth.com>
**Subject:** FW: 05.22 Wilson Jones Tenant Statement

Good morning Steve,
Please approve the May rent for Altera for $226,526.68.

Thanks,
Glynda

**From:** Andria Santos <avs@aurumpropertypartners.com>
**Sent:** Friday, April 29, 2022 8:09 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; jenny.penland@wnj.org
**Subject:** 05.22 Wilson Jones Tenant Statement

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Hello,

Please see the attached May 2022 rent statement.

Thank you,



**Andria Santos**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.831.0833
aurumpropertypartners.com  **avs@**aurumpropertypartners.com

1

West Palm Beach, FL | Middletown, NJ

LHP_0000092

52

Bank of America

# NON REPETITIVE WIRE FORM

DATE        06/01/2022

Account
Number     ███████████

State

Amount      225,416.35

Description    Altera Highland - Lease Payment

Wiring Instructions:

Bank Name    Wells Fargo

ABA #        121000248

Account #     ██████████

Description    Sherman/Grayson Health System - Lease Payment

Beneficiary    Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

LHP_0000093

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**
    Sherman/Grayson Health System
    300 N Highland Avenue
    Sherman, TX 75092

**Date:** 05/31/2022
**Total Due:** 225,416.35

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 6/01/2022 | Rent Ste 100A | 19,221.35 | | 19,221.35 |
| 6/01/2022 | Estimated CAM Ste 100A | 12,174.00 | | 31,395.35 |
| 6/01/2022 | Rent Ste 200 | 45,325.11 | | 76,720.46 |
| 6/01/2022 | Estimated CAM Ste 200 | 16,569.00 | | 93,289.46 |
| 6/01/2022 | Rent Ste 350 | 26,429.86 | | 119,719.32 |
| 6/01/2022 | Estimated CAM Ste 350 | 18,040.00 | | 137,759.32 |
| 6/01/2022 | Rent Ste 415 | 32,516.41 | | 170,275.73 |
| 6/01/2022 | Estimated CAM Ste 415 | 22,195.00 | | 192,470.73 |
| 6/01/2022 | Rent Ste 500 | 19,580.62 | | 212,051.35 |
| 6/01/2022 | Estimated CAM Ste 500 | 13,365.00 | | 225,416.35 |

ACH Payment Instructions:

| | |
|---|---|
| Bank Name | WELLS FARGO |
| Bank Address | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

---

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Wednesday, June 1, 2022 8:17 AM |
| **To:** | Frank Murphy |
| **Cc:** | Petra Pedine |
| **Subject:** | FW: 05.22 Wilson Jones Tenant Statement |

Approval.

---

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Wednesday, June 1, 2022 8:13 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: 05.22 Wilson Jones Tenant Statement

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
Outlook for iOS

---

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Wednesday, June 1, 2022 8:10:50 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: 05.22 Wilson Jones Tenant Statement

Steve,
Please approve the attached $225,416.35 invoice for the Altera Rent.

Thanks,
Glynda

---

**From:** Andria Santos <avs@aurumpropertypartners.com>
**Sent:** Wednesday, June 1, 2022 8:05 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: 05.22 Wilson Jones Tenant Statement

---

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Hello Glynda,

Please see the attached Tenant statement for June.

Thank you,

*"We've expanded, please note our new suite number"*

1



**Andria Santos**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.861.0833

aurumpropertypartners.com    avs@aurumpropertypartners.com

West Palm Beach, FL. | Middletown, NJ

---

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Tuesday, May 31, 2022 11:50 AM
**To:** Andria Santos <avs@aurumpropertypartners.com>
**Subject:** FW: 05.22 Wilson Jones Tenant Statement

Good morning,
Do you have the June invoice ready? We were receiving these mid-month which gave us plenty of time to get them approved. Not receiving until the last day is cutting it pretty tight for us.

Thanks,

Glynda McDaniel
Director, Treasury Operations
p 615.296.3308 | f 615.296.6308



---

**From:** Andria Santos <avs@aurumpropertypartners.com>
**Sent:** Friday, April 29, 2022 8:09 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; jenny.penland@wnj.org
**Subject:** 05.22 Wilson Jones Tenant Statement

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Hello,

Please see the attached May 2022 rent statement.

Thank you,

LHP_0000096



**Andria Santos**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.831.0833

aurumpropertypartners.com     **avs**@aurumpropertypartners.com
West Palm Beach, FL | Middletown, NJ

DISCLAIMER: This communication, along with any documents, files or attachments, is intended only for the use of the addressee and may contain legally privileged and confidential information. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of any information contained in or attached to this communication is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy the original communication and its attachments without reading, printing or saving in any manner. Please consider the environment before printing this e-mail.

3

53

Bank of America

# NON REPETITIVE WIRE FORM

DATE            07/01/2022

Account
Number          ████████████████

State

Amount          225,416.35

Description     Altera Highland - Lease Payment


Wiring Instructions:
Bank Name       Wells Fargo

ABA #            121000248

Account #       ██████████

Description     Sherman/Grayson Health System - Lease Payment

Beneficiary     Altera Highland LLC


Bene Address

Bene City/ST

Bene Zip


Sequence Number

Approved By:


2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:**         06/28/2022
**Total Due:**    225,416.35

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 7/01/2022 | Rent Ste 100A | 19,221.35 | | 19,221.35 |
| 7/01/2022 | Estimated CAM Ste 100A | 12,174.00 | | 31,395.35 |
| 7/01/2022 | Rent Ste 200 | 45,325.11 | | 76,720.46 |
| 7/01/2022 | Estimated CAM Ste 200 | 16,569.00 | | 93,289.46 |
| 7/01/2022 | Rent Ste 350 | 26,429.86 | | 119,719.32 |
| 7/01/2022 | Estimated CAM Ste 350 | 18,040.00 | | 137,759.32 |
| 7/01/2022 | Rent Ste 415 | 32,516.41 | | 170,275.73 |
| 7/01/2022 | Estimated CAM Ste 415 | 22,195.00 | | 192,470.73 |
| 7/01/2022 | Rent Ste 500 | 19,580.62 | | 212,051.35 |
| 7/01/2022 | Estimated CAM Ste 500 | 13,365.00 | | 225,416.35 |

ACH Payment Instructions:

| | |
|---|---|
| Bank Name | WELLS FARGO |
| Bank Address | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Tuesday, June 28, 2022 1:14 PM |
| **To:** | Frank Murphy |
| **Cc:** | Petra Pedine |
| **Subject:** | FW: 07.2022 Tenant Statement |

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Tuesday, June 28, 2022 11:55 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: 07.2022 Tenant Statement

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Tuesday, June 28, 2022 11:50:04 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: 07.2022 Tenant Statement

Steve,
Please approve the attached Altera rent payment for July ($225,416.35).

Thanks,
Glynda

**From:** Andria Santos <avs@aurumpropertypartners.com>
**Sent:** Tuesday, June 28, 2022 11:45 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** 07.2022 Tenant Statement

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Hello,

Please see your July 2022 Tenant Statement.

Thanks,

*"We've expanded, please note our new suite number"*

1

**Andria Santos**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070 c: 732.861.0833

aurumpropertypartners.com avs@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

54

Bank of America

# NON REPETITIVE WIRE FORM

DATE      09/01/2022

Account
Number      ███████████

State

Amount      232,570.02

Description      Altera Highland - Lease Payment

Wiring Instructions:

Bank Name      Wells Fargo

ABA #      121000248

Account #      ██████████

Description      Sherman/Grayson Health System - Lease Payment

Beneficiary      Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070


**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:** 08/29/2022
**Total Due:** 232,570.02

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 9/01/2022 | Rent Ste 100A | 20,182.42 | | 20,182.42 |
| 9/01/2022 | Estimated CAM Ste 100A | 12,174.00 | | 32,356.42 |
| 9/01/2022 | Rent Ste 200 | 47,591.37 | | 79,947.79 |
| 9/01/2022 | Estimated CAM Ste 200 | 16,569.00 | | 96,516.79 |
| 9/01/2022 | Rent Ste 350 | 27,751.35 | | 124,268.14 |
| 9/01/2022 | Estimated CAM Ste 350 | 18,040.00 | | 142,308.14 |
| 9/01/2022 | Rent Ste 415 | 34,142.23 | | 176,450.37 |
| 9/01/2022 | Estimated CAM Ste 415 | 22,195.00 | | 219,205.02 |
| 9/01/2022 | Rent Ste 500 | 20,559.65 | | 232,570.02 |
| 9/01/2022 | Estimated CAM Ste 500 | 13,365.00 | | |

ACH Payment Instructions:

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Monday, August 29, 2022 1:14 PM |
| **To:** | Frank Murphy |
| **Cc:** | Petra Pedine |
| **Subject:** | FW: 09.2022 Rent Statement |

Please put with the wire for Altera for approval.

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Monday, August 29, 2022 11:54 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Cc:** Steve Petrovich <Stephen.Petrovich@ardenthealth.com>
**Subject:** Re: 09.2022 Rent Statement

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Monday, August 29, 2022 4:40:45 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Cc:** Steve Petrovich <Stephen.Petrovich@ardenthealth.com>
**Subject:** FW: 09.2022 Rent Statement

Good morning Steve,
Please approve the attached Altera rent invoice for $232,570.02.

Copying Petro since Hinkle is on PTO.

Thanks,
Glynda

**From:** Andria Santos <avs@aurumpropertypartners.com>
**Sent:** Monday, August 29, 2022 8:56 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** 09.2022 Rent Statement

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Hello,

Please see the attached September 2022 Rent statement.

LHP_0000104

Thanks,

*"We've expanded, please note our new suite number"*



**Andria Santos**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.861.0833

aurumpropertypartners.com    avs@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

2

LHP_0000105



August 22, 2022

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

Re:     CPI Increase 09-2021
        300 N Highland Avenue
        Sherman, TX 75092

Dear Physician and Fellow Tenant:,

Your lease for the above captioned Premises calls for an Annual Rent Adjustment based on the Consumer Price Index for All Urban Consumers, U.S. City Average, All Items, as issued by the Bureau of Labor Statistics.

**Effective September 1, 2022, your new monthly rent amount will increase as indicated below.**
Please contact us should you have any questions or need anything further.

| | |
|---|---|
| CPI August 2012 | 230.379 |
| CPI July 2022 | 296.276 |
| Change | 65.897 |
| % Increase | 28.60% |
| % Increase - Actual with 3% minimum, Capped at 5% | 5% |

| Unit | Tenant | Current Base Rent | New Base Rent |
|---|---|---|---|
| 100A | Sherman/Grayson - Hosp Occupied Common Areas | 19,221.35 | 20,182.42 |
| 200 | Sherman/Grayson- ASC Kitty Richardson | 45,325.11 | 47,591.37 |
| 350 | Sherman/Grayson- Shell Kitty Richardson | 26,429.86 | 27,751.35 |
| 415 | Sherman/Grayson- Phys Suites Kitty Richardson | 32,516.41 | 34,142.23 |
| 500 | Sherman/Grayson- ASC Existing 4 & 5 | 19,580.62 | 20,559.65 |
| | Total | 143,073.35 | 150,227.02 |

With best regards,

*Property Management Team*

Aurum Property Partners
As agent for Altera Highland, LLC

**Frank Murphy**

---

**From:** Glynda Mcdaniel
**Sent:** Monday, August 22, 2022 4:48 PM
**To:** Frank Murphy
**Cc:** Petra Pedine
**Subject:** FW: 09.2022 Rent Increase letter

His approval for the increase.

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Monday, August 22, 2022 4:10 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** RE: 09.2022 Rent Increase letter

Yes, this is approved.

Steve Hinkle
VP and Chief Compliance Officer
p 615.296.3378 c 615.268.3822
www.ardenthealth.com



**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Monday, August 22, 2022 9:03 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: 09.2022 Rent Increase letter

Please see attached letter. Please let me know if you are ok with the changes.

**From:** Andria Santos <avs@aurumpropertypartners.com>
**Sent:** Monday, August 22, 2022 8:55 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** 09.2022 Rent Increase letter

---

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

---

Hello,

Please see the attached rent increase letter. Let me know if you have any questions.

Thanks,

1

*"We've expanded, please note our new suite number"*



**Andria Santos**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.861.0833

aurumpropertypartners.com    avs@aurumpropertypartners.com

West Palm Beach, FL. | Middletown, NJ

2

LHP_0000108

55

Bank of America

# NON REPETITIVE WIRE FORM

DATE       10/03/2022

Account
Number     ██████████

State

Amount     232,570.02

Description     Altera Highland - Lease Payment


Wiring Instructions:

Bank Name     Wells Fargo

ABA #     121000248

Account #     ███████

Description     Sherman/Grayson Health System - Lease Payment

Beneficiary     Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070


AURUM
PROPERTY PARTNERS

**Prepared For:**

    Sherman/Grayson Health System
    300 N Highland Avenue
    Sherman, TX 75092

**Date:**     09/29/2022
**Total Due:**     232,570.02

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 10/01/2022 | Rent Ste 100A | 20,182.42 | | 20,182.42 |
| 10/01/2022 | Estimated CAM Ste 100A | 12,174.00 | | 32,356.42 |
| 10/01/2022 | Rent Ste 200 | 47,591.37 | | 79,947.79 |
| 10/01/2022 | Estimated CAM Ste 200 | 16,569.00 | | 96,516.79 |
| 10/01/2022 | Rent Ste 350 | 27,751.35 | | 124,268.14 |
| 10/01/2022 | Estimated CAM Ste 350 | 18,040.00 | | 142,308.14 |
| 10/01/2022 | Rent Ste 415 | 34,142.23 | | 176,450.37 |
| 10/01/2022 | Estimated CAM Ste 415 | 22,195.00 | | 219,205.02 |
| 10/01/2022 | Rent Ste 500 | 20,559.65 | | 232,570.02 |
| 10/01/2022 | Estimated CAM Ste 500 | 13,365.00 | | |

ACH Payment instructions:

| | |
|---|---|
| Bank Name | WELLS FARGO |
| Bank Address | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

**From:**     Glynda Mcdaniel
**Sent:**     Thursday, September 29, 2022 1:41 PM
**To:**     Frank Murphy
**Cc:**     Petra Pedine
**Subject:**     FW: 09.2022 Rent Statement

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Thursday, September 29, 2022 1:41 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** RE: 09.2022 Rent Statement

Approved.

Steve Hinkle
VP and Chief Compliance Officer
p 615.296.3378 c 615.268.3822
www.ardenthealth.com



**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Thursday, September 29, 2022 1:39 PM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: 09.2022 Rent Statement

Hi Steve,
Please approve the October rent for Altera ($232,570.02).

Thanks,
Glynda

**From:** Andria Santos <avs@aurumpropertypartners.com>
**Sent:** Thursday, September 29, 2022 1:36 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: 09.2022 Rent Statement

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Hi Glynda,

1

LHP_0000111

Please see the attached tenant statement for October 2022.

Thanks,

*"We've expanded, please note our new suite number"*



**Andria Santos**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.861.0833

aurumpropertypartners.com    avs@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

---

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Thursday, September 29, 2022 2:21 PM
**To:** Andria Santos <avs@aurumpropertypartners.com>
**Subject:** RE: 09.2022 Rent Statement

Good afternoon Andria,
Do you have the October rent statement? I don't believe we have received it.

Thanks,

Glynda McDaniel
Director, Treasury Operations
p 615.296.3308 | f 615.296.6308



---

**From:** Andria Santos <avs@aurumpropertypartners.com>
**Sent:** Monday, August 29, 2022 8:56 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** 09.2022 Rent Statement

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Hello,

LHP_0000112

Please see the attached September 2022 Rent statement.

Thanks,

*"We've expanded, please note our new suite number"*



**Andria Santos**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070   c: 732.861.0833

aurumpropertypartners.com     avs@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

DISCLAIMER: This communication, along with any documents, files or attachments, is intended only for the use of the addressee and may contain legally privileged and confidential information. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copying of any information contained in or attached to this communication is strictly prohibited. If you have received this message in error, please notify the sender immediately and destroy the original communication and its attachments without reading, printing or saving in any manner. Please consider the environment before printing this e-mail.

3

56

Bank of America

# NON REPETITIVE WIRE FORM

DATE       11/01/2022

Account
Number    ███████████

State

Amount     232,570.02

Description    Altera Highland - Lease Payment

Wiring Instructions:
Bank Name    Wells Fargo

ABA #       121000248

Account #    ██████████

Description    Sherman/Grayson Health System - Lease Payment

Beneficiary    Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070


AURUM
PROPERTY PARTNERS

**Prepared For:**
    Sherman/Grayson Health System
    300 N Highland Avenue
    Sherman, TX 75092

**Date:**     10/20/2022
**Total Due:**     232,570.02

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 11/01/2022 | Rent Ste 100A | 20,182.42 | | 20,182.42 |
| 11/01/2022 | Estimated CAM Ste 100A | 12,174.00 | | 32,356.42 |
| 11/01/2022 | Rent Ste 200 | 47,591.37 | | 79,947.79 |
| 11/01/2022 | Estimated CAM Ste 200 | 16,569.00 | | 96,516.79 |
| 11/01/2022 | Rent Ste 350 | 27,751.35 | | 124,268.14 |
| 11/01/2022 | Estimated CAM Ste 350 | 18,040.00 | | 142,308.14 |
| 11/01/2022 | Rent Ste 415 | 34,142.23 | | 176,450.37 |
| 11/01/2022 | Estimated CAM Ste 415 | 22,195.00 | | 198,645.37 |
| 11/01/2022 | Rent Ste 500 | 20,559.65 | | 219,205.02 |
| 11/01/2022 | Estimated CAM Ste 500 | 13,365.00 | | 232,570.02 |

ACH Payment instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

**From:** Glynda Mcdaniel
**Sent:** Tuesday, November 1, 2022 10:41 AM
**To:** Frank Murphy
**Subject:** FW: 11.2022 Tenant Statement - Wilson - Sherman Grayson Consolidated

Here you go.

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Tuesday, November 1, 2022 10:40 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** RE: 11.2022 Tenant Statement - Wilson - Sherman Grayson Consolidated

Approved.

Steve Hinkle
VP and Chief Compliance Officer
p 615.296.3378 c 615.268.3822
www.ardenthealth.com



**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Tuesday, November 1, 2022 10:37 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: 11.2022 Tenant Statement - Wilson - Sherman Grayson Consolidated

Good morning Steve,
Please approve the Altera rent payment for $232,570.02.

Thanks,
Glynda

**From:** Jayson DeSimone <jcd@aurumpropertypartners.com>
**Sent:** Tuesday, November 1, 2022 10:26 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; jenny.penland@wnj.org
**Cc:** Andria Santos <avs@aurumpropertypartners.com>
**Subject:** 11.2022 Tenant Statement - Wilson - Sherman Grayson Consolidated

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

LHP_0000116

Hello,

Please see the attached Consolidated Sherman Grayson Tenant Statement for 11.2022.

Thank you,

*"We've expanded, please note our new suite number"*



**Jayson DeSimone**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 561.542.6138

aurumpropertypartners.com     jcd@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

2

57

Bank of America

# NON REPETITIVE WIRE FORM

DATE              08/01/2022

Account
Number            ████████████████

State

Amount            236,107.08

Description       Altera Highland - Lease Payment


Wiring Instructions:
Bank Name         Wells Fargo

ABA #             121000248

Account #         ███████████

Description       Sherman/Grayson Health System - Lease Payment

Beneficiary       Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

LHP_0000118

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:** 07/20/2022
**Total Due:** 225,416.35

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 08/01/2022 | Rent Ste 100A | 19,221.35 | | 19,221.35 |
| 08/01/2022 | Estimated CAM Ste 100A | 12,174.00 | | 31,395.35 |
| 08/01/2022 | Rent Ste 200 | 45,325.11 | | 76,720.46 |
| 08/01/2022 | Estimated CAM Ste 200 | 16,569.00 | | 93,289.46 |
| 08/01/2022 | Rent Ste 350 | 26,429.86 | | 119,719.32 |
| 08/01/2022 | Estimated CAM Ste 350 | 18,040.00 | | 137,759.32 |
| 08/01/2022 | Rent Ste 415 | 32,516.41 | | 170,275.73 |
| 08/01/2022 | Estimated CAM Ste 415 | 22,195.00 | | 192,470.73 |
| 08/01/2022 | Rent Ste 500 | 19,580.62 | | 212,051.35 |
| 08/01/2022 | Estimated CAM Ste 500 | 13,365.00 | | 225,416.35 |

ACH Payment Instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.



**AURUM**
PROPERTY PARTNERS

July 7, 2022

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**RE: 2021 Annual Operating Expense Reconciliation**
    **Altera Highland, LLC**

Dear Physician and Fellow Tenant:

We have completed the 2021 annual operating expenses reconciliation. We have enclosed a reconciliation invoice that pertains to your suite and lease agreement. The invoice provides a breakdown of the actual operating expenses paid in 2021. The amount due for your suite is based upon your proportionate share of the 2021 operating expenses.

Your proportionate share of operating expenses for 2021 is as follows:

| | | |
|---|---|---|
| Your share | $ | 965,989.09 |
| Less charged | $ | 955,298.36 |
| Total due | $ | 10,690.73 |

Please make checks payable to Altera Highland, LLC, Attn: Lockbox, P.O. Box 206147, Dallas TX, 75320

If you should have any questions, please contact us.

Sincerely,

*Property Management Team*

Altera Highland, LLC Property Management Team
Aurum Property Partners

Investments | Operations | Consulting | Brokerage
319 Clematis Street, Suite 608 | West Palm Beach, Florida 33401
p: 561.293.3070 | f: 561.855.3484
aurumpropertypartners.com

LHP_0000120

**Altera Highland, LLC**
**2021 Operating Expense Recoveries**

| | |
|---|---|
| **Tenant Name:** | Sherman/Grayson Health System |
| **Suite #:** | 100A, 200, 350, 415, 500 |
| **Suite Sqft:** | 90,321 |
| **Lease From:** | 8/21/2012 |
| **Lease Expire:** | 8/31/2027 |
| **Tenant's Share %:** | 77.648% |
| **Occupancy:** | 100% |
| **Total Building Footage:** | 117,655 |

| Operating Expenses | 2021 Actuals |
|---|---|
| Administrative | 81,906.20 |
| Utilities | 190,138.94 |
| Insurance | 37,744.08 |
| Janitorial | 44,295.96 |
| Management Fees | 160,530.12 |
| Property Taxes | 383,146.50 |
| Maintenance | 260,707.03 |
| Security | 47,912.46 |
| Ground Lease | 37,680.48 |
| **Total** | **1,244,061.77** |

| | |
|---|---|
| Total 2021 CAM Expenses | **1,244,061.77** |
| Tenant Pro Rata share | 77.648% |
| Tenant's CAM Share | 965,989.09 |
| Tenant's CAM Billed | 955,298.36 |
| 2021 CAM Due / (Credit) | **10,690.73** |

LHP_0000121

**Frank Murphy**

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Thursday, July 28, 2022 10:57 AM |
| **To:** | Frank Murphy |
| **Cc:** | Petra Pedine |
| **Subject:** | FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |

Approval.

I believe there was a bill earlier this month for the annual CAM true-up. Did I forward the approval to you? If so, you can just pay them together.

Thanks,
Glynda

---

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Thursday, July 28, 2022 9:56 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** RE: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Approved.

Steve Hinkle
VP and Chief Compliance Officer
p 615.296.3378 c 615.268.3822
www.ardenthealth.com



---

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Thursday, July 28, 2022 9:56 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Steve,
Please approve the August rent ($225,416.35).

Thanks,
Glynda

---

**From:** David McDonald <dwm@aurumpropertypartners.com>
**Sent:** Wednesday, July 20, 2022 7:42 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; Jennifer Penland <jenny.penland@wnj.org>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

LHP_0000122

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

If you have any questions please let me know

Thanks,

*"We've expanded, please note our new suite number"*



**David McDonald**
Director of Accounting

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 732.397.1038

aurumpropertypartners.com    dwm@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

LHP_0000123

**Frank Murphy**

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Thursday, July 28, 2022 12:23 PM |
| **To:** | Frank Murphy |
| **Cc:** | Petra Pedine |
| **Subject:** | FW: Tenant Statement and Annual Reconciliation - 300 N Highland Avenue, Sherman, TX 75092 |

This needs to be paid on the 1st with the Altera rent.

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Thursday, July 7, 2022 4:06 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: Tenant Statement and Annual Reconciliation - 300 N Highland Avenue, Sherman, TX 75092

Ok to pay.

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Thursday, July 7, 2022 2:49:05 PM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: Tenant Statement and Annual Reconciliation - 300 N Highland Avenue, Sherman, TX 75092

Steve,
See attached Altera CAM adjustment invoice. If you agree with the calculation of $10,690.73, please approve and we will get it paid.

Thanks,
Glynda

**From:** David McDonald <dwm@aurumpropertypartners.com>
**Sent:** Thursday, July 7, 2022 2:19 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; jenny.penland@wnj.org
**Subject:** Tenant Statement and Annual Reconciliation - 300 N Highland Avenue, Sherman, TX 75092

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

We have completed the 2021 annual operating expenses reconciliation. Please see attached letter and support.

If you have any questions please let me know.

1

Thanks,

*"We've expanded, please note our new suite number"*



**David McDonald**
Director of Accounting

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070

aurumpropertypartners.com     dwm@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

2

LHP_0000125

58

Bank of America

# NON REPETITIVE WIRE FORM

DATE             12/01/2022

Account
Number        ▮▮▮▮▮▮▮▮▮▮

State

Amount        232,570.02

Description     Altera Highland - Lease Payment


Wiring Instructions:
Bank Name     Wells Fargo

ABA #             121000248

Account #       ▮▮▮▮▮▮▮

Description     Sherman/Grayson Health System - Lease Payment

Beneficiary     Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

| | | |
|---|---|---|
| **Prepared For:** | **Date:** | 11/21/2022 |
| Sherman/Grayson Health System | **Total Due:** | 232,570.02 |
| 300 N Highland Avenue | | |
| Sherman, TX 75092 | | |

| Date | Description | Charges | Payments | Balance |
|---|---|---|---|---|
| 12/01/2022 | Rent Ste 100A | 20,182.42 | | 20,182.42 |
| 12/01/2022 | Estimated CAM Ste 100A | 12,174.00 | | 32,356.42 |
| 12/01/2022 | Rent Ste 200 | 47,591.37 | | 79,947.79 |
| 12/01/2022 | Estimated CAM Ste 200 | 16,569.00 | | 96,516.79 |
| 12/01/2022 | Rent Ste 350 | 27,751.35 | | 124,268.14 |
| 12/01/2022 | Estimated CAM Ste 350 | 18,040.00 | | 142,308.14 |
| 12/01/2022 | Rent Ste 415 | 34,142.23 | | 176,450.37 |
| 12/01/2022 | Estimated CAM Ste 415 | 22,195.00 | | 198,645.37 |
| 12/01/2022 | Rent Ste 500 | 20,559.65 | | 219,205.02 |
| 12/01/2022 | Estimated CAM Ste 500 | 13,365.00 | | 232,570.02 |

ACH Payment instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Tuesday, November 22, 2022 9:44 AM |
| **To:** | Frank Murphy |
| **Subject:** | FW: 12.2022 Tenant Statement - Wilson - Sherman Grayson Consolidated |

Approval.

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Tuesday, November 22, 2022 9:31 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: 12.2022 Tenant Statement - Wilson - Sherman Grayson Consolidated

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Tuesday, November 22, 2022 9:06:34 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: 12.2022 Tenant Statement - Wilson - Sherman Grayson Consolidated

Steve,
Please approve the Altera rent payment due on 12/1 for $232,570.02.

Thanks,
Glynda

**From:** Jayson DeSimone <jcd@aurumpropertypartners.com>
**Sent:** Tuesday, November 22, 2022 8:49 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; jenny.penland@wnj.org
**Subject:** 12.2022 Tenant Statement - Wilson - Sherman Grayson Consolidated

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Hello,

Please see the attached Consolidated Sherman Grayson Tenant Statement for 12.2022.

Thank you,

LHP_0000128

*"We've expanded, please note our new suite number"*



**Jayson DeSimone**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 561.542.6138

aurumpropertypartners.com    jcd@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

2

LHP_0000129

59

Bank of America

# NON REPETITIVE WIRE FORM

DATE      02/01/2023

Account
Number     ███████████

State

Amount     232,570.02

Description     Altera Highland - Lease Payment

Wiring Instructions:

Bank Name     Wells Fargo

ABA #     121000248

Account #     ██████████

Description     Sherman/Grayson Health System - Lease Payment

Beneficiary     Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:** 01/19/2023
**Total Due:** 232,570.02

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 02/01/2023 | Rent Ste 100A | 20,182.42 | | 20,182.42 |
| 02/01/2023 | Estimated CAM Ste 100A | 12,174.00 | | 32,356.42 |
| 02/01/2023 | Rent Ste 200 | 47,591.37 | | 79,947.79 |
| 02/01/2023 | Estimated CAM Ste 200 | 16,569.00 | | 96,516.79 |
| 02/01/2023 | Rent Ste 350 | 27,751.35 | | 124,268.14 |
| 02/01/2023 | Estimated CAM Ste 350 | 18,040.00 | | 142,308.14 |
| 02/01/2023 | Rent Ste 415 | 34,142.23 | | 176,450.37 |
| 02/01/2023 | Estimated CAM Ste 415 | 22,195.00 | | 198,645.37 |
| 02/01/2023 | Rent Ste 500 | 20,559.65 | | 219,205.02 |
| 02/01/2023 | Estimated CAM Ste 500 | 13,365.00 | | 232,570.02 |

ACH Payment instructions

| Bank Name: | WELLS FARGO |
|---|---|
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

**From:**      Glynda Mcdaniel
**Sent:**      Thursday, January 19, 2023 3:21 PM
**To:**        Frank Murphy
**Subject:**   FW: 02.2023 Tenant Statement - Wilson - Sherman Grayson Consolidated

Thanks.

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Thursday, January 19, 2023 2:44 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: 02.2023 Tenant Statement - Wilson - Sherman Grayson Consolidated

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Thursday, January 19, 2023 2:40:19 PM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: 02.2023 Tenant Statement - Wilson - Sherman Grayson Consolidated

Hi Steve,
Please approve the invoice for Feb ($232,570.02).

Thanks,
Glynda

**From:** Jayson DeSimone <jcd@aurumpropertypartners.com>
**Sent:** Thursday, January 19, 2023 2:29 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; jenny.penland@wnj.org
**Subject:** 02.2023 Tenant Statement - Wilson - Sherman Grayson Consolidated

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Hello,

Please see the attached Consolidated Sherman Grayson Tenant Statement for 02.2023.

Thank you,

1

*"We've expanded, please note our new suite number"*



**Jayson DeSimone**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 561.542.6138

aurumpropertypartners.com      jcd@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

2

LHP_0000133

60

Bank of America

# NON REPETITIVE WIRE FORM

DATE       01/03/2023

Account
Number      ████████████

State

Amount      232,570.02

Description      Altera Highland - Lease Payment

Wiring Instructions:
Bank Name      Wells Fargo

ABA #      121000248

Account #      ████████

Description      Sherman/Grayson Health System - Lease Payment

Beneficiary      Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

LHP_0000134

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**
Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:** 12/22/2022
**Total Due:** 232,570.02

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 01/01/2023 | Rent Ste 100A | 20,182.42 | | 20,182.42 |
| 01/01/2023 | Estimated CAM Ste 100A | 12,174.00 | | 32,356.42 |
| 01/01/2023 | Rent Ste 200 | 47,591.37 | | 79,947.79 |
| 01/01/2023 | Estimated CAM Ste 200 | 16,569.00 | | 96,516.79 |
| 01/01/2023 | Rent Ste 350 | 27,751.35 | | 124,268.14 |
| 01/01/2023 | Estimated CAM Ste 350 | 18,040.00 | | 142,308.14 |
| 01/01/2023 | Rent Ste 415 | 34,142.23 | | 176,450.37 |
| 01/01/2023 | Estimated CAM Ste 415 | 22,195.00 | | 198,645.37 |
| 01/01/2023 | Rent Ste 500 | 20,559.65 | | 219,205.02 |
| 01/01/2023 | Estimated CAM Ste 500 | 13,365.00 | | 232,570.02 |

ACH Payment Instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Thursday, December 29, 2022 8:39 AM |
| **To:** | Frank Murphy |
| **Subject:** | FW: 01.2023 Tenant Statement - Wilson - Sherman Grayson Consolidated |

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Thursday, December 29, 2022 8:23 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: 01.2023 Tenant Statement - Wilson - Sherman Grayson Consolidated

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Thursday, December 29, 2022 8:10:43 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: 01.2023 Tenant Statement - Wilson - Sherman Grayson Consolidated

Good morning Steve,
Please approve the Altera lease payment for January ($232,570.02). We will pay on Jan 3rd, 2023.

Thanks,
Glynda

**From:** Jayson DeSimone <jcd@aurumpropertypartners.com>
**Sent:** Thursday, December 29, 2022 8:06 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; jenny.penland@wnj.org
**Subject:** 01.2023 Tenant Statement - Wilson - Sherman Grayson Consolidated

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Hello,

Please see the attached Consolidated Sherman Grayson Tenant Statement for 01.2023.

Thank you,

1

*"We've expanded, please note our new suite number"*



**Jayson DeSimone**
Senior Property Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 561.542.6138

aurumpropertypartners.com     jcd@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

2

LHP_0000137

61

Bank of America

# NON REPETITIVE WIRE FORM

DATE                03/06/2023

Account
Number              ███████████

State

Amount              232,570.02

Description         Altera Highland - Lease Payment


Wiring Instructions:

Bank Name           Wells Fargo

ABA #               121000248

Account #           ████████

Description         Sherman/Grayson Health System - Lease Payment

Beneficiary         Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

LHP_0000138

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



AURUM
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:**  02/19/2023
**Total Due:**  232,570.02

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 03/01/2023 | Rent Ste 100A | 20,182.42 | | 20,182.42 |
| 03/01/2023 | Estimated CAM Ste 100A | 12,174.00 | | 32,356.42 |
| 03/01/2023 | Rent Ste 200 | 47,591.37 | | 79,947.79 |
| 03/01/2023 | Estimated CAM Ste 200 | 16,569.00 | | 96,516.79 |
| 03/01/2023 | Rent Ste 350 | 27,751.35 | | 124,268.14 |
| 03/01/2023 | Estimated CAM Ste 350 | 18,040.00 | | 142,308.14 |
| 03/01/2023 | Rent Ste 415 | 34,142.23 | | 176,450.37 |
| 03/01/2023 | Estimated CAM Ste 415 | 22,195.00 | | 198,645.37 |
| 03/01/2023 | Rent Ste 500 | 20,559.65 | | 219,205.02 |
| 03/01/2023 | Estimated CAM Ste 500 | 13,365.00 | | 232,570.02 |

ACH Payment instructions.

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

| | |
|---|---|
| **From:** | Glynda Mcdaniel |
| **Sent:** | Friday, March 3, 2023 12:55 PM |
| **To:** | Frank Murphy |
| **Subject:** | FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Friday, March 3, 2023 12:54 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** RE: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Approved.

Steve Hinkle
VP and Chief Compliance Officer
p 615.296.3378 c 615.268.3822
www.ardenthealth.com



**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Friday, March 3, 2023 12:41 PM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Steve,
We got it. Please approve the attached invoice for March ($232,570.02) and we will pay on Monday.

Thanks,
Glynda

**From:** Stacy Malkasian <smm@aurumpropertypartners.com>
**Sent:** Friday, March 3, 2023 11:54 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>; Jennifer Penland <jenny.penland@wnj.org>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

LHP_0000140

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

If you have any questions please let me know.

Thank you,



**Stacy Malkasian**
Senior Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 561.389.8671
aurumpropertypartners.com       smm@aurumpropertypartners.com
West Palm Beach, FL  |  Middletown, NJ

2

62

Bank of America

# NON REPETITIVE WIRE FORM

DATE                04/03/2023

Account
Number              ██████████████

State

Amount              235,956.70

Description         Altera Highland - Lease Payment


Wiring Instructions:
Bank Name           Wells Fargo

ABA #               121000248

Account #           ████████████

Description         Sherman/Grayson Health System - Lease Payment

Beneficiary         Altera Highland LLC


Bene Address        _____

Bene City/ST        _____

Bene Zip            _____


Sequence Number     _____

Approved By:        _____


2nd Approval:       _____

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:** 03/19/2023
**Total Due:** 235,956.70

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 04/01/2023 | Rent Ste 100A | 20,182.42 | | 20,182.42 |
| 04/01/2023 | Estimated CAM Ste 100A | 12,675.17 | | 32,857.59 |
| 04/01/2023 | Rent Ste 200 | 47,591.37 | | 80,448.96 |
| 04/01/2023 | Estimated CAM Ste 200 | 17,250.16 | | 97,699.12 |
| 04/01/2023 | Rent Ste 350 | 27,751.35 | | 125,450.47 |
| 04/01/2023 | Estimated CAM Ste 350 | 18,782.11 | | 144,232.58 |
| 04/01/2023 | Rent Ste 415 | 34,142.23 | | 178,374.81 |
| 04/01/2023 | Estimated CAM Ste 415 | 23,107.46 | | 201,482.27 |
| 04/01/2023 | Rent Ste 500 | 20,559.65 | | 222,041.92 |
| 04/01/2023 | Estimated CAM Ste 500 | 13,914.78 | | 235,956.70 |

ACH Payment Instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

| | |
|---|---|
| **From:** | Steve Hinkle |
| **Sent:** | Thursday, March 23, 2023 3:20 PM |
| **To:** | Glynda Mcdaniel |
| **Cc:** | Frank Murphy |
| **Subject:** | Re: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Thursday, March 23, 2023 4:06:50 PM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Cc:** Frank Murphy <Frank.Murphy@ardenthealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Steve,
Please approve the April 1st rent payment of $235,956.70 for Altera. It does include the updated CAM rates.

Thanks,
Glynda

**From:** Stacy Malkasian <smm@aurumpropertypartners.com>
**Sent:** Thursday, March 23, 2023 1:36 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

If you have any questions please let me know.

Thank you,

1

LHP_0000144



**Stacy Malkasian**
Senior Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 561.389.8671
aurumpropertypartners.com       smm@aurumpropertypartners.com
West Palm Beach, FL | Middletown, NJ

LHP_0000145

63

Bank of America

# NON REPETITIVE WIRE FORM

DATE       05/01/2023

Account
Number      ███████████

State

Amount      246,116.70

Description      Altera Highland - Lease Payment

Wiring Instructions:
Bank Name      Wells Fargo

ABA #      121000248

Account #      ███████

Description      Sherman/Grayson Health System - Lease Payment

Beneficiary      Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070


AURUM
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:**        04/19/2023
**Total Due:**   235,956.70

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 05/01/2023 | Rent Ste 100A | 20,182.42 | | 20,182.42 |
| 05/01/2023 | Estimated CAM Ste 100A | 12,675.17 | | 32,857.59 |
| 05/01/2023 | Rent Ste 200 | 47,591.37 | | 80,448.96 |
| 05/01/2023 | Estimated CAM Ste 200 | 17,250.16 | | 97,699.12 |
| 05/01/2023 | Rent Ste 350 | 27,751.35 | | 125,450.47 |
| 05/01/2023 | Estimated CAM Ste 350 | 18,782.11 | | 144,232.58 |
| 05/01/2023 | Rent Ste 415 | 34,142.23 | | 178,374.81 |
| 05/01/2023 | Estimated CAM Ste 415 | 23,107.46 | | 201,482.27 |
| 05/01/2023 | Rent Ste 500 | 20,559.65 | | 222,041.92 |
| 05/01/2023 | Estimated CAM Ste 500 | 13,914.78 | | 235,956.70 |

ACH Payment Instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.



**AURUM**
PROPERTY PARTNERS

March 21, 2023

Sherman/Grayson
300 N Highland Avenue
Units 100A, 200, 350, 415, 500
Sherman, TX 75092

**RE:   2023 Estimated Common Area Costs**
       Wilson Jones MOB, 300 N Highland Avenue, Sherman, TX 75092

Dear Sherman/Grayson

We have completed the 2023 budget for Wilson Jones MOB and have attached a copy for your review. The new estimated CAM rate for your suite is **$85,729.68**/month. This new amount is effective January 1, 2023, and is due on the 1st of the month, each month, for the remainder of the year.

We have also reconciled the estimated CAM, which was previously billed, to this new rate and have either processed an additional billing or issued a credit to the account. We have attached an invoice with the details.

Here is a summary:

**CAM**

|                          | Jan-23    | Feb-23    | Mar-23    | Total      |
|--------------------------|-----------|-----------|-----------|------------|
| Previously Billed        | 82,343.00 | 82,343.00 | 82,343.00 | 247,029.00 |
| New Rate                 | 85,729.68 | 85,729.68 | 85,729.68 | 257,189.04 |
| **Remaining Balance Due** | 3,386.68  | 3,386.68  | 3,386.68  | 10,160.04  |

If you have any questions, please contact us.

Sincerely,

*Property Management Team*

Aurum Property Partners
As representative for FMC Medical Mall

LHP_0000148

# INVOICE

Altera Highland, LLC
PO Box 206147
Attn: Lockbox
Dallas, TX 75320
(561) 293-3070



**Prepared For**
Sherman/Grayson - Hosp Occupied Common Areas
300 N Highland Avenue
Unit 100A
Sherman, TX 75092

**Property:**
Wilson Jones MOB
300 N Highland Avenue
Sherman, TX 75092

| | |
|---|---|
| **Invoice Date** | 03/01/2023 |
| **Invoice No.** | 28838 |
| **Unit** | 100A |

**Billing Information:**

| Description | Amount |
|---|---|
| Revised Estimated CAM (01/2023) | 12,675.17 |
| Revised Estimated CAM (02/2023) | 12,675.17 |
| Revised Estimated CAM (03/2023) | 12,675.17 |
| Reverse Estimated CAM (01/2023) | -12,174.00 |
| Reverse Estimated CAM (02/2023) | -12,174.00 |
| Reverse Estimated CAM (03/2023) | -12,174.00 |
| **Grand Total** | 1,503.51 |

**Notes**

---

## Remittance Advice

(please detach and return)

| Tenant Information | | Invoice Information | |
|---|---|---|---|
| **Name:** | Sherman/Grayson - Hosp Occupied Common Areas | **Unit** | 100A |
| **Address:** | 300 N Highland Avenue Unit 100A | **Payment Date** | |
| **City/State/Zip** | Sherman, TX 75092 | **Payment Amount** | |

Thank you for your prompt payment

# INVOICE

Altera Highland, LLC
PO Box 206147
Attn: Lockbox
Dallas, TX 75320
(561) 293-3070



**Prepared For**
Sherman/Grayson- ASC Kitty Richardson
300 N Highland Avenue
Unit 200
Sherman, TX 75092

**Property:**
Wilson Jones MOB
300 N Highland Avenue
Sherman, TX 75092

| | |
|---|---|
| **Invoice Date** | 03/01/2023 |
| **Invoice No.** | 28787 |
| **Unit** | 200 |

**Billing Information:**

| Description | Amount |
|---|---|
| Revised Estimated CAM (01/2023) | 17,250.16 |
| Revised Estimated CAM (02/2023) | 17,250.16 |
| Revised Estimated CAM (03/2023) | 17,250.16 |
| Reverse Estimated CAM (01/2023) | -16,569.00 |
| Reverse Estimated CAM (02/2023) | -16,569.00 |
| Reverse Estimated CAM (03/2023) | -16,569.00 |
| **Grand Total** | 2,043.48 |

**Notes**

---

## Remittance Advice

(please detach and return)

| Tenant Information | | Invoice Information | |
|---|---|---|---|
| **Name:** | Sherman/Grayson- ASC Kitty Richardson | **Unit** | 200 |
| **Address:** | 300 N Highland Avenue Unit 200 | **Payment Date** | |
| **City/State/Zip** | Sherman, TX 75092 | **Payment Amount** | |

Thank you for your prompt payment

# INVOICE

Altera Highland, LLC
PO Box 206147
Attn: Lockbox
Dallas, TX 75320
(561) 293-3070



**Prepared For**
Sherman/Grayson- Shell Kitty Richardson
300 N Highland Avenue
Unit 350
Sherman, TX 75092

**Property:**
Wilson Jones MOB
300 N Highland Avenue
Sherman, TX 75092

| | |
|---|---|
| **Invoice Date** | 03/01/2023 |
| **Invoice No.** | 28796 |
| **Unit** | 350 |

**Billing Information:**

| Description | Amount |
|---|---|
| Revised Estimated CAM (01/2023) | 18,782.11 |
| Revised Estimated CAM (02/2023) | 18,782.11 |
| Revised Estimated CAM (03/2023) | 18,782.11 |
| Reverse Estimated CAM (01/2023) | -18,040.00 |
| Reverse Estimated CAM (02/2023) | -18,040.00 |
| Reverse Estimated CAM (03/2023) | -18,040.00 |
| **Grand Total** | 2,226.33 |

**Notes**

--------------------------------------------------------------------------------

# Remittance Advice

(please detach and return)

| Tenant Information | | Invoice Information | |
|---|---|---|---|
| **Name:** | Sherman/Grayson- Shell Kitty Richardson | **Unit** | 350 |
| **Address:** | 300 N Highland Avenue Unit 350 | **Payment Date** | |
| **City/State/Zip** | Sherman, TX 75092 | **Payment Amount** | |

Thank you for your prompt payment

# INVOICE

Altera Highland, LLC
PO Box 206147
Attn: Lockbox
Dallas, TX 75320
(561) 293-3070



**Prepared For**
Sherman/Grayson- Phys Suites Kitty Richardson
300 N Highland Avenue
Unit 415
Sherman, TX 75092

**Property:**
Wilson Jones MOB
300 N Highland Avenue
Sherman, TX 75092

| Invoice Date | 03/01/2023 |
|---|---|
| Invoice No. | 28808 |
| Unit | 415 |

**Billing Information:**

| Description | Amount |
|---|---|
| Revised Estimated CAM (01/2023) | 23,107.46 |
| Revised Estimated CAM (02/2023) | 23,107.46 |
| Revised Estimated CAM (03/2023) | 23,107.46 |
| Reverse Estimated CAM (01/2023) | -22,195.00 |
| Reverse Estimated CAM (02/2023) | -22,195.00 |
| Reverse Estimated CAM (03/2023) | -22,195.00 |
| **Grand Total** | 2,737.38 |

**Notes**

---

# Remittance Advice

(please detach and return)

| Tenant Information | | Invoice Information | |
|---|---|---|---|
| **Name:** | Sherman/Grayson- Phys Suites Kitty Richardson | **Unit** | 415 |
| **Address:** | 300 N Highland Avenue Unit 415 | **Payment Date** | |
| **City/State/Zip** | Sherman, TX 75092 | **Payment Amount** | |

Thank you for your prompt payment

# INVOICE

Altera Highland, LLC
PO Box 206147
Attn: Lockbox
Dallas, TX 75320
(561) 293-3070



**Prepared For**
Sherman/Grayson- ASC Existing 4 & 5
300 N Highland Avenue
Unit 500
Sherman, TX 75092

**Property:**
Wilson Jones MOB
300 N Highland Avenue
Sherman, TX 75092

| Invoice Date | 03/01/2023 |
|---|---|
| Invoice No. | 28814 |
| Unit | 500 |

**Billing Information:**

| Description | Amount |
|---|---|
| Revised Estimated CAM (01/2023) | 13,914.78 |
| Revised Estimated CAM (02/2023) | 13,914.78 |
| Revised Estimated CAM (03/2023) | 13,914.78 |
| Reverse Estimated CAM (01/2023) | -13,365.00 |
| Reverse Estimated CAM (02/2023) | -13,365.00 |
| Reverse Estimated CAM (03/2023) | -13,365.00 |
| **Grand Total** | 1,649.34 |

| Notes |
|---|
|  |

---------------------------------------------------------------------------------------------------

## Remittance Advice

(please detach and return)

| Tenant Information | | Invoice Information | |
|---|---|---|---|
| **Name:** | Sherman/Grayson- ASC Existing 4 & 5 | **Unit** | 500 |
| **Address:** | 300 N Highland Avenue Unit 500 | **Payment Date** | |
| **City/State/Zip** | Sherman, TX 75092 | **Payment Amount** | |

Thank you for your prompt payment

LHP_0000153

**Altera Highland, LLC - Wilson**
**300 N Highland, Sherman, TX**
**2023 Budget**

| Estimated 2023 Operating Expenses | TOTAL |
|---|---|
| **Operating Expenses** | |
| Administrative | **69,600** |
| Repairs & Maintenance | **134,074** |
| Cleaning & Janitorial | **51,954** |
| Elevator | **33,286** |
| HVAC | **38,708** |
| Fire & Life Safety | **13,359** |
| Security | **35,295** |
| Landscaping | **1,200** |
| Utilities | **259,620** |
| Property Management Fees | **160,530** |
| Insurance | **37,800** |
| Real Estate Taxes | **403,974** |
| Ground Rent | **37,680** |
| **Total Operating Expenses** | **1,277,081** |

**Frank Murphy**

| | |
|---|---|
| **From:** | Steve Hinkle |
| **Sent:** | Thursday, April 20, 2023 3:43 PM |
| **To:** | Glynda Mcdaniel |
| **Cc:** | Frank Murphy |
| **Subject:** | Re: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |

Yes, approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Thursday, April 20, 2023 3:42:56 PM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Cc:** Frank Murphy <Frank.Murphy@ardenthealth.com>
**Subject:** RE: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

So you approve the May 1st invoice of $235,956.70 and the CAM adjustment for Q1 of $10,160.04? I need an email approval so that we can attach to the wire.

Thanks,
Glynda

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Thursday, April 20, 2023 3:32 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Cc:** Frank Murphy <Frank.Murphy@ardenthealth.com>
**Subject:** Re: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

As far as I know it's ok.

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Thursday, April 20, 2023 3:27:56 PM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Cc:** Frank Murphy <Frank.Murphy@ardenthealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Hi Steve,
The Altera leas invoice is attached for May 1st ($235,956.70). Please approve.

They have also attached the CAM invoice. Are you good with it or are we still waiting for an adjustment?

1

LHP_0000155

Thanks,
Glynda

**From:** Stacy Malkasian <smm@aurumpropertypartners.com>
**Sent:** Thursday, April 20, 2023 3:00 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenhealth.com>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

I have also attached the 2023 CAM estimate invoice for the months of January-March that are outstanding.

If you have any questions please let me know.

Thank you,



**Stacy Malkasian**
Senior Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 561.389.8671
aurumpropertypartners.com        smm@aurumpropertypartners.com
West Palm Beach, FL | Middletown, NJ

LHP_0000156

**Frank Murphy**

| | |
|---|---|
| **From:** | Steve Hinkle |
| **Sent:** | Monday, May 1, 2023 10:00 AM |
| **To:** | Glynda Mcdaniel |
| **Cc:** | Frank Murphy |
| **Subject:** | Re: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Monday, May 1, 2023 9:47:40 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Cc:** Frank Murphy <Frank.Murphy@ardenthealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Steve,
We received updated CAM information from Sherman Grayson. According to the attached, we owe $246,116.70 (which is rent of $235,956.70 and the CAM adjustment of $10,160.04).

I am not sure if the calculation is correct but I did go back and confirm what we paid in Q1 (it matches their information).

Please approve and we will get them paid today.

Thanks,
Glynda

**From:** Stacy Malkasian <smm@aurumpropertypartners.com>
**Sent:** Thursday, April 20, 2023 3:00 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

I have also attached the 2023 CAM estimate invoice for the months of January-March that are outstanding.

If you have any questions please let me know.

LHP_0000157

Thank you,



**Stacy Malkasian**
Senior Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 561.389.8671

aurumpropertypartners.com          smm@aurumpropertypartners.com
West Palm Beach, FL | Middletown, NJ

2

LHP_0000158

64

Bank of America

# NON REPETITIVE WIRE FORM

DATE       06/01/2023

Account
Number     ███████████

State

Amount     231,892.26

Description    Altera Highland - Lease Payment

Wiring Instructions:

Bank Name    Wells Fargo

ABA #       121000248

Account #    ███████

Description    Sherman/Grayson Health System - Lease Payment

Beneficiary    Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070


AURUM
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:** 05/22/2023
**Total Due:** 231,892.26

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 06/01/2023 | Rent Ste 100A | 20,182.42 | | 20,182.42 |
| 06/01/2023 | Estimated CAM Ste 100A | 12,074.24 | | 32,256.66 |
| 06/01/2023 | Rent Ste 200 | 47,591.37 | | 79,848.03 |
| 06/01/2023 | Estimated CAM Ste 200 | 16,432.33 | | 96,280.36 |
| 06/01/2023 | Rent Ste 350 | 27,751.35 | | 124,031.71 |
| 06/01/2023 | Estimated CAM Ste 350 | 17,891.65 | | 141,923.36 |
| 06/01/2023 | Rent Ste 415 | 34,142.23 | | 176,065.59 |
| 06/01/2023 | Estimated CAM Ste 415 | 22,011.94 | | 198,077.53 |
| 06/01/2023 | Rent Ste 500 | 20,559.65 | | 218,637.18 |
| 06/01/2023 | Estimated CAM Ste 500 | 13,255.08 | | 231,892.26 |

ACH Payment Instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

| | |
|---|---|
| **From:** | Steve Hinkle |
| **Sent:** | Tuesday, May 30, 2023 8:57 AM |
| **To:** | Glynda Mcdaniel |
| **Cc:** | Frank Murphy |
| **Subject:** | Re: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Tuesday, May 30, 2023 8:54:14 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Cc:** Frank Murphy <Frank.Murphy@ardenthealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Good morning Steve,
Please approve the June Altera rent statement for $231,892.26.

Thanks,
Glynda

**From:** Stacy Malkasian <smm@aurumpropertypartners.com>
**Sent:** Monday, May 22, 2023 8:56 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

If you have any questions please let me know.

Thank you,

1



**Stacy Malkasian**
Senior Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 561.389.8671
aurumpropertypartners.com    smm@aurumpropertypartners.com
West Palm Beach, FL | Middletown, NJ

2

LHP_0000162

65

Bank of America

# NON REPETITIVE WIRE FORM

DATE **07/03/2023**

Account
Number

State

Amount **198,906.46**

Description **Altera Highland - Lease Payment**

Wiring Instructions:

Bank Name **Wells Fargo**

ABA # **121000248**

Account #

Description **Sherman/Grayson Health System - Lease Payment**

Beneficiary **Altera Highland LLC**

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

LHP_0000163

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:** 06/22/2023
**Total Due:** 231,892.26

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 07/01/2023 | Rent Ste 100A | 20,182.42 | | 20,182.42 |
| 07/01/2023 | Estimated CAM Ste 100A | 12,074.24 | | 32,256.66 |
| 07/01/2023 | Rent Ste 200 | 47,591.37 | | 79,848.03 |
| 07/01/2023 | Estimated CAM Ste 200 | 16,432.33 | | 96,280.36 |
| 07/01/2023 | Rent Ste 350 | 27,751.35 | | 124,031.71 |
| 07/01/2023 | Estimated CAM Ste 350 | 17,891.65 | | 141,923.36 |
| 07/01/2023 | Rent Ste 415 | 34,142.23 | | 176,065.59 |
| 07/01/2023 | Estimated CAM Ste 415 | 22,011.94 | | 198,077.53 |
| 07/01/2023 | Rent Ste 500 | 20,559.65 | | 218,637.18 |
| 07/01/2023 | Estimated CAM Ste 500 | 13,255.08 | | 231,892.26 |

ACH Payment Instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

| | |
|---|---|
| **From:** | Steve Hinkle |
| **Sent:** | Friday, June 23, 2023 7:33 AM |
| **To:** | Glynda Mcdaniel |
| **Cc:** | Frank Murphy |
| **Subject:** | Re: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
615.296.3378 (office) 615.268.3822 (cell)
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Friday, June 23, 2023 7:24:13 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Cc:** Frank Murphy <Frank.Murphy@ardenthealth.com>
**Subject:** Fwd: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Good morning Steve,
Please approve the Altera rent payment for July 1st ($231,892.26) attached.

Thanks,
Glynda

Get Outlook for iOS

**From:** Stacy Malkasian <smm@aurumpropertypartners.com>
**Sent:** Thursday, June 22, 2023 3:36:18 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

If you have any questions please let me know.

Thank you,

1



**Stacy Malkasian**
Senior Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070   c: 561.389.8671
aurumpropertypartners.com        smm@aurumpropertypartners.com
West Palm Beach, FL | Middletown, NJ

2

LHP_0000166



**AURUM**
PROPERTY PARTNERS

June 28, 2023

Sherman/Grayson
300 N Highland Avenue
Unit 100A, 200, 350, 415, 500
Sherman, TX 75092

**RE:  2022 Annual Operating Expense Reconciliation**
**Altera Highland, LLC**

Dear Physician and Fellow Tenant:

We have completed the 2022 annual operating expenses reconciliation. We have enclosed a reconciliation invoice that pertains to your suite and lease agreement. The invoice provides a breakdown of the actual operating expenses paid in 2022. The amount due for your suite is based upon your proportionate share of the 2022 operating expenses.

Your proportionate share of operating expenses for 2022 is as follows:

| | | |
|---|---|---:|
| Your share | $ | 960,681.85 |
| Less charged | $ | 993,667.65 |
| Total due | $ | (32,985.80) |

A credit has been issued to your account and may be taken with your next remittance.

If you should have any questions, please contact us.

Sincerely,

*Property Management Team*

Altera Highland, LLC Property Management Team
Aurum Property Partners

LHP_0000167

**Altera Highland, LLC**
**2022 Operating Expense Recoveries**

| | |
|---|---|
| **Tenant Name:** | Sherman/Grayson Health System |
| **Suite #:** | 100A, 200, 350, 415, 500 |
| **Suite Sqft:** | 90,321 |
| **Lease From:** | 8/21/2012 |
| **Lease Expire:** | 8/31/2027 |
| **Tenant's Share %:** | 77.648% |
| **Occupancy:** | 100% |
| **Total Building Footage:** | 117,655 |

| Operating Expenses | 2022 Actuals |
|---|---|
| Administrative | 108,973.69 |
| Utilities | 241,443.11 |
| Insurance | 38,851.58 |
| Janitorial | 44,295.96 |
| Management Fees | 160,530.12 |
| Property Taxes | 325,208.87 |
| Maintenance | 219,723.10 |
| Security | 33,419.42 |
| Ground Lease | 37,680.48 |
| Amortization Fire Alarm System and Elevators | 27,100.45 |
| **Total** | **1,237,226.78** |
| Total 2022 CAM Expenses | **1,237,226.78** |
| Tenant Pro Rata share | 77.648% |
| Tenant's CAM Share | 960,681.85 |
| Tenant's CAM Billed | 993,667.65 |
| 2022 CAM Due / (Credit) | (32,985.80) |

# INVOICE

Altera Highland, LLC
PO Box 206147
Attn: Lockbox
Dallas, TX 75320
(561) 293-3070



**Prepared For**
Sherman/Grayson - Hosp Occupied Common Areas
300 N Highland Avenue
Unit 100A
Sherman, TX 75092

**Property:**
Wilson Jones MOB
300 N Highland Avenue
Sherman, TX 75092

| Invoice Date | 06/28/2023 |
|---|---|
| Invoice No. | 34950 |
| Unit | 100A |

**Billing Information:**

| Description | Amount |
|---|---|
| 2022 Cam Reconciliation | -362.92 |
| **Grand Total** | **-362.92** |

| Notes |
|---|
|  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

## Remittance Advice

(please detach and return)

| Tenant Information | | Invoice Information | |
|---|---|---|---|
| **Name:** | Sherman/Grayson - Hosp Occupied Common Areas | **Unit** | 100A |
| **Address:** | 300 N Highland Avenue Unit 100A | **Payment Date** | |
| **City/State/Zip** | Sherman, TX 75092 | **Payment Amount** | |

Thank you for your prompt payment

# INVOICE

Altera Highland, LLC
PO Box 206147
Attn: Lockbox
Dallas, TX 75320
(561) 293-3070



**Prepared For**
Sherman/Grayson- ASC Kitty Richardson
300 N Highland Avenue
Unit 200
Sherman, TX 75092

**Property:**
Wilson Jones MOB
300 N Highland Avenue
Sherman, TX 75092

| Invoice Date | 06/28/2023 |
|---|---|
| Invoice No. | 34949 |
| Unit | 200 |

**Billing Information:**

| Description | Amount |
|---|---|
| 2022 Cam Reconciliation | -7,612.53 |
| **Grand Total** | **-7,612.53** |

| Notes |
|---|
| |

------------------------------------------------------------------------------------------------

## Remittance Advice

(please detach and return)

| Tenant Information | | Invoice Information | |
|---|---|---|---|
| **Name:** | Sherman/Grayson- ASC Kitty Richardson | **Unit** | 200 |
| **Address:** | 300 N Highland Avenue Unit 200 | **Payment Date** | |
| **City/State/Zip** | Sherman, TX 75092 | **Payment Amount** | |

Thank you for your prompt payment

# INVOICE

Altera Highland, LLC
PO Box 206147
Attn: Lockbox
Dallas, TX 75320
(561) 293-3070



**Prepared For**
Sherman/Grayson- Shell Kitty Richardson
300 N Highland Avenue
Unit 350
Sherman, TX 75092

**Property:**
Wilson Jones MOB
300 N Highland Avenue
Sherman, TX 75092

| Invoice Date | 06/28/2023 |
|---|---|
| Invoice No. | 34952 |
| Unit | 350 |

**Billing Information:**

| Description | Amount |
|---|---|
| 2022 Cam Reconciliation | -8,409.78 |
| **Grand Total** | **-8,409.78** |

| Notes |
|---|
| |

---

## Remittance Advice

(please detach and return)

| Tenant Information | | Invoice Information | |
|---|---|---|---|
| **Name:** | Sherman/Grayson- Shell Kitty Richardson | **Unit** | 350 |
| **Address:** | 300 N Highland Avenue Unit 350 | **Payment Date** | |
| **City/State/Zip** | Sherman, TX 75092 | **Payment Amount** | |

Thank you for your prompt payment

# INVOICE

Altera Highland, LLC
PO Box 206147
Attn: Lockbox
Dallas, TX 75320
(561) 293-3070



**Prepared For**
Sherman/Grayson- Phys Suites Kitty Richardson
300 N Highland Avenue
Unit 415
Sherman, TX 75092

**Property:**
Wilson Jones MOB
300 N Highland Avenue
Sherman, TX 75092

| Invoice Date | 06/28/2023 |
|---|---|
| Invoice No. | 34954 |
| Unit | 415 |

**Billing Information:**

| Description | Amount |
|---|---|
| 2022 Cam Reconciliation | -10,367.23 |
| **Grand Total** | **-10,367.23** |

| Notes |
|---|
| |

------------------------------------------------------------

## Remittance Advice

(please detach and return)

| Tenant Information | | Invoice Information | |
|---|---|---|---|
| **Name:** | Sherman/Grayson- Phys Suites Kitty Richardson | **Unit** | 415 |
| **Address:** | 300 N Highland Avenue Unit 415 | **Payment Date** | |
| **City/State/Zip** | Sherman, TX 75092 | **Payment Amount** | |

Thank you for your prompt payment

LHP_0000172

# INVOICE

Altera Highland, LLC
PO Box 206147
Attn: Lockbox
Dallas, TX 75320
(561) 293-3070


**AURUM**
PROPERTY PARTNERS

**Prepared For**
Sherman/Grayson- ASC Existing 4 & 5
300 N Highland Avenue
Unit 500
Sherman, TX 75092

**Property:**
Wilson Jones MOB
300 N Highland Avenue
Sherman, TX 75092

| Invoice Date | 06/28/2023 |
|---|---|
| **Invoice No.** | 34955 |
| **Unit** | 500 |

**Billing Information:**

| Description | Amount |
|---|---|
| 2022 Cam Reconciliation | -6,233.34 |
| **Grand Total** | -6,233.34 |

**Notes**

---

## Remittance Advice

(please detach and return)

| Tenant Information | | Invoice Information | |
|---|---|---|---|
| **Name:** | Sherman/Grayson- ASC Existing 4 & 5 | **Unit** | 500 |
| **Address:** | 300 N Highland Avenue Unit 500 | **Payment Date** | |
| **City/State/Zip** | Sherman, TX 75092 | **Payment Amount** | |

Thank you for your prompt payment

LHP_0000173

66

Bank of America

# NON REPETITIVE WIRE FORM

DATE                08/01/2023

Account
Number              ████████████

State

Amount              231,892.26

Description         Altera Highland - Lease Payment


Wiring Instructions:

Bank Name           Wells Fargo

ABA #               121000248

Account #           ███████

Description         Sherman/Grayson Health System - Lease Payment

Beneficiary         Altera Highland LLC


Bene Address

Bene City/ST

Bene Zip


Sequence Number

Approved By:


2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:** 07/19/2023
**Total Due:** 231,892.26

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 08/01/2023 | Rent Ste 100A | 20,182.42 | | 20,182.42 |
| 08/01/2023 | Estimated CAM Ste 100A | 12,074.24 | | 32,256.66 |
| 08/01/2023 | Rent Ste 200 | 47,591.37 | | 79,848.03 |
| 08/01/2023 | Estimated CAM Ste 200 | 16,432.33 | | 96,280.36 |
| 08/01/2023 | Rent Ste 350 | 27,751.35 | | 124,031.71 |
| 08/01/2023 | Estimated CAM Ste 350 | 17,891.65 | | 141,923.36 |
| 08/01/2023 | Rent Ste 415 | 34,142.23 | | 176,065.59 |
| 08/01/2023 | Estimated CAM Ste 415 | 22,011.94 | | 198,077.53 |
| 08/01/2023 | Rent Ste 500 | 20,559.65 | | 218,637.18 |
| 08/01/2023 | Estimated CAM Ste 500 | 13,255.08 | | 231,892.26 |

ACH Payment Instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

| | |
|---|---|
| **From:** | Steve Hinkle |
| **Sent:** | Thursday, July 20, 2023 8:55 AM |
| **To:** | Glynda Mcdaniel |
| **Cc:** | Frank Murphy; Mindy Garcia |
| **Subject:** | Re: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
615.296.3378 (office) 615.268.3822 (cell)
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Thursday, July 20, 2023 8:43:16 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Cc:** Frank Murphy <Frank.Murphy@ardenthealth.com>; Mindy Garcia <Mindy.Garcia@hillcrest.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Good morning Steve,
Please approve the Altera lease payment due 8/1/23 ($231,892.26).

Thanks,
Glynda

**From:** Stacy Malkasian <smm@aurumpropertypartners.com>
**Sent:** Wednesday, July 19, 2023 1:51 PM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

If you have any questions please let me know.

Thank you,

LHP_0000176



**Stacy Malkasian**
Senior Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 561.389.8671
aurumpropertypartners.com     smm@aurumpropertypartners.com
West Palm Beach, FL | Middletown, NJ

LHP_0000177

67

Bank of America

# NON REPETITIVE WIRE FORM

DATE                09/01/2023

Account
Number              ███████████

State

Amount              219,081.46

Description         Altera Highland - Lease Payment


Wiring Instructions:
Bank Name           Wells Fargo

ABA #               121000248

Account #           ██████████

Description         Sherman/Grayson Health System - Lease Payment

Beneficiary         Altera Highland LLC


Bene Address

Bene City/ST

Bene Zip


Sequence Number

Approved By:


2nd Approval:

LHP_0000178

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**

    Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:**     08/18/2023
**Total Due:**     219,081.46

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 09/01/2023 | Rent and CAM Ste 100A | 33,265.78 | | 33,265.78 |
| 09/01/2023 | Credit from Prior Year CAM Ste 100A | (5,327.45) | | 27,938.33 |
| 09/01/2023 | Rent and CAM Ste 200 | 66,403.27 | | 94,341.60 |
| 09/01/2023 | Credit from Prior Year CAM Ste 200 | (4,581.14) | | 89,760.46 |
| 09/01/2023 | Rent and CAM Ste 350 | 47,030.57 | | 136,791.03 |
| 09/01/2023 | Credit from Prior Year CAM Ste 350 | (4,486.79) | | 132,304.24 |
| 09/01/2023 | Rent and CAM Ste 415 | 57,861.28 | | 190,165.52 |
| 09/01/2023 | Credit from Prior Year CAM Ste 415 | ( 3,393.99) | | 186,771.53 |
| 09/01/2023 | Rent and CAM Ste 500 | 34,842.72 | | 221,614.25 |
| 09/01/2023 | Credit from Prior Year CAM Ste 500 | (2,532.79) | | 219,081.46 |

ACH Payment Instructions

Bank Name:     WELLS FARGO
Bank Address:     PO BOX 63020
    SAN FRANCISCO, CA 94163
Bank ABA/Routing#:     121000248
Beneficiary Account #:
Beneficiary Account Name:     Altera Highland LLC

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

**Frank Murphy**

| | |
|---|---|
| **From:** | Steve Hinkle |
| **Sent:** | Friday, August 18, 2023 9:01 AM |
| **To:** | Glynda Mcdaniel |
| **Cc:** | Frank Murphy |
| **Subject:** | Re: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |

Ok, approved.

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
615.296.3378 (office) 615.268.3822 (cell)
Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Friday, August 18, 2023 8:25:35 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Cc:** Frank Murphy <Frank.Murphy@ardenthealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Good morning Steve,
Here is the September Rent statement ($219,081.46) for approval. I have asked that our bill be sent by suite like the previous invoices.

Also attached is the Rent increase notice. I do not have the contract to confirm if these rates are correct.

Thanks,
Glynda

**From:** Stacy Malkasian <smm@aurumpropertypartners.com>
**Sent:** Thursday, August 17, 2023 8:57 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

If you have any questions please let me know.

Thank you,

LHP_0000180

68

Bank of America

# NON REPETITIVE WIRE FORM

DATE            10/02/2023

Account
Number          ███████████.

State

Amount          239,403.62

Description     Altera Highland - Lease Payment

Wiring Instructions:
Bank Name       Wells Fargo

ABA #           121000248

Account #       ██████████

Description     Sherman/Grayson Health System - Lease Payment

Beneficiary     Altera Highland LLC

Bene Address    _____

Bene City/ST    _____

Bene Zip        _____

Sequence Number _____

Approved By:    _____

2nd Approval:   _____

LHP_0000181

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**Prepared For:**

    Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:**      09/20/2023
**Total Due:**      239,403.62

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 10/01/2023 | Rent and CAM Ste 100A | 33,265.78 | | 33,265.78 |
| 10/01/2023 | Rent and CAM Ste 200 | 66,403.27 | | 99,669.05 |
| 10/01/2023 | Rent and CAM Ste 350 | 47,030.57 | | 146,699.62 |
| 10/01/2023 | Rent and CAM Ste 415 | 57,861.28 | | 204,560.90 |
| 10/01/2023 | Rent and CAM Ste 500 | 34,842.72 | | 239,403.62 |

ACH Payment Instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

## Frank Murphy

| | |
|---|---|
| **From:** | Steve Hinkle |
| **Sent:** | Thursday, September 21, 2023 4:45 PM |
| **To:** | Glynda Mcdaniel |
| **Cc:** | Frank Murphy; Mandy Peters; Mindy Garcia |
| **Subject:** | RE: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue |

Approved.

Steve Hinkle
*Chief Compliance Officer*
615-296-3378 office
615-268-3822 mobile
www.ardenthealth.com



**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Thursday, September 21, 2023 4:43 PM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Cc:** Frank Murphy <Frank.Murphy@ardenthealth.com>; Mandy Peters <MANDY.PETERS@lovelace.com>; Mindy Garcia <Mindy.Garcia@hillcrest.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Steve,
Please approve the October Altera lease payment ($239,403.62).

Thanks,
Glynda

**From:** Stacy Malkasian <smm@aurumpropertypartners.com>
**Sent:** Wednesday, September 20, 2023 10:10 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

1

If you have any questions please let me know.

Thank you,



**Stacy Malkasian**
Senior Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 561.389.8671
aurumpropertypartners.com          smm@aurumpropertypartners.com
West Palm Beach, FL | Middletown, NJ

2

LHP_0000184

69

Bank of America

# NON REPETITIVE WIRE FORM

DATE            11/01/2023

Account
Number        █████████

State

Amount         239,403.62

Description     Altera Highland - Lease Payment

Wiring Instructions:

Bank Name     Wells Fargo

ABA #          121000248

Account #      █████████

Description     Sherman/Grayson Health System - Lease Payment

Beneficiary     Altera Highland LLC

Bene Address

Bene City/ST

Bene Zip

Sequence Number

Approved By:

2nd Approval:

# TENANT STATEMENT

Altera Highland, LLC
c/o Aurum Property Partners
319 Clematis Street, Suite 608
West Palm Beach, FL 33401
(561) 293-3070



**AURUM**
PROPERTY PARTNERS

**Prepared For:**

Sherman/Grayson Health System
300 N Highland Avenue
Sherman, TX 75092

**Date:** 10/23/2023
**Total Due:** 239,403.62

| Date | Description | Charges | Payments | Balance |
|------|-------------|---------|----------|---------|
| 11/01/2023 | Rent and CAM Ste 100A | 33,265.78 | | 33,265.78 |
| 11/01/2023 | Rent and CAM Ste 200 | 66,403.27 | | 99,669.05 |
| 11/01/2023 | Rent and CAM Ste 350 | 47,030.57 | | 146,699.62 |
| 11/01/2023 | Rent and CAM Ste 415 | 57,861.28 | | 204,560.90 |
| 11/01/2023 | Rent and CAM Ste 500 | 34,842.72 | | 239,403.62 |

ACH Payment Instructions

| | |
|---|---|
| Bank Name: | WELLS FARGO |
| Bank Address: | PO BOX 63020 |
| | SAN FRANCISCO, CA 94163 |
| Bank ABA/Routing#: | 121000248 |
| Beneficiary Account #: | |
| Beneficiary Account Name: | Altera Highland LLC |

Notes: Please make check payable to: Altera Highland, LLC, Attn: Lockbox PO Box 206147, Dallas, TX 75320.
For billing questions, please call (561) 293-3070.

## Mandy Peters

**From:** Glynda Mcdaniel
**Sent:** Tuesday, October 24, 2023 6:58 AM
**To:** Mindy Garcia; Mandy Peters; Frank Murphy
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**From:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Sent:** Tuesday, October 24, 2023 7:57 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Re: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Approved

Steve Hinkle
VP & Chief Compliance Officer
Ardent Health Services
 Outlook for iOS

**From:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Sent:** Tuesday, October 24, 2023 7:54:02 AM
**To:** Steve Hinkle <Steve.Hinkle@ArdentHealth.com>
**Subject:** FW: Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

Good morning Steve,
Please approve the November Altera rent invoice ($239,403.62).

Thanks,
Glynda

**From:** Stacy Malkasian <smm@aurumpropertypartners.com>
**Sent:** Monday, October 23, 2023 7:14 AM
**To:** Glynda Mcdaniel <glynda.mcdaniel@ardenthealth.com>
**Subject:** Tenant Statement Sherman Grayson- Wilson Jones 300 N Highland Avenue

**Security Warning - External Message. Please use PhishAlert button to report suspicious messages.**

Dear Physician and Fellow Tenant:

I have attached a copy of your monthly statement for your location at 300 N Highland Ave in Sherman, Texas.

If you have any questions please let me know.

1

Thank you,



**Stacy Malkasian**
Senior Accountant

**Aurum Property Partners**
319 Clematis Street, Suite 608
West Palm Beach, Florida 33401
o: 561.293.3070  c: 561.389.8671

aurumpropertypartners.com          smm@aurumpropertypartners.com

West Palm Beach, FL | Middletown, NJ

2

LHP_0000188

70

**LHP Payments to Altera Highland**
**2/17/22-11/1/23**

| Bates # | Date | Amount | Subtotal |
|---|---|---|---|
| LHP 80-84 | 3/1/2022 | $ 226,526.68 | |
| LHP 85-88 | 4/1/2022 | $ 226,526.68 | |
| LHP 89-92 | 5/2/2022 | $ 226,526.68 | |
| LHP 93-97 | 6/1/2022 | $ 225,416.35 | |
| LHP 98-101 | 7/1/2022 | $ 225,416.35 | |
| LHP 118-125 | 8/1/2022 | $ 236,107.08 | |
| LHP 102-108 | 9/1/2022 | $ 232,570.02 | |
| LHP 109-113 | 10/3/2022 | $ 232,570.02 | |
| LHP 114-117 | 11/1/2022 | $ 232,570.02 | |
| LHP 126-129 | 12/1/2022 | $ 232,570.02 | |
| LHP 134-137 | 1/3/2023 | $ 232,570.02 | |
| LHP 130-133 | 2/1/2023 | $ 232,570.02 | |
| LHP 138-141 | 3/6/2023 | $ 232,570.02 | |
| LHP 142-145 | 4/3/2023 | $ 235,956.70 | *Subtotal thru* |
| LHP 146-158 | 5/1/2023 | $ 246,116.70 | *petition date:* |
| LHP159-162 | 6/1/2023 | $ 231,892.26 | $ **3,708,475.62** |
| LHP 163-173 | 7/3/2023 | $ 198,906.46 | |
| LHP 174-177 | 8/1/2023 | $ 231,892.26 | |
| LHP 178-180 | 9/1/2023 | $ 219,081.46 | |
| LHP 181-184 | 10/2/2023 | $ 239,403.62 | |
| LHP 185-188 | 11/1/2023 | $ 239,403.62 | |
| | Total: | $ **4,837,163.04** | |